**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of Pennsylvania, LLC, <br><br>        Plaintiffs, <br><br>    v. <br><br>PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC <br><br>        Defendants. | CIVIL ACTION NO: 3:19-cv-01470-RDM <br><br><br> Honorable Robert D. Mariani |

## **DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (to be admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (to be admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  October 18, 2019

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................... 1

II.    PROCEDURAL HISTORY........................................................................... 2

III.   BACKGROUND .......................................................................................... 2

     A.    The '223 Patent Is Directed to the Abstract Idea of Playing a Game. ................... 2

     B.    The Complaint Contains Conclusory Allegations Regarding Infringement and Willfulness Unsupported by Plausible Facts.................................................. 3

IV.   QUESTIONS PRESENTED.......................................................................... 3

V.    ARGUMENT ............................................................................................... 4

     A.    The Court Should Dismiss the Complaint Because the '223 Patent Claims Patent-Ineligible Subject Matter. ........................................................... 4

          1.    Courts routinely dismiss infringement claims premised on patents claiming invalid subject matter................................................. 4

          2.    Claim 44 is representative of all claims of the '223 patent....................... 4

          3.    Abstract ideas not linked to an inventive concept are not patent-eligible.................................................................................. 5

          4.    *Alice* Step One: The '223 patent is directed to the patent-ineligible abstract idea of playing a game.................................................. 5

          5.    *Alice* Step Two:  The '223 patent does not include any features that transform that abstract idea into patent-eligible subject matter. ............... 9

          6.    Courts have routinely rejected similar claims as patent-ineligible. ......... 12

     B.    The Court Should Dismiss the Complaint Because Plaintiffs Have Failed to Plead a Plausible Infringement Claim. ........................................... 13

     C.    The Court Should Dismiss the Willful Infringement Allegations Because Plaintiffs Have Failed to Adequately Plead a Claim for Willful Infringement................................................................................. 15

VI.   CONCLUSION.......................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................................... *passim*

*Asghari-Kamraini v. United Servs. Auto. Ass'n*,
No. 2:15cv478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016) ................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................1, 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S 544 (2007) ........................................................................................1, 13, 14

*Bilski v. Kappos*,
561 U.S 593 (2010) ........................................................................................11

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ............................14

*Collarity, Inc. v. Google Inc.*,
C.A. No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015) ................................13

*Content Extraction & Transmission LLC v. Wells Fargo Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................4

*Cook Biotech Inc. v. Acell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006) ........................................................................................15

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ........................................................................................6

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ........................................................................................5

*Dropbox, Inc. v. Synchronoss Techs, Inc.*,
371 F. Supp. 3d 668(N.D. Cal. 2019) ........................................................................................10

*Elec. Power Group, LLC v. Alstom, S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ........................................................................................11

*Everglades Game Techs, LLC v. Supercell, Inc.*,
Civ. A. No. 15-643-GMS, 2015 WL 4999654 (D. Del. Aug. 21, 2015) ............................4, 12

*Finjan, Inc. v. Cisco Sys. Inc.*,
Case No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ...........................15

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-1431 SBA, 2005 WL 3970076 (N.D. Cal. Sept. 6, 2005)........................................10

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
754 F. App'x. 996 (Fed. Cir. 2018) ........................................................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) (Bryer, J., concurring) ......................................................................15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)................................................................................................11

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)..................................................................................................6

*Inventor Holdings LLC v. Gameloft Inc.*,
135 F. Supp. 3d 239(D. Del. 2015)..........................................................................................12

*Konami Gaming, Inc. v. High 5 Games, LLC*,
No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 22, 2018)............................................12

*In re Marco Guldenaar Holding B.V.*,
911 F.3d 1157 (Fed. Cir. 2018)........................................................................................6, 9, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012).....................................................................................................................4

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-cv-0506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) .........................13, 14

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)..................................................................................................4

*Planet Bingo, LLC VKGS LLC*,
576 F. App'x 1005 (Fed. Cir. 2014) ..................................................................................*6, 9, 12*

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
No. 13-335, 2016 WL 6594076 (D. Del. Nov. 4, 2016).........................................................15

*RaceTech, LLC v. Ky. Downs, LLC*,
167 F. Supp. 3d 853(W.D. Ky. 2016)..................................................................................9, 12

*Scibetta v. Slingo, Inc.*,
Civ. A. No. 16-8175, 2018 WL 466224 (D.N.J. Jan. 17, 2018) ...........................................4, 9

*Sec. Mail Sols. LLC v. Univ. Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ................................................................................10

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) ............................................................................9, 12

*Symantec Corp.*,
    100 F. Supp. 3d 371 (D. Del. 2015) ........................................................................6

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ...............................................................................11

*TriPlay v. WhatsApp, Inc.*,
    C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018) ............11

*Ultramercial, Inc. v. Hulu, Inc.*,
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................11, 13

*Valmont Industries, Inc. v. Lindsay Corp.*,
    C.A. No. 15-42-LPS, 2018 WL 5962469 (D. Del. Nov. 14, 2018) .........................12

*Varian Med. Sys., Inc. v. Elekta AB*,
    C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) .......................15

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) .........................4

**Statutes**

35 U.S.C. § 101 ................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1, 2, 13

## I.    INTRODUCTION

In their Complaint, Plaintiffs assert that Defendants infringe U.S. Patent No. 7,736,223 (the "'223 patent")—a patent directed to an age-old human pastime: playing games.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss the Complaint for multiple reasons.

First, the Court should dismiss the Complaint because the '223 patent fails to claim patent-eligible subject matter pursuant to 35 U.S.C. § 101.  After the '223 patent issued in 2010, the United States Supreme Court issued its landmark decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  *Alice* lays out a two-step test for courts to determine whether a patent claims eligible subject matter.  Since *Alice*, courts have routinely dismissed cases where an asserted patent claimed only abstract ideas (including gaming ideas, *e.g.*, a wagering game using real or virtual playing cards, a wagering game based on historical events, a method of playing a dice game, managing a bingo game, and playing promotional games).  The result should be the same here.  The '223 patent does not claim patent eligible subject matter because its claims (1) are directed to an abstract idea (*i.e.*, playing a game) and (2) add no inventive concept sufficient to transform this abstract idea into a patent-eligible invention.  Indeed, the '223 patent merely claims the playing of a game on a generic computer without even purporting to improve either the computer functionality or any technology or technical field.

Second, the Court should dismiss the Complaint because it fails to state a plausible claim for infringement under the pleading standards of *Iqbal* and *Twombly*.  Conclusory allegations and random screen shots—unsupported by adequately pled facts—are insufficient to state a claim.

Finally, the Court should preclude Plaintiffs' claim for willful infringement because the Complaint is devoid of facts demonstrating Defendants' alleged pre-suit knowledge of the '223 patent, infringement thereof, or egregiousness.

## II.    PROCEDURAL HISTORY

On August 23, 2019, Plaintiffs filed the Complaint against Defendants asserting infringement of the '223 patent.  Defendants move to dismiss the Complaint under Rule 12(b)(6).

## III.    BACKGROUND

### A.    The '223 Patent Is Directed to the Abstract Idea of Playing a Game.

The '223 patent is directed generally to methods and systems for playing a game.  In particular, the '223 patent is directed to the basic idea of game play where a preview of a game is displayed to potential players.  *See* '223 patent at 1:64-67.[1]  Claim 44—the only claim of the '223 patent that Plaintiffs specifically assert in their Complaint—is directed to this abstract idea of game play:

> 44. An electronic gaming system comprising:
> an electronic game terminal including a touch screen display;
> a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:
> constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
> determining at least one winning combination for each play of the game;
> testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;
> automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;
> determining if the player has decided to play the displayed game; and
> displaying an outcome resulting from play of the displayed game.

---

[1] All citations to the '223 patent (Dkt. 1-2) are in the form of column:line.

*Id.* at 16:47-17:2. Claims 37-43 and 45-57 claim different variations of this basic concept: a system for playing, a method for accomplishing, and a computer program for carrying out this game play. The remaining claims of the '223 patent are likewise directed to the same general abstract idea of playing the game and do not provide any further meaningful complexity. They either involve game play in which a player can select a "wild" symbol (claims 1-36) or for which there is receipt of a signal from the player to initiate game play (claims 58-75). That the player interaction in the game takes on various forms, however, does not alter the fundamental fact that the character of the claims as a whole is game play on a generic computer.

**B.    The Complaint Contains Conclusory Allegations Regarding Infringement and Willfulness Unsupported by Plausible Facts.**

Critical aspects of Plaintiffs' infringement allegations consist of conclusory assertions about the accused products and their processor coupled with parroted claim language and random screen shots. *See* Dkt. 1 ¶¶ 86-94. There is nothing to connect Plaintiffs' conclusory assertions to key elements of asserted claim 44, and Defendants are left to speculate as to how the accused products supposedly meet this claim. Moreover, the Complaint includes bald allegations regarding Defendants' supposed pre-suit knowledge of the '223 patent and purported willful infringement, *see id.* ¶¶ 105, 110, without asserting a single fact in support.

## IV.    QUESTIONS PRESENTED

1. Should the Court dismiss the Complaint because the '223 patent claims patent ineligible subject matter?

2. Should the Court dismiss the Complaint because Plaintiffs have failed to plead a plausible infringement claim?

3. Should the Court dismiss Plaintiffs' willful infringement allegations because Plaintiffs have failed to adequately plead a claim for willful infringement?

## V.    ARGUMENT

### A.    The Court Should Dismiss the Complaint Because the '223 Patent Claims Patent-Ineligible Subject Matter.

#### 1.    Courts routinely dismiss infringement claims premised on patents claiming invalid subject matter.

The validity of patent claims under 35 U.S.C. § 101 is a question of law.  *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).  Courts often rule on issues of patentability at the outset of a case to spare both litigants and courts years of needless litigation. *Id.* at 1365 (Mayer, J., concurring); *see also, e.g.*, *Scibetta v. Slingo, Inc.*, Civ. A. No. 16-8175, 2018 WL 466224, at *8 (D.N.J. Jan. 17, 2018) ("Courts have repeatedly held that the determination of whether a concept is patent-eligible under Section 101 is a matter of law and may be resolved at the motion to dismiss stage."); *Everglades Game Techs., LLC v. Supercell, Inc.*, Civ. A. No. 15-643-GMS, 2015 WL 4999654, at *3 (D. Del. Aug. 21, 2015) ("[I]t is not uncommon for courts to rule on § 101 motions at the pleading stage.").

#### 2.    Claim 44 is representative of all claims of the '223 patent.

Nothing in the Complaint suggests that Plaintiffs assert any claim of the '223 patent other than claim 44.  But even if Plaintiffs did, the Court can determine patentablity of the entire '223 patent based on analysis of claim 44 alone.  "[T]he Supreme Court's precedents have not required a court deciding § 101 eligibility to parse each individual claim, instead finding an analysis of representative claims sufficient."  *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, 2014 WL 7639820, at *10 n.3 (C.D. Cal. Oct. 28, 2014); *see Alice*, 573 U.S. at 224 (conducting patentability analysis based on single representative claim); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 74 (2012) (same).  Where "all the claims are substantially similar and linked to the same abstract idea," the court can focus its patentability analysis on a representative claim.  *Content Extraction & Transmission LLC v. Wells Fargo Nat'l Ass'n*, 776

F.3d 1343, 1348 (Fed. Cir. 2014).  Here, all claims of the '223 patent are directed to the same abstract idea—playing a game.  *See* § III.A., *supra*.  The Court can therefore treat claim 44 as representative.

### 3.    Abstract ideas not linked to an inventive concept are not patent-eligible.

Section 101 of the Patent Act requires that a patent disclose a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  There are three important exceptions to § 101: "laws of nature, physical phenomena, and abstract ideas."  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  In *Alice*, the Supreme Court set forth a two-step test under which a court exercises its gate-keeping function to assess patentability under § 101.  In the first step ("*Alice* Step One"), the Court determines "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  537 U.S. at 217.  If the claims are so directed, the Court moves to a second step ("*Alice* Step Two") to evaluate whether there is "an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* at 217-18 (quotations omitted).  Merely carrying out an abstract idea using existing computers, does not amount to significantly more than the ineligible concept itself and does not transform the ineligible concept into a patentable invention.  *See id.* at 222.  As discussed below, the claims of the '223 patent are ineligible for patent protection under the *Alice* framework.

### 4.    *Alice* Step One: The '223 patent is directed to the patent-ineligible abstract idea of playing a game.

The '223 patent fails *Alice* Step One.  Although not mutually exclusive, the Supreme Court and Federal Circuit have established a number of categories of abstract ideas that, in the absence of claim limitations with a so-called inventive concept, constitute patent ineligible subject matter.

Among those categories are (1) methods of organizing human activity, including fundamental economic practices, and (2) purely mental processes.  *See Alice*, 537 U.S. at 220.  Claims directed to playing a game have been held ineligible for patenting under these categories of abstract ideas.  *See, e.g.*, *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160-61 (Fed. Cir. 2018) (the claimed  idea of "rules for playing a dice game" is a  method of organizing human activity and therefore abstract); *Planet Bingo, LLC VKGS LLC,* 576 F. App'x 1005, 1007 (Fed. Cir. 2014) (non-precedential) ("The district court correctly concluded that managing the game of bingo 'consists solely of mental steps which can be carried out by a human using pen and paper.'").

Distilled to its simplest form, representative claim 44 is just a way to play a game.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (noting that at *Alice* Step One, courts have "distilled th[e] ineligible concept from the claims"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012) (distilling claim limitations down to their "simplest form").  Here the claimed game could just as easily be played by human beings as it could electronically, which demonstrates its abstract nature.  *See Symantec Corp.,* 100 F. Supp. 3d 371, 383 (D. Del. 2015), *rev'd in part on other grounds by* 838 F.3d 1301 (Fed. Cir. 2016) (A "helpful way of assessing whether the claims of [a patent] are directed to an abstract idea is to consider if all of the steps of the claim could be performed by human beings.").  Indeed, the claimed steps could very well be performed by two friends playing cards at a kitchen table.  For example:

| | Steps Recited in Claim 44 of the | Example of How Humans Can Perform Recited Steps | |
|---|---|---|---|
| 1 | constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols | Dave Dealer wants to play a game with Paul Player. To set up, Dave puts down traditional playing cards in a tic-tac-toe configuration (3 x 3). The cards have traditional suits - *i.e.*, hearts, diamonds, clubs, and spades. |  |
| 2 | determining at least one winning combination for each play of the game | Like tic-tac-toe, winning the game happens when a player matches three of the same symbol in a row—horizontally, vertically, and/or diagonally.<br><br>The player does this by placing a "wild" joker card on another card to represent a suit of the player's choosing. In theory, a player could make more than one "three of a kind" matches with a single play of the joker card.<br><br>Dave Dealer decides that, for the game he is about to play with Paul Player, Paul can win with only one "three of a kind" match. |  |

| | Steps Recited in Claim 44 of the | Example of How Humans Can Perform Recited Steps | |
|---|---|---|---|
| 3 | testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field | Dave Dealer imagines the joker over each card to check that no single placement of the joker will yield more than one "three of a kind" match. |  |
| 4 | automatically displaying an actual game to be played . . . to a player prior to initiating activation of the game play | Dave Dealer then shows Paul Player the cards on the table |  |
| 5 | determining if the player has decided to play the displayed game | Dave Dealer asks Paul Player if he wants to play the game.  Paul says yes.  Dave Dealer hands Paul a joker card.  Paul puts the joker down over one of the other cards. |  |

| | Steps Recited in Claim 44 of the | Example of How Humans Can Perform Recited Steps | |
|---|---|---|---|
| 6 | displaying an outcome resulting from play of the displayed game | The table shows that Paul has made a single "three of a kind" match. |  |

The Supreme Court and the Federal Circuit have repeatedly found that such methods constitute abstract ideas. *See, e.g.*, *Alice*, 537 U.S. at 220; *Planet Bingo*, 576 F. App'x at 1008. Indeed, numerous courts have held gaming-related claims to be abstract concepts, and, absent something to transform this purely conventional activity, non-patentable ideas. *See, e.g.*, *In re Marco*, 911 F.3d at 1160, 1162; *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016) (patent directed to rules for playing card game invalid); *Scibetta*, 2018 WL 466224, at *10 (patents "directed towards a wagering game using at least one standard deck of cards" invalid). Applying generic computer components to carry out the claimed human activity does *not* transform it into a non-abstract idea. *See RaceTech, LLC v. Ky. Downs, LLC*, 167 F. Supp. 3d 853, 863 (W.D. Ky. 2016) ("[T]he analysis turns on the fundamental nature of wagering which can be achieved with ordinary mental steps, despite the use of computers to speed up the process.").

### 5. *Alice* Step Two: The '223 patent does not include any features that transform that abstract idea into patent-eligible subject matter.

The '223 patent fails *Alice* Step Two. Transforming an abstract idea into a patent-eligible application requires more than "stating the abstract idea while adding the words 'apply it with a computer.'" *Alice*, 573 U.S. at 211 (citing *Mayo*, 566 U.S. at 72). Other than reciting steps for

playing the game, claim 44 only recites general computer components—the game terminal with a touch screen and game processor. '223 patent at 16:47-50. The claims of the '223 patent, therefore, lack sufficient features beyond the abstract idea of playing a game that constitute an "inventive concept"—*i.e.*, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18 (internal quotation marks, alteration and citation omitted).[2]

No "inventive concept" can be found in the application of vaguely described electronic components—such as "electronic gaming system," "game processor," "game terminal," and "touch screen display"—to game play. The '223 patent provides little detail regarding these generic components,[3] and instead reinforces that the claimed game play may be implemented in any conventional hardware without limitation. *See* '223 patent at 12:21-32. Further, where the patent references conventional media types ("diskettes or CD ROMs and transmission type media such as analog or digital communications links"), it explicitly does so as illustrative, which

---

[2] The Court should give no weight to the self-serving and conclusory allegations in the Complaint that the '223 patent contains non-conventional elements and constitutes an improvement over unidentified prior art. (Dkt. 1 ¶¶ 20-23). Courts frequently reject such statements in assessing patentability under § 101. *See, e.g.*, *Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 F. App'x. 996, 999 (Fed. Cir. 2018) (assertion in complaint that claims are 'novel' and 'improve the technology used in electronic communications'" entitled to no weight at motion to dismiss phase); *Sec. Mail Sols. LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (courts need not accept as true self-serving allegations of patent eligibility); *Dropbox, Inc. v. Synchronoss Techs, Inc.*, 371 F. Supp. 3d 668, 699 (N.D. Cal. 2019) (rejecting plaintiff's efforts to manufacture factual dispute by pointing to unsupported assertions in complaint and emphasizing "there are no specific factual allegations or references to the . . . Patent specification—which might disclose that the invention is an improvement over the prior art") (emphasis omitted).

[3] Moreover, the '223 patent does not describe these technological components as improving technology or being inventive or new at the time the '223 patent application was filed. Nor could it. As the '223 patent acknowledges, "electronic games" were "very popular" at the time of the alleged invention, '223 patent at 1:18-20, and touch screens were well known. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2005 WL 3970076, at *2 (N.D. Cal. Sept. 6, 2005) (discussing touch screen technology patent in 2005).

demonstrates that the generic computer components cannot provide the requisite inventive concept to salvage the claims as patentable.  *See TriPlay v. WhatsApp, Inc.*, C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018) (where "specification repeatedly explains that the components being used are general purpose computers, processes, and devices," the claims are not transformed to patentable subject matter at *Alice* Step Two).  At bottom, the '223 patent's "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 607, 613 (Fed. Cir. 2016) (collecting cases "finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (collecting cases and emphasizing that "instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible").

Further, there is no "inventive concept" in limiting the claimed game play to the electronic gaming context.  As the Supreme Court stated in *Bilski v. Kappos*, "limiting an abstract idea to one field of use . . . [does] not make the concept patentable."  561 U.S. 593, 612 (2010).  The Federal Circuit too has made clear that "attempt[s] to limit the use" of an abstract idea "to a particular technological environment" are insufficient to save a claim.  *Ultramercial, Inc. v. Hulu, Inc.*, 772 F.3d 709, 716 (Fed. Cir. 2014); *see Elec. Power Group, LLC v. Alstom, S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Likewise, there is no "inventive concept" in the particular ordering of the claimed game steps.  Each of the individual steps recited in claim 44 do nothing more than implement the abstract idea of game play in a known and conventional manner.  *See Alice*, 573 U.S. at 217 (viewing claims as ordered combination does not "transform the nature of the claim" into patent-

eligible subject matter).  The claims "add nothing . . . that is not already present when the steps are considered separately."  *Id.*

In short, none of the '223 patent claim limitations add the requisite "something more" to transform the abstract idea of playing a game into a patent-eligible application of that idea. Therefore, the claims of the '223 patent do not satisfy *Alice* Step Two.

### 6.   Courts have routinely rejected similar claims as patent-ineligible.

"At both steps one and two [of the *Alice* framework], it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101."  *Valmont Industries, Inc. v. Lindsay Corp.*, C.A. No. 15-42-LPS, 2018 WL 5962469, at *4 (D. Del. Nov. 14, 2018).  Courts have repeatedly rejected as patent ineligible claims that recite the abstract idea of playing a game or steps directed thereto without the "something more" that is necessary to transform the claim into eligible subject matter. Specifically, courts have invalidated claims directed to the following abstract ideas:

- A "method of conducting a wagering game" involving cards.  *In re Smith*, 815 F.3d at 819.

- "[P]laying a dice game."  *In re Marco*, 911 F.3d at 1159 (Fed. Cir. 2018).

- "[M]anaging a bingo game while allowing a player to repeatedly play the same sets of numbers in multiple sessions."  *Planet Bingo*, 576 F. App'x. at 1007.

- "[G]aming methods and systems for pari-mutuel wagering on historical events."  *RaceTech*, 167 F. Supp. 3d at 860.

- Playing "promotional games."  *Everglades*, 2015 WL 4999654, at *3.

- "[A]ltering the rules of the game regarding slot games" using generic computer technology *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483, 2018 WL 1020120, at *19 (D. Nev. Feb. 22, 2018).

- "[U]sing a code to unlock a benefit in a game."  *Inventor Holdings LLC v. Gameloft Inc.*, 135 F. Supp. 3d 239, 252 (D. Del. 2015).

Like these courts which have invalidated abstract game play patent claims, this Court should hold that the claims of the '223 patent are directed to patent-ineligible subject matter.[4]

**B.**   **The Court Should Dismiss the Complaint Because Plaintiffs Have Failed to Plead a Plausible Infringement Claim.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).  For an infringement claim specifically, "[t]here needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in a conclusory fashion, that it is so." *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-cv-0506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (emphasis in original).  Here, Plaintiffs speculate that a processor in the accused products must perform all of the steps claimed in elements 44.4 and 44.5 of claim 44[5] of the '223 patent,  This speculation does not satisfy the requisite pleading standards.

Plaintiffs' allegation that claim element 44.4—a game processor configured for "determining at least one winning combination"—is satisfied by the purported presence of a

---

[4] Plaintiffs' reference in the Complaint to an unrelated patent issued years after the '223 patent (Dkt. 1 ¶¶ 24-26; Dkt. 1-3 (Ex. B)) has no bearing on the Court's patent eligibility analysis. *See Collarity, Inc. v. Google Inc.*, C.A. No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015) (rejecting argument that asserted patent should not be found invalid under § 101 because patent office issued separate patent regarding similar subject matter after *Alice* decision).  The fact that the patent office issued a patent does not mean the Court can presume that patent (or any others like it) are subject-matter eligible. *See Ultramerical*, 772 F.3d at 720-21 ("[W]hile a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.").

[5] Although Plaintiffs allege infringement of the '223 patent (Dkt. 1, Count I), the sole claim identified in the Complaint is claim 44.  To the extent Plaintiffs purport to allege infringement of any other claims, Plaintiffs have failed to meet their burden to state a claim. *See Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 1253533, at *3-4 (E.D. Va. Mar. 22, 2016) ("Plaintiffs must detail how each claim is infringed.").

"processor" is implausible.  Dkt. 1 ¶ 86.  The Complaint lacks any allegations connecting the processor in the accused products to the claimed step of determining a "winning combination." Instead, Plaintiffs point to a screen shot of showing a "prize viewer" for a future game and baldly allege that "[a]s a result each of the Fusion Games uses the gaming processor to determine at least one winning combination before game play for each game."  *Id.*  But, merely because there is a screen shot showing a "prize viewer" does not mean that a processor had to go through the claimed "determining" step.  The Court may not take Plaintiffs at their word that the "determining" step is in fact carried out by the accused products.  *Iqbal* and *Twombly* require more.  *See N. Star*, 2017 WL 5501489, at *2 ("Plaintiff has to take the guesswork out of things by pleading facts that plausibly allege infringement."); *see also Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.").

Plaintiffs' allegations with respect to claim element 44.5—"testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field"—are likewise deficient.  Plaintiffs claim that because there is a "prize value" displayed and games do not exceed that prize value, the processor must have engaging in the testing step.  Dkt. 1 ¶¶ 89-90. Critically lacking, however, are any allegations making it plausible that the processor in fact carries out the testing step.  That a certain game board is ultimately displayed fails to plausibly demonstrate that a processor performed any specific testing.

**C.      The Court Should Dismiss the Willful Infringement Allegations Because Plaintiffs Have Failed to Adequately Plead a Claim for Willful Infringement.**

Enhanced damages for willful infringement are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," commonly described as "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (Bryer, J., concurring).  Willfulness is not plausible "simply because the evidence shows that the infringer knew about the patent and nothing more."  *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. 13-335, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016) (citation and emphasis omitted).  Instead, a plaintiff must plead facts demonstrating culpability and egregiousness.  *See Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).[6]

Plaintiffs' willful infringement allegation is based solely on the naked assertions that "Plaintiffs have had knowledge and notice of the '223 Patent" and that "Defendants' infringement of the '223 Patent has been and continues to be willful." Dkt. 1 ¶¶ 105, 110.  But these statements alone do not provide enough.  Critically missing, however, are any factual allegations giving rise to a plausible inference that Defendants were aware of the '223 patent, were aware of their supposed infringement, or were acting egregiously pre-suit.  Thus, Plaintiffs have failed to adequately plead a claim for willful infringement.  *See Princeton*, 2016 WL 6594076, at *9, *11; *Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

**VI.      CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint.

---

[6] Plaintiffs' failure to adequately allege direct infringement is dispositive of Plaintiffs' ability to recover for willful infringement.  *See Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1379 (Fed. Cir. 2006).

Dated:  October 18, 2019          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (to be admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (to be admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA*
*Coin Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that Defendants' Brief in Support of Their Motion to Dismiss was filed on this 18th day of October, 2019 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

*/s/John V. Gorman*
John V. Gorman