## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC, | CIVIL ACTION NO: 3:19-cv-01470-JPW |
| Plaintiffs, | |
| v. | Honorable Jennifer P. Wilson |
| PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (to be admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  November 15, 2019

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................................1

II.   PROCEDURAL HISTORY ........................................................................2

III.  BACKGROUND ..........................................................................................3

    A.   The '223 Patent Is Directed to the Abstract Idea of Playing a
         Game..........................................................................................................3

    B.   The Amended Complaint Contains Conclusory Allegations
         Regarding Infringement and Willfulness Unsupported by
         Plausible Facts. .....................................................................................4

IV.   QUESTIONS PRESENTED ........................................................................5

V.    ARGUMENT................................................................................................5

    A.   The Court Should Dismiss the Amended Complaint Because
         the '223 Patent Claims Patent-Ineligible Subject Matter....................5

         1.   Courts routinely dismiss infringement claims premised
               on patents claiming invalid subject matter. ..............................5

         2.   Claim 44 is representative of all claims of the '223
               patent. .........................................................................................6

         3.   Abstract ideas not linked to an inventive concept are not
               patent-eligible............................................................................7

         4.   *Alice* Step One: The '223 patent is directed to the patent-
               ineligible abstract idea of playing a game. ...............................8

         5.   *Alice* Step Two: The '223 patent does not include any
               features that transform that abstract idea into patent-
               eligible subject matter. ...........................................................12

         6.   Courts have routinely rejected similar claims as
               patent-ineligible. .....................................................................15

         7.   The Amended Complaint's allegations cannot salvage the
               patentability of the '223 patent. ..............................................17

    B.   The Court Should Dismiss the Amended Complaint Because
         Plaintiffs Have Failed to Plead a Plausible Infringement Claim. ......20

C.    The Court Should Dismiss the Willful Infringement Allegations Because Plaintiffs Have Failed to Adequately Plead a Claim for Willful Infringement.................................................................25

D.    The Court Should Dismiss the Amended Complaint with Prejudice...........................................................................26

VI.    CONCLUSION.............................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)...........................................................................*passim*

*Asghari-Kamraini v. United Servs. Auto. Ass'n*,
   No. 2:15cv478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016)..........................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................2, 20, 22, 24

*Atlas IP, LLC v. Exelon Corp.*,
   189 F. Supp. 3d 768 (N.D. Ill. 2016)..................................................27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................2, 22

*Checksum Ventures, LLC v. Dell Inc.*,
   Case No. 18-cv-6321, 2019 WL 4750107 (N.D. Ill. Sept. 30, 2019)................20

*Collarity, Inc. v. Google Inc.*,
   C.A. No. 11-1103, 2015 WL 7597413 (D. Del. Nov. 25, 2015).......................19

*Content Extraction & Transmission LLC v. Wells Fargo Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ...........................................................6

*Cook Biotech Inc. v. Acell, Inc.*,
   460 F.3d 1365 (Fed. Cir. 2006) .........................................................25

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ...........................................................8

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)...........................................................................7

*Elec. Power Group, LLC v. Alstom, S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .........................................................15

*Epic IP v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. Nov. 26, 2018)......................................18

*Everglades Game Techs., LLC v. Supercell, Inc.*,
  Civ. A. No. 15-643, 2015 WL 4999654 (D. Del. Aug. 21, 2015)..................5, 16

*Finjan, Inc. v. Cisco Sys. Inc.*,
  Case 17-cv-00072, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................26

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-1431, 2005 WL 3970076 (N.D. Cal. Sept. 6, 2005)..........................13

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
  754 F. App'x. 996 (Fed. Cir. 2018) ...................................................................18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016).......................................................................................25

*In re Greenstein*,
  2019 WL 4233554 (Fed. Cir. Sept. 6, 2019) ....................................................20

*In re Marco Guldenaar Holding B.V.*,
  911 F.3d 1157 (Fed. Cir. 2018) ..............................................................8, 12, 16

*In re Smith*,
  815 F.3d 816 (Fed. Cir. 2016) ...................................................................12, 16

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..........................................................................14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
  100 F. Supp. 3d 371 (D. Del. 2015)....................................................................9

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ..........................................................................8

*Inventor Holdings LLC v. Gameloft Inc.*,
  135 F. Supp. 3d 239 (D. Del. 2015)...................................................................16

*IPA Techs., Inc. v. Amazon.com, Inc.*,
  352 F. Supp. 3d 335 (D. Del. 2019)............................................................17, 19

*Konami Gaming, Inc. v. High 5 Games, LLC*,
  No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 22, 2018) .....................16

*Maxon, LLC v. Funai Corp.*,
  255 F. Supp. 3d 711 (N.D. Ill. 2017).............................................................13, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)..............................................................................................6

*Midwest Athletics and Sports Alliance LLC v. Xerox Corp.*,
  No. 8:17-cv-478, 2018 WL 1400426 (D. Neb. Mar. 20, 2018).........................24

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
  No. 17-cv-0506, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ....................21, 22

*Nice Sys. Ltd. v. Clickfox, Inc.*,
  207 F. Supp. 3d 393 (D. Del. 2016)..................................................................18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ..........................................................................5

*PageMelding, Inc. v. ESPN, Inc.*,
  No. C-11-06263, 2012 WL 1534844 (N.D. Cal. 2012).....................................24

*Panduit Corp. v. Corning Inc.*,
  No. 5:18-cv-229-FLL, 2019 WL 189817 (E.D.N.C. 2019) ..............................24

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
  No. 13-335, 2016 WL 6594076 (D. Del. Nov. 4, 2016)..............................25, 26

*RaceTech, LLC v. Ky. Downs, LLC*,
  167 F. Supp. 3d 853 (W.D. Ky. 2016)..........................................................12, 16

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ........................................................................17

*Scibetta v. Slingo, Inc.*,
  Civ. A. No. 16-8175, 2018 WL 466224 (D.N.J. Jan. 17, 2018)....................5, 12

*Sec. Mail Sols. LLC v. Univ. Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ..........................................................................17

*TriPlay v. WhatsApp, Inc.*,
    C.A. No. 13-1703, 2018 WL 1479027 (D. Del. Mar. 27, 2018) ...........14, 19, 26

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) ..............................................................15

*Ultramercial, Inc. v. Hulu, Inc.*,
    772 F.3d 709 (Fed. Cir. 2014) ....................................................................14, 19

*Valmont Indus., Inc. v. Lindsay Corp.*,
    C.A. No. 15-42-LPS, 2018 WL 5962469 (D. Del. Nov. 14, 2018)...................15

*Varian Med. Sys., Inc. v. Elekta AB*,
    C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016)..................25

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014).....................6

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-00300, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)...................22

## STATUTES

35 U.S.C. § 101 ..................................................................................................*passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 20

Fed. R. Civ. P. 15 ...................................................................................................26

## I.    INTRODUCTION

In their First Amended Complaint (Dkt. 25) (the "Amended Complaint" or "FAC"), Plaintiffs assert that Defendants infringe U.S. Patent No. 7,736,223 (the "'223 patent")—a patent directed to an age-old human pastime: playing games. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss the Amended Complaint for multiple reasons.

First, the Court should dismiss the Amended Complaint because the '223 patent fails to claim patent-eligible subject matter pursuant to 35 U.S.C. § 101.  After the '223 patent issued in 2010, the United States Supreme Court issued its landmark decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  *Alice* lays out a two-step test for courts to determine whether a patent claims eligible subject matter.  Since *Alice*, courts have routinely dismissed cases where an asserted patent claimed only abstract ideas (including gaming ideas, *e.g.*, a wagering game using real or virtual playing cards, a wagering game based on historical events, a method of playing a dice game, managing a bingo game, and playing promotional games). The result should be the same here.  The '223 patent does not claim patent eligible subject matter because its claims (1) are directed to an abstract idea (*i.e.*, playing a game) and (2) add no inventive concept sufficient to transform this abstract idea into a patent-eligible invention.  Indeed, the '223 patent merely claims the playing of a

game on generic computer technology without even purporting to improve either the computer functionality or any technology or technical field.

Second, the Court should dismiss the Amended Complaint because it fails to state a plausible claim for infringement under the pleading standards of *Iqbal* and *Twombly*. Conclusory allegations unsupported by adequately pled facts are insufficient to state a claim.

Finally, the Court should preclude Plaintiffs' claim for willful infringement because the Amended Complaint is devoid of facts demonstrating Defendants' alleged pre-suit knowledge of the '223 patent, infringement thereof, or egregiousness.

## II.    PROCEDURAL HISTORY

On August 23, 2019, Plaintiffs filed their original complaint against Defendants. After Defendants moved to dismiss the original complaint, Plaintiffs filed the Amended Complaint. However, the Amended Complaint suffers from the same dispositive defects as the original complaint: the '223 patent is directed to patent-ineligible subject matter and the infringement claims are inadequate.

## III.    BACKGROUND

### A.    The '223 Patent Is Directed to the Abstract Idea of Playing a Game.

The '223 patent is directed generally to methods and systems for playing a game. In particular, the '223 patent is directed to the basic idea of game play where a preview of a game is displayed to potential players. *See* '223 patent at 1:64-67.[1] Claim 44—the only claim of the '223 patent that Plaintiffs specifically assert in their Amended Complaint—is directed to this abstract idea of game play:

> **44**. An electronic gaming system comprising:
> an electronic game terminal including a touch screen display;
> a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:
> constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
> determining at least one winning combination for each play of the game;
> testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;
> automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;
> determining if the player has decided to play the displayed game; and
> displaying an outcome resulting from play of the displayed game.

*Id.* at 16:47-17:2.

_____

[1] All citations to the '223 patent (Dkt. 25-1) are in the form of column:line.

Claims 37-43 and 45-57 claim different variations of this basic concept: a system for playing, a method for accomplishing, and a computer program for carrying out this game play. The remaining claims of the '223 patent are likewise directed to the same general abstract idea of playing the game and do not provide any further meaningful complexity. These claims either involve game play in which a player can select a "wild" symbol (claims 1-36) or for which there is receipt of a signal from the player to initiate game play (claims 58-75). That the player interaction in the game takes on various forms, however, does not alter the fundamental fact that the character of the claims as a whole is game play on generic computer technology.

### B.   The Amended Complaint Contains Conclusory Allegations Regarding Infringement and Willfulness Unsupported by Plausible Facts.

Critical aspects of Plaintiffs' infringement allegations consist of conclusory assertions about the accused products and, in particular, their processor. *See* FAC ¶¶ 68-77, 100-108. Plaintiffs allege that the processor achieves certain results, but do not plead facts plausible to demonstrate *how* the processor achieves those results—and, specifically, whether the processor is carrying out the steps of the claim to achieve those results. Absent such facts, Defendants are left to speculate as to how the accused products supposedly meet the claim limitations. Moreover, the Amended Complaint includes bald allegations regarding Defendants' supposed pre-

suit knowledge of the '223 patent and purported willful infringement, *see id.* ¶¶ 119, 124-25, without asserting a single fact in support.

## IV.    QUESTIONS PRESENTED

1.  Should the Court dismiss the Amended Complaint because the '223 patent claims patent-ineligible subject matter?

2.  Should the Court dismiss the Amended Complaint because Plaintiffs have failed to plead a plausible infringement claim?

3.  Should the Court dismiss Plaintiffs' willful infringement allegations because Plaintiffs have failed to adequately plead a claim for willful infringement?

## V.    ARGUMENT

### A.    The Court Should Dismiss the Amended Complaint Because the '223 Patent Claims Patent-Ineligible Subject Matter.

#### 1.    Courts routinely dismiss infringement claims premised on patents claiming invalid subject matter.

The validity of patent claims under 35 U.S.C. § 101 is a question of law.  *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).  Courts often rule on issues of patentability at the outset of a case to spare both litigants and courts years of needless litigation.  *Id.* at 1365 (Mayer, J., concurring); *see also, e.g.*, *Scibetta v. Slingo, Inc.*, Civ. A. No. 16-8175, 2018 WL 466224, at *8 (D.N.J. Jan. 17, 2018) ("Courts have repeatedly held that the determination of whether a concept is patent-eligible under Section 101 is a matter of law and may be resolved at the motion to dismiss stage."); *Everglades Game Techs., LLC v. Supercell, Inc.*, Civ. A.

No. 15-643-GMS, 2015 WL 4999654, at *3 (D. Del. Aug. 21, 2015) ("[I]t is not uncommon for courts to rule on § 101 motions at the pleading stage.").

### 2.    Claim 44 is representative of all claims of the '223 patent.

Nothing in the Amended Complaint suggests that Plaintiffs assert any claim of the '223 patent other than claim 44.  But even if Plaintiffs did, the Court can determine patentability of the entire '223 patent based on analysis of claim 44 alone. "[T]he Supreme Court's precedents have not required a court deciding § 101 eligibility to parse each individual claim, instead finding an analysis of representative claims sufficient." *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, 2014 WL 7639820, at *10 n.3 (C.D. Cal. Oct. 28, 2014); *see Alice*, 573 U.S. at 224 (conducting patentability analysis based on single representative claim); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 74 (2012) (same). Where "all the claims are substantially similar and linked to the same abstract idea," the Court can focus its patentability analysis on a representative claim.  *See Content Extraction & Transmission LLC v. Wells Fargo Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  Here, all claims of the '223 patent are directed to the same abstract idea—playing a game.  *See* § III.A., *supra*.  The Court can therefore treat claim 44 as representative of all claims.

### 3.    Abstract ideas not linked to an inventive concept are not patent-eligible.

Section 101 of the Patent Act requires that a patent disclose a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. There are three important exceptions to § 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). In *Alice*, the Supreme Court set forth a two-step test under which a court exercises its gate-keeping function to assess patentability under § 101. In the first step ("*Alice* Step One"), the Court determines "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. 537 U.S. at 217. If the claims are so directed, the Court moves to a second step ("*Alice* Step Two") to evaluate whether there is "an inventive concept— *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (quotations omitted). Merely carrying out an abstract idea using existing computer technology does not amount to significantly more than the ineligible concept itself and does not transform the ineligible concept into a patentable invention. *See id.* at 222. As discussed herein, the claims of the '223 patent are ineligible for patent protection under the *Alice* framework.

### 4.    *Alice* Step One: The '223 patent is directed to the patent-ineligible abstract idea of playing a game.

The '223 patent fails *Alice* Step One.  Although not mutually exclusive, the Supreme Court and Federal Circuit have established a number of categories of abstract ideas that, in the absence of claim limitations with a so-called inventive concept, constitute patent-ineligible subject matter. Among those categories are (1) methods of organizing human activity, including fundamental economic practices, and (2) purely mental processes.  *See Alice*, 537 U.S. at 220.  Claims directed to playing a game have been held ineligible for patenting under these categories of abstract ideas.  *See, e.g.*, *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160-61 (Fed. Cir. 2018) (claimed idea of "rules for playing a dice game" is method of organizing human activity and therefore abstract); *Planet Bingo, LLC VKGS LLC*, 576 F. App'x. 1005, 1007 (Fed. Cir. 2014) (non-precedential) ("The district court correctly concluded that managing the game of bingo 'consists solely of mental steps which can be carried out by a human using pen and paper.'").

Distilled to its simplest form, representative claim 44 is just a way to play a game. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (noting that at *Alice* Step One, courts have "distilled th[e] ineligible concept from the claims"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012) (distilling claim limitations down to their "simplest form").  Here the claimed game could just as easily be played by human beings as it could

electronically, which demonstrates its abstract nature. *See Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 371, 383 (D. Del. 2015), *rev'd in part on other grounds by* 838 F.3d 1301 (Fed. Cir. 2016) (A "helpful way of assessing whether the claims of [a patent] are directed to an abstract idea is to consider if all of the steps of the claim could be performed by human beings.").  Indeed, the claimed steps could very well be performed by two friends playing cards at a kitchen table.  For example:

| | Steps Recited in Claim 44 of the '223 patent | Example of How Humans Can Perform Recited Steps |
|---|---|---|
| 1 | constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols | Dave Dealer wants to play a game with Paul Player. To set up, Dave puts down traditional playing cards in a tic-tac-toe configuration (3 x 3).  The cards have traditional suits—*i.e.*, hearts, diamonds, clubs, and spades.  |

| | Steps Recited in Claim 44 of the '223 patent | Example of How Humans Can Perform Recited Steps | |
|---|---|---|---|
| 2 | determining at least one winning combination for each play of the game | Like tic-tac-toe, winning the game happens when a player matches three of the same symbol in a row—horizontally, vertically, and/or diagonally.<br><br>The player does this by placing a "wild" joker card on another card to represent a suit of the player's choosing.  In theory, a player could make more than one "three of a kind" matches with a single play of the joker card. |  |
| 3 | testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field | Dave Dealer imagines the joker over each card to check that no single placement of the joker will yield more than one "three of a kind" match. |  |

10

| | Steps Recited in Claim 44 of the '223 patent | Example of How Humans Can Perform Recited Steps | |
|---|---|---|---|
| 4 | automatically displaying an actual game to be played . . . to a player prior to initiating activation of the game play | Dave Dealer then shows Paul Player the cards on the table. |  |
| 5 | determining if the player has decided to play the displayed game | Dave Dealer asks Paul Player if he wants to play the game. Paul says yes. Dave Dealer hands Paul a joker card. Paul puts the joker down over one of the other cards. |  |
| 6 | displaying an outcome resulting from play of the displayed game | The table shows that Paul has made a single "three of a kind" match. |  |

The Supreme Court and the Federal Circuit have repeatedly found that such

methods constitute abstract ideas.  *See, e.g.*, *Alice*, 537 U.S. at 220; *Planet Bingo*,

576 F. App'x. at 1008. Indeed, numerous courts have held gaming-related claims to be abstract concepts, and, absent something to transform this purely conventional activity, to constitute non-patentable ideas. *See, e.g.*, *In re Marco*, 911 F.3d at 1160, 1162; *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016) (patent directed to rules for playing card game invalid); *Scibetta*, 2018 WL 466224, at *10 (patents "directed towards a wagering game using at least one standard deck of cards" invalid). Applying generic computer components to carry out the claimed human activity does *not* transform it into a non-abstract idea. *See RaceTech, LLC v. Ky. Downs, LLC*, 167 F. Supp. 3d 853, 863 (W.D. Ky. 2016) ("[T]he analysis turns on the fundamental nature of wagering which can be achieved with ordinary mental steps, despite the use of computers to speed up the process.").

###### 5. *Alice* Step Two: The '223 patent does not include any features that transform that abstract idea into patent-eligible subject matter.

The '223 patent fails *Alice* Step Two. Transforming an abstract idea into a patent-eligible application requires more than "stating the abstract idea while adding the words 'apply it with a computer.'" *Alice*, 573 U.S. at 211 (citing *Mayo*, 566 U.S. at 72). Other than reciting steps for playing the game, claim 44 only recites general computer components—a game terminal with a touch screen and a game processor. '223 patent at 16:47-50. The claims of the '223 patent, therefore, lack sufficient features beyond the abstract idea of playing a game that constitute an "inventive concept"—*i.e.*, "an element or combination of elements that is

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18 (internal quotation marks, alteration, and citation omitted).

No "inventive concept" can be found in the application of vaguely described electronic components—such as "electronic gaming system," "game processor," "game terminal," and "touch screen display"—to game play. The '223 patent provides little detail regarding these generic components.[2]

For instance, "processor" is mentioned only twice in the '223 patent specification and never as anything "inventive." First, the specification generically notes a processor has nondescript "components" to carry out basic computing steps. '223 patent at 2:31-45. Later, the specification describes a basic "embedded computer processor" as performing another step. *See id.* at 4:40-43. None of the claims of the '223 patent provide any further detail regarding the structure, type, or composition of the processor. *See Maxon, LLC v. Funai Corp.*, 255 F. Supp. 3d 711, 718 (N.D. Ill. 2017) ("Because the specification does not define the processor, the court is left to conclude that it is a generic processor," and, therefore, the claim is not transformed to patentable subject matter at *Alice* Step Two). Further, the specification emphasizes the broad use of conventional media types ("diskettes or CD ROMs and transmission type media such as analog or digital communications

_____

[2] Moreover, the '223 patent does not describe these technological components as improving technology or being inventive or new at the time the '223 patent application was filed. Nor could it. As the '223 patent acknowledges, "electronic games" were "very popular" at the time of the alleged invention, '223 patent at 1:18-20, and touch screens were well known. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2005 WL 3970076, at *2 (N.D. Cal. Sept. 6, 2005) (discussing touch screen technology patent in 2005).

links") in connection with the invention, (*id.* at 12:29-32), highlighting that the physical components of the purported inventive system do not provide the requisite inventive concept to salvage the claims as patentable. In sum, nothing in the patent points to anything non-conventional about the hardware or software components that perform the claimed game. *See TriPlay v. WhatsApp, Inc.*, C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018) (where "specification repeatedly explains that the components being used are general purpose computers, processes, and devices," claims are not transformed to patentable subject matter at *Alice* Step Two). Thus, the '223 patent's "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (collecting cases "finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (collecting cases and emphasizing that "instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible").

Further, there is no "inventive concept" in limiting the claimed game play to the electronic gaming context. As the Supreme Court stated in *Bilski v. Kappos*, "limiting an abstract idea to one field of use . . . [does] not make the concept patentable." 561 U.S. 593, 612 (2010). The Federal Circuit too has made clear that "attempt[s] to limit the use" of an abstract idea "to a particular technological environment" are insufficient to save a claim. *Ultramercial, Inc. v. Hulu, Inc.*, 772

F.3d 709, 716 (Fed. Cir. 2014); *see Elec. Power Group, LLC v. Alstom, S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Likewise, there is no "inventive concept" in the particular ordering of the claimed game steps. Each of the individual steps recited in claim 44 do nothing more than implement the abstract idea of game play in a known and conventional manner. *See Alice*, 573 U.S. at 217 (viewing claims as ordered combination does not "transform the nature of the claim" into patent-eligible subject matter). The claims "add nothing . . . that is not already present when the steps are considered separately." *Id.*

Further, there is nothing in the claims or the specification of the '223 patent that demonstrates that the arrangement of the abstract steps constitutes an improvement to the generic technology used to carry out the game play. *See Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1150-51 (N.D. Cal. 2017).

At bottom, none of the '223 patent claim limitations add the requisite "something more" to transform the abstract idea of playing a game into a patent-eligible application of that idea. Therefore, the claims do not satisfy *Alice* Step Two.

### 6. **Courts have routinely rejected similar claims as patent-ineligible.**

"At both steps one and two [of the *Alice* framework], it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *Valmont Indus., Inc. v. Lindsay Corp.*, C.A. No. 15-42-LPS, 2018 WL 5962469, at *4 (D. Del. Nov. 14,

2018). Courts have repeatedly rejected as patent ineligible claims that recite the

abstract idea of playing a game or steps directed thereto without the "something

more" that is necessary to transform the claims into eligible subject matter.

Specifically, courts have invalidated claims directed to the following abstract ideas:

- A "method of conducting a wagering game" involving cards. *In re Smith*, 815 F.3d at 819.

- "[P]laying a dice game." *In re Marco*, 911 F.3d at 1159 (Fed. Cir. 2018).

- "[M]anaging a bingo game while allowing a player to repeatedly play the same sets of numbers in multiple sessions." *Planet Bingo*, 576 F. App'x. at 1007.

- "[G]aming methods and systems for pari-mutuel wagering on historical events." *RaceTech*, 167 F. Supp. 3d at 860.

- Playing "promotional games." *Everglades*, 2015 WL 4999654, at *3.

- "[A]ltering the rules of the game regarding slot games" using generic computer technology. *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483, 2018 WL 1020120, at *19 (D. Nev. Feb. 22, 2018).

- "[U]sing a code to unlock a benefit in a game." *Inventor Holdings LLC v. Gameloft Inc.*, 135 F. Supp. 3d 239, 252 (D. Del. 2015).

Like these courts which have invalidated abstract game play patent claims, this Court

should hold that the claims of the '223 patent are directed to patent-ineligible subject

matter.

### 7.    The Amended Complaint's allegations cannot salvage the patentability of the '223 patent.

After Defendants demonstrated in their original motion to dismiss (Dkt. 22) that the '223 patent fails the *Alice* test for subject matter eligibility, Plaintiffs amended their complaint in a transparent effort to manufacture a factual dispute. But no pleading amendment can amend the language of the '223 patent—and it is the language of the '223 patent itself which controls the Court's *Alice* analysis. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident *in the claims*.") (emphasis added). Thus, the Court must strip away Plaintiffs' self-serving allegations and focus on the abstract claim language. *See, e.g.*, *Sec. Mail Sols. LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (courts need not accept as true self-serving allegations of patent eligibility).

For example, the Court should not credit Plaintiffs' various allegations regarding a purportedly "enhanced" "special purpose" "low power" processor. *See, e.g.*, FAC ¶¶ 19, 23-26, 30, 32. These allegations find no support in the '223 patent itself. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict . . . the claims and the patent specification."); *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 349-50 (D. Del. 2019) (rejecting "boilerplate" allegations regarding purported technological advancement where

such allegations were unsupported by patent itself). Indeed, the '223 patent specification only references a processor twice (*see* '223 patent at 2:33 and 4:41), and, in those passing references, states nothing to suggest anything out of the ordinary about what the processor is or what it can do. The claims of the '223 patent provide no further detail about the processor beyond that it carries out some of the steps of playing a game. As such, Plaintiffs' self-serving and unsupported allegations about a processor cannot provide the requisite "inventive concept" that *Alice* requires. *See generally Nice Sys. Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 401 (D. Del. 2016) ("[I]t is well-settled that claims simply directed toward performing the abstract idea using generic computer components, such as a processor, do not contain an inventive concept.").

Moreover, the Court should give no weight to Plaintiffs' various allegations regarding the supposed "novelty" of the overall gaming invention. *See* FAC ¶¶ 25-30, 35, 37, 38. These allegations cannot provide the requisite "inventive concept." *See Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 F. App'x. 996, 999 (Fed. Cir. 2018) (plaintiff "cannot render its complaint immune from dismissal by merely asserting that its methods are 'novel' and 'improve the technology used in electronic communications'"); *Epic IP v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 748 (D. Del. Nov. 26, 2018) ("[N]ovelty and patent eligibility are different things.").

This is especially true for Plaintiffs' assertions regarding the patent office's actions during the prosecution of the '223 patent. FAC ¶¶ 27-30. That the patent office allowed the '223 patent to issue over specific prior art—years before the Supreme Court issued its *Alice* decision—is irrelevant to this Court's determination of whether the claims are patent-eligible. *See IPA Techs.*, 352 F. Supp. 3d at 350 ("[T]hese types of facts [regarding "the number of prior art references the Halverson patents were issued over" and "the examiners' recitations of why they found the Halverson patents to be novel"] are not properly considered in determining a motion to dismiss for patent ineligibility under § 101. Every patent that is issued is generally (and often specifically) issued over prior art references and is found to be novel."); *TriPlay*, 2018 WL 1479027, at *8 n.3 (reversing magistrate judge's determination that factual dispute existed regarding *Alice* Step 2 due to patent office's issuance of patent over specific prior art reference and finding patent invalid).[3]

---

[3] Plaintiffs' reference in the Amended Complaint to an unrelated patent issued years after the '223 patent (FAC ¶¶ 39-40; Dkt. 25-3 (Ex. B)) has no bearing on the Court's patent eligibility analysis. *See Collarity, Inc. v. Google Inc.*, C.A. No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015) (rejecting argument that asserted patent should not be found invalid under § 101 because patent office issued separate patent regarding similar subject matter after *Alice* decision). The fact that the patent office issued a patent does not mean the Court can presume that patent (or any others like it) are subject-matter eligible. *See Ultramerical*, 772 F.3d at 720-21 ("[W]hile a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.").

Plaintiffs' allegations of supposed commercial success of POM embodiments and the purported copying of others (*see* FAC ¶¶ 31-32) likewise fail to supply the missing inventive concept. *See In re Greenstein*, 2019 WL 4233554, at *2 (Fed. Cir. Sept. 6, 2019) (fact there is "commercially successful product . . . is insufficient to transform the claims into a patent-eligible application"). Even if true, these allegations simply demonstrate that POM and others decided to carry out the abstract steps of game play using a generic processor as described in the '223 patent. This fails to give rise to any inference—let alone a plausible inference—that the '223 patent claims patent-eligible subject matter.

At bottom, despite Plaintiffs' efforts to create a factual dispute, the language of the '223 patent itself "raises no factual dispute as to the inventiveness" of the claimed abstract idea of game play, and, thus, "dismissal pursuant to a Rule 12(b)(6) motion is appropriate." *See Checksum Ventures, LLC v. Dell Inc.*, Case No. 18-cv-6321, 2019 WL 4750107, at *9 (N.D. Ill. Sept. 30, 2019).

### B.    The Court Should Dismiss the Amended Complaint Because Plaintiffs Have Failed to Plead a Plausible Infringement Claim.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For an infringement claim specifically, "[t]here needs to be *some facts* alleged that articulate *why it is plausible* that the other

party's product infringes that patent claim—not just the patentee asserting, in a conclusory fashion, that it is so." *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-cv-0506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (emphasis in original). Here, claim 44[4] requires that a processor must [44.4] "determin[e] at least one winning combination for each play of the game" and [44.5] "test[] the game field prior to displaying the game . . . to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently . . . ." '223 patent at 16:57-62. Step 44.5 must necessarily follow step 44.4. Plaintiffs speculate that a processor in the accused products performs all of these steps in this order, but this speculation does not satisfy the requisite pleading standards.

Plaintiffs' allegations that a processor satisfies claim element 44.4 ("determining at least one winning combination for each play of the game") are implausible. FAC ¶¶ 68, 100. In the absence of any facts regarding the structure, type, or configuration of the accused processor, Plaintiffs instead point to a "pay table" displayed on the game terminal. But, as Plaintiffs admit, the table image lists

_____

[4] Although Plaintiffs allege infringement of the '223 patent (FAC, Count I), the sole claim identified in the Amended Complaint is claim 44. To the extent Plaintiffs purport to allege infringement of any other claims, Plaintiffs have failed to meet their burden to state a claim. *See Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 1253533, at *3-4 (E.D. Va. Mar. 22, 2016) ("Plaintiffs must detail how each claim is infringed.").

"*all*" of the possible winning combinations of symbols; it does not represent a specific winning combination of symbols that is determined for "each play of the game." *Id.* ¶¶ 68, 74, 100, 107. Plaintiffs also refer to a "prize viewer." But, as Plaintiffs admit, the prize viewer shows a payout amount (in dollars and/or cents) of particular game; it does not specify the specific arrangement of symbols that will comprise a winning combination for a particular play of the game. *Id.* ¶¶ 68, 74, 78-79, 100, 109. Thus, neither the "pay table" nor the "prize viewer" relate to the claimed determination of the particular combination of symbols that are the winning combination each play of the game—much less a performance of the determining" step [44.4] before the claimed "testing" step [44.5].

With these unrelated allegations stripped way, the Court is left with Plaintiffs' mere speculation that the processor performs the "determining" step. *Iqbal* and *Twombly* require more than Plaintiffs' word that the "determining" step is in fact carried out by the accused products. *See N. Star*, 2017 WL 5501489, at *2 ("Plaintiff has to take the guesswork out of things by pleading facts that plausibly allege infringement."); *see also Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.").

Plaintiffs' allegations with respect to at least claim element 44.5—"testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field"—are likewise implausible. Plaintiffs assert that because there is a "prize value" displayed and because Plaintiffs' "extensive testing" supposedly demonstrated future games do not exceed that prize value, the processor must have engaged in the testing step before displaying the game filed.  FAC ¶¶ 70-76, 102-04.  Critically lacking, however, are any allegations making it plausible that the processor in fact achieves the claimed result by performing the claimed testing step before displaying the game field.  That a game displays a particular winning combination does not necessarily mean that a processor did "testing" before display.  Indeed, Plaintiffs themselves acknowledge that there exist game processors (including those in the prior art) that do *not* carry out this testing step before displaying a winning combination.  *See, e.g.*, FAC ¶ 28 ("None of these [prior art] references teach a special game processor configured for testing. . . ."); *id.* ¶ 29 (describing a processor for testing as "not . . . routine technology").   As such, Plaintiffs' allegations amount to nothing more than speculation that, because there is a certain result, the specified claimed patent steps must have occurred in the processor.  This is insufficient to plead a plausible infringement claim.  *See Panduit Corp. v. Corning Inc.*, No. 5:18-cv-229-FLL, 2019

WL 189817, at *4-*6 (E.D.N.C. 2019) (where "Plaintiff only has alleged testing results that are consistent with the use of plaintiff's method, but not . . . that plaintiff's method is the only way in which to produce [the result]" direct infringement claim cannot withstand dismissal).  After all, "[t]here are many ways to reach a destination and not everyone necessarily traveled the same path." *PageMelding, Inc. v. ESPN, Inc.*, No. C-11-06263, 2012 WL 1534844, *2-*3 (N.D. Cal. 2012) (denying request for leave to amend direct infringement claim as futile and emphasizing that "[m]erely explaining how plaintiff's patent works and stating that defendant produces a similar end product, is not enough").

At bottom, Plaintiffs' speculation fails to transform the allegations regarding what the processor must do from "possible" to "plausible."  *See Iqbal*, 556 U.S. at 678 (allegations that amount to "a sheer possibility that a defendant has acted unlawfully" insufficient to state a claim).[5]

---

[5] Plaintiffs' conclusory allegations that the claim elements may be infringed under the doctrine of equivalents (FAC ¶¶ 69, 77, 101, 118) fares no better.  *See Midwest Athletics and Sports Alliance LLC v. Xerox Corp.*, No. 8:17-cv-478, 2018 WL 1400426, *4 (D. Neb. Mar. 20, 2018) ("The technical and factual nature of an infringement claim under the doctrine of equivalents requires some level of specificity beyond a one-sentence accusation.").

**C.    The Court Should Dismiss the Willful Infringement Allegations Because Plaintiffs Have Failed to Adequately Plead a Claim for Willful Infringement.**

Enhanced damages for willful infringement are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," commonly described as "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (Bryer, J., concurring).  Willfulness is not plausible "simply because the evidence shows that the infringer knew about the patent and nothing more." *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. 13-335, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016) (citation and emphasis omitted). Instead, a plaintiff must plead facts demonstrating culpability and egregiousness. *See Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).[6]

Plaintiffs' willful infringement allegation is based solely on the naked assertions that "Plaintiffs have had knowledge and notice of the '223 Patent" and that "Defendants' infringement of the '223 Patent has been and continues to be willful."  FAC ¶¶ 119, 124.  But these statements alone do not provide enough. Critically missing are any factual allegations giving rise to a plausible inference that

---

[6] Plaintiffs' failure to adequately allege direct infringement, as discussed *supra* in § IV.B, is dispositive of Plaintiffs' ability to recover for willful infringement.  *See Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1379 (Fed. Cir. 2006).

Defendants were aware of the '223 patent, were aware of their supposed infringement, or were acting egregiously pre-suit. Thus, Plaintiffs have failed to adequately plead a claim for willful infringement. *See Princeton*, 2016 WL 6594076, at *9, *11; *Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

### D.    The Court Should Dismiss the Amended Complaint with Prejudice.

The plain language of the '223 patent demonstrates that the claims are not directed to patent eligible subject matter. Thus, permitting Plaintiffs to amend the complaint a second time would be futile as no factual allegations can alter the intrinsic record of the patent itself to overcome the § 101 deficiencies described herein. Accordingly, dismissal with prejudice is appropriate. *See TriPlay*, 2018 WL 1479027, at *3 n.3 ("Given the substantial failings of this intrinsic evidence, it would be futile to provide TriPlay an opportunity yet again to amend its complaint.").

Dismissal with prejudice is likewise appropriate with respect to the *Iqbal/Twombly* deficiencies described herein, which Defendants alerted Plaintiffs to in Defendants' original motion to dismiss. Plaintiffs have already used up their "one free bite at the amendment apple" under Rule 15, and should not be permitted to prolong this lawsuit and Defendants' fees by forcing Defendants to defend against vague claims that fall far short of this Court's mandated pleading standards. *See,*

*e.g.*, *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016) (dismissing with prejudice improvidently pled patent infringement complaint).

## VI.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated:  November 15, 2019        Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (to be admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*