## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC a Wyoming limited liability company,<br><br>      Plaintiff,<br><br>   v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>      Defendants. | Civil Action No. 3:19-cv-01470-RDM<br><br>Honorable Jennifer P. Wilson |

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF CONTENTS

**PAGE**

**Table of Authorities**..................................................................................iii-v

**Counterstatement of Facts and Background of the 223 Patent**..................1

**Argument**.....................................................................................3
   I.     The Claims of the 223 Patent are Patentable.....................................3

       A. Background on 35 U.S.C. § 101 and the Judicially Crafted
         Abstract Idea Exception...............................................................3

       B. Defendants Misconstrue Claim 44 as "Playing a Game"............5

       C. *Alice* Step One: By Ignoring the Preview and Testing Limitations
         of the Specially Configured Game Processor, Defendants
         Fail to Consider the Claim "as a Whole"......................................7

       D. *Alice* Step Two: The Specially Configured Gaming Processor
         Provides the Requisite Inventive Concept....................................9

   II.    The FAC Sets Forth Sufficiently Detailed and Plausible
       Allegations of Infringement.............................................................14

   III.   Plaintiffs Withdraw Allegations of Willful Infringement..................19

   IV.   If the Court Finds any Aspect of the Motion to Dismiss Persuasive,
       the Court Should Grant Plaintiffs Leave to Amend the Complaint...19

## TABLE OF AUTHORITIES

**PAGE**

*Cases*:

**Supreme Court**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ..........................*passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................*passim*

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)................................................3

*Microsoft Corp. v. 141 Ltd. Partnership*, 564 U.S. 91 (2011)..........................3

**Court of Appeals**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354 (Fed. Cir. 2018)......................................................................................*passim*

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ..................................*passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ........................................................................9

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) ............................................................................................14, 18, 19

*Enfish, LLC v. Microsoft Corp.* 822 F.3d 1327 (Fed. Cir. 2016).......................4, 7

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) ...............6

*Marco Guldenaar Holding B.V.* 911 F.3d 1157 (Fed. Cir. 2018) ....................12, 13

*McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)....................................................................................................7, 8

*Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019) ............................................................................................................12

iii

*Phillips v. City. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ..............................19

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ..................................................................................................11, 12

*In re Smith*, 815 F.3d 816 (Fed. Cir. 2016) .....................................................*passim*

*Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019)...........................5

*TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ....................7

**District Courts**

*Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016) .................................................................18

*Britax Child Safety v. Nuna Int'l B.V.*, 321 F.Supp.3d 546 (E.D. Pa. 2018) ....14

*CBA Environmental Services, Inc. v. Toll Brothers Inc.*, No. 3:18-cv-132942019, __ F.Supp.3d___, 2019 WL 3451737 (D.N.J. July 31, 2019) .....12

*Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-00836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018) .................................................................14

*Ironworks Patents, LLC v. Apple Inc.*, No. 1-17-cv-01399-RGA, 2018 WL 2944475 (D. Del. June 12, 2018) .................................................................8

*Maxon, LLC v. Funai Corp.*, 255 F. Supp. 3d 711 (N.D. Ill. 2017) ................12

*Minelab Electronics Pty Ltd. v. XP Metal Detectors*, No. 2:16-cv-01594, 2017 WL 2799879 (W.D. Pa. June 28, 2017) .................................................8

*Myers v. City of Wilkes-Barre*, No. 3:18-cv-42, 2019 WL 210938 (M.D. Pa. Jan. 15, 2019) .........................................................................................19

*Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123 (N.D. Cal. 2017) ..........12

## Counterstatement of Facts and Background of the 223 Patent

The use of gambling devices to implement games of chance (*e.g.*, bingo, slot machines, poker) is largely outlawed because the games in question are considered games of chance. *See* 223 Patent, Dkt. 25-1 ("223 Pat.") at 1:13-60.  However, amusement machines that are more skill-based may be permitted. *See id.* at 1:13-24. "To qualify as a skill-based amusement machine . . . the outcome of play during the game must be controlled by the person playing the game and not by predetermined odds or random chance controlled by the machine." *Id.* at 1:24-27. What was not known in the prior art was a game processor that could elevate a game of chance into a game having a higher element of skill. *See* Plaintiffs' First Amended Complaint, Dkt. 25 ("FAC"), ¶¶16-22.

In the 223 Patent, a novel processor "test[s] the [game] field for compliance with at least one of the preceding selections prior to presenting the field to the player. The displayed game field cannot contain a winning combination before play." 223 Pat. at 9:63-66.  The testing is needed to "ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field." *Id.* at 16:59-62.

Next, the specification states that the invention is for "providing a game preview display to players of an amusement or entertainment electronic game before playing the game." *Id.* at 1:64-67 (emphasis added). "The field is presented

1

to the player on the game display as a preview of the game in step 602. In one embodiment, the player can select from a plurality of game preview displays, with each game preview being associated with a different play level. Any potential player can observe the game display for as long as desired before making a decision to play the displayed game in decision step 604." *Id.* at 10:37-43. Prior to the time of invention in 2006, when the 223 Patent was applied for, gaming terminals such as slot machines were devoid of a game processor that incorporated this preview element. *See* FAC, ¶¶16-22. It was considered counter-intuitive to add game preview functionality to electronic games. *Id.*, ¶22.

The 223 Patent thus describes a new type of game processor implementing "the elimination of chance through the ability of a player to see the next game outcome on-screen before ever making a financial commitment. This enhances the appeal of the game in jurisdictions which do not permit games of chance, but do permit games of predominant skill." *Id.*, ¶23. The 223 Patent claims encompass technology that was neither well-understood, routine nor conventional to a skilled artisan at the time of the invention. Such novel technology includes, but is not limited to, testing the game field and automatically displaying an actual game to be played to a player prior to initiating activation of game play. *See id.*, ¶¶25-26. Those knowledgeable in the field, and the patent examiner who conducted the the prior art searches before allowing the 223 Patent to issue, determined that the

2

claimed game processor specially configured for testing and preview is inventive technology that was neither generic nor conventional as of June of 2006 (the filing date of the application leading to the 223 Patent). *See id.*, ¶¶27-30.

## ARGUMENT

### I. The Claims of the 223 Patent are Patentable.

#### A. Background on 35 U.S.C. § 101 and the Judicially Crafted Abstract Idea Exception.

A defendant must prove invalidity by clear and convincing evidence. *See Microsoft Corp. v. 141 Ltd. Partnership*, 564 U.S. 91, 95 (2011). As shown below, Defendants' motion is inadequate to carry such a burden at the initial pleadings stage. At a minimum, there are disputed factual issues over whether the enhanced gaming processor of Claim 44, used to implement the game preview and testing features of the 223 Patent – critical features in transforming a game-of-chance to a game-of-skill – was conventional at the time of invention.

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three judicially-crafted exceptions to Section 101's patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). The motion at

issue raises the potential applicability of the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).

"[I]n applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent eligible invention." *Id.* at 217 (internal citation and quotations omitted). The "concern that drives the exclusionary principle [i]s one of pre-emption." *Id.* at 216. That is, where a patent would pre-empt use of basic tools of scientific and technological work (*i.e.,* laws of nature, natural phenomena, and abstract ideas), the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation omitted).[1]

Interpreting *Alice*, the Federal Circuit in *Enfish, LLC v. Microsoft Corp.* stated: "[T]he claims at issue in *Alice* … can readily be understood as simply adding conventional computer components to well-known business practices." 822 F.3d 1327, 1338 (Fed. Cir. 2016). However, *In re Smith*, relied upon by Defendants, further stated: "That is not to say that all inventions in the gaming arts

---

[1] Notably, Defendants do not argue that Claim 44 of the 223 Patent pre-empts any basic building blocks of innovation.

would be foreclosed from patent protection under § 101." 815 F.3d 816, 819 (Fed. Cir. 2016) (emphasis added).

### B. Defendants Misconstrue Claim 44 as "Playing a Game."

The Federal Circuit has cautioned that the Section 101 analysis must be "directly tethered to the claim language" and should avoid recasting specific limitations "at a high level of abstraction." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019).

Claim 44 of the 223 Patent, the lone claim asserted in the Complaint, states:

[44P] An electronic gaming system comprising:

[44.1] an electronic game terminal including a touch screen display;

[44.2] a **game processor** for generating an interactive electronic game on the game terminal, the **game processor configured for**:

> [44.3] constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
>
> [44.4] determining at least one winning combination for each play of the game;
>
> [44.5] **testing the game field prior to displaying the game to the player** to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;
>
> [44.6] **automatically displaying an actual game to be played** on the touch screen game display to a player **prior to initiating activation of game play**;

5

[44.7] determining if the player has decided to play the displayed game; and

[44.8] displaying an outcome resulting from play of the displayed game.

Here, elements [44.2], [44.5] and [44.6] describe a specially configured electronic gaming processor – one that is configured to test a game field and display a game to be played to a player prior to game play. Contrary to Defendant's assertions, the specification of the 223 Patent at 4:41 refers to this processor as an "embedded" processor, which is understood by a person of ordinary skill in the art as a special purpose, low-power processor, as opposed to a generic processor used for operating a general purpose computer. FAC, ¶24. By testing and previewing the game, the special game processor infuses skill into the gaming environment.

Defendants allege the claims of the 223 Patent are directed to "playing games." *See* Dkt. 32 at 1, 3. Plainly, this oversimplifies Claim 44. Taken as a whole, Claim 44 is directed to a gaming system comprising a <u>tangible</u> game processor specially configured to test and preview a game.[2]

Defendants state that the "claimed steps could very well be performed by two friends playing cards at a kitchen table." Dkt. 32 at 9. This ill-founded assertion results from Defendants' oversimplification of the language of Claim 44

---

[2] Here, the claimed invention employed "a new kind of [game processor] that enables a computer [gaming] system to do things it could not do before." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018).

6

to manual "steps." Claim 44 recites a specifically-configured game processor, not a card game.

### C. *Alice* Step One: By Ignoring the Preview and Testing Limitations of the Specially Configured Game Processor, Defendants Fail to Consider the Claim "as a Whole."

In *Enfish*, the Federal Circuit held that the first step "cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon – after all, they take place in the physical world." 822 F.3d at 1335 (citation omitted). Instead, the Federal Circuit instructed courts consider whether the "'character [of the claim] as a whole is directed to excluded subject matter.'" *Id.* (internal citation omitted and emphasis added). "[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quotation omitted and emphasis added). "[W]e must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217) (emphasis added). Otherwise, the judicially

7

crafted exception outlined in *Alice* would "swallow all of patent law." *Alice*, 573 U.S. at 216-17.

Claim 44 is concrete and narrowly tailored. It does not describe steps of playing a game, but instead describes an improved game processor configured for testing and previewing a game to be played. "[P]rocesses that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO, Inc.*, 837 F.3d at 1313; *see also Minelab Electronics Pty Ltd. v. XP Metal Detectors*, No. 2:16-cv-01594, 2017 WL 2799879, *5 (W.D. Pa. June 28, 2017) ("The [system] in claim [44], when performed using the specific [game processor] described[,] results in an improvement upon existing [game processor] technology, rendering the claim eligible for protection under § 101."); *Ironworks Patents, LLC v. Apple Inc.*, No. 1-17-cv-01399-RGA, 2018 WL 2944475, at *3 (D. Del. June 12, 2018) (denying motion to dismiss because claims were not impermissibly abstract: "The claims might incorporate the abstract idea of 'using a vocabulary to convey information,' but that does not mean that each claim in its entirety is directed to the abstract idea of 'using a vocabulary to convey information,' or to any other abstract idea. . . . [T]he claims are directed to an improved 'portable device' and 'mobile station,' respectively, and recite limitations for those improved tangible systems.").

8

### D. *Alice* Step Two:  The Specially Configured Gaming Processor Provides the Requisite Inventive Concept.

At Step Two, there is no "inventive concept" if a claim recites an abstract idea implemented using "generic" technology to "perform well-understood, routine, and conventional activities commonly used in the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (citing *Alice*, 573 U.S. at 225); *see also In re Smith*, 815 F.3d at 819 ("shuffling and dealing a standard deck of cards are 'purely conventional' activities") (internal quotation omitted).  However, Claim 44 by its own language does not merely recite a generic processor.  A generic processor is not – as Claim 44 provides – specially configured to test and then preview a game to the user prior to a game play decision.

Here, a fact dispute precludes Defendants from meeting their burden of showing that Claim 44's specially programmed game processor (as described in elements **[44.2]**, **[44.5]** and **[44.6]**) was merely generic technology in 2006 when the 223 Patent was applied for.  A fact dispute exists over whether the testing and preview elements (**[44.5]** and **[44.6]**) of the processor critical to infusing an element of skill into a given game were "well-understood, routine and conventional activities commonly used in the industry."  In 2006, conventional game processors merely implemented games of chance, and were ill-equipped to infuse a game of chance with elements of skill. *See* FAC, ¶¶16-30 (detailing facts

9

upon which the conclusion that the special purpose game processor of Claim 44 was more than mere conventional or generic technology *circa* June 2006). Had the patent examiner determined that a gaming processor configured to test and preview was already described in the prior art, the patent would not have issued. *See id.,* ¶¶27-30. None of the facts alleged in the FAC are even contravened, much less disproven, by the instant motion to dismiss.

When ruling on a Rule 12(b)(6) motion to dismiss, the Court treats all well-pleaded allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants' motion ignores the content of the FAC allegations, and instead focuses strictly on whether and to what extent the 223 Patent itself states that the game processor is non-conventional. In doing so, the motion to dismiss fails to address the import of recent Federal Circuit decisions in *Berkheimer* and *Aatrix Software* to *Alice* Step Two analysis. Although "a court need not accept as true allegations that <u>contradict</u> matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification," Defendants do not seek judicial notice or point to any exhibit to contradict the FAC's allegations. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018)

10

(emphasis added).[3]  Because the FAC's allegations raise factual issues underlying *Alice* Step Two – whether the specially configured game processor constitutes an inventive concept, alone or in combination with other elements – the complaint survives *Alice* scrutiny at the pleadings stage of the case. *Id.*

The pre-discovery determination of patent ineligibility without undisputed evidence demonstrating the lack of an evidentiary dispute at *Alice* Step Two is reversible error. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *petition for rehearing denied*, 890 F.3d 1369 (Fed. Cir. 2018).  Whether a claim element is "well-understood, routine and conventional" is a fact question requiring clear and convincing evidence. *Id.*

*Aatrix Software, Inc. v. Green Shades Software, Inc.* reversed a grant of judgment on the pleadings, finding issues of fact on *Alice* Step Two. 882 F.3d 1121, 1123 (Fed. Cir. 2018), *petition for rehearing denied*, 890 F.3d 1354 (Fed. Cir. 2018).  "While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Id.* at 1128 (emphasis added).[4]

---

[3] *See also* FAC, ¶¶16-30 (describing in even greater detail that the game processor of Claim 44 was not well-understood, routine and conventional technology *circa* June 2006, when the 223 Patent was applied for).

[4] Defendants rely almost exclusively on cases pre-dating *Berkheimer* and *Aatrix Software. See, e.g., Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d

Applying the foregoing precepts, "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix Software*, 882 F.3d at 1126-27. Dismissal at this stage would be appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125 (emphasis added).

"While the fact-finder may ultimately determine that the [specially configured game processor of Claim 44] was well-understood, routine, and conventional, absent a clear statement to that effect in the claims or specification, such a determination may not be made on a motion to dismiss." *CBA Environmental Services, Inc. v. Toll Brothers Inc.*, No. 3:18-cv-132942019, WL 3451737, at *7 (D.N.J. July 31, 2019) (citing *Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1347 (Fed. Cir. 2019)) (emphasis added).

Here, the facts alleged in the FAC would only be insufficient to withstand the instant motion if they were contradicted by statements in the 223 Patent itself. They are not. To the contrary, they are consistent with the 223 Patent.

*In re Marco Guldenaar Holding B.V.* is distinguishable. There, the claims recited "the steps of placing a wager, rolling the dice, and paying a payout amount if at least one wagered outcome occurs—none of which Appellant on appeal

905 (Fed. Cir. 2017); *Maxon, LLC v. Funai Corp.*, 255 F. Supp. 3d 711 (N.D. Ill. 2017); *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123 (N.D. Cal. 2017).

12

disputes is conventional, either alone or in combination." 911 F.3d 1157, 1161 (Fed. Cir. 2018) (emphasis added).

Moreover, the allegations of the FAC (*e.g.*, FAC, ¶¶16-30), are not merely conclusory allegations. These allegations are consistent with the contents of the 223 Patent, the prosecution history of the 223 Patent, and the contents of the prior art. At this point, these factual allegations are not contravened by any matter within the 223 Patent or otherwise in the record. Thus, taking these facts into consideration, Claim 44 survives *Alice* scrutiny because the substance of Claim 44 recites an unconventional game processor, *e.g.*, a "new or original" game processor which can infuse a game of chance with elements of a game of skill by implementing the non-conventional steps of testing a game field and previewing a game to a user before it is played. *See In re Smith*, 815 F.3d at 819.

On this record, *Berkheimer* and *Aatrix Software* militate in favor of denying the instant motion because Claim 44 presents: (a) a machine-based claim which included a game processor specially configured to test and preview the game prior to game play; (b) a specially configured processor infusing a level of skill into a game of chance; and (c) a factual issue relating to whether such a specially configured processor supplied an inventive concept (as opposed to a conventional or merely generic technology).

13

## II.   The FAC Sets Forth Sufficiently Detailed and Plausible Allegations of Infringement.

When the FAC is considered as a whole, there is considerable, specific factual detail as to why the processor employed in the accused products plausibly meets both of the elements questioned by Defendants. *See Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-00836-RGA, 2018 WL 6168615, at *2 (D. Del. Nov. 26, 2018) ("To satisfy the *Iqbal* pleading standard in a patent case, "[s]pecific facts are not necessary.") (quoting *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)). The complaint need only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.* (quoting *Disc Disease Solutions*); *see also Britax Child Safety v. Nuna Int'l B.V.*, 321 F.Supp.3d 546, 560-61 (E.D. Pa. 2018) (denying motion to dismiss complaint of patent infringement).

In this case, the FAC provides factual allegations placing Defendants on fair notice as to the nature of the infringement. The Infringing Products are gaming terminals with circuit boards therein. The circuit boards are driven by embedded processors which control the gaming environment. Since the release of POM games embodying the 223 Patent, gaming companies such as Banilla, the manufacturer of the circuit boards used by Defendants, have been copying features

14

of the 223 Patent in an effort to enhance the level of skill in their games. *See* FAC, ¶29.

As to **[44.4]**, "determining at least one winning combination for each play of the game," Defendants argue that the accused "pay table" described in the FAC "does not represent a specific winning combination of symbols that is determined for 'each play of the game'", and that the accused "prize viewer" described in the FAC "does not specify the specific arrangement of symbols that will comprise a winning combination for a particular play of the game." Dkt. 32 at 21-22.[5] Of course, these are merely attempts by Defendants to argue against the facts set forth in the FAC. As the screenshots embedded in the FAC show, the firmware of each game includes a pay table construct of both winning combinations and their associated payouts, which govern in the case of each play of the game.

The screenshots in the FAC show these pay tables, including the following:

---

[5] Defendants further argue over whether the FAC adequately alleges that the steps of Claim 44 are performed in order. Dkt. 32 at 22-23. However, Claim 44 is not a method claim, and the claim language relating to the configuration of the game processor (element **[44.2]**) does not specifically state that the configuration of the processor must follow any sequential order.

15



FAC, ¶58 (showing pay table on the left-hand side of the screen). As further example, paragraph 109 of the FAC shows the pay table towards the top-hand side of the screen:



Every accused product includes the prize viewer, which means that in every accused product the player can preview the result of a game to be played (including the payout) before committing to play it. *See* FAC, ¶68 ("a 'prize viewer' feature which illustrates the outcome of the next game before it is

16

played"). For the prize viewer to display the outcome and payout of a game yet to be played, the processor has to process this outcome in accordance with all of the winning combinations for each play of the game as set forth in the pay table, or provide equivalent functionality. The FAC details this element and provides fair notice to Defendants of the infringement contention. As such, it is sufficient to satisfy *Iqbal/Twombly*. *See* FAC, ¶¶68-69, 100-101.

As to **[44.5]**, "testing the game field prior to displaying the game …[,]" Defendants state that the FAC lacks allegations making it plausible that the processor carries out the testing step before displaying the game field. Here again, the FAC details the reasons that element **[44.5]** is infringed, either literally or under the doctrine of equivalents.

Again, as confirmed by pre-suit testing of the accused products, the processor tests potential outcomes (or provides equivalent functionality) in accordance with the various potential combinations set forth in the pay table <u>before</u> it can state the outcome of the next game to be played via the prize viewer. *See* FAC, ¶¶70-77, 102-108. If the testing was performed after display of a particular virtual game board for a game being played, the prize viewer feature would not be available to the player before seeing the game board. Thus, the FAC allegations set forth more than the mere claim that a "game displays a particular winning combination[.]" Dkt. 32 at 23. As these allegations show, the prize viewer

17

functionality is available to the player before the player chooses to play the next game (and therefore prior to the next game being displayed on the screen to the user). The accuracy of the prize viewer functionality is the product of pre-game testing by the processor, not serendipity. "This game incorporates a preview and a skill task such that skill predominates over chance!" FAC, ¶75.

Moreover, the fact that the FAC refers to prior art processors that do not carry out testing before displaying a winning combination is of no moment to the allegations of infringement in this case. *See* FAC, ¶ 28. The prior art processors in question did not copy salient features of the 223 Patent to enhance the level of skill in their games. *Id.*, ¶29. Specifically in the context of game processors provided to Defendants by Banilla Games, the prior art processors did not perform the pre-game prize viewer functionality in combination with the pay table construct for determining winning combinations for each game and making the gaming results known to the user before the user chooses to play the game.

Defendants also argue that Plaintiffs fail to meet their burden as to any claim other than claim 44, as the Complaint only charts claim 44. *See* Dkt. 32 at 21 n.4 (quoting *Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 1253533, at *3-4 (E.D. Va. Mar. 22, 2016) ("Plaintiffs must detail how each claim is infringed.")). However, for pleading purposes, identifying a single claim is sufficient:

18

The complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits— and alleged that the accused products meet "each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently." J.A. 54–55. These disclosures and allegations are enough to provide VGH Solutions fair notice of infringement of the asserted patents. The district court, therefore, erred in dismissing Disc Disease's complaint for failure to state a claim.

*Disc Disease Sols.*, 888 F.3d at 1260 (complaint which alleged that accused product met "at least one claim of the [asserted patents]" survived *Iqbal/Twombly*).

**III.   Plaintiffs Withdraw Allegations of Willful Infringement.**

While Plaintiffs dispute Defendants' claims regarding the adequacy of the allegations of direct infringement (as discussed in Section III, *supra*), Plaintiffs stipulate to the withdrawal of their allegations of willful infringement, without prejudice, pending any discovery which might support a claim of willfulness. To the extent the Court deems it necessary, Plaintiffs can file a Second Amended Complaint, with leave of Court, withdrawing Paragraphs 119 and 124 of the FAC.

**IV.   If the Court Finds any Aspect of the Motion to Dismiss Persuasive, the Court Should Grant Plaintiffs Leave to Amend the Complaint.**

Defendants ask the Court for a dismissal with prejudice. Assuming *arguendo* that the Court finds any ground set forth in the motion to dismiss persuasive, Plaintiff should be granted leave to amend in order to address any perceived deficiencies. *See Phillips v. City. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (reversing district court's dismissal of complaint without opportunity to

amend); *Myers v. City of Wilkes-Barre*, No. 3:18-cv-42, 2019 WL 210938, at *5 (M.D. Pa. Jan. 15, 2019) (quoting *Phillips,* 515 F.3d at 236, as follows: "unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time").

This case is at its inception. To the extent that the Court determines that any of the allegations of the FAC are insufficiently detailed, it is neither inequitable nor futile to provide Plaintiffs with a 10-day leave period in which to evaluate any grounds upon which the Court rules, and to amend the complaint if appropriate. Plaintiffs therefore conditionally request such leave to amend in the unlikely event that the Court considers any part of the motion to dismiss persuasive.

**KLEINBARD LLC**

December 2, 2019

Matthew H. Haverstick (PA ID No. 85072)
Eric J. Schreiner (PA ID No. 76721)
Paul G. Gagne (PA ID No. 42009)
Shohin H. Vance (PA ID No. 323551)
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-2000
Fax: (215) 568-0140
mhaverstick@kleinbard.com
eschreiner@kleinbard.com
pgagne@kleinbard.com
svance@kleinbard.com

-  and -

**HILL, KERTSCHER, & WHARTON, LLP**

Steven G. Hill, GA Bar No. 354658
*Admitted pro hac vice*
John L. North, GA Bar No. 545580
*Admitted pro hac vice*
Martha L. Decker, GA Bar No. 420867
*Admitted pro hac vice*
3350 Riverwood Parkway
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Fax: (770) 953-1358
sgh@hkw-law.com
jln@hkw-law.com
md@hkw-law.com

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

21

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss was filed on this 2nd day of December, 2019 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

_____
Shohin H. Vance

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing brief complies with the word-count limit set forth in this Court's Order, dated November 26, 2019. Based on the word count feature of the word-processing system used to prepare this brief, I certify that it contains 4,497 words, exclusive of the cover pages, tables, and the signature block.

Dated: December 2, 2019                           /s/ Shohin Vance