# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC <br><br> Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW <br><br><br> Honorable Jennifer P. Wilson |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  December 16, 2019

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................1

II. ARGUMENT.....................................................................................3

    A.    The Court Should Disregard Plaintiffs' Opposition Because It Is Untimely. ....................................................................................3

    B.    Plaintiffs' Arguments For Patent Eligibility Are Unavailing. .............4

        1.    Representative claim 44 fails *Alice* Step One because it is directed to the abstract idea of game play..................................4

        2.    The '223 patent fails *Alice* Step Two because it lacks an inventive concept. ...................................................................9

    C.    Plaintiffs' Infringement Claims Are Implausible..............................16

        1.    Plaintiffs' speculation fails to give rise to a plausible inference of direct infringement...............................................16

        2.    Plaintiffs' failure to adequately plead infringement of claim 44 precludes a plausible inference of infringement of unidentified claims. ...........................................................18

    D.    The Court Should Dismiss Plaintiffs' Inadequate Willful Infringement Allegations...............................................................19

    E.    The Court Should Dismiss The First Amended Complaint With Prejudice. .................................................................................20

III. CONCLUSION................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. HTC Corp.*,
  C.A. No. 17-83-LPS, 2019 WL 2904670 (D. Del. July 5, 2019) ........................12

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) .............................................................................5

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ...........................................................................12

*Baseball Quick, LLC v. MLB Adv. Media L.P.*,
  No. 11-cv-1735, 2014 WL 6850965 (S.D.N.Y. Dec. 4, 2014) ...........................18

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .............................................................10, 13, 14

*CBA Envmn't Servs., Inc. v. Toll Brothers, Inc.*,
  No. 3:18-cv-13294, 2019 WL 3451737 (D.N.J. July 31, 2019) .........................15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) .........................................................................5, 20

*Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*
  888 F.3d 1256 (Fed. Cir. 2018). ..........................................................................19

*Enfish, LLC v. Microsoft Corp.*
  822 F.3d 1327 (Fed. Cir. 2016) .............................................................................7

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) .........................................................................6, 7

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) .............................................................................8

*First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*,
  389 F. Supp. 3d 456 (E.D. Tex. July 22, 2019) ............................................13, 15

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) .......................................................................15

*Heurlin v. Yankowski*,
  No. 3:CV-11-0770, 2012 WL 375299 (M.D. Pa. Feb. 3, 2012)..........................20

*Howard v. Beard*,
  No. 1:06-cv-0832, 2007 WL 9760458 (M.D. Pa. Jan. 29, 2007).....................4, 5

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ..........................................................................13

*Ironworks Patents, LLC v. Apple Inc.*,
  No. 17-1399-RGA, 2018 WL 2944475 (D. Del. June 12, 2018) ..........................8

*Joey's Auto Repair & Body Shop v. Fayette Cty.*,
  __ F. App'x ___, 2019 WL 4082950 (3d Cir. Aug. 29, 2019)...........................20

*Konami Gaming, Inc. v. High 5 Games, LLC*,
  No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 22, 2018) .........................6

*McRO, Inc. v. Bandai Namco Games America Inc.*
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................................7

*Minelab Elecs. PTY Ltd. v. XP Metal Detectors*
  Civ. A. No. 16-1594, 2017 WL 2799879 (W.D. Pa. June 28, 2017) ...................8

*Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) ..........................................................................11

*Move, Inc. v. Real Estate All. Ltd.*,
  721 F. App'x 950 (Fed. Cir. 2018) .......................................................................9

*Myers v. City of Wilkes-Barre*,
  3:18-CV-42, 2019 WL 210938 (M.D. Pa. Jan. 5, 2019) ...................................21

*N. Star Innovations, Inc. v. Micron Techs., Inc.*,
  Civ. A. No. 17-506-LPS-CJB, 2017 WL 5501489.............................................17

*Nat Alts. Int'l Inc. v. Creative Compounds, LLC*,
  Civ. A. No. 17-506-LPS-CJB, 2017 WL 5501489.............................................15

*Nice Sys. Ltd. v. Clickfox, Inc.*,
  207 F. Supp. 3d 393 (D. Del. 2016).....................................................................6

*Phillips v. Cty. Of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................................21

*RaceTech, LLC v. Ky Downs, LLC*,
   167 F. Supp. 3d 853 (W.D. Ky. 2016).................................................................6

*Randazzo v. Grandy*,
   No. 3:CV-10-0154, 2011 WL 1811221 (M.D. Pa. May 12, 2011) ......................3

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) ..........................................................................9

*Sandbox Software, LLC v. 18Birdies, LLC*,
   C.A. No. 18-1649, 2019 WL 2524780 (D. Del. June 19, 2019) ...................4, 15

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ........................................................................13

*Search & Soc. Media Partners v. Facebook, Inc.*,
   No. 17-1120-LPS-CJB, 2019 WL 581616 (D. Del. Feb. 13, 2019)...................10

*SeeAmdocs (Israel) Ltd. v. Opennet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ........................................................................12

*Stewart v. Beard*,
   No. 3:07-cv-1916, 2009 WL 1936627 (M.D. Pa. July 2, 2009)..........................3

*Tenstreet, LLC v. DriverReach, LLC*,
   No. 1:18-cv-03633, 2019 WL 4832782 (S.D. Ind. Sept. 30, 2019) .....................7

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ............................................................................5

*United States v. Eleven Vehicles, Their Equipment & Accessories*,
   200 F.3d 203 (3d Cir. 2000) ...............................................................................3

*Wireless Media Innovations, LLC v. Maker Terminals, LLC*,
   100 F. Supp. 3d 405 (D.N.J. Apr. 20, 2015).......................................................6

*Yanbin Yu v. Apple Inc.*,
   392 F. Supp. 3d 1096 (N.D. Cal. 2019).............................................................15

**Statutes**

35 U.S.C. §101 ..................................................................................................13

**Other Authorities**

M.D. Pa. Local Rule 7.6 ....................................................................................3

## I.     INTRODUCTION

The Court should disregard Plaintiffs' Opposition Brief, Dkt. 37 ("Opp."), because Plaintiffs filed it late.  However, even if the Court considers the Opposition, the arguments therein do not change the fundamental fact that U.S. Patent No. 7,736,223 (the "'223 patent") claims patent-ineligible subject matter and that the First Amended Complaint (Dkt. 25) ("FAC") does not plead facts that make infringement plausible.

For *Alice* Step One, Plaintiffs do not dispute that a human could perform all steps of the claimed game play without a processor.  Instead, Plaintiffs argue that the '223 patent claims are not abstract because they are directed to a "special purpose processor"—a term not actually recited in any claim.  But neither claim 44 nor the patent generally focuses on a processor as being inventive.  Indeed, many of the '223 patent claims do not even recite a processor, and the claims that do (like claim 44) do not recite any aspect of the processor that constitutes a technological improvement.  The processor is nothing but an object for carrying out the claimed abstract gaming method.  Merely reciting a tangible computer component for performing an abstract concept does not make a claim non-abstract.

For *Alice* Step Two, Plaintiffs try to manufacture a factual dispute over whether a "specially configured processor" constitutes the requisite inventive concept.  But an inventive concept must be evident in the claims themselves, and

there is no fact dispute that claim 44 recites a "game processor," not a "special purpose processor." As such, Plaintiffs allegations regarding the unconventionality of the "special purpose processor"— true or not—are simply irrelevant to claim 44. Even if true, Plaintiffs' allegations do not provide the requisite inventive concept. In essence, Plaintiffs allege that a "special purpose processor" is unconventional because it implements purportedly non-conventional gameplay steps. But Plaintiffs impermissibly confuse novelty with patent eligibility. Using a conventional computer component in a new way does not render *the component itself* unconventional. And Plaintiffs do not allege (nor could they) that the "special purpose processor" contains some technological advancement itself. Thus, the facts as pled do not support patent eligibility.

Plaintiffs' retort when confronted with the implausibility of their various infringement allegations is also unavailing. Plaintiffs do not adequately explain how their allegations regarding the accused products' pay table and prize viewer or Plaintiffs' pre-suit testing—even if true—make infringement of claim limitations [44.4] and [44.5] plausible. Because Plaintiffs were already on notice of both the deficiencies in the patent and in the First Amended Complaint and cannot cure these legal defects, the Court should dismiss the First Amended Complaint with prejudice.

2

## II.   ARGUMENT

### A.   The Court Should Disregard Plaintiffs' Opposition Because It Is Untimely.

Plaintiffs failed to timely file their Opposition Brief.  Defendants filed their Opening Brief on November 15, 2019 (Dkt. 32).  Under Local Rule 7.6, any opposition was due by November 29, 2019.  *See* M.D. Pa. L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief."); *see also* M.D. Pa. Standing Order 17-3 (amending ECF User Manual "to remove reference to adding three days to respond to service by electronic means").  Plaintiffs did not file their brief until December 2, 2019—three days after the deadline.  *See* Dkt. 37.

Compliance with the Court's Local Rules is not optional.  *See Randazzo v. Grandy*, Civ. A. No. 3:CV-10-0154, 2011 WL 1811221, at *2 n.3 (M.D. Pa. May 12, 2011) ("The Court will not tolerate any violations of the Local Rules[.]"); *cf. United States v. Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (emphasizing district court may only depart from local rules where "it has a sound rationale for doing so" and remanding case where "court failed to address [party]'s argument that the Government's response was untimely filed").  Courts routinely deem a motion unopposed where parties submit an opposition brief after the deadline for doing so.  *See, e.g.*, *Stewart v. Beard*, No. 3:07-cv-1916, 2009

3

WL 1936627, at \*1 & n.1 (M.D. Pa. July 2, 2009); *Howard v. Beard*, Civ. No. 1:06-cv-0832, 2007 WL 9760458, at \*1 n.1 (M.D. Pa. Jan. 29, 2007). The result should be the same here.

### B.   Plaintiffs' Arguments For Patent Eligibility Are Unavailing.

#### 1.   Representative claim 44[1] fails *Alice* Step One because it is directed to the abstract idea of game play.

Plaintiffs argue that the '223 patent is not directed to an abstract idea, but each of their arguments fails.

First, Plaintiffs' suggestion that the claims are not directed to game play, but rather to a processor, is belied by the '223 patent itself. The patent does not emphasize or focus on a game processor. "Processor" is neither mentioned in the title, *see* '223 patent at 1:1-2 ("Electronic Gaming Method And System Having Preview Screen") nor in the general description of the invention. *Id.* at 1:13-17 ("The present invention is related generally to amusement and entertainment electronic gaming and, more particularly, to a method and system for providing a game preview display to players of an amusement or entertainment electronic game before playing the game."). While all claims are directed to the same particular way

---

[1] Plaintiffs do not challenge that claim 44 is representative of all claims of the '223 patent. Thus, the Court can determine the patentability of the entire patent based on analysis of claim 44 alone. *See* Defendants' Opening Brief (Dkt. 32) ("Opening Br.") at 6; *see also Sandbox Software, LLC v. 18Birdies, LLC*, No. 18-1649, 2019 WL 2524780, at \*3, \*4 (D. Del. June 19, 2019) (finding patent claim representative where plaintiff did not challenge assertion of representativeness).

of playing a game, many of them do not even recite a processor as a limitation. *See id.* at 16:8-46 (claims 37-46) & 18:1-45 (claims 58-63). The specification only mentions "game processor" twice, and not in a manner that describes anything out of the ordinary about what it can do. *Id.* at 2:30, 32. The specification's sole mention of an "embedded processor"—a term not actually used in the patent claims—is in reference to a step that is not even included in the claims. *Id.* at 4:41. Nothing in the '223 patent "suggests that the [processor] itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019). Given this undisputed record, the Court should disregard Plaintiffs' brazen attempt to rewrite the focus of the patent.

Second, Plaintiffs do not dispute that each of the steps of the claimed game play—including the preview and testing steps—could be carried out by human beings. *See* Opening Br. at 9-11. Instead, Plaintiffs suggest that claim 44 is not abstract because the claimed electronic gaming system is comprised of a "tangible" game processor.[2] But merely reciting a tangible component for performing an abstract concept does not render a claim non-abstract. *See In re TLI Commc'ns LLC*

---

[2] Plaintiffs assert that "Defendants do not argue that claim 44 . . . pre-empts any basic building blocks of innovation." Opp. at 4 n.1. This is misleading given that doing so is not required to show patent ineligibility. Indeed, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

*Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016); *see also Wireless Media Innovations, LLC v. Maker Terminals, LLC*, 100 F. Supp. 3d 405, 415 (D.N.J. Apr. 20, 2015) ("While Plaintiff argues that the claim is not abstract because it includes the use of tangible components, the Court has already noted that an abstract idea is not rendered patentable just because of connections to the physical world."). Indeed, numerous patent claims in the gaming context have been found to be abstract and invalid despite reciting a processor and/or other tangible computer components. *See, e.g.*, *Planet Bingo, LLC VKGS LLC*, 576 F. App'x 1005, 1006-07 (Fed. Cir. 2014); *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120, at *2, *19 (D. Nev. Feb. 22, 2018); *RaceTech, LLC v. Ky Downs, LLC*, 167 F. Supp. 3d 853, 860, 863 (W.D. Ky. 2016).

Here, "the focus of the claims is not on an improvement in computers as tools, but on "[a] certain independently abstract idea[ ]"—playing a game in a certain way—"that use[s] computers as tools." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (alterations omitted). The '223 patent "does not evidence any improvement in computer technology itself, but merely provides a generic environment in which to carry out the abstract idea." *Nice Sys. Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 400 (D. Del. 2016) (internal quotation marks omitted).

Third, Plaintiffs erroneously rely on cases involving patents that, unlike the '223 patent, contained claims that expressly claimed a technological improvement. *See* Opp. at 8 (collecting cases). *McRO, Inc. v. Bandai Namco Games America Inc.* involved specific features of rules as claim limitations, which limited the claim to a specific process of automatically animating characters using particular information and techniques. 837 F.3d 1299, 1313-16 (Fed. Cir. 2016). Rather than merely using a computer as a tool to automate a process performed by humans, the specific rules in the claimed method of the *McRO* patent replaced a human artist's judgment with specific rules that allowed computers to produce accurate and realistic lip synchronization and facial expressions in animated characters. *See FairWarning*, 839 F.3d 1094 (*McRO* cannot salvage patentability where "it is [the claimed] incorporation of a computer, *not* the claimed rule, that purportedly" constitutes improvement.) (emphasis in original); *Tenstreet, LLC v. DriverReach, LLC*, No. 1:18-cv-03633-JRS-TAB, 2019 WL 4832782, at *5 (S.D. Ind. Sept. 30, 2019) (distinguishing *McRO* from patent claiming ineligible subject matter that merely took abstract idea and applied it using computer).

*Enfish, LLC v. Microsoft Corp.* likewise involved specifically claimed technological improvements, not merely abstract steps carried out by a processor. 822 F.3d 1327, 1336, 1338 (Fed. Cir. 2016) ("[F]ocus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a

7

computer database),” which improved way that computers operated and handled data by allowing more efficient launching and adaptation of database.).  So too did the claims in *Ironworks Patents, LLC v. Apple Inc.*, Civ. A. No. 17-1399-RGA, 2018 WL 2944475, at \*4 (D. Del. June 12, 2018) (“claims are directed to an improved ‘portable device’ and ‘mobile station,’ respectively, and recite limitations for those improved tangible systems” that include “specific components that . . . perform specific functions in response to specific events”) and *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) (claims directed to “behavior-based virus scan” were specific improvement in computer functionality that “enable[d] a computer system to do things it could not do before”).  Similarly, the claims at issue in *Minelab Elecs. PTY Ltd. v. XP Metal Detectors* claimed specific technological improvements and hardware features (*e.g.*, internal memory, receiver, and specific processing capability) that constituted an improvement to existing metal detector technology—a far cry from taking a human playable game and merely carrying it out on a computer.  Civ. A. No. 16-1594, 2017 WL 2799879, at \*5 (W.D. Pa. June 28, 2017) (“claimed method could not be performed by two people exchanging metal detector settings in writing or verbally because the specific metal detector described in claim 1 is necessary to allow those settings to be stored on the detector and altered”).

8

At bottom, the '223 patent is directed to a single abstract idea—a type of game play.  Carrying out the idea using a game processor does not alter its abstract nature. The Federal Circuit and numerous district courts have held that playing a game or steps directed thereto are abstract and patent-ineligible ideas notwithstanding the implementation of game play on a computer.  *See* Opening Br. at 11-12.  The result should be the same here.

### 2. The '223 patent fails *Alice* Step Two because it lacks an inventive concept.

Plaintiffs seek to avoid dismissal by trying to manufacture a factual dispute. Plaintiffs argue that there is a dispute over whether a "specially configured processor supplied an inventive concept (as opposed to a conventional or merely generic technology)."  Opp. at 13.  However, there is no legitimate factual dispute preventing dismissal.

### a. There can be no fact dispute that the claim recites a "game processor," not a "special purpose processor."

Plaintiffs' assertions that the claimed processor is a special type of processor—whether true or not—are irrelevant because there is no "special processor" *in the claims.  RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident *in the claims.*") (emphasis added).  Here, it is undisputed that claim 44 recites a "game processor," not a "special purpose processor."  *See Move, Inc. v. Real Estate*

*All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018) (collecting cases and emphasizing "[w]here *the claim language* does not provide any specific showing of what is inventive about the limitation in question or about the technology used to generate and process it, we have concluded that the claims do not satisfy *Alice*'s second step") (internal quotation marks and alteration omitted) (emphasis added).  Plaintiffs cannot change this fact by simply saying otherwise, and they point to no case suggesting that they can rewrite what is in the patent through assertions in the Complaint.[3]  *See Search & Soc. Media Partners v. Facebook, Inc.*, No. CV 17-1120-LPS-CJB, 2019 WL 581616, at *4 (D. Del. Feb. 13, 2019) ("Under *Twombly*, *Iqbal*, and *Berkheimer*, pleadings, as to the inventiveness of the claims are not entitled to the assumption of truth where they are conclusory or contradict the intrinsic evidence.") (alterations omitted).

---

[3] Plaintiffs point to the '223 patent specification's reference to "embedded processor" to argue for patent eligibility.  Opp. at 6.  But the only function associated with the "embedded processor" referenced in the specification is a function *not* recited in the claims:  namely, iterating through and testing each symbol combination to determine if it has complete lines.  As such, the claims are not directed to such an "embedded processor," nor can the "embedded processor" referenced in the specification serve as the "inventive concept" sufficient to transform an abstract idea into a patent eligible application.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (finding claim lacked inventive concept where "it does not recite any of the purportedly unconventional activities disclosed in the specification").

**b.      Even if true, Plaintiffs' factual allegations do not provide the requisite inventive concept.**

Even if the Court disregarded the explicit language of claim 44 and accepted Plaintiffs' unsupported assertion that the claim recites a "specially configured processor," Plaintiffs' factual allegations regarding the unconventionality of the processor—even if true—do not provide the requisite "inventive concept" under *Alice* Step Two.  This is because Plaintiffs' arguments for "unconventionality" are illogical, impermissibly circular, and insufficient to demonstrate any inventive concept.

Faced with an abundance of cases finding no inventive concept where known, generic computer components carry out abstract steps, Plaintiffs allege that claim 44 is directed to "a special purpose processor" which is "unconventional" because it is "new or original."  Opp. at 13.  But Plaintiffs do *not* allege that the "special purpose processor" is new or original because of some technological advancement in the processor itself.[4]  *See Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (finding claims invalid at *Alice* Step 2 because nothing in claims purported to improve functioning of computer itself or "effect an improvement in any other technology or technical field").  For example, Plaintiffs

---

[4] To the contrary, Plaintiffs' own allegations support that a person of skill in the art at the time of the patent filing would have recognized the "special purpose processor" that Plaintiffs contend is the subject of the '223 patent.  *See* FAC ¶ 24.

11

do not point to anything "changing the computer functionality to improve the efficiency of the technological process," as was sufficient to salvage patentability in *3G Licensing, S.A. v. HTC Corp.*, C.A. No. 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019).  Nor do Plaintiffs point to anything inventive about the architecture of the claimed technological component.  *See Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016) (*Alice* Step Two satisfied where claim provides "a technological solution to a technological problem specific to computer networks" by altering component architecture to "minimize impact on network and system resources" and "enable load distribution").

Instead, Plaintiffs assert the "special purpose processor" is "new and original" simply because it is implementing alleged "non-conventional steps."[5]  Opp. at 13. But this is hopelessly circular.  According to Plaintiffs, claim 44 does not involve a conventional processor performing an abstract idea because the processor is "new"—but only because it implements the purportedly "new" abstract idea. Using a conventional computer component in a new way does not render *the component*

---

[5] Plaintiffs do not allege an inventive concept in the "new steps" themselves.  Nor could they.  Although an inventive concept may, in some circumstances, be found in the context of a particular "ordered combination" of steps, *see BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016), Plaintiffs have expressly disavowed that claim 44 contains such an eligible ordered combination.  *See* Opp. at 15 n.5 ("[T]he claim language relating to the configuration of the game processor (element [44.2]) does not specifically state that the configuration of the processor must follow any sequential order.").

*itself* "unconventional," and Plaintiffs cite to no authority that holds otherwise. To the contrary, controlling case law emphasizes that a court should not confuse novelty with patent eligibility. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (Court "may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("[T]he 'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (emphasis in original).

Plaintiffs' allegations in the First Amended Complaint—even assuming *arguendo* they are true—do not support an inventive concept of a nonconventional processor; they support only that a conventional computer components practice purportedly new abstract steps. This is exactly what *Alice* has found to be patent ineligible under 35 U.S.C. §101. 573 U.S. at 222.

### c. The cases cited by Plaintiffs are inapposite.

A party cannot invent a factual dispute where none exists in order to salvage patentability. Neither the *Berkheimer* nor *Aatrix* cases, cited by Plaintiffs, hold differently. *See First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. July 22, 2019) ("The *Berkheimer* and *Aatrix*

13

cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself.").

In *Berkheimer*, the Federal Circuit did not reject invalidity assertions based on factual allegations in a complaint. Rather, the Court found certain claims *invalid* where—like here—the patent claims did not disclose any inventive concept sufficient to transform the abstract idea of the patent into something more. *See* 881 F.3d at 1369. For other claims, the Federal Circuit reversed a district court's finding of invalidity because of fact issues raised by statements *in the patent specification* regarding claimed concepts. *Id.* at 1370.

In *Aatrix*, the Federal Circuit found that detailed allegations in a complaint prevented dismissal where those allegations specifically detailed why the "claimed invention is directed to an improvement *in the computer technology itself* and not directed to generic components performing conventional activities." *See* 882 F.3d 1121, 1127 (Fed. Cir. 2018) (chronicling specific allegations detailing how "data file . . ." limitation at issue constituted improvement to computer technology, including because it "allowed data to be imported from an end user application without needing to know proprietary database schemas and without having to custom program the form files to work with each outside application" and "permit[ted] data to be retrieved from a user application and inserted into a form, eliminating the need for

14

hand typing in the values and eliminating the risk of transcription error"). This stands in sharp contrast to Plaintiffs' allegations, which are conclusory and do not purport to suggest that the claimed processor represents an advance in computer technology itself. *See* FAC ¶¶ 24-26.

Indeed, post-*Berkheimer* and *Aatrix*, the Federal Circuit and numerous district courts have invalidated claims at the motion to dismiss phase despite a plaintiff's conclusory assertions regarding inventiveness. *See, e.g.*, *Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 F. App'x 996, 999 (Fed. Cir. 2018); *Sandbox Software, LLC*, 2019 WL 2524780, at *5("[T]o the extent that [patentee] cites to *Aatrix* to suggest that there are factual issues here as to step 2, the Court finds that here there are only well-known and conventional computer components and processes recited in the claim."); *First-Class Monitoring, LLC*, 389 F. Supp. 3d at 471-72 (collecting cases); *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096, 1106 (N.D. Cal. 2019).[6] Given that

---

[6] Citing *CBA Envmn't Servs., Inc. v. Toll Brothers, Inc. and Nat Alts. Int'l Inc. v. Creative Compounds, LLC*, Plaintiffs appear to suggest that a self-serving statement in a complaint is alone sufficient to create a factual issue under *Alice* Step Two. Not true. In *CBA*, a court held that statements in the asserted patent's *specification* raised an issues over conventionality of machinery that was "described with a degree of detail and specificity" in the claims and specification. No. 3:18-cv-13294-FLW-DEA, 2019 WL 3451737, at *5 & *7 (D.N.J. July 31, 2019). In *Nat. Alts. Int'l*, the accused infringer relied upon statements *in the specification* to support its claims of non-conventionality; the Court found that such statements were not clear in establishing that highly-specific claims were well-understood. 918 F.3d 1338, 1345 (Fed. Cir. 2019). Neither of these cases supports denial of a motion to dismiss simply because the specification does not admit that a non-specific claimed component (like "game processor") is well-understood, routine, and conventional.

Plaintiffs point to nothing in the specification or the First Amended Complaint that suggests claimed improvements in processor technology, the Court should do the same here.

### C. Plaintiffs' Infringement Claims Are Implausible.

#### 1. Plaintiffs' speculation fails to give rise to a plausible inference of direct infringement.

Claim 44 requires that a processor must [44.4] "determin[e] at least one winning combination for each play of the game." '223 patent at 16:57-58. This claimed winning combination of symbols (hereinafter, "Determined Winning Combination") is not *any* theoretical winning combination (*e.g.*, of bars, diamonds, mushrooms, etc.) that might result from a play of the game; rather, it is a specific winning combination(s) determined for a given play of the game. That the Determined Winning Combination is not *all* winning combinations is clear from the context of the claim given that step [44.5] tests to ensure that a winning combination generated on a game field is not more valuable than—and therefore, necessarily different from—the Determined Winning Combination.

Plaintiffs argue that the Accused Devices' "pay table" shows the "winning combinations and their associated payout." Opp. at 15. Tellingly, Plaintiffs do not (because they cannot) assert that this pay table reflects or reveals the *Determined Winning Combination for a particular play of the game*. Put another way, one

16

cannot figure out by looking at the standard pay table whether a winning combination has been determined for a given game, much less what it may be.

Plaintiffs then argue that the "prize viewer" "display[s] the outcome and payout of a game yet to be played." Opp. at 17. However, Plaintiffs do not (because they cannot) assert that the "prize viewer" displays any combination of *symbols* at all, winning or otherwise. As the Court can see from the screen shots in the First Amended Complaint (*see* Dkt. 25 ¶¶ 55, 78, 85, 109, 114) the "prize viewer" shows a dollar amount, not combinations of symbols. Moreover, the very image pasted in Plaintiffs' Opposition shows the prize viewer showing a "$0.00" prize, reflecting a *losing* play of the game—which is the *opposite* result of the claimed *winning* combination. Op. at 16. Thus, neither the existence of a "pay table" or "prize viewer" gives rise to a plausible inference that the Accused Products contain a processor that "determin[es] at least one winning combination for each play of the game." *See N. Star Innovations, Inc. v. Micron Techs., Inc.*, Civ. A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 ("[T]he *Twombly/Iqbal* standard requires" more than "take Plaintiff's word for it" allegations to plausibly plead infringement.).

Plaintiffs assert that their allegations of pre-suit testing of the accused products support that the accused products' processor carries out claim element 44.5—"testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination

17

is not generated inadvertently in completing the field." Specifically, Plaintiffs assert in conclusory terms that "[t]he accuracy of the prize viewer functionality is the product of pre-game testing by the processor, not serendipity." Opp. at 18. But testing and serendipity are not the only way to achieve desired outcomes. If a dealer arranges a deck to produce the outcome he wants, he neither has to test a dealt hand nor rely on serendipity to have confidence in the outcome. As such, Plaintiffs' allegations that they have determined the accuracy of the accused products' payouts does not lead to an inference that the accused products must carry out the specific testing of the claimed method. *See Baseball Quick, LLC v. MLB Adv. Media L.P.*, No. 11-cv-1735, 2014 WL 6850965, at \*1 (S.D.N.Y. Dec. 4, 2014) (finding no patent infringement where accused product achieved claimed result in different way than claimed method).

### 2. Plaintiffs' failure to adequately plead infringement of claim 44 precludes a plausible inference of infringement of <u>unidentified claims.</u>

As explained herein, Plaintiffs' conclusory and speculative allegations pertaining to infringement of claim 44 cannot withstand dismissal. Because claim 44 is the sole claim specifically identified in the First Amended Complaint, once the conclusory allegations pertaining to claim 44 are disregarded, there remains no basis—let alone the requisite plausible factual basis—to conclude that Defendants infringe any of the other 74 claims of the '223 patent. Thus, Plaintiffs' reliance on

18

*Disc Disease Solutions, Inc. v. VGH Solutions, Inc.* (Opp. at 19) is misplaced. *Disc Disease* merely stands for the proposition that where (1) a "case involves a simple technology," (2) the two asserted patents "consist[ed] of only four independent claims," and (3) the accused products were specifically identified with photographs which plausibly demonstrated that the accused products satisfied each claim limitation, allegations that the identified products infringed one or more claims were sufficient to withstand dismissal under *Iqbal/Twombly*. 888 F.3d 1256, 1260 (Fed. Cir. 2018). It does not stand for the proposition that failure to adequately allege facts to support the infringement of any claim of a patent is somehow sufficient to survive dismissal. Here, the few stray screen shots included in the Amended Complaint fail to demonstrate whether the processor of the accused products performs the claimed game play steps, and is thereby infringing *any* claim of the '223 patent. Thus, Plaintiffs have fallen far short of pleading sufficient facts to give rise to a plausible inference that the accused product infringes any of the claims of the '223 patent.

D.   **The Court Should Dismiss Plaintiffs' Inadequate Willful Infringement Allegations.**

In their Opening Brief, Defendants demonstrated that Plaintiffs' willful infringement allegations were insufficient to state a claim and that these allegations should be dismissed. Opening Br. at 25-26. Plaintiffs have not attempted to refute Defendants' arguments. Accordingly, the Court should dismiss Plaintiffs' willful infringement allegations.

19

**E.    The Court Should Dismiss The First Amended Complaint With Prejudice.**

Plaintiffs seek leave to file a second amended complaint should the Court perceive deficiencies with the First Amended Complaint.  The Court should reject the request.  No amendment can change that the '223 patent does not claim patent-eligible subject matter.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019) (affirming dismissal with prejudice due to patent claiming ineligible subject matter).

Further, where, as here, Plaintiffs have already used up their one free bite at the amendment apple under Rule 15 to try to address the *Iqbal/Twombly* deficiencies raised in an original motion to dismiss, courts grant dismissal with prejudice.  *See, e.g.*, *Heurlin v. Yankowski*, Civ. A. No. 3:CV-11-0770, 2012 WL 375299, at *6 (M.D. Pa. Feb. 3, 2012).

Plaintiffs do not identify with any specificity how they could plausibly cure any of the deficiencies identified in Defendants' Motion and discussed herein. Therefore, permitting further amendment will only needlessly prolong the costs of this lawsuit and would be inequitable and futile.  As such, the Court should grant dismissal with prejudice.  *See Joey's Auto Repair & Body Shop v. Fayette Cty.*, __

F. App'x \_\_\_, 2019 WL 4082950, at \*1, \*3 (3d Cir. Aug. 29, 2019) (affirming dismissal with prejudice).[7]

## III.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint (Dkt. 25) with prejudice.

Dated:  December 16, 2019          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

---

[7] Plaintiffs rely on two cases to suggest that dismissal with prejudice in this context would be reversible error. *See* Opp. at 19-20 (citing cases). Not so.  The cases cited acknowledge that dismissal with prejudice is appropriate in instances—like here— where amendment would be futile and/or inequitable. *See Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 246 (3d Cir. 2008); *Myers v. City of Wilkes-Barre*, 3:18-CV-42, 2019 WL 210938, at \*5 (M.D. Pa. Jan. 5, 2019).