# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM OF PENNSYLVANIA, LLC, | : : : | Civil No. 3:19-CV-01470 |
| Plaintiffs, | : : : | |
| v. | : : : | |
| PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC, | : : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC's motion to dismiss. (Doc. 31.) Defendants argue that the patent at issue claims patent-ineligible subject matter pursuant to 35 U.S.C. § 101, and that the amended complaint fails to state a plausible claim for patent infringement. Applying the standard established by the Supreme Court in *Alice Corporation Pty. Ltd. v. CLS Bank International*, this court finds that although the claim at issue is an abstract idea, Plaintiffs have adequately alleged an inventive concept sufficient to survive a motion to dismiss. For the reasons that follow, the court will deny the motion. (Doc. 31.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Savvy Dog Systems, LLC ("Savvy Dog") and POM of Pennsylvania, LLC ("POM") (collectively, "Plaintiffs") initiated this action via complaint on August 23, 2019, against Defendants Pennsylvania Coin, LLC and

1

PA Coin Holdings, LLC (collectively, "Defendants"). Defendants filed a motion to dismiss, prompting Plaintiffs to file an amended complaint on November 1, 2019. (Docs. 21, 25.) The single count in the amended complaint sets forth a claim for patent infringement under 35 U.S.C. § 271 of Savvy Dog's Patent Number: US 7,736,233 ("'223 Patent"). (Doc. 25.)

The following facts are gleaned from Plaintiffs' amended complaint and the '223 Patent attached thereto for the purpose of ruling on Defendants' motion to dismiss.[1] Savvy Dog is the record title owner of the '223 Patent, and POM has an exclusive license to the '223 Patent in Pennsylvania. (Doc. 25, ¶ 13.) The '223 Patent was filed on June 30, 2006, and issued on June 15, 2010, with the title of "Electronic Gaming Method and System Having Preview Screen." (*Id.* ¶ 14.) Summarizing the background of the '223 Patent, Plaintiffs aver that "[t]he use of gambling devices with game processors to implement games of chance (e.g., bingo, slot machines, poker) is largely outlawed because the games in question are considered games of chance." (*Id.* ¶ 18.) However, most jurisdictions permit "skill-based amusement machines." (*Id.*) "To qualify as a skill-based amusement machine . . . the outcome of play during the game must be controlled by the person

---

[1] While the amended complaint provides significant factual detail, the parties' briefs narrow the pertinent facts for resolving this motion. As such, the court will only summarize the most pertinent facts from the amended complaint here.

playing the game and not by predetermined odds or random chance controlled by the machine." (*Id.*)

The abstract of the '223 Patent describes it as follows:

> An electronic gaming method and system with a game preview display. A field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines and displays each winning combination of symbols that is formed by such wild symbol location selection. A new game field can then be constructed and previewed on the game display.

(Doc. 25-1, p. 2.)[2] Thus, the processor "test[s] the field for compliance with at least one of the preceding selections prior to presenting the field to the player. The displayed game field cannot contain a winning combination before play." (*Id.* at 16.) According to Plaintiffs' amended complaint, prior to the time of this invention, gaming terminals did not contain a game processor that incorporated this preview element patented by the '223 Patent because "[t]he electronic gaming industry considered such practices counter-intuitive." (Doc. 25, ¶¶ 16–22.)

Plaintiffs aver that the '223 Patent encompasses novel, non-obvious electronic game processor technology including, but not limited to, "a game processor that is specifically configured for testing the game elements and

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

automatically previewing the feature of a game to be played prior to initiating activation of game play." (*Id.* ¶ 25.)

The amended complaint alleges infringement of claim 44 of the '223 Patent. (*See* Doc. 25.) Claim 44 provides:

> **44.** An electronic gaming system comprising:
> an electronic game terminal including a touch screen display;
> a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:
> constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
> determining at least one winning combination for each play of the game;
> testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generating inadvertently in completing the field;
> automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;
> determining if the player has decided to play the displayed game; and
> displaying an outcome resulting from play of the displayed game.

(Doc. 25-1, pp. 19–20.)

Plaintiff POM incorporated the game processor detailed in claim 44 of the '223 Patent in jurisdictions which do not permit games of chance, but do permit games of skill, such as Pennsylvania. (Doc. 25, ¶ 32.) Because these games were commercially successful, other companies such as Banilla Games sought to copy POM's approach by "embedding a game board suitable for installation into a gaming terminal with a specifically configured game processor that performs

testing and preview features in an effort to elevate the level of skill associated with the game." (*Id.*) Plaintiffs allege that Defendants infringed and continue to infringe on the '223 Patent by selling "electronic video gaming terminals equipped with gaming (circuit) boards supplied by Banilla Games, and having preloaded thereon one or more games described by Banilla Games as 'Preview + Skill' Games. . . . and Fusion Games." (*Id.* ¶¶ 41–42.)

On November 15, 2019, Defendants filed a motion to dismiss Plaintiffs' amended complaint along with a supporting brief. (Docs. 31–32.) Plaintiffs opposed the motion on December 2, 2019, and Defendants timely filed a reply and request for oral argument. (Docs. 37–39.) The court granted Defendants' request for oral argument on February 25, 2020, and oral argument took place on March 17, 2020. (Doc. 49.) During oral argument, the parties utilized presentations which were admitted as exhibits. (Doc. 56.) Following argument, the court ordered supplemental briefing on specific cases discussed and cited by Plaintiffs. (Doc. 57.) Plaintiffs timely submitted their brief on March 20, 2020, and Defendants submitted their brief on March 25, 2020. (Docs. 58–59.)

## JURISDICTION

Because this case raises a federal question of patent infringement under 35 U.S.C. § 271, the court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Further, venue is appropriate under 28 U.S.C. §§ 1391 and 1400(b).

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). This type of motion to dismiss tests the sufficiency of the complaint against the pleading requirements of Rule 8(a) necessitating "a short and plain statement of the claim showing that the pleader is entitled to relief," and giving "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not contain detailed factual allegations, to survive a Rule 12(b)(6) motion, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

However, the court cannot dismiss a complaint simply because "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556–57). Rather,

Rule 8 requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## DISCUSSION

In their motion to dismiss, Defendants argue that the court should dismiss the amended complaint because the '223 Patent claims patent-ineligible subject matter under 35 U.S.C. § 101. (Doc. 32, pp. 12–27.) Alternatively, Defendants argue that Plaintiffs have failed to plead a plausible direct infringement claim and willful infringement claim, and that the court should dismiss the amended complaint with prejudice.[3] (*Id.* at 27–34.)

### A. Patent Eligibility

Section 101 provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. There are three subject matter categories that are patent ineligible: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

---

[3] Plaintiffs stipulate to withdraw "their allegations of willful infringement, without prejudice, pending any discovery which might support a claim of willfulness." (Doc. 37, p. 23.) Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' willful infringement claim without prejudice. Furthermore, because the court is not dismissing Plaintiffs' amended complaint, Defendants' final argument regarding dismissal with prejudice is moot.

7

Because patent eligibility under section 101 is a question of law, it can be determined at the motion to dismiss stage. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (hereinafter "*Aatrix I*"). However, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record . . . refutes those allegations as a matter of law or justifies dismissal under rule 12(b)(6)." *Aatrix I*, 882 F.3d at 1125 (alterations and internal quotations omitted) (quoting *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F. 3d 1089, 1097 (Fed. Cir. 2016)). If there are claim construction disputes at this stage, the court must either adopt the non-moving party's constructions or "resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Id.* (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)).

In determining section 101 eligibility, the court need not "parse each individual claim," rather, analyzing a patent's representative claim is sufficient. *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *10 n.3 (C.D. Cal. Oct. 28, 2014) (citations omitted). Here, the parties agree that

claim 44 is representative of the '223 Patent at least for the purpose of resolving Defendants' motion to dismiss. (Doc. 60, pp. 40:20–41:2.)[4]

In *Alice*, the Supreme Court reaffirmed the framework set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The court must first determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79.)

### 1. *Alice* Step One

"The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Alice*, 573 U.S. at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). While the Supreme Court has not established "a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry," it has recognized that "fundamental

---

[4] An official transcript of the March 17, 2020 oral argument was docketed on March 27, 2020. (Doc. 60.)

economic practices, methods of organizing human activity, and mathematical algorithms are abstract ideas." *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 537 (D. Del. 2019) (alterations and quotations omitted) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *Alice*, 573 U.S. at 219; *Benson*, 409 U.S. at 64). Courts have found it instructive to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* (quoting *Enfish*, 822 F.3d at 1334.) However, courts "must be careful to avoid oversimplifying the claims because 'at some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (alterations omitted) (quoting In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016)).

Claim 44 describes an "electronic gaming system" that is comprised of an electronic game terminal with a touch screen display and a "game processor" which is "configured for" six steps. (Doc. 25-1, p. 19–20.) Those six steps that the game processor is configured for are:

> [1] constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermine game symbols;
> [2] determining at least one winning combination for each play of the game;
> [3] testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined

> winning combination is not generated inadvertently in completing the field;
> [4] automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;
> [5] determining if the player has decided to play the displayed game; and
> [6] displaying an outcome resulting from play of the displayed game.

(*Id.*)

Defendants argue that the '223 Patent fails *Alice* step one because it patents the ineligible abstract idea of "a way of playing a game" and "method of gameplay." (Doc. 60, pp. 43:16–44:8.) "Distilled to its simplest form, representative claim 44 is just a way to play a game." (Doc. 32, p. 15.) In their brief, Defendants illustrate the six steps of claim 44 through a card game played by two people, and argue that "[a]pplying generic computer components to carry out the claimed human activity does *not* transform it into a non-abstract idea." (*Id.* at 16–19 (citing *RaceTech, LLC v. Ky. Downs, LLC*, 167 F. Supp. 3d 853, 863 (W.D. Ky. 2016).) Defendants further argue that the context in which the applicants developed the '223 Patent is important because it proves that the '223 Patent is a way of playing a game. (Doc. 60, p. 8:9–8:19.) Specifically, the '223 Patent was developed in the context of gaming laws regulating what constitutes a skill-based game and have "advanced a particular way of playing [a] game that deals with that legal framework." (*Id.* at 8:14–8:18.)

Although Plaintiffs acknowledge that the *Alice* step one analysis is a "close call," they argue that claim 44 establishes an "architecture or a platform" for elevating a game of chance to a game of skill. (Doc. 60, pp. 28:15–28:16, 45:6–45:9.) While Plaintiffs agree that the six steps are "rules," they are "rules for setting up a game to be played, not necessarily for playing the game." (*Id.* at 46:2–46:7.) In sum, Plaintiffs contend that claim 44 is a non-abstract idea because the six steps of claim 44 are rules that enable the game processor to convert a game of chance to a game of skill without a limitation to any specific game. (*See id.* at 46:11–46:20.) Plaintiffs further argue that Defendants' kitchen table card game oversimplifies the language of claim 44 to manual "steps," rather than acknowledging that claim 44 is "directed to a gaming system comprising a <u>tangible</u> game processor specially configured to test and preview a game." (Doc. 37, pp. 10–11.) To avoid oversimplification, Plaintiffs aver that the court must look at claim 44 as a whole as stated in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). (Doc. 60, p. 64:8–64:9.)

In support of their respective positions, the parties referred the court to cases they found to be most analogous to the case at hand. (Doc. 60, pp. 41:9–42:14, 45:10–45:17.) In *In re Smith*, cited by Defendants, the court examined a "wagering game utilizing real or virtual standard playing cards" that was ruled patent-ineligible on application and by the Patent Trial and Appeal Board. 815

F.3d 816, 817 (Fed. Cir. 2016). The court concluded that the claims "directed to rules for conducting a wagering game, compare to other 'fundamental economic practice[s]' found abstract by the Supreme Court." *Id.* at 818 (quoting *Alice*, 573 U.S. at 220). The court ultimately held that "describing a set of rules for a game" is an abstract idea. *Id.* at 819.

Plaintiffs cited two purportedly analogous cases for *Alice* step one – *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Nos. 11-00189/13-00720, 2014 WL 7012391 (C.D. Cal. Nov. 12, 2014), and *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). In *Ameranth*, the court denied defendants' motion for summary judgment regarding a patent claiming "computerized systems and methods for monitoring a physical casino poker game." 2014 WL 7012391 at *1. Expressing no opinion on the motion's question of patent invalidity, the court held that Defendants failed to establish *Alice* step one because they did not satisfy their summary judgment burden. *Id.* at *4–9. The court stated that "[a]n inability to articulate an abstract idea to which claims are directed may be a clue that those claims satisfy section 101." *Id.* at *9. Because defendants raised certain arguments for the first time in their reply brief, the court to reminded defendants that its role is not "to develop winning theories for the parties." *Id.* at *4.

13

The Federal Circuit in *McRO* held that the patents "allowing computers to produce 'accurate and realistic lip synchronization and facial expressions in animated characters' that previously could only be produced by human animators" were not abstract ideas under § 101. 837 F.3d at 1313–1316 (citations omitted). The patents created technological improvements using a combined order of specific rules to produce a sequence of synchronized animated characters. *Id.* Thus, the court found that the "claim use[d] the limited rules in a process specifically designed to achieve an improved technological result in conventional industry practice" to be patent eligible. *Id.* at 1316.

Comparing *In re Smith*, *Ameranth*, and *McRO* to claim 44, the court finds *Ameranth* and *McRO* distinguishable. Plaintiffs argue that Defendants have changed their theory of the case from a way of playing a game to a method of gameplay similar to defendants in *Ameranth*. Regardless of the terms used in their briefs versus oral argument, the court finds the argument set forth by Defendants have been consistent throughout this matter – claim 44 sets forth rules for playing a game. Additionally, *Ameranth* is unhelpful as the court expressed no opinion on the patent's validity. As to *McRO*, the patents created technological improvements that replaced a human animator's judgment. As acknowledged by Plaintiffs' counsel during oral argument, claim 44 of the '223 Patent did not invent the game processor, rather, the invention was the specific firmware embedded into a game

processor. (Doc. 60, pp. 57:19–59:12.) Thus, claim 44 is most analogous to *In re Smith*. That is because claim 44 does not create new technology; it simply describes the rules for playing a game (albeit could be one of many games), converted from a game of chance to a game of skill.

Accordingly, reviewing claim 44 as a whole, the parties' competing characterizations, and comparing claim 44 to claims in previous cases, the court concludes that claim 44 describes the rules for playing a game, and is thus an abstract idea within the meaning of *Alice* step one.

### 2. *Alice* Step Two

In evaluating *Alice* step two, courts must look for an "inventive concept" by analyzing "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). The additional features or elements must ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72, 79). Furthermore, the patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72).

However, "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix I*, 882

F.3d at 1126–27 (citing *BASCOM Glob. Internet Servs., Inc.*, 827 F.3d at 1352). "[P]lausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing in the record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *Id.* (internal quotations and citations omitted) (quoting *FairWarning IP, LLC*, 839 F.3d at 1097). "Whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time may require weighing evidence, making credibility judgments, and addressing narrow facts that utterly resist generalization." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355 (Fed. Cir. 2018) (hereinafter "*Aatrix II*") (alterations and quotations omitted) (quoting *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. The Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018)). On the other hand, "[i]f the specification admitted that the claim elements are well-understood, routine, and conventional, it would be nearly impossible for a patentee to show a genuine dispute." *Id.* at 1356.

Defendants argue that claim 44 only recites general computer components, which is insufficient to transform the abstract idea of playing a game into an inventive concept. (Doc. 32, pp. 19–20.) They aver that the game processor is only mentioned twice in the '223 Patent specification and the claims do not provide "further detail regarding the structure, type, or composition of the

16

processor." (*Id.* at 20.) Defendants contend that there is nothing in the '223 Patent that points to non-conventional hardware or software components that perform the gameplay. (*Id.* at 21.) Furthermore, the particular ordering of the rules of the game do not transform the abstract idea into an inventive concept. (*Id.* at 22.) In support of their argument, Defendants cite several examples of courts finding that without "something more," the abstract idea of playing a game cannot be transformed into an inventive concept. (*Id.* at 22–23.)

Conversely, Plaintiffs argue that a fact dispute precludes Defendants from showing that claim 44's game processor was generic technology in 2006, when the '223 Patent was applied for. Plaintiffs contend that a "fact dispute exists over whether the testing and preview elements . . . of the processor critical to infusing an element of skill into a given game were 'well-understood, routine and conventional activities commonly used in the industry.'" (Doc. 37, p. 13.) Defendants purportedly ignore the *Berkheimer*, 881 F.3d 1360 (Fed. Cir. 2018), *Aatrix I*, and *Aatrix II* decisions in focusing on whether the '223 Patent states that the game processor is non-conventional, rather than also looking to the contentions in the amended complaint. (*Id.* at 14.) Plaintiffs argue that the facts alleged in the amended complaint would only be insufficient if they were contradicted by statements in the '223 Patent, which they are not. (*Id.* at 16.) In sum, Plaintiffs' argue that the *Berkheimer*, *Aatrix I*, and *Aatrix II* decisions require the court to

17

deny Defendants' motion because Plaintiffs have alleged an inventive concept sufficient to survive a motion to dismiss.

In comparing the case before the court with the cases cited by the parties in their briefs and at oral argument, the court finds that *Maxell Ltd. v. Huawei Device USA Inc.*, No. 5:16-CV-178, 2018 WL 4179107 (E.D. Tex. Mar. 29, 2018), is an appropriate comparison. In *Maxell*, the defendant argued that the patent did not invent or improve GPS or cellular technology or do anything more than "apply conventional activities on GPS and cellular devices." *Id.* at *7. Viewing the allegations in favor of the plaintiff, the court found that "the pleadings suggest that the claimed invention is directed to an improvement in the mobile handset itself, not generic components performing conventional activities." *Id.* at *8.

Here, the amended complaint alleges that at the time the '223 Patent was applied for, the prior art did not have a game processor that could insert skill into a game of chance. (Doc. 25, ¶ 19.) The amended complaint and '223 Patent also explain how this processor is different from the prior art and that this type of gaming system was nonexistent prior to the 2006 patent application. (*Id.* ¶¶ 20–24.) Plaintiffs plead that the game processor was not conventional, well-understood or routine technology in the gaming field in 2006. (*Id.* at ¶ 29.) At oral argument, the court gained a greater understanding of the technology at issue in that it is the firmware in the game processor that performs the task of converting a

game of chance into a game of skill. While it may ultimately be proven that this firmware is an abstract idea without any inventive concept, the court finds that viewing the allegations in Plaintiffs' favor, the amended complaint and '223 Patent adequately allege an inventive concept sufficient to survive a motion to dismiss. Whether the technology embedded into the game processor is an improvement and "inventive concept" is a question of fact that the court cannot determine at this early stage of litigation. Thus, the court will deny Defendants' motion to dismiss for patent-ineligible subject matter.

### B. Plausible Patent Infringement Claim

Defendants alternatively argue that Plaintiffs' amended complaint fails to plead a claim for patent infringement under Federal Rule of Civil Procedure 12(b)(6). (Doc. 32, pp. 27–31.) In doing so, Defendants attempt to impart a higher burden on Plaintiffs than articulated in *Iqbal/Twombly*. Conversely, Plaintiffs aver that the amended complaint meets the standards for asserting a direct infringement claim. (Doc. 37, pp. 18–23.)

Under 35 U.S.C. § 271(a), a patent is infringed upon when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." Plaintiffs' fifty-four page amended complaint sets forth adequate and specific facts to provide Defendants with fair notice of the claim against them and, viewed in a light most favorable to

Plaintiffs, alleges a plausible patent infringement claim. Contrary to Defendants' assertions, Plaintiffs' amended complaint provides much more than "copying the language of a claim element" and baldly stating that the "accused product has such an element." *See N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (requiring "some factual explanation for what it is about the product that leads Plaintiff to think it has the required elements"). Specifically, beginning at paragraph 42, the amended complaint details the "infringing products" sold by Defendants in Pennsylvania, and avers that the "infringing products" utilize specific claim elements (of claim 44 in the '223 Patent), determined by using game terminals sold/provided by Defendants. (Doc. 25, ¶¶ 42–115.) Accordingly, the court will deny Defendants' motion to dismiss based on the argument that Plaintiffs have failed to state a plausible patent infringement claim.

## Conclusion

For the reasons stated herein, the court will deny Defendants' motion to dismiss in its entirety. An appropriate order will issue.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Court Judge  
Middle District of Pennsylvania

Dated: April 1, 2020