# EXHIBIT D

PTO/SB/05 (09-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | | |
|---|---|---|
| **UTILITY PATENT APPLICATION TRANSMITTAL** (Only for new nonprovisional applications under 37 CFR 1.53(b)) | *Attorney Docket No.* | P175 1021.1 |
| | *First Inventor* | Michael R. Pace |
| | *Title* | Electronic Gaming Method and System Having Preview Screen |
| | *Express Mail Label No.* | |

| APPLICATION ELEMENTS See MPEP chapter 600 concerning utility patent application contents. | ADDRESS TO: | **Commissioner for Patents** P.O. Box 1450 Alexandria VA 22313-1450 |
|---|---|---|

1. ☑ **Fee Transmittal Form** (e.g., PTO/SB/17)
   *(Submit an original and a duplicate for fee processing)*
2. ☑ **Applicant claims small entity status.**
   See 37 CFR 1.27.
3. ☑ **Specification**      [*Total Pages*___38___]
   Both the claims and abstract must start on a new page
   *(For information on the preferred arrangement, see MPEP 608.01(a))*
4. ☑ **Drawing(s)** (35 U.S.C. 113)   [*Total Sheets*___9___]
5. **Oath or Declaration**      [*Total Sheets*___2___]
   a. ☑ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 18 completed)*
      i. ☐ <u>DELETION OF INVENTOR(S)</u>
         Signed statement attached deleting inventor(s) name in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
6. ☐ **Application Data Sheet.** See 37 CFR 1.76
7. ☐ **CD-ROM or CD-R** in duplicate, large table or Computer Program *(Appendix)*
      ☐ Landscape Table on CD
8. **Nucleotide and/or Amino Acid Sequence Submission** *(if applicable, items a. – c. are required)*
   a. ☐ Computer Readable Form (CRF)
   b.    Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

9. ☐ **Assignment Papers** (cover sheet & document(s))
   Name of Assignee_____

   _____

10. ☐ **37 CFR 3.73(b) Statement**      ☐ **Power of**
    *(when there is an assignee)*         **Attorney**
11. ☐ **English Translation Document** *(if applicable)*
12. ☐ **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
       ☐ Copies of citations attached
13. ☐ **Preliminary Amendment**
14. ☐ **Return Receipt Postcard** (MPEP 503)
       *(Should be specifically itemized)*
15. ☐ **Certified Copy of Priority Document(s)**
       *(if foreign priority is claimed)*
16. ☐ **Nonpublication Request** under 35 U.S.C. 122(b)(2)(B)(i).
       Applicant must attach form PTO/SB/35 or equivalent.
17. ☐ **Other:**_____

    _____

18. If a CONTINUING APPLICATION, *check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:*

☐ Continuation      ☐ Divisional      ☑ Continuation-in-part (CIP)      of prior application No.: 11/430,770

*Prior application information:*      Examiner not assigned      Art Unit: 3713

**19. CORRESPONDENCE ADDRESS**

☑ The address associated with Customer Number:   26158      OR   ☐ Correspondence address below

| Name | |
|---|---|
| Address | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Fax | |

| Signature | *[signature]* | Date | 6/30/06 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | Registration No. (Attorney/Agent) | 32,497 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000021

PTO/SB/17 (01-06)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

| Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818). **FEE TRANSMITTAL** **For FY 2006** | **Complete if Known** | |
|---|---|---|
| | Application Number | To be assigned |
| | Filing Date | June 30, 2006 |
| | First Named Inventor | Michael R. Pace |
| ☑ Applicant claims small entity status. See 37 CFR 1.27 | Examiner Name | |
| | Art Unit | |
| **TOTAL AMOUNT OF PAYMENT** ($) 1725.00 | Attorney Docket No. | P175 1021.1 |

**METHOD OF PAYMENT** (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify): _____

☑ Deposit Account   Deposit Account Number: 09-0528   Deposit Account Name: Womble Carlyle Sandridge & Rice, PLLC

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☑ Charge fee(s) indicated below            ☐ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17    ☑ Credit any overpayments

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**FEE CALCULATION** (All the fees below are due upon filing or may be subject to a surcharge.)

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES**

| | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | |
|---|---|---|---|---|---|---|---|
| Application Type | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | Fees Paid ($) |
| Utility | 150 | 75 | 500 | 250 | 200 | 100 | 425.00 |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | |

**2. EXCESS CLAIM FEES**

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | | Extra Claims | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 60 - 20 or HP = | | 40 | x | 25 | = | 1000.00 |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | | Extra Claims | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 6 - 3 or HP = | | 3 | x | 100 | = | 300.00 |

HP = highest number of independent claims paid for, if greater than 3.

**Multiple Dependent Claims**

| Fee ($) | Fee Paid ($) |
|---|---|
| | |

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | | Extra Sheets | | Number of each additional 50 or fraction thereof | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|---|---|
| - 100 = | | / 50 = | | (round up to a whole number) x | | | = | |

**4. OTHER FEE(S)**

Non-English Specification, $130 fee (no small entity discount)

Other (e.g., late filing surcharge): _____

Fees Paid ($)
_____
_____

**SUBMITTED BY**

| Signature | [signature: John J. Timar] | Registration No. (Attorney/Agent) 32,497 | Telephone 404-888-7412 |
|---|---|---|---|
| Name (Print/Type) John J. Timar | | | Date 6/30/06 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000022

PTO/SB/05 (09-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | |
|---|---|
| **UTILITY PATENT APPLICATION TRANSMITTAL** *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | **Attorney Docket No.** P175 1021.1 |
| | **First Inventor** Michael R. Pace |
| | **Title** Electronic Gaming Method and System Having Preview Screen |
| | **Express Mail Label No.** |

## APPLICATION ELEMENTS
See MPEP chapter 600 concerning utility patent application contents.

**ADDRESS TO:** Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

1. [✓] **Fee Transmittal Form** (e.g., PTO/SB/17)
   *(Submit an original and a duplicate for fee processing)*
2. [✓] **Applicant claims small entity status.**
   See 37 CFR 1.27.
3. [✓] **Specification** [Total Pages 38 ]
   Both the claims and abstract must start on a new page
   *(For information on the preferred arrangement, see MPEP 608.01(a))*
4. [✓] **Drawing(s)** (35 U.S.C. 113) [Total Sheets 9 ]
5. **Oath or Declaration** [Total Sheets 2 ]
   a. [✓] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 18 completed)*
      i. [ ] DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s) name in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
6. [ ] **Application Data Sheet.** See 37 CFR 1.76
7. [ ] **CD-ROM or CD-R** in duplicate, large table or Computer Program (Appendix)
   [ ] Landscape Table on CD
8. **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or
      ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

### ACCOMPANYING APPLICATION PARTS

9. [ ] **Assignment Papers** (cover sheet & document(s))
   Name of Assignee_____

10. [ ] **37 CFR 3.73(b) Statement** [ ] **Power of**
    *(when there is an assignee)* **Attorney**
11. [ ] **English Translation Document** (if applicable)
12. [ ] **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
13. [ ] **Preliminary Amendment**
14. [ ] **Return Receipt Postcard** (MPEP 503)
    *(Should be specifically itemized)*
15. [ ] **Certified Copy of Priority Document(s)**
    *(if foreign priority is claimed)*
16. [ ] **Nonpublication Request** under 35 U.S.C. 122(b)(2)(B)(i).
    Applicant must attach form PTO/SB/35 or equivalent.
17. [ ] **Other:**_____

18. If a CONTINUING APPLICATION, *check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:*

[ ] Continuation   [ ] Divisional   [✓] Continuation-in-part (CIP)   of prior application No.: 11/430,770

*Prior application information:* Examiner not assigned    Art Unit: 3713

## 19. CORRESPONDENCE ADDRESS

[✓] The address associated with Customer Number: 26158   OR   [ ] Correspondence address below

| Name | |
|---|---|
| Address | |
| City | State | Zip Code |
| Country | Telephone | Fax |

| Signature | *John J. Timar* | Date | 6/30/06 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | Registration No. (Attorney/Agent) | 32,497 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000023

PTO/SB/17 (01-06)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

| *Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).* | **Complete if Known** | |
|---|---|---|
| # FEE TRANSMITTAL<br>## For FY 2006 | Application Number | To be assigned |
| | Filing Date | June 30, 2006 |
| | First Named Inventor | Michael R. Pace |
| ☑ Applicant claims small entity status. See 37 CFR 1.27 | Examiner Name | |
| | Art Unit | |
| **TOTAL AMOUNT OF PAYMENT** \| ($) 1725.00 | Attorney Docket No. | P175 1021.1 |

**METHOD OF PAYMENT** (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify): _____

☑ Deposit Account    Deposit Account Number: 09-0528    Deposit Account Name: Womble Carlyle Sandridge & Rice, PLLC

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☑ Charge fee(s) indicated below    ☐ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17    ☑ Credit any overpayments

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**FEE CALCULATION (All the fees below are due upon filing or may be subject to a surcharge.)**

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES**

| Application Type | FILING FEES Fee ($) | Small Entity Fee ($) | SEARCH FEES Fee ($) | Small Entity Fee ($) | EXAMINATION FEES Fee ($) | Small Entity Fee ($) | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| Utility | 150 | 75 | 500 | 250 | 200 | 100 | 425.00 |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | |

**2. EXCESS CLAIM FEES**

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | | Extra Claims | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 60 | - 20 or HP = | 40 | x | 25 | = | 1000.00 |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | | Extra Claims | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 6 | - 3 or HP = | 3 | x | 100 | = | 300.00 |

HP = highest number of independent claims paid for, if greater than 3.

**Multiple Dependent Claims**

| Fee ($) | Fee Paid ($) |
|---|---|
| | |

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | | Extra Sheets | | Number of each additional 50 or fraction thereof | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|---|---|
| | - 100 = | | / 50 = | (round up to a whole number) x | | | = | |

**4. OTHER FEE(S)**

Non-English Specification,   $130 fee (no small entity discount)

Other (e.g., late filing surcharge): _____

Fees Paid ($): _____

| **SUBMITTED BY** | | | |
|---|---|---|---|
| Signature | *John J. Timar* | Registration No. (Attorney/Agent) 32,497 | Telephone 404-888-7412 |
| Name (Print/Type) John J. Timar | | | Date 6/30/06 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000024

Attorney Docket No.: P175 1021.1

# ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

## Cross-Reference to Related Application

[001]    This is a continuation-in-part of Application No. 11/430,770, filed May 9, 2006, which claims the benefit of Provisional Application No. 60/788,363, filed March 31, 2006.

## Background of the Invention

[002]    The present invention is related generally to amusement and entertainment electronic gaming and, more particularly, to a method and system for providing a game preview display to players of an amusement or entertainment electronic game before playing the game.

[003]    Amusement and entertainment type electronic games have become very popular with the public and, as their popularity has increased, several states have legalized certain types of gaming but under heavy regulation. For example, the state of Ohio generally prohibits, pursuant to statutes, gambling and the use of any gambling devices. However, skill-based amusement machines are permitted. To qualify as a skill-based amusement machine in Ohio, the outcome of play during the game must be controlled by the person playing the game and not by predetermined odds or random chance controlled by the machine. Some chance can be part of a skill-based amusement game, but skill must be the predominant feature. The play on the machine must involve a task, game, play, contest, competition or tournament in which the player actively participates.

WCSR 2477631v1

1

POM000025

[004]     On a Federal level, Congress enacted the Indian Gaming Regulatory Act (IGRA) in 1988 to regulate gaming operations run by Indian tribes on Indian land. The IGRA established three classes of games with a different regulatory scheme for each. Class I gaming is defined as traditional Indian gaming and social gaming for minimal prizes. Regulatory authority over class I gaming is vested exclusively in tribal governments.

[005]     Class II gaming is defined as the game of chance commonly known as bingo (whether or not electronic, computer, or other technological aids are used in connection therewith) and if played in the same location as the bingo, pull tabs, punch board, tip jars, instant bingo, and other games similar to bingo. Class II gaming also includes non-banked card games, i.e., games that are played exclusively against other players rather than against the house or a player acting as a bank. The IGRA specifically excludes slot machines or electronic facsimiles of any game of chance from the definition of class II games. Tribes retain their authority to conduct, license, and regulate class II gaming as long as the state in which the Tribe is located permits such gaming for any purpose and the Tribal government adopts a gaming ordinance approved by the National Indian Gaming Commission (NIGC). Tribal governments are responsible for regulating class II gaming with NIGC oversight.

[006]     Class III games include any games that are not class I or class II such as slots, video poker, video blackjack, video Keno, etc. that are usually offered in state-regulated casinos.

### Summary of the Invention

[007]     The present invention is directed to a system and method for providing a game preview display to players of an amusement or entertainment electronic game before playing the game. The invention also provides a game structure having a finite number of game plays for each

electronic (virtual) cartridge. Each game cartridge can provide a fixed or variable number of game plays as described herein. Variable number of game plays per cartridge are controlled by an action taken by a player before game play begins, such as selecting a denomination of play. The electronic game service provider supplies reloads of virtual game cartridges to the game operator or game distributor when all game plays for all cartridges are depleted.

[008]     In one aspect of the invention, an electronic gaming method with a game preview display is provided to a player. A game field is constructed having a plurality of elements on a game display wherein each element is filled by a game symbol from a plurality of available game symbols. The game symbols for each element are automatically determined such that there is no winning combination without player interaction. The field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines each winning combination of symbols that is formed by such wild symbol location selection. Each winning combination of symbols on the field of game symbols is displayed to the player. A new game field could then be constructed and presented on the game display.

[009]     In another aspect of the invention, a system is provided for electronic gaming with a game preview display. A game processor generates an electronic game display on a game terminal with a plurality of options selectable by a player. The game processor includes: (1) a component for constructing a field having a plurality of elements for a game display with each element being filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning

POM000027

combination without player interaction; (2) a component for presenting the field of game symbols to the player as a preview for deciding whether or not to play the displayed game; (3) a component for receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and (4) a component for displaying each winning combination of symbols on the field of game symbols.

[010]     In another aspect of the invention, a computer program product is provided for electronic gaming with a game preview display. The computer program product comprises a computer readable medium having computer readable code embedded therein. The computer readable medium includes: (1) program instructions that construct a field having a plurality of elements for a game display with each element being filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction; (2) program instructions that present the field of game symbols to the player as a preview for deciding whether or not to play the displayed game; (3) program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and (4) program instructions that display each winning combination of symbols on the field of game symbols.

[011]     In yet another aspect of the invention, a method, system, and program product for electronic gaming are provided that can be integrated with various types of electronic games. A game field is constructed having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols. The field of game symbols is presented on the game display to the player as a preview for deciding whether to play

the displayed game.  If the player decides to play the displayed game, an outcome is displayed on the game display.

## Brief Description of the Drawings

[012]     These and other advantages and aspects of the present invention will become apparent and more readily appreciated from the following detailed description of the invention taken in conjunction with the accompanying drawings, as follows.

[013]     Figs. 1A – 1B illustrate electronic game displays for a skill-based game in which the present invention can be implemented.

[014]     Fig. 2 illustrates processing logic for determining the remaining number of plays of an electronic game that are available at different denominations of play in an exemplary embodiment of the invention.

[015]     Fig. 3 illustrates an exemplary payout scheme for varying denominations of play in an exemplary embodiment.

[016]     Fig. 4 illustrates game terminal status receipts available to the operator of electronic games in the "plays level" exemplary embodiment.

[017]     Fig. 5 illustrates the processing logic for controlling a total number of plays of an electronic game based on a player's action taken prior to selecting a displayed game field element to change to a wild symbol in an exemplary embodiment.

[018]     Fig. 6 illustrates the processing logic for an exemplary embodiment of the invention having a game preview display.

[019]     Fig. 7 illustrates an exemplary game display having a preview screen displayed adjacent to the current game display.

[020]    Fig. 8 illustrates the processing logic for another exemplary embodiment of the invention having a game preview display.

## Detailed Description of the Invention

[021]    The following description of the invention is provided as an enabling teaching of the invention and its best, currently known embodiment. Those skilled in the relevant art will recognize that many changes can be made to the embodiments described, while still obtaining the beneficial results of the present invention. It will also be apparent that some of the desired benefits of the present invention can be obtained by selecting some of the features of the present invention without utilizing other features. Accordingly, those who work in the art will recognize that many modifications and adaptations to the present invention are possible and may even be desirable in certain circumstances, and are a part of the present invention. Thus, the following description is provided as illustrative of the principles of the present invention and not in limitation thereof, since the scope of the present invention is defined by the claims.

[022]    The present invention will be described in the context of the Tic-Tac Fruit electronic skill-based amusement game developed and licensed by Pace-O-Matic, Inc. Tic-Tac Fruit is a game loosely derived from tic-tac-toe that uses player skill to solve a puzzle. The similarity to tic-tac-toe extends from the use of a field or grid of nine spots or tiles arranged in a three by three array. On each play of the electronic game, the game software program constructs a puzzle or task for the player to solve. The electronic game always incorporates at least one correct solution and sometimes generates alternative solutions that may not provide the same prize as the best solution.

[023]    The Tic-Tac-Fruit electronic game is a single player game. The player is presented a field completely filled with apparently random symbols selected from a set of nine symbols that includes a "wild" symbol. The "wild" symbol can represent any of the other symbols in the set of game symbols. The "wild" symbol is identical in concept to the "wild card" in card games. The player chooses the displayed symbol in the field to become the "wild" symbol and the symbol(s) that it represents becomes the symbol necessary to complete a winning line(s). The game constructs the field so that the initial field does not place three of the same symbols in a row wherein a row is interpreted as being oriented horizontally, vertically, or diagonally. The field constructed does not include the "wild" symbol. With a three by three field, there are eight possible lines: three horizontal lines, three vertical lines, and two diagonal lines. The player gets a choice of replacing one of the initial nine spots or tiles with the "wild" symbol. The game's construction of the field guarantees that at least one line may be formed by placing the wild symbol selection in the proper spot. On average, two lines may be formed if the optimal spot for the "wild" symbol is selected. However, there is always the possibility that at least one line can be formed.

[024]    The player's skills enters into play as the player is given a short period of time in which to choose the "wild" symbol location. Since some symbols are more valuable than others and some locations for the wild symbol may complete multiple lines, a player must quickly examine all nine locations and determine the optimal location for the wild symbol. Once the player selects a location, the game converts the symbol displayed in the element to a wild symbol and examines the field of elements for complete lines and awards points accordingly.

[025]    Since there are eight symbols and nine spots on the field, the total number of combinations is approximately 134 million. However, since a field cannot have any initial

complete lines, the total number of initial combinations is reduced to approximately 118 million. Valid fields are determined by using an embedded computer processor to iterate through and test each combination to determine if it has any complete lines. If any lines are complete, the combination is not counted or used. The game software determines all of the initial "no-line" fields and tests each of these for potential winners where all fields that can potentially complete a line are counted. Since there are over 100 million compliant field combinations, the player must examine each lineup and symbol values to determine the best location for selecting the wild symbol on the field displayed.

[026]    The Tic-Tac-Fruit electronic game does not pick random fields until testing indicates that one is acceptable. Instead, the field is constructed to meet certain criteria. The steps involved in constructing a field in this electronic game are as follows:

1.    chose the number of winning lines (i.e., 1, 2, 3, 4);

2.    chose the orientation of each of the winning lines (i.e., horizontal, vertical, or diagonal);

3.    chose the symbols for each of the lines (i.e., cherries, plums, bells, etc.);

4.    fill in empty spots with random symbols; and

5.    test the complete field for compliance with the goals set by steps 1 and 3 and repeat the construction process if compliance fails.

[027]    One variation of the Tic-Tac-Fruit electronic game presents a game theme that is based primarily on fruit symbols. There are eight symbols and therefore eight different winning combinations. An exemplary touch screen display for this game is illustrated in Fig. 1A. The different symbols that can be displayed are shown in the left column of the display. The player selects a denomination for the next play of the game from among the denominations available on

the bottom of the display. In this example, the player has selected $0.75. The game grid depicted does not show any complete lines. Once the player selects the "Play" icon, he must decide which element on the display grid to select as the location of the wild symbol. As illustrated in Fig. 1B, the player selected the space in the upper right corner of the display grid which resulted in the simultaneous completion of two lines, i.e., a horizontal line and a diagonal line.

[028]    An exemplary award schedule for this version of the Tic-Tac-Fruit electronic game is provided in Table 1. The column headings represent denominations of play. In other words, the column headings represent the amount that the player can select for each play. The higher the denomination selected, the greater the potential winnings for each of the winning combinations. For example, if the player selects fifty cents as the denomination for the next play of the electronic game, and completes a line with three titanium symbols, he will win the equivalent of $250.00 in points. Had he successfully played the same game with a $4.00 denomination of play, his winnings would have been the equivalent of $2,000.00 in points. Likewise, if the player had selected a denomination of $2.00 and made a location selection for the wild symbol that simultaneously completed a line of three bells and a line of three plums, his winnings would have been the equivalent of $14.00 in points, $10.00 for the line of three bells and $4.00 for the line of three plums. The prizes marked with an asterisk are progressive value prizes. The value awarded for these prizes will increase with every game played.

**Table 1**

| Tic-Tac-Fruit (Classic) | | | |
|---|---|---|---|
| Symbol/Denomination | 50¢ | $1.00 | $2.00 | $4.00 |
| 3 Titanium | $250* | $500* | $1,000* | $2,000* |
| 3 Spinner | 80¢ | $1.60* | $3.20* | $6.40* |

| 3 Flip | * | * | * | * |
|---|---|---|---|---|
| 3 Bell | $2.50 | $3 | $10 | $20 |
| 3 Plum | $1 | $2 | $4 | $8 |
| 3 Orange | 8¢ | 16¢ | 32¢ | 64¢ |
| 3 Lemon | 4¢ | 8¢ | 16¢ | 32¢ |
| 3 Cherry | 2¢ | 4¢ | 8¢ | 16¢ |

[029]    In game operation, a player inserts money into the Tic-Tac-Fruit electronic game device through a bill acceptor located on the front of the electronic game cabinet or console beneath the button panel. The bill acceptor accepts U.S. notes of varying denominations. Bills inserted are displayed on the video screen as points available for game play. The player selects the denomination of play by touching the appropriate icon for the price of game play. A player may change the desired denomination at any time prior to engaging in game play.

[030]    Game play begins with the player touching the "Play" icon on the video screen or pressing the "Play/Credit" button on the cabinet exterior. The video screen presents nine symbols in a three by three array to the player as discussed above. The object of the game is for the player to recognize the most rewarding game outcome and to select the appropriate element (i.e., field location) to change from the displayed symbol to a wild symbol in order to obtain the most valuable prize available for the displayed field.

[031]    As described above, the initial nine symbols displayed will not present an automatic winning combination. The player must engage in the selection of the field element to be replaced with a "wild" symbol in order to obtain a winning game outcome. The player has a finite length of time in which to select the appropriate field element to replace with the "wild" symbol. Failure to select a field element location for the wild symbol in the allotted time will result in a

losing game outcome. In such an instance, the amount that would have been won is revealed to the player and placed into the "bonus pool" that will be won by the player successfully obtaining the top prize. Likewise, if a player selects a field element to replace with a wild symbol that does not obtain a winning outcome, or the best possible winning outcome, the amount that was not won is added to the bonus pool. In the case of the player not obtaining the best possible outcome, the difference between the prize won and the best possible prize is added to the bonus pool.

[032]    Essentially, the Tic-Tac-Fruit electronic game presents a task whereby the player must select the appropriate field element to replace with a wild symbol in an effort to obtain the highest value game outcome offered by the device. The prize is determined by a random selection from a finite pool of available prizes. The device selects the quantity of lines that will present a winning outcome. Prizes may be presented on one, two, three, or four lines in a single game play. The device selects the level of prize(s) to be awarded. A software algorithm assesses the arrangement of the prize(s) to be offered to assure that no other, more valuable prizes will inadvertently be presented. The key symbol needed to obtain the highest value prize is replaced with a non-winning symbol prior to display to the player.

[033]    The player may redeem accumulated credits after game play. Redemption of the credits is accomplished simply by pressing the "Ticket" button or touching the "Redeem" icon on the video screen. All accumulated credits will be redeemed as a cash voucher on a printed ticket. The printed ticket can be presented to a redemption counter within the venue for cash payment.

[034]    The Tic-Tac-Fruit game possesses a finite number of plays. The game is configured with electronic cartridges that contain a finite pool of game plays based upon eight different levels of winning prize values. The electronic cartridges are not accessible to the operator of the machine

and cannot be changed. When the current allotment of finite game plays in one cartridge is depleted, the next cartridge is automatically selected by the device. When all of the electronic cartridges are depleted, the device will become disabled with a message stating "out of plays" on the lower center of the video screen. The device operator must purchase additional pools of game plays, which will be enabled with the correct entry of an eight digit pass code provided by the electronic game provider. Configuration of game play for a specific machine can only be done by software programming.

[035]      The quantity of game plays is also game theme specific, i.e., it varies based on the particular version of the Tic-Tac-Fruit electronic game that is placed in a venue. For the one described herein, there are three electronic cartridges provided with the game, with thirty-thousand plays per electronic cartridge for a total number of ninety thousand game play. The particular number of game plays for each version of the Tic-Tac-Fruit game are purchased by a device operator. The operator pays a flat licensing fee in order to obtain an eight digit pass code that must be correctly entered in order to enable the appropriate quantity of game plays for the various game themes.

[036]      Each purchase level of each game theme is merely a multiple of a lowest game purchase level. Therefore, all game outcomes are derived from the same finite pool of game outcomes, regardless of purchase amount. Each time the player engages play, an outcome is selected at random from the finite pool of game outcomes. The manner in which the player plays the game determines whether the player will receive the winnings or if the winnings will go into the bonus pool, which will be awarded to the next player successfully obtaining the top prize.

[037]      By using the concept of a virtual cartridge to reload an electronic game console for plays, the electronic game service provider has been limited to a licensing fee for the game software

which permits a finite number of plays, i.e., 30,000 per virtual cartridge, 90,000 total plays in the case of the Tic-Tac-Fruit game used as an example herein. In this system, the operator of the game receives 90,000 plays regardless of the denominations selected for play by the game players. The electronic game in an exemplary embodiment provides the player with four different play levels, e.g., $0.50, $1.00, $2.00 and $4.00. The operator can have the game console provide other denominations of play instead. If a player played the electronic game at the $0.50 level and uses all 90,000 plays available, the operator is going to make far less in profit than if the players had selected the $4.00 level for all plays. From the electronic game service provider's perspective charging a flat fee for the virtual cartridges, if all the games are played at the lowest denomination, the game operator may not make sufficient profit to make keeping the game console installed at the operator's location worthwhile. On the other hand, the flat fee charged may result in too small a profit for the electronic game service provider. Under current laws, the game provider does not have the option of charging the operator a fixed percentage of his profits for leasing the electronic game and software. Playing an electronic game with a finite structure (i.e., fixed number of plays) having a "jackpot" for each virtual cartridge provides the operator with access to information on the number of plays still remaining. The game operator could take advantage of this information to play the remaining games at the highest denomination to win the jackpot amount.

[038]    In an exemplary embodiment of the invention, a finite structure is provided for each denomination of play. The electronic game service provider still charges a flat licensing fee for each reload of the virtual cartridges. However, instead of a having a fixed number of plays available per load of the virtual cartridges, the number of plays available are based on the denominations that are available for player selection and are dynamically updated during

operation of the game plays based on the actual denominations used by the players in actual game play on the electronic game console as described more fully below. For example, if all games are played at a $0.25 level, the operator could get 200,000 plays per load. If all games are played at a $5.00 level, the operator could get 75,000 plays per load. Since each game will be played multiple times at each possible denomination, the number of games remaining at each denomination is determined dynamically after each play. Note that in the context of this invention, denomination of play and level of play are used interchangeably.

[039]    Fig. 2 illustrates processing logic for determining the remaining number of plays of an electronic game that are available at different denominations (i.e., levels) of play in an exemplary embodiment. The first few steps of the processing logic are performed before activation of the electronic game at the operator's venue with a "fill" or load of game plays. The electronic game service provider first determines the flat fee to be charged for the load of game plays as indicated in step 200. A plurality of denominations for play of the electronic game is selected as indicated in step 202. The denominations for an electronic game terminal can be preset by the electronic game service provider and changed by the operator. The electronic game service provider determines a maximum number of games that can be played at each of the plurality of denominations as indicated in step 204. This determination is made for each possible denomination of play although only four denominations are initially selected in the embodiment used for the Tic-Tac-Fruit game. The electronic game service provider provides a passcode that is generated from the terminal identifier to the operator. The operator then enters the passcode to activate game play as indicated in step 206. The electronic game software determines the denomination of play selected by the player in step 208. After each play of the game, the game software dynamically determines the number of games remaining to be played at each

denomination of play as indicated in step 210. The number determined for each denomination of play reflects the number of games that could be played at the particular level of play.

[040]     After determining the number of plays remaining at each denomination, the game software determines if there are remaining games to be played as indicated in decision step 212. If there are games remaining to be played, the software returns to process step 208 for the next play of the game. If there are no games remaining to be played, the electronic game displays an "out of plays" message on the electronic game display as indicated in step 214. Next, in decision step 216, a determination is made as to whether the operator has requested a reload of game plays. Unless the operator requests a refill of the virtual game cartridge, the electronic game terminal remains inoperative as indicated in step 230. The operator requests a refill of game plays by sending the terminal identifier to the electronic game service provider in order to obtain a new passcode to reactivate the electronic game. The processing logic then returns to step 208 to wait for the next play of the electronic game.

[041]     Upon receiving the operator request for a refill of game plays (step 218), the electronic game service provider generates a new passcode for reloading the electronic game terminal that is based on the terminal identifier as indicated in step 220. The electronic game terminal is reactivated for play by entering the passcode into the terminal as indicated in step 222.

[042]     Fig. 3 illustrates an exemplary payout scheme for varying denominations of play in an exemplary embodiment. For the Tic-Tac-Fruit game used as an example herein, the electronic game service provider enables the operator to select four denominations for play. The first column 300 depicts the play denominations that can be selected. The second column 302 shows how much of the game play amount is returned to the player on average at each possible play denomination. The operator's profit per each game played at a particular denomination is shown

in the third column 304 The total number of plays available at each denomination, if all game plays were made at a single denomination, is shown in the fourth column 306. As can be seen, the total number of plays available for each denomination per load varies non-linearly from 200K at the $0.25 level of play to 75K at the $3.00, $4.00 and $5.00 levels of play. The total number of games per load will vary based on actual denominations selected by the players. The electronic game service provider's profits at each denomination of play is shown in the fifth column 308. The percentage shown is expressed as a percentage of the operator's per game profit. For example, the electronic game service provider's profit per play at the $4.00 level of play is $0.0156 which is 6.5% of the operator's corresponding profit of $0.21 per play. It should be noticed that in this example, the game provider profit per play is variable and non-linear based on the different denominations. The next column 310 indicates the equivalent amount that the game provider would have to "charge per each play" at each denomination to reach the flat fee that is actually charged per load. In other words, the electronic game service provider charges a flat fee per load of the virtual cartridges. If all the games were played at a particular denomination, e.g. $1.00, the total number of games played allowed by the game software control would be 120K and the equivalent game provider charge per play at this level would be $0.00975. The last column indicates the operator's total profit per fill of the virtual cartridge if all games were played at the particular denomination. For example, if all games were played at the $0.25 level, the operator would make a total profit of $7500 taking into consideration the percentage amount returned to game players. If all games were played at the $5.00 level, the operator's profit per fill would be $18,750.00.

[043]    Fig. 4 illustrates game terminal status receipts available to the operator of electronic games in the "plays level" exemplary embodiment. In Fig. 4, the first column 400 labeled "CRD"

represents multiples of the lowest denomination game play ($0.25 in this example). The second column 402 labeled "Value" indicates the denomination of play, ranging from $0.25 to $5.00. The third column 404 labeled "Count" represents the number of plays available at a particular denomination, if all games were played at the same level. The fourth column 406 labeled "Plays" indicates the number of games played at the corresponding levels in the "Value" column. In this sample terminal status receipt, two games have been played at the $0.50 level, one game at the $1.00 level and two games at the $4.00 level. The column total shows that eight games have been played on this game terminal. The next column 408 labeled "Rate-Use %" indicates the percentage of games that have been played at the corresponding play level. For example, 0.0067% of the available games at the $4.00 level per virtual cartridge load have been played. The final column 410 labeled "Left" indicates the remaining number of games available at a particular pay level as game play proceeds. The numbers in this column are determined dynamically after each game play. After the first eight game plays, there are 74,993 games remaining at the $3.00, $4.00 or $5.00 levels. The numbers in this column take into consideration each previous play of the electronic game and the denomination at which each game was played.

[044]      Fig. 5 illustrates the processing logic for controlling a total number of plays of an electronic game based on a player's action taken prior to selecting a displayed game field element to change to a wild symbol in an exemplary embodiment. Processing begins, as indicated in step 500, with the construction of a field of elements for a game display wherein each element is filled by a game symbol from the game symbols available. The underlying software algorithms follow several rules of game field construction before displaying the field to the player. These rules include selecting a number of winning combinations for a play of the game; selecting the orientation of each winning combination on the game grid; selecting the symbols for each

winning combination; randomly selecting symbols for the remaining elements of the game grid; and testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player. The displayed game field cannot contain a winning combination before play. The field is presented to the player in step 502.

[045]    One the constructed field is displayed to the player, the player has a finite time in which to make a decision regarding the element in the displayed field to select for the wild symbol. If the player fails to make a selection, the game times out (step 504). Otherwise, the player makes a selection of a wild symbol location in the displayed field in decision step 506. The game software receives and processes the player's selection of a wild symbol location in step 508. The game software determines the winning combinations of symbols in step 510, and displays the winning combinations to the player in step 512. The game software automatically determines the total number of plays of the game based on the player's action before commencing the game play in step 514. In an exemplary embodiment, such action can be the player's selection of a denomination of play. When the player selects a higher denomination of play, the number of remaining games available decreases at a faster rate than if a lower denomination of play is selected. Consequently, the total number of game plays are controlled by each such player action. In decision step 516, the player can opt to play again or end game play (step 520).

[046]    Fig. 6 illustrates the processing logic for an exemplary embodiment having a game preview display. Processing begins, as indicated in step 600, with the construction of a field of elements for a game display wherein each element is filled by a game symbol from the game symbols available. As described above, underlying software algorithms follow several rules of game field construction before displaying the field to the player. These rules include selecting a number of winning combinations for a play of the game; selecting the orientation of each

winning combination on the game grid; selecting the symbols for each winning combination; randomly selecting symbols for the remaining elements of the game grid; and testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player. The displayed game field cannot contain a winning combination before play. The field is presented to the player on the game display as a preview of the game in step 602. In one embodiment, the player can select from a plurality of game preview displays, with each game preview being associated with a different play level. Any potential player can observe the game display for as long as desired before making a decision to play the displayed game in decision step 604. The electronic game software remains in a wait state until a player decides to play the displayed game as indicated in step 606. The electronic game receives a player's selection of a play level (i.e., denomination of play) and activates the game when the "Play" button is touched as indicated in step 608.

[047]     Once the electronic game is activated for play, the player must decide which element to change to the wild symbol on the touch screen as indicated in decision step 610. If the player fails to select an element to change to the wild symbol within a predetermined amount of time, the game times out as indicated in step 612 and the player loses an amount that is equal to the level of play (e.g., if the player selected $4.00 as the level of play for the game, this amount will be deducted from any remaining balance the player may have). The game software receives the player's selection of the wild symbol as indicated in step 614. The game software processes the player's selection of a wild symbol location and determines the winning combinations of symbols and corresponding payout in step 616. The game software also displays the winning combinations to the player in this step. The game software can then construct and display a new game field as indicated in step 618. The game display is constructed using the same rules

described herein. Referring to Figs. 1A – 1B, the player can select the "Next Puzzle" or similarly labeled buttons to preview the next game. By selecting the play level (i.e., denomination of play), the player can preview the next game at the selected play level. The player can preview the next game at each play level before choosing the game to play. The game software then waits for the current player to decide whether or not to play the new game displayed as indicated in decision step 620. Selecting play will return processing logic to step 610 where the game waits for a selection of an element to change to the wild symbol. If the player chooses not to play the new game displayed in decision step 620, the player redeems the payout won and any credit balance that the player may have as indicated in step 630. From step 630, processing logic returns to step 606 to wait for a new player.

[048]    The preview screen of the present invention can be used in various additional embodiments. These additional embodiments can be implemented without the use of a wild symbol. In the context of the electronic game having an array of symbols as described herein, the game preview screen can be constructed and displayed without the need for a player to do anything other than to select "Play." In this case, the preview screen could actually be the results screen, displaying the game outcome. Such a preview screen could display a winning or a non-winning combination. The player would play the displayed game knowing the outcome in order to have the electronic gaming system provide the next game preview display.

[049]    A preview of the next game could be displayed adjacent to the current preview screen. In order to get to the next game, the player would have to play the currently previewed game. An example of such a game display is depicted in Fig. 7 in which the current game is previewed on the main portion of the display and the next game (e.g., at the same play level or denomination) is displayed adjacent to the current game display in the upper right portion of the display. The

exact location of the adjacent game preview is not important, but the smaller game preview on the display device must have sufficient resolution to provide a clear, unambiguous preview of the next game. After the player plays the game displayed in the main portion of the display, the previously displayed smaller game preview will be displayed on the main portion of the display and a new game preview will be displayed adjacent to the main display.

[050]    The preview display could also be implemented in other forms of electronic or electromechanical games. For example, it could be used in the context of an electronic or electromechanical slot machine having a plurality of spinning reels (actual or simulated) and displaying one or more lines of symbols. The displayed game could actually be the result which may or may not be a winning combination of symbols. The player would play the displayed game, knowing its result, in order to preview the next game. The preview screen could also be implemented in an electronic game having a plurality of reels, each reel having a plurality of symbols, and a nudge feature and/or wild symbol. The game display could have a next game preview positioned in a space adjacent or in proximity to the main game display. A nudge game is one in which the player has an option to nudge one of the reels up or down one or more positions after the reels stop spinning in order to achieve a winning combination, usually along a pay line associated with the plurality of reels.

[051]    Fig. 8 illustrates the processing logic for other exemplary embodiments of the invention having a game preview display. The logic is a subset of the processing logic illustrated in Fig. 6 in which player interaction is required in order to play the displayed game. Processing begins as indicated in step 800 with the construction of a field for the game display. Depending on the specific game, the field can be constructed in various ways that are known to those skilled in the art. The field is then displayed to the player on the game display as indicated in step 802. The

game displayed may contain a winning combination on a single or multiple lines depending on the type of game. The player can observe the displayed game for any length of time before deciding whether or not to play the displayed game in decision step 804, in order to advance to the next game preview display. If the result of the play of the game is a winning combination, the game software determines the winnings and displays the winning outcome to the player, as indicated in step 808. The player can then select "Preview" or "Next Puzzle" to have the next game displayed, or the next game already could be displayed adjacent to the current game display. This is indicated in step 810. The game software remains in a wait state until a player decides to play the displayed game as indicated in decision step 812. Selecting play will return processing logic to step 808. If the player chooses not to play the new game in decision step 812, the player redeems the payout won and any credit balance that the player may have as indicated in step 820.

[052]     The present invention of an electronic game in its various embodiments has been described as a combination of hardware and software components. It is important to note, however, that those skilled in the art will appreciate that the software of the present invention is capable of being distributed as a program product in a variety of forms, and that the present invention applies regardless of the particular type of signal bearing media utilized to carry out the distribution. Examples of signal bearing media include, without limitation, recordable-type media such as diskettes or CD ROMs, and transmission type media such as analog or digital communications links.

[053]     The corresponding structures, materials, acts, and equivalents of all means plus function elements in any claims below are intended to include any structure, material, or acts for performing the function in combination with other claim elements as specifically claimed.

[054]    Those skilled in the art will appreciate that many modifications to the exemplary embodiment are possible without departing from the spirit and scope of the present invention. In addition, it is possible to use some of the features of the present invention without the corresponding use of the other features. Accordingly, the foregoing description of the exemplary embodiment is provided for the purpose of illustrating the principles of the present invention and not in limitation thereof since the scope of the present invention is defined solely by the appended claims.

**What is Claimed is:**

1.    An electronic gaming method comprising the steps of:

constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the field of game symbols.

2.    The electronic gaming method of claim 1 further comprising the steps of receiving the player's selection of a play level and activating game play.

3.    The electronic gaming method of claim 1 further comprising the step of determining if the player has decided to play the new game field on the game display.

4.    The electronic gaming method of claim 3 further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

5.    The electronic gaming method of claim 1 wherein the constructed field is a two-dimensional array having a plurality of rows and columns.

6.    The electronic gaming method of claim 1 wherein the step of constructing the field comprises:

selecting a number of winning combinations for a play of the game;

selecting an orientation of each winning combination for the play of the game;

selecting the symbols for each of the winning combinations;

randomly selecting symbols for the remaining elements of the field, and

testing the field for compliance with at least one of the preceding steps prior to presenting the field to the player.

7.    The electronic gaming method of claim 6 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

8.    The electronic gaming method of claim 1, further comprising the steps of:

constructing a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

presenting each field of game symbols on the game display as a preview to a player for each selectable level of play.

9.    The electronic gaming method of claim 1 further comprising receiving the player's selection of a previewed game to play.

10.    The electronic gaming method of claim 1 further comprising the step of tracking each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

11.    The electronic gaming method of claim 1 wherein each winning combination of symbols has an associated payout to the player.

12.    The electronic gaming method of claim 1 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

13.    The electronic gaming method of claim 1 wherein the denomination of play corresponds to the level of play.

14.    An electronic gaming system comprising:

a game processor for generating an electronic game display on a game terminal with a plurality of options selectable by a player, the game processor comprising:

a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein

the game symbols for each element are automatically determined such that there is no winning combination without player interaction;

a component for presenting the field of game symbols as a preview to a player for deciding whether to play the displayed game;

a component for receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

a component for displaying each winning combination of symbols on the field of game symbols.

15. The electronic gaming system of claim 14 further comprising a component for receiving the player's selection of a play level and activating game play.

16. The electronic gaming system of claim 14 further comprising a component for determining if the player has decided to play the new game field on the game display.

17. The electronic gaming system of claim 16 further comprising a component for redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

18.    The electronic gaming system of claim 14 wherein the field is constructed as a two-dimensional array having a plurality of rows and columns.

19.    The electronic gaming system of claim 14 wherein the component for constructing the field comprises:

a module for selecting a number of winning combinations for a play of the game;

a module for selecting an orientation of each winning combination for the play of the game;

a module for selecting the symbols for each of the winning combinations;

a module for randomly selecting symbols for the remaining elements of the field, and

a module for testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

20.    The electronic gaming system of claim 19 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

21.    The electronic gaming system of claim 14 wherein the component for constructing a field further comprises a module for tracking each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

22.    The electronic gaming system of claim 14 wherein each winning combination of symbols has an associated payout to the player.

28    POM000052

23.  The electronic gaming system of claim 14 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

24.  The electronic gaming system of claim 14 further comprising:

a component for constructing a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

a component for presenting each field of game symbols on the game display as a preview to a player for each selectable level of play.

25.  The electronic gaming system of claim 24 further comprising a component for receiving the player's selection of a previewed game to play.

26.  The electronic gaming system of claim 17 wherein the denomination of play corresponds to the level of play.

27.  A computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded therein, the computer readable medium comprising:

program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each

element are automatically determined such that there is no winning combination without player interaction;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the field of game symbols.

28.     The computer program product for electronic gaming of claim 27 further comprising program instructions that receive the player's selection of a play level and activate game play.

29.     The computer program product for electronic gaming of claim 27 further comprising program instructions that determine if the player has decided to play the new game field on the game display.

30.     The computer program product for electronic gaming of claim 29 further comprising program instructions that redeem a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

31.     The computer program product for electronic gaming of claim 27 wherein the field is a two-dimensional array having a plurality of rows and columns.

32.     The computer program product for electronic gaming of claim 27 wherein the program instructions that construct the field comprise:

> program instructions that select a number of winning combinations for a play of the game;

> program instructions that select an orientation of each winning combination for the play of the game;

> program instructions that select the symbols for each of the winning combinations;

> program instructions that randomly select symbols for the remaining elements of the field, and

> program instructions that test the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

33.     The computer program product for electronic gaming of claim 32 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

34.     The computer program product for electronic gaming of claim 27 further comprising program instructions that track each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

35.    The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has an associated payout to the player.

36.    The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

37.    The computer program product for electronic gaming of claim 27 wherein the denomination of play corresponds to the level of play.

38.    The computer program product for electronic gaming of claim 27 further comprising:

program instructions that construct a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

program instructions that present each field of game symbols on the game display as a preview to a player for each selectable level of play.

39.    The computer program product for electronic gaming of claim 27 further comprising program instructions that receive the player's selection of a previewed game to play.

WCSR 2477631v1                                     32                                     POM000056

40.    An electronic gaming method comprising the steps of:

constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

determining if the player has decided to play the displayed game; and

displaying an outcome of the displayed game.

41.    The electronic gaming method of claim 40 further comprising generating and displaying an additional game preview on the game display in proximity to the displayed game.

42.    The electronic gaming method of claim 41 wherein the additional game preview is for a next game to be played.

43.    The electronic gaming method of claim 40 wherein the displayed game comprises a two-dimensional array of game symbols.

44.    The electronic gaming method of claim 40 wherein the displayed game comprises a one-dimensional array of game symbols.

45.    The electronic gaming method of claim 40 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

46.    The electronic gaming method of claim 45 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

47.    An electronic gaming system comprising:

a game processor for generating an electronic game display on a game terminal, the game processor comprising:

a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

a component for presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

a component for determining if the player has decided to play the displayed game; and

a component for displaying an outcome of the displayed game.

48.    The electronic gaming system of claim 47 further comprising a component for generating and displaying an additional game preview on the game display in proximity to the displayed game.

49.    The electronic gaming system of claim 48 wherein the additional game preview is for a next game to be played.

50.    The electronic gaming system of claim 47 wherein the displayed game comprises a two-dimensional array of game symbols.

51.    The electronic gaming system of claim 47 wherein the displayed game comprises a one-dimensional array of game symbols.

52.    The electronic gaming system of claim 47 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

53.    The electronic gaming system of claim 52 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

54.    A computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded herein, the computer readable medium comprising:

      program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

POM000059

program instructions that present the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

program instructions that determine if the player has decided to play the displayed game; and

program instructions that display an outcome of the displayed game.

55.    The computer program product for electronic gaming of claim 54 further comprising program instructions that generate and display an additional game preview on the game display in proximity to the displayed game.

56.    The computer program product for electronic gaming of claim 55 wherein the additional game preview is for a next game to be played.

57.    The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a two-dimensional array of game symbols.

58.    The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a one-dimensional array of game symbols.

59.    The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

60.    computer program product for electronic gaming of claim 59 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

## Abstract of the Invention

An electronic gaming method and system with a game preview display. A game field is constructed having a plurality of elements on a game display with each element being filled by a game symbol from a plurality of available game symbols. The game symbols for each element are automatically determined such that there is no winning combination without player interaction. The field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines each winning combination of symbols that is formed by such wild symbol location selection. Each winning combination of symbols on the field of game symbols is displayed to the player. A new game field can then be constructed and previewed on the game display. In other embodiments, the preview screen can be integrated with various electronic games in which a plurality of game symbols are displayed. The preview screen can actually display the result of the game prior to initiating play.

POM000062



FIG. 1A

POM000063



FIG. 1B

POM000064



FIG. 2

POM000065

| PLAY DENOMINATION | PLAYER RETURN | OPERATOR PROFIT PER PLAY | TOTAL PLAYS | GAME PROVIDER PROFIT | GAME PROVIDER CHARGE PER PLAY | OPERATOR PROFIT PER FILL |
|---|---|---|---|---|---|---|
| 0.25 | 85% | $0.0375 | 200K | 15.6% | $0.00585 | $7,500.00 |
| 0.50 | 87% | $0.0650 | 140K | 12.9% | $0.00836 | $9,100.00 |
| 0.75 | 89% | $0.0825 | 130K | 10.9% | $0.009 | $10,725.00 |
| 1.00 | 90% | $0.1000 | 120K | 9.75% | $0.00975 | $12,000.00 |
| 2.00 | 92% | $0.1600 | 85K | 8.60% | $0.01376 | $13,600.00 |
| 3.00 | 93% | $0.2100 | 75K | 7.43% | $0.0156 | $15,750.00 |
| 4.00 | 94% | $0.2400 | 75K | 6.50% | $0.0156 | $18,000.00 |
| 5.00 | 95% | $0.2500 | 75K | 6.24% | $0.0156 | $18,750.00 |

FIG. 3

| CRD | VALUE | COUNT | PLAYS | RATE USE% | LEFT |
|-----|-------|-------|-------|-----------|------|
| 1 | $0.25 | 200,000 | 0 | 0.0000% | 199,982 |
| 2 | $0.50 | 140,000 | 2 | 0.0014% | 139,988 |
| 3 | $0.75 | 130,000 | 0 | 0.0000% | 129,988 |
| 4 | $1.00 | 120,000 | 1 | 0.0008% | 119,989 |
| 8 | $2.00 | 85,000 | 0 | 0.0000% | 84,992 |
| 12 | $3.00 | 75,000 | 0 | 0.0000% | 74,993 |
| 16 | $4.00 | 75,000 | 5 | 0.0067% | 74,993 |
| 20 | $5.00 | 75,000 | 0 | 0.0000% | 74,993 |
| COLUMN TOTALS | | | 8 | 0.0089% | |

FIG. 4

POM000067



FIG. 5



FIG. 6

POM000069



FIG. 7

POM000070



FIG. 8

POM000071

## DECLARATION FOR PATENT APPLICATION

Attorney Docket No: ___P175 1021.1___

I, the below named inventor, hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled **Electronic Gaming Method and System Having Preview Screen**, the specification of which application is about to be filed in the United States Patent and Trademark Office and is attached herewith.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the patentability of this application in accordance with Title 37, Code of Federal Regulations, §1.56.

I hereby claim the benefit under Title 35, United States Code, §119 of any United States provisional patent application, foreign application(s) for patent or inventor's certificate listed below and/or any international priority benefits under Title 35, United States Code, § 365 based on the following foreign and/or international application(s) listed below, and also identify below any United States provisional patent application, foreign and/or international application(s) for patent or inventor's certificate having a filing date before that of the above-identified application(s) on which priority is claimed:

| Prior Application Number(s) | Country | Filing Date |
|---|---|---|
| 60/788,363 | US | March 31, 2006 |
|  |  |  |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States patent application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| Prior Application(s) Number(s) | Filing Date |
|---|---|
| 11/430,770 | May 9, 2006 |
|  |  |

I hereby appoint the attorneys/agents associated with Customer ID No. **26158** to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

Provided that, should any one of the foregoing individuals cease to be associated with the firm Womble Carlyle Sandridge & Rice, PLLC, then any powers granted to that person are hereby revoked.

WCSR 2492873v1

POM000072

Please address all telephone calls, in the first instance, to John J. Timar at telephone number: **(404) 888-7412**.

Address all correspondence to:

**WOMBLE CARLYLE SANDRIDGE & RICE**
**P.O. Box 7037**
**Atlanta, Georgia 30357-0037**

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Sole Inventor's Signature _____ Date: 6·29·06

Full Name of Sole Inventor___ Michael R. Pace

Residence____ 735 Champions Club Drive, Alpharetta , GA _____ Citizenship___ US ___

Post Office Address____ 735 Champions Club Drive, Alpharetta , GA 30004

WCSR 2492873v1

POM000073

## Electronic Patent Application Fee Transmittal

| Application Number: | |
|---|---|
| **Filing Date:** | |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor:** | Michael R. Pace |
| **Filer:** | John J. Timar/Cheryl West |
| **Attorney Docket Number:** | P175 1021.1 |

Filed as Small Entity

## Utility     Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 75 | 75 |
| Utility Search Fee | 2111 | 1 | 250 | 250 |
| Utility Examination Fee | 2311 | 1 | 100 | 100 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 40 | 25 | 1000 |
| Independent claims in excess of 3 | 2201 | 3 | 100 | 300 |
| **Miscellaneous-Filing:** | | | | |

POM000074

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | 1725 |

POM000075

# Electronic Acknowledgement Receipt

| EFS ID: | 1099751 |
|---|---|
| Application Number: | 11428026 |
| Confirmation Number: | 3398 |
| Title of Invention: | Electronic Gaming Method And System Having Preview Screen |
| First Named Inventor: | Michael R. Pace |
| Customer Number: | 26158 |
| Filer: | John J. Timar/Cheryl West |
| Filer Authorized By: | John J. Timar |
| Attorney Docket Number: | P175 1021.1 |
| Receipt Date: | 30-JUN-2006 |
| Filing Date: | |
| Time Stamp: | 15:24:14 |
| Application Type: | Utility |
| International Application Number: | |

## Payment information:

| Submitted with Payment | yes |
|---|---|
| Payment was successfully received in RAM | $1725 |
| RAM confirmation Number | 98 |
| Deposit Account | 090528 |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:
   Charge any Additional Fees required under 37 C.F.R. Section 1.16 and 1.17

## File Listing:

POM000076

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part | Pages |
|---|---|---|---|---|---|
| 1 | | P175_1021_1_application.pdf | 1917254 | yes | 51 |

| Multipart Description | | | |
|---|---|---|---|
| Doc Desc | | Start | End |
| Transmittal letter | | 1 | 1 |
| Fee Worksheet (PTO-875) | | 2 | 2 |
| Specification | | 3 | 25 |
| Claims | | 26 | 39 |
| Abstract | | 40 | 40 |
| Drawings | | 41 | 49 |
| Oath or Declaration filed | | 50 | 51 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part | Pages |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 8537 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| Total Files Size (in bytes): | 1925791 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

POM000077

PTO/SB/05 (08-03)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

Application or Docket Number: 11/428026

### CLAIMS AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a)) | | | | $750 | OR | | $ |
| TOTAL CLAIMS (37 CFR 1.16(c)) | 60 minus 20 = | 40 | x 25 = | 1,000 | OR | X $ = | $ |
| INDEPENDENT CLAIMS (37 CFR 1.16(b)) | 6 minus 3 = | 3 | x $100 = | 300.00 | OR | X $ = | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(d)) | | | + $ = | | OR | + $ = | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 1,300.00 | | TOTAL | |

### CLAIMS AS AMENDED – PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | SMALL ENTITY ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000078

**PATENTS**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| **Pace** | ) |
| Serial No:    **11/428,026** | ) |
| Filed:  **June 30, 2006** | ) |
| For:  **Electronic Gaming Method and System** | ) |
| **Having Preview Screen** | ) |

### INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Applicant hereby voluntarily discloses the information listed on the attached Form PTO/SB/08A and PTO/SB/08B to the Assistant Commissioner for Patents. The citation of information on the attached Form(s) PTO/SB/08, "List of Art Cited by Applicant" is made pursuant to 37 C.F.R. §§ 1.97 and 1.98. A copy of items A and B are enclosed.

Citation of this information does not constitute an admission that any of the materials are available as a reference, does not constitute an admission of priority, does not constitute an admission that any information cited or provided hereby is "material," and does not constitute a waiver of any right applicant may have under applicable statutes, Rules of Practice in patent cases, or otherwise. Without limiting the foregoing, Applicant specifically reserves the right to establish the patentability of the claimed invention over any of the listed information should they be applied as references, and/or to prove that some of the cited information may not be prior art, and/or to prove that some of the cited information may not be enabling for the teachings they purport to offer.

WCSR 3421343v1                                    1                                    POM000079

This statement further should not be construed as a representation that an exhaustive search has been made, or that the information cited herewith is material, or that there does not exist information more material to the examination of the present Application. The Examiner is specifically requested not to rely solely on the information submitted herein. On the contrary, the Examiner is requested to conduct a thorough review of the information, and to form independent opinions as to its significance.

It is respectfully requested that the Examiner initial and return copies of the enclosed form(s) PTO/SB/08 and indicate in the official file wrapper of the above-identified patent application that each item of the cited information has been considered.

The Commissioner is hereby authorized to charge any additional fees that may be required, or credit any overpayment to account no. 09-0528.

Date: 8/29/06

John Timar
Reg# 32,497

Womble Carlyle Sandridge & Rice, PLLC
P.O. Box 7037
Atlanta, GA 30357-0037
(404) 872-7000 (Telephone)
(404) 888-7490 (Facsimile)
Docket No.: P175 1021.1

- 2 -

POM000080

PTO/SB/08A (07-05)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | 11/428,026 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | June 30, 2006 |
| | First Named Inventor | Pace |
| | Art Unit | 3713 |
| | Examiner Name | Not assigned |
| *(Use as many sheets as necessary)* | | |
| Sheet  1  of  1 | Attorney Docket Number | P175 1021.1 |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published |
|---|---|---|
| | A | TURNER, "Tic-Tac-Fruit: An Analysis," November 15, 2004 |
| | B | FARLEY, "Report on the Review and Analysis of the Tic-Tac-Fruit Game," Letter to Kurt O. Gearhiser, Esq., March 7, 2005 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| EXAMINER'S SIGNATURE: | DATE CONSIDERED: |
|---|---|

POM000081

WCSR 3421351v1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1176755 |
| **Application Number:** | 11428026 |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Diana Ogles |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 29-AUG-2006 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 16:40:15 |
| **Application Type:** | Utility |
| **International Application Number:** | |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part | Pages |
|---|---|---|---|---|---|
| 1 | | p175_1021_ids.pdf | 156102 | yes | 4 |

POM000082

## Multipart  Description

| Doc Desc | Start | End |
|---|---|---|
| Transmittal letter | 1 | 1 |
| Information Disclosure Statement (IDS) Filed | 2 | 4 |

Warnings:

Information:

| 2 | NPL Documents | Ref_A.pdf | 187757 | no | 3 |
|---|---|---|---|---|---|

Warnings:

Information:

| 3 | NPL Documents | ref_b.pdf | 946126 | no | 20 |
|---|---|---|---|---|---|

Warnings:

Information:

| Total Files Size (in bytes): | 1289985 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

POM000083

PTO/SB/21 (07-06)
Approved for use through 09/30/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 11/428,026 |
| Filing Date | June 30, 2006 |
| First Named Inventor | Pace |
| Art Unit | 3713 |
| Examiner Name | Unassigned |
| Attorney Docket Number | P175 1021.1 |

Total Number of Pages in This Submission

## ENCLOSURES  *(Check all that apply)*

- [ ] Fee Transmittal Form
  - [ ] Fee Attached
- [ ] Amendment/Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [✔] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Reply to Missing Parts/ Incomplete Application
  - [ ] Reply to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [ ] Petition
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CD(s) _____
  - [ ] Landscape Table on CD

- [ ] After Allowance Communication to TC
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to TC (Appeal Notice, Brief, Reply Brief)
- [ ] Proprietary Information
- [ ] Status Letter
- [✔] Other Enclosure(s) (please identify below):
  2 references

**Remarks**

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | Womble Carlyle Sandridge & Rice, PLLC |
|---|---|
| Signature | *(signature)* |
| Printed name | John J. Timar |
| Date | June 29, 2006 |

| Reg. No. | 32,497 |
|---|---|

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being transmitted to the USPTO via the USPTO Electronic Filing System on the date shown below.

| Signature | *(signature)* | | |
|---|---|---|---|
| Typed or printed name | Diana Ogles | Date | June 29, 2006 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and1.14.  This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000084

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:            )       Confirmation No.: 3398
                                      )
      **Michael R. Pace**              )       Group Art Unit: 3713
                                      )
Serial No.:    **11/428,026**         )       Docket No.: P175 1021.1
                                      )
Filed:       **June 30, 2006**      )
                                      )
For:    **ELECTRONIC GAMING METHOD**   )
        **AND SYSTEM HAVING PREVIEW**   )
        **SCREEN**                     )

## PRELIMINARY AMENDMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Prior to the initial examination of the above-identified patent application, Applicants respectfully request that the application be amended as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 20 of this paper.

POM000085

**Listing of Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application. No claims are being amended by this response.

**What is Claimed**

1.    (Original)  An electronic gaming method comprising the steps of:

constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the field of game symbols.

2.    (Original)  The electronic gaming method of claim 1 further comprising the steps of receiving the player's selection of a play level and activating game play.

3.    (Original)  The electronic gaming method of claim 1 further comprising the step of determining if the player has decided to play the new game field on the game display.

POM000086

4.    (Original)    The electronic gaming method of claim 3 further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

5.    (Original)    The electronic gaming method of claim 1 wherein the constructed field is a two-dimensional array having a plurality of rows and columns.

6.    (Original)    The electronic gaming method of claim 1 wherein the step of constructing the field comprises:

> selecting a number of winning combinations for a play of the game;
>
> selecting an orientation of each winning combination for the play of the game;
>
> selecting the symbols for each of the winning combinations;
>
> randomly selecting symbols for the remaining elements of the field, and
>
> testing the field for compliance with at least one of the preceding steps prior to presenting the field to the player.

7.    (Original)    The electronic gaming method of claim 6 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

8.    (Original)    The electronic gaming method of claim 1, further comprising the steps of:

> constructing a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

WCSR 3433508v1                                    3

POM000087

presenting each field of game symbols on the game display as a preview to a player for each selectable level of play.

9.    (Original)  The electronic gaming method of claim 1 further comprising receiving the player's selection of a previewed game to play.

10.    (Original)  The electronic gaming method of claim 1 further comprising the step of tracking each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

11.    (Original)  The electronic gaming method of claim 1 wherein each winning combination of symbols has an associated payout to the player.

12.    (Original)  The electronic gaming method of claim 1 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

13.    (Original)  The electronic gaming method of claim 1 wherein the denomination of play corresponds to the level of play.

14.    (Original) An electronic gaming system comprising:

a game processor for generating an electronic game display on a game terminal with a plurality of options selectable by a player, the game processor comprising:

POM000088

a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction;

a component for presenting the field of game symbols as a preview to a player for deciding whether to play the displayed game;

a component for receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

a component for displaying each winning combination of symbols on the field of game symbols.

15.    (Original)  The electronic gaming system of claim 14 further comprising a component for receiving the player's selection of a play level and activating game play.

16.    (Original)  The electronic gaming system of claim 14 further comprising a component for determining if the player has decided to play the new game field on the game display.

POM000089

17.    (Original)  The electronic gaming system of claim 16 further comprising a component for redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

18.    (Original)  The electronic gaming system of claim 14 wherein the field is constructed as a two-dimensional array having a plurality of rows and columns.

19.    (Original)   The electronic gaming system of claim 14 wherein the component for constructing the field comprises:

   a module for selecting a number of winning combinations for a play of the game;

   a module for selecting an orientation of each winning combination for the play of the game;

   a module for selecting the symbols for each of the winning combinations;

   a module for randomly selecting symbols for the remaining elements of the field, and

   a module for testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

20.    (Original)  The electronic gaming system of claim 19 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

POM000090

21.    (Original)    The electronic gaming system of claim 14 wherein the component for constructing a field further comprises a module for tracking each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

22.    (Original)  The electronic gaming system of claim 14 wherein each winning combination of symbols has an associated payout to the player.

23.    (Original)  The electronic gaming system of claim 14 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

24.    (Original)  The electronic gaming system of claim 14 further comprising:

a component for constructing a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

a component for presenting each field of game symbols on the game display as a preview to a player for each selectable level of play.

25.    (Original)  The electronic gaming system of claim 24 further comprising a component for receiving the player's selection of a previewed game to play.

26.    (Original)  The electronic gaming system of claim 17 wherein the denomination of play corresponds to the level of play.

POM000091

27.    (Original)  A computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded therein, the computer readable medium comprising:

program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the field of game symbols.

28.    (Original)  The computer program product for electronic gaming of claim 27 further comprising program instructions that receive the player's selection of a play level and activate game play.

29.    (Original)  The computer program product for electronic gaming of claim 27 further comprising program instructions that determine if the player has decided to play the new game field on the game display.

POM000092

30. (Original)  The computer program product for electronic gaming of claim 29 further comprising program instructions that redeem a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

31. (Original)  The computer program product for electronic gaming of claim 27 wherein the field is a two-dimensional array having a plurality of rows and columns.

32. (Original)  The computer program product for electronic gaming of claim 27 wherein the program instructions that construct the field comprise:

program instructions that select a number of winning combinations for a play of the game;

program instructions that select an orientation of each winning combination for the play of the game;

program instructions that select the symbols for each of the winning combinations;

program instructions that randomly select symbols for the remaining elements of the field, and

program instructions that test the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

33. (Original)  The computer program product for electronic gaming of claim 32 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

POM000093

34.    (Original)   The computer program product for electronic gaming of claim 27 further comprising program instructions that track each field presented to the player to prevent constructing an identical field for a subsequent play of the game.

35.    (Original)   The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has an associated payout to the player.

36.    (Original)   The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

37.    (Original)   The computer program product for electronic gaming of claim 27 wherein the denomination of play corresponds to the level of play.

38.    (Original)   The computer program product for electronic gaming of claim 27 further comprising:

program instructions that construct a plurality of fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

program instructions that present each field of game symbols on the game display as a preview to a player for each selectable level of play.

POM000094

39.    (Original)   The computer program product for electronic gaming of claim 27 further comprising program instructions that receive the player's selection of a previewed game to play.

40.    (Original)  An electronic gaming method comprising the steps of:

constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

determining if the player has decided to play the displayed game; and

displaying an outcome of the displayed game.

41.    (Original)  The electronic gaming method of claim 40 further comprising generating and displaying an additional game preview on the game display in proximity to the displayed game.

42.    (Original)   The electronic gaming method of claim 41 wherein the additional game preview is for a next game to be played.

43.    (Original)   The electronic gaming method of claim 40 wherein the displayed game comprises a two-dimensional array of game symbols.

WCSR 3433508v1                                        11

POM000095

44.    (Original)    The electronic gaming method of claim 40 wherein the displayed game comprises a one-dimensional array of game symbols.

45.    (Original)    The electronic gaming method of claim 40 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

46.    (Original)    The electronic gaming method of claim 45 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

47.    (Original)    An electronic gaming system comprising:

   a game processor for generating an electronic game display on a game terminal, the game processor comprising:

   a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

   a component for presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

   a component for determining if the player has decided to play the displayed game; and

   a component for displaying an outcome of the displayed game.

POM000096

48.    (Original)  The electronic gaming system of claim 47 further comprising a component for generating and displaying an additional game preview on the game display in proximity to the displayed game.

49.    (Original)  The electronic gaming system of claim 48 wherein the additional game preview is for a next game to be played.

50.    (Original)  The electronic gaming system of claim 47 wherein the displayed game comprises a two-dimensional array of game symbols.

51.    (Original)  The electronic gaming system of claim 47 wherein the displayed game comprises a one-dimensional array of game symbols.

52.    (Original)  The electronic gaming system of claim 47 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

53.    (Original)  The electronic gaming system of claim 52 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

POM000097

54.    (Original)  A computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded herein, the computer readable medium comprising:

program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols;

program instructions that present the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game;

program instructions that determine if the player has decided to play the displayed game; and

program instructions that display an outcome of the displayed game.

55.    (Original)  The computer program product for electronic gaming of claim 54 further comprising program instructions that generate and display an additional game preview on the game display in proximity to the displayed game.

56.    (Original)  The computer program product for electronic gaming of claim 55 wherein the additional game preview is for a next game to be played.

57.    (Original)  The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a two-dimensional array of game symbols.

POM000098

58.    (Original)  The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a one-dimensional array of game symbols.

59.    (Original)  The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

60.    (Currently Amended)  The computer program product for electronic gaming of claim 59 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

61.    (New)  A method for previewing an electronic game comprising the steps of:

receiving a signal from a player to display a preview of an electronic game;

generating a field having a plurality of elements for the game display wherein each element is filled by a game symbol from a plurality of available game symbols; and

presenting the field on the game display as the electronic game preview to the player.

62.    (New)  The method for previewing an electronic game of claim 61 further comprising generating and displaying a next game preview on the game display in proximity to a currently displayed game.

WCSR 3433508v1                                          15

POM000099

63.    (New)  The method for previewing an electronic game of claim 61 wherein the displayed game comprises a two-dimensional array of game symbols.

64.    (New)  The method for previewing an electronic game of claim 61 wherein the displayed game comprises a one-dimensional array of game symbols.

65.    (New)  The method for previewing an electronic game of claim 61 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

66.    (New)  The method for previewing an electronic game of claim 65 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

67.    (New)  The method for previewing an electronic game of claim 61 further comprising generating and presenting a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play.

68.    (New)  A system for previewing an electronic game comprising:

　　　　　a game processor for generating an electronic game display on a game terminal, the game processor comprising:

POM000100

a component for receiving a signal from a player to display a preview of an electronic game;

a component for generating a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols; and

a component for presenting the field on the game display as the electronic game preview to the player.

69.    (New)  The system for previewing an electronic game of claim 68 further comprising a component for generating and displaying a next game preview on the game display in proximity to a currently displayed game.

70.    (New)  The system for previewing an electronic game of claim 68 wherein the displayed game comprises a two-dimensional array of game symbols.

71.    (New)  The system for previewing an electronic game of claim 68 wherein the displayed game comprises a one-dimensional array of game symbols.

72.    (New)  The system for previewing an electronic game of claim 68 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

POM000101

73.    (New) The system for previewing an electronic game of claim 72 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

74.    (New) The system for previewing an electronic game of claim 68 wherein the components for generating and presenting provide a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play.

75.    (New) A computer program product for previewing an electronic game when executed on a processor comprising a computer readable medium having computer readable code embedded therein, the computer readable medium comprising:

> program instructions that receive a signal from a player to display a preview of an electronic game;
>
> program instructions that generate a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols; and
>
> program instructions that present the field of game symbols on the game display as the electronic game preview to the player.

76.    (New) The computer program product for previewing an electronic game of claim 75 further comprising program instructions that generate and display a next game preview on the game display in proximity to a currently displayed game.

POM000102

77.    (New)   The computer program product for previewing an electronic game of claim 75 wherein the displayed game comprises a two-dimensional array of game symbols.

78.    (New)   The computer program product for previewing an electronic game of claim 75 wherein the displayed game comprises a one-dimensional array of game symbols.

79.    (New)   The computer program product for previewing an electronic game of claim 75 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

80.    (New)   The computer program product for previewing an electronic game of claim 75 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

81.    (New)   The computer program product for previewing an electronic game of claim 75 wherein program instructions that generate and present provide a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play.

POM000103

## REMARKS

Applicant respectfully requests that the above Preliminary Amendment be entered into said application prior to examination thereof on the merits.

Respectfully submitted,

6/12/07
Date

John J. Timar
Reg. No. 32,497
Attorney for Applicant

Customer No. 26158
Womble Carlyle Sandridge & Rice, PLLC
P.O. Box 7037
Atlanta, GA 30357-0037
(404) 888-7412 (Telephone)
(404) 870-2405 (Facsimile)

WCSR 3433508v1                           20

POM000104

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11428026 |
| **Filing Date:** | 30-Jun-2006 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Filer:** | John J. Timar/Cheryl West |
| **Attorney Docket Number:** | P175 1021.1 |

Filed as Small Entity

## Utility     Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 21 | 25 | 525 |
| Independent claims in excess of 3 | 2201 | 3 | 100 | 300 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |

POM000105

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **825** |

POM000106

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1863676 |
| **Application Number:** | 11428026 |
| **International Application Number:** | |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Cheryl West |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 12-JUN-2007 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 15:07:47 |
| **Application Type:** | Utility |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $ 825 |
| RAM confirmation Number | 377 |
| Deposit Account | 090528 |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:
Charge any Additional Fees required under 37 C.F.R. Section 1.16 and 1.17

## File Listing:

POM000107

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | P175_1021_1_preliminary_amendment.pdf | 716859 | yes | 22 |

| Multipart  Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Miscellaneous Incoming Letter | | 1 | 1 |
| Fee Worksheet (PTO-06) | | 2 | 2 |
| Preliminary Amendment | | 3 | 3 |
| Claims | | 4 | 21 |
| Applicant Arguments/Remarks Made in an Amendment | | 22 | 22 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 8287 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 725146 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

POM000108

PTO/SB/21 (07-06)
Approved for use through 09/30/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 11/428,026 |
| Filing Date | 06/30/2006 |
| First Named Inventor | Michael R. Pace |
| Art Unit | 3713 |
| Examiner Name | |
| Attorney Docket Number | P175 1021.1 |

Total Number of Pages in This Submission **22**

### ENCLOSURES    *(Check all that apply)*

- [✔] Fee Transmittal Form
  - [ ] Fee Attached
- [ ] Amendment/Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [ ] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Reply to Missing Parts/ Incomplete Application
  - [ ] Reply to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [ ] Petition
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CD(s) _____
  - [ ] Landscape Table on CD

- [ ] After Allowance Communication to TC
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to TC **(Appeal Notice, Brief, Reply Brief)**
- [ ] Proprietary Information
- [ ] Status Letter
- [✔] Other Enclosure(s) (please identify below):

Preliminary Amendment

**Remarks**

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| | |
|---|---|
| Firm Name | Womble Carlyle Sandridge & Rice, PLLC |
| Signature | *John J. Timar* |
| Printed name | John J. Timar |
| Date | 6/12/07 |
| Reg. No. | 32,497 |

### CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being efs-web transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below:

| | |
|---|---|
| Signature | *Cheryl West* |
| Typed or printed name | Cheryl West |
| Date | 6-12-07 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000109

PTO/SB/17 (04-07)
Approved for use through 04/30/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995  no persons are required to respond to a collection of information unless it displays a valid OMB control number

| Effective on 12/08/2004. Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818). **FEE TRANSMITTAL For FY 2007** | Complete if Known | |
|---|---|---|
| | Application Number | 11/428,026 |
| | Filing Date | 06/30/2006 |
| ☑ Applicant claims small entity status. See 37 CFR 1.27 | First Named Inventor | Michael R. Pace |
| | Examiner Name | |
| **TOTAL AMOUNT OF PAYMENT**  ($)  825.00 | Art Unit | 3713 |
| | Attorney Docket No. | P175 1021.1 |

**METHOD OF PAYMENT** (check all that apply)

☐ Check  ☐ Credit Card  ☐ Money Order  ☐ None  ☐ Other (please identify): _____

☑ Deposit Account  Deposit Account Number: 09-0528  Deposit Account Name: Womble Carlyle Sandridge & Rice

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☑ Charge fee(s) indicated below       ☑ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17       ☐ Credit any overpayments

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**FEE CALCULATION**

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES**

| Application Type | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | |
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | _____ |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | _____ |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | _____ |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | _____ |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

**2. EXCESS CLAIM FEES**

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| 81 - 20 or 60 = | 21 | x 25 = | 525 |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| 9 - 3 or 6 = | 3 | x 100 = | 300 |

HP = highest number of independent claims paid for, if greater than 3.

**Multiple Dependent Claims**

| Fee ($) | Fee Paid ($) |
|---|---|
| _____ | _____ |

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof.  See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | _____ / 50 = | _____ (round up to a whole number)  x | _____ = | _____ |

**4. OTHER FEE(S)**

| | Fees Paid ($) |
|---|---|
| Non-English Specification,  $130 fee (no small entity discount) | _____ |
| Other (e.g., late filing surcharge): _____ | _____ |

**SUBMITTED BY**

| Signature | _signature_ | Registration No. (Attorney/Agent) 32,497 | Telephone 404-888-7412 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | | Date  1/12/07 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000110

PTO/SB/06 (08-03)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
## Substitute for Form PTO-875

Application or Docket Number: 11/928026

### CLAIMS AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|-----|-------------|-------------|------|-----|----|------|-----|
| BASIC FEE (37 CFR 1.16(a)) | | | | $ 150 | OR | | $___ |
| TOTAL CLAIMS (37 CFR 1.16(c)) | 6 0 minus 20 = | 40 | x 25 = | 1,000 | OR | X $___ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(b)) | 6 minus 3 = | 3 | x $100 = | 300.00 | OR | X $___ = | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(d)) | | | + $___ = | | OR | + $___ = | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 1,300.00 | OR | TOTAL | |

### CLAIMS AS AMENDED – PART II

6-12-07

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|----|---|---|
| Total (37 CFR 1.16(c)) | 81 | Minus | 60 | 21 | 25 | 525 | OR | 50 = | |
| Independent (37 CFR 1.16(b)) | 9 | Minus | 6 | 3 | 100 | 300 | OR | 200 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + 100 | | OR | + 300 | |
| | | | | | TOTAL ADD'L FEE | 825 | OR | TOTAL ADD'L FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|----|---|---|
| Total (37 CFR 1.16(c)) | | Minus | | = | X $___ = | | OR | X $___ = | |
| Independent (37 CFR 1.16(b)) | | Minus | | = | X $___ = | | OR | X $___ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $___ = | | OR | + $___ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|----|---|---|
| Total (37 CFR 1.16(c)) | | Minus | | = | X $___ = | | OR | X $___ = | |
| Independent (37 CFR 1.16(b)) | | Minus | | = | X $___ = | | OR | X $___ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $___ = | | OR | + $___ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000111

# Index of Claims

| | |
|---|---|
| Application/Control No. | Applicant(s)/Patent under Reexamination |
| 11/428026 | WEINER ET A |
| Examiner | Art Unit |
| Thai Xuan | 3714 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim | | Date | | Claim | | Date | | Claim | | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | Final | Original | | Final | Original | |
| | 1 | | | 51 | | | 101 | |
| | 2 | | | 52 | | | 102 | |
| | 3 | | | 53 | | | 103 | |
| | 4 | | | 54 | | | 104 | |
| | 5 | | | 55 | | | 105 | |
| | 6 | | | 56 | | | 106 | |
| | 7 | | | 57 | | | 107 | |
| | 8 | | | 58 | | | 108 | |
| | 9 | | | 59 | | | 109 | |
| | 10 | | | 60 | | | 110 | |
| | 11 | | | 61 | | | 111 | |
| | 12 | | | 62 | | | 112 | |
| | 13 | | | 63 | | | 113 | |
| | 14 | | | 64 | | | 114 | |
| | 15 | | | 65 | | | 115 | |
| | 16 | | | 66 | | | 116 | |
| | 17 | | | 67 | | | 117 | |
| | 18 | | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

U.S. Patent and Trademark Office

Part of Paper No. 20061220

POM000112

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 |

**CONFIRMATION NO. 3398**

26158
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING 32ND FLOOR
P.O. BOX 7037
ATLANTA, GA30357-0037

**Title:** Electronic Gaming Method And System Having Preview Screen

**Publication No.** US-2007-0232384-A1
**Publication Date:** 10/04/2007

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Pre-Grant Publication Division, 703-605-4283

POM000113

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

26158        7590        12/04/2008
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING 32ND FLOOR
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/04/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

POM000114

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/428,026 | PACE, MICHAEL R. |
| | Examiner | Art Unit |
| | ADETOKUNBO O. TORIMIRO | 3714 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *12 June 2007*.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) *1-81* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-81* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date *08/29/2006*.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

Application/Control Number: 11/428,026                                    Page 2

Art Unit: 3714

## DETAILED ACTION

1.      The Preliminary amendment received on 06/12/2007 has been considered. It has been

noted that new claims 61-81 have been added.

### *Specification*

2.      Applicant is reminded of the proper language and format for an abstract of the disclosure.

> The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range
> of 50 to 150 words.  It is important that the abstract not exceed 150 words in length since the space provided for the
> abstract on the computer tape used by the printer is limited.  The form and legal phraseology often used in patent
> claims, such as "means" and "said," should be avoided.  The abstract should describe the disclosure sufficiently to assist
> readers in deciding whether there is a need for consulting the full patent text for details.

> The language should be clear and concise and should not repeat information given in the title.  It should avoid using
> phrases which can be implied, such as, "The disclosure concerns," "The disclosure defined by this invention," "The
> disclosure describes," etc.

3.      The abstract of the disclosure is objected to because it contains 211 words, which is more

than the allowed range of 50-150 words.  Correction is required.  See MPEP § 608.01(b).

### *Claim Rejections - 35 USC § 101*

4.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new
> and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Claims 10,21, and 34 are rejected under 35 U.S.C. 101 because the disclosed invention is

inoperative and therefore lacks utility. Referring particularly to claims 10, 21, and 34, the claim

states that every game field is tracked to prevent constructing an identical field or allow repeats.

Since the game is inherently limited to x number of unique game fields, it would be obvious that

the game would stop working, crash, and/or be inoperable once every combination of the playing

POM000116

Application/Control Number: 11/428,026                                                      Page 3
Art Unit: 3714

field up to the value of x has been reached. The specification nor the claims teach that every

unique player is tracked or an alternative method as to how the game fields can be "reset" from

the system so they can be used again and therefore, the game would cease to operate or be

inoperable after x number of game plays because there would be no more game fields for the

game to use.

## *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless;-
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

6.      Claims 1-8,11-20,23,26-33, and 35-37 are rejected under 35 U.S.C. 102(b) as being

anticipated by Vancura (US 6,165,069).

Re claims 1,6, and 8: Vancura discloses an electronic gaming method comprising the

steps of: constructing a field having a plurality of elements for a game display wherein each

element is filled by a game symbol from a plurality of available game symbols wherein the game

symbols for each element are automatically determined such that there is no winning

combination without player interaction **(see figs.1 and 8)**; presenting the field of game symbols

on the game display as a preview to a player for deciding whether to play the displayed game;

receiving the player's selection of a field element as a location for a wild symbol and determining

each winning combination of symbols that is formed by such selection **(see abstract; fig.8)**; and

displaying each winning combination of symbols on the field of game symbols **(see fig.5)**.

POM000117

Application/Control Number: 11/428,026                                      Page 4
Art Unit: 3714

Re claims 2-5,7,11-13,15-18,20,22,26,28-31,33, and 35-37: Vancura discloses further comprising the steps of receiving the player's selection of a play level and activating game play; further comprising the step of determining if the player has decided to play the new game field on the game display **(see abstract; fig.7)**; Further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played **(see col.5, lines 52-55)**; wherein the constructed field is a two-dimensional array having a plurality of rows and columns **(see fig.1; col.2, lines 20-21)**; wherein the orientation of each winning combination is horizontal, vertical or diagonal **(see fig.5)**

Re claims 14 and 19: Vancura discloses an electronic gaming system comprising: a game processor for generating an electronic game display on a game terminal with a plurality of options selectable by a player **(see abstract; col.2, lines 38-67)**, the game processor comprising: a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction **(see fig.8)**; a component for presenting the field of game symbols as a preview to a player for deciding whether to play the displayed game (810); a component for receiving the player's selection of a field element as a location for a wild symbol (810)and determining each winning combination of symbols that is formed by such selection (814) **(see abstract; fig.8)**; and a component for displaying each winning combination of symbols on the field of game symbols **(see fig.5)**.

Application/Control Number: 11/428,026                                                   Page 5

Art Unit: 3714

Re claims 27 and 32: Vancura discloses computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded therein, the computer readable medium comprising: program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols **(see fig.1)**, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction (808,814) **(see fig.8)**; presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game (810) **(see abstract; fig.8)**; program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection **(see abstract; fig.8)**; and program instructions that display each winning combination of symbols on the field of game symbols **(see fig.5)**.

### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8.      Claims 9,24,25, and 38-81 are rejected under 35 U.S.C. 103(a) as being unpatentable over Vancura (US 6,165,069) in view of Muir et al (US 2005/0003883).

Application/Control Number: 11/428,026                                                    Page 6
Art Unit: 3714

Re claims 9,24,25,38-42,47-49,54-56,61,62,67-69,74-76, and 81: The teachings of Vancura have been discussed above.

However, Vancura does not teach presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game.

Muir et al teaches presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game **(see abstract; fig.3; pars.[0005]-[0010])**.

Therefore it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate the reviewing teaching of Muir et al into the teaching of Vancura. One would be motivated to do this so as to have a gaming system where the player has the opportunity to view the game before playing so as to allow the player to become familiar with the game and allow the player make better decisions before playing the game and wagering, thereby allowing player satisfaction and enjoyment of the game.


Re claims 43-46,50-53,57-60,63-66,70-73, and 77-80: Vancura discloses further comprising the steps of receiving the player's selection of a play level and activating game play; further comprising the step of determining if the player has decided to play the new game field on the game display **(see abstract; fig.7)**; Further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played **(see col.5, lines 52-55)**; wherein the constructed field is a two-dimensional array having a plurality of rows and columns **(see fig.1; col.2, lines 20-21)**; wherein the orientation of each winning combination is horizontal, vertical or diagonal **(see fig.5)**.

POM000120

Application/Control Number: 11/428,026                                   Page 7
Art Unit: 3714

**Conclusion**

9.      The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Coward et al discloses a digital content preview user interface for mobile devices; Matthews et al discloses a user friendly remote system interface providing previews of applications.

10.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Adetokunbo O. Torimiro whose telephone number is (571) 270-1345.  The examiner can normally be reached on Mon-Fri (8am - 4pm).

         If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Robert Pezzuto can be reached on (571) 272-6996.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.


/A. O. T./

Examiner, Art Unit 3714

/John M Hotaling II/

Supervisory Patent Examiner, Art Unit 3714

POM000121

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 11/428,026 | PACE, MICHAEL  R. |
| | | Examiner | Art Unit | |
| | | ADETOKUNBO O. TORIMIRO | 3714 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-7,040,985 | 05-2006 | Vancura, Olaf | 463/20 |
| * | B | US-2005/0003883 | 01-2005 | Muir et al. | 463/016 |
| * | C | US-2005/0202385 | 09-2005 | Coward et al. | 434/307.00R |
| * | D | US-6,028,604 | 02-2000 | Matthews et al. | 715/821 |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN  PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20080826

POM000122

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Index of Claims** | | 11428026 | PACE, MICHAEL R. |
| | | **Examiner** | **Art Unit** |
| | | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | **Rejected** | | – | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA      ☐ T.D.      ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |
| | 19 | ✓ | | | | | | | | |
| | 20 | ✓ | | | | | | | | |
| | 21 | ✓ | | | | | | | | |
| | 22 | ✓ | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | ✓ | | | | | | | | |
| | 28 | ✓ | | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | | | | | | | | |
| | 31 | ✓ | | | | | | | | |
| | 32 | ✓ | | | | | | | | |
| | 33 | ✓ | | | | | | | | |
| | 34 | ✓ | | | | | | | | |
| | 35 | ✓ | | | | | | | | |
| | 36 | ✓ | | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20080826

POM000123

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 11428026 | PACE, MICHAEL R. |
| | | Examiner | Art Unit |
| | | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA      ☐ T.D.      ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | | | | | | | |
| | 37 | ✓ | | | | | | | |
| | 38 | ✓ | | | | | | | |
| | 39 | ✓ | | | | | | | |
| | 40 | ✓ | | | | | | | |
| | 41 | ✓ | | | | | | | |
| | 42 | ✓ | | | | | | | |
| | 43 | ✓ | | | | | | | |
| | 44 | ✓ | | | | | | | |
| | 45 | ✓ | | | | | | | |
| | 46 | ✓ | | | | | | | |
| | 47 | ✓ | | | | | | | |
| | 48 | ✓ | | | | | | | |
| | 49 | ✓ | | | | | | | |
| | 50 | ✓ | | | | | | | |
| | 51 | ✓ | | | | | | | |
| | 52 | ✓ | | | | | | | |
| | 53 | ✓ | | | | | | | |
| | 54 | ✓ | | | | | | | |
| | 55 | ✓ | | | | | | | |
| | 56 | ✓ | | | | | | | |
| | 57 | ✓ | | | | | | | |
| | 58 | ✓ | | | | | | | |
| | 59 | ✓ | | | | | | | |
| | 60 | ✓ | | | | | | | |
| | 61 | ✓ | | | | | | | |
| | 62 | ✓ | | | | | | | |
| | 63 | ✓ | | | | | | | |
| | 64 | ✓ | | | | | | | |
| | 65 | ✓ | | | | | | | |
| | 66 | ✓ | | | | | | | |
| | 67 | ✓ | | | | | | | |
| | 68 | ✓ | | | | | | | |
| | 69 | ✓ | | | | | | | |
| | 70 | ✓ | | | | | | | |
| | 71 | ✓ | | | | | | | |
| | 72 | ✓ | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20080826

POM000124

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Index of Claims**  ▐▐▌▐▌▐▌▐▌▐▌▐▌▐▌ | 11428026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | | | | | | | |
| | 73 | ✓ | | | | | | | |
| | 74 | ✓ | | | | | | | |
| | 75 | ✓ | | | | | | | |
| | 76 | ✓ | | | | | | | |
| | 77 | ✓ | | | | | | | |
| | 78 | ✓ | | | | | | | |
| | 79 | ✓ | | | | | | | |
| | 80 | ✓ | | | | | | | |
| | 81 | ✓ | | | | | | | |

Part of Paper No. : 20080826

POM000125

| *Search Notes* | Application/Control No. 11428026 | Applicant(s)/Patent Under Reexamination PACE, MICHAEL R. |
|---|---|---|
| | Examiner ADETOKUNBO O TORIMIRO | Art Unit 3714 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 16,19 | 8/26/2008 | AT |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| -Inventor Name Search | 8/26/2008 | AT |
| -Assignee Search | 8/26/2008 | AT |
| -East Text Search | 8/26/2008 | AT |
| -Plus Search | 8/26/2008 | AT |
| -Backward/Forward Search | 8/26/2008 | AT |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

/A. O. T./
Examiner.Art Unit 3714

U.S. Patent and Trademark Office

Part of Paper No. P20040826126



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 3398**

| SERIAL NUMBER 11/428,026 | FILING or 371(c) DATE 06/30/2006 RULE | CLASS 463 | GROUP ART UNIT 3714 | ATTORNEY DOCKET NO. P175 1021.1 |
|---|---|---|---|---|

**APPLICANTS**
   Michael R. Pace, Alpharetta, GA;

** **CONTINUING DATA** *************************
   This application is a CIP of 11/430,770 05/09/2006
       which claims benefit of 60/788,363 03/31/2006

** **FOREIGN APPLICATIONS** *************************

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** ** ** SMALL ENTITY **
   07/17/2006

| Foreign Priority claimed ☐ Yes ☑ No 35 USC 119(a-d) conditions met ☐ Yes ☑ No Verified and Acknowledged | /ADETOKUNBO OLUSEGUN TORIMIRO/ Examiner's Signature | ☐ Met after Allowance Initials | STATE OR COUNTRY GA | SHEETS DRAWINGS 9 | TOTAL CLAIMS 60 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|---|---|

**ADDRESS**

   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   ATTN: PATENT DOCKETING 32ND FLOOR
   P.O. BOX 7037
   ATLANTA, GA 30357-0037
   UNITED STATES

**TITLE**

   Electronic Gaming Method And System Having Preview Screen

| FILING FEE RECEIVED 2550 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees ☐ 1.16 Fees (Filing) ☐ 1.17 Fees (Processing Ext. of time) ☐ 1.18 Fees (Issue) ☐ Other _____ ☐ Credit |
|---|---|---|

BIB (Rev. 05/07).

POM000127

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| **Pace** | ) |
| Serial No:    **11/428,026** | ) |
| Filed:  **June 30, 2006** | ) |
| For:   **Electronic Gaming Method and System** | ) |
| **Having Preview Screen** | ) |

## INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Applicant hereby voluntarily discloses the information listed on the attached Form PTO/SB/08A and PTO/SB/08B to the Assistant Commissioner for Patents. The citation of information on the attached Form(s) PTO/SB/08, "List of Art Cited by Applicant" is made pursuant to 37 C.F.R. §§ 1.97 and 1.98. A copy of items A and B are enclosed.

Citation of this information does not constitute an admission that any of the materials are available as a reference, does not constitute an admission of priority, does not constitute an admission that any information cited or provided hereby is "material," and does not constitute a waiver of any right applicant may have under applicable statutes, Rules of Practice in patent cases, or otherwise. Without limiting the foregoing, Applicant specifically reserves the right to establish the patentability of the claimed invention over any of the listed information should they be applied as references, and/or to prove that some of the cited information may not be prior art, and/or to prove that some of the cited information may not be enabling for the teachings they purport to offer.

1                              POM000128

This statement further should not be construed as a representation that an exhaustive search has been made, or that the information cited herewith is material, or that there does not exist information more material to the examination of the present Application. The Examiner is specifically requested not to rely solely on the information submitted herein. On the contrary, the Examiner is requested to conduct a thorough review of the information, and to form independent opinions as to its significance.

It is respectfully requested that the Examiner initial and return copies of the enclosed form(s) PTO/SB/08 and indicate in the official file wrapper of the above-identified patent application that each item of the cited information has been considered.

The Commissioner is hereby authorized to charge any additional fees that may be required, or credit any overpayment to account no. 09-0528.

Date: _8/29/06_

John Timar
Reg# 32,497

Womble Carlyle Sandridge & Rice, PLLC
P.O. Box 7037
Atlanta, GA 30357-0037
(404) 872-7000 (Telephone)
(404) 888-7490 (Facsimile)
Docket No.: P175 1021.1

- 2 -

POM000129

PTO/SB/08A (07-05)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 11/428,026 |
| | Filing Date | June 30, 2006 |
| | First Named Inventor | Pace |
| | Art Unit | 3714 |
| | Examiner Name | /Torimiro/ |
| Sheet   1   of   1 | Attorney Docket Number | P175 1021.1 |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published |
|---|---|---|
| /AT/ | A | TURNER, "Tic-Tac-Fruit: An Analysis," November 15, 2004 |
| /AT/ | B | FARLEY, "Report on the Review and Analysis of the Tic-Tac-Fruit Game," Letter to Kurt O. Gearhiser, Esq., March 7, 2005 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| EXAMINER'S SIGNATURE: /Adetokunbo Torimiro/ | DATE CONSIDERED: 08/26/2008 |
|---|---|

POM000130

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application of: | ) | |
| MICHAEL R. PACE | ) | Art Unit:   3714 |
| Serial No.     11/428,026 | ) | Confirmation No.    3398 |
| Filed:          June 30, 2006 | ) | Examiner: Torimiro, Adetokunbo Olusegun |
| For:    ELECTRONIC GAMING METHOD | ) | Attorney Docket No.:    P175 1021.1 |
| AND SYSTEM HAVING PREVIEW | ) | |
| SCREEN | ) | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT

Sir:

In response to the Official Action mailed December 4, 2008, Applicant respectfully request that the application be amended as follows:

**Amendments to the Abstract** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the list of claims which begins on page 3 of this paper.

**Remarks/Arguments** begin on page 24 of this paper.

WCSR 4081218v1

POM000131

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

## Amendments to the Abstract:

Please replace the abstract with the following amended abstract:

## Abstract of the Invention

An electronic gaming method and system with a game preview display. A field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines and displays each winning combination of symbols that is formed by such wild symbol location selection. A new game field can then be constructed and previewed on the game display.

WCSR 4081218v1

POM000132

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

**Amendments to the Claims:**

This listing of claims will replace all prior versions and listings of claims in the application:

**Listing of Claims:**

1.    (currently amended)    An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for a an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of available predetermined game symbols, wherein the game symbols for each element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

presenting the field of game symbols on the touch screen game display prior to activation of game play as a preview to a player for deciding whether to play the displayed game;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display field of game symbols.

- 3 -

WCSR 4081218v1

POM000133

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

2.    (original)  The electronic gaming method of claim 1 further comprising the steps of receiving the player's selection of a play level and activating game play.

3.    (currently amended)   The electronic gaming method of claim 1 further comprising the step of determining if the player has decided to play the ~~new~~ game field <u>presented</u> on the game display.

4.    (original)  The electronic gaming method of claim 3 further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

5.    (original)  The electronic gaming method of claim 1 wherein the constructed field is a two-dimensional array having a plurality of rows and columns.

6.    (original)  The electronic gaming method of claim 1 wherein the step of constructing the field comprises:

selecting a number of winning combinations for a play of the game;

selecting an orientation of each winning combination for the play of the game;

selecting the symbols for each of the winning combinations;

randomly selecting symbols for the remaining elements of the field, and

testing the field for compliance with at least one of the preceding steps prior to presenting the field to the player.

- 4 -

WCSR 4081218v1

POM000134

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

7.    (original)  The electronic gaming method of claim 6 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

8.    (currently amended)   The electronic gaming method of claim 1, further comprising the steps of:

constructing a plurality of game fields each having a plurality of game symbols, with each game field corresponding to a selectable level of play; and

presenting each field of game symbols on the touch screen game display as a preview to a player for each selectable level of play, wherein the player's selection of the level of play determines which of the previewed games is actually played.

9.    (currently amended)   The electronic gaming method of claim 1 8 further comprising receiving the player's selection of a previewed game to play.

10.    (cancelled)

11.    (original)  The electronic gaming method of claim 1 wherein each winning combination of symbols has an associated payout to the player.

- 5 -

POM000135

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

12.    (original)  The electronic gaming method of claim 1 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

13.    (original)  The electronic gaming method of claim 1 wherein the denomination of play corresponds to the level of play.

14.    (currently amended)   An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game display on a the game terminal with a plurality of options selectable by a player, the game processor comprising:

a component for constructing a field having a plurality of elements for a the interactive game display wherein each element is filled by includes a game symbol from a plurality of available predetermined game symbols, wherein the game symbols for each element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

a component for presenting the field of game symbols on the touch screen display prior to activation of game play as a preview to a player for deciding whether to play the displayed game;

- 6 -

POM000136

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

a component for receiving the player's selection of a field element as a

location for a wild symbol and determining each winning

combination of symbols that is formed by such selection; and

a component for displaying each winning combination of symbols on the

touch screen display field of game symbols.

15.    (original)   The electronic gaming system of claim 14 further comprising a component for

receiving the player's selection of a play level and activating game play.

16.    (currently amended)   The electronic gaming system of claim 14 further comprising a

component for determining if the player has decided to play the new game field presented

on the game display.

17.    (original)   The electronic gaming system of claim 16 further comprising a component for

redeeming a player's credit balance and an associated payout for each winning

combination of symbols on each game previously played.

18.    (original)   The electronic gaming system of claim 14 wherein the field is constructed as a

two-dimensional array having a plurality of rows and columns.

19.    (original)   The electronic gaming system of claim 14 wherein the component for

constructing the field comprises:

- 7 -

WCSR 4081218v1

POM000137

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

a module for selecting a number of winning combinations for a play of the game;

a module for selecting an orientation of each winning combination for the play of the game;

a module for selecting the symbols for each of the winning combinations;

a module for randomly selecting symbols for the remaining elements of the field, and

a module for testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

20.     (original)   The electronic gaming system of claim 19 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

21.     (cancelled)

22.     (original)   The electronic gaming system of claim 14 wherein each winning combination of symbols has an associated payout to the player.

23.     (original)   The electronic gaming system of claim 14 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

24.     (currently amended)   The electronic gaming system of claim 14 further comprising:

- 8 -

WCSR 4081218v1

POM000138

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

a component for constructing a plurality of <u>game</u> fields each having a plurality of

game symbols, with each field corresponding to a selectable level of play;

and

a component for presenting each field of game symbols on the <u>touch screen</u> game

display as a preview to a player for each selectable level of play<u>, wherein</u>

<u>the player's selection of the level of play determines which of the</u>

<u>previewed games is actually played</u>.

25.     (original)   The electronic gaming system of claim 24 further comprising a component for

receiving the player's selection of a previewed game to play.

26.     (original)   The electronic gaming system of claim 17 wherein the denomination of play

corresponds to the level of play.

27.     (currently amended)   A computer program product for electronic gaming <u>when executed</u>

<u>on a game processor, the computer program product</u> comprising a computer readable

<u>storage</u> medium having computer readable code embedded therein, the computer readable

<u>storage</u> medium comprising:

program instructions that construct a <u>game</u> field having a plurality of elements for

a̶ <u>an interactive touch screen</u> game display <u>on an electronic game terminal</u>

wherein each element is filled by a game symbol from a plurality of

a̶v̶a̶i̶l̶a̶b̶l̶e̶ <u>predetermined</u> game symbols, wherein the game symbols for each

- 9 -

WCSR 4081218v1

POM000139

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

~~presenting~~ program instructions that present the field of game symbols on the touch screen game display prior to activation of game play as a preview to a player for deciding whether to play the displayed game;

program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the touch screen display ~~field of game symbols~~.

28.  (original)  The computer program product for electronic gaming of claim 27 further comprising program instructions that receive the player's selection of a play level and activate game play.

29.  (currently amended)  The computer program product for electronic gaming of claim 27 further comprising program instructions that determine if the player has decided to play the ~~new~~ game field presented on the game display.

- 10 -

WCSR 4081218v1

POM000140

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

30.    (original)  The computer program product for electronic gaming of claim 29 further comprising program instructions that redeem a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

31.    (original)  The computer program product for electronic gaming of claim 27 wherein the field is a two-dimensional array having a plurality of rows and columns.

32.    (original)  The computer program product for electronic gaming of claim 27 wherein the program instructions that construct the field comprise:

   program instructions that select a number of winning combinations for a play of the game;

   program instructions that select an orientation of each winning combination for the play of the game;

   program instructions that select the symbols for each of the winning combinations;

   program instructions that randomly select symbols for the remaining elements of the field, and

   program instructions that test the field for compliance with at least one of the preceding selections prior to presenting the field to the player.

33.    (original)  The computer program product for electronic gaming of claim 32 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

- 11 -

WCSR 4081218v1

POM000141

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

34.    (cancelled)

35.    (original)   The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has an associated payout to the player.

36.    (original) The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

37.    (original)   The computer program product for electronic gaming of claim 27 wherein the denomination of play corresponds to the level of play.

38.    (currently amended)   The computer program product for electronic gaming of claim 27 further comprising:

program instructions that construct a plurality of game fields each having a plurality of game symbols, with each game field corresponding to a selectable level of play; and

program instructions that present each field of game symbols on the touch screen game display as a preview to a player for each selectable level of play, wherein the player's selection of the level of play determines which of the previewed games is actually played.

- 12 -

WCSR 4081218v1

POM000142

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

39.    (currently amended)   The computer program product for electronic gaming of claim 38

further comprising program instructions that receive the player's selection of a previewed

game to play.

40.    (currently amended)  An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for a an interactive touch

screen game display on an electronic game terminal wherein each element

is filled by a game symbol from a plurality of available predetermined

game symbols;

presenting the field of game symbols on the touch screen game display prior to

activation of game play as a preview to a player for deciding whether to

play the displayed game;

determining if the player has decided to play the displayed game presented as a

preview; and

displaying an outcome resulting from play of the displayed game.

41.    (currently amended)   The electronic gaming method of claim 40 further comprising

generating and displaying an additional game preview simultaneously on the game

display in proximity to the displayed game.

- 13 -

WCSR 4081218v1

POM000143

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

42.    (original)  The electronic gaming method of claim 41 wherein the additional game preview is for a next game to be played.

43.    (original)  The electronic gaming method of claim 40 wherein the displayed game comprises a two-dimensional array of game symbols.

44.    (original)  The electronic gaming method of claim 40 wherein the displayed game comprises a one-dimensional array of game symbols.

45.    (original)  The electronic gaming method of claim 40 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

46.    (original)  The electronic gaming method of claim 45 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

- 14 -

WCSR 4081218v1

POM000144

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

47.    (currently amended)    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game display on a the

game terminal, the game processor comprising:

a component for constructing a field having a plurality of elements for a the

interactive game display wherein each element is filled by includes a game

symbol from a plurality of available predetermined game symbols;

a component for presenting the field of game symbols on the touch screen game

display prior to activation of game play as a preview to a player for

deciding whether to play the displayed game;

a component for determining if the player has decided to play the displayed game

presented as a preview; and

a component for displaying an outcome resulting from play of the displayed game.


48.    (currently amended)    The electronic gaming system of claim 47 further comprising a

component for generating and displaying an additional game preview simultaneously on

the game display in proximity to the displayed game.


49.    (original)    The electronic gaming system of claim 48 wherein the additional game

preview is for a next game to be played.

- 15 -

WCSR 4081218v1

POM000145

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

50.    (original)  The electronic gaming system of claim 47 wherein the displayed game comprises a two-dimensional array of game symbols.

51.    (original)  The electronic gaming system of claim 47 wherein the displayed game comprises a one-dimensional array of game symbols.

52.    (original)  The electronic gaming system of claim 47 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

53.    (original)  The electronic gaming system of claim 52 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

54.    (currently amended)   A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded herein, the computer readable storage medium comprising:

> program instructions that construct a game field having a plurality of elements for a an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of available predetermined game symbols;

- 16 -

WCSR 4081218v1

POM000146

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

program instructions that present the field of game symbols on the touch screen

game display prior to activation of game play as a preview to a player for

deciding whether to play the displayed game;

program instructions that determine if the player has decided to play the displayed

game presented as a preview; and

program instructions that display an outcome resulting from play of the displayed

game.

55.    (currently amended)   The computer program product for electronic gaming of claim 54

further comprising program instructions that generate and display an additional game

preview simultaneously on the game display in proximity to the displayed game.

56.    (original)   The computer program product for electronic gaming of claim 55 wherein the

additional game preview is for a next game to be played.

57.    (original)   The computer program product for electronic gaming of claim 54 wherein the

displayed game comprises a two-dimensional array of game symbols.

58.    (original)   The computer program product for electronic gaming of claim 54 wherein the

displayed game comprises a one-dimensional array of game symbols.

WCSR  4081218v1

POM000147

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

59.    (original)  The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

60.    (original)  The computer program product for electronic gaming of claim 59 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

61.    (currently amended)  A method for previewing an electronic game comprising the steps of:

   receiving a signal from a player to display a preview of an <u>interactive</u> electronic game <u>on a touch screen display of an electronic game terminal</u>;

   generating a <u>game</u> field having a plurality of elements for the <u>interactive</u> game display wherein each element is filled by a game symbol from a plurality of <s>available</s> <u>predetermined</u> game symbols; and

   presenting the <u>game</u> field on the <u>touch screen</u> game display <u>prior to activation of game play</u> as <s>the</s> <u>an</u> electronic game preview to the player.

62.    (currently amended)    The method for previewing an electronic game of claim 61 further comprising generating and displaying a next game preview <u>simultaneously</u> on the game display in proximity to a currently displayed game.

- 18 -

WCSR 4081218v1

POM000148

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

63.    (previously presented)    The method for previewing an electronic game of claim 61 wherein the displayed game comprises a two-dimensional array of game symbols.

64.    (previously presented)    The method for previewing an electronic game of claim 61 wherein the displayed game comprises a one-dimensional array of game symbols.

65.    (previously presented)    The method for previewing an electronic game of claim 61 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

66.    (previously presented)    The method for previewing an electronic game of claim 65 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

67.    (currently amended)    The method for previewing an electronic game of claim 61 further comprising generating and presenting a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play, wherein the player's selection of the level of play determines which of the previewed games is actually played.

68.    (currently amended)    A system for previewing an electronic game comprising:

- 19 -

WCSR 4081218v1

POM000149

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game display on a game

terminal, the game processor comprising:

a component for receiving a signal from a player to display a preview of ~~an~~ the interactive

electronic game;

a component for generating a game field having a plurality of elements for ~~a~~ the

interactive game display wherein each element is filled by a game symbol from a

plurality of ~~available~~ predetermined game symbols; and

a component for presenting the game field on the game display prior to activation of

game play as ~~the~~ an electronic game preview to the player.

69.    (currently amended)    The system for previewing an electronic game of claim 68

further comprising a component for generating and displaying a next game preview on the

game display simultaneously in proximity to a currently displayed game.

70.    (previously presented)    The system for previewing an electronic game of claim 68

wherein the displayed game comprises a two-dimensional array of game symbols.

71.    (previously presented)    The system for previewing an electronic game of claim 68

wherein the displayed game comprises a one-dimensional array of game symbols.

- 20 -

WCSR 4081218v1

POM000150

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

72.    (previously presented)    The system for previewing an electronic game of claim 68 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

73.    (previously presented)    The system for previewing an electronic game of claim 72 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

74.    (currently amended)    The system for previewing an electronic game of claim 68 wherein the components for generating and presenting provide a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play, wherein the player's selection of the level of play determines which of the previewed games is actually played.

75.    (currently amended)    A computer program product for previewing an interactive electronic game when executed on a processor, the computer program product comprising a computer readable storage medium having computer readable code embedded therein, the computer readable storage medium comprising:

    program instructions that receive a signal from a player to display a preview of an

        interactive electronic game on a touch screen display of an electronic game

        terminal;

- 21 -

POM000151

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

program instructions that generate a game field having a plurality of elements for

a the interactive game display wherein each element is filled by a game

symbol from a plurality of available predetermined game symbols; and

program instructions that present the game field of game symbols on the touch

screen game display prior to activation of game play as the an electronic

game preview to the player.


76.    (currently amended)    The computer program product for previewing an electronic

game of claim 75 further comprising program instructions that generate and display a

next game preview on the game display simultaneously in proximity to a currently

displayed game.


77.    (previously presented)    The computer program product for previewing an electronic

game of claim 75 wherein the displayed game comprises a two-dimensional array of

game symbols.


78.    (previously presented)    The computer program product for previewing an electronic

game of claim 75 wherein the displayed game comprises a one-dimensional array of game

symbols.


- 22 -

WCSR 4081218v1

POM000152

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

79.    (previously presented)    The computer program product for previewing an electronic game of claim 75 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

80.    (previously presented)    The computer program product for previewing an electronic game of claim 75 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

81.    (currently amended)    The computer program product for previewing an electronic game of claim 75 wherein program instructions that generate and present provide a plurality of electronic game previews to the player with each electronic game preview associated with a different level of play, wherein the player's selection of the level of play determines which of the previewed games is actually played.

- 23 -

WCSR 4081218v1

POM000153

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

## REMARKS

Claims 1 – 81 are pending in the application. Claims 1, 3, 8, 9, 14, 16, 24, 27, 29, 38, 40, 41, 47, 48, 54, 55, 61, 62, 67, 68, 69, 74, and 75 have been amended. Claims 10, 21, and 34 have been cancelled. Claims 1 – 9, 11 – 20, 22 – 33, and 35 – 81 are presented for reconsideration.

The Examiner rejected claims 10, 21, and 34 under 35 U.S.C. § 101 as being inoperative and therefore lacking utility. Although this rejection is traversed, claims 10, 21, and 34 have been cancelled in this response to expedite prosecution of the other claims.

The Examiner rejected claims 1 – 8, 11 – 20, 23, 26 – 33 and 35 – 37 under 35 U.S.C. §102(b) as being anticipated by *Vancura* (US 6,165,069). This rejection is respectfully traversed.

In order to support a rejection of a claim under 35 USC § 102, it is well-established that "to anticipate, every element and limitation of the claimed invention must be found in a single prior art reference arranged as in the claim." Brown v. 3M, 265 F. 3d 1349, 60 USPQ 2d 1375 (Fed. Cir. 2001). Such disclosure can be made expressly or inherently in the reference, but such reference "still must describe the claimed invention with sufficient detail to establish that the subject matter existed in the prior art." Verve. LLC v. Crane Cams. Inc., 311 F. 3d 116, 65 USPQ 2d 1051 (Fed. Cir. 2002).

The rejection of claims 1 – 8, 11 – 20, 23, 26 – 33, and 35 – 37 under 35 U.S.C. §102(b) is improper because the Examiner has not shown where "presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game" is disclosed by *Vancura*. In fact, the Examiner acknowledges in the Office Action (page 6, ll. 3 – 4): "However, Vancura does not teach presenting the field of game symbols on the game

- 24 -

WCSR 4081218v1

POM000154

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

display as a preview to a player for deciding whether to play the displayed game." In view of this admission, claims 1 – 8, 11 – 20, 23, 26 – 33 and 35 – 37, claims 1 – 8, 11 – 20, 23, 26 – 33 and 35 – 37 cannot be anticipated by *Vancura*.

Several amendments have been made to independent claims 1, 14, and 27 to further clarify the invention, and in the process, to more clearly distinguish the invention from the teachings of *Vancura*. Claims 1, 14, and 27 have been amended to clarify that a winning combination is never displayed until the player interacts with the game display to turn a displayed symbol into a wild symbol. Support for this amendment is found at least in paragraphs 23, 25, 44 and Fig. 5. Claims 1, 14, and 27 have been amended further to clarify that the field of game symbols for each play of the game is presented to the player on the touch screen display prior to activation of game play. In other words, the actual game that the player would play is displayed before the player makes any commitment to playing the game. The player has to select playing the game by selecting a denomination of play (i.e., wager), pushing the play button, and then selecting a displayed game symbol to change into a wild symbol before the electronic game can determine if the player's selection has resulted in a winning combination for the game. Support for this amendment is found at least in paragraphs 46 – 47 and Fig. 6.

With further regard to claim 1, *Vancura* does not teach automatically determining game symbols for each element of a game display for each play of the game such that there is no winning combination without player interaction with the game display. The Examiner indicated that *Vancura* discloses this limitation in Figs. 1 and 8. Applicant disagrees. *Vancura* discloses a casino slot machine that displays a random matrix of symbols as a spin

- 25 -

POM000155

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

outcome of the slot machine and initiates a wild symbol feature only when a trigger symbol randomly appears in the spin outcome, i.e., displayed matrix (col. 6, ll. 38 – 48). Initiation of this feature occurs randomly or may be a function of successive losses (col. 6, ll. 4 – 5). Fig. 4 depicts a spin outcome having the trigger symbol displayed that does have winning combinations displayed (e.g., pay line 3 shows three plums which will award 5 credits; pay line 4 shows four melons (logo is wild) which awards 15 credits) before the player interacts with the game display by selecting a wild symbol location. In contrast, in the invention recited in claim 1, the game symbols for each element for each play of the game are determined such that there is no winning combination displayed to the player. It is only by player interaction with the touch screen game display in selecting an element for the wild symbol that a winning combination can be determined and displayed.

With further regard to claim 1, *Vancura* does not teach the step of "presenting the field of game symbols on the touch screen game display prior to activation of game play as a preview to a player for deciding whether to play the displayed game." The Examiner indicated that *Vancura* discloses this limitation in the abstract and Fig. 8. Applicant disagrees. As shown in Fig. 8, blocks 806 and 808, the player makes a wager to begin (i.e., activate play) which leads to display of a matrix of symbols as a spin outcome. In other words, the game has been activated and then played. There is no game display presented as a preview to the player prior to activation of the game play. Only when a trigger symbol appears in the displayed outcome of the game, does the player have the opportunity to select a "wild" symbol. In contrast, Applicant's invention, as claimed in claim 1, displays a newly constructed game to the player without the player having to insert any money or tokens. The player can study the

- 26 -

POM000156

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

screen, decide if he wants to play, insert money into the gaming machine, select a denomination of play (wager), select "Play" to activate game play, and select a wild symbol in the displayed game field.

In view of the preceding arguments, claim 1 is not anticipated by *Vancura* for at least the reasons provided. Claims 14 and 27 are system and program product claims, respectively, that have been amended in a manner similar to claim 1. Therefore, claims 14 and 27 are not anticipated by *Vancura* for at least the same reasons as claim 1.

Likewise, claims 2 – 9, 11 – 13, 15 – 20, 22 – 26, 28 – 33, and 35 – 39 depend, either directly or indirectly, from one of the independent claims 1, 14, and 27. Therefore, these dependent claims are not anticipated by *Vancura* for at least the same reasons as the independent claims from which they depend.

The Examiner rejected claims 9, 24, 25, and 38 – 81 under 35 U.S.C. § 103(a) as being unpatentable over *Vancura* (US 6,165,069) in view of *Muir et al.* (US 2005/0003883). This rejection is respectfully traversed.

Regarding claims 9, 24, 25, 38 – 42, 47 – 49, 54 – 56, 61, 62, 67 – 69, 74 – 76, and 81, the Examiner stated that *Vancura* does not teach presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game. The Examiner is relying on *Muir et al.* for teaching of this limitation, citing the abstract, Fig. 3, and Para. 5 – 10. The Examiner concluded that the motivation to combine *Vancura* with *Muir et al.* would be "to have a gaming system where the player has the opportunity to view the game before playing so as to allow the player [to] make better decisions before playing the game and wagering, thereby allowing player satisfaction and enjoyment of the game." Applicant disagrees

- 27 -

WCSR 4081218v1

POM000157

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

with the Examiner's statement regarding Muir et al. as well as with the Examiner's conclusory

motivation to combine references.

In the abstract, *Muir et al.* discloses the following:

"A portable sample play device, such as a player tracking card or other player-carried device, allows players or users of a gaming machine to view, and/or participate in, sample or preview play of a game. The portable sample play device can be a smart card that stores all necessary information itself, or a known magnetic stripe card that simply stores rudimentary information. Additionally, such a sample or preview can include many different modes of play. For instance, the gaming machine can display a preview of link progressive play, along with the progressive jackpot. It can also display the special bonus modes of various games, demonstrating to the player various special prizes than can be won. Such preview play can be interactive, allowing player participation, or passive, simply illustrating sample play without allowing user interaction. Preview play can also include full, nominal, zero, or other payouts if so desired."

As shown in Fig. 3, a player has to enter a card into a gaming device (step 200), the

gaming machine has to determine if preview play is enabled (step 210), read preview play

parameters (step 220), set up preview play (step 230), and then initiate preview play (step 240).

A portable sample play device (i.e. player tracking card) is configured to be carried by a user of

the gaming machine, and to initiate preview upon selective communication of the sample play

device (Para. 7).    Furthermore, the preview of the game is initiated in response to receiving

information from the player tracking card (Para. 9).    In contrast, Applicant's invention, as

claimed in independent claims 1, 14, 27, 40, 47, 54, 61, 68, and 75 includes the limitation of

"presenting the field of game symbols on the touch screen game display prior to activation of

game play as a preview to a player for deciding whether to play the displayed game."    The

- 28 -

WCSR 4081218v1

POM000158

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

electronic gaming machine previews the next game to be played by constructing the game field and displaying the game so constructed on the touch screen game display, all without user interaction. Therefore, even if the teachings of *Vancura* and *Muir et al.* could be combined, they would still not result in the claimed invention.

With regard to claims 9, 25, and 39, there is no teaching in *Muir et al.* of receiving the player's selection of a previewed game to play. There is no player selection of a previewed game, rather, if a preview of a game on a gaming machine is available, preview play is automatically initiated when the gaming machine receives information from the player tracking card. Therefore, claims 9, 25, and 39 are allowable over the combination of *Vancura* and *Muir et al.*

With regard to claims 8, 24, and 38, *Muir et al.* fails to teach constructing a plurality of game fields with each game field corresponding to a selectable level of play (i.e., a different game field is generated for each selectable level of play (denomination of wager), and presenting each game field as a preview for player selection. In other words, the player can preview several game displays (by stepping through the plurality of game fields) and select the previewed game that he wants to play. There is no teaching in *Muir et al.* of these limitations. Therefore, claims 8, 24, and 38 are allowable over the combination of *Vancura* and *Muir et al.* Note that claim 8 was not included in the rejections based on *Muir et al.*, but recites limitations that parallel those of claims 24 and 38.

With regard to independent claims 40, 47, 54, 61, 68, and 75, each claim includes the limitation of "presenting the field of game symbols on the touch screen game display prior to activation of game play as a preview to a player for deciding whether to play the displayed

- 29 -

WCSR 4081218v1

POM000159

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

game." As discussed above with regard to the rejection of independent claims 1, 14, and 27, this limitation is not disclosed by either *Vancura* or *Muir, et al.* Therefore, claims 40, 47, 54, 61, 68, and 75 are allowable over the combination of *Vancura* and *Muir, et al.*

Claims 41 – 46 depend from claim 40 and are allowable for at least the same reasons as claim 40. Claims 48 – 53 depend from claim 47 and are allowable for at least the same reasons as claim 47. Claims 55 – 60 depend from claim 54 and are allowable for at least the same reasons as claim 54. Claims 62 – 67 depend from claim 60 and are allowable for at least the same reasons as claim 60. Claims 69 – 74 depend from claim 68 and are allowable for at least the same reasons as claim 68. Claims 76 – 81 depend from claim 75 and are allowable for at least the same reasons as claim 75.

With further regard to claims 41, 48, 55, 62, 69, and 76, each claim has been amended to recite the limitation of generating and displaying a next game preview <u>simultaneously</u> on the game display in proximity to a currently displayed game. In other words, two games are displayed and previewed simultaneously. Support for the amendment to these claims (addition of the limitation "simultaneously") is found at least in paragraph 49 and Fig. 7 (see upper right hand portion of game display). In order to play the next game which may have a higher payout to the player, the displayed game on the main portion of the touch screen display has to be played first. There is no teaching in either *Vancura* or *Muir, et al.* of the simultaneous display of a current game and a next game. Therefore, claims 41, 48, 55, 62, 69, and 76 are allowable over *Vancura* and *Muir, et al.* for this additional reason.

With further regard to claims 67, 74, and 81, each claim has been amended to recite the limitation "wherein the player's selection of the level of play determines which of the previewed

- 30 -

WCSR 4081218v1

POM000160

Serial No. 11/428,026
Amendment dated June 4, 2009
In Reply to the Official Action mailed December 4, 2008

games is actually played." This limitation also is found in claims 8, 24, and 38. As discussed above in arguments submitted for these claims, the player can preview several game displays by stepping through the plurality of game fields and select the previewed game that he wants to play. There is no teaching in *Muir et al.* or *Vancura* of this limitation. Therefore, claims 67, 74, and 81 are allowable over *Vancura* and *Muir, et al.* for this additional reason.

The prior art made of record, but not applied, by the Examiner has been reviewed. This prior art is not deemed relevant to the claimed invention.

In view of the above remarks, it is submitted that the objection to the abstract and the claim rejections of the Examiner have been properly addressed and the pending claims are in condition for allowance. It is respectfully requested that the Examiner reconsider and withdraw the objection to the abstract and rejections of the pending claims. It is also requested that the Examiner contact Applicant's attorney at the telephone number listed below should this response not be deemed to place this application in condition for allowance.

Respectfully submitted,

6/4/09

Date

John J. Timar
Registration No. 32,497

Customer No. 26158
WOMBLE CARLYLE SANDRIDGE & RICE
P. O. Box 7037
Atlanta, Georgia 30357-0037
(404) 888-7412 (Telephone)
(404) 870-2405 (Facsimile)

- 31 -

WCSR 4081218v1

POM000161

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11428026 |
| **Filing Date:** | 30-Jun-2006 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Attorney Docket Number:** | P175 1021.1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 3 months with $0 paid | 2253 | 1 | 555 | 555 |

POM000162

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **555** |

POM000163

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5457020 |
| **Application Number:** | 11428026 |
| **International Application Number:** | |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 04-JUN-2009 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 17:18:17 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 555 |
| RAM confirmation Number | 3604 |
| Deposit Account | 090528 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

POM000164

| 1 | | P175_1021_1_Amendment.pdf | 1268720<br><br>c74a9be5de5b07e29723276a1e8617f00cb6e231 | yes | 34 |
|---|---|---|---|---|---|

| Multipart  Description/PDF files in .zip description | | | |
|---|---|---|---|
| **Document Description** | | **Start** | **End** |
| Miscellaneous Incoming Letter | | 1 | 1 |
| Extension of Time | | 2 | 2 |
| Fee Worksheet (PTO-875) | | 3 | 3 |
| Amendment/Req. Reconsideration-After Non-Final Reject | | 4 | 4 |
| Abstract | | 5 | 5 |
| Drawings-only black and white line drawings | | 6 | 26 |
| Applicant Arguments/Remarks Made in an Amendment | | 27 | 34 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29852<br><br>efabd29787fbb28f541dcb62a46f0082bd971d6f | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 1298572 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

POM000165

Doc Code: TRAN.LET

Document Description: Transmittal Letter

PTO/SB/21 (06-09)
Approved for use through 06/30/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

Total Number of Pages in This Submission

| | |
|---|---|
| Application Number | 11/428,026 |
| Filing Date | June 30, 2006 |
| First Named Inventor | Michael R. Pace |
| Art Unit | 3714 |
| Examiner Name | Torimiro, Adetokunbo Olusegun |
| Attorney Docket Number | P175 1021.1 |

## ENCLOSURES    *(Check all that apply)*

- [✔] Fee Transmittal Form
  - [✔] Fee Attached
- [✔] Amendment/Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [✔] Extension of Time Request
- [ ] Express Abandonment Request
- [ ] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Reply to Missing Parts/ Incomplete Application
  - [ ] Reply to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [ ] Petition
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CD(s) _____
  - [ ] Landscape Table on CD

- [ ] After Allowance Communication to TC
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to TC **(Appeal Notice, Brief, Reply Brief)**
- [ ] Proprietary Information
- [ ] Status Letter
- [ ] Other Enclosure(s) (please Identify below):

Remarks

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | WOMBLE CARLYLE SANDRIDGE & RICE, PLLC |
|---|---|
| Signature | *[signature]* |
| Printed name | John J. Timar |
| Date | June 4, 2009 | Reg. No. | 32,497 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being transmitted via EFS-Web to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below:

| Signature | *[signature]* | | |
|---|---|---|---|
| Typed or printed name | Fonda Hedgepeth | Date | June 4, 2009 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000166

PTO/SB/22 (06-09)
Approved for use through 06/30/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) FY 2009 *(Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).)* | Docket Number (Optional) P175 1021.1 |
|---|---|
| Application Number  11/428,026 | Filed June 30, 2006 |

**For**  ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

| Art Unit  3714 | Examiner Torimiro, Adetokunbo Olusegun |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  |  | Fee | Small Entity Fee |  |
|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $130 | $65 | $_____ |
| ☐ | Two months (37 CFR 1.17(a)(2)) | $490 | $245 | $_____ |
| ☑ | Three months (37 CFR 1.17(a)(3)) | $1110 | $555 | $ 555.00 |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $1730 | $865 | $_____ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $2350 | $1175 | $_____ |

☑ Applicant claims small entity status. See 37 CFR 1.27.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number __09-0528__.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

☑ attorney or agent of record. Registration Number __32,497__

☐ attorney or agent under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34 _____

| _Signature_ | June 4, 2009 |
|---|---|
|  | Date |
| John J. Timar | (404) 888-7412 |
| Typed or printed name | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/17 (10-08)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995  no persons are required to respond to a collection of information unless it displays a valid OMB control number

| | |
|---|---|
| Effective on 12/08/2004.<br>Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).<br># **FEE TRANSMITTAL**<br>## For FY 2009<br>☑ Applicant claims small entity status. See 37 CFR 1.27 | **Complete if Known** |

| **Complete if Known** | |
|---|---|
| Application Number | 11/428,026 |
| Filing Date | June 30, 2006 |
| First Named Inventor | Michael R. Pace |
| Examiner Name | Torimiro, Adetokunbo Olusegu |
| Art Unit | 3714 |
| Attorney Docket No. | P175 1021.1 |

| TOTAL AMOUNT OF PAYMENT | ($) | 555.00 |
|---|---|---|

## METHOD OF PAYMENT (check all that apply)

☐ Check   ☐ Credit Card   ☐ Money Order   ☐ None   ☐ Other (please identify): _____

☑ Deposit Account   Deposit Account Number: 09-0528   Deposit Account Name: Womble Carlyle Sandridge

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☑ Charge fee(s) indicated below           ☐ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17           ☑ Credit any overpayments

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| Application Type | FILING FEES Fee ($) | Small Entity Fee ($) | SEARCH FEES Fee ($) | Small Entity Fee ($) | EXAMINATION FEES Fee ($) | Small Entity Fee ($) | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| Utility | 330 | 165 | 540 | 270 | 220 | 110 | _____ |
| Design | 220 | 110 | 100 | 50 | 140 | 70 | _____ |
| Plant | 220 | 110 | 330 | 165 | 170 | 85 | _____ |
| Reissue | 330 | 165 | 540 | 270 | 650 | 325 | _____ |
| Provisional | 220 | 110 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 52 | 26 |
| Each independent claim over 3 (including Reissues) | 220 | 110 |
| Multiple dependent claims | 390 | 195 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 20 or HP = | _____ | x _____ | = _____ |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 3 or HP = | _____ | x _____ | = _____ |

HP = highest number of independent claims paid for, if greater than 3.

| Multiple Dependent Claims | |
|---|---|
| Fee ($) | Fee Paid ($) |
| _____ | _____ |

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | _____ / 50 = | _____ (round **up** to a whole number) x | _____ | = _____ |

### 4. OTHER FEE(S)

Non-English Specification,   $130 fee (no small entity discount)

| | Fees Paid ($) |
|---|---|
| Other (e.g., late filing surcharge): Request for Three Month Extension of Time | $555.00 |

## SUBMITTED BY

| Signature | | Registration No. (Attorney/Agent) 32,497 | Telephone (404) 888-7412 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | | Date June 4, 2009 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000168

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 11/428,026 | Filing Date 06/30/2006 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **06/04/2009** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 78 | Minus | ** 81 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 9 | Minus | *** 9 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | | (Column 2) | (Column 3) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/JULIET MCMILLAN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000169

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

26158          7590          10/26/2009
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/26/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

POM000170

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/428,026 | PACE, MICHAEL R. |
| | Examiner | Art Unit |
| | ADETOKUNBO O. TORIMIRO | 3714 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *04 June 2009*.

2a) ☒ This action is **FINAL**.        2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-9,11-20,22-33 and 35-81* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-9,11-20,22-33, and 35-81* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____.

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 08-06)          **Office Action Summary**          Part of Paper No./Mail Date 20091019

Application/Control Number: 11/428,026                                           Page 2

Art Unit: 3714

## DETAILED ACTION

1.      The amendment received on 06/04/2009 has been considered. It has been noted that claims 1,3,8,9,14,16,24,27,29,38,40,41,47,48,54,55,61,62,67-69,74, and 75 have been amended. Claims 10,21, and 34 have been cancelled.

## *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless;-
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

3.      Claims 1-8,11-20,23,24,26-33,38,35-37,67,74, and 81 are rejected under 35 U.S.C. 102(b) as being anticipated by Vancura (US 4,040,985).

Re claims 1,6,8,24, and 38: Vancura discloses an electronic gaming method comprising the steps of: constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction **(see figs.1 and 8; col.4, lines 43-50; col.6, lines 15-25)**; presenting the field of game symbols (808) / *matrix of symbols* prior to activation of game play on the touch screen game display where a player can interact with the screen by touching the touch screen **(see figs.1-4 and 8; col.4, lines 47-48)**; receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection **(see abstract; fig.8)**; and displaying each winning combination

POM000172

Application/Control Number: 11/428,026                                              Page 3
Art Unit: 3714

of symbols on the field of game symbols **(see fig.5)**; wherein the player's selection of the level of play determines which of the previewed symbols is played / *the player's choice and selection of wagering 1 credit determines which of the presented and displayed symbols is played and selected to determine outcomes* **(see col.5, lines 52-55)**. Examiner points out that it is well known in the art that a plurality or field of symbols are always displayed constantly at all times and presented on an electronic gaming terminal even before a wager is placed and before a selection is made. Further examiner points out that it is well known in the art for the player to have the option of selecting what level of play such as how many paylines or how much credit to be wagered upon for an electronic gaming terminal and by making this selection, the game play and outcome is only dependent on the level selected.

Re claims 2-5,7,11-13,15-18,20,22,26,28-31,33, and 35-37: Vancura discloses further comprising the steps of receiving the player's selection of a play level and activating game play; further comprising the step of determining if the player has decided to play the new game field on the game display **(see abstract; fig.7)**; Further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played **(see col.5, lines 52-55)**; wherein the constructed field is a two-dimensional array having a plurality of rows and columns **(see fig.1; col.2, lines 20-21)**; wherein the orientation of each winning combination is horizontal, vertical or diagonal **(see fig.5)**

Re claims 14 and 19: Vancura discloses an electronic gaming system comprising: a game processor for generating an electronic game display on a game terminal with a plurality of

POM000173

Application/Control Number: 11/428,026                                                    Page 4

Art Unit: 3714

options selectable by a player **(see abstract; col.2, lines 38-67)**, the game processor comprising: a component for constructing a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction **(see fig.8)**; a component for presenting the field of game symbols (808) / *matrix of symbols* prior to activation of game play on the touch screen game display where a player can interact with the screen by touching the touch screen **(see figs.1-4 and 8; col.4, lines 47-48)**; a component for receiving the player's selection of a field element as a location for a wild symbol (810)and determining each winning combination of symbols that is formed by such selection (814) **(see abstract; fig.8)**; and a component for displaying each winning combination of symbols on the field of game symbols **(see fig.5)**.

Re claims 27 and 32: Vancura discloses computer program product for electronic gaming comprising a computer readable medium having computer readable code embedded therein, the computer readable medium comprising: program instructions that construct a field having a plurality of elements for a game display wherein each element is filled by a game symbol from a plurality of available game symbols **(see fig.1)**, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction (808,814) **(see fig.8)**; presenting the field of game symbols (808) / *matrix of symbols* prior to activation of game play on the touch screen game display where a player can interact with the screen by touching the touch screen **(see figs.1-4 and 8; col.4, lines 47-48)**; program instructions that receive the player's selection of a field element as a location for a wild symbol and

POM000174

Application/Control Number: 11/428,026                                      Page 5

Art Unit: 3714

determine each winning combination of symbols that is formed by such selection **(see abstract; fig.8)**; and program instructions that display each winning combination of symbols on the field of game symbols **(see fig.5)**.

### *Claim Rejections - 35 USC § 103*

4.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5.      Claims 9,25,38-66,69-73, and 75-80 are rejected under 35 U.S.C. 103(a) as being unpatentable over Vancura (US 7,040,985) in view of Muir et al (US 2005/0003883).

Re claims 9,25,38-42,47-49,54-56,61,62,68,69,75, and 76: The teachings of Vancura have been discussed above.

However, Vancura does not teach presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game.

Muir et al teaches presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game where the preview can include many different modes of play such as simultaneous play **(see abstract; fig.3; pars.[0005]-[0010])**.

Therefore it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate the reviewing teaching of Muir et al into the teaching of Vancura. One would be motivated to do this so as to have a gaming system where the player has the opportunity to view the game before playing so as to allow the player to become familiar

Application/Control Number: 11/428,026                                                    Page 6
Art Unit: 3714

with the game and allow the player make better decisions before playing the game and wagering, thereby allowing player satisfaction and enjoyment of the game.

Re claims 43-46,50-53,57-60,63-66,70-73, and 77-80: Vancura discloses further comprising the steps of receiving the player's selection of a play level and activating game play; further comprising the step of determining if the player has decided to play the new game field on the game display **(see abstract; fig.7)**; Further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played **(see col.5, lines 52-55)**; wherein the constructed field is a two-dimensional array having a plurality of rows and columns **(see fig.1; col.2, lines 20-21)**; wherein the orientation of each winning combination is horizontal, vertical or diagonal **(see fig.5)**.

### *Response to Arguments*

6.      The Applicants correction in regards to the abstract and 35 USC 101 rejections is accepted therefore, the objections and rejections have been withdrawn.

In response to the argument that Vancura does not teach presenting the field of game symbols on the game display as a preview to a player  for deciding whether to play the displayed game, the examiner points out that as explained in the above office action, the teachings of Vancura shows a presentation and display of an array of symbols which are presented on a touch screen prior to any selection made by player as shown in figure 7. Further examiner points out that these symbols make up the options that the player has to choose from, which therefore means that these symbols are displayed as a form of preview for the player to have the choices of

POM000176

Application/Control Number: 11/428,026                                          Page 7
Art Unit: 3714

symbols to play and choose from. Muir et al had also been introduced as a support to teach this limitation of displaying symbols as a preview to a player.

In response to the argument that Vancura does not teach automatically determining game symbols for each element of a game display for each game play such that there is no winning combination without player interaction, the examiner disagrees. The examiner points out that in addition to cited portion above, Vancura teaches a touch screen that allows a player to make selection and hence creating combinations automatically that result in winning outcome. Col. 6, lines 15-26 of Vancura teaches on a processor that automatically generates a field and matrix of symbols that the player can interactively via the touch screen display select from to form outcome and combinations automatically generated by the process and hence produce awards for the players.

In response to the argument that Vancura and Muir et al do not teach the limitation of previewing before activation of the game play, the examiner disagrees and points out that as explained above, it is well known in the art that a plurality or field of symbols are always displayed constantly at all times and presented on an electronic gaming terminal even before a wager is placed and before a selection is made. Also both Vancura and Muir et al teach and disclose revealing and displaying the field of symbols prior to the player making any selections, which teaches the applicant's claimed invention because before the gaming terminal displays any field of symbols to the player, there has to be an action by the player to notify the gaming system that a player is around and available to play, hence the inserting of the tracking card into the gaming terminal as discussed by Muir et al.

POM000177

Application/Control Number: 11/428,026                                          Page 8

Art Unit: 3714

## Conclusion

7.      **THIS ACTION IS MADE FINAL.**   Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Adetokunbo O. Torimiro whose telephone number is (571) 270-

1345.  The examiner can normally be reached on Mon-Fri (8am - 4pm).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Hotaling can be reached on (571) 272-4437.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.


/A. O. T./

Examiner, Art Unit 3714

/John M Hotaling II/

Primary Examiner, Art Unit 3714

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11428026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | - | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | ✓ | | | | | | |
| | 21 | ✓ | - | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |
| | 24 | ✓ | ✓ | | | | | | |
| | 25 | ✓ | ✓ | | | | | | |
| | 26 | ✓ | ✓ | | | | | | |
| | 27 | ✓ | ✓ | | | | | | |
| | 28 | ✓ | ✓ | | | | | | |
| | 29 | ✓ | ✓ | | | | | | |
| | 30 | ✓ | ✓ | | | | | | |
| | 31 | ✓ | ✓ | | | | | | |
| | 32 | ✓ | ✓ | | | | | | |
| | 33 | ✓ | ✓ | | | | | | |
| | 34 | ✓ | - | | | | | | |
| | 35 | ✓ | ✓ | | | | | | |
| | 36 | ✓ | ✓ | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20091019

POM000179

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11428026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | | | | | | |
| | 37 | ✓ | ✓ | | | | | | |
| | 38 | ✓ | ✓ | | | | | | |
| | 39 | ✓ | ✓ | | | | | | |
| | 40 | ✓ | ✓ | | | | | | |
| | 41 | ✓ | ✓ | | | | | | |
| | 42 | ✓ | ✓ | | | | | | |
| | 43 | ✓ | ✓ | | | | | | |
| | 44 | ✓ | ✓ | | | | | | |
| | 45 | ✓ | ✓ | | | | | | |
| | 46 | ✓ | ✓ | | | | | | |
| | 47 | ✓ | ✓ | | | | | | |
| | 48 | ✓ | ✓ | | | | | | |
| | 49 | ✓ | ✓ | | | | | | |
| | 50 | ✓ | ✓ | | | | | | |
| | 51 | ✓ | ✓ | | | | | | |
| | 52 | ✓ | ✓ | | | | | | |
| | 53 | ✓ | ✓ | | | | | | |
| | 54 | ✓ | ✓ | | | | | | |
| | 55 | ✓ | ✓ | | | | | | |
| | 56 | ✓ | ✓ | | | | | | |
| | 57 | ✓ | ✓ | | | | | | |
| | 58 | ✓ | ✓ | | | | | | |
| | 59 | ✓ | ✓ | | | | | | |
| | 60 | ✓ | ✓ | | | | | | |
| | 61 | ✓ | ✓ | | | | | | |
| | 62 | ✓ | ✓ | | | | | | |
| | 63 | ✓ | ✓ | | | | | | |
| | 64 | ✓ | ✓ | | | | | | |
| | 65 | ✓ | ✓ | | | | | | |
| | 66 | ✓ | ✓ | | | | | | |
| | 67 | ✓ | ✓ | | | | | | |
| | 68 | ✓ | ✓ | | | | | | |
| | 69 | ✓ | ✓ | | | | | | |
| | 70 | ✓ | ✓ | | | | | | |
| | 71 | ✓ | ✓ | | | | | | |
| | 72 | ✓ | ✓ | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20091019

POM000180

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11428026 | PACE, MICHAEL  R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|
| **=** | **Allowed** | **÷** | **Restricted** | **I** | **Interference** | **O** | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | | | | | | |
| | 73 | ✓ | ✓ | | | | | | |
| | 74 | ✓ | ✓ | | | | | | |
| | 75 | ✓ | ✓ | | | | | | |
| | 76 | ✓ | ✓ | | | | | | |
| | 77 | ✓ | ✓ | | | | | | |
| | 78 | ✓ | ✓ | | | | | | |
| | 79 | ✓ | ✓ | | | | | | |
| | 80 | ✓ | ✓ | | | | | | |
| | 81 | ✓ | ✓ | | | | | | |

POM000181

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11428026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| 463 | 16,19 | 8/26/2008 | AT |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| -Inventor Name Search | 8/26/2008 | AT |
| -Assignee Search | 8/26/2008 | AT |
| -East Text Search | 10/19/2009 | AT |
| -Plus Search | 8/26/2008 | AT |
| -Backward/Forward Search | 10/19/2009 | AT |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

/A. O. T./
Examiner.Art Unit 3714

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                )

     MICHAEL R. PACE           )    Art Unit:      3714

Serial No.      11/428,026          )    Confirmation No.   3398

Filed:          June 30, 2006       )    Examiner: Torimiro, Adetokunbo Olusegun

For:    ELECTRONIC GAMING METHOD )    Attorney Docket No.:  P175 1021.1
     AND SYSTEM HAVING PREVIEW)
     SCREEN                        )


Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


## AMENDMENT AFTER FINAL

Sir:

In response to the Official Action mailed October 26, 2009, Applicant respectfully

request that the application be amended as follows:

**Amendments to the Claims** are reflected in the list of claims which begins on page 2 of

this paper.

**Remarks/Arguments** begin on page 25 of this paper.


WCSR 4244188v2

POM000183

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

## Amendments to the Claims:

This listing of claims will replace all prior versions and listings of claims in the application.

## Listing of Claims:

1.      (currently amended)     An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

automatically displaying ~~presenting~~ the game field ~~of game symbols~~ on the touch screen ~~game~~ display to a player prior to initiating activation of game play ~~as a preview to a player for deciding whether to play of displayed game~~;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

2.      (original) The electronic gaming method of claim 1 further comprising the steps of receiving the player's selection of a play level and activating game play.

WCSR 4244188v2

2

POM000184

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

3.      (currently amended)     The electronic gaming method of claim 1 further comprising the step of determining if the player has decided to play the game field ~~presented~~ displayed on the game display.

4.      (original)  The electronic gaming method of claim 3 further comprising the step of redeeming a player's credit balance and an associated payout for each winning combination of symbols on each game previously played.

5.      (original)  The electronic gaming method of claim 1 wherein the constructed field is a two-dimensional array having a plurality of rows and columns.

6.      (currently amended)   The electronic gaming method of claim 1 wherein the step of constructing the field comprises:

  selecting a number of winning combinations for a play of the game;

  selecting an orientation of each winning combination for the play of the game;

  selecting the symbols for each of the winning combinations;

  randomly selecting symbols for the remaining elements of the field, and

  testing the field ~~for compliance with at least one of the preceding steps~~ prior to

    ~~presenting~~ displaying the field to the player to ensure that a winning

    combination more valuable than the selected winning combinations is not

    generated inadvertently in completing the field.

3

WCSR 4244188v2

POM000185

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

7.    (original)  The electronic gaming method of claim 6 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

8.    (currently amended)    The electronic gaming method of claim 1, further comprising the steps of:

constructing a plurality of game fields each having a plurality of game symbols, with each game field corresponding to a selectable level of play; and

~~presenting~~ automatically displaying each of the plurality of game fields ~~field of game symbols~~ on the touch screen game display sequentially ~~as a preview to a player~~ for each selectable level of play, wherein the player's selection of the level of play determines which of the ~~previewed~~ sequentially displayed games is actually played.

9.    (currently amended)    The electronic gaming method of claim 8 further comprising receiving the player's selection of a ~~previewed~~ sequentially displayed game to play.

10.    (cancelled)

11.    (original)  The electronic gaming method of claim 1 wherein each winning combination of symbols has an associated payout to the player.

4

POM000186

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

12.    (original)   The electronic gaming method of claim 1 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

13.    (original)   The electronic gaming method of claim 1 wherein the denomination of play corresponds to the level of play.

14.    (currently amended)    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal with a plurality of options selectable by a player, the game processor ~~comprising~~ configured for:

a ~~component for~~ constructing a game field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

a ~~component for presenting~~ automatically displaying the game field ~~of game symbols~~ on the touch screen game display prior to initiating activation of game play ~~as a preview to a player for deciding whether to play of displayed game~~;

5

POM000187

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

a component for receiving the player's selection of a field element as a

location for a wild symbol and determining each winning

combination of symbols that is formed by such selection; and

a component for displaying each winning combination of symbols on the

touch screen display.

15.    (currently amended)   The electronic gaming system of claim 14 wherein the game

processor is further configured comprising a component for receiving the player's

selection of a play level and activating game play.

16.    (currently amended)    The electronic gaming system of claim 14 wherein the game

processor is further configured comprising a component for determining if the player has

decided to play the game field presented displayed on the game display.

17.    (currently amended)   The electronic gaming system of claim 16 wherein the game

processor is further configured comprising a component for redeeming a player's credit

balance and an associated payout for each winning combination of symbols on each game

previously played.

18.    (currently amended)   The electronic gaming system of claim 14 wherein the game

processor is further configured for constructing the field is constructed as a two-

dimensional array having a plurality of rows and columns.

WCSR 4244188v2

POM000188

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

19.   (currently amended)   The electronic gaming system of claim 14 wherein the game processor is further configured ~~component~~ for ~~constructing the field comprises~~:

a module for selecting a number of winning combinations for a play of the game;

a module for selecting an orientation of each winning combination for the play of the game;

a module for selecting the symbols for each of the winning combinations;

a module for randomly selecting symbols for the remaining elements of the field, and

a module for testing the field ~~for compliance with at least one of the preceding selections~~ prior to ~~presenting~~ displaying the field to the player to ensure that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field.

20.   (original)   The electronic gaming system of claim 19 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

21.   (cancelled)

22.   (original)   The electronic gaming system of claim 14 wherein each winning combination of symbols has an associated payout to the player.

7

WCSR 4244188v2

POM000189

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

23.    (original)   The electronic gaming system of claim 14 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

24.    (currently amended)      The electronic gaming system of claim 14 ~~further comprising~~ wherein the game processor is further configured for:

> ~~a component for~~ constructing a plurality of game fields each having a plurality of game symbols, with each field corresponding to a selectable level of play; and

> ~~a component for presenting~~ automatically displaying each of the plurality of game fields ~~field of game symbols~~ on the touch screen game display sequentially ~~as a preview to a player~~ for each selectable level of play, wherein the player's selection of the level of play determines which of the ~~previewed~~ sequentially displayed games is actually played.

25.    (currently amended)   The electronic gaming system of claim 24 ~~further comprising a component~~ wherein the game processor is further configured for receiving the player's selection of a ~~previewed~~ sequentially displayed game to play.

26.    (original)   The electronic gaming system of claim 17 wherein the denomination of play corresponds to the level of play.

8

WCSR 4244188v2

POM000190

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

27.    (currently amended)    A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded therein, the computer readable storage medium comprising:

program instructions that construct a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined for each play of the game such that there is no winning combination without player interaction with the game display;

program instructions that present automatically display the game field of game symbols on the touch screen game display to a player prior to initiating activation of game play as a preview to a player for deciding whether to play the displayed game;

program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the touch screen display.

9

WCSR 4244188v2

POM000191

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

28.    (original)   The computer program product for electronic gaming of claim 27 further

comprising program instructions that receive the player's selection of a play level and

activate game play.


29.    (currently amended)     The computer program product for electronic gaming of claim 27

further comprising program instructions that determine if the player has decided to play

the game field presented displayed on the game display.


30.    (original)   The computer program product for electronic gaming of claim 29 further

comprising program instructions that redeem a player's credit balance and an associated

payout for each winning combination of symbols on each game previously played.


31.    (original)   The computer program product for electronic gaming of claim 27 wherein the

field is a two-dimensional array having a plurality of rows and columns.


32.    (currently amended)   The computer program product for electronic gaming of claim 27

wherein the program instructions that construct the field comprise:

program instructions that select a number of winning combinations for a play of

the game;

program instructions that select an orientation of each winning combination for

the play of the game;

10

WCSR 4244188v2

POM000192

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

program instructions that select the symbols for each of the winning combinations;

program instructions that randomly select symbols for the remaining elements of the field, and

program instructions that test the field ~~for compliance with at least one of the preceding selections~~ prior to ~~presenting~~ <u>displaying</u> the field to the player <u>to ensure that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field</u>.

33.    (original)   The computer program product for electronic gaming of claim 32 wherein the orientation of each winning combination is horizontal, vertical or diagonal.

34.    (cancelled)

35.    (original)   The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has an associated payout to the player.

36.    (original) The computer program product for electronic gaming of claim 27 wherein each winning combination of symbols has a predetermined probability of occurrence for a play of the game.

WCSR 4244188v2

POM000193

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

37.    (original)   The computer program product for electronic gaming of claim 27 wherein the denomination of play corresponds to the level of play.

38.    (currently amended)    The computer program product for electronic gaming of claim 27 further comprising:

program instructions that construct a plurality of game fields each having a plurality of game symbols, with each game field corresponding to a selectable level of play; and

program instructions that ~~present~~ display each <u>of the plurality of game fields</u> ~~field of game symbols~~ on the touch screen game display <u>sequentially</u> ~~as a preview to a player~~ for each selectable level of play, wherein the player's selection of the level of play determines which of the ~~previewed~~ <u>sequentially displayed</u> games is actually played.

39.    (currently amended)    The computer program product for electronic gaming of claim 38 further comprising program instructions that receive the player's selection of a ~~previewed~~ <u>sequentially displayed</u> game to play.

40.    (currently amended)    An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element

WCSR 4244188v2

POM000194

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

is filled by a game symbol from a plurality of predetermined game symbols;

automatically displaying ~~presenting~~ the game field ~~of game symbols~~ on the touch screen game display to a player prior to initiating activation of game play ~~as a preview to a player for deciding whether to play of the displayed game~~;

determining if the player has decided to play the displayed game ~~presented as a preview~~; and

displaying an outcome resulting from play of the displayed game.

41.    (currently amended)    The electronic gaming method of claim 40 further comprising generating and displaying an additional game field ~~preview~~ simultaneously on the game display in proximity to the displayed game.

42.    (currently amended)   The electronic gaming method of claim 41 wherein the additional game field ~~preview~~ is for a next game to be played.

43.    (original) The electronic gaming method of claim 40 wherein the displayed game comprises a two-dimensional array of game symbols.

44.    (original) The electronic gaming method of claim 40 wherein the displayed game comprises a one-dimensional array of game symbols.

13

WCSR 4244188v2

POM000195

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

45.   (original)  The electronic gaming method of claim 40 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

46.   (original)  The electronic gaming method of claim 45 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

47.   (currently amended)     An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor ~~comprising~~ configured for:

~~a component for~~ constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

~~a component for presenting~~ automatically displaying the game field ~~of game symbols~~ on the touch screen game display to a player prior to initiating activation of game play ~~as a preview to a player for deciding whether to play the displayed game~~;

~~a component for~~ determining if the player has decided to play the displayed game ~~presented as a preview~~; and

14

WCSR 4244188v2

POM000196

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

~~a component for~~ displaying an outcome resulting from play of the displayed game.

48.    (currently amended)    The electronic gaming system of claim 47 further comprising a component for generating and displaying an additional game field ~~preview~~ simultaneously on the game display in proximity to the displayed game.

49.    (currently amended)    The electronic gaming system of claim 48 wherein the additional game field ~~preview~~ is for a next game to be played.

50.    (original)    The electronic gaming system of claim 47 wherein the displayed game comprises a two-dimensional array of game symbols.

51.    (original)    The electronic gaming system of claim 47 wherein the displayed game comprises a one-dimensional array of game symbols.

52.    (original)    The electronic gaming system of claim 47 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

53.    (original)    The electronic gaming system of claim 52 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

15

WCSR 4244188v2

POM000197

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

54.    (currently amended)    A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded herein, the computer readable storage medium comprising:

program instructions that construct a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

program instructions that ~~present~~ automatically display the game field ~~of game symbols~~ on the touch screen game display to a player prior to initiating activation of game play ~~as a preview to a player for deciding whether to play the displayed game~~;

program instructions that determine if the player has decided to play the displayed game presented as a preview; and

program instructions that display an outcome resulting from play of the displayed game.

55.    (currently amended)    The computer program product for electronic gaming of claim 54 further comprising program instructions that generate and display an additional game field ~~preview~~ simultaneously on the game display in proximity to the displayed game.

WCSR 4244188v2

16

POM000198

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

56.    (currently amended)   The computer program product for electronic gaming of claim 55 wherein the additional game field ~~preview~~ is for a next game to be played.

57.    (original)   The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a two-dimensional array of game symbols.

58.    (original)   The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a one-dimensional array of game symbols.

59.    (original)   The computer program product for electronic gaming of claim 54 wherein the displayed game comprises a plurality of vertically-oriented reels, each having a plurality of game symbols.

60.    (original) The computer program product for electronic gaming of claim 59 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

61.    (currently amended)       A method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields for selection by a player before initiating play of a selected game comprising the steps of:

17

WCSR 4244188v2

POM000199

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

receiving a signal from a the player to generate ~~display a preview of~~ an interactive electronic game on a touch screen display of an electronic game terminal;

generating a game field having a plurality of elements for the interactive game display wherein each element is filled by a game symbol from a plurality of predetermined game symbols; ~~and~~

automatically displaying ~~presenting~~ the game field to the player on the touch screen game display prior to initiating activation of game play; ~~as an electronic game preview to the player~~

receiving a signal from the player to generate another of the plurality of electronic game fields associated with a different level of play prior to initiating activation of game play;

generating and automatically displaying another of the plurality of electronic game fields; and

receiving the player's selection of the electronic game field to play prior to initiating activation of game play.

62.    (currently amended)    The method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 61 further comprising generating and displaying a next game ~~preview~~ field simultaneously on the game display in proximity to a currently displayed game.

18

WCSR 4244188v2

POM000200

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

63.    (currently amended)    The method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 61 wherein the displayed game comprises a two-dimensional array of game symbols.

64.    (currently amended)    The method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 61 wherein the displayed game comprises a one-dimensional array of game symbols.

65.    (currently amended)    The method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 61 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

66.    (currently amended)    The method for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 65 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

67.    (cancelled)

68.    (currently amended)    A system for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields each associated with a different level of play comprising:

an electronic game terminal including a touch screen display;

19

WCSR 4244188v2

POM000201

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

a game processor for generating an interactive electronic game display on a game

terminal, the game processor ~~comprising~~ configured for displaying a

plurality of electronic game fields for selection by a player before initiating

play of a selected game by:

~~a component for~~ receiving a signal from ~~a~~ the player to generate an ~~display a~~

~~preview of the~~ interactive electronic game;

~~a component for~~ generating a game field having a plurality of elements for the

interactive game display wherein each element is filled by a game symbol

from a plurality of predetermined game symbols; and

~~a component for presenting~~ automatically displaying the game field ~~to the player~~

on the game display prior to initiating activation of game play; ~~as an~~

~~electronic game preview to the player~~

receiving a signal from the player to generate another of the plurality of electronic

game fields associated with another level of play prior to initiating

activation of game play;

generating and automatically displaying another of the plurality of electronic

game fields; and

receiving the player's selection of the electronic game field to play prior to

initiating activation of game play.

69.    (currently amended)    The system for ~~previewing~~ displaying a plurality of ~~an~~

electronic game fields of claim 68 further comprising a component for generating and

20

POM000202

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

displaying a next game ~~preview~~ <u>field</u> on the game display simultaneously in proximity to a currently displayed game.

70.    (currently amended)    The system for ~~previewing~~ <u>displaying a plurality of</u> ~~an~~ electronic game <u>fields</u> of claim 68 wherein the displayed game comprises a two-dimensional array of game symbols.

71.    (currently amended)    The system for ~~previewing~~ <u>displaying a plurality of</u> ~~an~~ electronic game <u>fields</u> of claim 68 wherein the displayed game comprises a one-dimensional array of game symbols.

72.    (currently amended)    The system for ~~previewing~~ <u>displaying a plurality of</u> ~~an~~ electronic game <u>fields</u> of claim 68 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

73.    (currently amended)    The system for ~~previewing~~ <u>displaying a plurality of</u> ~~an~~ electronic game <u>fields</u> of claim 72 wherein an outcome of the displayed game can be changed by moving a reel up or down at least one position in order to replace a current symbol on a pay line.

74.    (cancelled)

WCSR 4244188v2

POM000203

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

75.    (currently amended)    A computer program product for ~~previewing~~ displaying a plurality of ~~an~~ interactive electronic game <u>fields for selection by a player</u> when executed on a processor, the computer program product comprising a computer readable storage medium having computer readable code embedded therein, the computer readable storage medium comprising:

program instructions that receive a signal from a player to <u>generate</u> ~~display a preview of~~ an interactive electronic game on a touch screen display of an electronic game terminal;

program instructions that generate a game field having a plurality of elements for the interactive game display wherein each element is filled by a game symbol from a plurality of predetermined game symbols; and

program instructions that ~~present~~ <u>automatically display</u> the game field <u>to the player</u> on the touch screen game display prior to <u>initiating</u> activation of game play<u>;</u> ~~as an electronic game preview to the player~~

<u>program instructions that receive a signal from the player to generate another of the plurality of electronic game fields associated with a different level of play prior to initiating activation of game play;</u>

<u>program instructions that generate and automatically display another of the plurality of electronic game fields; and</u>

<u>program instructions that receive the player's selection of the electronic game field to play prior to initiating activation of game play.</u>

22

WCSR 4244188v2

POM000204

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

76.    (currently amended)    The computer program product for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 75 further comprising program instructions that generate and display a next game ~~preview~~ field on the game display simultaneously in proximity to a currently displayed game.

77.    (currently amended)    The computer program product for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 75 wherein the displayed game comprises a two-dimensional array of game symbols.

78.    (currently amended)    The computer program product for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 75 wherein the displayed game comprises a one-dimensional array of game symbols.

79.    (currently amended)    The computer program product for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 75 wherein the displayed game comprises a plurality of vertically-oriented reels, each reel having a plurality of game symbols.

80.    (currently amended)    The computer program product for ~~previewing~~ displaying a plurality of ~~an~~ electronic game fields of claim 75 further comprising program instructions that enable a player to move a reel up or down at least one position to replace a current symbol on a pay line and change an outcome of the displayed game.

23

WCSR 4244188v2

POM000205

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

81.    (cancelled)

24

WCSR 4244188v2

POM000206

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

## REMARKS

Claims 1 – 9, 11 – 20, 22 – 33 and 35 – 81 are pending in the application. Claims 1, 3, 6, 8, 9, 14 – 19, 24 – 25, 27, 29, 32, 38 – 42, 47 – 49, 54 – 56, 61 – 66, 68 – 73, 75, and 76 – 80 have been amended. Claims 67, 74, and 81 have been cancelled. Claims 1 – 9, 11 – 20, 22 – 33, 35 – 66, 68 – 73, and 75 – 80 remain in the application and are presented for reconsideration after final rejection.

The Examiner rejected claims 1 – 8, 11 – 20, 23, 24, 26 – 33, 38, 35 – 37, 67, 74 and 81 under 35 U.S.C. § 102(b) as being anticipated by *Vancura* (U.S. 7,040,985). This rejection is respectfully traversed.

In order to support a rejection of a claim under 35 USC § 102, it is well-established that "to anticipate, every element and limitation of the claimed invention must be found in a single prior art reference arranged as in the claim." Brown v. 3M, 265 F. 3d 1349, 60 USPQ 2d 1375 (Fed. Cir. 2001). Such disclosure can be made expressly or inherently in the reference, but such reference "still must describe the claimed invention with sufficient detail to establish that the subject matter existed in the prior art." Verve, LLC v. Crane Cams, Inc., 311 F. 3d 116, 65 USPQ 2d 1051 (Fed. Cir. 2002).

In Applicant's previous response filed June 4, 2009, Applicant argued that the rejection of claims 1 – 8, 11 – 20, 23, 26 – 33, and 35 – 37 as being anticipated by *Vancura* was improper because the Examiner failed to show where *Vancura* discloses "presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game." Applicant also pointed out in the response that the Examiner stated, at page

25

WCSR 4244188v2

POM000207

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

6, ln. 3 – 4 of the December 4, 2008 Office Action, that "Vancura does not teach presenting the field of game symbols on the game display as a preview for a player for deciding whether to play the displayed game." In the October 26, 2009 Office Action, the Examiner has again repeated this statement in his rationale for rejecting claims 9, 25, 38 – 66, 69 – 73, and 75 – 80 as being unpatentable over *Vancura* in view of *Muir*. This twice repeated statement means that *Vancura* cannot anticipate claims 1 – 8, 11 – 20, 23, 24, 26 – 33, 38, and 35 – 37, since each of these claims included the step of "presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game."

Since the terms "preview" and "present" have led to an apparent lack of clarity in the claim language, these terms have been eliminated from all pending claims. The term "display" replaces the term "present" throughout the pending claims. The term "preview" has been deleted from all claims. Applicant's use of preview in the claims was intended to convey that the player at an electronic game terminal always sees the next game to be played on the terminal. In most electronic game machines, the touch screen displays the last game played on the machine, not the next game to be played. Applicant defined the next game to be played which was automatically displayed to the player following completion of a previous play as a "game preview." However, the automatically displayed game field represented the actual game to play. Once the player selects a level of play (i.e., denomination of wager) and presses the "Play" button on the machine, play begins and the player selects a displayed symbol to turn into the "wild" symbol to determine the game outcome. In comparison to *Vancura*, there is no simulated spinning of reels once the player selects the "Play" button. Furthermore, *Vancura* does not display the game field before the player initiates play. The spin outcome in *Vancura*

26

WCSR 4244188v2

POM000208

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

always results from the player's wager beginning play. In Applicant's invention, the "spin outcome" is displayed before beginning play.

To further clarify this step, independent claims 1, 14, 27, 40, 47, and 54 have been amended to recite "automatically displaying the game field on the touch screen display to a player prior to initiating activation of game play." This recitation clarifies that the actual game to be played (i.e., the game field constructed in the first recited step) is automatically displayed to the player in order for the player to decide whether to initiate play of the game displayed. When the player hits the Play button, he is initiating play of the actual game field that is displayed. Thus, the player can study the game field carefully to determine the optimum location of the wild symbol before he makes any commitment to play the displayed game. There is no time limit for studying the game field or making a decision to play the displayed game. If the payout for the optimum location is minimal, the player can simply move on to another electronic gaming terminal to decide whether to play its displayed game.

The Examiner is relying on Fig. 8 of *Vancura* for teaching that there is no winning combination without player interaction and presenting the field of game symbols prior to activation of game play. However, as shown in both Figs. 7 and 8, *Vancura* discloses that the player first makes a wager to begin play (block 806), which then results in the display of a spin outcome (block 808, block 704). It is only at this point that the player may have a chance to select a symbol position to turn into a wild symbol (blocks 810, 706). In contrast, in Applicant's invention, the game field to be played is automatically displayed prior to the player's deciding to initiate play. Unlike *Vancura*, the game field does not change from the field originally displayed when the player initiates play. For the above reasons, claims 1, 14,

27

POM000209

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

and 27 cannot be anticipated by *Vancura*.   Claims 2 – 8 and 11 – 13 depend from claim 1 and are not anticipated by Vancura for at least the same reasons as claim 1.   Claims 12 – 20, 23 – 24, and 26 depend from claim 14 and are not anticipated by *Vancura* for at least the same reasons as claim 14.   Claims 28 – 33 and 35 – 38 depend from claim 27 and are not anticipated by *Vancura* for at least the same reasons as claim 27.   Claims 67, 74, and 81 cannot be anticipated by *Vancura* since these claims depend from independent claims 61, 68, and 75 which were rejected as unpatentable over the combination of *Vancura* and *Muir*.   A dependent claim cannot be anticipated if its corresponding base claim is not anticipated.

With further regard to claims 6, 19, and 32, the Examiner has failed to provide any rationale for why these claims are anticipated by *Vancura*.   In the December 4, 2008 Office Action, claim 6 was rejected as anticipated by *Vancura*; claims 19 and 32 were rejected as unpatentable over *Vancura* in view of *Muir*, also without explanation.   The rejection of claims 6, 19, and 32 as anticipated by *Vancura* is improper since no rationale has been provided for an anticipation rejection.

Claims 6, 19, and 32 have been amended to clarify the testing step.   Support for the amendment is found at least in Paragraph 39.   Testing the constructed field before presenting the field to the player on the game display ensures that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field.   With further regard to claims 6, 19, and 32, the Examiner stated that *Vancura* discloses the steps of constructing a game field.   However, *Vancura* does not disclose any selection process for constructing game displays.   As discussed in Applicant's June 4, 2009 response, *Vancura* discloses that each symbol in the matrix is randomly positioned in rows and columns (col. 6, ll.

28

WCSR 4244188v2

POM000210

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

18 – 21). Each play of the casino slot machine disclosed in *Vancura* results in a randomly generated field. There is no game field selection process disclosed in *Vancura* since each outcome is generated by pure chance. Furthermore, since all elements of the field are filled randomly, *Vancura* fails to disclose testing each game field prior to displaying the field to the player "to ensure that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field." Therefore, claims 6, 19, and 32 are not anticipated by, and are allowable over, *Vancura* for these additional reasons.

With further regard to claims 8, 24, and 38, as amended, *Vancura* fails to teach constructing a plurality of game fields with each game field corresponding to a selectable level of play (i.e., a different game field is generated for each selectable level of play), and automatically displaying each of the plurality of game fields on the touch screen game display sequentially for each selectable level of play, wherein the player's selection of the level of play determines which of the sequentially displayed games is actually played. In other words, the player can display several actual game fields sequentially (e.g. by selecting the "Next Puzzle" button in Fig. 1A) and select the displayed game that he wants to play. There is no teaching or suggestion in *Vancura* of these limitations. Therefore, claims 8, 24, and 38 are not anticipated by *Vancura* for this additional reason.

The Examiner rejected claims 9, 25, 38 – 66, 69 – 73, and 75 – 80 under 35 U.S.C. § 103(a) as being unpatentable over *Vancura* (U.S. 7,040,985) in view of *Muir et al.* (U.S. 2005/0003883). This rejection is respectfully traversed.

Regarding claims 9, 25, 38 – 42, 47 – 49, 54 – 56, 61, 62, 68, 69, 75, and 76, the Examiner stated that *Vancura* does not teach presenting the field of game symbols on the game

29

WCSR 4244188v2

POM000211

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

display as a preview to a player for deciding whether to play the displayed game.   The Examiner is relying on *Muir et al.* for teaching "presenting the field of game symbols on the game display as a preview to the player for deciding whether to play the displayed game where the preview can include many different modes of play such as simultaneous play" (citing the abstract, Fig. 3, and Para. 5 – 10).  The Examiner concluded that the motivation to combine *Vancura* with *Muir et al.* would be "to have a gaming system where the player has the opportunity to view the game before playing so as to allow the player to become familiar with the game and allow the player [to] make better decisions before playing the game and wagering, thereby allowing player satisfaction and enjoyment of the game."  Applicant disagrees with the Examiner's statement regarding *Muir et al.* as well as with the Examiner's position on the motivation to combine references.

*Muir et al.* discloses a portable sample play device that allows players of a gaming machine to view, and/or participate in, sample or preview play of a game.  Such preview play can be interactive, allowing player participation, or passive, illustrating sample play without allowing user interaction (Para. 5).  The portable sample play device is configured to be carried by a user of the gaming machine.  The gaming machine is configured to initiate a preview of the game upon selective communication of the sample play device with the gaming machine (Para. 7).  The game preview is initiated in response to the gaming machine receiving information from the portable sample device (Para. 9).  In other words, the player initiates play of the gaming machine by inserting the portable sample play device into the gaming machine.  The game field display is not generated until after the player inserts the device into the gaming machine.

As shown in Fig. 3, a player has to enter a card into the gaming device (step 200), the gaming machine has to determine if preview play is enabled (step 210), read preview play

30

WCSR 4244188v2

POM000212

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

parameters (step 220), set up preview play (step 230), and then initiate preview play (step 240). A portable sample play device (i.e. player tracking card) is configured to be carried by a user of the gaming machine, and to initiate preview upon selective communication of the sample play device (Para. 7).    Furthermore, the preview of the game is initiated in response to receiving information from the player tracking card (Para. 9).    In contrast, Applicant's invention, as now claimed in independent claims 1, 14, 27, 40, 47, 54, 61, 68, and 75, includes the limitation of automatically displaying the game field on the touch screen game display to a player *prior to initiating activation of game play*.  The electronic gaming machine generates the game field and automatically displays the game field on the touch screen game display, all without player interaction.  Therefore, even if the teachings of *Vancura* and *Muir et al.* could be combined, they would still not result in the claimed invention.

With further regard to independent claims 61, 68, and 75, neither *Vancura* nor *Muir et al.* discloses the following steps added to these claims: "receiving a signal from the player to generate another of the plurality of electronic game fields associated with a different level of play prior to initiating activation of game play; generating and automatically displaying another of the plurality of electronic game fields; and receiving the player's selection of the electronic game field to play prior to initiating activation of game play."  Therefore, claims 61, 68, and 75 are allowable over the combination of Vancura and *Muir et al.* for at least these additional reasons.

With further regard to claims 9, 25, and 39, there is no teaching or suggestion in *Vancura* or *Muir et al.* of receiving the player's selection of a sequentially displayed game to play. Although *Muir et al.* discloses a portable sample play device to receive a preview of an electronic game, there is no player selection of a sequentially displayed game to play, rather, if

31

POM000213

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

a preview of a game on a gaming machine is available, preview play is automatically initiated when the gaming machine receives information from the player tracking card. Therefore, claims 9, 25, and 39 are allowable over the combination of *Vancura* and *Muir et al.* for these additional reasons.

With further regard to independent claims 40, 47, 54, 61, 68, and 75, each claim recites "automatically displaying the game field on the touch screen display to a player prior to initiating activation of game play." As discussed above, this recitation clarifies that the actual game to be played is presented to the player in order for the player to decide whether to initiate play of the game displayed. When the player hits the Play button, he is initiating play of the actual game that is displayed. The player can determine the optimum location of the wild symbol before he makes any commitment to play the displayed game. There is no time limit for viewing the game field or making a decision to play the displayed game. If the player decides not to play the displayed game, the player can simply move on to another electronic gaming terminal operating the same electronic game to decide whether to play the game displayed on its screen.

As discussed above with regard to the rejection of independent claims 1, 14, and 27, this step is neither disclosed nor suggested by *Vancura* or *Muir, et al.* Therefore, claims 40, 47, 54, 61, 68, and 75 are allowable over the combination of *Vancura* and *Muir, et al.* for this additional reason.

Claims 41 – 46 depend from claim 40 and are allowable for at least the same reasons as claim 40. Claims 48 – 53 depend from claim 47 and are allowable for at least the same reasons as claim 47. Claims 55 – 60 depend from claim 54 and are allowable for at least the

32

WCSR 4244188v2

POM000214

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

same reasons as claim 54. Claims 62 – 66 depend from claim 60 and are allowable for at least the same reasons as claim 60. Claims 69 – 73 depend from claim 68 and are allowable for at least the same reasons as claim 68. Claims 76 – 80 depend from claim 75 and are allowable for at least the same reasons as claim 75.

With further regard to claims 41, 48, 55, 62, 69, and 76, each claim recites the limitation of generating and displaying an additional game field (claims 41, 48, 55) or next game field (claims 62, 69, 76) simultaneously on the game display in proximity to a currently displayed game. In other words, two games are displayed simultaneously. In order to play the next game which may have a higher payout to the player, the displayed game on the main portion of the touch screen display has to be played first. There is no teaching in either *Vancura* or *Muir, et al.* of the simultaneous display of a current game and a next game. Therefore, claims 41, 48, 55, 62, 69, and 76 are allowable over *Vancura* and *Muir, et al.* for at least this additional reason.

In view of the above remarks, it is submitted that the claim rejections of the Examiner have been properly addressed and the pending claims are in condition for allowance. It is respectfully requested that the Examiner enter this amendment after final rejection, and reconsider and withdraw the final rejection of the pending claims. It is also requested that the Examiner contact Applicant's attorney at the telephone number listed below should this response not be deemed to place this application in condition for allowance.

WCSR 4244188v2

33

POM000215

Serial No. 11/428,026
Amendment dated January 26, 2010
In Reply to the Official Action mailed October 26, 2009

Respectfully submitted,

*1/26/10*

Date

John J. Timar
Registration No. 32,497

Customer No. 26158
WOMBLE CARLYLE SANDRIDGE & RICE
P. O. Box 7037
Atlanta, Georgia 30357-0037
(404) 888-7412 (Telephone)
(404) 870-2405 (Facsimile)

34

WCSR 4244188v2

POM000216

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6883095 |
| **Application Number:** | 11428026 |
| **International Application Number:** | |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 26-JAN-2010 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 15:44:11 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Amendment_After_Final.pdf | 1283344<br>994048241cd0d5bc4fc7dba32e946d8f0715ccc0 | yes | 35 |

POM000217

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Miscellaneous Incoming Letter | 1 | 1 |
| Amendment After Final | 2 | 2 |
| Claims | 3 | 25 |
| Applicant Arguments/Remarks Made in an Amendment | 26 | 35 |

| Warnings: |
|---|

| Information: |
|---|

| Total Files Size (in bytes): | 1283344 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

POM000218

Doc Code: TRAN.LET

Document Description: Transmittal Letter

PTO/SB/21 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL FORM  *(to be used for all correspondence after initial filing)* | Application Number | 11/428,026 |
|---|---|---|
| | Filing Date | June 30, 2006 |
| | First Named Inventor | Michael R. Pace |
| | Art Unit | 3714 |
| | Examiner Name | Tormiro, Adetokunbo Olusegun |
| Total Number of Pages in This Submission | Attorney Docket Number | P175 1021.1 |

## ENCLOSURES    *(Check all that apply)*

☐ Fee Transmittal Form
   ☐ Fee Attached
☑ Amendment/Reply
   ☑ After Final
   ☐ Affidavits/declaration(s)
☐ Extension of Time Request
☐ Express Abandonment Request
☐ Information Disclosure Statement
☐ Certified Copy of Priority Document(s)
☐ Reply to Missing Parts/ Incomplete Application
   ☐ Reply to Missing Parts under 37 CFR 1.52 or 1.53

☐ Drawing(s)
☐ Licensing-related Papers
☐ Petition
☐ Petition to Convert to a Provisional Application
☐ Power of Attorney, Revocation Change of Correspondence Address
☐ Terminal Disclaimer
☐ Request for Refund
☐ CD, Number of CD(s) _____
   ☐ Landscape Table on CD

Remarks

☐ After Allowance Communication to TC
☐ Appeal Communication to Board of Appeals and Interferences
☐ Appeal Communication to TC **(Appeal Notice, Brief, Reply Brief)**
☐ Proprietary Information
☐ Status Letter
☐ Other Enclosure(s) (please Identify below):

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | WOMBLE CARLYLE SANDRIDGE & RICE, PLLC |
|---|---|
| Signature | *[signature]* |
| Printed name | John J. Timar |
| Date | January 26, 2010 |
| Reg. No. | 32,497 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being transmitted via EFS-Web to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below:

| Signature | *[signature]* | | |
|---|---|---|---|
| Typed or printed name | Fonda Hedgepeth | Date | January 26, 2010 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000219

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/428,026 | Filing Date<br>06/30/2006 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $    = | | X $    = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $    = | | X $    = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| **01/26/2010** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| Total (37 CFR 1.16(i)) | * 75 | Minus | ** 81 | = 0 | X $26 = | 0 | OR | X $    = | |
| Independent (37 CFR 1.16(h)) | * 9 | Minus | *** 9 | = 0 | X $110 = | 0 | OR | X $    = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

| | (Column 1) | | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $    = | | OR | X $    = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $    = | | OR | X $    = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

Legal Instrument Examiner:
/DAWN BREWER/

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000220

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

26158          7590          02/17/2010
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/17/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

POM000221

| | Application No. | Applicant(s) |
|---|---|---|
| ***Advisory Action*** ***Before the Filing of an Appeal Brief*** | *11/428,026* | PACE, MICHAEL  R. |
| | **Examiner** | **Art Unit** | |
| | ADETOKUNBO O. TORIMIRO | 3714 | |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

THE REPLY FILED <u>26 January 2010</u> FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☒ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:

   a) ☐ The  period for reply expires _____months from the mailing date of the final rejection.

   b) ☒ The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

     Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a).  The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee.  The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked.  Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____.  A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☒ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

   (a)☒ They raise new issues that would require further consideration and/or search (see NOTE below);

   (b)☐ They raise the issue of new matter (see NOTE below);

   (c)☒ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

   (d)☐ They present additional claims without canceling a corresponding number of finally rejected claims.

     NOTE:  *See Continuation Sheet*. (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____.

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☒ For purposes of appeal, the proposed amendment(s): a) ☐ will not be entered, or b) ☒ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:

   Claim(s) allowed: _____.

   Claim(s) objected to: _____.

   Claim(s) rejected: *1-9,11-20,22-33, and 35-81*.

   Claim(s) withdrawn from consideration: _____.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented.  See 37 CFR 1.116(e).

9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented.  See 37 CFR 41.33(d)(1).

10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

13. ☐ Other: _____.

/John M Hotaling II/
Primary Examiner, Art Unit 3714

POM000222

**Continuation Sheet (PTO-303)**                                                                                          **Application No. 11/428,026**

 Continuation of 3. NOTE:   In response to the arguments on Vancura not teaching the previewing feature of the Applicant's claimed invention, the examiner disagrees and points out that in the last office action, Muir et al was depended on to teach this limitations as clearly stated in the cited portions of Muir et al. The abstract of Muir et al for instance teaches on sample or preview feature of a game where players can sample or preview a game either interactively or not.. Further in response to the argument that the field of displayed symbols is presented prior to any activation by the player, the examienr points out that in addition to the teaching of Vancura, the teachings of Muir et al also as explained above teaches presenting a preview game to the player before any wagers are made. Also the examienr points out that the teachings of Vancura are directed to placing wagers as a means of activating and initiating the game, since it is expected that some form of activaiton and initiating is required in order for the game to start the previewing function. Specifically as depicted in fig.7 of Vancura, the player doesn't make any selection until after the matrix of symbols have been displayed. Therefore it is noted that the Vancura reference teaches wherein the plurality of symbols are presented to the player first prior to the player making any selections..

POM000223

2

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Request for Continued Examination (RCE) Transmittal**<br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | | |
|---|---|---|
| **Application Number** | 11/428,026 | |
| **Filing Date** | June 30, 20006 | |
| **First Named Inventor** | Michael R. Pace | |
| **Art Unit** | 3714 | |
| **Examiner Name** | Torimiro, Adetokunbo Olusegun | |
| **Attorney Docket Number** | P175 1021.1 | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

    a. [✔] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

        i. [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

        ii. [✔] Other _Amendment After Final filed January 26, 2010_____

    b. [ ] Enclosed

        i. [ ] Amendment/Reply          iii. [ ] Information Disclosure Statement (IDS)

        ii. [ ] Affidavit(s)/ Declaration(s)     iv. [ ] Other _____

2. **Miscellaneous**

    a. [ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

    b. [ ] Other _____

3. **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

    a. [✔] The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. _09-0528_____.

        i. [✔] RCE fee required under 37 CFR 1.17(e)

        ii. [✔] Extension of time fee (37 CFR 1.136 and 1.17)

        iii. [ ] Other _____

    b. [ ] Check in the amount of $ _____enclosed

    c. [ ] Payment by credit card (Form PTO-2038 enclosed)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| Signature | *[signature]* | Date | March 19, 2010 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | Registration No. | 32,497 |

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | *[signature]* | | |
|---|---|---|---|
| Name (Print/Type) | Fonda Hedgepeth | Date | March 19, 2010 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000224

PTO/SB/17 (10-08)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995  no persons are required to respond to a collection of information unless it displays a valid OMB control number

| *Effective on 12/08/2004.*<br>*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).*<br># FEE TRANSMITTAL<br>## For FY 2009 | **Complete if Known** | |
|---|---|---|
| | Application Number | 11/428,026 |
| | Filing Date | June 30, 20006 |
| | First Named Inventor | Michael R. Pace |
| ☑ Applicant claims small entity status. See 37 CFR 1.27 | Examiner Name | Torimiro, Adetokunbo Olusegun |
| | Art Unit | 3714 |
| **TOTAL AMOUNT OF PAYMENT** ($) 650.00 | Attorney Docket No. | P175 1021.1 |

## METHOD OF PAYMENT (check all that apply)

☐ Check   ☐ Credit Card   ☐ Money Order   ☐ None   ☐ Other (please identify): _____

☑ Deposit Account   Deposit Account Number: 09-0528   Deposit Account Name: _____

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☑ Charge fee(s) indicated below            ☐ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayments of fee(s)   ☑ Credit any overpayments
under 37 CFR 1.16 and 1.17

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | |
|---|---|---|---|---|---|---|---|
| **Application Type** | Fee ($) | **Small Entity**<br>Fee ($) | Fee ($) | **Small Entity**<br>Fee ($) | Fee ($) | **Small Entity**<br>Fee ($) | **Fees Paid ($)** |
| Utility | 330 | 165 | 540 | 270 | 220 | 110 | _____ |
| Design | 220 | 110 | 100 | 50 | 140 | 70 | _____ |
| Plant | 220 | 110 | 330 | 165 | 170 | 85 | _____ |
| Reissue | 330 | 165 | 540 | 270 | 650 | 325 | _____ |
| Provisional | 220 | 110 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| **Fee Description** | **Fee ($)** | **Small Entity**<br>**Fee ($)** |
|---|---|---|
| Each claim over 20 (including Reissues) | 52 | 26 |
| Each independent claim over 3 (including Reissues) | 220 | 110 |
| Multiple dependent claims | 390 | 195 |

| **Total Claims** | **Extra Claims** | **Fee ($)** | **Fee Paid ($)** | **Multiple Dependent Claims** | |
|---|---|---|---|---|---|
| _____ - 20 or HP = _____ x _____ = _____ | | | | **Fee ($)** | **Fee Paid ($)** |

HP = highest number of total claims paid for, if greater than 20.

| **Indep. Claims** | **Extra Claims** | **Fee ($)** | **Fee Paid ($)** |
|---|---|---|---|
| _____ - 3 or HP = _____ x _____ = _____ | | | |

HP = highest number of independent claims paid for, if greater than 3.

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof.  See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| **Total Sheets** | **Extra Sheets** | **Number of each additional 50 or fraction thereof** | **Fee ($)** | **Fee Paid ($)** |
|---|---|---|---|---|
| _____ - 100 = _____ | / 50 = _____ (round up to a whole number)  x | | _____ = | _____ |

### 4. OTHER FEE(S)

| | **Fees Paid ($)** |
|---|---|
| Non-English Specification, $130 fee (no small entity discount) | _____ |
| Other (e.g., late filing surcharge): Request for Continued Examination; Request for Two Month EOT | 650.00 |

### SUBMITTED BY

| Signature | *John J. Timar* (signature) | Registration No.<br>(Attorney/Agent) 32,497 | Telephone (404) 888-7412 |
|---|---|---|---|
| Name (Print/Type) | John J. Timar | | Date March 19, 2010 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000225

PTO/SB/22 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)<br>**FY 2009**<br>*(Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).)* | Docket Number (Optional)<br>P175 1021.1 |
|---|---|
| Application Number  11/428,026 | Filed  June 30, 20006 |

For    ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

| Art Unit  3714 | Examiner Torimiro, Adetokunbo Olusegun |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  |  | <u>Fee</u> | <u>Small Entity Fee</u> |  |
|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $130 | $65 | $_____ |
| ☑ | Two months (37 CFR 1.17(a)(2)) | $490 | $245 | $ 245.00 |
| ☐ | Three months (37 CFR 1.17(a)(3)) | $1110 | $555 | $_____ |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $1730 | $865 | $_____ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $2350 | $1175 | $_____ |

☑ Applicant claims small entity status. See 37 CFR 1.27.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number __09-0528__.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest. See 37 CFR 3.71.
        Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

☑ attorney or agent of record. Registration Number __32,497__

☐ attorney or agent under 37 CFR 1.34.
        Registration number if acting under 37 CFR 1.34 _____

| _____(signature)_____ | March 19, 2010 |
|---|---|
| Signature | Date |
| John J. Timar | (404) 888-7412 |
| Typed or printed name | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

POM000226

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11428026 |
| **Filing Date:** | 30-Jun-2006 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Attorney Docket Number:** | P175 1021.1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 2 months with $0 paid | 2252 | 1 | 245 | 245 |

POM000227

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 2801 | 1 | 405 | 405 |
| **Total in USD ($)** | | | | **650** |

POM000228

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7246645 |
| **Application Number:** | 11428026 |
| **International Application Number:** | |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | Electronic Gaming Method And System Having Preview Screen |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 19-MAR-2010 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 15:37:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $650 |
| RAM confirmation Number | 1924 |
| Deposit Account | 090528 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

POM000229

| 1 | P175_1021_1_Request_for_Continued_Examination.pdf | 212673<br>0f1dd35774d01f7e546811dd8dae2680ce2813cd | yes | 3 |
|---|---|---|---|---|

| **Multipart Description/PDF files in .zip description** | | | |
|---|---|---|---|
| **Document Description** | **Start** | **End** | |
| Request for Continued Examination (RCE) | 1 | 1 | |
| Fee Worksheet (PTO-875) | 2 | 2 | |
| Extension of Time | 3 | 3 | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 31790<br>aa18740a6be9202b35b1b9541c2668f696fbf17e | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 244463 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

POM000230

Docket Enter
/AT/    04/16/2010

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                             )

      MICHAEL R. PACE                      )     Art Unit:      3714

Serial No.      11/428,026                        )     Confirmation No.   3398

Filed:          June 30, 2006                     )     Examiner:  Torimiro, Adetokunbo Olusegun

For:    ELECTRONIC GAMING METHOD )     Attorney Docket No.:  P175 1021.1
      AND SYSTEM HAVING PREVIEW)
      SCREEN                            )

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT AFTER FINAL

Sir:

In response to the Official Action mailed October 26, 2009, Applicant respectfully request that the application be amended as follows:

**Amendments to the Claims** are reflected in the list of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 25 of this paper.

WCSR 4244188v2

POM000231



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

26158        7590        04/16/2010

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
| --- |
| TORIMIRO, ADETOKUNBO OLUSEGUN |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3714 | |

DATE MAILED: 04/16/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

TITLE OF INVENTION: ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 07/16/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

POM000232

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 26158 | 7590 | 04/16/2010 |

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

TITLE OF INVENTION: ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 07/16/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN | 3714 | 463-019000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ❏ Individual    ❏ Corporation or other private group entity    ❏ Government

4a. The following fee(s) are submitted:
❏ Issue Fee
❏ Publication Fee (No small entity discount permitted)
❏ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
❏ A check is enclosed.
❏ Payment by credit card. Form PTO-2038 is attached.
❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
❏ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ❏ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

POM000233

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

26158    7590    04/16/2010

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3714 | |

DATE MAILED: 04/16/2010

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 340 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 340 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

POM000234

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 11/428,026 | PACE, MICHAEL R. |
| | Examiner | Art Unit |
| | ADETOKUNBO O. TORIMIRO | 3714 |

**All Participants:**

(1) *ADETOKUNBO O. TORIMIRO*.

(2) *John Timar*.

**Status of Application:** _____

(3) _____.

(4) _____.

**Date of Interview:** *23 March 2010*

**Time:** _____

**Type of Interview:**
☒ Telephonic
☐ Video Conference
☐ Personal (Copy given to: ☐ Applicant   ☐ Applicant's representative)

Exhibit Shown or Demonstrated:   ☐ Yes   ☒ No
   If Yes, provide a brief description:        .

**Part I.**

Rejection(s) discussed:


Claims discussed:
*1*


Prior art documents discussed:
*Vancura*


**Part II.**

SUBSTANCE OF INTERVIEW DESCRIBING THE GENERAL NATURE OF WHAT WAS DISCUSSED:
*Claim language regarding the "testing" limitation was discussed and how it can be added to the independent claims to furhter prosecution of applicantion was also discussed.*


**Part III.**

☒ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview directly resulted in the allowance of the application. The examiner will provide a written summary of the substance of the interview in the Notice of Allowability.
☐ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview did not result in resolution of all issues.  A brief summary by the examiner appears in Part II above.


/A. O. T./
Examiner, Art Unit 3714

(Applicant/Applicant's Representative Signature – if appropriate)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 11/428,026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O. TORIMIRO | 3714 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *03/19/2010*.

2. ☒ The allowed claim(s) is/are *1-9,11-20,22-33,35-66,68-73 and 75-80*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All     b) ☐ Some*    c) ☐ None    of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
         International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF
   INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
      Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of
   each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the
   attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08),
   Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit
   of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☒ Interview Summary (PTO-413),
   Paper No./Mail Date *20100325* .
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

/A. O. T./
Examiner, Art Unit 3714

Application/Control Number: 11/428,026                                                    Page 2

Art Unit: 3714

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with John Timar on 03/232010.

It is noted that claims 10,21,34,67,74, and 81 have been cancelled.

The application has been amended as follows:

Replace claim 1 with the following - -

1.      An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game but there is no winning combination without player interaction with the game display;

POM000237

Application/Control Number: 11/428,026                                                    Page 3
Art Unit: 3714

testing the game field prior to displaying the game to the player to ensure that a

winning combination more valuable than the determined winning

combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display

to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol

and determining each winning combination of symbols that is formed by

such selection; and

displaying each winning combination of symbols on the touch screen display. --


Replace claim 6 with the following --

6.    The electronic gaming method of claim 1 wherein the step of constructing the field

comprises:

determining an orientation of each winning combination for the play of the game;

determining the symbols for each of the winning combinations; and

randomly determining symbols for the remaining elements of the field. --


Replace claim 14 with the following --

14.    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal with

a plurality of options selectable by a player, the game processor configured for:

POM000238

Application/Control Number: 11/428,026                                      Page 4

Art Unit: 3714

constructing a game field having a plurality of elements for the interactive

game display wherein each element includes a game symbol from

a plurality of predetermined game symbols, wherein the game

symbols for each element are automatically determined such that

there is at least one winning combination for each play of the game

but there is no winning combination without player interaction

with the game display;

testing the game field prior to displaying the game to the player to ensure

that a winning combination more valuable than the determined

winning combination is not generated inadvertently in completing

the field;

automatically displaying an actual game to be played on the touch screen

game display prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild

symbol and determining each winning combination of symbols that

is formed by such selection; and

displaying each winning combination of symbols on the touch screen

display. --


Replace claim 19 with the following --

19.    The electronic gaming system of claim 14 wherein the game processor is further

configured for:

Application/Control Number: 11/428,026                                              Page 5

Art Unit: 3714

determining an orientation of each winning combination for the play of the game;

determining the symbols for each of the winning combinations; and

randomly determining symbols for the remaining elements of the field. --

Replace claim 27 with the following --

27.     A computer program product for electronic gaming when executed on a game processor,

the computer program product comprising a computer readable storage medium having

computer readable code embedded therein, the computer readable storage medium

comprising:

program instructions that construct a game field having a plurality of elements for

an interactive touch screen game display on an electronic game terminal

wherein each element is filled by a game symbol from a plurality of

predetermined game symbols, wherein the game symbols for each element

are automatically determined such that there is at least one winning

combination for each play of the game but there is no winning combination

without player interaction with the game display;

program instructions that test the game field prior to displaying the game to the

player to ensure that a winning combination more valuable than the

determined winning combination is not generated inadvertently in

completing the field;

POM000240

program instructions that automatically display an actual game to be played on the

touch screen game display to a player prior to initiating activation of game

play;

program instructions that receive the player's selection of a field element as a

location for a wild symbol and determine each winning combination of

symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the

touch screen display. --

Replace claim 32 with the following --

32.    The computer program product for electronic gaming of claim 27 wherein the program

instructions that construct the field comprise:

program instructions that determine an orientation of each winning combination

for the play of the game;

program instructions that determine the symbols for each of the winning

combinations; and

program instructions that randomly determine symbols for the remaining elements

of the field. --

Replace claim 40 with the following --

40.    An electronic gaming method comprising the steps of:

POM000241

Application/Control Number: 11/428,026                                           Page 7

Art Unit: 3714

constructing a game field having a plurality of elements for an interactive touch

screen game display on an electronic game terminal wherein each element

is filled by a game symbol from a plurality of predetermined game

symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a

winning combination more valuable than the determined winning

combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game

display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game. --


Replace claim 47 with the following --

47.    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game

terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display

wherein each element includes a game symbol from a plurality of

predetermined game symbols;

determining at least one winning combination for each play of the game;

Application/Control Number: 11/428,026                                            Page 8

Art Unit: 3714

testing the game field prior to displaying the game to the player to ensure that a

winning combination more valuable than the determined winning

combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game

display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game. --

Replace claim 54 with the following --

54.    A computer program product for electronic gaming when executed on a game processor,

the computer program product comprising a computer readable storage medium having

computer readable code embedded herein, the computer readable storage medium

comprising:

program instructions that construct a game field having a plurality of elements for

an interactive touch screen game display on an electronic game terminal

wherein each element is filled by a game symbol from a plurality of

predetermined game symbols;

program instructions that determine at least one winning combination for each

play of the game;

program instructions that test the game field prior to displaying the game to the

player to ensure that a winning combination more valuable than the

POM000243

Application/Control Number: 11/428,026                                                    Page 9

Art Unit: 3714

determined winning combination is not generated inadvertently in

completing the field;

program instructions that automatically display an actual game to be played on

the touch screen game display to a player prior to initiating activation of

game play;

program instructions that determine if the player has decided to play the displayed

game; and

program instructions that display an outcome resulting from play of the displayed

game. --


Replace claim 61 with the following --

61.    A method for displaying a plurality of electronic game fields for selection by a player

before initiating play of a selected game comprising the steps of:

receiving a signal from the player to generate an interactive electronic game on a

touch screen display of an electronic game terminal;

generating a game field having a plurality of elements for the interactive game

display wherein each element is filled by a game symbol from a plurality

of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a

winning combination more valuable than the determined winning

combination is not generated inadvertently in completing the field;

Application/Control Number: 11/428,026 Page 10
Art Unit: 3714

automatically displaying an actual game to be played on the touch screen game

display to a player prior to initiating activation of game play;

receiving a signal from the player to generate another of the plurality of electronic

game fields associated with a different level of play prior to initiating

activation of game play;

generating and automatically displaying another of the plurality of electronic

game fields; and

receiving the player's selection of the electronic game field to play prior to

initiating activation of game play. --

Replace claim 68 with the following --

68. A system for displaying a plurality of electronic game fields each associated with a

different level of play comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game display on a game

terminal, the game processor configured for displaying a plurality of

electronic game fields for selection by a player before initiating play of a

selected game by:

receiving a signal from the player to generate an interactive electronic game;

generating a game field having a plurality of elements for the interactive game

display wherein each element is filled by a game symbol from a plurality

of predetermined game symbols;

POM000245

Application/Control Number: 11/428,026                                                        Page 11

Art Unit: 3714

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a

winning combination more valuable than the determined winning

combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game

display to a player prior to initiating activation of game play;

receiving a signal from the player to generate another of the plurality of electronic

game fields associated with another level of play prior to initiating

activation of game play;

generating and automatically displaying another of the plurality of electronic

game fields; and

receiving the player's selection of the electronic game field to play prior to

initiating activation of game play. --

Replace claim 75 with the following --

75.    A computer program product for displaying a plurality of interactive electronic game

fields for selection by a player when executed on a processor, the computer program

product comprising a computer readable storage medium having computer readable code

embedded therein, the computer readable storage medium comprising:

program instructions that receive a signal from a player to generate interactive

electronic game on a touch screen display of an electronic game terminal;

POM000246

Application/Control Number: 11/428,026                                      Page 12
Art Unit: 3714

program instructions that generate a game field having a plurality of elements for

the interactive game display wherein each element is filled by a game

symbol from a plurality of predetermined game symbols;

program instructions that determine at least one winning combination for each

play of the game;

program instructions that test the game field prior to displaying the game to the

player to ensure that a winning combination more valuable than the

determined winning combination is not generated inadvertently in

completing the field;

program instructions that automatically display an actual game to be played on

the touch screen game display to a player prior to initiating activation of

game play;

program instructions that receive a signal from the player to generate another of

the plurality of electronic game fields associated with a different level of

play prior to initiating activation of game play;

program instructions that generate and automatically display another of the

plurality of electronic game fields; and

program instructions that receive the player's selection of the electronic game

field to play prior to initiating activation of game play. --

The following is an examiner's statement of reasons for allowance: Claims

1,14,27,40,47,54,61,68, and 75 distinguishes over the prior art in that the prior arts do not teach a

Application/Control Number: 11/428,026                                           Page 13

Art Unit: 3714

system and method of playing an electronic game of constructing a game field having a plurality of elements for an interactive touch screen display, such that game field includes game symbols that are automatically determined such that there is at least one winning combination for each play of the game, but there is no winning combination without player interaction; and also testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field, wherein the automatic displaying, displays the actual game to be played on the touch screen prior to initiating activation of the game by the player.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Adetokunbo Torimiro whose telephone number is (571) 270 1345. The examiner can normally be reached on 8-4.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, John Hotaling can be reached on (571) 272 4437. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

/A. O. T./

Examiner, Art Unit 3714

/John M Hotaling II/

Primary Examiner, Art Unit 3714

POM000248

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 0 | (electronic gaming constructing game field plurality elements interactive touch screen).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | SAME | ON | 2010/03/25 11:56 |
| L2 | 0 | (game symbols one winning combination testing game field prior displaying).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | SAME | ON | 2010/03/25 11:57 |

**3/25/2010 11:58:02 AM**
**C:\ Documents and Settings\ Atorimiro\ My Documents\ EAST\ Workspaces
\ amendments 9.wsp**

POM000249

| Index of Claims | Application/Control No.<br><br>11428026 | Applicant(s)/Patent Under Reexamination<br><br>PACE, MICHAEL R. |
|---|---|---|
| | Examiner<br><br>ADETOKUNBO O TORIMIRO | Art Unit<br><br>3714 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant       ☐ CPA       ☐ T.D.       ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | 03/25/2010 | | | | | | |
| | 1 | ✓ | ✓ | = | | | | | | |
| | 2 | ✓ | ✓ | = | | | | | | |
| | 3 | ✓ | ✓ | = | | | | | | |
| | 4 | ✓ | ✓ | = | | | | | | |
| | 5 | ✓ | ✓ | = | | | | | | |
| | 6 | ✓ | ✓ | = | | | | | | |
| | 7 | ✓ | ✓ | = | | | | | | |
| | 8 | ✓ | ✓ | = | | | | | | |
| | 9 | ✓ | ✓ | = | | | | | | |
| | 10 | ✓ | - | - | | | | | | |
| | 11 | ✓ | ✓ | = | | | | | | |
| | 12 | ✓ | ✓ | = | | | | | | |
| | 13 | ✓ | ✓ | = | | | | | | |
| | 14 | ✓ | ✓ | = | | | | | | |
| | 15 | ✓ | ✓ | = | | | | | | |
| | 16 | ✓ | ✓ | = | | | | | | |
| | 17 | ✓ | ✓ | = | | | | | | |
| | 18 | ✓ | ✓ | = | | | | | | |
| | 19 | ✓ | ✓ | = | | | | | | |
| | 20 | ✓ | ✓ | = | | | | | | |
| | 21 | ✓ | - | - | | | | | | |
| | 22 | ✓ | ✓ | = | | | | | | |
| | 23 | ✓ | ✓ | = | | | | | | |
| | 24 | ✓ | ✓ | = | | | | | | |
| | 25 | ✓ | ✓ | = | | | | | | |
| | 26 | ✓ | ✓ | = | | | | | | |
| | 27 | ✓ | ✓ | = | | | | | | |
| | 28 | ✓ | ✓ | = | | | | | | |
| | 29 | ✓ | ✓ | = | | | | | | |
| | 30 | ✓ | ✓ | = | | | | | | |
| | 31 | ✓ | ✓ | = | | | | | | |
| | 32 | ✓ | ✓ | = | | | | | | |
| | 33 | ✓ | ✓ | = | | | | | | |
| | 34 | ✓ | - | - | | | | | | |
| | 35 | ✓ | ✓ | = | | | | | | |
| | 36 | ✓ | ✓ | = | | | | | | |

| Index of Claims | Application/Control No.<br><br>11428026 | Applicant(s)/Patent Under Reexamination<br><br>PACE, MICHAEL R. |
|---|---|---|
| | Examiner<br><br>ADETOKUNBO O TORIMIRO | Art Unit<br><br>3714 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | 03/25/2010 | | | | | | |
| | 37 | ✓ | ✓ | = | | | | | | |
| | 38 | ✓ | ✓ | = | | | | | | |
| | 39 | ✓ | ✓ | = | | | | | | |
| | 40 | ✓ | ✓ | = | | | | | | |
| | 41 | ✓ | ✓ | = | | | | | | |
| | 42 | ✓ | ✓ | = | | | | | | |
| | 43 | ✓ | ✓ | = | | | | | | |
| | 44 | ✓ | ✓ | = | | | | | | |
| | 45 | ✓ | ✓ | = | | | | | | |
| | 46 | ✓ | ✓ | = | | | | | | |
| | 47 | ✓ | ✓ | = | | | | | | |
| | 48 | ✓ | ✓ | = | | | | | | |
| | 49 | ✓ | ✓ | = | | | | | | |
| | 50 | ✓ | ✓ | = | | | | | | |
| | 51 | ✓ | ✓ | = | | | | | | |
| | 52 | ✓ | ✓ | = | | | | | | |
| | 53 | ✓ | ✓ | = | | | | | | |
| | 54 | ✓ | ✓ | = | | | | | | |
| | 55 | ✓ | ✓ | = | | | | | | |
| | 56 | ✓ | ✓ | = | | | | | | |
| | 57 | ✓ | ✓ | = | | | | | | |
| | 58 | ✓ | ✓ | = | | | | | | |
| | 59 | ✓ | ✓ | = | | | | | | |
| | 60 | ✓ | ✓ | = | | | | | | |
| | 61 | ✓ | ✓ | = | | | | | | |
| | 62 | ✓ | ✓ | = | | | | | | |
| | 63 | ✓ | ✓ | = | | | | | | |
| | 64 | ✓ | ✓ | = | | | | | | |
| | 65 | ✓ | ✓ | = | | | | | | |
| | 66 | ✓ | ✓ | = | | | | | | |
| | 67 | ✓ | ✓ | - | | | | | | |
| | 68 | ✓ | ✓ | = | | | | | | |
| | 69 | ✓ | ✓ | = | | | | | | |
| | 70 | ✓ | ✓ | = | | | | | | |
| | 71 | ✓ | ✓ | = | | | | | | |
| | 72 | ✓ | ✓ | = | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20100325

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11428026 | PACE, MICHAEL R. |
| | **Examiner** | **Art Unit** |
| | ADETOKUNBO O TORIMIRO | 3714 |

| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/26/2008 | 10/19/2009 | 03/25/2010 | | | | | | |
| | 73 | ✓ | ✓ | = | | | | | | |
| | 74 | ✓ | ✓ | - | | | | | | |
| | 75 | ✓ | ✓ | = | | | | | | |
| | 76 | ✓ | ✓ | = | | | | | | |
| | 77 | ✓ | ✓ | = | | | | | | |
| | 78 | ✓ | ✓ | = | | | | | | |
| | 79 | ✓ | ✓ | = | | | | | | |
| | 80 | ✓ | ✓ | = | | | | | | |
| | 81 | ✓ | ✓ | - | | | | | | |

Part of Paper No. : 20100325

POM000252

| Search Notes | Application/Control No. 11428026 | Applicant(s)/Patent Under Reexamination PACE, MICHAEL R. |
|---|---|---|
| | Examiner ADETOKUNBO O TORIMIRO | Art Unit 3714 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 463 | 16,19-22 | 3/25/2010 | AT |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| -Inventor Name Search | 3/24/2010 | AT |
| -Assignee Search | 3/24/2010 | AT |
| -East Text Search | 3/25/2010 | AT |
| -Plus Search | 3/24/2010 | AT |
| -Backward/Forward Search | 3/25/2010 | AT |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | See attached East Text search | 3/25/2010 | AT |

/A. O. T./
Examiner.Art Unit 3714

| Issue Classification | Application/Control No.<br>11/428,026 | Applicant(s)/Patent under Reexamination<br>PACE, MICHAEL R. |
|---|---|---|
| | Examiner<br>ADETOKUNBO O. TORIMIRO | Art Unit<br>3714 |

## ISSUE CLASSIFICATION

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | | | | NON-CLAIMED | | | | |
| 463 | 19 | A | 63 | F | 9 | /24 | | | | | / |
| **CROSS REFERENCES** | | A | 63 | F | 13 | /00 | | | | | / |
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | G | 06 | F | 17 | /00 | | | | | / |
| 463 | 16  20  21  22 | G | 06 | F | 19 | /00 | | | | | / |
| | | | | | | / | | | | | / |
| | | | | | | / | | | | | / |
| | | | | | | / | | | | | / |

Adetokunbo Torimiro   03/25/2010
(Assistant Examiner)   (Date)

(Legal Instruments Examiner)   (Date)

/John M Hotaling II/
4/1/2010

(Primary Examiner)   (Date)

**Total Claims Allowed: 75**

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|
| 1 | 1A,5 |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 29 | 31 | 58 | 61 | | 91 | | 121 | | 151 | | 181 |
| 2 | 2 | 30 | 32 | 59 | 62 | | 92 | | 122 | | 152 | | 182 |
| 3 | 3 | 31 | 33 | 60 | 63 | | 93 | | 123 | | 153 | | 183 |
| 4 | 4 | | 34 | 61 | 64 | | 94 | | 124 | | 154 | | 184 |
| 5 | 5 | 32 | 35 | 62 | 65 | | 95 | | 125 | | 155 | | 185 |
| 6 | 6 | 33 | 36 | 63 | 66 | | 96 | | 126 | | 156 | | 186 |
| 7 | 7 | 34 | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| 8 | 8 | 35 | 38 | 64 | 68 | | 98 | | 128 | | 158 | | 188 |
| 9 | 9 | 36 | 39 | 65 | 69 | | 99 | | 129 | | 159 | | 189 |
| | 10 | 37 | 40 | 66 | 70 | | 100 | | 130 | | 160 | | 190 |
| 10 | 11 | 38 | 41 | 67 | 71 | | 101 | | 131 | | 161 | | 191 |
| 11 | 12 | 39 | 42 | 68 | 72 | | 102 | | 132 | | 162 | | 192 |
| 12 | 13 | 40 | 43 | 69 | 73 | | 103 | | 133 | | 163 | | 193 |
| 13 | 14 | 41 | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 14 | 15 | 42 | 45 | 70 | 75 | | 105 | | 135 | | 165 | | 195 |
| 15 | 16 | 43 | 46 | 71 | 76 | | 106 | | 136 | | 166 | | 196 |
| 16 | 17 | 44 | 47 | 72 | 77 | | 107 | | 137 | | 167 | | 197 |
| 18 | 18 | 45 | 48 | 73 | 78 | | 108 | | 138 | | 168 | | 198 |
| 19 | 19 | 46 | 49 | 74 | 79 | | 109 | | 139 | | 169 | | 199 |
| 20 | 20 | 47 | 50 | 75 | 80 | | 110 | | 140 | | 170 | | 200 |
| | 21 | 48 | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| 21 | 22 | 49 | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| 22 | 23 | 50 | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| 23 | 24 | 51 | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| 24 | 25 | 52 | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| 17 | 26 | 53 | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| 25 | 27 | 54 | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| 26 | 28 | 55 | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| 27 | 29 | 56 | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| 28 | 30 | 57 | 60 | | 90 | | 120 | | 150 | | 180 | | |

POM4000254

U.S. Patent and Trademark Office

Part of Paper No.  20100325

POM000255

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26158       7590       04/16/2010

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

Fonda Hedgepeth _____ (Depositor's name)
_____ (Signature)
May 3, 2010 _____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/30/2006 | Michael R. Pace | P175 1021.1 | 3398 |

TITLE OF INVENTION: ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 07/16/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TORIMIRO, ADETOKUNBO OLUSEGUN | 3714 | 463-019000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 **Womble Carlyle Sandridge**

2 **& Rice, PLLC**

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Michael R. Pace

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Alpharetta, Georgia

Please check the appropriate assignee category or categories (will not be printed on the patent): ☒ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☒ Advance Order - # of Copies $30.00 - 10 copies

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 09-0528 (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.       ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____ John J. Timar _____       Date _____ May 3, 2010 _____

Typed or printed name _____ John J. Timar _____       Registration No. _____ 32,497 _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.       OMB 0651-0033       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

POM000256

| Electronic Patent Application Fee Transmittal | |
|---|---|
| **Application Number:** | 11428026 |
| **Filing Date:** | 30-Jun-2006 |
| **Title of Invention:** | ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Attorney Docket Number:** | P175 1021.1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 2501 | 1 | 755 | 755 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

POM000257

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| Printed copy of patent - no color | 8001 | 10 | 3 | 30 |
| **Total in USD ($)** | | | | **1085** |

POM000258

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7537883 |
| **Application Number:** | 11428026 |
| **International Application Number:** | |
| **Confirmation Number:** | 3398 |
| **Title of Invention:** | ELECTRONIC GAMING METHOD AND SYSTEM HAVING PREVIEW SCREEN |
| **First Named Inventor/Applicant Name:** | Michael R. Pace |
| **Customer Number:** | 26158 |
| **Filer:** | John J. Timar/Fonda Hedgepeth |
| **Filer Authorized By:** | John J. Timar |
| **Attorney Docket Number:** | P175 1021.1 |
| **Receipt Date:** | 03-MAY-2010 |
| **Filing Date:** | 30-JUN-2006 |
| **Time Stamp:** | 16:08:19 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 1085 |
| RAM confirmation Number | 2673 |
| Deposit Account | 090528 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

POM000259

| 1 | Issue Fee Payment (PTO-85B) | P175_1021_1_Issue_Fee_Transmittal.pdf | 98929 | no | 1 |
| | | | dd51689b78d9b3a73fe768f9ce4166ef3371ba71 | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 33686 | no | 2 |
| | | | a15ddde91373be72af3df64a746d28063fa39e04 | | |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 132615 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

POM000260

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,026 | 06/15/2010 | 7736223 | P175 1021.1 | 3398 |

26158          7590          05/26/2010

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: PATENT DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 579 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Michael R. Pace, Alpharetta, GA;

IR103 (Rev. 10/09)

POM000261