> Baldwin's Ohio Revised Code Annotated
>    Title XXIX. Crimes--Procedure (Refs & Annos)
>       Chapter 2915. Gambling (Refs & Annos)
>          General Provisions

This section has been updated. Click here for the updated version.

R.C. § 2915.01

2915.01 Definitions

Effective: [See Text Amendments] to October 24, 2007

As used in this chapter:

(A) "Bookmaking" means the business of receiving or paying off bets.

(B) "Bet" means the hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk.

(C) "Scheme of chance" means a slot machine, lottery, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine, or a pool not conducted for profit.

(D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

(E) "Game of chance conducted for profit" means any game of chance designed to produce income for the person who conducts or operates the game of chance, but does not include bingo.

(F) "Gambling device" means any of the following:

(1) A book, totalizer, or other equipment for recording bets;

(2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet;

(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance;

(4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes;

(5) Bingo supplies sold or otherwise provided, or used, in violation of this chapter.

(G) "Gambling offense" means any of the following:

(1) A violation of section 2915.02, 2915.03, 2915.04, 2915.05, 2915.07, 2915.08, 2915.081, 2915.082, 2915.09, 2915.091, 2915.092, 2915.10, or 2915.11 of the Revised Code;

(2) A violation of an existing or former municipal ordinance or law of this or any other state or the United States substantially equivalent to any section listed in division (G)(1) of this section or a violation of section 2915.06 of the Revised Code as it existed prior to July 1, 1996;

(3) An offense under an existing or former municipal ordinance or law of this or any other state or the United States, of which gambling is an element;

(4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (G)(1), (2), or (3) of this section.

(H) Except as otherwise provided in this chapter, "charitable organization" means any tax exempt religious, educational, veteran's, fraternal, sporting, service, nonprofit medical, volunteer rescue service, volunteer firefighter's, senior citizen's, historic railroad educational, youth athletic, amateur athletic, or youth athletic park organization. An organization is tax exempt if the organization is, and has received from the internal revenue service a determination letter that currently is in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), or 501(c)(19) of the Internal Revenue Code [1] , or if the organization is a sporting organization that is exempt from federal income taxation under subsection 501(a) and is described in subsection 501(c)(7) of the Internal Revenue Code. To qualify as a charitable organization, an organization, except a volunteer rescue service or volunteer fire fighter's organization, shall have been in continuous existence as such in this state for a period of two years immediately preceding either the making of an application for a bingo license under section 2915.08 of the Revised Code or the conducting of any game of chance as provided in division (D) of section 2915.02 of the Revised Code. A charitable organization that is exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code and that is created by a veteran's organization, a fraternal organization, or a sporting organization does not have to have been in continuous existence as such in this state for a period of two years immediately preceding either the making of an application for a bingo license under section 2915.08 of the Revised Code or the conducting of any game of chance as provided in division (D) of section 2915.02 of the Revised Code.

(I) "Religious organization" means any church, body of communicants, or group that is not organized or operated for profit and that gathers in common membership for regular worship and religious observances.

(J) "Educational organization" means any organization within this state that is not organized for profit, the primary purpose of which is to educate and develop the capabilities of individuals through instruction by means of operating or contributing to the support of a school, academy, college, or university.

(K) "Veteran's organization" means any individual post or state headquarters of a national veteran's association or an auxiliary unit of any individual post of a national veteran's association, which post, state headquarters, or auxiliary unit has been in continuous existence in this state for at least two years and incorporated as a nonprofit corporation and either has received a letter from the state headquarters of the national veteran's association indicating that the individual post or auxiliary unit is in good standing with the national veteran's association or has received a letter from the national veteran's association indicating that the state headquarters is in good standing with the national veteran's association. As used in this division, "national veteran's association" means any veteran's association that has been in continuous existence as such for a period of at least five years and either is incorporated by an act of the United States congress or has a national dues-paying membership of at least five thousand persons.

(L) "Volunteer firefighter's organization" means any organization of volunteer firefighters, as defined in section 146.01 of the Revised Code, that is organized and operated exclusively to provide financial support for a volunteer fire department or a volunteer fire company and that is recognized or ratified by a county, municipal corporation, or township.

(M) "Fraternal organization" means any society, order, state headquarters, or association within this state, except a college or high school fraternity, that is not organized for profit, that is a branch, lodge, or chapter of a national or state organization, that exists exclusively for the common business or sodality of its members, and that has been in continuous existence in this state for a period of five years.

(N) "Volunteer rescue service organization" means any organization of volunteers organized to function as an emergency medical service organization, as defined in section 4765.01 of the Revised Code.

(O) "Service organization" means either of the following:

(1) Any organization, not organized for profit, that is organized and operated exclusively to provide, or to contribute to the support of organizations or institutions organized and operated exclusively to provide, medical and therapeutic services for persons who are crippled, born with birth defects, or have any other mental or physical defect or those organized and operated exclusively to protect, or to contribute to the support of organizations or institutions organized and operated exclusively to protect, animals from inhumane treatment or provide immediate shelter to victims of domestic violence;

(2) Any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code and that is an organization, not organized for profit, that is organized and operated primarily to provide, or to contribute to the support of organizations or institutions organized and operated primarily to provide, medical and therapeutic services for persons who are crippled, born with birth defects, or have any other mental or physical defect.

(P) "Nonprofit medical organization" means either of the following:

(1) Any organization that has been incorporated as a nonprofit corporation for at least five years and that has continuously operated and will be operated exclusively to provide, or to contribute to the support of organizations or institutions organized and operated exclusively to provide, hospital, medical, research, or therapeutic services for the public;

(2) Any organization that is described and qualified under subsection 501(c)(3) of the Internal Revenue Code, that has been incorporated as a nonprofit corporation for at least five years, and that has continuously operated and will be operated primarily to provide, or to contribute to the support of organizations or institutions organized and operated primarily to provide, hospital, medical, research, or therapeutic services for the public.

(Q) "Senior citizen's organization" means any private organization, not organized for profit, that is organized and operated exclusively to provide recreational or social services for persons who are fifty-five years of age or older and that is described and qualified under subsection 501(c)(3) of the Internal Revenue Code.

(R) "Charitable bingo game" means any bingo game described in division (S)(1) or (2) of this section that is conducted by a charitable organization that has obtained a license pursuant to section 2915.08 of the Revised Code and the proceeds of which are used for a charitable purpose.

(S) "Bingo" means either of the following:

(1) A game with all of the following characteristics:

(a) The participants use bingo cards or sheets, including paper formats and electronic representation or image formats, that are divided into twenty-five spaces arranged in five horizontal and five vertical rows of spaces, with each space, except the central space, being designated by a combination of a letter and a number and with the central space being designated as a free space.

(b) The participants cover the spaces on the bingo cards or sheets that correspond to combinations of letters and numbers that are announced by a bingo game operator.

(c) A bingo game operator announces combinations of letters and numbers that appear on objects that a bingo game operator selects by chance, either manually or mechanically, from a receptacle that contains seventy-five objects at the beginning of each game, each object marked by a different combination of a letter and a number that corresponds to one of the seventy-five possible combinations of a letter and a number that can appear on the bingo cards or sheets.

(d) The winner of the bingo game includes any participant who properly announces during the interval between the announcements of letters and numbers as described in division (S)(1)(c) of this section, that a predetermined and preannounced pattern of spaces has been covered on a bingo card or sheet being used by the participant.

(2) Instant bingo, punch boards, and raffles.

(T) "Conduct" means to back, promote, organize, manage, carry on, sponsor, or prepare for the operation of bingo or a game of chance.

(U) "Bingo game operator" means any person, except security personnel, who performs work or labor at the site of bingo, including, but not limited to, collecting money from participants, handing out bingo cards or sheets or objects to cover spaces on bingo cards or sheets, selecting from a receptacle the objects that contain the combination of letters and numbers that appear

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

on bingo cards or sheets, calling out the combinations of letters and numbers, distributing prizes, selling or redeeming instant bingo tickets or cards, supervising the operation of a punch board, selling raffle tickets, selecting raffle tickets from a receptacle and announcing the winning numbers in a raffle, and preparing, selling, and serving food or beverages.

(V) "Participant" means any person who plays bingo.

(W) "Bingo session" means a period that includes both of the following:

(1) Not to exceed five continuous hours for the conduct of one or more games described in division (S)(1) of this section, instant bingo, and seal cards;

(2) A period for the conduct of instant bingo and seal cards for not more than two hours before and not more than two hours after the period described in division (W)(1) of this section.

(X) "Gross receipts" means all money or assets, including admission fees, that a person receives from bingo without the deduction of any amounts for prizes paid out or for the expenses of conducting bingo. "Gross receipts" does not include any money directly taken in from the sale of food or beverages by a charitable organization conducting bingo, or by a bona fide auxiliary unit or society of a charitable organization conducting bingo, provided all of the following apply:

(1) The auxiliary unit or society has been in existence as a bona fide auxiliary unit or society of the charitable organization for at least two years prior to conducting bingo.

(2) The person who purchases the food or beverage receives nothing of value except the food or beverage and items customarily received with the purchase of that food or beverage.

(3) The food and beverages are sold at customary and reasonable prices.

(Y) "Security personnel" includes any person who either is a sheriff, deputy sheriff, marshal, deputy marshal, township constable, or member of an organized police department of a municipal corporation or has successfully completed a peace officer's training course pursuant to sections 109.71 to 109.79 of the Revised Code and who is hired to provide security for the premises on which bingo is conducted.

(Z) "Charitable purpose" means that the net profit of bingo, other than instant bingo, is used by, or is given, donated, or otherwise transferred to, any of the following:

(1) Any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code;

(2) A veteran's organization that is a post, chapter, or organization of veterans, or an auxiliary unit or society of, or a trust or foundation for, any such post, chapter, or organization organized in the United States or any of its possessions, at least seventy-

five per cent of the members of which are veterans and substantially all of the other members of which are individuals who are spouses, widows, or widowers of veterans, or such individuals, provided that no part of the net earnings of such post, chapter, or organization inures to the benefit of any private shareholder or individual, and further provided that the net profit is used by the post, chapter, or organization for the charitable purposes set forth in division (B)(12) of section 5739.02 of the Revised Code, is used for awarding scholarships to or for attendance at an institution mentioned in division (B)(12) of section 5739.02 of the Revised Code, is donated to a governmental agency, or is used for nonprofit youth activities, the purchase of United States or Ohio flags that are donated to schools, youth groups, or other bona fide nonprofit organizations, promotion of patriotism, or disaster relief;

(3) A fraternal organization that has been in continuous existence in this state for fifteen years and that uses the net profit exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, if contributions for such use would qualify as a deductible charitable contribution under subsection 170 of the Internal Revenue Code;

(4) A volunteer firefighter's organization that uses the net profit for the purposes set forth in division (L) of this section.

(AA) "Internal Revenue Code" means the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as now or hereafter amended.

(BB) "Youth athletic organization" means any organization, not organized for profit, that is organized and operated exclusively to provide financial support to, or to operate, athletic activities for persons who are twenty-one years of age or younger by means of sponsoring, organizing, operating, or contributing to the support of an athletic team, club, league, or association.

(CC) "Youth athletic park organization" means any organization, not organized for profit, that satisfies both of the following:

(1) It owns, operates, and maintains playing fields that satisfy both of the following:

(a) The playing fields are used at least one hundred days per year for athletic activities by one or more organizations, not organized for profit, each of which is organized and operated exclusively to provide financial support to, or to operate, athletic activities for persons who are eighteen years of age or younger by means of sponsoring, organizing, operating, or contributing to the support of an athletic team, club, league, or association.

(b) The playing fields are not used for any profit-making activity at any time during the year.

(2) It uses the proceeds of bingo it conducts exclusively for the operation, maintenance, and improvement of its playing fields of the type described in division (CC)(1) of this section.

(DD) "Amateur athletic organization" means any organization, not organized for profit, that is organized and operated exclusively to provide financial support to, or to operate, athletic activities for persons who are training for amateur athletic competition that is sanctioned by a national governing body as defined in the "Amateur Sports Act of 1978," 90 Stat. 3045, 36 U.S.C.A. 373.

(EE) "Bingo supplies" means bingo cards or sheets; instant bingo tickets or cards; electronic bingo aids; raffle tickets; punch boards; seal cards; instant bingo ticket dispensers; and devices for selecting or displaying the combination of bingo letters and numbers or raffle tickets. Items that are "bingo supplies" are not gambling devices if sold or otherwise provided, and used, in accordance with this chapter. For purposes of this chapter, "bingo supplies' ' are not to be considered equipment used to conduct a bingo game.

(FF) "Instant bingo" means a form of bingo that uses folded or banded tickets or paper cards with perforated break-open tabs, a face of which is covered or otherwise hidden from view to conceal a number, letter, or symbol, or set of numbers, letters, or symbols, some of which have been designated in advance as prize winners. "Instant bingo" includes seal cards. "Instant bingo" does not include any device that is activated by the insertion of a coin, currency, token, or an equivalent, and that contains as one of its components a video display monitor that is capable of displaying numbers, letters, symbols, or characters in winning or losing combinations.

(GG) "Seal card" means a form of instant bingo that uses instant bingo tickets in conjunction with a board or placard that contains one or more seals that, when removed or opened, reveal predesignated winning numbers, letters, or symbols.

(HH) "Raffle" means a form of bingo in which the one or more prizes are won by one or more persons who have purchased a raffle ticket. The one or more winners of the raffle are determined by drawing a ticket stub or other detachable section from a receptacle containing ticket stubs or detachable sections corresponding to all tickets sold for the raffle.

(II) "Punch board" means a board containing a number of holes or receptacles of uniform size in which are placed, mechanically and randomly, serially numbered slips of paper that may be punched or drawn from the hole or receptacle when used in conjunction with instant bingo. A player may punch or draw the numbered slips of paper from the holes or receptacles and obtain the prize established for the game if the number drawn corresponds to a winning number or, if the punch board includes the use of a seal card, a potential winning number.

(JJ) "Gross profit" means gross receipts minus the amount actually expended for the payment of prize awards.

(KK) "Net profit" means gross profit minus expenses.

(LL) "Expenses" means the reasonable amount of gross profit actually expended for all of the following:

(1) The purchase or lease of bingo supplies;

(2) The annual license fee required under section 2915.08 of the Revised Code;

(3) Bank fees and service charges for a bingo session or game account described in section 2915.10 of the Revised Code;

(4) Audits and accounting services;

(5) Safes;

(6) Cash registers;

(7) Hiring security personnel;

(8) Advertising bingo;

(9) Renting premises in which to conduct a bingo session;

(10) Tables and chairs;

(11) Expenses for maintaining and operating a charitable organization's facilities, including, but not limited to, a post home, club house, lounge, tavern, or canteen and any grounds attached to the post home, club house, lounge, tavern, or canteen;

(12) Any other product or service directly related to the conduct of bingo that is authorized in rules adopted by the attorney general under division (B)(1) of section 2915.08 of the Revised Code.

(MM) "Person" has the same meaning as in section 1.59 of the Revised Code and includes any firm or any other legal entity, however organized.

(NN) "Revoke" means to void permanently all rights and privileges of the holder of a license issued under section 2915.08, 2915.081, or 2915.082 of the Revised Code or a charitable gaming license issued by another jurisdiction.

(OO) "Suspend" means to interrupt temporarily all rights and privileges of the holder of a license issued under section 2915.08, 2915.081, or 2915.082 of the Revised Code or a charitable gaming license issued by another jurisdiction.

(PP) "Distributor" means any person who purchases or obtains bingo supplies and who does either of the following:

(1) Sells, offers for sale, or otherwise provides or offers to provide the bingo supplies to another person for use in this state;

(2) Modifies, converts, adds to, or removes parts from the bingo supplies to further their promotion or sale for use in this state.

(QQ) "Manufacturer" means any person who assembles completed bingo supplies from raw materials, other items, or subparts or who modifies, converts, adds to, or removes parts from bingo supplies to further their promotion or sale.

(RR) "Gross annual revenues" means the annual gross receipts derived from the conduct of bingo described in division (S)(1) of this section plus the annual net profit derived from the conduct of bingo described in division (S)(2) of this section.

(SS) "Instant bingo ticket dispenser" means a mechanical device that dispenses an instant bingo ticket or card as the sole item of value dispensed and that has the following characteristics:

(1) It is activated upon the insertion of United States currency.

(2) It performs no gaming functions.

(3) It does not contain a video display monitor or generate noise.

(4) It is not capable of displaying any numbers, letters, symbols, or characters in winning or losing combinations.

(5) It does not simulate or display rolling or spinning reels.

(6) It is incapable of determining whether a dispensed bingo ticket or card is a winning or nonwinning ticket or card and requires a winning ticket or card to be paid by a bingo game operator.

(7) It may provide accounting and security features to aid in accounting for the instant bingo tickets or cards it dispenses.

(8) It is not part of an electronic network and is not interactive.

(TT)(1) "Electronic bingo aid" means an electronic device used by a participant to monitor bingo cards or sheets purchased at the time and place of a bingo session and that does all of the following:

(a) It provides a means for a participant to input numbers and letters announced by a bingo caller.

(b) It compares the numbers and letters entered by the participant to the bingo faces previously stored in the memory of the device.

(c) It identifies a winning bingo pattern.

(2) "Electronic bingo aid" does not include any device into which a coin, currency, token, or an equivalent is inserted to activate play.

(UU) "Deal of instant bingo tickets" means a single game of instant bingo tickets all with the same serial number.

(VV)(1) "Slot" machine means either of the following:

(a) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player who gives the thing of value in the hope of gain, the outcome of which is determined largely or wholly by chance;

(b) Any mechanical, electronic, video, or digital device that is capable of accepting anything of value, directly or indirectly, from or on behalf of a player to conduct or dispense bingo or a scheme or game of chance.

(2) "Slot machine" does not include a skill-based amusement machine.

(WW) "Net profit from the proceeds of the sale of instant bingo" means gross profit minus the ordinary, necessary, and reasonable expense expended for the purchase of instant bingo supplies.

(XX) "Charitable instant bingo organization" means an organization that is exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code [2] and is a charitable organization as defined in this section. A "charitable instant bingo organization" does not include a charitable organization that is exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code and that is created by a veteran's organization, a fraternal organization, or a sporting organization in regards to bingo conducted or assisted by a veteran's organization, a fraternal organization, or a sporting organization pursuant to section 2915.13 of the Revised Code.

(YY) "Game flare" means the board or placard that accompanies each deal of instant bingo tickets and that has printed on or affixed to it the following information for the game:

(1) The name of the game;

(2) The manufacturer's name or distinctive logo;

(3) The form number;

(4) The ticket count;

(5) The prize structure, including the number of winning instant bingo tickets by denomination and the respective winning symbol or number combinations for the winning instant bingo tickets;

(6) The cost per play;

(7) The serial number of the game.

(ZZ) "Historic railroad educational organization" means an organization that is exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, that owns in fee simple the tracks and the

right of way of a historic railroad that the organization restores or maintains and on which the organization provides excursions as part of a program to promote tourism and educate visitors regarding the role of railroad transportation in Ohio history, and that received as donations from a charitable organization that holds a license to conduct bingo under this chapter an amount equal to at least fifty per cent of that licensed charitable organization's net proceeds from the conduct of bingo during each of the five years preceding June 30, 2003. "Historic railroad" means all or a portion of the tracks and right-of-way of a railroad that was owned and operated by a for profit common carrier in this state at any time prior to January 1, 1950.

(AAA)(1) "Skill-based amusement machine" means a skill-based amusement device, such as a mechanical, electronic, video, or digital device, or machine, whether or not the skill-based amusement machine requires payment for use through a coin or bill validator or other payment of consideration or value to participate in the machine's offering or to activate the machine, provided that all of the following apply:

(a) The machine involves a task, game, play, contest, competition, or tournament in which the player actively participates in the task, game, play, contest, competition, or tournament.

(b) The outcome of an individual's play and participation is not determined largely or wholly by chance.

(c) The outcome of play during a game is not controlled by a person not actively participating in the game.

(2) All of the following apply to any machine that is operated as described in division (AAA)(1) of this section:

(a) As used in this section, "task," "game," and "play" mean one event from the initial activation of the machine until the results of play are determined without payment of additional consideration. An individual utilizing a machine that involves a single task, game, play, contest, competition, or tournament may be awarded prizes based on the results of play.

(b) Advance play for a single task, game, play, contest, competition, or tournament participation may be purchased. The cost of the contest, competition, or tournament participation may be greater than a single non-contest, competition, or tournament play.

(c) To the extent that the machine is used in a contest, competition, or tournament, that contest, competition, or tournament has a defined starting and ending date and is open to participants in competition for scoring and ranking results toward the awarding of prizes that are stated prior to the start of the contest, competition, or tournament.

(BBB) "Pool not conducted for profit" means a scheme in which a participant gives a valuable consideration for a chance to win a prize and the total amount of consideration wagered is distributed to a participant or participants.

(CCC) "Sporting organization" means a hunting, fishing, or trapping organization, other than a college or high school fraternity or sorority, that is not organized for profit, that is affiliated with a state or national sporting organization, including but not limited to, the Ohio League of sportsmen, and that has been in continuous existence in this state for a period of three years.

(DDD) "Community action agency" has the same meaning as in section 122.66 of the Revised Code.

## CREDIT(S)

(2004 S 146, eff. 9-23-04; 2004 H 325, eff. 9-30-04; 2003 S 37, eff. 10-21-03; 2003 H 95, eff. 7-1-03; 2003 H 87, § 24, eff. 7-1-03; 2002 H 512, eff. 7-1-03; 1996 H 143, § 3, eff. 7-1-96; 1996 H 143, § 1, eff. 5-15-96; 1995 S 2, eff. 7-1-96; 1992 S 98, eff. 11-12-92; 1990 H 573; 1981 S 91; 1977 H 72; 1976 S 398, H 1547; 1975 H 1; 1972 H 511)

## LEGISLATIVE SERVICE COMMISSION

**1973:**

This section defines a number of key terms used in the various gambling offenses in Chapter 2915.

The definition of "bookmaking" emphasizes its character as a business, in order to avoid penalizing those who engage in private wagering not undertaken or maintained for profit. When the loser pays off the winner of a private bet between friends, it cannot be said that the activity was carried as a business or for profit. In this latter regard, the fact that a bettor or player hopes to win does not in itself constitute a profit motive in the context of this section.

The definition of a "bet" is essentially the dictionary definition of the term. All business ventures carry some element of risk, and some are highly chancy propositions, but it is not intended that bona fide business risks be construed as gambling under the criminal code. If an apparent business risk is not bona fide, however, it may constitute gambling, such as a "bucket shop" operation in which participants wager on the fluctuations of the securities or commodities markets without actually trading any securities or commodities.

"Schemes of chance" and "games of chance" are defined substantially in terms of existing case law. See, e.g. Westerhaus Co v Cincinnati, 165 Ohio St 327 (1956); Kroger Co v Cook, 24 Ohio St 2d 170 (1970). The definition expressly excludes schemes or games of chance designed to produce income for charity, provided the entire net income after deduction of necessary expenses is applied to a charitable purpose. For example, Friday night bingo conducted by a church would not be for profit, even though the church grosses, say, $1,000 and nets $850 after paying for necessary supplies and services, provided the entire $850 is applied to the missionary fund or other legitimate, charitable use. On the other hand, if a promoter operates a purportedly charitable raffle which grosses $10,000 and pays, say, $50 to a bona fide charity after deducting $50 for printing the tickets and $9,900 for the promoter's salary, the true "net" is manifestly not given to charity. If the expenses are unreasonable under the circumstances, they cannot be necessary. Also, the scheme which pays an otherwise reasonable net income to a phony or questionable charity cannot be said to be conducted for charitable purposes.

"Gambling device" is defined in the section in a broad sense, to include any device, article, or thing designed to be used for gambling purposes.

Most of the new gambling offenses are more serious when the offender has previously committed a similar breach and the definition of "gambling offense" is a shorthand term for use in grading such offenses.

Footnotes

1    26 U.S.C.A. § 1 et seq.
2    26 U.S.C.A. § 1 et seq.

R.C. § 2915.01, OH ST § 2915.01

Current through File 39 of the 133rd General Assembly (2019-2020).

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.