## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC<br><br>Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  July 23, 2020

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   THE COURT SHOULD STAY THE INSTANT ACTION .........................2

    A.    Simplification Resulting From a Stay Is Far From Speculative. .........2

    B.    Far From Being at a "Relatively Advanced Stage," the Most Burdensome Stages of This Proceeding Lie Ahead. ...........................7

    C.    Plaintiffs' Claims of Undue Prejudice and Tactical Advantage Are Unsupported. ...............................................................................10

        1.    The Timing of Banilla's CBM Petition Is Irrelevant..............11

        2.    The Timing of the Request for Stay Does Not Reflect Undue Delay or Impermissible Tactical Advantage................12

        3.    The Status of the CBM Proceedings Does Not Demonstrate Undue Prejudice. .................................................13

        4.    The Relationship of the Parties Does Not Demonstrate a Stay Is Inappropriate. ..............................................................14

    D.    A Stay Will Reduce—If Not Eliminate—the Burden on the Parties and the Court. ........................................................................17

III.   CONCLUSION....................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arch Chemicals Co. v. Sherwin-Williams Co.*,
    1:18-cv-02037, Dkt. No. 48 (D. Del. Nov. 5, 2019)..............................................3

*Arkema Inc. v. Honeywell Int'l, Inc.*,
    C.A. No. 10-cv-2886, 2013 WL 5356844 (E.D. Pa. Sept. 25, 2013).................11

*Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*,
    No. 18-1679-RGA, 2020 WL 2849989 (D. Del. June 2, 2020) .....................7, 13

*Blast Motion, Inc. v. Zepp Labs, Inc.*,
    No. 15-CV-700 JLS, 2016 WL 5107678 (S.D. Cal. Mar. 29, 2016)............14, 15

*Cypress Semiconductor Corp. v. LG Elecs., Inc.*,
    Case No: C 13-4034, 2014 WL 5477795 (N.D. Cal. Oct. 29, 2014) .................11

*E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols. LLC*,
    CIV. A. No. 10-3409, 2012 WL 2995182 (D.N.J. July 23, 2012) .....................14

*Ethicon LLC v. Intuitive Surgical, Inc.*,
    C.A. No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019)..............9, 16

*Ever Win Int'l Corp. v. Radioshack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)...................................................................2

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
    922 F. Supp. 2d 486 (D. Del. 2013)............................................................5, 17

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
    No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) ...........................15

*NHK Spring Co. v. Intri-Plex Tech., Inc.*,
    IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018)
    (Opp. Br., Ex. H).........................................................................................5, 6

*Nidec Corp. v. LG Innotek Co.*,
    No. 6:07cv108, 2009 WL 3673433 (E.D. Tex. Apr. 3, 2009)...........................16

*NST Global, LLC v. SIG Sauer Inc.*,
  No. 19-CV-792-PB, 2020 WL 1429643 (D.N.H. Mar. 24, 2020)....................3, 4

*PersonalWeb Techs., LLC v. Apple Inc.*,
  69 F. Supp. 3d 1022 (N.D. Cal. 2014)...............................................................9

*Princeton Digital Image Corp. v. Konami Digital Entm't, Inc.*,
  No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) .............8, 11

*Robert Bosch Healthcare Sys., Inc. v. ExpressMd Solutions, LLC*,
  No. C 12-00068 JSW, 2013 WL 752474 (N.D. Cal. Feb. 27, 2013) .................15

*Select Comfort Corp., v. Tempur Sealy Int'l, Inc.*,
  No. CV 14-245, 2014 WL 12600114 (D. Minn. Oct. 10, 2014) ........................15

*Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*,
  C.A. No. 16-284-LPS, 2018 WL 3046511 (D. Del. June 20, 2018) ..................10

*Sightsound Techs., LLC v. Apple, Inc.*,
  No. 11-1292, 2013 WL 2457284 (W.D. Pa. June 6, 2013) ................................17

*Softview Computer Prods. Corp. v. Haworth, Corp.*,
  97 CIV. 8815 KMW, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ................10

*Sonics, Inc. v. Arteris, Inc.*,
  No. C 11-05311, 2013 WL 503091 (N.D. Cal. Feb. 8, 2013) ...........................14

*Star Envirotech, Inc. v. Redline Detection, LLC*,
  No. SACV 12-01861, 2013 WL 1716068 (C.D. Cal. Apr. 3, 2012)....................3

*Symantec Corp. v. Zscaler, Inc.*,
  No. 17-cv-04426, 2018 WL 3539267 (N.D. Cal. July 23, 2018)........................8

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) ...............................................................4, 8, 15

*Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*,
  EDCV 14-01153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015)........................4

## Other Authorities

37 C.F.R. § 42.300 ...............................................................................................12

37 C.F.R. § 42.303 ...............................................................................................12

## I.    INTRODUCTION

The instant action should be stayed pending covered business method ("CBM") review of U.S. Patent No. 7,736,223 (the "'223 patent") by the Patent and Trademark Board (the "PTAB").  In mere months, the PTAB—a specialized tribunal created by Congress to adjudicate patent validity issues—will decide whether to institute review of the '223 patent.  In those same months, absent a stay, both the Court and the parties will needlessly expend resources addressing a patent that may well be invalidated (or have its scope altered) by the PTAB.  Recognizing that it would be a waste of judicial and party resources to allow litigation to continue after a CBM Petition was filed, Congress "placed a heavy thumb on the scale" in favor of granting a stay pending the PTAB's review of a CBM Petition.

In their Opposition to Defendants' Motion to Stay (Dkt. No. 70) ("Opp. Br."), Plaintiffs gloss over Congress's intent that courts stay actions pending CBM review, and incorrectly claim that the benefits from a stay are "speculative."  Not so.  A stay will simplify, if not obviate the need for, a trial in the instant action.

Plaintiffs also exaggerate the supposedly "advanced" stage of the instant action.  The record speaks for itself in this regard—fact discovery does not close until May 31, 2021, with the close of expert discovery to follow over a year from now in September 2021, and a trial not scheduled until March 2022.  Faced with much more advanced stage cases courts have routinely stayed district court actions

in favor of PTAB proceedings and the result should be the same here.

Plaintiffs also minimize their failure to seek any exigent relief—in the form of a preliminary injunction—and imply that the parties' status as competitors is dispositive of the request for a stay.  But, numerous courts have stayed actions involving direct competitors finding that money damages can compensate Plaintiffs for any delay, including any supposed price erosion in the marketplace or loss of market share, especially where, as here, Plaintiffs failed to seek preliminary injunctive relief.

## II.   THE COURT SHOULD STAY THE INSTANT ACTION

### A.   Simplification Resulting From a Stay Is Far From Speculative.

The law is plain: "Whatever outcome occurs [in a PTAB proceeding], there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505-06 (D. Del. 2012); *see also* Defendants' Opening Brief in Support of Motion to Stay (Dkt. No. 69) ("Opening Br.") at 9-11 (discussing multitude of ways CBM proceeding at the PTAB will simplify issues and trial in the instant action).

Ignoring this, Plaintiffs claim that any simplification of issues from a stay is "speculative" given that the PTAB has not yet decided whether to institute review. Opp. Br. at 17.  Numerous courts have rejected precisely this argument.  *See, e.g.*,

2

*NST Global, LLC v. SIG Sauer Inc.*, No. 19-CV-792-PB, 2020 WL 1429643, at *3-*4 (D.N.H. Mar. 24, 2020) (rejecting argument that "whether the issues will be simplified is speculative at best" given that PTAB had not yet decided whether to institute review); *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV 12-01861 JGB, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2012) (rejecting argument that it is mere "prediction" that PTAB will institute review, and finding that simplification factor weighs in favor of stay no matter if PTAB grants review). Courts have recognized that it would be a waste of judicial and party resources to continue litigation over patent claims that may ultimately be found invalid when the Court can instead impose a brief pause on the litigation pending the PTAB's decision of whether to institute review. *See, e.g.*, *DSS Tech.*, 2015 WL 1967878, at *3, *4; *Arch Chemicals Co. v. Sherwin-Williams Co.*, 1:18-cv-02037, Dkt. No. 48 (D. Del. Nov. 5, 2019) (attached as Ex. B to Opening Br. at Dkt. No. 69-2).

Plaintiffs cast aside the numerous courts that have granted pre-institution review stays as "the minority." Opp. Br. at 14. However, as one court observed, any per se rule that provides stays should be denied pre-institution is "hardly universal, and courts in numerous . . . districts across the country have granted stays before" institution. *NST Global*, 2020 WL 1429643, at *4. Thus, stating that "some" courts have declined to enter pre-institution stays is far from "pejorative" as Plaintiffs' contend. Opp. Br. at 14. Rather, this is an accurate depiction of the legal

3

landscape wherein courts have reached different conclusions regarding the propriety of a pre-institution stay based on the facts presented in each case.

Plaintiffs then attempt to distinguish the numerous cases Defendants cited wherein courts have granted pre-institution stays based on the purportedly different procedural posture of these cases. Opp. Br. at 14-15. But, the stage of the proceedings is just one factor to consider in the stay analysis. And, courts faced with stay requests at similar procedural postures to the instant action have likewise granted pre-institution stays. *See, e.g.*, *Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (granting pre-institution stay where fact discovery was not yet complete and parties had submitted claim constructions briefs but *Markman* hearing had not yet occurred); *DSS Tech.*, 2015 WL 1967878, at *2 (granting pre-institution stay where claim construction briefing was complete, one deposition was completed, and parties had conducted "some discovery").

Next, Plaintiffs purport to turn the simplification inquiry on its head. *See* Opp. Br. at 15-16. The likelihood of simplification factor asks whether a stay is likely to simplify issues in *the litigation* and streamline a trial *in this action*. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1309 (Fed. Cir. 2014). Here, the answer is undoubtedly yes. *See NST Global*, 2020 WL 1429643, at *3 (emphasizing that "the potential impact of the P[TAB]'s decision" on invalidity and

claim construction may simplify issues for the court, and, thus the court should "await at least the [PTAB]'s initial institution decisions before moving forward" with litigation); *Arch Chem.* (Dkt. No. 69-2) (Court could benefit from "additional intrinsic evidence and the PTAB's view on claim construction" which "is likely to simplify the issues" for the Court).

The inquiry is not, as Plaintiffs now appear to argue, whether this Court's work on claim construction could "aid the PTAB" (Opp. Br. at 16)—a specialized body created to adjudicate patent issues. Instead, the Court's analysis should focus on whether to permit the "unacceptable" practice of "allow[ing] litigation to grind on while a [CBM review] is being conducted." *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 490 n.4 (D. Del. 2013). Here, there is no question that allowing this litigation to grind on will be a waste of party and judicial resources. *See* Opening Br. at 9-10.

Finally, Plaintiffs argue that the PTAB has "increasingly issued discretionary denials of IPR petitions" where parallel district court proceedings were in an advanced state. Opp. Br. at 16. But, notably, Plaintiffs cite only a single PTAB action where the PTAB exercised its discretion to deny review based on a variety of factors, including the advanced stage of a parallel district court proceeding. *See NHK Spring Co. v. Intri-Plex Tech., Inc.*, IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) (Opp. Br., Ex. H) (Dkt. No. 70-8). This is far from a pattern of increased

5

denials as Plaintiffs contend.

Further, *NHK* is inapposite.  In *NHK*, the same party defending the parallel district court litigation was the petitioner at the PTAB challenging validity of the asserted patent.  *See id.* at 19 (discussing patent owner's argument regarding inefficiency of institution based on "status of the district court proceeding between the parties").  This is in stark contrast to the instant action wherein Defendants are not parties to the CBM proceeding.  Further, unlike here, in *NHK*, the trial in the district court action was scheduled to begin *prior* to when the PTAB was expected to issue its own decision if it were to institute trial.  *See id.* at 9 (PTAB declining institution due to fact that, *inter alia*, district court action was "nearing its final stages" with expert discovery set to close within less than a month of PTAB's institution decision and with trial set to begin in less than seven months).  Here, a trial is not scheduled until March 7, 2022—months after the likely November 2021 date for issuance of the PTAB's final written decision if the PTAB opts to institute review.  *See* Opening Br. at 14.  In such situations where "the district court has set a trial date after the Board's deadline to issue a final written decision in an instituted proceeding, the Board may be less likely to deny institution."  *See Apple Inc. v. Fintiv*, IPR2020-00019, Paper No. 11 (P.T.A.B. Mar. 20, 2020 (Opp. Br., Ex. I) (Dk. 70-9) at 3.  Indeed, if this Court stays the instant litigation pre-institution or denies the motion for stay without prejudice to renew upon institution, then the PTAB is

less likely to exercise its authority to deny institution on the basis of an advanced district court litigation. *See id.* at 6 ("A district court stay of the litigation pending resolution of the PTAB trial allays concerns about inefficiency and duplication of efforts. This fact has strongly weighed against exercising the authority to deny institution[.]"). Thus, Plaintiffs' speculation regarding what the PTAB may ultimately do with respect to institution does not weigh against a stay here.

Even if the PTAB decides not to institute review, the duration of a stay would be only a few months. During those few months, however, the parties and the Court will continue to expend significant resources in the absence of a stay all to address a patent that may ultimately be invalidated or altered in the PTAB proceeding. A stay prevents this potential needless consumption of resources.

**B.      Far From Being at a "Relatively Advanced Stage," the Most Burdensome Stages of This Proceeding Lie Ahead.**

"Stays are favored when the 'most burdensome stages of the case— completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.'" *Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*, Civil Action No. 18-1679-RGA, 2020 WL 2849989, at *1 (D. Del. June 2, 2020). Here, Plaintiffs cannot dispute that each of these activities lies in the future. And, thus, the relatively early stage of this litigation—*i.e.*, months before the close of fact and expert discovery and with a March 2022 trial nearly a year and a half

Case 3:19-cv-01470-JPW   Document 77   Filed 07/23/20   Page 12 of 22

away—weighs strongly in favor of a stay.[1]  *See* Opening Br. at 12.

Attempting to distract from this fact, Plaintiffs provide various meaningless data points regarding the limited fact discovery and proceedings that have already occurred.  *See* Opp. Br. at 3-4, 13.  But none of these data points demonstrate that a stay is inappropriate here.

Although the parties have begun claim construction briefing, courts have found the stage of the proceedings to favor a stay even where this is the case, *see, e.g.*, *Symantec Corp. v. Zscaler, Inc.*, Case No. 17-cv-04426-JST, 2018 WL 3539267, at *2 (N.D. Cal. July 23, 2018) (granting stay between completion of claim construction briefing and *Markman* hearing), and where claim construction and other discovery had already been completed, *see, e.g.*, *Princeton Digital Image Corp. v. Konami Digital Entm't, Inc.*, Civil Action No. 12-1461-LPS-CJB, 2014 WL 3819458, at *3-4 (D. Del. Jan. 15, 2014) (granting pre-institution stay where discovery had begun, certain initial disclosures had been exchanged, plaintiff's preliminary infringement contentions had been served, and early *Markman* proceeding had been held).

Courts also have stayed district court litigation pending completion of PTAB proceedings despite the completion of some or all of discovery in the district court

---

[1]As Plaintiffs acknowledge, the appropriate timeframe to consider for the stage of the proceedings is the date of the filing of the motion.  *See* Opp. Br. at 17; *VirtualAgility*, 759 F.3d at 1317.

8

litigation. *See, e.g.*, *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *3 (D. Del. Mar. 20, 2019) (granting stay where parties were almost complete with expert discovery and trial was just months away); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1026 (N.D. Cal. 2014) (granting stay where "[a] substantial amount of fact discovery has been completed," parties "ha[d] taken a dozen depositions," and court had issued claim construction order). Here, notwithstanding Plaintiffs' proffered litany of discovery conducted to date (Opp. Br. at 2-3), discovery remains in the relatively nascent stages. Plaintiffs have yet to produce source code, have not identified the products that fall within the scope of the '223 Patent, have yet to produce promised documents in response to dozens of document requests, and have served bare-bones infringement contentions premised on the right to supplement based on further forthcoming discovery (*see* Dkt. 70-1 at 2 ("Plaintiffs reserve the right to supplement their contentions . . . in response to Defendants' production and disclosures, after claim terms are construed, after any other event leading to discovery of additional information regarding Defendants' infringement.")).[2]

---

[2] Plaintiffs' contention that they have "produced a privilege log" (Opp. Br. at 4) is misleading given that Plaintiffs' privilege log contained only six entries and does not purport to encompass the full scope of documents withheld (or that will be withheld from production) on the basis of privilege.

The fact that third parties have produced a certain number of documents or that the parties exchanged a specific number of discovery requests is hardly sufficient to demonstrate that the instant action is beyond a phase where a stay would conserve Court and party resources. *Cf. Softview Computer Prods. Corp. v. Haworth, Corp.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) ("[A]lthough there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial" such that it "would be a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward").

## C. Plaintiffs' Claims of Undue Prejudice and Tactical Advantage Are Unsupported.

Courts examine four sub-factors in determining whether a stay would give a movant a clear tactical advantage or would be unduly prejudicial to a non-movant: "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2018 WL 3046511, at *2 (D. Del. June 20, 2018). None of these factors supports denial of the motion for stay.

### 1.      The Timing of Banilla's CBM Petition Is Irrelevant.

Third-party Banilla Games, Inc. ("Banilla") filed the CBM Petition on May 21, 2020, nine months after the initiation of the instant action.  Defendants have no control over when Banilla opted to file the CBM Petition, and, thus, Plaintiffs' statement that "courts expect *defendants*" to file CBM Petitions "as soon as possible" "after learning that a patent may be asserted against them" is wholly irrelevant. Opp. Br. at 12 (emphasis added).   Indeed, in a case cited by Plaintiffs, a court acknowledged that where, as here, the party to a litigation is not the same party that sought review from the PTAB, the timing of seeking relief from the PTAB is irrelevant. *See Arkema Inc. v. Honeywell Int'l, Inc.*, Civil Action No. 10-cv-2886, 2013 WL 5356844, at *3 (E.D. Pa. Sept. 25, 2013).

Despite this fact, Plaintiffs contend Defendants sought a tactical advantage based on when third-party Banilla opted to file the CBM Petition.   This is nonsensical especially given that Banilla acted timely by any measure.   Courts routinely find that there is no impressible tactical advantage or undue delay where a petitioner timely files a petition for PTAB review. *See, e.g.*, *Princeton Digital*, 2014 WL 3819458, at *3-4 (finding that party's filing of IPR petition on or near last day of statutory deadline did not evidence undue delay or impressible tactical advantage and granting stay); *Cypress Semiconductor Corp. v. LG Elecs., Inc.*, Case No. 13-4034 SBA, 2014 WL 5477795, at *3 (N.D. Cal. Oct. 29, 2014) (same).  For CBM

11

proceedings, a challenger may file a petition at any time prior to the termination of the CBM review program at the PTAB. *See* 37 C.F.R. § 42.303; 37 C.F.R. § 42.300. Thus, insofar as it is relevant, Banilla's decision to timely exercise its right to seek CBM review does not constitute undue delay.

### 2. The Timing of the Request for Stay Does Not Reflect Undue Delay or Impermissible Tactical Advantage.

In their Opposition, Plaintiffs make conflicting arguments regarding the timing of the request for stay. Plaintiffs first claim the requested stay is premature because the PTAB has yet to make an institution decision (Opp. Br. at 6-7); Plaintiffs next claim that Defendants improperly delayed seeking a stay (*id.* at 13). Notwithstanding these conflicting arguments, the timing of filing of the motion to stay was wholly appropriate and supports the entry of a stay. Plaintiffs claim that because a third party (over whom Defendants have no control) produced 1,700 documents and because case activities continued during the month prior to Defendants' moving to stay, that Plaintiffs were somehow unduly prejudiced. But, Plaintiffs cannot dispute that these activities occurring in the month between the filing of the CBM Petition and the current motion to stay did not materially alter the procedural landscape of this litigation. Plaintiffs' contention that the CBM petition and Motion to Stay are "a tactical response" to Plaintiffs' "push to discover Banilla's technical documentation" (Opp. Br. at 10) is likewise unsupported. Banilla and Plaintiffs are actively negotiating a protective order for Banilla's anticipated

12

production and Defendants' seeking a stay has nothing to do with this.[3]  At bottom, "[t]he most burdensome stages of this case lie ahead" and nothing that occurred during the month prior to Defendants' filing of the motion to stay (including third-party Banilla's negotiation regarding a protective order to govern its production in response to a subpoena) alters this fact.  *See Bio-Rad Labs.*, 2020 WL 2849989, at *1.

### 3.     The Status of the CBM Proceedings Does Not Demonstrate Undue Prejudice.

Plaintiffs' sole argument regarding this factor does not have to with the status of the CBM proceeding at all.  Instead, Plaintiffs claim they will face undue prejudice from a stay because the parties to the CBM may ultimately appeal the PTAB's decision.  Opp. Br. at 11-12.  But, as Plaintiffs themselves acknowledge, "delay, by itself, does not establish undue prejudice."  *Id.* at 7; *see also* Opening Br. at 13 (collecting cases holding same).

---

[3] Banilla responded to Plaintiffs' subpoena by seeking additional protections for its proprietary information and drafted a supplemental protective order.  In response, Plaintiffs injected protections for Plaintiffs' affiliate company's information despite the fact that Plaintiffs already had negotiated a protective order for themselves and had agreed to produce their affiliates' information in the instant litigation. Thus, the delays associated with the protective order negotiations have been a result of Plaintiffs' efforts to inject these protections for Plaintiffs' affiliate company, Pace-O-Matic, Inc., into the separately negotiated protective order pertaining to Banilla.

### 4.      The Relationship of the Parties Does Not Demonstrate a Stay Is Inappropriate.

Plaintiffs contend that the parties' status as purported competitors in the electronic skill gaming market in Pennsylvania demonstrates undue prejudice will result from a stay.  Opp. Br. at 8-9.  Plaintiffs are incorrect.  Although some courts have found that the parties' status as competitors supports a finding of undue prejudice from a stay, numerous other courts have reached the opposition conclusion.  *See, e.g.*, *Blast Motion, Inc. v. Zepp Labs, Inc.*, Case No.: 15-CV-700 JLS (NLS), 2016 WL 5107678, at *5 (S.D. Cal. Mar. 29, 2016) (granting pre-institution stay in case between competitors despite plaintiff offering "some evidence that may indicate it will suffer loss of market share and price erosion"); *Sonics, Inc. v. Arteris, Inc.*, No. C 11-05311 SBA, 2013 WL 503091, at *4 (N.D. Cal. Feb. 8, 2013) (holding that there was no undue prejudice from continued potentially infringing sales during stay period because "Plaintiff's legal and equitable remedies will be available when the stay is lifted"); *E.I. Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, No. CIV. A. No. 10-3409 MLC, 2012 WL 2995182, at *4 (D.N.J. July 23, 2012) (granting stay and emphasizing that where parties were only two competitors in given market that "[w]hile the Court appreciates [plaintiff]'s concern that [defendant] will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding [plaintiff]'s market share and resulting in substantial loss of profits and

goodwill, the Court notes that [plaintiff] did not seek a preliminary injunction in this matter").

Further, although not dispositive, Plaintiffs' failure to seek a preliminary injunction is nevertheless an indication of the lack of prejudice Plaintiffs will suffer if a stay is granted. *See VirtualAgility*, 759 F.3d at 1319 (Federal Circuit reversing the denial of a motion to stay in part because plaintiff's choice to "not pursu[e] a preliminary injunction . . . contradict[ed its] assertion that it needs injunctive relief as soon as possible."); *Blast*, 2016 WL 5107678, at *5 ("Plaintiff's failure to pursue a preliminary injunction undermines its position that monetary damages are insufficient."); *Select Comfort Corp., v. Tempur Sealy Int'l, Inc.*, No. CV 14-245 (JNE/JSM), 2014 WL 12600114, at *7 (D. Minn. Oct. 10, 2014) (granting stay finding that plaintiff's "concerns about the effect of a stay on its market share and loss of good will are belied by its failure to move for a preliminary injunction" and that "[l]oss of market share and price erosion are economic harms and are compensable by money damages"); *Neste Oil Oyj v. Dynamic Fuels, LLC*, Civil Action No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *Robert Bosch Healthcare Sys., Inc. v. ExpressMd Solutions, LLC*, No. C 12-00068 JSW, 2013 WL 752474, at *3 (N.D. Cal. Feb. 27, 2013) (rejecting

15

assertion that parties' status as direct competitors causes plaintiff undue prejudice and stating plaintiff's "claims of irreparable prejudice due to the potential of lost market share is undermined by the fact that [plaintiff] has not moved for a preliminary injunction").[4]

Further, the fact that Plaintiffs can seek legal and equitable remedies for any damages incurred during the period of a stay weighs against a finding of undue prejudice. *See Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *3 (D. Del. Mar. 20, 2019) (granting stay in case between competitors emphasizing that "any continued infringement may be compensated with damages").[5]

---

[4] Plaintiffs' assertion that preliminary injunctions are "rarely granted" (Opp. Br. at 10) is both unsupported and irrelevant. The question is not whether the Court granted a preliminary injunction, but rather if Plaintiffs sought one. The fact that Plaintiffs failed to seek a preliminary injunction is telling.

[5] Plaintiffs are incorrect that the potential for undue prejudice is heightened where Plaintiffs intend to seek a permanent injunction post-judgement. Opp. Br. at 9. In the sole case Plaintiffs cite to support this argument, a court held that because the plaintiff may have an opportunity to seek a permanent injunction, but could only do so after an indefinite duration stay and lengthy reexamination proceedings, such indefinite delay coupled with other factors posed undue prejudice. *See Nidec Corp. v. LG Innotek Co.*, Civil Action No. 6:07cv108, 2009 WL 3673433, at *3 (E.D. Tex. Apr. 3, 2009). But, unlike in *Nidec*, which involved reexamination proceeding before the PTAB which may have taken years, here, if the PTAB opts to institute trial, a final decision is expected by September 2021. Thus, the indefinite timing concerns in *Nidec* are inapplicable here where Plaintiff will experience only a slight delay in obtaining final relief.

**D.     A Stay Will Reduce—If Not Eliminate—the Burden on the Parties and the Court.**

In their Opposition, Plaintiffs gloss over the fourth factor in the stay analysis—whether a stay would significantly reduce the burden of litigation on the parties and the Court—and make the unsupported assertion that the burden reduction is "speculative." Opp. Br. at 17. Plaintiffs contend they are not seeking that the litigation proceed in parallel with the CBM proceeding because "right now, there is no instituted CBM proceeding." *Id.* But Plaintiffs miss the point. Congress added this fourth factor to the stay analysis specifically to place "a heavy thumb on the scale" in favor of a stay pending a CBM *proceeding*. This "heavy thumb" on the scale in favor of a stay applies "when the [CBM] petition is first filed." *Market-Alerts*, 922 F. Supp. 2d at 490 n.5. Ultimately, there can be no doubt that "[t]he parties and Court will expend further substantial resources in this litigation, through completing discovery and trial" such that a stay will conserve these resources temporarily (if not permanently). *See Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284, at *3 (W.D. Pa. June 6, 2013). Thus, this factor weighs strongly in favor of a stay.

**III.   CONCLUSION**

For the foregoing reasons, the Court should stay the instant litigation pending conclusion of the CBM proceeding regarding the '223 patent.

17

Dated:  July 23, 2020                     Respectfully submitted,

                                                   MORGAN, LEWIS & BOCKIUS LLP

                                                   */s/John V. Gorman*
                                                   John V. Gorman (PA 80631)
                                                   Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
                                                   Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
                                                   1701 Market Street
                                                   Philadelphia, PA  19103
                                                   Telephone:  215.963.5000
                                                   Fax:  215.963.5001
                                                   john.gorman@morganlewis.com
                                                   kenneth.davis@morganlewis.com
                                                   amy.dudash@morganlewis.com

                                                   *Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

18