**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC a Wyoming limited liability company,<br><br>          Plaintiff,<br><br>   v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>          Defendants. | Civil Action No. 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson |

**PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................................... iii-v

I.    The 223 Patent Embodiments.................................................. 1

II.   Argument ...................................................................... 3

  A.  Terms 1 ("game processor") and 7 ("program instructions") ........... 3

  B.  Term 2 ("winning combination") ...................................... 7

  C.  Term 3 ("determine[determining/determined] at least one
      winning combination for each play of the game").................... 9

  D.  Term 4 ("test[ing] the game field prior to displaying the game to
      the player to ensure that a winning combination more valuable
      than the determined winning combination is not generated
      inadvertently in completing the field") ........................... 11

  E.  Term 5 ("automatically display[ing] an actual game to be played
      on the touch screen game display to a player prior to initiating
      activation of game play") ......................................... 16

  F.  Term 6 ("an actual game to be played" as used in Term 5)............ 16

# TABLE OF AUTHORITIES

### *Cases*

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013) ...............................................................................20

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
908 F.3d 765 (Fed. Cir. 2018) ...................................................................................1

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
448 F.3d 1324 (Fed.Cir. 2006) ................................................................................15

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ...............................................................................10

*Blackbird Tech LLC v. ELB Electronics, Inc.*,
895 F.3d 1374 (Fed. Cir. 2018) ...............................................................................13

*Braintree Labs., Inc. v. Novel Labs., Inc.*,
749 F.3d 1349 (Fed. Cir. 2014) ...............................................................................19

*Cont'l Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019........................................................................................2

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ...............................................................................19

*Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*,
785 F.3d 616 (Fed. Cir. 2015) ...................................................................................5

*Function Media, LLC v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .................................................................................5

*Global Equity Management (SA) Pty. Ltd. v. Expedia, Inc.*,
2:16-CV-00095-RWS, 2016 WL 7416132 (E.D. Tex. Dec. 22, 2016).................6

*GoDaddy.com, LLC v. RPost Communications Ltd.*
  No. CV-14-00126, 2016 WL 212676 (D. Ariz. Jan. 19, 2016)............................5

*Greenberg v. Ethicon Endo–Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996) ..............................................................................4

*Hill-Rom Servs. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) .................................................................. passim

*Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*,
  799 F. App'x 847 (Fed. Cir. 2020)........................................................................2

*Konami Gaming, Inc. v. High 5 Games, LLC*
  No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 21, 2018) ........................5

*Linear Technology Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004) ............................................................................4

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ..................................................................... 18-19

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................. passim

*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243 (Fed. Cir. 1998) ..........................................................................11

*Syncpoint Imaging, LLC v. Nintendo of America Inc.*,
  No. 215CV00247-JRG, 2016 WL 55118 (E.D. Tex. Jan. 5, 2016) ......................5

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ......................................................................7, 19

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997). ................................................................. 12, 15

iv

*Williamson v. Citrix Online, LLC,*
  792 F.3d 1339 (Fed. Cir. 2015).................................................................... 5-6

## *Statutes*

35 U.S.C. § 101 ...............................................................................................6

35 U.S.C. § 112 ........................................................................................... 4-5

## *PTAB Proceedings*

*Ex Parte Lakkala,*
  No. 2011-001526, 2013 WL 1341108 (P.T.A.B. Mar. 13, 2013) ..........................5

*Ex Parte Smith*,
  No. 2012-007631, 2013 WL 1341109 (P.T.A.B. Mar. 14, 2013) .........................5

In view of the arguments presented by Defendants ("PA Coin"), Plaintiffs ("POM") focus this response brief on the potentially outcome-determinative disputes at the *Markman* hearing.

## I.    The 223 Patent Embodiments

"The present invention is directed to a system and method for providing a game preview display to players of an amusement or entertainment electronic game before playing the game." [223 Pat., 1:64-67]. The specification teaches the embodiments of the 223 Patent in the context of the Tic-Tac-Fruit game, where skill predominates over chance. [*Id.*, 3:59-61]. The description of the invention in the specification is provided "as illustrative of the principles of the present invention and not in limitation thereof, since the scope of the present invention is defined by the claims."[1] [*Id.*, 3:43-58 (emphasis added); *see also id.*, 12:38-47]. Therefore, a person of ordinary skill in the art ("POSITA") will recognize that it can use "some of the features of the present invention without utilizing other features[.]" [*Id.*, 3:50-51]. For example, "[t]he preview screen of the present invention can be used in various additional embodiments. These additional embodiments can be implemented without the use of a wild symbol." [*Id.*, 11:14-16]. The flowcharts at FIGS. 5-8 and

---

[1]  In *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 771 (Fed. Cir. 2018), the Federal Circuit relied upon such language in refusing to import a broadcast channel limitation from the specification into claim language which did not explicitly reference a channel.

associated text describe "exemplary embodiments." [*Id*., 3:27-39]. The patentee intended that the claim language, rather than the characteristics of the specification, would define the scope of the claims, stating "the scope of the present invention[2] is defined solely by the appended claims." [*Id*., 12:43-47]. "[W]e do not read limitations from the embodiments . . . into the claims." *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

The specification describes an algorithm[3] for building a 3x3 field using eight different game symbols (134 million possibilities). [223 Pat., 4:16-18, 4:36-40, 4:51-64 (steps 1-4); Crevelt Dec. (Dkt. 74-1), ¶¶ 80-90]. The algorithm chooses the number of winning lines, the orientation of the winning combinations and the symbols to be used in the winning combinations. [223 Pat., 4:51-63 (steps 1-3)]. After completing the rest of the field with random symbols, the algorithm iteratively tests the game field for compliance with step 1 (the number of winning lines) and then step 3 (the symbols used to make the winning lines), to verify that the insertion of random symbols in step 4 did not contravene the purposes of steps 1 and 3 by

---

[2] *See Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648, 205 L. Ed. 2d 390 (2019) ("present invention" is <u>not</u> limiting where, as here, the references are not uniform, or where, as here, other portions of the intrinsic evidence do not support applying the limitation to every claim of the entire patent) (internal citation omitted).

[3] An algorithm may be expressed as a "mathematical formula, in prose, or as a flow chart, or in any other manner[.]" *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*, 799 F. App'x 847, 852-853 (Fed. Cir. 2020).

creating an inadvertent winner with a higher prize value.  [*Id*., 4:62-64 (step 5), 6:25-33; Crevelt Dec., ¶ 87; *see* excerpts from August 7, 2020 Deposition of Dwight Crevelt ("Crevelt Dep."), Vol. I (**Ex. A**), at 100:13-101:9; Crevelt Dep., Vol. II (**Ex. B**), at 127:8-141:4, 147:8-150:7, 157:23-160:25].

The flowcharts in FIGS. 6 and 8 and text at 10:22-12:20 describe various embodiments for previewing a game to be played to a player, before the player commits to play the game.  [*See* Dkt. 74 (POM Op. Brief), at 28-30; Crevelt Dec., ¶¶ 101-109].

## II.   Argument

### A.   Terms 1 ("game processor") and 7 ("program instructions").

| Game processor | |
|---|---|
| **POM's Construction** | **PA Coin's Construction** |
| "a CPU or microprocessor with input/output circuitry that executes program instructions to generate a game."<br><br>Not a means-plus-function term. | (1) ***Indefinite.***[4]<br><br>***This is a means-plus-function term***.<br><br>(2) *Alternative*: "a ***conventional*** CPU or microprocessor processor that executes program instructions to generate a game." |

| Program instructions | |
|---|---|
| **POM's Construction** | **PA Coin's Construction** |
| "conventional commands that can be executed by a computer"<br><br>Not a means-plus-function term. | ***(1) Indefinite.***<br><br>***This is a means-plus-function term.*** |

---

[4]  For each disputed term, POM uses boldface to highlight the objectionable portion of PA Coin's proffered construction.

| | *(2) Alternative:* "conventional commands that can be executed by a computer" |
|---|---|

"[Game processor] is a term that is known in the industry, it has structure[.]" [Crevelt Dep., Ex. B, 164:4-7; *see also id.*, 183:22-25]. "[W]hen the structure-connoting term ["game processor"[5]] is coupled with a description of the [processor's] operation [in the claim], sufficient structural meaning generally will be conveyed to [a POSITA.]" *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320-1321 (Fed. Cir. 2004) (reversing claim construction and holding that "circuit", along with a recitation of the circuit's operation in the claim, suggested structure to a POSITA). The fact that a claim is partly defined in functional terms is "not sufficient to convert a claim [limitation] into a 'means for performing a specified function' within the meaning of 112(6)." *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (holding that "detent mechanism" is not a means-plus-function ("MPF") term).

PA Coin's reliance on two Federal Circuit cases misses the mark:

(1)   In *Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*, "[t]he parties agree[d] that the claim terms at issue are all [MPF] terms governed by 35

---

[5] *Linear Tech.* involved the term "circuit."  A POSITA understands that a game processor comprises integrated circuits. [Crevelt Dec., ¶¶ 32, 60, 119, 120, 122- 123, and 128; Crevelt Dep., Ex. B, 176:6-11].

4

U.S.C. § 112 ¶ 6" 785 F.3d 616, 620 (Fed. Cir. 2015) (emphasis added). Here, there is no such agreement.

(2)  In *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013), involving "<u>means</u> for transmitting," an MPF term, the disputed issue was whether the specification identified supporting structure.

Against *Linear Tech.* and the eight post-*Williamson* opinions cited in POM's opening brief holding that a processor or processor type is "the name for structure," PA Coin relies on *Konami Gaming, Inc. v. High 5 Games, LLC* and *GoDaddy.com, LLC v. RPost Communications Ltd.*, which misapplied *Linear Tech.* and *Williamson* by treating the disputed claim terms as MPF terms, and then searching the specification for exacting algorithmic structure to determine whether the disputed terms contained nonce words. [*See* Dkt. 74, at 13, citing *Syncpoint Imaging, LLC v. Nintendo of America Inc.*, No. 215CV00247-JRG, 2016 WL 55118, at *18-21 (E.D. Tex. Jan. 5, 2016) (detailing the analytical flaws in such an approach)]. Moreover, these cases did not involve undisputed POSITA testimony that the language in question connotes structure.

PA Coin's reliance on *Ex Parte Lakkala,* No. 2011-001526, 2013 WL 1341108 (P.T.A.B. Mar. 13, 2013) and *Ex Parte Smith*, No. 2012-007631, 2013 WL 1341109 (P.T.A.B. Mar. 14, 2013) is equally unavailing, as they are pre-*Williamson*

PTAB decisions, decided without the benefit of the substantial post-*Williamson* jurisprudence recited in POM's opening brief.

Also, while POM offered multiple cases holding that program instructions were structural and not nonce terms [Dkt. 74, at 34-36], PA Coin's reliance on *Global Equity Management (SA) Pty. Ltd. v. Expedia, Inc.* is misplaced. There, the Court determined that there was <u>no</u> credible expert testimony that "program code" is structural in nature. No. 2:16-CV-00095-RWS, 2016 WL 7416132, at *31 (E.D. Tex. Dec. 22, 2016). In fact, *Global Equity* indicated that "circuit" and "processor" <u>are</u> <u>structural</u>, rather than nonce words, in many circumstances. *Id.*, *29.

Given POM's showing that "game processor" and "program instructions" are structural in nature[6], PA Coin has failed to meet its burden of showing that "game processor" is an MPF term.

Regarding PA Coin's alternate construction, the Court should not use "conventional", because the intrinsic evidence does not use "conventional". Further, on the issue of patentable subject matter, it would be prejudicial to POM to instruct the jury that the game processor outlined in claim 44 is "conventional". [*See* Dkt. 61, at 18-19 (Court Order denying PA Coin's motion to dismiss in view of fact issues as to whether the patented game processor is an improvement and inventive concept, or merely conventional, under 35 U.S.C. § 101)].

---

[6] [*See also* Crevelt Dep., Ex. A, 74:8-14, 77:14-22].

### B.   Term 2  ("winning combination")

| POM's Construction (Revised)[7] | PA Coin's Construction |
|---|---|
| "array of game symbols yielding a successful outcome, including the award of a prize" | "array of game symbols *in the game field* yielding a successful outcome" |

*Game symbols*.  POM is amenable to an "array of *game* symbols" in the construction.

*"In the game field"*.  A POSITA would understand that a winning combination can exist <u>regardless</u> of whether it is in the game field.  *See, e.g., Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("It is not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims.").  In fact, the specification rejects the notion that "winning combination" itself should be construed as symbols "in the game field."  <u>Before</u> the game field is even completed, the system chooses the "winning line(s)" (*e.g.*, the number of winning lines, the orientation of winning lines, and the symbol(s) used in the winning lines). [223 Pat., 4:53-64 (steps 1-3)].  "Winning line," "complete line," and "winning combination" are used interchangeably in the specification. [*Id.*, 4:9-12, 29-30, 38-39, 42-43, 5:21-32].

---

[7] POM has slightly modified its constructions, as indicated by "(**REVISED**)", to narrow the scope of disagreement between the parties.

7

Moreover, the preview embodiment discusses an embodiment that does not display the game field of the game to be played, but instead displays merely "a winning or a non-winning combination" of the game to be played. [*Id*., 11:14-23].

***Yielding a successful outcome or corresponding to a prize***. PA Coin argues that POM's construction incorrectly implies that a "winning combination" could correspond to a prize, but <u>not</u> yield a successful outcome. [Dkt. 72 (PA Coin Op. Brief), at 15]. That is not POM's intent; rather, POM's construction eliminates uncertainty over what constitutes a "successful outcome." In one embodiment, the award table in column 5 associates each winning combination with a prize. [223 Pat., 5:35-47 (showing 3 lemons is a winning combination); *see also id*., FIG. 1B (wild symbol forming a winning line of 3 lemons)]. For 3 lemons, the winning line yields a prize of "$0.08" if the player inputs $1. [*Id*., 5:35-47]. PA Coin would introduce juror confusion by arguing that combinations yielding low-value prizes are not winning combinations, because the outcome is not successful <u>enough</u> (*e.g.* where the prize awarded does not exceed the cost to play the game). But such an argument flies in the face of the intrinsic evidence, which explains that in the disclosed "amusement or entertainment electronic game," *any* completed line *(e.g., any 3 symbols in a row)* is a winning combination, regardless of whether it yields a prize. "Prize" is a decidedly non-technical term easy for a jury to understand. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the

8

ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges")]. POM is therefore amenable to the following construction: "array of *game* symbols yielding a successful outcome, *including the award of* a prize."

**C.    Term 3 ("determine[determining/determined] at least one winning combination for each play of the game").**

| POM's Construction (**Revised**) | PA Coin's Construction |
|---|---|
| "Establish or ascertain at least one winning combination, properly construed, for each game to be played" | "*guaranteeing/guarantee/guaranteed* at least one winning combination that may be formed for each game to be played" |

Here, POM narrows its construction to focus on whether "determine" means "establish or ascertain" or "guarantee."

Absent clear lexicography from the patentee, which does not exist here, "guarantee" should not replace "determine." *See Hill-Rom*, 755 F.3d at 1371 (cannot limit claim scope absent lexicography or a clearly express disavowal).

Here, the patent only uses "guarantee" once, and it is not definitional. [223 Pat., 4:20]. Furthermore, "guarantee" is not an appropriate construction for "determine", because it is not "consistent with the way the '223 patent uses [determine.]" [Dkt. 72, at 21]. The other uses of "determine" in the claims confirm this. [*See* 223 Pat., 12:50-16:25 ("determine" used to mean "establish or ascertain" in claims 1, 3, 6, 8, 11, 13, 15, 19, 23, 25, 27, 30, 35, 37)]. Construing "determine" as "establish or ascertain" stays true to its usage throughout the patent.

9

The specification states that game software "determines each winning combination of symbols that is formed by such wild symbol location selection." [*Id.,* 2:21-25 (emphasis added); *see also id.,* FIG. 5 (510), FIG. 6 (616) and FIG. 8 (808)]. Other uses of "determine" in the patent confirm that it does not mean "guarantee." [*See, e.g., id.*, 4:28-31 (a player must quickly examine all nine locations and determine the optimal location for the wild symbol"), 4:40-50 ("[v]alid fields are determined by using an embedded computer processor to iterate through and test each combination to determine if it has any complete lines . . . game software determines all of the initial "no-line" fields and tests each of these . . . the player must examine each lineup and symbol values to determine the best location for selecting the wild symbol on the field displayed"), 7:6-10 ("[t]he manner in which the player plays the game determines whether the player will receive the winnings or if the winnings will go into the bonus pool, which will be awarded to the next player successfully obtaining the top prize")].

The Court should assign "determine" its normal meaning, which is "establish or ascertain." *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) (noting the "stringent standard" for narrowing a claim term beyond its plain and ordinary meaning).

10

**D.     Term 4 ("test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field")**

| POM's Construction (**Revised**) | PA Coin's Construction |
|---|---|
| test[ing] the game field prior to displaying the game to the player to ensure that the anticipated outcome corresponding to the winning combination, properly construed, is not superseded by a better outcome, such as a higher prize level, in making the field from the plurality of predetermined game symbols | test[ing] *the previously constructed field* prior to displaying the *actual* game *to be played* to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently *when the player completes a winning combination during play of the game* |

The following issues are relevant to a construction "that stays true to the claim language and most naturally aligns with the patent's description of the invention[.]" *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

***"Testing" does not need to be separately construed.*** While "test[ing]" is a verb, PA Coin recites the definition of "test" as a noun. [Dkt. 72, at 25]. "Test" as verb means "to check." [*See, e.g.*, Dkt. 72-1, at 1743 ("take measures to check the quality, performance, or reliability of (something)")]. "Examin[ing]" and "observ[ing]" are consistent with "checking." Nonetheless, to narrow the scope of issues, POM agrees with PA Coin that "testing" does not require construction.

***"The game field" versus "the previously constructed field."*** Claim construction "is not an obligatory exercise in redundancy", and where the claim

11

language is clear, the Court need not "repeat or restate every claim term." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Here, it is adequate to simply refer to "the game field."[8] PA Coin's usage of "the previously constructed" field is surplusage. The intrinsic evidence uses "field," not "previously constructed" game field. [223 Pat., 4:51-64].

*"Prior to displaying the game to the player" versus "prior to displaying the actual game to be played."* It is adequate to refer to "the game." PA Coin's usage of "the actual game to be played" is surplusage.

*"The determined winning combination" versus "the previously determined winning combination."* It is adequate to refer to "the determined winning combination." PA Coin's usage of "previously determined" winning combination is surplusage.

*Ensuring that "the anticipated prize corresponding to the array is not superseded by the award of a better prize" is ensuring that "a winning combination more valuable than the determined winning combination is not generated inadvertently."* PA Coin states that the Court should "constru[e] the entire disputed term as a single phrase … consistent with the way the '223 patent uses the phrase[.]" [Dkt. 72, at 21 (emphasis added)]. POM's proposed construction, however, is derived from the patentee's description of the term in both the

---

[8] POM does not object to use of "game field", rather than "an array of symbols."

specification and prosecution history.  [223 Pat., 6:25-33; Crevelt Dec., ¶¶ 96-100].
PA Coin does not address this intrinsic evidence.

***"Having a better outcome or a higher prize level" is "more valuable than."***
"More valuable than" has "no specialized meaning in the intrinsic record."  [Dkt. 72,
at 25].  Consistent with the proposed construction of "winning combination", POM
is amenable to construing "more valuable than" as "having a better outcome, *such
as* a higher prize level."

***"In completing the field" is broad enough to encompass "when the system
completes the field."***  PA Coin emphasizes the player-completed field of the wild
symbol embodiment, and seeks to exclude a system-completed field.  [*Id.*, at 23].
Even if the player-completed field were the only embodiment taught in the patent,
PA Coin's construction would be error, because the claim language is not limited to
player interaction to identify a winning combination.  *See Phillips*, 415 F.3d at 1323
(the Federal Circuit has "expressly rejected the contention that if a patent describes
only a single embodiment, the claims of the patent must be construed as being
limited to that embodiment") (citation omitted).  "It simply cannot be the case that
every screw mentioned in an embodiment of the specification must be read into the
claim."  *Blackbird Tech LLC v. ELB Electronics, Inc.*, 895 F.3d 1374, 1378 (Fed.
Cir. 2018).

13

PA Coin's construction limits broader claim language to a single aspect of the wild symbol embodiment (the player selecting where to place the wild symbol onto the field), while <u>ignoring that</u>:

(1) the system of the wild symbol embodiment completes and tests the game field <u>before</u> showing it to the player [223 Pat., 2:12-14, 4:4-6, 4:62-67, 5:61-62]; and

(2) the preview embodiment also uses a system-completed field and does not require player interaction with a wild symbol. [*Id.*, FIG. 8 (800, 802) and 11:65-12:3].

"Complete" in the context of the game field does <u>not</u> mean "something more" than creating the field "in the first place." [Dkt. 72, at 23].  However, PA Coin cannot point the Court to any lexicography showing that the patentee intended to limit "completing the field" strictly to "the player complet[ing] a winning combination during play of the game."   To the contrary, the 223 Patent uses "<u>complete</u> field" and "field <u>completely</u> <u>filled</u> with apparently random symbols" to describe the <u>system-created</u> field (*i.e.* before the field is ever manipulated by the player). [*See* 223 Pat., 4:62-64 ("5. Test the complete field for compliance with the goals set by steps 1 and 3 and repeat the construction process if compliance fails"); *see also id.*, 4:4-6 ("[t]he player is presented a field completely filled with apparently random symbols")]. Absent lexicography or a clear disavowal of claim scope, neither of which is present here, there is no reason to construe "in completing the field" so narrowly as to exclude a system-completed field.  *See Phillips*, 415 F.3d at 1316.

14

PA Coin stresses that "Plaintiffs admit in their own pleading that 'completing the field' is performed by the player." [Dkt. 72, at 24, n.6]. While a player can "complete the field" in the wild symbol embodiment, POM has never said that a system-completed field cannot also practice the "complete the field" language of Claims 44 and 51.

Elsewhere, PA Coin cites *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, which noted that the Federal Circuit "presume[s] that the use of . . . different terms in the claims connotes different meanings." 448 F.3d 1324, 1333, n.3 (Fed. Cir. 2006); *see* Dkt. 72, at 29]. Applied here, PA Coin's analysis disproves its proffered construction of "in completing the field". More specifically, unlike claims 44 and 51, claim 1 states "there is no winning combination without player interaction with the game display" and "receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection." [223 Pat., 12:51-13:4]. Different language in the claims connotes different meanings.

Accordingly, the Court should construe Term 4 in its entirety as "*testing the game field prior to displaying the game to the player to ensure that the anticipated outcome corresponding to the winning combination,  properly construed, is not superseded by a better outcome, such as a higher prize level, in making the field from the plurality of predetermined game symbols*."

15

E.    **Term 5 ("automatically display[ing] an actual game to be played on the touch screen game display to a player prior to initiating activation of game play")**

| POM's Construction (**Revised**) | PA Coin's Construction |
|---|---|
| automatically display[ing] an actual game to be played, properly construed, on the touch screen game display to the player before the player commits to play the displayed game | automatically display[ing] an actual game to be played on the touch screen game display to the player before the player commits to play the displayed game |

*"Programmatically instruct[ing] the terminal to display" is "automatically display[ing]."*  PA Coin states that the "automatically [display[ing]" portion of Term 5 "needs no construction."  [Dkt. 72, at 26].  To narrow the parties' disputes, POM agrees.

*"The actual game to be played" is "the next game."* PA Coin criticizes POM for using "next game." [*Id.*, at 29]. "Next" and "to be played" have the same meaning, so POM agrees to "*the game to be played* by the player … before the player commits to play *the game to be played*."

The resolution of Term 6 below dictates the remaining scope of Term 5.

F.    **Term 6 ("an actual game to be played" as used in Term 5).**

| POM's Construction (**Revised**) | PA Coin's Construction |
|---|---|
| "the game to be played, including an otherwise unknown system-generated attribute of it" | "the *constructed game field of* the game to be played" |

Both parties' constructions are directed to the objective of a game preview screen – to lessen the role of chance in the game.  To focus on the key dispute,

16

POM's proposed construction of "actual game to be played" is revised slightly, to "the game to be played, including an otherwise unknown system-generated attribute of it." The sole dispute is whether the term should be limited to the preview embodiment, where the game preview screen is "the constructed field of the game to be played." It should not. The injection of "constructed field of," if adopted, would improperly narrow the broader claim language of "actual game to be played." *See, e.g., Hill-Rom*, 755 F.3d at 1371. While the unknown system-generated attribute of the game to be played that is shown to the player in advance of the game <u>could</u> be a completely constructed game field [*see* Dkt. 72, at 31-32][9], it is not the <u>only</u> way a game to be played can be previewed to lessen the role of chance and "stay[] true" to the invention. *Phillips*, 415 F.3d at 1316 (quotation omitted).

PA Coin asserts incorrectly that "[t]he claims themselves also equate the game played with the game field displayed." [Dkt. 72, at 32]. To the contrary, where the patentee wished to claim the constructed field, the patentee used "field" or "game field" in numerous claims. As discussed above, the different language in claims connotes different meanings. *See Phillips*, 415 F.3d at 1314.

In one disclosed embodiment, for example, a game preview result screen that does <u>not</u> show the game field nonetheless represents a "game" to be played. "The

---

[9] The 223 Patent states that "FIG. 6 illustrates the processing logic for an <u>exemplary embodiment</u> having a game preview display." [*Id.*, 3:32-33 (emphasis added)].

displayed game could actually be the result which may or may not be a winning combination of symbols." [223 Pat., 11:48-49 (emphasis added)].[10] This is the plain language of a "displayed game" to be played in the specification, which *Phillips* indicated is usually "dispositive; it is the single best guide to the meaning of a disputed term." 415 F.3d at 1315. The invention's objective – reducing the role of chance – does not necessitate revealing the constructed game field of the game to be played, but merely revealing an otherwise unknown system-generated attribute of the game to be played. [*See* Dkt. 74, at 28-30; Crevelt Dec. ¶ 109]. Thus, the intrinsic evidence warrants POM's construction. PA Coin's construction, on the other hand, would improperly eliminate disclosed embodiments of the preview screen that do not necessitate a completely constructed game field. [223 Pat., 11:48-49 (emphasis added); *id.*, 11:14-26].

The court's analysis in *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, is instructive. 429 F.3d 1364, 1373 (Fed. Cir. 2005). There, where a patent's specification contained the statement "saccharides (i.e., sugars)," a party argued on appeal that "sugars" was the proper construction of "saccharides". *Id.* Rejecting the argument, the Federal Circuit stated that the "*i.e.*" argument "ignores the fact that

---

[10] Notably, during the deposition of Dwight Crevelt regarding the different preview embodiments, PA Coin's counsel did not refer Mr. Crevelt to the fourth, fifth or sixth embodiments of the preview screen that he identified in his report. [*See* Crevelt Dec., ¶¶106-108]. Therefore, Mr. Crevelt was never shown this key patent language (223 Pat., 11:43-49). [*See* Crevelt Dec., ¶ 108 (citing 11:43-49)].

the [POSITA] is deemed to have read the claim term in the context of <u>the entire patent</u>." *Id*. (emphasis added). Rejecting the construction of "sugars" because it would exclude one of the inventor's embodiments, the court noted that "[a] claim construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'" *Id*. at 1374 (internal quotations omitted).

PA Coin asserts that the prosecution history reveals the patentee specially defined "actual game to be played" as "the game field constructed." [Dkt. 72, at 31]. PA Coin is incorrect for two reasons.

<u>First</u>, consistent with *Pfizer*, the use of "*i.e.*" is not lexicographic where, as here, the resulting construction would exclude disclosed embodiments of the patented preview screen from the claim's scope. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012) ("*i.e.*" was not definitional where a contrary holding would result in eliminating embodiments described in the specification); *see also Toshiba Corp.*, 681 F.3d at 1370-71 (in context, "*i.e.*" did not indicate lexicography or clear disavowal of claim scope); *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355 (Fed. Cir. 2014) (same).

<u>Second</u>, PA Coin's own authorities state that "[a] patent's specification and prosecution history "may reveal a special definition <u>given to a claim term</u> by the patentee." [Dkt. 72, at 30 (citing cases; emphasis added)].  Here, when stating "the actual game to be played (*i.e., the game field constructed in the first recited step*)",

19

the patentee was explaining the newly-added claim term "the game field on the touch screen display."  The patentee was not explaining, much less defining, the "actual game to be played"; indeed, at the time "the game field …" was added, "actual game to be played" was not even a claim term. Rather, the patentee explained that the newly-added "game field" language represented the game field of an actual game to be played (as opposed to displaying a previously-played game). *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (statements "amenable to multiple reasonable interpretations . . . cannot be deemed clear and unmistakable"). The patent specification sets forth other uses of "*i.e.*," in an explanatory rather than strictly definitional manner. [*See, e.g.*, 223 Pat., 4:59-60, 6:56-58, 7:11-16, 7:35-38].

The 223 Patent is explicitly clear that a game to be played can, in some embodiments, refer to a game that is previewed by a game results screen that can show, for example, a winning or non-winning combination of a game to be played, even though the player cannot see the game field in advance. Therefore, POM's construction, which does not eliminate disclosed embodiments, is correct.  The Court should not limit a "game to be played" to the narrower "constructed field of a game to be played" language.

Dated:  August 13, 2020                    Respectfully submitted,

                                                              */s/ Steven G. Hill*
                                                              Steven G. Hill, GA Bar No. 354658

*Admitted pro hac vice*
John L. North, GA Bar No. 545580
*Admitted pro hac vice*
Martha L. Decker, GA Bar No. 420867
*Admitted pro hac vice*
HILL, KERTSCHER, & WHARTON, LLP
3350 Riverwood Parkway
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Fax: (770) 953-1358
sgh@hkw-law.com
jln@hkw-law.com
md@hkw-law.com

-   **and -**

**KLEINBARD LLC**

Matthew H. Haverstick (PA ID No. 85072)
Eric J. Schreiner (PA ID No. 76721)
Paul G. Gagne (PA ID No. 42009)
Shohin H. Vance (PA ID No. 323551)
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-2000
Fax: (215) 568-0140
mhaverstick@kleinbard.com
eschreiner@kleinbard.com
pgagne@kleinbard.com
svance@kleinbard.com

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

21