# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC, | |
| Plaintiffs, | CIVIL ACTION NO: 3:19-cv-01470-JPW |
| v. | |
| PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC | Honorable Jennifer P. Wilson |
| Defendants. | |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren Hsu-Hoffman (admitted *pro hac vice*)
Morgan Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.843.4000
Fax: 650.843.4001
ahren.hsu-hoffman@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  August 13, 2020

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................1

II.   DISPUTED CLAIM TERMS FOR CONSTRUCTION.............................2

    A.    "game processor" .......................................................................2

        1.    The term is indefinite. ..............................................9

        2.    Alternatively, the Court should adopt Defendants'
            alternative construction...........................................10

    B.    "winning combination" ...............................................................11

    C.    "[determining/determine/determined] at least one winning
       combination for each play of the game" .............................................12

    D.    "test[ing] the game field prior to displaying the game to the
       player to ensure that a winning combination more valuable than
       the determined winning combination is not generated
       inadvertently in completing the field"................................................17

        1.    Plaintiffs do not adequately support their proposed
            construction...........................................................17

        2.    Plaintiffs' other criticisms are meritless. ................................23

    E.    "automatically display[ing] an actual game to be played on the
       touch screen game display to a player prior to initiating
       activation of game play" .................................................................25

    F.    "actual game to be played"...........................................................26

    G.    "program instructions" ................................................................34

III.  CONCLUSION.................................................................................36

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ADE Corp. v. KLA-Tencor Corp.*,
   252 F. Supp. 2d 40 (D. Del. 2003)..................................................................16

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003) ............................................................................8

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   1:10-cv-910, 2018 WL 1699429 (E.D. Va. Apr. 6, 2018) ................................35

*Apple Inc. v. Andrea Elecs. Corp.*,
   949 F.3d 697 (Fed. Cir. 2020) ..........................................................................26

*Arendi SARL v. LG Elecs., Inc.*,
   No. 12-1595-LPS, 2019 WL 3891150 (D. Del. Aug. 19, 2019) .......................36

*BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*,
   519 Fed. App'x. 1008 (Fed. Cir. 2013) ........................................................7, 21

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
   677 F.3d 1361 (Fed. Cir. 2012) .........................................................................23

*Dow Chem. Co. v. United States*,
   226 F.3d 1334 (Fed. Cir. 2000) ...................................................................31, 33

*Ex parte Lakkala*,
   Appeal 2011-001526, 2013 WL 1341108 (P.T.A.B. Mar. 11, 2013) .................5

*Finjan, Inc. v. Proofpoint, Inc.*,
   13-cv-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015).......................7

*Global Equity (SA) Pty. Mgmt. Ltd. v. Expedia, Inc.*,
   No. 2:16-cv-95, 2016 WL 7416132 (E.D. Tex. Dec. 22, 2016)........................35

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) .........................................................................22

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) ...........................................................................8

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
    450 F.3d 1350 (Fed. Cir. 2006) .........................................................................28

*Konami Gaming, Inc. v. High 5 Games, LLC*,
    No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 22, 2018) .......................8

*Odyssey Wireless, Inc. v. Apple Inc.*,
    No. 15-CV-1735-H, 2016 WL 3055900 (S.D. Cal. Mar. 30, 2016)....................4

*Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*,
    No. 16-CV-05251, 2017 WL 4410174 (N.D. Cal. Oct. 4, 2017) ...................7, 8

*Realtime Adaptive Streaming LLC v. Adobe Sys.*,
    No. CV 18-9344-GW, 2019 U.S. Dist. LEXIS 125180
    (C.D. Cal. July 25, 2019) ....................................................................................4

*Rovi Guides, Inc. v. Comcast Corp.*,
    16-CV-9278 (JPO), 2017 WL 3447989 (S.D.N.Y. Aug. 10, 2017)....................9

*Sinorghem Co., Shandong v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007) ...............................................................6, 13, 21

*St. Isidore Research, LLC v. Comerica Inc.*,
    2:15-CV-1390-JRG, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016)..............4, 7

*Symantec Corp. v. Computer Assocs. Int'l., Inc.*,
    522 F.3d 1279 (Fed. Cir. 2008) ..........................................................................6

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008) ........................................................................13

STATUTES

35 U.S.C. § 112, ¶ 6 ...................................................................................9, 34, 36

## I.    INTRODUCTION

Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") submit this responsive brief regarding claim construction of disputed terms of U.S. Patent No. 7,736,223 (the "'223 patent").

In their opening brief (Dkt. 74), plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs") advance constructions that are unsupported by the intrinsic record and that do not comport with applicable legal principles.  Without support from the intrinsic record, Plaintiffs instead rely on the declaration of a purported expert, Dwight Crevelt.

However, expert opinion is entitled to much less weight than the intrinsic record.  *See* Dkt. 72 at 5.  Plaintiffs' "expert" declaration is especially unhelpful here because it does not identify the "accepted meaning in the field" of claim terms or provide concrete evidence for accepted meanings as required under controlling law. Plaintiffs' "expert" cherry-picks portions of disputed limitations while ignoring other claim language that contradicts his conclusions and Plaintiffs' arguments. Further, the "expert" opinion does not reflect the understanding of a person of ordinary skill in the art ("POSITA") as discussed in the declaration of expert Stacy Friedman ("Friedman Decl.") (Ex. 2).

The Court should reject Plaintiffs' efforts to ignore the intrinsic record and to transform claims through "expert" declaration, and instead adopt Defendants' proposed constructions.

## II.    DISPUTED CLAIM TERMS FOR CONSTRUCTION

### A.    "game processor"

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| game processor | "a CPU or microprocessor with input/output circuitry that executes program instructions to generate a game."<br><br>Not a means-plus-function term. | This is a means plus function term without corresponding structure and is indefinite.<br><br>Alternatively, "a conventional CPU or microprocessor processor that executes program instructions to generate a game." |

Plaintiffs gloss over the lack of intrinsic evidence to support their contention that "game processor" is not an indefinite means-plus-function term, and instead rely on an "expert" declaration and distortion of case law. This fails to demonstrate claims reciting "game processor" disclose sufficient structure; Plaintiffs do not identify sufficient structure in the claims to avoid means-plus-function treatment.

The plain language of claims 13-19, 23-25, 44, and 64[1] shows that "game processor" is a means for carrying out claimed functions—*i.e.*, constructing a field,

_____

[1] The charts in Plaintiffs' opening brief setting forth competing constructions misleadingly suggest that the disputed claim terms appear only in claims 44 and 51.

determining at least one winning combination for each play of the game, testing the game field, and displaying an outcome. As Plaintiffs acknowledge, the absence of the word "means" merely creates a presumption against means-plus-function treatment that may be overcome. This presumption is overcome at least because the term "game processor" is a generic placeholder for a non-descript device that performs the claimed functions—a so-called "nonce word."

To try to avoid application of means-plus-function treatment, Plaintiffs contend—without citation to a single line of the '223 patent—that "game processor" is the "name for structure." But Plaintiffs and their expert are all over the map as to what that structure actually is.

First, Plaintiffs argue that the word "processor" cannot be a nonce word under applicable case law. But while they try to distance themselves from the *Williamson* decision because the Federal Circuit did not specifically identify "processor" in a list of representative nonce words, Plaintiffs ignore that the list was not exclusive or exhaustive. Plaintiffs cite to various cases in which "processor" was deemed to connote structure in patents there at issue, but they ignore numerous cases in which

---

However, as set forth in Dkt. 71-2, each of the disputed terms appear in claims besides claims 44 and 51. The Court is required to construe the disputed terms in the context of all claims in which they appear.

courts held processor to be a "nonce" word due to insufficient structural disclosure. *See* Dkt. 72 at 10 (collecting cases).[2]

Plaintiffs attempt to side-step the patent's lack of structural disclosure by arguing that "processor" is synonymous with "circuit." *See* Dkt. 74 at 8. But none of these cases found that "processor"—when followed by purely functional language as in the '223 patent's claims—is synonymous with a "circuit" and thus outside the purview of means-plus-function treatment. *See Realtime Adaptive Streaming LLC v. Adobe Sys.*, No. CV 18-9344-GW, 2019 U.S. Dist. LEXIS 125180, at *46-47 (C.D. Cal. July 25, 2019) (relying on unrebutted evidence[3] that POSITA would understand "processor" to connote specific structure—CPU comprising instruction control unit and arithmetic unit); *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-CV-1735-H (RBB), 2016 WL 3055900, at *11 (S.D. Cal. Mar. 30, 2016) (finding claim language "sufficiently provides the objectives and operations of the claimed

---

[2] The *St. Isidore* case cited by Plaintiffs held that "processor configured to" was a means-plus-function term due to insufficient structural disclosure. *St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG, 2016 WL 4988246, at *14-15 (E.D. Tex. Sept. 19, 2016) (claim lacks sufficient structure because it "does not describe how the processors interact with each other or with other limitations in the claim to achieve their objectives").

[3] Here, Plaintiffs' evidence is rebutted. A POSITA would not understand "game processor" in the '223 patent claims to connote a specific structure of circuitry that is carrying out the claimed functions. *See* Friedman Decl., ¶¶ 76-84.

processors" such that processors had sufficient structure). There is no similar disclosure in the '223 patent claims.

      Unable to convincingly argue that "processor" is not a nonce word as a matter of law, Plaintiffs then point to a variety of extrinsic evidence sources to try to convince the Court that a "processor" and "game processor" are terms of art. *See* Dkt. 72 at 8-9. Plaintiffs' arguments fail because:

- Plaintiffs are inconsistent in describing what purported structure is encompassed by "game processor," Friedman Decl., ¶¶ 76-83, which suggests there is no accepted meaning of "game processor."

- Plaintiffs point to a single cherry-picked dictionary entry referring to "processor" and make the unsupported argument that "game processor" is a subclass of the referenced term. *See* Dkt. 74 at 8. Relying on other dictionaries that define "processor," however, the PTAB has concluded that that a POSITA would not recognize "processor" as the name of a sufficiently definite structure.[4] Even Plaintiffs' supposed "expert" was unable to confirm that a CPU and/or

---

[4] *Ex parte Lakkala*, Appeal 2011-001526, 2013 WL 1341108 (P.T.A.B. Mar. 11, 2013) ("Based on our review of dictionary definitions, we conclude that a [POSITA] would not recognize 'processor' as" "sufficiently definite structure for performing" "functions recited." "Rather, a [POSITA] would recognize the term 'processor' to mean a general purpose computer, a central processing unit . . . or a program that translates another program into a form acceptable by the computer being used.").

microprocessor were within the purported definitions of "processor."  D. Crevelt Deposition Transcript Excerpt (Ex. 3) at 166:7-169:21.

- U.S. Patent No. 5,882,258 fails to characterize game processor as a subclass of "processor" or to demonstrate what a POSITA would understand "game processor" to mean.  The '258 patent does what the '223 patent does not— demonstrates the named inventors acted as their own lexicographers and provided specific meaning for "game processor."  *See* '258 patent, Dkt. 74-3 (Ex. C), at Fig. 1A (diagram specifying components and connections of claimed "game processor" including Microprocessor, RAM, ROM, CLOCK, and I/O).  That Plaintiffs have proposed a definition of "game processor" that differs from the definition in the patent they cite confirms the lack of agreement on whether "processor" connotes particular structures.

- Plaintiffs' "expert" fails to point to anything in the intrinsic record describing game processor structure (circuitry or otherwise), describing that game processor is a subclass of processor, or identifying any accepted meaning of "game processor" supported by requisite concrete evidence.  *See Symantec Corp. v. Computer Assocs. Int'l., Inc.*, 522 F.3d 1279, 1290-91 (Fed. Cir. 2008).  In essence, Plaintiffs' expert just provides his own interpretation of "game processor," which is entitled to little or no weight at claim construction.  *See Sinorghem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1137 n.3 (Fed.

Cir. 2007); *see also BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, 519 Fed. App'x. 1008, 1016 (Fed. Cir. 2013) ("[E]xpert testimony inconsistent with the intrinsic record has little if any probative value.").

Next, Plaintiffs point to various cases to support the notion that the claims of the '223 patent somehow recite "appropriate objective, context and componentry." *See* Dkt. 74 at 9-10 (citing cases). But those cases involved claims that "recited *how* processor terms were connected with other claim limitations and those connections were described in the patents." *See St. Isidore*, 2016 WL 4988246, at *15; *see also Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 7770208, *17 (N.D. Cal. Dec. 3, 2015) (finding sufficient structure where claim described *how* "content processor" interacts with transmitter and receiver and specification identified "where the component is located" and included diagrams illustrating same).[5] In *Quanergy*, "processor" was found to be a specific class of structures not because declarant deemed it so (without support) as Mr. Crevelt does, but because the patent at issue there did what the '223 patent does not—(1) include claim language describing how the "processor" interacts with other components (*e.g.*, in signal communication with specific detectors and emitters) and (2) provide structural information about the "processor" (circuits and other connected hardware

---

[5] Unless otherwise stated all emphasis is added.

components).  *Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*, No. 16-CV-05251-EJD, 2017 WL 4410174, at *19 (N.D. Cal. Oct. 4, 2017).

The '223 patent claims are silent as to how each of the functions purportedly performed by the "game processor" interrelates with other structural components. The claims fail to connect the game processor to the "game terminal," and no functions other than "automatically displaying" even reference the "touch screen game display."  Thus, the '223 patent is akin to other patents where a claimed processor was subject to means-plus-function treatment.  *See, e.g.*, *Konami Gaming, Inc. v. High 5 Games, LLC*, Case No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120, at *14-15 (D. Nev. Feb. 22, 2018).

With no structure described in the claims and no valid evidence that "game processor" is generally accepted to have the structure Plaintiffs claim, Plaintiffs recast the steps of the claims into a high-level flow chart and assert that the claimed functions themselves provide algorithmic structure.  *See* Dkt. 74 at 11-12.  However, the Federal Circuit has held that mere recitation of steps in the claims is not an algorithm sufficient for structure where the "steps" disclosed simply illustrate functions, not detail how a structure is used to preforms those functions.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 & n.10 (Fed. Cir. 2011) (affirming indefiniteness finding where claim did not disclose sufficient structure for processor performing steps); *Altiris, Inc. v. Symantec Corp.*, 318 F.3d

1363, 1376 (Fed. Cir. 2003) (term subject to means-plus-function treatment where claim recited steps, but "g[a]ve little indication of the particular structure used"). Here, one reading the claims is left to figure out how the "game processor" is configured to carry out the claimed functions. Friedman Decl., ¶¶ 76-84.

Even if the Court determines game processor has the structure sought by Plaintiffs, the term would still invoke 35 U.S.C. § 112, ¶ 6 because the claimed functions cannot be performed by that structure. *See Rovi Guides, Inc. v. Comcast Corp.*, 16-CV-9278, 2017 WL 3447989, at *22 (S.D.N.Y. Aug. 10, 2017); Friedman Decl., ¶ 84.

In sum, Plaintiffs cannot point to anything that precludes "game processor" from being a nonce word as a matter of law. Nor can they point to any structure in the claims at issue that removes them from means-plus-function treatment. The Court should resist Plaintiffs' invitation to find such structure in inconsistent, self-serving, and rebutted extrinsic evidence, and should find that claims reciting "game processor" invoke § 112, ¶ 6.

### 1. The term is indefinite.

Plaintiffs do not dispute that if "game processor" is subject to means-plus-function treatment, Defendants' recital of applicable functions is correct. Nor do Plaintiffs identify structure in the specification that corresponds to the claimed

functions. Thus, if the Court agrees with Defendants that claims reciting "game processor" invoke § 112, ¶ 6, it should find the claims indefinite.

###    2.    Alternatively, the Court should adopt Defendants' alternative construction.

Should the Court hold that "game processor" is not a means-plus-function term, it should adopt Defendants' alternative construction: a "conventional CPU or microprocessor processor that executes program instructions to generate a game."

Plaintiffs complain that Defendants' construction includes the word "conventional." However, nothing in the patent describes the processor as anything but conventional. Use of the modifier therefore helps the fact finder understand that the processor is not claimed to have specific, technologically advanced features.

Plaintiffs further complain that Defendants' construction does not reference "input/output circuitry." Dkt. 74 at 14. But neither does the intrinsic record. Plaintiffs' self-serving expert declaration does not alter this fact. Given that neither the claims nor the specification use "input/output circuitry" language, the Court's construction should not either. *See* Friedman Decl., ¶ 83.

### B.    "winning combination"

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| winning combination | "array of symbols yielding a successful outcome or corresponding to a prize" | "array of game symbols in the game field yielding a successful outcome" |

Plaintiffs concede that "'winning combination' refers to the array of *game symbols . . . in the game field* yielding a successful outcome." Dkt. 74 at 15. Thus, the Court's construction should incorporate this same language into the construction of "winning combination," and should begin and end with this agreed-upon language.

Plaintiffs insist the Court add "or corresponding to a prize" to the construction. But doing so would inject ambiguity by suggesting that "winning combination" could mean "array of symbols corresponding to a prize." This is inconsistent with usage of the term in the intrinsic record. Moreover, to include "prize" verbiage would defy common sense because a "winning combination" is not the same thing as a "prize." An example illustrates the point: a player playing tic-tac-toe who places three "x"s in a row makes a winning combination, but whether she gets a prize is a separate issue.

Ignoring this reality, Plaintiffs assert adding "or corresponding to a prize" would "aid the factfinder." *See* Dkt. 74 at 15. However, including "prize" verbiage would not make the term's meaning more intelligible. Instead, it would create

11

confusion and improperly suggest to a jury that "winning combination" and "prize" are the same thing when they are not.  *See* Dkt. 72 at 15-16; *see also infra* at II.D.

In short, Plaintiffs' proposed injection of "or corresponding to the prize" into the construction of "winning combination" is unsupported by the intrinsic record and would cause jury confusion and improper re-writing of claims.  Thus, the Court should adopt Defendants' proposed construction.

**C.    "[determining/determine/determined] at least one winning combination for each play of the game"**

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| [determining/ determine/ determined] at least one winning combination for each play of the game | "establish[ing] or ascertain[ing] at least one array of symbols yielding a successful outcome or corresponding to a prize for each game to be played" | "[guaranteeing/guarantee/ guaranteed] at least one winning combination that may be formed for each game to be played" |

The Court's task is neither to independently construe the word "determining" every place it is used in the claims nor construe the phrase "determine a winning combination" as a stand-alone phrase.  Rather, the parties' dispute is over what the entire phrase of "determin[ing] *at least one* winning combination *for each play of the game*" means when it is recited at a very specific step of each the claims—*i.e.*, before a game field is tested, before display of the game to a player, and before the player activates game play.  The Court should construe this term as Defendants'

propose: guaranteeing at least one winning combination that may be formed for each game to be played.  *See* Dkt. 72 at 17-18.

Plaintiffs incorrectly assert that the Court must broadly construe the phrase to encompass three different and distinct aspects of the '223 specification: (1) establishing an "award table," (2) "field construction,"[6] and (3) "post-game determination."  But nothing in the intrinsic record suggests all three aspects are encompassed by the term.  Merely because the specification references an award table or post-game determination does not compel the Court to construe the specific "determining" step to include these aspects.  *See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.") (citations omitted); *see also Shandong*, 511 F.3d at 1138 ("[C]laims [can] exclude embodiments where those embodiments are inconsistent with unambiguous language in the patent's specification or prosecution history.").

---

[6] Plaintiffs admit that "determining at least one winning combination for each play of the game" includes "establishing the winning combinations *before* showing the newly-constructed game field to the player."  *See* Dkt. 74 at 14.  They admit this occurs when a game system chooses a winning line of symbols before presenting a game field to a player that, with correct placement of a wild symbol, will result in the winning line.  *Id.* at 16-17 (section entitled "Field Construction").  Thus, Plaintiffs agree that the "determining" step is met when a game system picks a winning combination of symbols that the player can actually form on a game field during an actual game—precisely what Defendants' construction captures.

Further, the intrinsic record does not support that the disputed phrase encompasses the establishing of an "award table," as Plaintiffs suggest.[7]  Nothing in the intrinsic record demonstrates that the "determining" step—or any other aspect of the claims—captures an award table like the one described at column 5 of the patent. That table does not reflect the "determining of *at least one* winning combination for *each play of the game*"; rather, it exhaustively lists *all* winning combinations that may *or may not* occur in a given game.  Creation of, or reference to, such a table does not determine anything specific to "each play of the game."

Indeed, Plaintiffs' own "expert" admitted that a pay table is not the part of the invention that determines what the winning combination is.  *See* Ex. 3 at 88:19-89-6 ("[T]he pay table itself is not determining what the winning combination is.  That is done elsewhere.").  He further admitted that the pay table described in the '223 patent is established by a human being before the game is even played.  *Id.* at 86:14-87:9 ("This table is determined by a human to start with and program.  Any optional

---

[7] Plaintiffs state that the '223 patent references the "establishing [of a pay] table . . . in a *preferred* embodiment."  Dkt. 74 at 14.  The patent never actually references a "preferred" embodiment, and the only discussion of an award table is at column 5 and then, only with respect to a "version of the Tic-Tac-Fruit electronic game."  *See* '223 patent at 5:15-16.  But if the game described before column 5 is the "preferred embodiment," then that embodiment supports Defendants' construction because it describes a game that guarantees a winning combination may be formed for each game to be played.  *See id.* at 3:59-4:2, 4:6-8, 4:18-25; *see also* Dkt. 72 at 17.

selections are, again, determined by a human[.]"); *see also* Friedman Decl., ¶¶ 40-43.  This necessarily means that those claims that require that a *game processor* or *program instructions* perform the "determining" step (such as claims 44 and 51) do not encompass the establishing of the pay table described in the patent.[8]  *See id.*, ¶¶ 44-50.  As such, the Court should not construe the "displaying . . ." step broadly to encompass the establishment of an "award table."

Likewise, the Court should not construe the disputed phrase to include "post-game determination"—*i.e.*, the determination of a winning combination *after* a player has played the game.  Such a construction would be contrary to the explicit language of the claims, which require that the claimed "determining . . ." step occur *before* the player has played the game.  The steps must occur in a specific order as illustrated below:

game processor [is] configured for [*inter alia*]:

* * *

determining at least one winning combination for each play of the game;

 testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

---

[8] Plaintiffs' "expert" also admitted that he does *not* have an opinion on what "determining of at least one winning combination *for each play of the game*" means.  *See* Ex. 3 at 188:17-189:2.  This another reason why the Court should disregard his declaration.

* * *

'223 patent at claim 44 (highlighting added); *see* Dkt. 72 at 22-23.  As shown by the highlighting above, the claimed "determining at least one winning combination" step must precede the "testing" step, because the claimed testing step references a "determined winning combination," and the only possible antecedent basis for such "determined winning combination" is the combination referenced in the "determining" step.  The claims require that the "testing" step occur "prior to displaying the game to the player."  *See, e.g.*, '223 patent at 16:59-63.  The claims then require that the "automatically displaying [of the] actual game . . . to the player" occur "prior to initiating activation of game play."  *See, e.g.*, *id.* at 16:63-65; *see also* Friedman Decl., ¶¶ 52-53, 56.  Thus, because the claim requires the "determining step" to occur *before* the play of the game, the Court should not broadly construe the claim to capture embodiments referencing a determination of winning combination *after* game play.

Lastly, Plaintiffs malign Defendants' construction because it does not parrot one of the two ordinary meanings of "determine."  This is irrelevant, however, as the parties do not ask the Court to construe "determine" alone.  Rather, the Court must construe the entire phrase "determin[ing] at least one winning combination *for each play of the game*," and thus is not limited to using the definition of a single word within the disputed phrase.  *Cf. ADE Corp. v. KLA-Tencor Corp.*, 252 F. Supp.

2d 40, 58 (D. Del. 2003) ("The meaning of a phrase is often greater than the sum of the individual words.").

**D.**   **"test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field"**

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field | *testing the game field . . . to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently*: "examin[ing] or observ[ing] an array of symbols prior to displaying the game to the player to ensure that the anticipated prize corresponding to the array is not superseded by the award of a better prize"<br><br>*more valuable*: "Having a better outcome or a higher prize level"<br>*in completing the field*: "in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |

**1.**   **Plaintiffs do not adequately support their proposed construction.**

Plaintiffs fail to justify their proposed construction for the "testing" step.

<u>First</u>, Plaintiffs provide no explanation for why the Court should not construe the

term in its entirety.  This is perplexing given that there is no part of the claimed step for which Plaintiffs do not seek construction.

Second, Plaintiffs do not explain why their proposed construction substitutes "examin[ing] or observ[ing]" for the word "test[ing]," despite the different meanings of those words.  Such a nonsensical substitution is unwarranted.  *See* Dkt. 72 at 25.

Third, Plaintiffs' rationales for transforming the referenced "game field" to "an array of symbols" do not pass muster.  Plaintiffs' argument that the "game field" does not refer to the *constructed* game field is belied by the very portion of the prosecution history they cite—a January 26, 2010 Amendment where Plaintiffs say the patentee discussed the disputed "testing" claim limitation at paragraph 39 of the application.  *See* Dkt. 74 at 24.  There, patentee made clear that the game field that is tested is the *constructed* game field:

> Claims 6, 19, and 32 have been amended to clarify the testing step.  Support for the amendment is found at least in Paragraph 39.  Testing the constructed field before presenting the field to the player on the game display ensures that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field.  With

Dkt. 71-4 at POM000210.  Plaintiffs then argue that "[f]ield construction and testing can be overlapping processes prior to displaying a game field[9] on a screen."  Dkt. 74

---

[9] This argument undermines Plaintiffs' argument regarding "actual display of the game" term.  In their brief, Plaintiffs insist the claimed "actual game to be played"

at 25.  But the patent does not anywhere describe "overlapping" testing processes; at best, it describes the possibility of successive testing processes if field construction is repeated.  *See, e.g.*, '223 patent at 4:62-64.  Further, Plaintiffs' reasoning does not change that the claim explicitly specifies that what is tested is "*the* game field," not an array of symbols divorced from a game field.  The only possible antecedent basis for "*the* game field" is the field referenced in the previous "constructing" step.  Plaintiffs' construction would contradict the plain claim language, the prosecution history, and create a lack of antecedent basis.

Fourth, Plaintiffs insist that the phrase "prior to displaying *the game* to the player" is something other than "prior to displaying *the actual game* to be played to the player"—although they never say what that other something is.  But, the claim context supports that the game displayed to the player in the "testing" step is the same "actual game to be played" in the "automatically determining . . ." step, and there is nothing in the intrinsic record to suggest otherwise.  *See* Dkt. 72 at 22. Plaintiffs' sole justification for deviating from claim context is the assertion that "'the game' being tested may not actually be displayed to the player, depending on the results of the testing."  Dkt. 74 at 25 (emphasis in original).  This is misleading.

---

displayed to a player is something beyond the game field.  *See* Dkt. 74 at 30-31.  But, here, in describing a "testing" step that recites "displaying the *game* to the player," Plaintiffs themselves discuss the "displaying [of] a game field on a screen," reinforcing that a displayed game is, in fact, a displayed game field.

Construing the term as Defendants propose would not require that every tested game field be displayed to the player, as Plaintiffs suggest. It would simply capture what the plain claim language and intrinsic record support: that the game field ultimately presented to the player had previously been tested.

Fifth, Plaintiffs provide no legitimate reason for substituting "prize" for "winning combination" in the construction because, in fact, those two things are not the same. The ordinary meaning of "prize"[10] is a "thing given as a reward." *See* Dkt. 72-1 (Ex. 1) at 1350 (definition of "prize"). Nothing in the claims or intrinsic record suggests that the "winning combination" is itself given as a reward. *See* Friedman Decl., ¶¶ 59-61. Plaintiffs acknowledge as much when they label different portions of an award table as "winning combinations" and "corresponding prizes," respectively. Dkt. 74 at 16.

Faced with the fact that the "testing" step states "winning combinations" but not "prizes," Plaintiffs try to support their construction by pointing to a portion of the specification that neither references "testing" of a field nor "winning

---

[10] After insisting that the Court inject the concept of "prize" into the "testing" step, Plaintiffs claim—without any support—that "prize" means "successful outcome *or* prize." *See* Dkt. 74 at 20 n.4. This backdoor effort to construe the term fails because (1) it makes no sense to state that "prize" means the word itself *or* something else and (2) even Plaintiffs' proposed construction of "winning combination" confirms that a "successful outcome" is not necessarily the same thing as a "prize." *See id.* at 14 (proposing construction of "array of symbols yielding a successful outcome *or* corresponding to a prize").

combinations." *See id.* at 23 (citing to '223 patent at 6:25-33). Nothing in this portion of the patent indicates that applicant used "winning combination" and "prize" synonymously such that the Court should rewrite the "testing" step to remove reference to "winning combination." If anything, the prosecution history reinforces that the patentee intentionally described this step in terms of a "winning combination" and not "prize"—notwithstanding the disclosure of column 6, lines 25-33. *See* Dkt. 71-4 at POM000210 (after referencing paragraph 39 of application, patentee describes testing "ensures that a *winning combination* more valuable than the determined *winning combination* is not generated inadvertently").

With nothing in the intrinsic record to support the insertion of "prize" into the claimed "testing" step, Plaintiffs resort to extrinsic evidence—*i.e.*, the declaration of their purported expert. *See* Dkt. 74 at 23-24. But Plaintiffs' "expert" does not opine that any of the words recited in the "testing" step have some accepted meaning in the field. Rather, he provides his own interpretation of the "testing" step based on his own reading of the specification. The Court should accord his opinion no weight. *See, e.g.*, *BASF*, 519 Fed. App'x. at 1016; *Sinorghem*, 511 F.3d at 1137 n.3.

Sixth, Plaintiffs do not explain why the Court needs to construe "more valuable." They neither suggest that it has some specialized meaning to a POSITA nor that it has some unconventional meaning in the context of the claims. Without citation to any evidence, Plaintiffs posit that their construction is "true to the intrinsic

evidence." Dkt. 74 at 24 n.7. But, as there is no suggestion that a fact finder would not understand what "more valuable" means, the Court need not construe the term.

Seventh, Plaintiffs' arguments regarding the "in completing the field" portion of the "testing" step are also without merit. Plaintiffs point to the exemplary embodiment of Figure 8, and then assert that only their construction "works with the various disclosed embodiments where a game field is completed." *Id.* at 23. But Plaintiffs conveniently ignore that the Court must construe "in completing the field" in the context in which it appears. Here, "in completing the field" only appears in the claims as the final portion of the "testing" step; it is not a phrase that appears elsewhere in any other claims. The Court should not independently construe "in completing the field" to conform with exemplary embodiments for which no "testing" is described. *See Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("[D]ifferent claims are directed to and cover different disclosed embodiments. The patentee chooses the language and accordingly the scope of his claims.").

Figure 8 is such an exemplary embodiment: nothing in the specification describes it as testing a game field (or even "completing a field"). By contrast, the only embodiment that Plaintiffs or the patentee have pointed to as support for the "testing step" involve games where the player completes the winning combination during play of the game. *See* Dkt. 74 at 23 (citing to '223 patent at 6:25-33) and 24-

25 (citing to prosecution history reference to what Plaintiffs say is '223 patent at 6:19-33); '223 patent at 6:19-33 (describing game where "player must select the appropriate field element to replace with a wild symbol in an effort to obtain the highest value game outcome offered by the device"). As such, the Court should adopt Defendants' construction.

Further, the Court should not construe "in completing the field" as "making the field from the plurality of game symbols," as Plaintiffs propose. Doing so would mean that "completing" the field means the same thing as "construct[ing]" the field, a different term that separately appears earlier in each claim. "In the absence of any evidence to the contrary, [the Court] must presume that the use of these different terms in the claims connotes different meanings." *See Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012). As such, the Court cannot presume that "completing" the field means the same as constructing the field, as Plaintiffs suggest.[11]

### 2. Plaintiffs' other criticisms are meritless.

Plaintiffs are incorrect that Defendants' proposed construction limits claims reciting a "testing" step to games that use "wild symbols." Under Defendants' proposed construction—which does not refer to "wild symbols"—games not using

---

[11] Tellingly, not even Plaintiffs' "expert" has opined that "in completing the field" means what Plaintiffs assert. *See* Ex. 3 at 126:11-23.

wild symbols could still practice claims reciting the "testing" step (unless, like claim 1, the claim is expressly limited to games using wild symbols). For example, a "nudge" game, where a player can move a reel up or down after reels stop, could meet the "testing" limitation even without use of a wild symbol. *See, e.g.*, '223 patent at 11:56-60 (describing "nudge" game). Thus, Plaintiffs' claim differentiation argument at Dkt. 74 at 20-21 is misplaced.

Plaintiffs complain that Defendants' construction—by clarifying that the "completing the field" portion of the "testing" step happens when a player completes a winning combination during play of the game—reads out the embodiment at Figure 8, which Plaintiffs contend does not require player interaction to complete the game field. But nowhere does the '223 patent describe the Figure 8 embodiment as foreclosing player interaction to generate a winning combination in completing the field.[12] Further, even assuming *arguendo* that it did, the Figure 8 embodiment would not inform the Court's construction of what "completing the field" means in the context of the disputed "testing" step because there is no description of "testing" with respect to that embodiment. *See supra*, V.D.1.

---

[12] Lack of reference to a wild symbol does not foreclose that the embodiment disclosed of Figure 8 involves a player generating a winning combination in completing the field. *See* Friedman Decl., ¶ 55.

**E.** **"automatically display[ing] an actual game to be played on the touch screen game display to a player prior to initiating activation of game play"**

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| automatically display[ing] an actual game to be played on the touch screen game display to a player prior to initiating activation of game play | "programmatically instruct[ing] the terminal display on the touch screen the identification of the next game to the player, including showing the player an otherwise unknown system-generated attribute of the next game before the player commits to play the next game" | "automatically display[ing] an actual game to be played on the touch screen game display to the player before the player commits to play the displayed game" |

In their opening brief, Plaintiffs fail to explain why their proposed construction substitutes "programmatically instruct[ing] the terminal display on the touch screen" for "automatically display[ing] . . . on the touch screen game display." Likewise, Plaintiffs articulate no reason for why their construction involves the concept of a player committing to play a "next" game.  "Next game" is a term found in dependent claims, and refers to a game different from and in addition to the "actual game to be played," so it should not be incorporated into the construction of this term.  *See* Dkt. 72 at 33.

Plaintiffs' proposed construction of "actual game to be played" is unsupported for the reasons discussed in the next section.

### F.   "actual game to be played"

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| actual game to be played | "the identification of the next game, including at least an otherwise unknown system-generated attribute of the next game" | "the constructed game field of the game to be played" |

Plaintiffs advance a broad construction of this term untethered to the language of the patent and try to justify it by arguing that their construction is necessary to "capture[] the essence of *each* of inventor's disclosed embodiments." *See* Dkt. 74 at 30.  Plaintiffs' arguments fail for several reasons.

First, the Court is not obliged to construe a claim to capture all disclosed embodiments of a purported invention.[13]  *See* Dkt. 72 at 19-20 (citing cases); *see also Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 708 (Fed. Cir. 2020) ("[When] the patent describes multiple embodiments, every claim does not need to cover every embodiment.  This is particularly true [when] the plain language of . . . claim does not appear to cover that embodiment.'") (citation omitted).  Here, even Plaintiffs' "expert" admits that not all of the embodiments referenced in Plaintiffs' brief disclose the "actual game to be played."  *See* Ex. 3 at 189:3-196:6 (admitting that

---

[13] Plaintiffs recognize this fundamental precept of claim construction law.  For example, Plaintiffs assert that claim 1 of the '223 patent does not capture embodiments that can be implemented without the use of a wild symbol.  *See* Dkt. 74 at 20-22.

"third" embodiment referenced at paragraph 105 of declaration and column 11, lines 17-22 of the '223 patent displays preview of game outcome, which is different from displaying "actual game to be played").

Moreover, none of the "embodiments" referenced by Plaintiffs suggest that an "actual game" displayed to a player is something other than the constructed game field to be played. Rather, all "embodiments" are consistent with Defendants' proffered construction in that the actual *game* to be played involves display of the constructed *game field.* Specifically:

- For the so-called "first" embodiment, "[t]he displayed game field cannot contain a winning combination before play. *The field is presented* to the player on the game display *as a preview of the game*. . . ." '223 patent at 10:22-48.

- For the so-called "second" embodiment, "[p]rocessing begins . . . with the *construction of a field for the game display. . . . The field is then displayed* to the player on the game displayed. . . . *The game displayed* may contain a winning combination on a single or multiple lines. . . ." *Id.* at 11:61-12:20.

- The so-called "third" embodiment does not equate a displayed game with something other than the constructed game field. *Id.* at 11:14-26. If anything, the embodiment's reference to a display of "winning or non-winning combinations" reinforces that what is being displayed is a combination of

symbols. *Id.* at 11:17-20 ("In the context of the electronic game having an array of symbols as described herein, the game preview screen can be constructed and displayed without the need for a player to do anything other than to select 'Play.'. . . Such a preview screen could display a winning or a non-winning combination."). The patent consistently describes that this display of symbols occurs on a game field. *Id.* at 2:17-19 ("*The field* of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. . . . Each winning combination of symbols *on the field* could then be constructed and presented on the game display.").

- For the so-called "fifth" embodiment[14] depicted at FIG. 7, *id.* at 11:27-42, "the current *game* is previewed on the main portion of the display." *Id.* at 30-

_____

[14] Plaintiffs refer to a "fourth" embodiment that supposedly "could be to preview a specific combination to be played—but not the entire game field—for the user to see." Dkt. 74 at 28-29. The specification does not describe such an embodiment, leaving Plaintiffs with only the conclusory statement of their "expert" to support their conjecture as to what a fourth embodiment "could be." But the Court need not construe claims to encompass undescribed embodiments. *See Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354-55 (Fed. Cir. 2006) (claims need not "enlarge what is patented beyond what the inventor has described as the invention"). Moreover, a POSITA would not understand the '223 patent to encompass such an undescribed embodiment. *See* Friedman Decl., ¶ 74.

35.  FIG. 7 shows that the "game" previewed is the game field that has been constructed for the player to play:



FIG. 7

- For the so-called "sixth" embodiment, *id* at 11:43-60, the '223 patent describes that "one or more lines of symbols" are displayed and that the "displayed game could actually be the result which may or may not be a winning combination of symbols."  *Id.* at 44-49.  The patent makes clear that the game symbols are displayed on a game field, *id.* at 2:17-19, and nothing in this portion of the specification suggests that the actual game to be played is something other than the game field constructed for the player to play.

29

In sum, no "embodiment" involves displayed an "actual game to be played" that is something other than the *constructed game field* of the game to be played. *See* Friedman Decl., ¶¶ 69-70.  Still, Plaintiffs insist their generalized proposed construction captures "something unique about the next game to be played that the player otherwise would not know, so that the player makes the decision whether to play the next game based on information rather than happenstance."  Dkt. 74 at 29-30.  But a construction need not be so broad to capture this "something unique," because the patent is clear that the information on which a player bases her decision to play the game *is the game field* displayed to the player.  *See, e.g.,* '223 patent at 12:1-8 (describing FIG 8, which depicts the presentation of the "*field* on game display" and stating that "[t]he player can observe the *displayed game* for any length of time before deciding whether or not to play the displayed game in the decision step 804 . . . .").



From FIG. 8

Plaintiffs argue that Defendants' construction of the "actual game to be played" somehow reads out embodiments having a "next game results screen."[15]  *See* Dkt. 74 at 30.  Not so.  The reference to the "actual game to be played" in the independent claims cannot encompass a "next game results screen" because certain dependent claims add the display of a distinct "next" game as an additional limitation.  *See*, *e.g.*, claims 39, 46, 53, 59, 65 & 71.  Indeed, if the "actual game to be played" captured the display of "next" games, the limitations of the dependent claims would be redundant.  *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) (independent claims given broader scope than dependent claim to avoid redundancy).  By contrast, construing the "automatically displaying" term as Defendants propose would not read out any embodiments that display a "next" game along with the "actual game to be played."

Plaintiffs then assert that Defendants' construction incorrectly conflates "game" with "game field."  *See* Dkt. 74 at 30-31.  The applicant made this same

---

[15] Plaintiffs suggest that Defendants' construction is inconsistent with an exemplary embodiment showing a winning or non-winning combination of symbols.  Dkt. 74 at 30.  But Defendants' proposed construction says nothing about requiring a display of winning or non-winning symbols.  As the applicant stated during the prosecution of the patent (Dkt. 72 at 30-31), Defendants' construction states that the game displayed is the constructed game field—however the symbols on it are combined.  There can be no dispute that the combination of symbols presented to the player to be played is on a game field.

conflation throughout the specification and explicitly defined "actual game to be played" with a constructed game field during prosecution. *See* Dkt. 72 at 30-33.

Plaintiffs next assert that dependent claims 45, 46, 52, and 53 undermine Defendants' proposed construction. But the opposite is true. If anything, these dependent claims reinforce that applicants equated the *displayed actual game* with a *displayed game field.* For example, dependent claim 45 includes the limitation of "*displaying an additional game field* simultaneously on the game display in proximity to the displayed game.*" But for there to be an *additional* game field displayed, there must be an antecedent basis in independent claim 44 for a *first* game field displayed. The only possible antecedent basis for what is *displayed* in claim 45 is what is *displayed* in claim 44: "the actual game to be played." Thus, the context of the claim supports that the "automatically displaying of the *actual game to be played . . .*" necessarily includes the display of a (*first*) game field. Indeed, if it did not, the reference in claim 45 to the display of an *additional* game field would be nonsensical. The same is true for dependent claim 52. And claims 46 and 53 do not refer to the "actual game to be played"—either explicitly or through antecedent basis; they instead refer to the "next" game, which, as discussed above, is different from the "actual game to be played."

Lastly, the Court should disregard Plaintiffs' myopic interpretation of the prosecution history. Plaintiffs make much of the fact that, before allowance, the

examiner amended the language of the claims to change the phrase "automatically displaying the game field" to "automatically displaying an actual game to be played." But nothing in the prosecution history (*e.g.*, the examiner' interview summary, the notice of allowability, or the examiner's amendment) indicates the examiner—or the applicant—understood those phrases to have different meanings. *See* Dkt. 71-4 at POM000235-248. The examiner only changed the language after the applicant acted as its own lexicographer and defined "actual game to be played" to be the constructed game field of the first step of each independent claim (for which the examiner did *not* substantively change the language). *See* Jan. 26, 2010 Amendment (Dkt. 71-4) at POM000208 (equating game field constructed in first step of independent claims with "actual game to be played"); *see also id.* ("[I]n Applicant's invention, *the game field to be played* is *automatically displayed* prior to the player's deciding to initiate play."). If anything, the prosecution history suggests that the examiner made the language change *because* of the applicant's representations, not despite them.

### G.    "program instructions"

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| program instructions | "conventional commands that can be executed by a computer" | (1) Indefinite<br><br>This is a means-plus-function term.<br><br>**Function(s)**:    the functions recited at 14:66-15:21; in claim 51, the functions recited at 17:27-45; in claim 70, the functions cited at 19:37-20:20; and, for each dependent claim reciting this limitation, the additional functions recited therein.<br><br>**Structure**: None.<br><br>(2) Alternative: "conventional commands that can be executed by a computer" |

Claims that recite the term "program instructions" invoke 35 U.S.C. § 112, ¶ 6 because the term performs functions without any indicia of the structural nature of "program instructions." *See* '223 patent, claims 25-28, 30, 35, 36, 51, 52, 57, 70, 71, & 75.  Because the specification does not identify any structure corresponding to the claimed functions, the claims are indefinite.

Plaintiffs argue that the claims provide sufficient structure to avoid means-plus-function treatment.  Unable to overcome the plain claim language, Plaintiffs improperly conflate the recited "program instructions" with "computer code" based

34

solely on dictionary definitions and self-serving "expert" statements. However, nothing in the '223 patent equates "program instructions" with the separately recited "computer code," and the recited "computer code" is not what the claim says performs the various functions.

Further, the cases cited by Plaintiffs do not address whether "program instructions" convey sufficient structure; those cases addressed whether "computer code" conveyed sufficient structure in the particular patents at issue in those cases. Dkt. 74 at 34-35. And, even if "program instructions" were equated with "computer code," that alone does not mean that the claims recite sufficient structure to avoid treatment as a nonce word. *See Global Equity (SA) Pty. Mgmt. Ltd. v. Expedia, Inc.*, No. 2:16-cv-95, 2016 WL 7416132, at *29-30 (E.D. Tex. Dec. 22, 2016) (claims reciting "program code for" do not recited sufficient structure and means plus function treatment applies). Unlike the claims in the *AmDocs* case cited by Plaintiffs, the program instructions of claim 51 provide no information on how those program instructions operate nor do they even relate to one another in a way that could be viewed as algorithmic. *See* Friedman Decl., ¶¶ 85-92; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 1:10-cv-910, 2018 WL 1699429, at *17 (E.D. Va. Apr. 6, 2018) (claim "does not simply describe broadly phrased high-level functions. . . . [C]laim 1 describes the objectives of the 'computer code,' namely to 'receive[e],' and 'corrrelat[e]' network accounting records, and the desired output of the

'computer code' is to 'enhance the first network accounting record.'").  Plaintiffs argue that "program instructions" in the context of "computer code" is not a nonce word.  They are incorrect.  *See Arendi SARL v. LG Elecs., Inc.*, C.A. No. 12-1595-LPS, 2019 WL 3891150, at *12-13 (D. Del. Aug. 19, 2019) (holding that "computer readable medium including program instructions" was nonce word because patent fails to disclose structure explaining how function is performed).

As a fall back, Plaintiffs try to argue that the claim steps themselves are an algorithm that provides sufficient structure to avoid means-plus-function treatment.  But this argument fails for the same reasons it did with respect to "game processor." *See supra*, II.A.

Plaintiffs do not dispute that if "program instructions" is subject to means-plus-function treatment, Defendants' recital of applicable functions is incorrect.  Nor do Plaintiffs attempt to identify structure in the specification that corresponds to the claimed functions.  As such, if the Court agrees with Defendants' that claims reciting "program instructions" invoke § 112, ¶ 6, it should find the claims indefinite.

## III.    CONCLUSION

For the foregoing reasons, the Court should adopt Defendants' proposed constructions.

Dated:  August 13, 2020                Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren Hsu-Hoffman (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.843.4000
Fax: 650.843.4001
ahren.hsu-hoffman@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*