## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC<br><br>Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW<br><br><br>Honorable Jennifer P. Wilson |

### DEFENDANTS PENNSYLVANIA COIN, LLC AND PA COIN HOLDINGS, LLC'S COMMENTS ON PLAINTIFFS' TECHNOLOGY TUTORIAL

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Fax: 215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304
Telephone: 650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com

Attorneys for Defendants
*Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  August 13, 2020

Pursuant to paragraph 8 of the Case Management Order (Dkt. 50), defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") respectfully submit these comments to the technology tutorial submitted by plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs").

The Court's Case Management Order provides that "[t]he tutorial should focus on the technology in issue and should not be used for argument." *Id.*, ¶ 8. Plaintiffs' tutorial, however, provides argument supporting their claim construction positions. Plaintiffs' tutorial also includes statements that are factually inaccurate and contradicted by U.S. Patent No. 7,736,223 (the "'223 patent") and the testimony of their own expert, Mr. Dwight Crevelt.

The following portions of Plaintiffs' tutorial are the most objectionable:

**Slides 6 and 41**:  Plaintiffs' characterization of the purported goals addressed by the '223 patent are not supported by the patent itself and are factually inaccurate.  For example, on slide 6, Plaintiffs assert that the "goals" include "enhance skill," "reduce chance," and "handle computational complexities."  But the '223 patent does not explain that it is attempting to address any of these goals, much less declares that the purported invention solves any of them.  Rather, the '223 patent acknowledges that electronic skill-based games in which the outcome was dictated by "the person playing the game and not by predetermined odds or random chance"

were already well-known in the art.  *See* '223 patent at 1:23-33.  The '223 patent also fails to describe any "computational complexities" that the purported invention attempted to address.  This is because, at the time of the patent, there were no such complexities to overcome.  Plaintiffs' own expert admitted that "speed, memory size and video graphic capabilities were no longer significant limitations to game design in the 2000s."  Dkt. 74-1 (Crevelt Decl.) ¶ 57.

**Slide 8**:  Plaintiffs assert the "[s]ystem employs Prize Table to establish winning lines and corresponding prize(s) for each game."  This is argumentative and factually unsupported.  Indeed, with respect to the "determining at least one winning combination for each play of the game" claim limitation, Plaintiffs have argued that this step is performed by "establishing a table of successful outcomes or prizes" and that this occurs in a "preferred embodiment" of the patent.  Dkt. 74 at 14-16.  This point is disputed by Defendants and should not be the subject of a non-argumentative tutorial.

Plaintiffs' argument on slide 8 is also factually unsupported.  The patent discloses a Tic-Tac-Fruit award schedule in Table 1, but the patent never teaches that the award schedule is used by the gaming system to establish which winning lines and prizes will be available in any given game.  Rather, as shown in the patent, the award schedule is merely a reference guide that shows the prizes available for various winning combinations (*e.g.*, 2 cents for three cherries).  *See* '223 patent at

2

5:14-47.

**Slides 9 and 10**:  Plaintiffs assert "the system constructs a prize table" and that the patent discloses "constructing the prize table."  This is factually inaccurate. The patent does not teach that the gaming system constructs any prize table or even the award schedule shown in Table 1.  *See* '223 patent at 5:14-47.  The patent does not teach that a prize table or the Table 1 award schedule is ever used by the game software or even the so-called "game processor."  Plaintiffs' own "expert" admitted that the pay table described in the '223 patent is established by a human being before the game is even played.  *See* Ex. A, Excerpts of Transcript of Deposition of Dwight Crevelt at 86:14-87:9.

**Slide 17**:  Plaintiffs identify an alleged "embedded game processor," citing the patent at 4:36-64.  This is inaccurate and misleading because there is nothing in this section of the patent (or anywhere else in the patent) that refers to or describes an "embedded *game* processor."  Moreover, at deposition, Plaintiffs' own "expert" disagreed that the component circled in red was a "game processor."  Rather, in his opinion, the entire board (as shown in slide 17) would be the "game processor."  Ex. A, Crevelt Dep. Tr., at 172:3-7, 176:6-19.  The substance of Plaintiffs' slide 17 is unsupported and contradicted by the opinion of Plaintiffs' own expert.

**Slide 23**:  Citing and annotating col. 4, lines 56-64 of the patent, Plaintiffs assert that the "system confirms that there is no way to make 3 titaniums, spinners,

flips or bellows in a row" because "[u]nder the prize table, these are the only wins that would result in a higher prize than plums or lemons." These assertions are argumentative as they go far beyond the actual teachings of the patent. In particular, there is nothing in the patent disclosing that the gaming system "confirms that there is no way to make" a more valuable winning combination, much less that the prize table is used to make such a confirmation. The patent also never explains how the steps cited by Plaintiffs could result in the generation of a more valuable winning combination that would ever even need to be addressed by the system.

**Slide 24**: Plaintiffs assert that the patent teaches "no unanticipated prizes will be awarded." However, the patent section cited on this slide only teaches that "no other, more valuable prizes will inadvertently *be presented*." '223 patent at 6:29-30 (emphasis added). As such, this section only concerns what prizes are presented to the player prior to game play. It does not guarantee—as Plaintiffs' argumentative heading implies—that a player will not be able to win an unanticipated prize at another point in time, such as during game play by forming an unanticipated winning combination. Preventing that scenario from occurring is not discussed or taught in the patent.

**Slides 25-26, 41**: Plaintiffs suggest the purported invention "elevat[es] the level of skill." But according to the patent, the Tic-Tac-Fruit game is "derived from tic-tac-toe that uses player skill to solve a puzzle." The patent never describes how

4

Tic-Tac-Fruit "elevates" the level of skill over traditional tic-tac-toe.

Dated:  August 13, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Fax: 215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com

*Attorneys for Defendants*
*Pennsylvania Coin, LLC and PA Coin*
*Holdings, LLC*