

# Defendants' Claim Construction Presentation

**Savvy Dog Sys., LLC, et al. v. Pennsylvania Coin, LLC, et al.,**

*Civ. A. No. 3:19-cv-01470-JPW (M.D. Pa.)*

September 15, 2020

# Claim Terms At Issue

# Claim Terms At Issue

1. "winning combination"

2. "[determine/determining/determined] at least one winning combination for each play of the game"

3. "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field"

4. "automatically display[ing] an actual game to be played on the touch screen game display to a player prior to initiating activity of game play"

5. "actual game to be played"

6. "game processor"

7. "program instructions"

# Plaintiffs' Constructions Are Moving Targets

| Term | Plaintiffs' Original Construction | Plaintiffs' New Responsive Brief Constructions |
|---|---|---|
| "winning combination" | "array of symbols yielding a successful outcome or corresponding to a prize" | "array of **game** symbols yielding a successful outcome ~~or corresponding to,~~ **including the award of** a prize" |
| "[determining]" step | "establish[ing] or ascertain[ing] at least one array of symbols yielding a successful outcome or corresponding to a prize for each game to be played" | "establish[ing] or ascertain[ing] at least one ~~array of symbols yielding a successful outcome or corresponding to a prize~~ **winning combination, properly construed**, for each game to be played" |
| "testing" step | "examin[ing] or observ[ing] an array of symbols  prior to displaying the game to the player to ensure that the anticipated prize corresponding to the array is not superseded by the award of a better prize in making the field from the plurality of predetermined game symbols" | "~~examin[ing] or observ[ing] an array of symbols~~ **test[ing] the game field** prior to displaying the game to the player to ensure that the anticipated ~~prize~~ **outcome** corresponding to the ~~array~~ **winning combination, properly construed,** is not superseded by ~~the award of~~ a better ~~prize~~ **outcome, such as a higher prize level**, in making the field from the plurality of predetermined game symbols" |
| "automatically display[ing]" step | "programmatically instruct[ing] the terminal display  on the touch screen the identification of the next game to the player, including showing the player an otherwise unknown system-generated attribute of the next game before the player commits to play the next game" | "~~programmatically instruct[ing] the terminal display~~ **automatically display[ing] an actual game to be played, properly construed** on the touch screen **game display** ~~the identification of the next game~~ to the player~~, including showing the player an otherwise unknown system-generated attribute of the next game~~ before the player commits to play the next game" |
| "actual game to be played" | "the identification of the next game to be played, including at least an otherwise unknown system-generated attribute of the next game it" | "the ~~identification of the next~~ game **to be played**, including ~~at least~~ an otherwise unknown system-generated attribute of the ~~next game~~ **it**" |



# Plaintiffs' Improper Reliance On Their "Expert" To Advance Constructions Not Supported By Intrinsic Record

Expert declaration unhelpful because he does not identify "the accepted meaning in the field" of any of the claim terms, or provide any concrete evidence for such accepted meanings.

*Symantec Corp. v. Computer Assocs. Int'l., Inc.,* 522 F.3d 1279, 1290-91 (Fed. Cir. 2008).

Court should accord little or no weight to expert testimony about the meaning of specification or terms where the expert failed to present evidence of the generally accepted meaning of those terms to persons of ordinary skill in the art, and does nothing more than provide his own interpretation of disputed claim terms based on his own reading of the specification.

*Sinorghem Co., Shandong v. Int'l Trade Comm'n,* 511 F.3d 1132, 1137 n.3  (Fed. Cir. 2007).

"In any event, extrinsic evidence cannot vary the terms of the claims or otherwise contradict the intrinsic record. . . . Accordingly, expert testimony inconsistent with the intrinsic record has little if any probative value."

*BASF Agro B.V. v. Makhteshim Agan of North America, Inc.,* 519 Fed. App'x. 1008, 1016 (Fed. Cir. 2013).

## "Winning Combination"

*Claims 1, 4, 6, 7, 10, 11, 13, 16, 19-22, 28, 30, 32, 33, 37, 44, 51, 58, 64, 70*

# "Winning Combination" Used Throughout Claims

**13.** An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal with a plurality of options selectable by a player, the game processor configured for:

constructing a game field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one **winning combination** for each play of the game but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a **winning combination** more valuable than the determined **winning combination** is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and determining each **winning combination** of symbols that is formed by such selection; and

displaying each **winning combination** of symbols on the touch screen display.

# "Winning Combination" Used Throughout Claims

**44.** An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one **winning combination** for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined **winning combination** is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# "Winning Combination"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "array of **game** symbols yielding a successful outcome ~~or corresponding to~~**, including the award of** a prize" | "array of game symbols in the game field ~~yielding a successful outcome~~ **constituting a win**" |

# "Winning Combination"

| PLAINTIFFS' **NEW** RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "array of **game** symbols yielding a successful outcome ~~or corresponding to~~**, including the award of** a prize" | "array of game symbols in the game field ~~yielding a successful outcome~~ **constituting a win**" |

- Are game symbols in the game field?

10

# Plaintiffs Have Admitted That "Winning Combination" Is Array Of Symbols *In The Game Field*



According to the intrinsic evidence, ==a "winning combination" refers to the array of game symbols (*e.g.*, 3 cherries in a row) **in the game field**== yielding a successful outcome, and POM adds "corresponding to a prize" to its construction to aid the factfinder in more fully understanding the nature of a "winning combination."

*Plaintiffs' Opening Brief (Dkt. 74) at 15*

# Context Of Each Independent Claim Supports "Winning Combination" As Symbols *In The Game Field*

**13.** An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal with a plurality of options selectable by a player, the game processor configured for:

**constructing a game field** having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols, **wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game** but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than **the determined winning combination is not generated inadvertently in completing the field**;

automatically displaying an actual game to be played on the touch screen game display prior to initiating activation of game play;

receiving the **player's selection of a field element** as a location for a wild symbol and determining each **winning combination of symbols that is formed by such selection**; and

displaying each winning combination of symbols on the touch screen display.

12

# Specification Supports "Winning Combination" As Symbols *In The Game Field*



(57)                          **ABSTRACT**

An electronic gaming method and system with a game preview display. A field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a **field element** to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines and displays each **winning combination** of symbols that is formed by such wild symbol location selection. A new game field can then be constructed and previewed on the game display.

*'223 Patent at Abstract*

13

# Plaintiffs Are Wrong: "Winning Lines" Are *In The Game Field*



The Tic-Tac-Fruit electronic game does not pick random fields until testing indicates that one is acceptable. Instead, the field is constructed to meet certain criteria. The steps involved in constructing a field in this electronic game are as follows:

1. chose the number of winning lines (i.e., 1, 2, 3, 4);

2. chose the orientation of each of the winning lines (i.e., horizontal, Vertical, or diagonal);

3. chose the symbols for each of the lines (i.e., cherries, plums, bells, etc.);

4. fill in empty spots with random symbols; and

5. test the complete field for compliance with the goals set by steps 1 and 3 and repeat the construction process if compliance fails.

*'223 Patent at Col. 4, Ln. 51-64*

14

# **Plaintiffs Are Wrong:** No Embodiment Describes A Winning Combination Displayed Outside Of A Game Field



The preview screen of the present invention can be used in various additional embodiments. These additional embodiments can be implemented without the use of a wild symbol. In the context of the electronic game having an array of symbols as described herein, the game preview screen can be constructed and displayed without the need for a player to do anything other than to select "Play." In this case, the preview screen could actually be the results screen, displaying the game outcome. Such a preview screen could display a winning or a non-winning combination. The player would play the displayed game knowing the outcome in order to have the electronic gaming system provide the next game preview display.

*'223 Patent at Col. 11, Ln. 14-23*

15

# Disputed Phrase Need Not Cover Every Disclosed Embodiment Or All Subject Matter In Specification

"It is true that constructions that exclude the preferred embodiment are disfavored. . . .  However, . . . where the patent describes multiple embodiments, every claim does not need to cover every embodiment.  This is particularly true where the plain language of a limitation of the claim does not appear to cover that embodiment."

*Pacing Tech., LLC v. Garmin Int'l., Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015).

"[D]ifferent claims are directed to and cover different disclosed embodiments.  The patentee chooses the language and accordingly the scope of his claims."

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).

"[W]hile the specification may be referred to limit the claim, it can never be made available to expand it."

*Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1050, 1052 (Fed. Cir. 2002).

"Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008).

16

# "Winning Combination"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "array of **game** symbols yielding a successful outcome ~~or corresponding to~~**, including the award of** a prize" | "array of game symbols in the game field ~~yielding a successful outcome~~ **constituting a win**" |

- Should the Court inject "outcome" or "prize" language into the definition?

# Court Should Not Inject "Outcome" Or "Prize" Concept Into Definition Of "Winning Combination"

- "winning combination" has everyday meaning

    - example: friendly game of tic-tac-toe

    - award for winning combination a different concept

- "outcome" used elsewhere in claim

    - potential confusion

- injecting "prize" inconsistent with plain meaning

    - "prize" is not in the claims

    - claims discuss "value"

# "Winning Combination"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "array of **game** symbols yielding a successful outcome ~~or corresponding to~~**,** **including the award of** a prize" | "array of game symbols in the game field ~~yielding a successful outcome~~ **constituting a win**" |



# "[Determine/Determining/Determined] At Least One Winning Combination For Each Play Of The Game"

*Claims 1, 13, 25, 37, 44, 51, 58, 64, 70*

# "[Determine/Determining/Determined] At Least One Winning Combination *For Each Play Of The Game*"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "establish[ing] or ascertain[ing] at least one ~~array of symbols yielding a successful outcome or corresponding to a prize~~ **winning combination, properly construed**, for each game to be played" | "[guaranteeing/guarantee/guaranteed] at least one winning combination that may be formed for each game to be played" |

# "[Determine/Determining/Determined] At Least One Winning Combination *For Each Play Of The Game*"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "establish[ing] or ascertain[ing] at least one ~~array of symbols yielding a successful outcome or corresponding to a prize~~ **winning combination, properly construed**, for each game to be played" | "[guaranteeing/guarantee/guaranteed] at least one winning combination that may be formed for each game to be played" |

- Does this mean that there is a winning combination achievable by a player in each game?

# "[Determine/Determining/Determined] At Least One Winning Combination *For Each Play Of The Game*"

- entire phrase is at issue
  - not just "determining"
  - not just "determining winning combination"

- specification does not use the disputed phrase

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically **determined such that there is at least one winning combination** <u>for each play of the game</u> but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and **determining each winning combination of symbols** that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

# Claim Language Itself Supports Winning Combination Can Be Formed
## *For Each Play of the Game*

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically **determined such that there is at least one winning combination for each play of the game** but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

# Specification Supports That Winning Combination Can Be Formed *For Each Play of the Game*



The present invention will be described in the context of the Tic-Tac Fruit electronic skill-based amusement game. . . . Tic-Tac Fruit is a game loosely derived from tic-tac-toe that uses player skill to solve a puzzle. The similarity to tic-tac-toe extends from the use of a field or grid of nine spots or tiles arranged in a three by three array. On each play of the electronic game, the game software program constructs a puzzle or task for the player to solve. ***The electronic game always incorporates at least one correct solution and sometimes generates alternative solutions*** that may not provide the same prize as the best solution. . . .

\* \* \*

The player is presented a field completely filled with apparently random symbols selected from a set of nine symbols that includes a "wild" symbol. . . . The player chooses the displayed symbol in the field to become the "wild" symbol and the symbol(s) that it represents becomes the symbol necessary to complete a winning line(s). . . . ***The game's construction of the field guarantees that at least one line may be formed*** by playing the wild symbol selection in the proper spot. On average, two lines may be formed if the optimal spot for the "wild" symbol is selected. ***However, there is always the possibility that at least one line can be formed.***

*'223 Patent at Col. 3, Ln. 59 – Col. 4, Ln. 25*

# "[Determine/Determining/Determined] At Least One Winning Combination *For Each Play Of The Game*"

| PLAINTIFFS' <u>NEW</u> RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "establish[ing] or ascertain[ing] at least one ~~array of symbols yielding a successful outcome or corresponding to a prize~~ **winning combination, properly construed**, for each game to be played" | "[guaranteeing/guarantee/ guaranteed] at least one winning combination that may be formed for each game to be played" |

- Must the term encompass embodiments and subject matter at odds with the claim language?

26

# Disputed Phrase Need Not Cover Every Disclosed Embodiment Or All Subject Matter In Specification

"It is true that constructions that exclude the preferred embodiment are disfavored. . . .  However, . . . where the patent describes multiple embodiments, every claim does not need to cover every embodiment.  This is particularly true where the plain language of a limitation of the claim does not appear to cover that embodiment."

*Pacing Tech., LLC v. Garmin Int'l., Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015).

"[D]ifferent claims are directed to and cover different disclosed embodiments.  The patentee chooses the language and accordingly the scope of his claims."

*Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1383 (Fed. Cir. 2008).

"[W]hile the specification may be referred to limit the claim, it can never be made available to expand it."

*Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co.,* 285 F.3d 1046, 1050, 1052 (Fed. Cir. 2002).

"Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,* 529 F.3d 1364, 1373 (Fed. Cir. 2008).

# Plaintiffs' Rely On "Expert" To Incorrectly Argue Disputed Phrase Must Cover Three Different Things . . .



The 223 patent teaches determining winning combination(s) ==for each play of the game== in at least three ways: (a) establishing a table of successful outcomes or prizes (in a preferred embodiment); (b) establishing the winning combinations before showing the newly-constructed game field to the player; and (c) ascertaining winning combination(s) after the player has played the game (to determine game outcome success or prizes, if any). ==[Crevelt Dec. ¶¶ 91-95].==

*Plaintiffs' Opening Brief (Dkt. 74) at 14-15*

## . . . But Plaintiffs' "Expert" Does Not Actually Opine On The Meaning Of The Disputed Phrase



**F.    "Determining a Winning Combination"**

91.   There are numerous passages in the '223 Patent specification that a POSITA would recognize as teaching the determination of a winning combination. The first is the "Award Table" data structure (as described above in paragraphs 78-79) that establishes which array of symbols yields an outcome corresponding to a prize.

*Crevelt Decl. (Dkt. 74-1) at Section F.*

**Dwight Crevelt Deposition Testimony:**

Q    So the heading in Section F there is "Determining a Winning Combination." And I just want to clarify, you're not taking a position on the phrase "Determining a Winning Combination" for each play of the game; is that right?

A    **I don't believe I have opined on that as a claim term, if that's what you're asking.**

Q    Right. So you don't have an opinion on what the phrase "determining a winning combination for each play of the game" means?

A    **I have not opined on that, no.**

*Trans. of 8/2/20 Depo. Of D. Crevelt (Dkt. 87-2) at 188:7-189:2*

# "Determining . . ." Step Does <u>Not</u> Cover An Award Table



The 223 patent teaches determining winning combination(s) for each play of the game in at least three ways: (a) establishing a table of successful outcomes or prizes (in a preferred embodiment); (b) establishing the winning combinations before showing the newly-constructed game field to the player; and (c) ascertaining winning combination(s) after the player has played the game (to determine game outcome success or prizes, if any). [Crevelt Dec. ¶¶ 91-95].

*Plaintiffs' Opening Brief (Dkt. 74) at 14-15*

# "Determining . . ." Step Does <u>Not</u> Cover An Award Table



An exemplary award schedule for this version of the Tic-Tac-Fruit electronic game is provided in Table 1. The column headings represent denominations of play. In other words, the column headings represent the amount that the player can select for each play. The higher the denomination selection, the greater the potential winnings for each of the winning combinations. For example, if the player selects fifty cents as the denomination for the next play of the electronic game, and completes a line with three titanium symbols, he will win the equivalent of $250.00 in points. Had he successfully played the same game with a $4.00 denomination of play, his winnings would have been the equivalent of $2,000.00 in points. Likewise, if the player had selected a denomination of $2.00 and made a location selection for the wild symbol that simultaneously completed a line of three bells and a line of three plums, his winnings would have been the equivalent of $14.00 in points, $10.00 for the line of three bells and $4.00 for the line of three plums. The prizes marked with an asterisk are progressive value prizes. The value awarded for these prizes will increase with every game played.

## TABLE 1

### Tic-Tac-Fruit (Classic)

| Symbol/Denomination | 50¢ | $1.00 | $2.00 | $4.00 |
|---|---|---|---|---|
| 3 Titanium | $250* | $500* | $1,000* | $2,000* |
| 3 Spinner | 80¢ | $1.60* | $3.20* | $6.40* |
| 3 Flip | * | * | * | * |
| 3 Bell | $2.50 | $3 | $10 | $20 |
| 3 Plum | $1 | $2 | $4 | $8 |
| 3 Orange | 8¢ | 16¢ | 32¢ | 64¢ |
| 3 Lemon | 4¢ | 8¢ | 16¢ | 32¢ |
| 3 Cherry | 2¢ | 4¢ | 8¢ | 16¢ |

*'223 Patent at Col. 5, Ln. 15-48*

## "Determining . . ." Step Is Establishing A Winning Combination Before Display To Player



The 223 patent teaches determining winning combination(s) for each play of the game in at least three ways:  (a) establishing a table of successful outcomes or prizes (in a preferred embodiment); (b) establishing the winning combinations before showing the newly-constructed game field to the player; and (c) ascertaining winning combination(s) after the player has played the game (to determine game outcome success or prizes, if any). [Crevelt Dec. ¶¶ 91-95].

*Plaintiffs' Opening Brief (Dkt. 74) at 14-15*

# Parties Agree That "Determining . . ." Step Is Establishing Winning Combination Before Showing To Player  (Plaintiffs' Opening Brief at 16-17)



The Tic-Tac-Fruit electronic game does not pick random fields until testing indicates that one is acceptable. Instead, the field is constructed to meet certain criteria. The steps involved in **constructing a field** in this electronic game are as follows:

1. chose the number of winning lines **(i.e., 1, 2, 3, 4);**   ← Guarantees at least one winning line

2. chose the orientation of each of the winning lines (i.e., horizontal, Vertical, or diagonal);

3. chose the symbols for each of the lines (i.e., cherries, plums, bells, etc.);

4. fill in empty spots with random symbols; and

5. test the **complete field** for compliance with the goals set by steps 1 and 3 and repeat the construction process if compliance fails.

*'223 Patent at Col. 4, Ln. 51-64*

# "Determining . . ." Step Does <u>Not</u> Cover <u>Post</u>-Game Activity



The 223 patent teaches determining winning combination(s) for each play of the game in at least three ways: (a) establishing a table of successful outcomes or prizes (in a preferred embodiment); (b) establishing the winning combinations before showing the newly-constructed game field to the player; and (c) ascertaining winning combination(s) after the player has played the game (to determine game outcome success or prizes, if any). [Crevelt Dec. ¶¶ 91-95].

*Plaintiffs' Opening Brief (Dkt. 74) at 14-15*

# "Determining . . ." Step Does <u>Not</u> Cover <u>Post</u>-Game Activity

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically **determined such that there is at least one winning combination for each play of the game** but there is no winning combination without player interaction with the game display;

**testing the game field prior to displaying the game to the player** to ensure that a winning combination more valuable than <u>the</u> determined winning combination is not generated inadvertently in completing the field;

automatically **displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play**;

receiving the player's selection of a field element as a location for a wild symbol and **determining each winning combination of symbols** that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

*Antecedent basis for "<u>the determined winning combination</u>"*

> "**determine**" before "**testing…**" before "**displaying**" before "**game play**"

35

# "Determining . . ." Step Does <u>Not</u> Cover <u>Post</u>-Game Activity

- post-display determination of winning combination expressly covered in different element of claims

- "Where a claim lists elements separately, the 'clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."

  *Becton Dickinson & Co. v. Tyco Healthcare Croup LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically **determined such that there is at least one winning combination for each play of the game** but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and **determining each winning combination of symbols** that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

36

# "[Determine/Determining/Determined] At Least One Winning Combination *For Each Play Of The Game*"

## PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION

"establish[ing] or ascertain[ing] at least one ~~array of symbols yielding a successful outcome or corresponding to a prize~~ **winning combination, properly construed**, for each game to be played"

## DEFENDANTS' CONSTRUCTION

"[guaranteeing/guarantee/guaranteed] at least one winning combination that may be formed for each game to be played"



## "Test[ing] The Game Field…"

*Claims 1, 13, 25, 37, 44, 51, 58, 64, 70*

# "Test[ing] The Game Field…"

| TERM AT ISSUE | PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|---|
| "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" | "~~examin[ing] or observ[ing]~~ **test[ing]** ~~an array of symbols~~ **the game field** prior to displaying the game to the player to ensure that the anticipated ~~prize~~ **outcome** corresponding to the ~~array~~ **winning combination, properly construed,** is not superseded by ~~the award of~~ a better ~~prize~~ **outcome, such as a higher prize level**, in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |

39

# "Test[ing] The Game Field…"

| TERM AT ISSUE | PLAINTIFFS' **NEW** RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|---|
| "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" | "~~examin[ing] or observ[ing]~~ **test[ing] an array of symbols the game field** prior to displaying the game to the player to ensure that the anticipated ~~prize~~ **outcome** corresponding to the ~~array~~ **winning combination, properly construed,** is not superseded by ~~the award of~~ a better ~~prize~~ **outcome, such as a higher prize level**, in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |

- Should the Court rewrite the claims to substitute "outcomes" for winning combinations, and delete key limitations?

40

# Plaintiffs Improperly Rewrite The Term

| Where Claim Reads... | | Plaintiffs Substitute... |
|---|---|---|
| "a winning combination more valuable than . . ." | ⟶ | "a better *outcome*, such as a higher prize level  . . ." |
| "the determined winning combination " | ⟶ | "the anticipated *outcome corresponding to the winning combination*" |
| "is not generated inadvertently . . ." | ⟶ | "**is not superseded by**" |

- no intrinsic record support for substituting "winning combination" with "outcome"

- substituting "more valuable" with ambiguous "better" impermissibly broadens claim

- plaintiffs read out "inadvertently" as if it did not exist

- backdoor attempt to replace "winning combination" with "prize"

"The specification 'is not a substitute for, nor can it be used to rewrite, the chosen claim language."

*SuperGuide Corp. v. DirecTV Enter. Inc.,* 358 F.3d 870, 875 (Fed. Cir. 2004).

41

# "Test[ing] The Game Field…"

| TERM AT ISSUE | PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|---|
| "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" | "~~examin[ing] or observ[ing]~~ **test[ing]** ~~an array of symbols~~ **the game field** prior to displaying the game to the player to ensure that the anticipated ~~prize~~ **outcome** corresponding to the ~~array~~ **winning combination, properly construed,** is not superseded by ~~the award of~~ a better ~~prize~~ **outcome, such as a higher prize level**, in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |

- Should the Court clarify the other portions of the claims to which this phrase refers?

## Claim Context Shows That "<u>The</u> Game Field" Is The Previously Constructed Game Field

44.   An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

*Antecedent basis for "**the** game field"*

**constructing a field** having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing **the game field** prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# Prosecution History Supports That "The Game Field" Is The Previously Constructed Game Field



Claims 6, 19, and 32 have been amended to clarify the testing step. Support for the amendment is found at least in Paragraph 39. Testing the constructed field before presenting the field to the player on the game display ensures that a winning combination more valuable than the selected winning combinations is not generated inadvertently in completing the field.

*'223 Patent Prosecution History, Jan. 26, 2010 Amendment (Dkt. 71-4) at POM000210*

# Claim Context Shows That "Prior To Displaying The Game" Is Prior To "Displaying The Actual Game To Be Played" In The Next Step

44.    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field **prior to displaying the game to the player** to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically **displaying an actual game to be played on the touch screen display to a player** prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# Antecedent Basis For "The Determined Winning Combination" Is The Winning Combination In "Determining . . ." Step

44.    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

*Antecedent basis for "the determined winning combination"*

**determining at least one winning combination for each play of the game;**

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than **the determined winning combination** is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# Avoid Confusion That "The Determined Winning Combination" Is Later "Determining Each Winning Combination" Formed After Display Of The Game

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically **determined such that there is at least one winning combination for each play of the game** but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than **the determined winning combination** is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and **determining each winning combination** of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

47

# "Test[ing] The Game Field…"

| TERM AT ISSUE | PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|---|
| "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" | "examin[ing] or observ[ing] **test[ing] the game field** prior to displaying the game to the player to ensure that the anticipated prize **outcome** corresponding to the array **winning combination, properly construed,** is not superseded by the award of a better prize **outcome, such as a higher prize level**, in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |

- Is the testing for an inadvertent generation of a winning combination in the field by the player?

48

# Claim Context Supports Defendants' Construction

44.    An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

*completing field occurs after testing*

testing the game field prior to displaying the game to the player **to ensure** that a winning combination more valuable than the determined winning combination **is not generated** inadvertently in completing the field;

automatically **displaying an actual game** to be played on the touch screen display **to a player** prior to initiating activation of game play;

*player's play of field*

determining if the **player has decided to play the displayed game**; and

displaying an **outcome resulting from play** of the displayed game.

49

# Sole Portion Of Specification Relied Upon By Plaintiffs To Support "Testing . . ." Shows Embodiment Where Player Completes Field





POM's construction is reinforced by the statement during prosecution that application paragraph 39 (now 223 Pat., 6:19-33) provides specifications support for this claim limitation. [*See* Dkt. 71-4 (223 Pat. Prosecution History), at POM000210]. Paragraph 39 refers to paragraph 39 of the published version of the patent application which led to issuance of the 223 Patent. [*See* Crevelt Dec. ¶¶ 96-98; Published Application US 2007/0232384 A1 (**Exhibit E**), at ¶ 39]. Paragraph 39 recites the same language referenced above (223 Pat., 6:19-33), in support of POM's construction.

*Plaintiffs' Opening Brief (Dkt. 74) at 24-25*

Essentially, the Tic-Tac-Fruit electronic game presents a task whereby the player must select the appropriate field element to replace with a wild symbol in an effort to obtain the highest value game outcome offered by the device. The prize is determined by a random selection from a finite pool of available prizes. The device selects the quantity of lines that will present a winning outcome. Prizes may be presented on one, two, three, or four lines in a single game play. The device selects the level of prize(s) to be awarded. A software algorithm assesses the arrangement of the prize(s) to be offered to assure that no other, more valuable prizes will inadvertently be presented. The key symbol needed to obtain the highest value prize is replaced with a non-winning symbol print to display to the player.

*'223 Patent at Col. 6, Ln. 19-33*

## **Plaintiffs Are Wrong:** Defendants' Construction Does Not Limit All Claims To "Wild Symbol" Embodiments

- claims 37, 44, 51 would encompass games beyond "wild symbol"

- for example, nudge games which involve player completing game field to achieve a winning combination



The preview screen could also be implemented in an electronic game having a plurality of reels, each reel having a plurality of symbols, and a nudge feature and/or wild symbol. The game display could have a next game preview positioned in a space adjacent or in proximity to the main game display. A nudge game is one in which the player has an option to nudge one of the reels up or down one or more positions after the reels stop spinning in order to achieve a winning combination, usually along a pay line associated with the plurality of reels.

*'223 Patent at Col. 11, Ln. 51-60*

## **Plaintiffs Are Wrong:** Defendants' Construction Does Not Mean "No Winning Combination Without Player Interaction"



*No Winning Combination Without Player Interaction*



*Winning Combination As Presented To Player*

52

# "Testing . . ." Need Not Encompass Fig. 8 Embodiment

- "[When] the patent describes multiple embodiments, every claim does not need to cover every embodiment."

  *Apple Inc. v. Andrea Elecs. Corp.,*
  949 F.3d 697, 708 (Fed. Cir. 2020).

- "[D]ifferent claims are directed to and cover different disclosed embodiments.  The patentee choses the language and accordingly the scope of his claims."

  *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).

- Fig 8 embodiment does not describe testing of a game field prior to display of game to player
  - so claim not directed to this embodiment

- yet even here, winning combination is the result of play by the player, not the system

FIG. **8** illustrates the processing logic for other exemplary embodiments of the invention having a game preview display. The logic is a subset of the processing logic illustrated in FIG. **6** in which player interaction is required in order to play the displayed game. Processing begins as indicated in step **800** with the construction of a field for the game display. Depending on the specific game, the field cam be construction in various ways that are known to those skilled in the art. The field is then displayed to the player on the game display as indicated in step **802**. The game displayed may contain a winning combination on a single or multiple line depending on the type of game. The player can observe the displayed game for any length of time before deciding whether or not to play the displayed game in decision step **804**, in order to advance to the next game preview display. If the result of the play of the game is a winning combination, the game software determines the winnings and displays the winning outcome to the player, as indicated in step **808**. The player can then select "Preview" or "Next Puzzle" to have the next game displayed, or the next game already could be displayed adjacent to the current game display. This is indicated in step **810**. The game software remains in a wait state until a player decides to play the displayed game as indicated in decision step **812**. Selecting play will return processing logic to step **808**. If the player chooses not to play the new game in decision step **812**, the player redeems the payout won and any credit balance that the player may have as indicated in step **820**.

*'223 Patent at Col. 11, Ln. 61 - Col. 12, Ln. 20*

# "Test[ing] The Game Field…"

| TERM AT ISSUE | PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|---|
| "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" | "examin[ing] or observ[ing] test[ing] an array of symbols the game field prior to displaying the game to the player to ensure that the anticipated prize outcome corresponding to the array winning combination, properly construed, is not superseded by the award of a better prize outcome, such as a higher prize level, in making the field from the plurality of predetermined game symbols" | "test[ing] the previously constructed field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination is not generated inadvertently when the player completes a winning combination during play of the game" |





# "Automatically Display[ing] An Actual Game To Be Played On The Touch Screen Game Display To A Player Prior To Initiating Activity Of Game Play"

*Claims 1, 13, 25, 37, 44, 51, 58, 64, 70*

# "Automatically Display[ing] An Actual Game To Be Played On The Touch Screen Game Display To A Player Prior To Initiating Activity Of Game Play"

| PLAINTIFFS' <u>NEW</u> RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "~~programmatically instruct[ing] the terminal display~~ **automatically display[ing] an actual game to be played**, **properly construed** on the touch screen **game display** ~~the identification of the next game~~ to the player~~, including showing the player an otherwise unknown system-generated attribute of the next game~~ before the player commits to play the next game" | "automatically display[ing] an actual game to be played on the touch screen game display to the player before the player commits to play the displayed game" |

56

# "Actual Game To Be Played"

*Claims 1, 13, 25, 37, 44, 51, 58, 64, 70*

# "Actual Game To Be Played"

**PLAINTIFFS' <u>NEW</u> RESPONSIVE BRIEF CONSTRUCTION**

"the ~~identification of the next~~ game **to be played**, including ~~at least~~ an otherwise unknown system-generated attribute of ~~next game~~ **it**

**DEFENDANTS' CONSTRUCTION**

"the constructed game field of the game to be played"

58

# Defendants' Construction Is Supported By Intrinsic Record

Courts will adopt a definition that is different from the ordinary meaning when "the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim **term in either the specification or prosecution history**."

*Edwards Lifesciences LLC v. Cook, Inc.,* 582 F.3d 1322, 1329 (Fed. Cir. 2009).

In context, "i.e.," is definitional even where it contradicts plain meaning

*SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1200 (Fed. Cir. 2013).

No requirement for express definition or express disavowal to overcome plain meaning. As our en banc opinion in *Phillips* made clear, "a claim term may be clearly redefined without an explicit statement of redefinition" and "[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359 (Fed. Cir. 2016).

# Prosecution History June 4, 2009



1.      (currently amended)  An electronic gaming method comprising the steps of:

> constructing a <u>game</u> field having a plurality of elements for ~~a~~ <u>an interactive touch screen</u> game display <u>on an electronic game terminal</u> wherein each element is filled by a game symbol from a plurality of ~~available~~ <u>predetermined</u> game symbols, wherein the game symbols for each element are automatically determined <u>for each play of the game</u> such that there is no winning combination without player interaction <u>with the game display</u>;

> <mark>presenting the field of game symbols</mark> on the <u>touch screen</u> game display <mark><u>prior to activation of game play</u> as a preview to a player</mark> for deciding whether to play the displayed game;

> receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

> displaying each winning combination of symbols on the <u>touch screen display</u> ~~field of game symbols~~.

*'223 Patent Prosecution History, June 4, 2009 Amendment (Dkt. 71-4) at POM000133*

60

# Prosecution History June 4, 2009



The rejection of claims 1 – 8, 11 – 20, 23, 26 – 33, and 35 – 37 under 35 U.S.C. §102(b) is improper because the Examiner has not shown where "presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game" is disclosed by *Vancura*. In fact, the Examiner acknowledges in the Office Action (page 6, ll. 3 – 4): "However, Vancura does not teach presenting the field of game symbols on the game. . .

\* \* \*

Several amendments have been made to independent claims 1, 14, and 27 to further clarify the invention, and in the process, to more clearly distinguish the invention from the teaching of Vancura. Claims 1, 14, and 27 have been amended to clarify that a winning combination is never displayed until the player interacts with the game display to turn a displayed symbol into a wild symbol. Support for this amendment is found at least in paragraphs 23, 24, 44, and Fig. 5. Claims 1, 14, and 27 have been amended further to clarify that the field of game symbols for each play of the game is presented to the player on the touch screen display prior to activation of game play. In other words, the actual game that the player would play is displayed before the player makes any commitment to playing the game.

*'223 Patent Prosecution History, June 4, 2009 Amendment (Dkt. 71-4) at POM000154*

# Prosecution History January 26, 2010



47.    (currently amended)  An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor ~~comprising~~ <u>configured for</u>:

~~a component for~~ constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

~~a component for presenting~~ <mark>automatically displaying</mark> the <mark>game field</mark> ~~of game symbols~~ on the touch screen game display <mark>to a player</mark> prior to <mark>initiating</mark> activation of game play ~~as a preview to a player for deciding whether to play the displayed game~~;

~~a component for~~ determining if the player has decided to play the displayed game ~~presented as a preview~~; and. . .

*'223 Patent Prosecution History, January 26, 2010 Amendment (Dkt. 71-4) at POM000196*

62

# Prosecution History January 26, 2010 – Clearly Defined



Since the terms "preview" and "present" have led to an apparent lack of clarity in the claim language, these terms have been eliminated from all pending claims. . . .   Applicant's use of preview . . . was intended to convey that the player at an electronic game terminal always sees the next game to be played on the terminal. . . .   Applicant defined the next game to be played which was automatically displayed to the player . . . as a "game preview."  However, the automatically displayed game field represented the actual game to play. . . .   To further clarify this step, independent claims 1, 14, 27, 40, 47, and 54 have been amended to recite "automatically displaying the game field on the touch screen display to a player prior to initiating activation of game play."  ==This recitation clarifies that the actual game to be played (i.e., the game field constructed in the first recited step)== is automatically displayed to the player in order for the player to decide whether to initiate play of the game displayed.  When the player hits the Play button, he is initiating play of the actual game field that is displayed. Thus, the player can study the game field carefully to determine the optimum location of the wild symbol before he makes any commitment to play the displayed game. . . .

*'223 Patent Prosecution History, January 26, 2010 Amendment (Dkt. 71-4) at POM000208-09*

# Examiner's Amendment - April 16, 2010 - Adopts Applicant's Definition



47.    An electronic gaming system comprising:

\*    \*    \*

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

\*    \*    \*

automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and …

*'223 Patent Prosecution History, April 16, 2010 Amendment (Dkt. 71-4) at POM000242-243*

# Patentee's Definition Is Consistent With Specification



(57)                    **ABSTRACT**

An electronic gaming method and system with a game preview display. A field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines and displays each winning combination of symbols that is formed by such wild symbol location selection. A new game field can then be constructed and previewed on the game display.

*'223 Patent at Abstract*

# Patentee's Definition Is Consistent With Specification



FIG. **6** illustrates the processing logic for an exemplary embodiment having a game preview display. Processing begins, as indicated in step **600**, with the construction of a field of elements for a game display wherein each element is filled by a game symbol from the game symbols available. As described above, underlying software algorithms follow several rules of game field construction before displaying the field to the player. These rules include selecting a number of winning combinations for a play of the game; selecting the orientation of each winning combination on the game grid; selecting the symbols for each winning combination; randomly selecting symbols for the remaining elements of the game grid; and testing the field for compliance with at least one of the preceding selections prior to presenting the field to the player. The displayed game field cannot contain a winning combination before play. The field is presented to the player on the game display as a preview of the game in Step **602**. In one embodiment, the player can select from a plurality of game preview displays, with each game preview being associated with a different play level.



*'223 Patent at Col. 10, Ln. 22-41; Fig. 6*

# Plaintiffs' Citation To Claims 45, 46, 52 And 53 Support Defendants' Construction

## INDEPENDENT CLAIM LANGUAGE

Claim 44: "Automatically ==displaying an actual game== to be played on the touch screen game display to a player prior to initiating activation of game play"

## DEPENDENT CLAIM LANGUAGE

45. The electronic gaming system of claim 44 further comprising a component for generating and ==displaying an additional game field== simultaneously on the game display in proximity to the displayed game.

46. The electronic gaming system of claim 45 wherein the additional game field is for a next game to be played.

67

# Plaintiffs' Citation To Claims 45, 46, 52 And 53 Support Defendants' Construction

## INDEPENDENT CLAIM LANGUAGE

Claim 51: "Program instructions that automatically display an actual game to be played on the touch screen game display to a player prior to initiating activation of game play"

## DEPENDENT CLAIM LANGUAGE

52. The computer program product for electronic gaming of claim 51 further comprising program instructions that generate and display an additional game field simultaneously on the game display in proximity to the displayed game.

53. The computer program product for electronic gaming on claim 52 wherein the additional game field is for a next game to be played.

# Cases Cited By Plaintiffs Do <u>Not</u> Change Use of (i.e.) As Defining

This court has previously construed a disputed claim term by referencing use of "i.e." in a patent specification…. In that case, however, the court did not identify any support in the intrinsic evidence for a construction of the disputed claim term other than the construction linked to "i.e.". . .

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1373 (2005).

Claim term "routing" used in ways that contradicted (i.e., sequencing and timing) as definitional

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (2012).

Braintree's statement that SUPREP is a product for "cleansing (i.e., purging)" in its post-issuance patent term extension request did not redefine "purgation"

*Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349 (2014).

# No Support For Intentional Broadening By '223 Patent Applicant

| | CLAIMS IN *HAKIM** | '223 PATENT |
|---|---|---|
| Who made the amendment? | *Applicant* | *Examiner* |
| Accompany statements of intentional broadening? | ✔️ | ❌ |
| Abandonment of application in favor of continuation application? | ✔️ | ❌ |
| Patentee arguments retracting arguments distinguishing prior art? | ❌ | ❌ |

*Hakim v. Cannon Avent Grp., PLC, 479f.3d 1313 (Fed. Cir. 2007) (cited at Plaintiffs' Opening Brief (Dkt. 74) at 33).

# Claim Differentiation Is Not Applicable

Our court has made clear that when a patent claim "does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement." *SRI Int'l,* 775 F.2d at 1122, 227 USPQ at 586; *see also O.I. Corp. v. Tekmar Co., Inc.,* 115 F.3d 1576, 1582, 42 USPQ2d 1777, 1781 (Fed. Cir. 1997) (expressing the notion that there are practical limits to the doctrine of claim differentiation: "the doctrine cannot alter a definition that is otherwise clear from the claim language, description, and prosecution history.").

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1326 (Fed. Cir. 2003).

# Patentee's Definition <u>Not</u> Inconsistent With Embodiments



*The "3ʳᵈ embodiment"*

The preview screen of the present invention can be used in various additional embodiments. These additional embodiments can be implemented without the use of a wild symbol. In the context of the electronic game having an array of symbols as described herein, the game preview screen can be constructed and displayed without the need for a player to do anything other than to select "Play." In this case, the preview screen could actually be the results screen, displaying the game outcome. Such a preview screen could display a winning or a non-winning combination. The player would play the displayed game knowing the outcome in order to have the electronic gaming system provide the next game preview display.

*'223 Patent at Col. 11, Ln. 14-26*

# "Actual Game To Be Played"

| PLAINTIFFS' NEW RESPONSIVE BRIEF CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "the ~~identification of the next~~ game **to be played**, including ~~at least~~ an otherwise unknown system-generated attribute of the ~~next game~~ **it** | "the constructed game field of the game to be played" |




## "Game Processor"

*Claims 13-19, 23-25, 44, 64*

# "Game Processor"



| | PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|
| Means-Plus-Function Term? | ✗ | ✓ |
| Function? | ✗ None Identified | ▪ "generating an interactive electronic game," <br> ▪ "generating/ constructing a game field," <br> ▪ "determining at least one winning combination for each play of the game," <br> ▪ "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field," and <br> ▪ "automatically displaying an actual game to be played." |
| Structure? | ✗ None Identified | ✗ |
| Indefinite? | ✗ | ✓ |

# Claim 44 Of The '223 Patent – "Game Processor" Is A Nonce Word

44. An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a **game processor** **for generating** an interactive electronic game on the game terminal, the **game processor** configured **for**:

**constructing** a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

**determining** at least one winning combination for each play of the game;

**testing** the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

**automatically displaying** an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

**determining** if the player has decided to play the displayed game; and

**displaying** an outcome resulting from play of the displayed game.

# Specification Discloses No Structure To A POSITA



… A **game processor** generates an electronic game display on a game terminal with a plurality of options selectable by a player. The game processor includes: (1) a **component for constructing** a field having a plurality of elements for a game display with each element being filled by a game symbol from a plurality of available game symbols, wherein the game symbols for each element are automatically determined such that there is no winning combination without player interaction; (2) a **component for presenting** the field of game symbols to the player as a preview for deciding whether or not to play the displayed game; (3) **a component for receiving** the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and (4) **a component for displaying** each winning combination of symbols on the field of game symbols.

*'223 Patent at Col. 2, Ln. 29-45*

Since there are eight symbols and nine spots on the field, the total number of combinations is approximately 134 million. However, since a field cannot have any initial complete lines, the total number of initial combinations is reduced to approximately 118 million. Valid fields are determined by using an **embedded computer processor** **to iterate through and test each combination to determine if it has any complete lines.** If any lines are complete, the combination is not counted or used. The game software determines all of the initial "no-line" fields and tests each of these for potential winners where all fields that can potentially complete a line are counted. Since there are over 100 million compliant field combinations, the player must examine each lineup and symbol values to determine the best location for selecting the wild symbol on the field displayed.

*'223 Patent at Col. 4, Ln. 36-50*

# Like *Williamson*, '223 Patent Inputs At No More Than A Very High Level

| Claim 44 of '223 Patent | Claim 8 addressed in Williamson |
|---|---|
| **44.** An electronic gaming system comprising:<br><br>an electronic game terminal including a touch screen display;<br><br>a **game processor** for generating an interactive electronic game on the game terminal**, the game processor configured** for:<br><br>constructing a field having a plurality of elements **for the interactive game display** wherein each element includes a game symbol from a plurality of predetermined game symbols;<br><br>determining at least one winning combination for each play of the game;<br><br>testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;<br><br>automatically displaying an actual game to be played **on the touch screen game display** to a player prior to initiating activation of game play;<br><br>determining if the player has decided to play the displayed game; and<br><br>displaying an outcome resulting from play of the displayed game. | **8.** A system for conducting distributed learning among a plurality of computer systems coupled to a network, the system comprising:<br><br>    \*    \*    \*<br><br>a distributed learning server remote from the presenter and audience member computer systems of the plurality of computer systems and coupled to the presenter computer system and the audience member computer system via the network and comprising:<br><br>a streaming data module for providing the streaming data from the remote streaming data source selected with the content selection control to the presenter and audience member computer systems; and<br><br>**a distributed learning control module** for receiving communications transmitted **between the presenter and the audience member computer systems** and **for relaying the communications to an intended receiving computer system** and **for coordinating the operation of the streaming data module**. |
| *'223 Patent at Col. 16, Ln. 47-17:2* | *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 1344-45 (Fed. Cir. 2015). |

# Cherry-Picked Dictionary Definitions Do <u>Not</u> Rescue Claims From MPF

Dictionary definitions of "processor" in *St. Isidore Research, LLC v. Comerica Inc.*, 2016 WL 4988246 (E.D. Tex. 2016)







https://www.merriam-webster.com/dictionary/processor

https://www.lexico.com/en/definition/processor

# Cherry-Picked Dictionary Definitions Do <u>Not</u> Rescue Claims From MPF

Dictionary definitions of "processor" in *Ex Parte Lakkala et al.*, 2013 WL 1341108 (Patent Tr. & App. Bd.)





**AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1398 (4th ed. 2006)**

"Processor":  "2. Computer Science
a. A computer, b. A central processing unit.
c. A program that translates another program into a form acceptable by the computer being used.")

**MICROSOFT COMPUTER DICTIONARY 92 (5th ed. 2002)**

"Central processing unit" as "CPU"; *id*. at 132
"Central processing unit" as "[a]cronym for central processing unit. The computational and control unit of a computer. The CPU is the device that interprets and executes instructions . . . By definition, the CPU is the chip that functions as the 'brain' of a computer. In some instances, however, the term encompasses both the processor and the computer's memory or, even more broadly, the main computer console (as opposed to peripheral equipment)."

## Cases Finding "Processor" To Be A Substitute For "Means"

- *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483, 2018 WL 1020120, at *12 (D. Nev. Feb. 21, 2018) ("processor configured to execute a game")

- *GoDaddy.com, LLC v. RPost Commc'ns. Ltd.*, No. CV-14-00126, 2016 WL 212676, at *52-53 (D. Ariz. Jan. 19, 2016) ("processor for associating")

- *Ex parte Lakkala et al.*, 2013 WL 1341108 (Patent Tr. & App. Bd. 2013)

- *St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG, 2016 WL 4988246, at *14-15 (E.D. Tex. Sept. 19, 2016) (claim lacks sufficient structure because it "does not describe how the processors interact with each other or with other limitations in the claim to achieve their objectives")

# Plaintiffs Cannot Decide What "Game Processor" Means



**Cummings Declaration**

5. Circled in red on Exhibit A is the game processor/CPU embedded in the circuit board.

6. Circled in red on Exhibit B is the game processor/CPU embedded in the circuit board.

*Crevelt Deposition Testimony:*

Q    Okay. So is the entire board the game processor?

A    **As a person skilled in the art, we would refer to the entire board as the game processor, yes.**

Q    Okay. But the processor is what's circled in red?

A    **That would be the microprocessor used on this particular board, yes.**

*Trans. of 8/2/20 Depo. Of D. Crevelt (Dkt. 87-2) at 172:3-11*

82

# No Concrete Evidence That Game Processor Has A Specialized Meaning In The Art



Fig. 1

Fig. 1a

"Game processor 12 utilizes appropriate display drivers, graphics chips, and/or other well-known components to display and update images on the display screen for implementing a game and providing information for a redemption system, if present." (Id., Col. 5, lines 24-28). "Images can be displayed and updated on display Screen 56 by game processor 12 or other controllers by methods well known to those skilled in the art." (Id., Col. 8, lines 48-50). Kelly's use of "game processor" to display and update images on the video screen is consistent with the ordinary meaning and understanding of a POSITA.

Crevelt Decl. (Dkt. 74-1) ¶ 124.

# Plaintiffs' Algorithm Argument Is Unavailing



Here, one reading the claims is left to figure out how the "game processor" is configured to carry out the claimed functions. *[Friedman_Decl. (Dkt. 87-1) ¶¶ 76-84]*

- *St. Isidore* (E.D. Tex. 2016)
  - transaction Module (hardware and software) – algorithm was sufficient
  - processor limitations (hardware only) – algorithm insufficient, invoked MPF

- *Masimo* (D. Del. 2015)
  - claims provided input-output structure for the processor and explains how the processor interacts with the other components of the claim

# Other Non-Controlling Cases Cited By Plaintiffs Are Unavailing

- *Finjan, Inc. v. Proofpoint, Inc., No. 13-cv-05808-HSG*, 2015 WL 7770208, *17 (N.D. Cal. Dec. 3, 2015).
  - sufficient structure where claim described how "content processor" interacts with transmitter and receiver and specification identified "where the component is located" and included diagrams illustrating same

- *Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*, No. 16-CV-05251-EJD, 2017 WL 4410174, at *19 (N.D. Cal. Oct. 4, 2017).
  - (1) claim language describing how the "processor" interacts with other components (e.g., in signal communication with specific detectors and emitters) and (2) structural information about the "processor" (circuits and other connected hardware components

- *Masimo Corp. v. Philips Elecs. North America*, 2015 WL 7737308 (D. Del. Sept. 1, 2015).
  - claim provides an input-output structure for the processor and explains how the processor interacts with the other components of the claim

- *SkyHawke Techs., LLC v. DECA Int'l Corp.*, 2020 WL 2527050 (C.D. Cal Feb. 20, 2020).
  - slip opinion on claim construction ruling with virtually no explanation other than processor in said data collection unit was operatively connected to said radiolocation receiver and to said data storage and further claims what it is programmed to do

## "Game Processor"



| | PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|
| Means-Plus-Function Term? | ✗ | ✔ |
| Function? | None Identified | ▪ "generating an interactive electronic game," <br> ▪ "generating/ constructing a game field," <br> ▪ "determining at least one winning combination for each play of the game," <br> ▪ "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field," and <br> ▪ "automatically displaying an actual game to be played." |
| Structure? | ✗ None Identified | ✗ |
| Indefinite? | ✗ | ✔ |

# If "Game Processor" Is Not Held To Be A Means-Plus-Function Term…

| PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' ALTERNATIVE PROPOSED CONSTRUCTION |
| --- | --- |
| "a CPU or microprocessor **with input/output circuitry** that executes program instructions to generate a game" | "a **conventional** CPU or microprocessor that executes program instructions to generate a game" |

# "Conventional" Is Consistent With Intrinsic Record And Plaintiffs' Arguments

- '223 Patent includes no description of "game processor" that is unconventional

> In short, a POSITA would have known that by 2006, virtually every gaming device used in the gaming industry for Class II & Class III gaming (as defined by National Indian Gaming Act) would contain a game processor as I have described it.

*Crevelt Decl. (Dkt. 74-1) ¶ 125.*

88

# Reference To Input / Output Circuitry Is Not In The Intrinsic Record And Referenced Only In Unsupported And Conflicting Expert Declaration

A POSITA would further understand the structural arrangements of the game processor (e.g., descript configuration rules) in claim 44 based on the plain language of the claim itself, which is algorithmic in nature (see discussion below), and which describes the objective ("for generating an interactive electronic game on the game terminal"), and specific inputs "determining if the player has decided to play the displayed game") and outputs to other specific structure of the game terminal ("automatically displaying an actual game to be played on the touch screen game display"). A POSITA could create such a game processor using a variety of techniques that are within the ordinary level of skill in the art.

*Crevelt Decl. (Dkt. 74-1) ¶ 125.*

# "Program Instructions"

*Claims 25-28, 30, 35, 36, 51, 52, 57, 70, 71, 75*

# "Program Instructions"

| | PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|
| Means-Plus-Function Term? | ✗ | ✔ |
| Function? | ✗ None Identified | ▪ Claim 25: Functions recited at 14:66-15:21;<br>▪ Claim 51: Functions recited at 17:27-45;<br>▪ Claim 70: Functions cited at 19:37-20:20; for each dependent claim reciting this limitation, the additional functions recited therein |
| Structure? | ✗ None Identified | ✗ |
| Indefinite? | ✗ | ✔ |

# Claim 51

**51.** A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded herein, the computer readable storage medium comprising:

**program instructions that construct** a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

**program instructions that determine** at least one winning combination for each play of the game;

**program instructions that test** the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

**program instructions that automatically display** an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

**program instructions that determine** if the player has decided to play the displayed game; and

**program instructions that display** an outcome resulting from play of the displayed game.

# "Program Instructions" Claims Have Less Structure Than Those Found To Be Means-Plus-Function Claims In *Williamson v. Citrix* (Fed. Cir. 2015)

| *WILLIAMSON* CLAIMS | '223 PATENT "PROGRAM INSTRUCTIONS" CLAIMS |
|---|---|
| a **distributed learning control module for receiving communications** | **program instructions that determine at least one winning combination for each play of the game**; |
| a **distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems** and **for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module**. | **program instructions that determine if the player has decided to play** the displayed game |

93

# "Program Instructions"



| | PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|
| Means-Plus-Function Term? | ✗ | ✔ |
| Function? | ✗ None Identified | • Claim 25: Functions recited at 14:66-15:21;<br>• Claim 51: Functions recited at 17:27-45;<br>• Claim 70: Functions cited at 19:37-20:20; for each dependent claim reciting this limitation, the additional functions recited therein |
| Structure? | ✗ None Identified | ✗ |
| Indefinite? | ✗ | ✔ |

# If "Program Instructions" Is Not Held To Be A Means-Plus-Function Term…

| PLAINTIFFS' PROPOSED CONSTRUCTION | DEFENDANTS' ALTERNATIVE PROPOSED CONSTRUCTION |
|---|---|
| "conventional commands that can be executed by a computer" | "conventional commands that can be executed by a computer" |





Appendix

# Claim Construction Principles

Claims are of primary importance – it is a "bedrock principle of patent law that the claims of a patent define the invention."
*Phillips v. AWH Corp.* 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Words of claim are generally given their ordinary and customary meaning to a POSITA.
*Id.* at 1313.

Claim term read in context of the claim in which it appears.
*Id..*

Claim term read in context of intrinsic record – specification and prosecution history.
*Id..*

Court should adopt special definition of term when patentee acts as lexicographer and clearly states definition in specification or prosecution history.
*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)

Reading a limitation from the written description into the claims is a "cardinal sin."
*Id.* at 1320.

Extrinsic evidence is less reliable that intrinsic evidence.  Id.at 1318-19. It cannot vary the terms of the claims or otherwise contradict the intrinsic record.
*BASF Agro B.V. v. Makhteshim Agan of North America, Inc.*, 519 Fed. App'x. 1008, 1016 (Fed. Cir. 2013).

Court should accord little or no weight to expert testimony about the meaning of specification or terms where expert fails to present evidence of generally accepted meaning of those terms to persons of ordinary skill in the art, and does nothing more than provide his own interpretation of disputed claim terms based on his own reading of the specification.
*Sinorghem Co., Shandong v. Int'l Trade Comm'n,* 511 F.3d 1132, 1137 at n.3  (Fed. Cir. 2007).

'223 Patent Independent Claims

# Claim 1

**1.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

# Claim 13

**13.** An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal with a plurality of options selectable by a player, the game processor configured for:

constructing a game field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

# Claim 25

**25.** A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded therein, the computer readable storage medium comprising:

program instructions that construct a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game but there is no winning combination without player interaction with the game display;

program instructions that test the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

program instructions that automatically display an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

program instructions that receive the player's selection of a field element as a location for a wild symbol and determine each winning combination of symbols that is formed by such selection; and

program instructions that display each winning combination of symbols on the touch screen display

102

# Claim 37

**37.** An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# Claim 44

**44.** An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

# Claim 51

**51.** A computer program product for electronic gaming when executed on a game processor, the computer program product comprising a computer readable storage medium having computer readable code embedded herein, the computer readable storage medium comprising:

program instructions that construct a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

program instructions that determine at least one winning combination for each play of the game;

program instructions that test the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

program instructions that automatically display an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

program instructions that determine if the player has decided to play the displayed game; and

program instructions that display an outcome resulting from play of the displayed game.

# Claim 58 (Disclaimed)

**58.** A method for displaying a plurality of electronic game fields for selection by a player before initiating play of a selected game comprising the steps of:

receiving a signal from the player to generate an interactive electronic game on a touch screen display of an electronic game terminal;

generating a game field having a plurality of elements for the interactive game display wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

receiving a signal from the player to generate another of the plurality of electronic game fields associated with a different level of play prior to initiating activation of game play;

generating and automatically displaying another of the plurality of electronic game fields; and

receiving the player's selection of the electronic game field to play prior to initiating activation of game play.

# Claim 64 (Disclaimed)

**64.** A system for displaying a plurality of electronic game fields each associated with a different level of play comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game display on a game terminal, the game processor configured for displaying a plurality of electronic game fields for selection by a player before initiating play of a selected game by:

receiving a signal from the player to generate an interactive electronic game;

generating a game field having a plurality of elements for the interactive game display wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

receiving a signal from the player to generate another of the plurality of electronic game fields associated with another level of play prior to initiating activation of game play;

generating and automatically displaying another of the plurality of electronic game fields; and

receiving the player's selection of the electronic game field to play prior to initiating activation of game play.

# Claim 70 (Disclaimed)

**70.** A computer program product for displaying a plurality of interactive electronic game fields for selection by a player when executed on a processor, the computer program product comprising a computer readable storage medium having computer readable code embedded therein, the computer readable storage medium comprising:

program instructions that receive a signal from a player to generate interactive electronic game on a touch screen display of an electronic game terminal;

program instructions that generate a game field having a plurality of elements for the interactive game display wherein each element is filled by a game symbol from a plurality of predetermined game symbols;

program instructions that determine at least one winning combination for each play of the game;

program instructions that test the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

program instructions that automatically display an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

program instructions that receive a signal from the player to generate another of the plurality of electronic game fields associated with a different level of play prior to initiating activation of game play;

program instructions that generate and automatically display another of the plurality of electronic game fields; and

program instructions that receive the player's selection of the electronic game field to play prior to initiating activation of game play.