# Morgan Lewis

September 23, 2020

**VIA CM/ECF**

The Honorable Jennifer P. Wilson
Ronald Reagan Federal Building & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17108

Re:    *Savvy Dog Sys., LLC, et al. v. Pennsylvania Coin, LLC, et al.*, No. 3:19-cv-01470-JPW

Dear Judge Wilson:

Defendants submit this letter in response to Plaintiffs' September 18, 2020 letter (Dkt. 101) regarding cases that Plaintiffs first raised during the claim construction hearing—*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020); *Blitzsafe Tex., LLC v. Subaru Corp.*, No. 2:17-cv-00421-JRG, 2018 WL 6504174 (E.D. Tex. Dec. 11, 2018); and *Kit Check, Inc. v. Health Care Logistics, Inc.*, No. 2:17-cv-1041, 2019 WL 4142719 (S.D. Ohio Aug. 30, 2019). None of these cases change that the terms "game processor" and "program instructions" as used in the asserted claims of U.S. Patent No. 7,736,223 (the "'223 patent") are subject to means-plus-function treatment.  And, none of these cases undermine the holdings of the numerous cases regarding these terms that Defendants cited in their claim construction briefing (*see* Dkt. 72 at 9-10, 34-36; Dkt. 87 at 4-9, 35-36).

### *Samsung fails to demonstrate that the game processor term is not subject to means-plus-function treatment.*

Plaintiffs contend that the Federal Circuit's decision in *Samsung* "counsels" that "game processor" is not subject to means-plus-function treatment because "game processor" purportedly invokes a microprocessor (CPU)-based structure.  Plaintiffs are incorrect and ignore that it was the claim context and parties' own arguments that were determinative in *Samsung*.  The claim language of the patent-at-issue in *Samsung* described the structural nature of the digital processing unit—that unit was claimed to be "operably connected to a 'data entry device,' such as a keyboard, which is in turn connected to other components."  948 F.3d at 1354.  The '223 patent is far different.  There is no structure for the game processor recited in claims 13-10, 23-25, 44, and 64.  And, the sole paragraph of the '223 patent specification that references "game processor" refers to nondescript and nonstructural "components" for carrying out the claimed functions.  *See* '223 patent at 2:28-45.  It was the context of the claims and the arguments of the parties in *Samsung* that provided the requisite structure for the claimed "digital processing unit."  *See* 948 F.3d at 1354.  It is precisely this context that is lacking in the '223 patent.  Thus, *Samsung* does not alter the fact that the '223 patent claims a "game processor" that is nothing more than a means for carrying out the claimed functions.

*Samsung* is further inapposite because it did not address the meaning of the term "game processor." Contrary to Plaintiffs' assertion, *Samsung* neither addressed nor rendered inapposite the weight of authorities (from both district courts and the U.S. Patent and Trademark Appeal Board) concluding

that the term "processor" when used in a claim that lacks structural disclosure is a nonce word—a substitute for the words "means"—and thus subject to means-plus-function treatment under § 112, ¶ 6.  *See* Dkt. 72 at 10 (collecting cases).  Instead, in *Samsung*, the Federal Circuit held that where neither party below had argued the term "digital processing unit" was a means-plus-function term, where there was "no evidence that a person skilled in the art relevant art would regard the term 'digital processing unit' as purely functional," and the sole evidence presented was unrebutted expert testimony that the term was not purely functional and was in fact a "device that people in the art are generally familiar with," that the term as used in the specific patent-at-issue was not subject to means-plus-function treatment.  948 F.3d at 1354.

The procedural posture and evidence in *Samsung* stand in stark contrast to the claim construction issue before this Court.  Unlike in *Samsung* where neither party advocated for a means-plus-function construction, here, Defendants have asserted that the term game processor is a means-plus-function term that lacks definite structure.  Defendants have supported this assertion with reference to the intrinsic record and expert testimony demonstrating that the term is purely functional.  *See, e.g.*, Dkt. 87-1 ¶¶ 62, 84; Dkt. 72 at 8-9.  Thus, unlike in *Samsung*, here, the record supports a determination that "game processor" is a means-plus-function term.

### *Blitzsafe and Kit Check do not alter the fact that the program instructions term is a means-plus-function term.*

Plaintiffs' reliance on *Blitzsafe* and *Kit Check* to demonstrate that claim term "program instructions" is not subject to means-plus-function treatment is misplaced.  Neither case construed the term "program instructions," and neither case demonstrates that the "program instructions" claimed in the '223 patent are anything more than a means for carrying out the claimed functions.  Instead, both cases emphasize that the Court needs to look beyond whether the term itself is structural, and, instead, focus on the context of the patent to assess whether there are structural features recited.  Here, the '223 patent lacks the requisite structural features to save "program instructions" from means-plus-function treatment.

*Blitzsafe* confirms that where the patent itself provides structure for the claimed computer code, the computer code is not subject to means-plus-function treatment—an inquiry the *Blitzsafe* court noted "involves a number of factual inquiries into" the specific patent at issue.  2018 WL 6504174, at *20.  What separates the patent at issue in *Blitzsafe* from the '223 patent is that the patent in *Blitzsafe* contained significant operational details in both the claims and specification that provided structure for the claimed "computer code"—"the 'code portion' limitations recite[d] the objectives and operation of the device."  *Id.* at *17-18.  It was this recitation that the Court in *Blitzsafe* held "connote[d] sufficiently definite structure."  *Id.*  The '223 patent lacks any "operational details" for the program instructions.  Unlike in *Blitzsafe*, there is nothing tying the program instructions in the '223 patent to carrying out any algorithm in a specific way.  Instead, each of the program instruction limitations in the '223 patent is merely a means for carrying out a particular claimed function—*e.g.*, determining at least one winning combination or automatically displaying a game. Thus, when this Court undertakes the specific factual inquiry the *Blitzsafe* Court emphasized was necessary to determine whether a claim term is subject to means-plus-function treatment, the Court should conclude that based on the lack of any structural claim language the "program instructions" claimed in the '223 patent are nothing more than a means for carrying out the recited functions.

*Kit Check* likewise focused on the context of the patent-at-issue to determine whether an "information processing system" had sufficient structure. In *Kit Check*, instead of merely reciting high level inputs and outputs, the patent "explain[ed] how the [claimed] information processing system [was] connected to other parts of the invention . . . and how the [identified] components of the information processing system interact with each other—namely where the RFID tags are located, that the processors are executing instructions, and that an antenna causes the RFID tags to communicate with the processors." 2019 WL 4142719, at *9. There is no similar connection of the "program instructions" of the '223 patent to any other part of the invention. Critically lacking in the '223 patent is anything explaining how the "program instructions" carry out the claimed functions. For instance, there is nothing explaining how the program instructions determine to display a winning combination. By contrast, in *Kit Check*, the patent-at-issue explained how the "information processing system" carried out claimed steps—the information processing system "determin[ed] a kit type and identif[ied] a template" in order to process information. *Id.* at *10.

### *Kit Check's discussion of the processor term is instructive.*

Plaintiffs gloss over the *Kit Check* Court's discussion of the term "processor." However, this discussion is instructive. The *Kit Check* Court acknowledged that courts have reached "differing conclusions on whether 'processor' connotes sufficiently definite structure," classifying the cases into two categories: cases where a processor (1) simply carries out a claimed function—such as "a processor configured to execute a game" and (2) was a "self-defined object" where claims demonstrated how the processor was connected to other claim limitations. *Id.* at *8. Processors in category (1) are means-plus-function terms, whereas processors in category (2) are not means-plus-function terms. *Id.* The "game processor" limitation at issue in the '223 patent falls in category (1)—it is simply a means for carrying out the claimed functions. It is precisely like the "processor configured to execute a game" that another district court in *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 21, 2018)—a case cited with approval in *Kit Check*—found to be a means-plus-function term. There is nothing in the '223 patent describing how the game processor is connected with other elements in the claims and nothing describing how the game processor carries out the claimed functions.

***

*Samsung*, *Blitzsafe*, and *Kit Check* reaffirm that the inquiry regarding whether a given claim term is subject to means-plus-function treatment must be evaluated on a patent-by-patent basis taking into account the plain language of the claims and the specification. Nothing in these cases alters the fact that the claim terms "processor" and "program instructions" in the '223 patent are means for carrying out the claimed functions. The '223 patent lacks any detail—let alone sufficiently definite structure—demonstrating how the "processor" or "program instructions" carry out any claimed functions. Accordingly, the Court should find the terms "processor" and "program instructions" are subject to means-plus-function treatment under § 112, ¶ 6.

Respectfully submitted,

*/s/ John V. Gorman*

John V. Gorman

*Counsel for Defendants*