# EXHIBIT A

Trials@uspto.gov
571.272.7822

Paper No. 14
Entered: November 19, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

BANILLA GAMES, INC.,
Petitioner,

v.

SAVVY DOG SYSTEMS, LLC,
Patent Owner.

———————

CBM2020-00014
Patent 7,736,223 B2

———————

Before JOSIAH C. COCKS, MIRIAM L. QUINN, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

CHERRY, *Administrative Patent Judge*.

DECISION
Denying Institution of Covered Business Method Patent Review
*35 U.S.C. § 324; 37 C.F.R. § 42.4*

CBM2020-00014
Patent 7,736,223 B2

## I.   INTRODUCTION

Banilla Games, Inc. ("Petitioner") filed a Petition (Paper 2, "Pet.") seeking a covered business method ("CBM") patent review of claims 1–75 of U.S. Patent No. 7,736,223 B2 (Ex. 1001, "the '223 patent" or the "challenged patent") under section 18 of the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284, 331 (2011) ("AIA").   Patent Owner, Savvy Dog Systems, LLC, filed a Preliminary Response (Paper 6, "Prelim. Resp.").

On September 15, 2020, pursuant to our authorization (Paper 8), Petitioner filed a Reply Brief on the limited issue of whether we should exercise our discretion and deny the Petition.   Paper 8.   Patent Owner filed a Sur-Reply on September 22, 2020.   Paper 10.

Under 35 U.S.C. § 324(a),[1] a covered business method patent review may not be instituted "unless . . . the information presented in the petition . . . , if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable."   35 U.S.C. § 324(a) (2018).

For reasons that follow, we determine that Petitioner has failed to show that the challenged patent qualifies as a covered business method patent.   Accordingly, we decline to institute a covered business method patent review of the challenged claims.

---

[1] *See* 37 C.F.R. § 42.300(a).

CBM2020-00014
Patent 7,736,223 B2

### A.  Related Matters

The '223 patent has been asserted against third-parties in *Savvy Dog Sys. v. Pa. Coin Holdings, LLC*, C.A. No. 3:19-cv-01470-JPW (M.D. Pa., filed Aug. 23, 2019).  Pet. 5; Paper 4, 2.

### B.  The Challenged Patent

The '223 patent, titled "Electronic Gaming Method and System Having Preview Screen," describes a method and system for providing a game preview display to players of an amusement or entertainment electronic game before playing the game."  Ex. 1001, code (54), 1:15–17.

The '223 patent explains that

> In one aspect of the invention, an electronic gaming method with a game preview display is provided to a player. A game field is constructed having a plurality of elements on a game display wherein each element is filled by a game symbol from a plurality of available game symbols. The game symbols for each element are automatically determined such that there is no winning combination without player interaction.  The field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game.  If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines each winning combination of symbols that is formed by such wild symbol location selection. Each winning combination of symbols on the field of game symbols is displayed to the player. A new game

3

CBM2020-00014
Patent 7,736,223 B2

> field could then be constructed and presented on the
> game display.

*Id.* at 2:10–27.

### *C. Illustrative Claim*

Petitioner challenges all original seventy-five claims of the challenged patent. Patent Owner filed a disclaimer of claims 2, 4, 8–10, 12, 14, 16, 17, 21, 23, 24, 26, 28, 32, 34–36, 43, 50, and 57–75 of the '223 patent. Ex. 2001. Of the remaining claims, claims 1, 13, 19, 25, 37, 44, and 51 are independent claims. Claim 1 is illustrative of the claimed subject matter:

1. An electronic gaming method comprising the steps of:

constructing a game field having a plurality of elements for an interactive touch screen game display on an electronic game terminal wherein each element is filled by a game symbol from a plurality of predetermined game symbols, wherein the game symbols for each element are automatically determined such that there is at least one winning combination for each play of the game but there is no winning combination without player interaction with the game display;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen display to a player prior to initiating activation of game play;

receiving the player's selection of a field element as a location for a wild symbol and determining each winning combination of symbols that is formed by such selection; and

displaying each winning combination of symbols on the touch screen display.

Ex. 1001, 12:51–13:6.

4

CBM2020-00014
Patent 7,736,223 B2

*D.  Asserted Ground of Unpatentability*

Petitioner challenges claims 1–75[2] of the '223 patent based on the
following ground of unpatentability:

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1–75 | 101 | Eligibility |
| 1–75 | 112 ¶ 1 | Written Description |
| 13–24, 44–50, 64–69 | 112 ¶ 6 | Insufficient Structure for means plus function limitation "game processor for" |
| 25–36, 51–57, 70–75 | 112 ¶ 6 | Insufficient Structure for means plus function limitation "program instructions that" |
| 45, 46, 65 | 112 ¶ 6 | Insufficient Structure for means plus function limitation "component for" |

Pet. 17.  Petitioner relies on the Declaration of Garry Kitchen (Ex. 1003) to
support its assertion of unpatentability.

## II.  DISCUSSION

*A.  CBM Patent Review Eligibility*

Under § 18(a)(1)(E) of the AIA, we may institute a transitional review
proceeding only for a CBM patent.  A "covered business method patent" is a
patent that "claims a method or corresponding apparatus for performing data
processing or other operations used in the practice, administration, or

---

[2] Patent Owner disclaimed claims 2, 4, 8–10, 12, 14, 16, 17, 21, 23, 24, 26,
28, 32, 34-36, 43, 50, and 57–75.  *See* Ex. 2001.  Given our disposition of
this proceeding, we list the grounds as originally  presented in the Petition for
the sake of simplicity.

CBM2020-00014
Patent 7,736,223 B2

management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1); *see also* 37 C.F.R. § 42.301 (defining "[c]overed business method patent" and "[t]echnological invention"). To determine whether a patent is eligible for a CBM patent review, the focus is on the claims. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1340 (Fed. Cir. 2016) ("[Section] 18(d)(1) directs us to examine *the claims* when deciding whether a patent is a [covered business method] patent."); *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1382 (Fed. Cir. 2016) (CBM patents "are limited to those with *claims* that are directed to methods and apparatuses of particular types and with particular uses 'in the practice, administration, or management of a financial product or service'" (emphasis added)). One claim directed to a CBM is sufficient to render the patent eligible for CBM patent review. *See* Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention; Final Rule, 77 Fed. Reg. 48,734, 48,736 (Comment 8) (Aug. 14, 2012).

A CBM patent can be interpreted broadly to encompass patents claiming activities that are financial-in-nature. Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. at 48735; *Blue Calypso*, 815 F.3d at 1338–41 (determining that a patent was a covered business method patent because it claimed activities that are financial in nature); *Unwired Planet*, 841 F.3d at 1380 n.5 (stating, "we endorsed the 'financial in nature' portion of the standard as consistent with the statutory definition of 'covered business method patent' in *Blue Calypso*"); *Versata Dev. Grp, Inc. v. SAP Am., Inc.,* 793 F.3d 1306, 1324–25 (Fed. Cir. 2015)

6

CBM2020-00014
Patent 7,736,223 B2

("[The statute] on its face covers a wide range of finance-related activities.").

### B.  Effect of a Statutory Disclaimer on CBM Eligibility

Petitioner cites to a number of claims of the '223 patent in support of its contention that the '223 patent claims a financial product or service. However, as noted above, claims 2, 4, 8–10, 12, 14, 16, 17, 21, 23, 24, 26, 28, 32, 34-36, 43, 50, and 57–75 of the '223 patent have been disclaimed pursuant to 35 U.S.C. § 253(a) and 37 C.F.R. § 1.321(a).  *See* Ex. 2001. Patent Owner argues that these disclaimed claims cannot provide the basis for eligibility  for a covered business method patent review, because they have been disclaimed.  Prelim. Resp. 21–22.  We agree with Patent Owner. "The Federal Circuit has held consistently that claims disclaimed under § 253(a) should be treated as though they never existed." *Facebook, Inc. v. Skky, LLC*, CBM2016–00091, Paper 12, at 8 (PTAB Sept. 28, 2017) (informative) (citing *Vectra Fitness, Inc. v. TWNK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998)).  "The decision whether to institute a CBM patent review is based on whether a patent 'is' a covered business method patent, which in turn is based on what the patent 'claims' at the time of the institution decision, not as the claims may have existed at some previous time." *Id.* at 6.  Accordingly, as dependent claims 2, 4, 8–10, 12, 14, 16, 17, 21, 23, 24, 26, 28, 32, 34–36, 43, 50, and 57–75 are disclaimed by the time of this decision, they cannot provide the basis for eligibility  for a covered business method patent review.

### C.  Analysis of Remaining Claims

The disclaimer leaves Petitioner's analysis of claims 1, 6, 7, 13, 25, 37, and 44 for our consideration in determining whether Petitioner has

7

CBM2020-00014
Patent 7,736,223 B2

shown the '223 patent meets the "financial product or service" requirement. *See* Pet. 8.  Petitioner argues that the remaining claims "cover methods and systems for 'electronic gaming' where the game provides the player with an opportunity to win value by forming a 'winning combination' of symbols presented on a game field."  Pet. 8.  Petitioner asserts that

> similar to the claims in *Versata* which covered making a valuation determination (*i.e.*, the price of a product based on organizational groups), the '223 patent's claims cover determining something of value (i.e., a 'determined winning combination') as well as making a valuation determination (i.e., by testing the game field for 'more valuable' inadvertently generated winning combinations) to manage and administer what payouts a player can win."

*Id.*  Petitioner contends that "[i]n particular, each claim of the '223 patent requires, prior to the player initiating game play, 'determin[ing] . . . at least one winning combination for each play of the game' and 'testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field.'"  *Id.* at 10 (emphasis omitted) (citing Ex. 1001 at claims 1, 13, 25, 37, 44, 70).  Petitioner argues that "[g]enerating and redeeming value brings a claim within the ambit of CBM review jurisdiction."  *Id.*  Petitioner further argues that "each 'winning combination' recited in the claims is to some extent 'valuable' and, according to the '223 patent, that value corresponds to a monetary value, such as the 'associated payout' referenced in claim 10, 21, and 32."  *Id.* Petitioner cites to Table 1 of the '223 patent, which is reproduced below, as illustrating this relationship.

8

CBM2020-00014
Patent 7,736,223 B2

TABLE 1

Tic-Tac-Fruit (Classic)

| Symbol/Denomination | | 50¢ | $1.00 | $2.00 | $4.00 |
|---|---|---|---|---|---|
| 3 Titanium | | $250* | $500* | $1,000* | $2,000* |
| 3 Spinner | | 80¢ | $1.60* | $3.20* | $6.40* |
| 3 Flip | | * | * | * | * |
| 3 Bell | -¦- | $2.50 | $3 | $10 | $20 |
| 3 Plum | | $1 | $2 | $4 | $8 |
| 3 Orange | | 8¢ | 16¢ | 32¢ | 64¢ |
| 3 Lemon | | 4¢ | 8¢ | 16¢ | 32¢ |
| 3 Cherry | | 2¢ | 4¢ | 8¢ | 16¢ |

Table 1 of the '223 patent shows the values assigned to various symbols used in the Tic-Tac Fruit game of the preferred embodiment. *Id.* at 10–11 (citing Ex. 1001, 5:35–41, 5:27–31).

Petitioner submits that because each claim of the '223 patent recites a game that determines an intended "determined winning combination" and purports to administer and manage the game so as to ensure that a winning combination "more valuable than the determined winning combination" is not inadvertently generated, all claims are used in the practice, administration, and management of a financial product or service, and, thus, render the '223 patent eligible for a CBM review. *Id.* at 11 (emphasis omitted).

Patent Owner responds that under the definition of "financial product or service" found in *Unwired Planet*, the limitations "determining . . . a winning combination" and "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" are not financial in nature and do not support CBM jurisdiction. Prelim. Resp. 22–64.

9

CBM2020-00014
Patent 7,736,223 B2

We agree with Patent Owner that the limitations "determining a winning combination" and "testing the game field . . . to ensure that a winning combination more valuable . . ." are not financial in nature. Beginning with "winning combination," we agree with Patent Owner that "winning," by itself, is not necessarily monetary in nature. Prelim. Resp. 28. Indeed, other games include the step of determining whether a combination is a "winning combination" or not without necessarily involving any kind of prize or payout. *See id.* at 29–30. Instead, as is shown in the '223 patent, some additional step after the determination of who won is necessarily if there is going to be some monetary payout corresponding to the win. *See* Ex. 1001, Fig. 6 (showing Step 630 of "Redeem Payout and Credit Balance"), Fig. 8 (showing Step 820 of "Redeem Payout and Credit Balance"), 6:34–40 (explaining a player "may" redeem points earned in the game for cash). Petitioner identifies nothing in the specification requiring that money be paid for just winning.

Moreover, the '223 patent makes clear that the games are intended broadly for "entertainment" and "amusement" and not just for gambling. *See id.* at 1:13–15 (explaining patent is related to "amusement and entertainment electronic gaming"). As Patent Owner explains, the '223 patent expressly discusses the use of the games in Ohio, which prohibits gambling, but permits the use of games of skill for entertainment purposes. *See* Prelim. Resp. 52–58 (discussing Ohio's laws in detail); Ex. 1001, 1:18–33 (describing Ohio's laws prohibiting gambling, but allowing "games of skill"). Thus, at best, "winning combination" relates only to the possibility that a monetary payout could be received, not that a player necessarily will receive anything of monetary value for playing the

CBM2020-00014
Patent 7,736,223 B2

game.  This possibility is insufficient to meet the financial product or service requirement.  *See Unwired Planet*, 841 F.3d at 1382 (noting "it cannot be the case that a patent covering a method and corresponding apparatuses becomes a CBM patent because its practice could involve a potential sale of a good or service" and "[i]t is not enough that a sale has occurred or may occur, or even that the specification speculates such a potential sale might occur").

As for the limitation "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field," we also agree with Patent Owner that this limitation is also not necessarily financial in nature.  *See* Prelim. Resp. 34–44.  Petitioner relies heavily on two points in making its case that "valuable" in this limitation implies a monetary value:  (1) the preferred embodiment's discussion of the payouts for different symbols (as shown in Table 1 reproduced above), and (2) a dictionary definition that "valuable" means, among other things, "having monetary value."  *See* Pet. 10–11 & n.2 (citing Ex. 1008).  However, as Patent Owner points out, and discussed above, the games disclosed in the '223 patent are not limited to the preferred embodiment and encompass games used for entertainment purposes only without monetary payouts.  *See* Prelim. Resp. 39–44, 52–58.  Thus, the embodiment discussed in relation to Table 1 is not dispositive.  Additionally, Patent Owner notes that the dictionary definition relied on by Petitioner also defines "valuable" as "having desirable or esteemed characteristics or qualities."  Prelim. Resp. 31 n.6 (citing Ex. 1008).  As Patent Owner persuasively explains, games involving multiple possible winning

11

CBM2020-00014
Patent 7,736,223 B2

possibilities, such as poker, commonly assign values to those different possibilities and a comparison to determine the hand or arrangement with the highest relative value must be done. *Id.* at 34–40 (citing Ex. 2002 ¶¶ 55, 61, 96; Ex. 2007, 1–3; Ex. 2008, 1; Ex. 2009, 7–10). We agree with Patent Owner that the broader understanding of "valuable"—as including non-monetary comparisons — comports most closely with the claims and specification as would be understood by one of ordinary skill in the gaming arts. *Id.* at 35–37. Thus, we agree with Patent Owner that the limitation, "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field," is not necessarily financial in nature either. Accordingly, because we agree with Patent Owner that neither of the limitations relied upon by Petitioner in the remaining claims is necessarily financial in nature, we agree with Patent Owner that Petitioner has failed to meet its burden of showing that the remaining claims of the '223 patent claim a financial product or service.

### D. Summary

Because Petitioner has failed to show that the remaining claims of the '223 patent claim a financial product or service, we determine that Petitioner has failed to show that at least one of the remaining claims of the '223 patent qualifies as covered business method.

### III. CONCLUSION

On this record, we determine that Petitioner has not sufficiently demonstrated that the '223 patent is a CBM patent because the remaining claims do not claim a financial product or service. Accordingly, we decline to institute a CBM patent review.

CBM2020-00014
Patent 7,736,223 B2

## IV. ORDER

For the foregoing reasons, it is

ORDERED that the Petition for covered business method patent review is *denied*.

For PETITIONER:

Dion M. Bregman
Kenneth J. Davis
Ahren C. Hsu-Hoffman
MORGAN, LEWIS & BOCKIUS LLP
dion.bregman@morganlewis.com
kenneth.davis@morganlewis.com
ahren.hsu-hoffman@morganlewis.com

For PATENT OWNER:

Brenton R. Babcock
D. Scott Sudderth
WOMBLE BOND DICKINSON (US) LLP
brent.babcock@wbd-us.com
ssudderth@wcsr.com

kis

13