IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


SAVVY DOG SYSTEMS, LLC and      :
POM OF PENNSYLVANIA, LLC        :
                                :
          vs                    :   3:19-CV-01470-JPW
                                :
                                :
PENNSYLVANIA COIN, LLC and      :
PA COIN HOLDINGS, LLC           :




          BEFORE:      HONORABLE JENNIFER P. WILSON

          PLACE:       Harrisburg, Pennsylvania (WebEx)

          PROCEEDINGS: Claim Construction Hearing

          DATE:        Tuesday, September 15, 2020






APPEARANCES (VIA WEBEX):

For the Plaintiffs:    Steven G. Hill, Esquire
                       Martha L. Decker, Esquire
                       HILL, KERTSCHER & WHARTON, LLP
                       3350 Riverwood Parkway
                       Suite 800
                       Atlanta, GA   30339

For the Defendants:    John V. Gorman, Esquire
                       Kenneth J. Davis, Esquire
                       Amy M. Dudash, Esquire
                       MORGAN, LEWIS & BOCKIUS, LLP
                       1701 Market Street
                       Philadelphia, PA   19103

INDEX TO EXHIBITS

| PLAINTIFFS: | IDENTIFIED | ADMITTED |
|---|---|---|
| Exhibit No. 1 (presentation slides in PDF format) | 75 | 104 |

| DEFENDANTS: | IDENTIFIED | ADMITTED |
|---|---|---|
| Exhibit No. 1 (presentation slides in PDF format) | 75 | 104 |

(9:30 a.m., convene.)

THE COURT:  This is the case of Savvy Dog Systems, LLC versus PA Coin, docketed to this Court's number 3:19-CV-1470. This is the time and place set for a claim construction hearing.  The Court has received briefs in advance of today's hearing and has reviewed those.

Counsel, please enter your appearances.  We'll start with Plaintiff.

ATTORNEY HILL:  Thank you, Your Honor.  Good morning. This is Steve Hill from the firm Hill, Kertscher and Wharton on behalf of the Plaintiffs, Savvy Dog Systems and POM of Pennsylvania, LLC.

THE COURT:  Thank you.  And for Defendants.

ATTORNEY GORMAN:  Your Honor, this is John Gorman from Morgan Lewis on behalf of Defendants, Pennsylvania Coin, LLC and PA Coin Holdings, LLC.  And with me is Kenneth Davis of Morgan Lewis, who will also be speaking today, and Amy Dudash of Morgan Lewis.

THE COURT:  Very well.  Thank you, Counsel.  As previously discussed during our conference on August 10th, the Court is anticipating approximately ten minutes per party per claim for argument.  There will be certainly flexibility on the Court's part, and hopefully you will be flexible with each other, as well.

My courtroom deputy will assist me in keeping track of

time.  Again, I will not cut you off.  I will let you finish, but I will, to some extent, try and keep this moving, and we'll use ten minutes as, I think, a useful parameter in order to be fair and also to keep this matter moving.

So, with that, are there any preliminary matters on behalf of the Plaintiffs?

ATTORNEY HILL:  No, Your Honor.

THE COURT:  On behalf of Defendants, any preliminary matters?

ATTORNEY GORMAN:  Your Honor, with respect to the timing issue, I think what we learned in getting ready for the hearing today is that some terms take longer than others.  In fact, I think probably the terms at the beginning that the parties have agreed on a particular order in presenting may take a little bit longer, with the idea that we would sort of, on balance and on average, keep in line with what you have just said right there, Your Honor.

But I just wanted to give the Court a heads up that I think, at least for our presentation, we would expect more time on the first few terms and perhaps less time on the last few terms, if that's acceptable to Your Honor.

I'm happy to walk through what the order is if you would like.

THE COURT:  I would appreciate that.  Thank you.  What is the order?

ATTORNEY GORMAN:  The parties have agreed that the first term to be presented will be winning combination and that the Plaintiffs will present first on that term and Defendants will then respond.

The parties have then agreed that the next term is the determining at least one winning combination for each play of the game.  And the parties have agreed that the Defendants would make that argument first and then Plaintiffs will respond.

The third term that the parties will argue is the testing the game field step.  And the parties have agreed that the Plaintiffs will argue that term first and then the Defendants will respond.

The fourth and fifth terms will be argued together. They are the automatically displaying step and actual game to be played.  And the parties have agreed that the Defendants will present first on that term.

The fifth term will be the game processor limitation. And the parties have agreed that the Plaintiffs will present first on that term and Defendants will respond.

And then the last term will be program instructions. And the parties have agreed that the Defendants will present on that term first and the Plaintiffs will respond.

THE COURT:  All right.  Thank you, Attorney Gorman. The Court has one preliminary question, and I think it may be

answered by virtue of your explanation of the order.  I did take note, though, in the responsive briefs submitted, Plaintiff submitted revised constructions for certain of the claims.  And I just wanted to ask before we proceed, has Defendant -- I'm sure you have had an opportunity to review the revised constructions.  Have any agreements been reached?

ATTORNEY GORMAN:  For the Defendants, Your Honor -- this is John Gorman -- the answer is no.  In fact, some of those changes that the Plaintiffs have made are some of the reasons why we anticipate that some of the terms are going to take longer than others.  Because in the first instance we are going to be addressing things that we never had an opportunity to address before because they showed up in their opposition brief.  So there is still disagreements on every term.

I think the one term that would be significant is narrowing the automatic displaying step.  There is still a dispute with respect to the phrase within that step of the actual game to be played.  I believe -- and Mr. Hill will correct me if I'm wrong.  I believe the rest of that term with their proposed construction means beyond the phrase actual games to be played.  I don't think there is any disagreement with respect to the proper construction of that term, the automatically displaying term, that is.

THE COURT:  All right.  We'll reach that then when we get to numbers five and six.

One other preliminary question. Let me turn to Attorney Hill. Defendants, in their opening submission, provided a definition of a person of ordinary skill in the art, which I am now understanding is referred to as a POSITA. Their definition is a person, in 2006, who had a bachelor's degree in engineering or computer science or an equivalent thereof and at least two years of development experience in the electronic gaming industry.

Having reviewed your two written submissions, I didn't take note of any disagreement with that definition of the relevant POSITA. Just for the Court's understanding, do you agree with that description of the POSITA?

ATTORNEY HILL: Yes, Your Honor. We submitted the declaration of Mike Crevelt, which does contain a description of the qualifications of a person of ordinary skill in the art. However, the disagreement between the two definitions are rather immaterial, and we opted not to take issue for purposes of the briefs.

Because regardless of whether Mr. Crevelt's description of the qualifications of the POSITA or the Defendant's description is adopted, it's going to be immaterial to the determination of these issues.

THE COURT: All right. It would be helpful for me to have a clear answer to the question, though. I think you said there was not a material difference, in your understanding.

ATTORNEY HILL:  As it relates to claim construction. I don't recall exactly what Mr. Crevelt's description of the level of skill in the art is, but it is certainly a computer science or the prominent electrical engineering degree and I believe three years of industry experience or a suitable -- suitable advanced education, such as a master's or a doctorate equivalent, in the alternative, to that level of industry experience.

We don't detect any differences on any of the claim construction disputes where a person of ordinary skill in the art's understanding of the term would vary as a result of the adoption of Mr. Crevelt's description of the level of skill in the art as opposed to the level of the skill in the art that the Defendants are at.

THE COURT:  All right.  Thank you, Attorney Hill.

Attorney Gorman, do you agree that the slight differences between the qualifications advanced by Mr. Crevelt as opposed to the qualifications advanced on behalf of your client in your brief are immaterial with respect to constructing these claims?

ATTORNEY GORMAN:  Yes, Your Honor, I agree.

THE COURT:  All right.  Very well.  Those are the only preliminary matters on the Court's end.

So what we can do now is proceed with term number two, which is winning combination.  If my notes kept up with

Attorney Gorman's ordering of events, I believe I'm hearing from the Plaintiff first on this issue.  Is that correct?

ATTORNEY HILL:  That is correct, Your Honor.

THE COURT:  All right.  Please proceed, Attorney Hill.

ATTORNEY HILL:  Okay.  So what I'm showing here is the parties' respective proposed constructions of the term winning combination.  And what we have done on this term, as well on several others, is we have revised our construction.

In each case what we are attempting to do is either eliminate disputes by agreeing to at least more portions of the construction, in the way that the Defendants would like to see it construed because we don't foresee there to be a big enough dispute worth fighting over, or in this case, we are moving in their direction as a result of criticisms that they are lobbying at our original construction.

So what we did here, we originally have it as an array of game symbols yielding a successful outcome and corresponding to the award of a prize.  And in response to their criticism, we changed corresponding to, to include it as a way of further explaining to the finder of fact what kinds of things are winning combinations within the context of the patent intrinsic evidence.

As a preliminary matter, I want to address something that the Defendants indicated in their response brief.  They said that we had conceded the construction of this term because

we admit that there is intrinsic evidence showing that a winning combination exists in the game field.

And Your Honor will recall from the prior slide that the two differences between the parties' constructions are that the Defendants seek to include the phrase in the game field as a part of the construction of a winning combination, whereas, the Plaintiffs do not agree with that.

What we said in our brief -- and this is the actual quote that they are citing to.  What we said was not that we concede that a winning combination always exists in the game field, but we conceded that there is intrinsic evidence showing a winning combination in the context of the game field.

That is akin to acknowledging the obvious, if one looks at figure 1-B, which shows winning combinations as they exist on the game field.

However, we also indicate that there are many things that are described in the intrinsic evidence, the written description and the specification.  That doesn't mean that those features of the -- all features of the intrinsic evidence in the specification needed to be imported into broader playing language.  That's the point here, because there is also intrinsic evidence which shows that the phrase winning combination exists before the game field's construction is even completed.

For example, in column four starting at line 51, you

see the description of the five-step process for constructing the game field.  And the first step is choosing the number of winning lines.  Winning lines is synonymous throughout the patent with winning combination, as it's used.

Step two is choosing the orientation of the winning lines.  In other words, is my winning line going to be diagonal or is it going to be horizonal or vertical.  Then what are the symbols the system is going to use for each of the winning lines.

Now, these winning lines are determined by the system before you hit step four, which is where the system actually fills in the remaining empty spots with the random symbols. It's only at that point that you even have an abstract concept of the game field.  And at that point the field hasn't been tested and finalized in step five, which has to occur before the field is actually displayed for the player to play the game.

So the phrase in the game field implies that the winning combination only exists if it is shown in the broader context of a constructive game field.  And that's inconsistent with the intrinsic evidence in column four.

It's also inconsistent with the intrinsic evidence in column five, which we show here.  Column five refers to both a written description and a figure, or table, that shows winning combinations on the left-hand side associated with

corresponding prizes.

Now, there is going to be some argument perhaps over the mechanisms by which the award schedule is used in the -- a patent.  But I think we all agree that a game designer determines what the winning combinations are in conjunction with fashioning an awards schedule before he even begins to construct the electronic game to be played.

So in that sense, a winning combination really exists in the construct of a game, regardless of whether or not you have an actual game field.  You know what the winning combinations are before a game field is ever even shown.

Then there's a second argument here, which is including the award of the prize.  So in addition to the fact that we disagree with their description of the in the game field language because we believe it contradicts -- it's contradicted by certain parts of the intrinsic evidence, we also believe that the award of a prize is useful to help illustrate the nature of a winning combination in the context of the patent document.

Referring to the Supreme Court's decision in Markman, the Supreme Court indicated that when the court looks at plain and ordinary meaning of terms, it doesn't look at plain and ordinary meaning of terms in a vacuum but the plain and ordinary meaning of terms in the context of the patent.

And so when we look at winning combination in the

context of this patent, winning suggests winning a prize.  For every winning combination that is described in the patent, there is, as you can see in the award table, a corresponding prize to be awarded.

The reason why it's helpful to explain to the jury in this case that an award of a prize is an example of a successful outcome, or in the case of the Defendant's newly-proposed construction in their slide deck, I anticipate they're going to change their construction and instead of saying successful outcome, they want to say it includes a win. It shows a win.  It's a combination that yields a win.

Okay.  Fair enough.

But what's a win?  Do the Defendants claim that if it's not a winning combination, if it is a combination that results in a prize being awarded, because if that's their position, that's completely contradicted by the intrinsic evidence here which shows that you evaluate whether a combination is a winning combination based on whether it yields winnings or a prize.

That is the easiest way to articulate to the finder of fact what a winning combination is.  What we don't --

THE COURT:  Excuse me.  I just have a question directly related to the point you're making now.  I hate to interrupt, but I may lose track of thought.  I take note that on table one that's on the screen currently, certain winning

combinations correspond to prize amounts that appear to be less than the selected play level.

So for example, if your winning combination is three cherries and you have chosen to play at the 50-cent play level, your corresponding prize -- I'm using the terms listed on your table one in this graphic -- would be two cents.

So I take the point made by Defendant, I believe in their opening brief, that to refer to a two-cent return on a 50-cent investment as a prize may generate some confusion.

And the ultimate goal here is to, of course, clarify these terms and construe these terms in a way that makes it more accessible and understandable yet consistent with the terminology utilized in the patent.

So I wonder if you could address that issue.

ATTORNEY HILL:  Yes.  If you look at figure 1-B of the patent, Your Honor, and I'm going to move back up to an earlier slide in order to show the Court what I'm talking about.  So the patent document itself refers to the lines that are shown in figure 1-B, the three plums and the three lemons as examples of winning combinations.  And I don't think there is any disagreement about that.

When you go to the award schedule, three lemons at 50 cents yields a prize of four cents, so winning combination is not defined in terms of profitability but in terms of whether a prize is generated as a result of the combination.  That is the

winning.

If the question what do I win can be answered in the affirmative, you've won something, then it is a winning combination in the context of the patent.

And our concern is -- and that's exactly why we say you don't say successful outcome unless you qualify it by saying including the award of a prize.  Because otherwise, it will be confusing.  And otherwise, we will get into potential arguments about whether there is some type of return on investment analysis that has to be used in order to determine whether a combination is truly a winning combination or not.

The goal here is to have a construction of winning combination that doesn't contradict the patent document itself.  That's why -- consistent with Markman's statement that you look for the meaning of the terms in the context of the patent, that's why we have the construction that we have.

I don't disagree necessarily with what I understand is going to be their amended construction of a combination that results in a win.  But the question -- but it still begs the question, what's a win?  And in the context of this patent, a four-cent return on a game play is a win.  And a combination, therefore, cannot be called a non-winning combination merely because the prize that's awarded is somehow viewed as too small.

THE COURT:  Okay.  So this is sort of analogous to

spending $10 in quarters at a county fair to win a 50-cent rubber ducky.  Is that fair to say?  I mean, it's still a prize, in the sense that a joyful child will walk away clutching their rubber ducky feeling they've won a prize.  It's just not necessarily a sensible return on investment.

ATTORNEY HILL:  That's correct.

THE COURT:  Okay.  I understand your argument on that point.  I appreciate you answering my question.  I'll let you wrap up on term number two, and then we'll turn to Attorney Gorman.

ATTORNEY HILL:  So Mr. Gorman is going to go first on term number two.  Term number two is determining at least one winning combination for each play of the game.  But before we get to that point, I have concluded with the presentation on winning combination.  So I'll yield to the Defendant to respond.

THE COURT:  Okay.  Thank you.  When you said term number two, just to clarify, I'm referring to the original numbering of the terms, not the ordering provided by Attorney Gorman.  So I apologize for any confusion.

The winning combination term, I have taken notes on your argument, and now we're turning to Attorney Gorman.

ATTORNEY GORMAN:  Thank you, Your Honor.  Let me share my screen here.  You would have thought that I'm very good at doing this with all of the Zoom calls I have done.  Bear with

me for a moment because I'm still not as good as I would like to be.

THE COURT:  That's fair.  Take your time.

ATTORNEY GORMAN:  Do you see that screen, Your Honor?

THE COURT:  I do.  Attorney Hill, are you also able to see the Defendants' shared screen?

ATTORNEY HILL:  Yes, Your Honor.  Apologies.  I had already hit the mute button.

THE COURT:  Thank you for your muting diligence.  We can all see the screen.  And I'm prepared to hear argument, Attorney Gorman.

ATTORNEY GORMAN:  Thank you, Your Honor.

And before I get into the specifics of winning combination, let me just reinforce a point that we have already discussed, which is that the Plaintiffs' constructions in this case have been a moving target.  The parties had submitted briefs on what the terms were going to be.  They submitted a joint claim construction brief statement to Your Honor back in June.  We spent two full briefs talking about all of the deficiencies in Plaintiffs' briefs.  And they have come back at the 11th hour and they have changed the vast majority of their proposed construction.

Now, in some ways that was because they made concessions that they, frankly, had to make for all of the reasons that we pointed out in their brief.

But they have also made some substantive differences here in their proposed constructions.  For example, in winning combination, what they have now done is that they have equated, where they did not do so before, a successful outcome with the award of a prize, which they had done before.  Likewise, they have done similar things in the testing step that is a substantive difference.

And this just really highlights, Your Honor, that the Plaintiffs are taking an approach, when it comes to claim construction, that is not guided by the claim construction principles set out by the Federal Circuit and the controlling case law.

What they have is a results-driven approach.  They want to get to a certain result.  They will change their claim language however they need to to get there.

But what they are essentially trying to do in each instance, trying to make sure that there are limitations that would be understood to be in these claims, either explicitly or in the context of the claims, they're going to want to remove those so that when they get to the infringement analysis later on in the case, they have as much leverage as possible and as much leeway to argue infringement.

Likewise, what you are going to see in a number of these constructions is that they're actually adding language in to make sure that these claims are as broad as possible.  But

it's because they're actually trying to reach a result, not necessarily actually trying to say what is the meaning from the claims, from the context of the claims, as informed by the specification, as informed by the prosecution history.

What you're also going to see is this results-based approach means that they will change their rationale for a particular construction depending on the results they want to get. And we just heard that with respect to winning combination. They argue don't put the phrase in the game field into the construction. That's importing limitations into the claim.

Then they will turn around and say but even though none of the claims say anything about prize, we think it's important to start taking things from the specification and adding them to the term, even though prize is nowhere in the claim, even though an award table is nowhere in the claims.

It's a changing rationale that they will change depending on term to term. Because again, they are looking to get to a result, not necessarily have a consistent way of approaching how construction should happen in this case.

And the last thing I'll say, Your Honor, to demonstrate this is throughout these claims, and I'm saying it now so that we don't have to say it again and again when we make these arguments, is they have taken an approach to get to a result, because when they don't have any sort of intrinsic

support to support their position, what they have done is they've gone and they have brought in the declaration of Mr. Crevelt, who they purport to be an expert.

But as we pointed out in the cases that we cited in our brief, Your Honor, extrinsic evidence, like expert reports, have less significance than the intrinsic records.  And when it comes to a declaration like Mr. Crevelt's, it's especially the case.  Because if you read his declaration, what you are going to see is he is not opining that persons of ordinary skill in the art understand words that are being used in the claims to have some sort of technical meaning or specialized meaning.

What he's doing is reading the patent, giving his interpretation and then saying this is how it should be read. That is exactly the type of expert opinion that the Federal Circuit has been said should be given little or no weight because there is failure to present evidence of a generally-accepted meaning of those terms to a person of ordinary skill in the art not backed up by concrete evidence.

So Your Honor, just another example that the Plaintiffs will do whatever they need to do to get to the results they want.

Defendants' constructions, you are going to see, start first with the claim language, which is what the Federal Circuit says you should start with, and talk about reading that in the plain and ordinary meaning and then looking at the

context of the claims in which that claim language appears and then looking to see how does the specification of prosecution inform that claim language that the applicant chose to use.

Now, with respect to winning combination in particular, winning combination is a phrase that appears throughout in every independent claim, in any dependent claim, it appears multiple times in claims.

So for example, on slide seven, it appears in claim 13 in a number of different steps, the game processor step, the testing step, the receiving step.  It appears in claim 44 in the determining step, in the testing step, by way of example.

So when you get to what the differences between the parties are here, it's important to understand, Your Honor, that because of the change that they have made at the 11th hour, they are shifting position, they're moving targets, we can look at that and say you know, when we originally came up with a proposed construction back in June, as Mr. Hill alluded to, we actually changed our proposed construction to adopt language that Plaintiffs had suggested; the idea that the winning combination would be an array of game symbols yielding a successful outcome.

We said okay, we will agree to that in ours just to narrow the issues, because it was clear from their proposed construction at the time, which was that yielding a successful outcome or corresponding to a prize, that the successful

outcome was not the same thing as awarding a prize.

And then what we saw in the -- in their responsive brief was now they were making those things the same thing.  So this is a problem for a lot of reasons.

First of all, Your Honor, outcome is a word that actually is a claim term that appears elsewhere in the claims.  For example, if you look at claim 44, in the very last limitation, it talks about displaying an outcome resulting from a play of the displayed game.

So if we start injecting the idea outcome and whether it's the prize, now we're adding a whole level of confusion about well, what is the construction of outcome.  And we certainly did not intend that a winning combination was supposed to be a backdoor way of construing outcome.

So what we have done is we have modified our construction slightly in response to what the Plaintiffs have done to make clear that a winning combination is simply an array of game symbols in a game field constituting a win.

The reason for this construction, Your Honor, is winning combination has a very plain and ordinary meaning.  Any person that sits and plays a Tic-Tac-Toe game knows what a winning combination is.  When I play Tic-Tac-Toe with my son, he doesn't need a definition to understand that three Xs are a winning combination and three Os are a winning combination.  He also knows that whether or not he gets an award for a winning

combination doesn't define what a winning combination is.  It is a separate concept definitionally.

So Your Honor, for purposes of claim construction, the plain and ordinary meaning is really what we are meant to capture.  A winning combination is a combination of something that constitutes a win.

Now, the only real point that Your Honor needs to clarify here is well, a combination of what.  And the parties agree it's a combination of game symbols.  But yet, the parties still disagree as to what this construction is.  Because the first question is, is it going to be game symbols in the game field.

Now, you need to look no farther than their briefs to see that the answer to that is yes.  Mr. Hill tried to walk this back.  But if you read the opening briefs, in their opening brief at page 15, the only support that they provided for their proposed construction of winning combination was what you see on the screen here; according to the intrinsic evidence, a winning combination refers to the array of game symbols in the game field.  Period.  Nothing more.

It's not as you heard Mr. Hill say no, that was just a description of a portion of the specifications.  What they said in their opening brief was it was a winning combination of an array of game symbols in the game field.

Now they are walking it back now.  Your Honor, further

proof that they are trying to get to a results-based approach. They will change their position and their rationale if it suits them to get to where they need.

If you don't want to accept their admission here, Your Honor, you need to look no farther than the context of the claims themselves to see that a winning combination is a winning combination in the game field.

For example, in claim 13, which is up here on slide two, winning combination is used three different times.  It's talked about in constructing a game field.  It's talked about in the testing step, that there's going to be a determined winning combination generated in completing the game field. There's going to be a step that talks about that the player selection of a field element is going to be what is -- there is going to be a determination of a winning combination formed by the player's selection of the field element.

So just reading this term in the context of the claims, you can see that it's talking about a winning combination in the field.  In fact, it's absurd to think about the idea that there could be some sort of winning combination that's not in a field.

And as I hear Mr. Hill's argument, he seems to be saying well, because there is some sort of planning for a winning combination, that means the winning combination is not going to happen in the field.

If I were playing baseball, Your Honor, I could be sitting in the dugout and the manager might say to me hey, next play we're going to do a bunt.  Does that mean a bunt doesn't happen on a baseball field?  No.  A bunt happens on a baseball field.  The fact that we are talking about doing a bunt beforehand, deciding whether we are going to do the bunt beforehand doesn't mean the bunt is not happening in the field.

It's the exact same thing for a winning combination, apparent from the context of the claims, apparent from a common understanding of the claim term.

I'll move through some of this, Your Honor, to make sure that I'm not burning through my time.

Another argument that they make in their papers, I didn't hear from Mr. Hill today, but they make in their papers and it's an important one to raise, is they also say in their opposition brief well, you should not construe a winning combination to be an array of game symbols in the game field because we can find some portion of the specification, and we'll point to that, and your construction wouldn't cover that portion of the specification, so it must be wrong.  The claim term must be construed so broadly as to cover everything in the specification.

And they point to nine lines at column 11, line 14 through 23 and they say winning combination as Defendants have construed it must be wrong.

Well, this is an incorrect argument for two reasons. First, Your Honor, as a matter of fact, if you look at this embodiment -- and in fact, if you look at every embodiment in the patent, there is no point in the patent where they say and here is an example of a winning combination that is not going to happen in the game field, yet it's still a winning combination.

Even this portion is just simply talking about the fact that there's a preview screen presented to the player that could display a winning or non-winning combination.  This does not say by the way, there is no winning combination in the game field, it's in something else.  That's not what this says.

But factually, that factual issue aside, they are simply wrong on the law.  Because Your Honor, the case law is absolutely clear.  And they do this again and again and again; they do this with the winning combination step; they do this with the determining step; they do this with the testing step; they'll do this with the actual game to be played, they will find someplace in the specification to say well, this term has to be so broad as to cover that portion.  That's just simply not correct.

Where a patent, like the '223 patent, described in multiple embodiments, every claim does not need to cover every embodiment.  That's clear under the Federal Circuit case law. It's particularly true when the plain language of the

limitation of the claim does not appear to cover that embodiment.  Different claims cover different disclosed embodiments.

The patent, he chooses the language in accordance with the scope of the claim.  And while the specification may be referred to limit a claim, it can never be made available to expand it.

The Federal Circuit has made clear its precedence is replete with examples of subject matter included in specification but not claims.

So Your Honor, this tacking on an argument that says well, we're going to interpret one -- just three aspects of the patent and say therefore, the construction is wrong, it is an argument that they will make again and again and again and should be rejected.

THE COURT:  All right.  Attorney Gorman, we were pretty well past ten minutes.  Do you have any additional points you feel you need to raise with respect to winning combination?

ATTORNEY GORMAN:  Very briefly, Your Honor.  The idea of injecting outcome or prize into this term is completely unsupported.  Prize is not something that is in any of the claims.  You heard from Mr. Hill.  He keeps talking as if the award table is in the claims.  The award table is not in the claims.

This idea of -- he said, I believe when he argued, the question is what do I do to win.  That's not what the question is.  The question is what's the meaning of a winning combination.  Prize is not in the claims.  The claims discussed value, but they don't discuss prize.

What the Plaintiffs' construction is here is an effort to basically backdoor and get prize into the claims through the construction of winning combination.

So unless Your Honor has any questions, I will finish my argument there and just state for the record, Your Honor, that Defendants propose that the term be construed as an array of game symbols in the game field constituting a win.

THE COURT:  Actually I do have a question, Attorney Gorman.  I am looking at document 71-3, which is Exhibit C to the joint claim construction statement.  In column five in the specifications -- I'm sorry -- the summary of the invention, column five, table one is, I believe, the same table we were reviewing in Mr. Hill's demonstrative.

Is that a part of the patent?

ATTORNEY GORMAN:  Is table one part of the patent? Yes.  It's part of the specification, Your Honor.

THE COURT:  Okay.  But I want to make sure I understand your argument.  I don't see the word prize on table one.  Is that what you were referring to?  Because table one clearly is part of the patent and yet, the word prize doesn't

seem to appear on table one.

ATTORNEY GORMAN:  Prize doesn't appear on table one. But my point, Your Honor, was if you look at the claims, and the claims are what you are construing, and the Federal Circuit says that claims are of primary importance in terms of claim construction, none of the claims include the word prize.

So what's happening here by virtue of the claim construction process is Plaintiff is asking you to take claims that don't say prize and then put the word outcome and put the word prize into it.

So if we're talking about the plain meaning of winning combination, and again using my 11-year-old as the example, the 11-year-old would be happy as heck for getting a prize for winning Tic-Tac-Toe.  He knows that just because he gets a winning combination, he's not necessarily getting a reward for that.

That's my point, it's not necessarily with respect to this table at all.  It's the claims, because the claims are what's going to be asserted against Defendants in infringement. It's not the patent.  It's the claims.

THE COURT:  Thank you, Attorney Gorman.  Before we move on to the next term, I would like to turn back to Attorney Hill.

In light of the fact that there is some revision that's ongoing in each parties' proposed construction, I would

be remiss not to ask Attorney Hill, now that you have had an opportunity to review Defendants' current proposed construction of this term, I understand there would still be a disagreement with respect to the in the game field portion but the change made by Defendant to state array of game symbols in the game field constituting a win, is there any agreement on Plaintiffs' part with respect to the proposal of constituting a win to replace yielding a successful outcome, including the award of a prize?

ATTORNEY HILL:  Thank you, Your Honor.  No.  The short answer is no, we're not prepared to agree to that.  Because the concept of win begs the question of what is a win in the context of the intrinsic evidence of the patent.  *Phillips* says that the specification of it acts as a concordance.

The written description accompanying the awards schedule in column five mentions winnings and it mentions prizes in conjunction with those combinations that are shown to be the winning combinations.

I don't want to go back down the path of repeating my entire argument.  But in a nutshell, we can't agree to their construction as phrased, because we don't believe it addresses adequately the concept of what is a win in the context of this patent.

THE COURT:  Okay.  Understood.

Let's turn to the next term on the order provided by

Attorney Gorman, which is my understanding what was originally numbered term three, determining at least one winning combination for each play of game.  It's my understanding that Defendant will proceed first on this term.

Attorney Gorman.  (pause.)  You are muted, Attorney Gorman.

ATTORNEY GORMAN:  Thank you.  Let me now share the screen.  I shouldn't have taken it off.  I apologize.  Can you see the screen, Your Honor?

THE COURT:  Yes.

ATTORNEY GORMAN:  The next term, Your Honor, is determining at least one winning combination for each play of the game.  It is a phrase that appears in every independent claim of the '223 patent.  There is some variation in the language depending on the independent claim that you look at.  At some points it talks about at least one winning combination for each play of the game that determines, in other places determining, in other places determined.  The parties agree that wherever it appears, the same construction would apply to each of that.

Now, this is a term, Your Honor, that if you look for this phrase in the specification, you are not going to find the phrase determine at least one winning combination for each play of the game.  So the claims are going to be very, very important in understanding how to construe the term.  And the

parties have two very different approaches to this term.

The plaintiffs are proposing a construction that is very, very broad and would encompass things that are not something that a person of ordinary skill in the art reading the claim would understand it to encompass; like the award table that Mr. Hill was referring to, which again appears nowhere in the claims.

Defendants' construction is meant to capture the fact that when a person reading this phrase in the context of the claims in which it appears is going to understand that the claim is providing that there is actually going to be a winning combination that is achievable by a player in each game.  A player can actually win each game.

And you know, using the background of the patent to understand that, Your Honor, in other words, a player can employ his or her skill in trying to control the outcome of the game to get a win.

It's important, Your Honor, that you understand what the phrase is that you're being asked to construe, because I think there is some confusion in the briefs.

The entire phrase is at each issue, determining at least one winning combination for each play of the game.  We are not asking the Court to determine in a vacuum what determining means.  We are not asking Your Honor to construe what determining a winning combination means.  We are asking

when a person reads this entire phrase, how do they understand it.

If you look at the context of the claims in which this appears, Your Honor, it's clear that the claim language supports that a winning combination can be formed for each play of the game.

If you look at, for example, claim one.  Claim one talks about this determining at least one winning combination for each play of the game as part of the constructing of the field.  So a person of ordinary skill in the art is going to look at this and say ah, the claim teaches that there's a field constructed, there is going to be elements in that field, there is going to be symbols that correspond to those elements, and the game symbols are going to be automatically determined such that there is at least one winning combination for each play of the game.

So a plain reading of this language, Your Honor, on first blush, you read that, the first question is would a person think oh, okay, there is a winning combination that can be formed in this game.  That's what this is talking about.  If there is any question, Your Honor, then a person of ordinary skill in the art says well, what does the specification tell me that would inform whether or not that's right.

And if you look to the specification, the specification when it talks about the detailed description of

the patent, starting column three into column four, it talks about this notion of generating at least one winning line.  So you'll see when they talk about the present invention, they're talking about that the electronic game always incorporates at least one correct solution.

And again, in the context of this constructing the field, which we just saw that is actually in the claims, it talks about the fact that the game's construction of the field guarantees that at least one line may be formed and that there is always the possibility that at least one line can be formed.

This is what a person of ordinary skill in the art would look to when they say well, the claim is talking about constructing the field of at least one winning combination and then look to the portion of the specification that is talking about a field construction, there is going to be at least one line that may be formed.

So Your Honor, this is the reason why we have proposed the construction that makes clear that this step is talking about making sure that a winning combination can be formed by the player.

We have used the language from this portion of the specification because that's the language that the applicant used when it was talking about this type of process, constructing the field and ensuring that there is at least one line.  They used the word guaranteeing.

So Your Honor, that's the reason for why we are proposing our construction.

The other issue here that Your Honor needs to wrestle with is should you adopt a construction, as the Plaintiffs have said, that is so broad that it encompasses embodiments and subject matters that is at odds with this concept. The answer is no.

We have already talked about the idea that under the case law you don't need to broaden a construing term so broadly that it has to construe every embodiment when the claim language is inconsistent with that. And if you actually look at their briefs, their only argument that somehow it needs to be so broad is they have gone to their opening brief and they have said well, this term actually covers three different things. And it's at pages 14 and 15 of their opening brief.

They said -- there is establishing this award table that you have heard Mr. Hill talk about. It's about establishing winning combinations before showing the game field to the player. And C, it's about determining winning combinations after play of the game.

Their only support for this is --

THE COURT: Attorney Gorman, can I just ask you to slow down a little bit, both for the Court's benefit and Ms. Fausnaught's?

THE COURT REPORTER: Thank you.

ATTORNEY GORMAN:  Sure.  I'm sorry, Your Honor.  I've got ten minutes on my brain, and I am trying to get everything in.  I will do a better job.

THE COURT:  Go ahead.

ATTORNEY GORMAN:  With respect to the opening brief, you will see they made this argument that the '223 patent teaches this phrase, determining a winning combination for each play of the game three different ways; A) this establishing an award table; B) this establishing a winning combination before a game is shown to a player; and C) ascertaining a winning combination after the player has played the game.

We have already talked about as matter of law it doesn't need to cover all of these, but they are wrong.  Because first of all, their only support for this -- if this is one of their instances of their results-based approach and they went and they got their expert, they said in their brief to make this conclusion; the problem is, for them, if you actually look at what their expert said, he does not opine on this.

If you look at the portion of -- they cite, Your Honor, that at slide 28, you'll see they cite to the declaration of their expert as 91 through 95.  If you go to that portion of their expert's declaration, you are going to see that he is not opining on the disputed phrase.  He is not opining on determining a winning combination for at least one -- I'm sorry -- determining at least one winning

combination for each play of the game.  He is just opining on determining a winning combination.

And in fact, when asked in his deposition, You don't have an opinion on what the phrase determining a winning combination for each play of game means?  He says, I have not opined on that.

So this idea that they say a person of ordinary skill in the art would understand these three disparate portions of the specifications are encompassed by the term is not even supported by the very expert on whom they rely.

I will take just a moment, Your Honor, to show you why at least two of the three things that they say are covered by this term are not.  First they say well, this determining step has to cover an award table.  And you are going to hear this again and again, because they want the award table to somehow be what it is that practices these claims.

The problem is if you actually look at the portion of the specification that discusses an award schedule, and it's only 33 lines at column five of the patent, nowhere in this portion of the patent are you going to see them discussing this as determining at least one winning combination for each play of the game.

In fact, what an award table does, sort of like that example you used at the county fair, all a county fair would do, Judge, is if you want to go up and play the duck game, you

look at the sign that says you hit one duck, this is what you get; you hit another duck, this is what you get.  That sign is not determining a winning combination for each play of the game.  It's determining all of the winning combinations that may or may not be available for a given game.

So even on its face, there is nothing in the specification that suggests that it's determining at least one winning combination for each play of the game.  It's inconsistent with the plain and ordinary meaning.

And even their own expert at his deposition -- and I don't have a slide for this, Your Honor, but it is in our responsive brief.  Their own expert admitted that the establishing of an award table, which is what they said was a -- let me put that up here.  The establishing of a table of successful outcomes or prizes in an award table is actually something done by a human being.

And here, these claims are talking about the determining at least one winning combination being done by a computer system, being done by a processor, being done by program instruction.  So this term does not cover an award table -- the establishing of an award table.

THE COURT:  Attorney Gorman, we have come to the ten-minute point.  And I just want to make sure I ask you a question, and then I'll let you briefly wrap you up.  But here is my question.

In your proposed construction, your proposed construction of the verb determine, in its various forms, is to use the verb guaranteed, in its various forms. How do you go -- please explain the analysis that takes me from determine to guaranteed.

ATTORNEY GORMAN: So Your Honor, again, the question isn't what does determine mean, because determine is a phrase that is used in various different aspects of the claims. The question is what is the entire phrase. What does it mean to determine at least one winning combination for each play of the game.

When you look at that as a whole, it's not just the word determine. In fact, we cite the case in our brief. The -- well, I'm sure I'll find it as soon as I stop talking, Your Honor. We cite for the proposition in the brief that -- here it is. The ADE Corp. case, the meaning of a phrase is often greater than the sum of the individual words.

So it's not that we're saying the word determine means guaranteed. We are saying in the context of the entire phrase, it talks about guaranteeing that it may be formed.

Where do we get that from? It's this portion of the specification that's up on the screen, Your Honor, on slide 25. This portion of the screen, you'll see in the second underlined portion there, The game's construction of the field guarantees at that at least one line may be formed.

So this is talking about the constructing of the field step. It's talking about at least one line, which you just heard Mr. Hill say when they talk about lines, they are talking about winning combinations. The game construction of the field guarantees that at least one line may be formed.

So what we have just said, a person of ordinary skill of the art reading that language is going to understand ah, I understand when they say determining at least one winning combination for each play the game, they are talking about this process.

So we just used this language, Your Honor, from the specification because that informs what the meaning is in our construction.

THE COURT: Thank you for answering that question. Why don't you wrap up on this point, and then I'm going to turn to Attorney Hill.

ATTORNEY GORMAN: One last point, Your Honor.

They also argue that the determining step has to be construed so broadly as to cover ascertaining winning combination after the player has played the game. That's from their brief. That's one of the three disparate portions of the specification that they said somehow has to be pushed into this construction.

That is not the case, Your Honor. If you actually look at the context the claims, you'll see that this

determining step actually happens before the testing step.  The testing step happens before the displaying step.  And the displaying step happens before the game play.

So for them to say well, no, the determining step happens after the game play is belied by the very context of the claims in which it appears.  In fact, if you look at some of the claims like claim one, you'll see this concept of post-game determination of a winning combination, which they say is in the disputed phrase.  It's actually separately covered in the claims.

So here in claim one of the slide 36, you'll see the orange phrase is the disputed phrase for Your Honor.  The purple phrase is covering determining of a winning combination after game play.  They separately claimed it.  And the case law is such that where a claim lists elements separately, the clear implication is that those elements are distinct components of the invention.

So the point is, Your Honor, you should not do as they say and read the disputed determining step so broadly as to encompass other limitations that at times are expressly recited in the claim.

With that, Your Honor, I'll stop talking.

THE COURT:  Okay.  Thank you, Attorney Gorman.

Let's turn to Attorney Hill.  (pause.)  Attorney Hill, you are muted.  There you go.

ATTORNEY HILL:  Thank you, whoever did that.  Somehow I lost my own visual of myself on the screen and so I couldn't find an icon to click to unmute.  I apologize.

THE COURT:  That's okay.

ATTORNEY HILL:  So can Your Honor see the proposed construction slide on the screen?

THE COURT:  I do.

ATTORNEY HILL:  Okay.  Your Honor touched on what the key argument is for Plaintiffs on this term.  And that is that while they say that this phrase needs to be construed as a whole, their construction makes it clear that they are supplanting the word determine or determining and replacing it with guarantee or guaranteeing.  And our construction established or ascertained, that's just a plain and ordinary meaning of term.

*Phillips* refers to the fact, you know, for non-technical terms it is even permissible for a court to even consult a dictionary as a way of establishing a baseline of what plain and ordinary meaning would be for simpler words and non-technical terms.

Then the analysis that comes as follows.  In order to vary the plain and ordinary meaning of the term, there have to be one of two circumstances.  And I am referring, for example, to the Federal Circuit's decision in the *Hill-Rom* decision in 2014, where they said, In order to narrow or vary terms from

their plain and ordinary meaning, there has to be either lexicography by the inventor, making it clear that there's a special definition for the term or there has to be a disclaimer, either explicit or implicit, that is clear and unmistakable.

In this case we just don't have either of those.

In fact, there isn't -- the context of the use of determine and the use of determining a winning combination consistently throughout the patent document demands that the Plaintiffs' construction be granted in this case.

I want to skip down to this slide because I think that this really cuts to the crux of the matter.  Determine and determine a winning combination, regardless of whether they fully -- regardless of whether each teaching is fully consistent with this particular phrase, which ends with for each play of the game, it doesn't matter.  They have to be read in such a way that they are always consistent throughout the patent, because *Phillips so*.  Terms are normally used consistently throughout the patent.  That's what the Federal Circuit is looking for.

In the *Integrated Claims* case last year, the Federal Circuit gave the term field the same meaning despite the fact that it existed in two different phrases, and the defendant was arguing exactly what the Defendants are arguing here, which is well, in different phrases the term takes on different

meanings.  No.  That's inconsistent with the teachings of *Phillips*.  The terms are expected to be used in a way that they are consistent throughout the patent.

The word guarantee is only used one time in the '223 patent.  It's in connection with the wild symbol embodiment and its claim in reviewing that language that it is not definitional, meaning there is no special lexicography here. The inventor is not saying that when I use determine, I mean guarantee or vice versa.  So there is no way to fulfill the criterion that the Federal Circuit has set down in the *Hill-Rom* decision for why you would adopt the definition of determine as a guarantee.

Furthermore, the Federal Circuit has said in the *Phillips* decision that one of the cardinal sins of patent law is reading a limitation from the written description into the claims.  So taking a passage that uses the word guarantee that's not definitional and importing it into other claim language, determining a winning combination claim language, is committing the cardinal sin of claim construction.

Furthermore, *Phillips* counsels the Court to look at how terms are used throughout the claims.  There are at least three claims, claims 25, 27 and 51, where it's plain that determine does not mean guarantee.  And in fact, if determine were to mean guarantee, he claims would become nonsensical. For example, claim 51, which is at issue in this case, recites

program instructions that determine --

THE COURT:  Attorney Hill, I just want to interrupt here for a moment.  So Attorney Gorman indicated that this term that's in quotes is a -- I'm to construe the entire term, not merely the word determine.

Because I think the jumping-off point of my questioning of Attorney Gorman was well, hold on now, you are redefining the verb determine.  And he made an argument.  And I thought he indicated that the parties were in agreement that we're constructing this entire term.

You are now pointing me to instances of the use of the word just determine in other claims.  So are you or are you not in agreement with Attorney Gorman that we're constructing this entire term as opposed to the word determine?

ATTORNEY HILL:  Your Honor, we are agreeing that the entire phrase should be construed.  But if you look at what the difference is between the constructions of the term as a whole that the parties have proposed, it's plain that we agree that every other word in the claim can be given its plain and ordinary meaning, except for the word determine as is used in that claim.

And the Federal Circuit is clear that terms that exist, whether they are being construed independently or whether they are being construed as a part of the phrase, they still need to be construed in a way that the terminology makes

sense when applied throughout the patent document.  And that means whether it's determined in the claims, such as the claims that we just showed or whether when you look at the various figures in the patent, there are boxes that describe determine winning combinations of symbols.

And these are -- admittedly, these are determining winning combinations of symbols at the end of each play of a game.  But they are still determining winning combination of symbols for each play of the game.

And it's clear in the context of each of these figures that determine is being used in its plain and ordinary meaning.  It is not being used as a guarantee.  And determine and guarantee are not the same thing, whether they are viewed individually or whether they are viewed in the context of the claim language, which is necessarily broader than the -- than the guarantee construction that the Defendants have proposed, which is rooted in a single passage in the specification and absent special lexicography for some evidence that there's a disclaimer.  And we actually said we surrender the normal scope of establish or ascertain in the context of this claim element.

THE COURT:  Attorney Hill, I'm afraid you're confusing me more than you are helping me at the moment.  The parties have the ability to identify the terms -- the claims or the claim terms that need to be constructed by the Court.  The term that you, the parties, selected is not determined in all of its

various forms.

The phrase you have identified that you are asking the Court to construct is determine at least one winning combination for each play of the game.

And so you're suggesting to me -- and in fact, I think the slide that you have currently displayed, you are suggesting to me that the only difference between the parties' proposed constructions is the verb determine.  And you are proposing that we construe determine to mean establish or ascertain, whereas, the Defendant is proposing to construe it as guarantee.

But that's not the only difference between your proposed constructions.  Plainly, looking at the screen, there are other differences; namely, there is a other difference.  It begins following the word winning combination.  Your construction is comma properly construed for each game to be played, whereas, Defendants' construction is that may be formed for each game to be played.

I don't know if that's a particularly material difference from your perspective.  But this phrase has been identified as the term to be constructed.  And there is another difference in your two constructions.  Maybe would you like to address that.

ATTORNEY HILL:  Surely, Your Honor.  Let me just say that in looking at the parties' respective constructions as a

whole, our view was that this language should be entitled, as a whole, to its plain and ordinary meaning and that it determine if the -- if the Defendants' construction of guaranteeing is ingrafted from columns three of the specification into broader claim language, then that is violating the precept against importing limitations from the specification into broader claim language, because the term on its face is broader than guaranteeing, and in fact, would cover establishing a winning combination for each game to be played or ascertaining the system, ascertaining what the winning combination is for each game to be played.

And that happens, for example, when the game field itself is being constructed, the system is establishing the winning combination because it is selecting the number of winning lines.  What's the orientation of the winning lines? What are the symbols that are going to be used in the winning lines?  So it is establishing that there is a winning combination for the game to be played.

And guaranteeing is not a part of that plain ordinary meaning of the term.  And for them to be able to refer to the passage in the patent that uses guaranteeing, they have to be able to show that we either used special lexicography, special definitional language, making it clear to the reader that we don't believe determining means establishing or ascertaining in the context of this claim.  We think it means guaranteeing a

winning combination.

And that's not done here.  Nor is there any evidence of any disclaimer of plain and ordinary meaning such that the language of the claim as a whole wouldn't be entitled to its normal language.

As for the other differences.  Properly construed is something that is very commonly used in constructions where there is a term within a term.  And since winning combination was the first disputed term, this is meant to clarify that whatever the Court says winning combination means, that's what it means in the context of its construction, as well.  I don't believe that there is any disagreement over that.

But as for the may be formed for each game to be played as opposed to for each game to be played, we don't think there is any may about it.  You have to establish a winning combination for each game to be played.  That's the claim language.

So to the extent that they disagree with that, then, of course, we would have another material disagreement.  I honestly didn't believe that that's really what they were intending to suggest, so I had let that go.

THE COURT:  Counsel, we're nearing the end of your ten minutes.  This may seem like an odd question.  But why is it that we need to have a different -- a construction of the word determine?  It strikes me that there's a tremendous

disagreement between Counsel with respect to what word we would replace determine with.  But it's not altogether clear to the Court that the word determine is insufficiently clear as it exists in the claims.

So why would we replace a fairly ordinary and plain term, determine, with establish or ascertain or guarantee?

ATTORNEY HILL:  Your Honor, I will address that.

It's not necessary if the Court believes that the jury is adequately informed as to the meaning of determine as it exists in the context of the claim.

We typically -- where there is a dispute between the parties on where someone is proposing a term, we typically will avoid having a construction where we merely regurgitate the language of the claim, because there is some case law out there that suggests that when there is a dispute, the Court should attempt to clarify the meaning of the claim.  However, there is also case law where the Federal Circuit has recognized that that's not always the case.

So from the Plaintiffs' perspective, if the Court's construction of this term is determining at least one winning combination properly construed for each game to be played, then the patent owners are fine with that.

THE COURT:  All right.  Let me -- thank you, Attorney Hill.

Let me just pose that same question to Attorney Gorman

before we move on to the next term.

ATTORNEY GORMAN:  Your Honor, I agree with Mr. Hill about the case law that talks about the fact -- first of all, can you hear me, Your Honor?

THE COURT:  I can.  Thank you.

ATTORNEY GORMAN:  -- that talks about the fact that when the parties have presented a dispute for the Court to resolve that dispute.  To be clear, Your Honor, I don't think there is a debate over this.  But to be clear, the issue isn't for you to construe determine wherever it appears in the claims.

We are talking about what does this entire phrase mean.  And the parties have very different views as to what this encompasses and what this doesn't encompass.

To answer your question, Your Honor, to resolve that issue now is going to be something that's going to be useful for the parties, because what's going to happen is we're going to get to the infringement phase, and what's going to happen is the parties are going to be pointing to the different reasons about what this claim term means.

And that's why the parties have identified these issues for you now to resolve them, so that when we get later on down the line and the jury says well, we don't understand, that's a question for Your Honor to provide as a matter of law.

So the idea of whether we are substituting the words,

again, it's a broader issue.  The jury needs to know what the entire phrase is.  So it's not that Your Honor's construction as we would propose it is the word determining means guaranteeing.  It means the entire phrase means as we have suggested.

THE COURT:  Understood.  Both of your presentations have been very helpful on that term.

Let's turn to term number four, original numbering. My understanding is Plaintiff will present first on testing the game field, et cetera.

ATTORNEY HILL:  Can you see my screen, Your Honor?

THE COURT:  I can see your screen.  Thank you.

ATTORNEY HILL:  Just making sure.

So this limitation we simply refer to as the testing limitation.  It specifically refers to testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field.

To address the dispute between the parties, we will go into the different portions of that phrase.

But to begin, this one, I basically will refresh the Court's recollection as to how the description in the written description of the patent, how this works.  In figure 1-B you see the game field.  But to the left of it you see a value

ranking.  The value ranking shows the symbols in order of the value.

The titanium, if you refer to the award schedule in column five, you can see this as well, the titanium is regarded as the most valuable because the winnings associated with it are the highest.

On the flip slide, the cherries at the bottom of the value ranking, they are at the low end of the totem pole, because in the award schedule it indicates that the winnings associated with that combination are the lowest.

So the question becomes then how do you construct a field where you're choosing winning lines and you're determining the orientation of the winning lines and what the symbols are.  But then you have to populate the rest of the field with random symbols.

With the testing, limitation really comes in as a mechanism of checking after you have filled in empty spots on the game field with random symbols to make sure that those random symbols have not inadvertently created a new combination that is a better, more valuable combination than what the system designed that particular field to show.

And in step five of the five-step field construction algorithm that is shown in column four of the patent, it says you test the complete field for compliance with the goals set by steps one and three.

In other words, after you drop in all of these random symbols, now you go back and you again query is there now a different number of winning lines than the number of winning lines that I had intended.  Then you go to step three and you say I expected plums and lemons to be able to win when I put this game board together, but now are those random symbols arranged in such a way that there may be another symbol that could win, like a titanium or a flip.

And if so, then you repeat the construction process because compliance has failed, because you now have the possibility that there could -- that the random selection of symbols to complete the game field has inadvertently created a situation where the winning combination could be more valuable than the winning combination that the system anticipated in steps one through three.

Our construction, although it may not be as perfectly elegant as we like, is an attempt to capture what I have just described.  We are not trying to conflate an outcome with a winning combination.  But the fact is that when you are talking about what winning combination is more valuable than another winning combination, the outcomes must be considered.

So the only way to compare winning combination outcomes is by looking at what the winnings are that are associated with the outcomes in question.  And that is why we say that the phrase winning combination more valuable than the

previously-determined winning combination is not generated inadvertently, is a reference to making sure that the anticipated outcome that corresponds to the system's winning combination is not superseded by a combination that has a better outcome, such as a -- {interruption, disconnection of a phone line} -- highest level.  That's an illustration meant to assist the jury in understanding the scope of this term.

Now, what the Defendants have said on this point is no construction.  Basically they are saying that you just tell them what -- you just parrot the language of the claim to them, a winning combination more valuable than the determined winning combination is not generated inadvertently.

While there may be some situations where it is appropriate for the Court to merely read back the language of the claim and not provide a construction, we believe, given the complexity associated with the field generation process and the testing algorithm that is described in step five of the larger field construction process, our view is that it's complex enough that the jury would be aided by the Court giving the construction that we have advocated for here.

There are, as I have highlighted, a few additional places where the Defendants want to add in language like the previously constructed field or the previously determined winning combination.  We don't view that as particularly helpful because given the remaining context of the claim, we

don't really believe that there is any debate about that.  And the phrase previously determined seems to be inherently redundant.

The displaying the actual game to be played language is somewhat problematic for us because it says in the claim that prior to displaying the game to the player, you're doing the testing.  And at the point where you are doing the testing, you certainly are testing the game.  But it may or may not prove to be the actual game to be played, depending upon what the outcome of the testing process is.

So you are certainly displaying -- it is certainly referring to the construct, the constructed field that could be the actual game to be played.  But it's not clear that depending upon the results of the test, it may or may not be the actual game to be played.  So we don't view it necessary to put that verbiage into the claim language for the jury to hear.

The final dispute on this claim element is the phrase -- if we go to the actual language of the claim, this language in completing the field at the end of the phrase.

We have two divergent interpretations of what this part of the claim refers to.  The Plaintiffs' construction would cover situations where the system completes the field, and it would also cover situations where a player completes the field.

The Defendants' construction is limited to when the

player completes the winning combination during the play of the game, and therefore, necessarily is in conflict with teachings of the patent relating to what it means to complete the field.

If you look at these passages in the specification, they actually refer to the system completing the field before player interaction. Looking at column four, lines 62 through 64 on the left-hand side of the slide, and lines four through six on the right-hand side of the slide, each of these refer to the field as being complete because the system has completed it, not because of player interaction.

So to adopt the construction that is being advocated by the Defendant is necessarily to adopt a construction that is in conflict or at odds with certain key aspects, key teachings of the patent itself and would, therefore, be overly limiting.

And since the patent teaches embodiments where the system completes the field in addition to embodiments where the player completes the field, it harkens to the Federal Circuit's warning in *Vitronics*, to harken as in the first case, That construction that excludes the inventor's disclosed embodiments is very rarely, if ever, correct.

And that is a warning that has been reiterated by the Federal Circuit at least 40 times since 1996. So 40 different cases. And there are over 200 district court cases that have cited this law since 1996.

This is a major principle of claim construction that

we believe the Defendants' construction is running afoul on.

THE COURT:  I apologize.  I was muted.  I was thanking you, Attorney Hill.  We have come to the end of about ten minutes, a little bit beyond ten minutes.

Let me turn to Attorney Gorman on term number four.

ATTORNEY GORMAN:  Your Honor, I was looking through my slides and realizing there is no possible way to get through it in ten minutes, so I'm going to pick my battles here.  And obviously, if there are any points that I don't address, please make sure that you make -- make sure that I answer every question that you have because I'm ready to go.

But let me sort of talk about sort of the fundamental issues here.  This phrase, this testing the game field dot, dot, dot in completing the field, you are not going to find that language anywhere in the specification.  You're not going to find it anywhere in the specification where the specification is talking about something happening and saying that sets the game field for explaining the game to the player dot, dot, dot.

So this is going to be another instance, Your Honor, where the claim language in the context of the claim is going to be informing the reader what is actually happening here.

It is interesting what we just heard from Mr. Hill, because notwithstanding what he said on the winning combination step, notwithstanding what he said on the determining step, in

fact, not withstanding what he said at the end of the testing step with respect to in completing the field, Plaintiffs' construction is very comfortable in this instance with going to the specification and then using that to completely rewrite the claim, which is, again, sort of inconsistent with the approach that they are taking other places.  It sort of demonstrates that they are taking a results-based approach when it comes to claims construction.

Your Honor, the case law is clear that the claims are of primary importance in the efforts to ascertain precisely what is patented.  And that claim construction, we agree, must avoid the dangers of the importing limitations from the specification.

But what the Plaintiffs are asking Your Honor to do is to rewrite the claim.  Your Honor's job is to give effect to the terms chosen by the patentee.  That's the *K2 Corp.* that we cite in our papers.  The specification is not a substitute for nor can it be used to rewrite the chosen claim language. That's the *SuperGuide Corp. v DirecTV Enterprise, Inc.* case, 358 F.3d, 875 Federal Circuit 2004, cited on slide 44.

But that's exactly what the Plaintiffs are doing here. They are taking language that the patentee chose to put into its claims, and even though that language was not specifically defined, they have now taken and substituted language that is preferable to them.

So where the claim says a winning combination more valuable than, they changed that to a better outcome, such as a higher prize level.  So no longer are we talking about a winning combination.  We are talking about outcome.  They will take the phrase the determined winning combination and they will change that to the outcome corresponding to the winning combination.  They will take the phrase is not generated inadvertently and substitute that with is not superseded by.

But there is nothing in the intrinsic record that suggests that the winning combination should be equated with the outcome for the winning combination.  This idea of more valuable they have read out of the claim.

They now have the word better in there.  Better, as you can see, is a much broader term and a less precise term than more valuable.  In fact, the word better, Your Honor, appears nowhere in the '223 patent.

Likewise, if you look at the word generated inadvertently, they have changed this language for is not superseded by.  Again, language found nowhere in '223 patent.

This is simply a backdoor effort to try and replace the terms as they have been drafted with language that gets to this concept of prize, because later on down the line when it comes to infringement, you're going to see that they are not going to be wanting to be talking about winning combinations. They are going to be talking about prizes.

I won't belabor this, Your Honor, because I think our papers cover why it's going to be important for to you clarify to the jury how various phrases within this testing step should be clarified to what exactly they are referring to; the game field, the game, the determined winning combination.

Case law is clear that the means there is an antecedent basis somewhere in the claim.  The jury needs to understand where this claim is referring to.  And the context of the claims, and I won't belabor the point here for sake of the argument, our briefs cover this, in every instance the context of the claim makes clear what testing the game field is, displaying the game to the player, and what the determined winning combination is.

It is particularly important, Your Honor, when you talk about the determined winning combination, because as we have mentioned in some of the claims, there is two different limitations, like claim one that refers to determining a winning combination.  Claim one will talk about determining at least one winning combination for each play of the game, and then later on it will talk about determining a winning combination after play of the game.

Testing step covers one not the other.  Your Honor should make clear which it is.

Let me address the point about in completing the fields.  And this is another instance, Your Honor, where the

Plaintiffs have come in and they have looked at a phrase in a vacuum and they have said well, let's just talk about what that means.  The question isn't what does in completing the field mean in a vacuum.  That is a four-word phrase that appears nowhere else in the claims.  In the claims the only time it is used is in this phrase.  So the real question for Your Honor is what does it mean in the context of this phrase.

This is another instance, Your Honor, where you need only look to the actual claims themselves, the plain and ordinary meaning of the language used in the claims and the context of the claims, to understand that a person reading this is going to understand that the testing step that is occurring here is testing a field that has already been constructed, and it's testing to ensure that something doesn't happen in the future.

So if you look, for example, at claim 44; claim 44, you can see there the testing step with some blue highlighting. This is the testing step in claim 44.  A person of ordinary skill in the art who is going to be reading this claim is going to understand a couple of different things.  First of all, it's going to be talking about testing the game field.  To test a game field, it needs to have been previously constructed.

So a person of ordinary skill in the art is going to understand it's testing that field that's referred to in the previous step, constructing a field.

It's also going to understand that it's testing the game field for a reason.  And the language says exactly what that reason is.  It's testing and it uses this language, to ensure that a winning combination more valuable than the determined winning combination is not generated.  We have highlighted that language in blue on the slide, Your Honor.

That language, its plain and ordinary meaning, ensuring something is not generated, is future looking.  The applicant did not say it's testing the game field to check that something was not generated.  The language on its face suggests that the testing is testing something that is going to happen.

What is the thing that is going to happen?  What they are testing to make sure -- actually I said it the wrong way. Testing to ensure that something does not happen in the future. What they're testing for is to ensure that there's not a more valuable winning combination that is generated inadvertently in completing the field.

Now, in completing the field, Your Honor can presume that that means something different than constructing the field, because the case law, including the Chicago Board of Options Exchange case that we cite in our brief, says that different words in a claim are presumed to mean different things.

That also makes sense, given the other language that to ensure is not generated, that this completing of the field

that they are talking about is going to be something different than the constructing of the field that has already happened. Which makes sense, Your Honor, because when you read the patent, the patent is talking about the idea of having a game where a player can use his or her skill to play the game, and it's the players skill that is going to be controlling the outcome of the game.

And so a person of ordinary skill in the art is going to read this testing step and say ah, that's what is happening; they're testing after they constructed a field to make sure that the player isn't going to do something that's going to result in a more valuable winning combination than the game wanted.

This is also evidence from the other language in the claim which we have highlighted here in red, Your Honor.  The claim itself is talking about the fact that the player is going to be playing the displayed game.  There is going to be an outcome resulting from the play of the game.  And the game is going to be a game, as displayed, is the actual game to be played.  You see that in the automatically displaying step.

As we are going to hear in a moment, actual game to be displayed was defined by the applicants in the prosecution history as a constructed field.

So putting this all together, a person of ordinary skill in the art is going to understand all of this and say

alright, what we know then is that the system at this testing step is testing a field already constructed to make sure that when the player plays the game, it's not -- he or she is not going to generate inadvertently a more valuable winning combination than what the system had intended when the player completes the field.

That, Your Honor, is the reason why, just from the context of the claim, we think it's appropriate for you to construe the term as we have done.

But Your Honor, it's not the only support for this. If you look in their papers, the Plaintiffs point to a portion of the specification which they say provides support for this limitation. They say, the prosecution, in their brief, that column six, lines 19 through 33 of the patent support this testing limitation.

Now, we disagree with that, Your Honor. And for time, I won't walk through all of the reasons for why I don't think that portion actually supports the testing limitations nor the portion that Mr. Hill just discussed.

But even if you give credence to this argument, even if you give credence to the idea that this portion of the '223 patent somehow supports the testing limitation, when you read that portion, and it's on the right side of the slide here, Your Honor, what you'll see -- sorry. I'm being told that my full screen is not up. Is that right, Your Honor?

THE COURT:  I see your screen, but it may not be the screen you want me to see.  It does have editing symbols on it.

ATTORNEY GORMAN:  Are you seeing a single screen or are you seeing two screens?

THE COURT:  Two.

ATTORNEY GORMAN:  Ah.  Sorry.  Let me just quickly do this, Your Honor.

If you'll see here on the right side of the slide, this is the portion that they, in their brief, say provides support for the testing limitation.  Even in this portion it's discussing the facts -- we have highlighted it here -- that the game is involving the player selecting the field element to obtain the highest value game outcome.  In other words, this is showing that there is a player that is actually completing the field.

So for all of those reasons, Your Honor, the Defendants' construction should be adopted by the Court as we have proposed.

Unless you have some further questions, Your Honor, I will stop.

THE COURT:  I do have a question for you, Attorney Gorman.  Your proposed construction does not substitute any terms for just the portion of the phrase more valuable than; whereas, Plaintiffs' proposed construction does provide a different language for that portion of the phrase.

Why is your position -- presumably your position is that more valuable than, its plain and ordinary meaning is sufficiently clear to the jury and it doesn't require construction.  Can you just explain why?

ATTORNEY GORMAN:  Your Honor, more valuable, I agree it is something that -- again, when I sit with my 11-year-old and I tell him something is more valuable to another, he understands this is a term that's used in the specification.  But I don't think it requires construction.  It certainly doesn't require a broadening, as the Plaintiffs have suggested, to make more valuable to mean better, because better is a much more ambiguous idea than more valuable.

THE COURT:  All right.  Thank you.

Let's move forward then to terms five and six, which I understand will be addressed simultaneously.  And if my notes are accurate, I believe I'm expecting to hear from Attorney Hill first on this combination of terms.

ATTORNEY HILL:  Actually, I think that the Defendants are going first on this one.

THE COURT REPORTER:  Okay.  Thank you.

ATTORNEY GORMAN:  That's right, Your Honor.  And my colleague, Ken Davis, is going to be presenting the argument on this.

THE COURT:  Okay.  Thank you.

Attorney Davis, I'm told by my courtroom deputy that

there is some glitch with your audio.  She is working on that on her end.  I don't want you to get too far into your argument thinking we are hearing you when we're not.

ATTORNEY HILL:  I can't hear him, either, Your Honor.

THE COURT:  Right.  Okay.  Nod if you can hear me, Attorney Davis.  Okay.  I'm going to suggest that you perhaps log off and log back in.  We will not proceed without you.  It is because your audio is not enabled, I'm told is what the problem is.

(pause.)

ATTORNEY DAVIS:  Can you hear me now?

THE COURT:  I can, yes.

ATTORNEY DAVIS:  Your Honor, can you see the screen?  Does that work?

THE COURT:  It does.

ATTORNEY DAVIS:  Okay.  Great.

This is the term automatically displaying an actual game to be played, et cetera.  As we have already discussed, the parties have largely reached an agreement on a big part of this, that the sole agreement remaining now has to do with the phrase actual game to be played.

And the significant difference here is that the Defendants' construction requires that it's the constructed game field of the game to be played, whereas, the Plaintiffs now require that the game to be played includes an otherwise

unknown system-generated attribute of it.

So Your Honor, the first thing I'll mention is that the phrase actual game to be played doesn't exist anywhere in the patent specification. It didn't exist in the application that was originally filed. It was introduced for the first time during the prosecution of the patent. And it's important to understand how that came about to appreciate what the meaning of this term is.

You are not going to be able to go to the specification and find this term and see how it was written in context. Our definition is completely consistent with the way the applicant defined it in the specification -- I'm sorry -- in the prosecution history. And as the *Phillips* court has said, When applicant make arguments during the prosecution history, those arguments are limited. They can reduce the scope of the claim.

And that's what happened here.

So that I don't run out of time in saying it, the otherwise unknown system-generated attribute of it doesn't exist anywhere in the specification in the prosecution history. That's a verbal construct that is completely divorced from the way the applicant defined actual play of the game in the prosecution history.

So we have talked about some claim construction principles already, but I think it's good to touch on three of

them here.  The first is that a court should not adopt construction that's different from the ordinary meaning or it should adopt it when an applicant defines a term in either the specification or the prosecution history, and that's what was done here, there was a definition in the prosecution history.

The other thing is courts have looked at whether the phrase i.e. is definitional.  And it can be definitional even when it contradicts the plain language of the term.

And the third concept is that the Federal Circuit has rejected the view that the only way to deviate from the plain meaning is with express disavowal or express definition.  Those can be by definition.  We do happen to have express definition in the prosecution history, but you can also say it was implied.

So I'm going to skip some slides here, I think, and just jump to this slide.  And stop me if I'm giving you information that you know.

But Your Honor, when an application is filed, there are claims that define what the applicant thought their invention was going to be when the application was filed.  A patent examiner examines those claims, searches for prior art, examines the claims for clarity, and it often will issue a rejection of those claims.

That's what happened here.  The examiner found prior art and wrote to the applicant in an Office action, we don't

think the invention that you say you invented is patentable, we've got prior art that teaches the very same thing or suggests the very same thing that you are trying to get the patent.

In this case the applicant did two things.  They made amendments to the claims to overcome that rejection, to distance what they claim their invention was from the prior art that the examiner had identified.  That's one of the ways that the courts have said an applicant can reduce the scope of their claimed invention.

So they made amendments to the claims.  And then they made argument and explained to the examiner and to the Patent Office what those amendments meant.  So you can see here in the strike-through and the underline how the applicant made those amendments.  You can see in what used to be the preview step, which is sort of two components, struck two components down, they added the concept of automatically displaying the game field to a player prior to initiating activation of game play.

And they explain in the prosecution history, and this is a condensed version of what was argued, if you look at the sentence that begins right above the yellow, To further clarify this step, what they said was, The claims have been amended to recite automatically displaying the game field on the touchscreen display to a player prior to initiating activation of game play.

So they talked about automatically displaying the game field.

And then they said, This recitation clarifies that the actual game to be played; i.e., the game field constructed in the first recited step, is automatically displayed to the player in order for the player to decide whether to initiate play of the game.

You can see here the phrase actual game to be played is now introduced into the prosecution history.  And they have explained to the examiner, for purposes of avoiding the prior art, that that means the game field constructed in the first recited step.

If you look back, the first recited step being undertaken here is constructing a field having a plurality of elements for the interactive game played.

So this is an instance where the applicant has made clear expressions of what they view their invention to be.  And the *Phillips* court has said that is limiting.

And they went on to explain the benefit of that.  They said, When the player hits the play button -- this is now four or five lines up from the bottom -- he's initiating play of actual game field that is displayed.  Thus, the player can study the game field carefully to determine the optimum location of the wild symbol before he makes any commitment to play the game.

So they have explained what they wanted to change. They have told the examiner what that means. And they have explained the benefit of it.

Now, at that point, that phrase, an actual game to be played, was not yet in the claims. So prosecution progressed. The parties had a conversation. And then the examiner issued what is called an examiner's amendment. He took it upon himself to change the claim. And he, with the concurrence of the applicant, made this change.

This is claim 47. It became -- it was renumbered to claim 44. So this is one of the claims at issue in our case.

And it was at this point in that examiner's amendment where he wrote automatically displaying an actual game to be played. Now, where did he get that language from? It wasn't in the application as originally filed. It wasn't in the claims. The only place he could have gotten it from was from -- dramatic effect, Your Honor. I apologize.

(pause, technical issue.)

ATTORNEY DAVIS: Sorry. Reloading.

This is the examiner's amendment. He got the language from the applicant's arguments, was going to be my point.

So you know, Your Honor, we feel like you can rule in our favor on just that basis alone. But it's important to also understand that this has support in the specification. This is consistent with the way the applicant has described its

invention in some embodiments.

In the abstract of the patent, for example, it talked about a field of game symbols being presented on the game display as a preview.  That's consistent with this construction.

Similarly, in figure six and the accompanying text, they described a field presented to the player as a preview. It's also consistent -- this is important, Your Honor.  It's consistent with other claims.  So you can see here, dependent claim 45 and 46 refer to displaying an additional game field.

Well, the only place where that original game field could have been displayed would be the automatically displaying an actual game step of claim 44.  Claim 45 depends from claim 44.  And there is no other displaying of a game field other than the automatically displaying an actual game limitation.

So it must be that the actual game field displays are -- sorry -- the actual game to be played displays a game field.  Other claims are consistent with that, as well.

There's been some -- the Plaintiffs have quarreled with whether i.e. can be definitional or not.  Each of these cases has some difference; i.e. can be definitional.  There are times when the context will dictate otherwise.  The context here does not dictate otherwise.

THE COURT:  Attorney Davis, we have come to the end of ten minutes.  So unless there is a crucial point, let me pause

here for a moment.

The Court is in receipt of both sets of slides in PDF form. So this might be an opportune moment for me to ask whether, Counsel, are you in agreement that the slides can be docketed as exhibits to today's hearing, Plaintiffs' Exhibit 1 and Defendants' Exhibit 1?

ATTORNEY DAVIS:  We are, Your Honor.

THE COURT:  Attorney Hill.

ATTORNEY HILL:  We have no objection to that.

THE COURT:  Just to -- I mention that to provide to Counsel that the Court will have your complete set of slides as an exhibit to today's hearing, and I will review all of them as I work my way through each of the terms. So to the extent that you don't have an opportunity to refer to one or more of your pages, or slides, please don't have concern about that. They will be part of the record.

So with that, Attorney Davis, let me turn to Attorney Hill on actual game to be played.

ATTORNEY HILL:  As Counsel Davis alluded to in his argument, the parties have resolved all differences except for the scope of the actual game to be played. And the disagreement -- the disagreeable language from the patent owner's perspective is the constructed game field of the game to be played.

Now, I realize that the prosecution history argument

is very important.  And I am going to get there.  But if I could just beg the Court's indulgence to flow through the order of intrinsic evidence, as *Phillips* described it, I'll start with the claims, move through the specification and then conclude with the prosecution history, because it's important in evaluating the prosecution history argument for the Court to understand what the embodiments are of an actual game to be played in the patented document itself.

First of all, just as a matter of plain, ordinary language, the constructed game field of the game to be played is necessarily narrower than the scope of the claim language of an actual game to be played.  That's inherent in the meaning of the word of in that expression.

In the specification, we point to a sixth embodiment that is shown here, quoting from column 11, starting at line 43.  And in this particular embodiment of the preview of display -- preview game display feature of the invention, it refers to electromechanical or electronic games, such as a slot machine, having a plurality of spinning reels.

What I have done on the right-hand side, which I'm having difficult seeing because all of your pictures are covering it up.  But the All Aboard! slide would be an example in this embodiment.  Even if it only showed one of those lines rather than three of the five lines, it would be exactly what the intrinsic evidence is describing here when it says

displaying one or more lines of symbols in column 11, one to 47 and 48.

And then it says something very interesting.  It says quote, The displayed game, end quote, could actually be the result which may or may not be a winning combination of symbols.

So in the example to the right of this passage, if these sets of three symbols were for the next game and showed a winning or non-winning combination of symbols, that would be, according to the parlance of the inventor, a displayed game.

And we don't understand -- and we'll point this out in the brief.  We don't understand why they would take issue with actual game to be played versus displayed game.  They appear to be referring to the same construct.

And in the construct of the Tic-Tac-Toe game, for example, if you showed the player that the next game to be played was a result of three Xs in a row and some but not all of the game symbols being shown to complete the field, that would still be displaying an actual game to be played for the user.  The player would understand the nature of the game and would also understand an unknown system-generated attribute of that game.

The reason why that's important to understand is the entire context of this invention is about creating a gaming platform that allows for skill to predominate over chance.

There is only two ways you can do that.  You either elevate the level of skill in the game, and/or you reduce the role of chance in the game.  Obviously if the player is seeing a critical aspect of the game to be played, then that is lessening the role of chance in the game because the player already knows that attribute.

Again, we harken back to the *Vitronics* case, where if it's disclosed in the specification as an embodiment but the inventor is using to describe its invention, it's rarely ever correct to adopt a construction of the term that eliminates that requirement and would require highly persuasive evidentiary support, which was wholly absent in the *Vitronics* case.

THE COURT:  I'm sorry.  Attorney Hill, you lost me a little bit.  I am familiar -- I see the quote to the *Vitronics* by the Defendants' case, but I don't understand its application to the previous slide.  Can you please go up one slide?  You are showing me an embodiment.  I don't see -- again, I don't mean to be obtuse.  Maybe I'm missing it.  I don't see the phrase an actual game to be played in what you're telling me is an embodiment.  I'm not following your logic.

ATTORNEY HILL:  Okay.  So it is saying the -- so there is two -- we ground our argument in two points from this language, Your Honor.  I realize it doesn't literally use the phrase actual game to be played.  That language was not brought

into the claims until the examiner brought that language into the claims. But actual game to be played is a game that is being previewed to the player. That's how we see it.

So when the first sentence of this passage refers to the preview display could also be implemented, we take that as a reference to an actual game to be played can be previewed to the player. That analysis is furthered in line 48 when it uses the phrase the displayed game in reference to an incomplete game board, because the prior sentence talks about displaying one or more lines of symbols.

And that's illustrated in the All Aboard! game board that I'm showing here, is that you are not showing all of the symbols. You are not showing the fully-constructed game field to the player. But the player looks at it and sees critical information about the upcoming game and recognizes that this is an actual game to be played and that if I press play, I'm going to be seeing these combinations as part of the fully-constructed game field.

And that is a disclosed embodiment of the inventor as he is attempting to explain how you can implement a platform that will raise the level of skill and lower the role of chance in the game play.

And that's why we say if you adopt their construction, you're necessarily saying that that embodiment, you are drawing an X over and it's not going to apply, because you will be

narrowing the actual game to be played to only an embodiment that shows a fully-constructed game field.

Now, the only argument that we -- that we can divine from the briefs for why would you do that is if -- is that the word i.e. is used in the prosecution history to explain what was then a limitation of displaying the game field during prosecution.

The Federal Circuit has been clear in multiple cases that when the use of i.e. in either the specification or the prosecution history would, if taken as definitional, result in the elimination of one or more embodiments of the inventor from the patent document itself, the Federal Circuit prefers an interpretation of i.e. that is explanatory rather than definitional.

So when we look at the prosecution history, we have to be mindful of that line of Federal Circuit cases as well as -- and those cases are cited in our brief in addition to the slides here.

But we also have to be mindful of the warning in *Phillips*.  Because Mr. Davis refers to *Phillips* and says that *Phillips* sanctions the approach of looking at the prosecution history and using it to narrow the scope of broader claim language.

However, there's an important statement in *Phillips* that Mr. Davis doesn't address.  That is that because the

prosecution history represents an ongoing negotiation rather than the final product of that negotiation, it often lacks the clarity of the specification and, thus, is less useful for claim construction purposes.

This is a textbook case for why *Phillips* makes that statement. Because in the Office action where the i.e. phraseology is used, you can see that at that point in time the phrase actual game to be played was not a claim limitation. Instead, the claim limitation was displaying the game field.

So in attempting to argue how to differentiate this claim and this limitation from the *Vancura* prior art reference, the statement about actual game to be played is made as a way of furthering the explanation of what this displaying the game field is. It's displaying the game field of the actual game to be played; whereas, *Vancura* was not showing any information about the game to be played.

Now --

THE COURT: Attorney Hill. You have come to the end of ten minutes. And I guess I'm having trouble seeing the forest for the trees here. So could you take a step back and sort of help me understand what is the importance of the difference in the language here between the parties' proposed constructions?

ATTORNEY HILL: Yes. The difference between the parties' constructions is that the Defendants' construction

requires the display of the game to be played to have a fully-constructed game field of that game for the user to see, whereas, we believe that it is adequate that it describe the game and provide the user with at least one key attribute of the upcoming game to be played that does not have to show a fully-constructed game field.

If I can just add one thing regarding this prosecution argument. There is case law where the Federal Circuit has held that a statement in the prosecution history rises to the level of a clear and unmistakable statement of the scope of the claim. I have not been able to find any Federal Circuit case that ever looked at statements made in the prosecution history about language that is not even, at that time, in the claim and used that as the basis to say that that language was either lexicography or disclaimer of plain scope to be associated with the plain and ordinary meaning of the claim language itself.

And we simply don't have any statement by the examiner about why he incorporated the language actual game to be played at the finish line other than his comments that this claim as a whole, taken as a whole with all of these elements, is sufficient to distinguish over the prior art.

And they have not shown -- the prior art in this case was the *Vancura* reference. The Defendants have not shown anything to the Court about why the *Vancura* reference necessitates their restrictive reading of the plain term actual

game to be played; why that limiting definition is necessary to read over the prior art to make the claim patentable.

And as opposed to our position, which is that when the test -- once the testing of the game limitation was added here into this claim, which came at the very end of prosecution, the claim was in condition and allowance. And it's equally likely that the examiner was broadening the language from a game field of a game to be played to an actual game to be played in order to preserve all of the inventor's disclosed embodiments of what an actual game to be played can include, including a game where one line or a few lines of a larger game field are shown to the player in advance along with sufficient information so that the player understands what the game is to be played.

And you can see this carried out in a variety of contexts. If you take an electronic video poker game, for example --

THE COURT: Attorney Hill, I understand your argument. I do. We need to move on.

ATTORNEY HILL: Okay.

THE COURT: What I would like to do at this point is, we have been holding this argument now for two hours and 15 minutes; I don't know if Ms. Fausnaught needs a break, but I do. So we're going to take a five-minute break. We will resume at 11:55. All right.

Mute your audio and your video. We are off the

record.

(A brief recess was taken.)

THE COURT:  Okay.  We are now at term one.  And I believe Plaintiff is presenting first on this term.  Is that correct?

ATTORNEY HILL:  Yes, Your Honor.

THE COURT:  All right.  Attorney Hill.

ATTORNEY HILL:  Thank you.  Can you see my screen?

THE COURT:  I can.

ATTORNEY HILL:  Okay.  So we're going to be addressing game processor now.  The way that claim 44 uses game processor is to recite it for generating an interactive electronic game on the game terminal and then to describe a series of six different configuration steps that are used in order to generate that interactive electronic game on the game terminal.

The Defendants propose that that means that this claim is invalid because their argument is that game processor is a -- is a means-plus-function term that is masquerading as non-means-plus-function language.  And because it is a means-plus-function term, every single one of those six configuration steps must be supported by an algorithm or else the patent is indefinite under the Federal Circuit's decision in *Aristocrat* and its progeny.

Our argument is that the use of game processor connotes some structure to a person of ordinary skill in the

art so as to reinforce the rebuttable presumption that exists when the word means -- when the words means for are not used in a claim; that this is, in fact, not purely functional claiming. Therefore, it is not a means-plus-function term.

So to begin, we will look at the language of the means-plus-function statute, which says that it refers to using language for a specified function without the recital of structure, material or acts in support thereof.

The law is clear that this means-plus-function statute was designed to apply to purely functional claiming in order to prevent an inventor from being able to capture literally anything under the sun that performs a function in accordance with the language of the claim.

However, the Federal Circuit has been equally clear that connoting precise physical structure within the claim is not a necessary condition to avoid the application of the means-plus-function statute.  That's a citation as recently as last year.  The Federal Circuit made that statement in deciding that the term conduit was not a black box term such that means-plus-function law would apply.

So we want to do a quick synopsis of what we view the law on this issue, to really boil down to it.  And then I'll turn to the actual evidence relating to the meaning of game processor as understood by a person of skill in the art.

Starting with the Federal Circuit's decision in 2003

and 2004 in the *Apex* and *Linear Technology* cases.  Those cases both involved language relating to a circuit for performing various functions.  And out of those cases came the principle that is stated at the top of this slide, A structure connoting term like circuit, for example, coupled with a description of its operation in the claim is not subject to means-plus-function law.

That is a fair statement of the Federal Circuit's holdings in both of those cases.

And in preparing for this hearing we found that the Federal Circuit has, this year, decided a case called *Samsung Electronics America versus Prisua Engineering*.  And I put the claim language that the Federal Circuit was addressing on this slide in the blue background so that the Court can see just how similar this claim language is or how this claim is structured to the claim that is at issue in this case.

There, it was a digital processing unit, where the digital processing unit was performing six different functions; identifying, extracting, storing, receiving, spatially matching and performing substitution, all relating to video image capture and video image data.

Now, the Patent Trial and Appeals Board, in looking at this claim, had decided that digital processing unit was a black box term.  It really did not -- and they adopted the reasoning that the Defendants are advocating here, which is

that a digital processing unit, even if it had some structure, it would just be a generic computer.  And a generic computer doesn't perform all of the functions that are in the claim. Therefore, the claim must be invalid.

The Federal Circuit reversed and finds that digital processing unit was not, quote, Purely functional, end quote, where the evidence showed that the term connoted a computer.

I might add that this holding is a direct reputation of their ex parte *Lakkala* case, which applied very similar reasoning to the reasoning that the PTAB applied in the *Samsung* case and got reversed for it.  It is just there was no appeal in their *Lakkala* case.

So what does that all mean?  We are looking for whether game processor connotes some structure to a person of ordinary skill in the art, like a computer was the sum structure in the *Samsung* case and like a circuit was the sum structure in the *Apex* and *Linear Technology* case.  And if so, whether or not there was surrounding language in the claim relating to how that structure should operate in order to perform the functions of the claim; and if so, then it is not a means-plus-function claim.

And I might add that it is their burden to overcome the presumption that this is not a means-plus-function claim. And the case -- the *Linear Technology* case, the Federal Circuit was very clear that a defendant cannot overcome that

presumption merely by pointing to the language in the patent document itself and then pointing to Federal Circuit case law on the issue. There has to be something more in order to rebut that presumption.

In terms of structure, we are -- they criticized the quality of the specification because it doesn't do more to explain what is meant by game processor. The terminology, to a person of ordinary skill in the art, is infinitely regressive if their position is accepted, because you don't have to -- you are not supposed to have to, in drafting your written description, explain to a person of ordinary skill in the art the things that a person of ordinary skill in the art already knows. And a person of ordinary skill in the art already knows what a game processor is.

For example, in the Kelly patent, the '258 patent, shown on this slide, Kelly stated in the language below the block diagram on the right-hand side of the screen, Kelly stated that figure 1-A is a block diagram of a game processor used in the game apparatus of figure one.

Now, the Defendants, in their brief, say that Kelly is just using special lexicography. But their expert declaration doesn't back that up. Their expert declaration from Mr. Friedman does not say that he views what Mr. Kelly is doing as using special lexicography. No. Kelly is using the term game processor the way it is normally used in accordance with

persons with ordinary skill in the art.

And there is no debate that what figure 1-A is showing is structured.  This is an embedded microprocessor.  One can see that the circuit lines between the microprocessor and other objects, that the microprocessor definitely has to have these connections or circuits between it and the input/output devices in order for Kelly's -- and Kelly makes it clear that one of the things that the game processor can do is it can display a game, which means that --

THE COURT:  Attorney Hill.  I have to interrupt.  We are already at ten minutes.  Let me ask you this.

Assume that the Court agrees with you that this is not a means-plus-function term.  I would like to you address the sentence in the proposed constructions, because Defendant does have an alternative for proposed construction in the event the Court so rules.

ATTORNEY HILL:  Right.  Well, actually if memory serves, and I will put this up just so I can make sure, there are really two points that need to be addressed here.  One is their use of the word conventional in front of CPU or microprocessor and the other is our inclusion of input/output circuitry in the description of the game processor.

So I'll start with theirs, just because it's easy for me to address.  The word conventional, harkening back to our argument at the motion to dismiss, the Court will recall that

step two of the *Alice* test in this context is whether or not the game processor that is configured -- as configured by winds up being something that the Defendants can demonstrate was conventional, well understood or generic to a person of ordinary skill in the art.

The concern here is that including conventional is just too high -- (loud squeal on line)-- a charge and that they would wind up using the word conventional to try to use it to their advantage on another issue in the case where we are not arguing about the CPU or the microprocessor but the special way that it's configured.

And we seek to avoid jury confusion on the question of that subject.

So with respect to the second issue, which is the input/output circuitry, again, I was just about beginning to make that point in the description, what is shown here in the block diagram.  You can see the connections coming out of the microprocessor going to other components.

THE COURT:  Mr. Hill, just a moment.  Is that figure 1-A from our patent or the Kelly patent?

ATTORNEY HILL:  No.  This is figure 1-A from the Kelly patent describing what a game processor is, how a game processor --

THE COURT:  You're proposing input/output circuitry with respect to the game processor at issue in this case?

ATTORNEY HILL:  That is correct.

Well, Your Honor there are a litany of patents in the prior art that use terms like microprocessor or processing unit or in this case, game processor.  So this term was incorporated into the prior art by Kelly in a patent that was applied for in 1997 and granted in 1999.  So at least as early as 1999, persons of ordinary skill in the art are using the phrase game processor to describe what is shown in figure 1-A.

It is an embedded microprocessor driven device.  It must have input/output circuitry in order to connect to the other elements of the gaming terminal, including but not limited to what claim 44 describes as the interactive game display in the first, constructing a field, having plurality of elements for the interactive game display and automatically displaying an actual game to be played on the touchscreen game display.

So a person of ordinary skill in the art looking at -- understanding what a game processor is and reading how the game processor operates in the context of this claim is going to understand that there is input/output circuitry associated with the microprocessor.

If you look at a microprocessor that is snapped into a printed circuit board, you always see prongs that are going out on all directions of the square chip.  What those are, those are tiny electrical connections that, when fitted into a

printed circuit board, allow current to flow across the printed circuit board to the other devices, like in this case the interactive touchscreen game display.

Hopefully that answers Your Honor's questions.

THE COURT:  You have.  Thank you.

Let me turn to -- who will be handling this; will this be Attorney Gorman or Attorney Davis?

ATTORNEY DAVIS:  It will be me, Your Honor.

THE COURT:  Okay.

ATTORNEY DAVIS:  Bear with me while I try to share my screen here.  I'll skip so many of these preliminary slides, Your Honor.

Game processor is a means-plus-function term.  If you conclude that it is, then claim 44 is invalid.  The Plaintiffs have not said that in the event that the game processor is determined to be a means-plus-function term that there is sufficient structure in the specification such that if you conclude that it is means-plus-function, the claim is invalid.

And so what the *Williamson* case has said is that where the phrase lacks the word means, the claim will nevertheless invoke the means-plus-function statute if the challenger can demonstrate one of two things; the first is that the term fails to recite sufficiently-definite structure; or two, recites function without reciting sufficient structure for performing the functions.

And so here, there is insufficiently-definite structure and there is insufficient structure for performing the functions.

Now, the means-plus-function statute is constructed so that applicants can claim their inventions in terms of what those inventions do, what elements in those claims do, as opposed to what they are, if you will.  They can functionally claim their invention.

There's a tradeoff for that.  The tradeoff is if you claim it functionally, you have to describe the structure and the specification, and the claim will be necessarily limited to that structure.  So there's a tradeoff that applicants use.

Here, the applicants have chosen to frame their invention in terms of mean-plus-function format.  Typically the way that's done is you would say a means for doing X.  Right.  So here, what they have done, instead of using the word means, they have used the word game processor; a game processor for generating or a game processor configured for or constructed for determining.  This is means-plus-function format.

Now, what the *Williamson* court has said is that you -- if the claim lacks certain inputs and outputs other than at a very high level, it demonstrates that the claim is a means-plus-function claim.

And if we look at just the *Williamson* case briefly, here is claim 44 on the left and here is the claim that was

addressed in *Williamson* on the right.  This is the claim that *Williamson* said this did not have sufficient input and output structures.  Right.  The distributed learning control module was the element at issue.  Right.  It doesn't say means.  It says distributed learning control module.

They found that that was means-plus-function format and that these terms didn't provide sufficient structure to say that, from means-plus-function treatment.  You can see that there is very little about input/output structure in these claims, in the claim 44.

Basically it's configured for constructing a field with a plurality of elements for the game display.  It's not describing anything about how it accomplishes that construct.  All of the elements in there are just talking about what the field looks like.  It has nothing to do with how it's constructed.

Similarly, determining if a player has decided to play the displayed game, well, there is nothing about how that's achieved.  In fact, there is nothing anywhere in this specification about how that's achieved.

Let's go back.  The word game processor exists one time in the entire specification.  And how do they describe it? They describe it as having these nondescript components for constructing.  They don't even say what the components are. There is an embedded computer processor.  But again, that has a

different function than the functions that are being claimed in the patent.  This is set up as a classic means-plus-function format.

I'll just address very quickly, the law is replete with cases where people go to a dictionary definition and say oh, processor.  See, it's a thing.  Therefore, it's not means-plus-function.  Well, there is plenty of cases that hold that where the word processor is in the claim, it is still means-plus-function.

Why are those different?  Because they say something about what the processor does, how it interacts with other components.  A great example of that is the case cited by Plaintiff, the *St. Isidore* case.  That's not a case that's controlling.

And by the way, Your Honor, we have not had an opportunity to address *Samsung*.  I know that Plaintiffs raised it for the first time today.  If you are going to make any kind of judgment about this term based on that, we would like the opportunity to respond to that and brief it.

Looking back at *St. Isidore*, there are multiple terms at issue there.  They found in one case, for one term that an algorithm was sufficient.  But when it came to looking at the processor limitation in *St. Isidore*, they found that the processor invoked means-plus-function.

So to simply point to a dictionary is unavailing.

I do need to address a very important issue here, which is the question isn't is there a thing called the processor.  All right.  If that was the case, there would never be processor cases that found means-plus-function.

The issue is is there sufficient structure to satisfy the exactness of the claim.

As evidence that there is insufficient structure or insufficient definiteness, if you will, in the way that the Federal Circuit puts it, the Plaintiffs haven't come up with a consistent definition.  They use the Cummings declaration to say oh, the thing that I circled in red is the game processor.

Then Mr. Crevelt in his deposition, when asked, you know, well, what are you saying is the game processor, is it the whole board or is it just the processor.  He says no, it's the whole board.  It's not just the thing circled in red.

Then when they get to Kelly, they say well, the thing in the red box is the game processor.  But a microprocessor is just one of the elements of what's in that red box.

So how is it that the game processor is a subclass of a microprocessor, when in this instance the microprocessor appears to be an element of the whole game processor?  So it's completely inconsistent.  That is not what the *Williamson* court thought was sufficiently-definite structure.  That is grasping for structure.

As for the input/output introduction, the language

that they try to introduce into their alternate construction, I'll just say that an important factor in *Williamson* was whether the term and the claim had sufficient inputs and outputs or whether they were just at a very high level.  It looks like -- it looks like the Plaintiffs are trying to put the rabbit in the hat a little bit with inputs and outputs here.

Whereas, the conventional language is consistent with everything in the prosecution, there is nothing in this patent that says anything about this being unconventional.  It's completely consistent with that.  Frankly, it's unclear how Plaintiffs are maintaining an argument that somehow the processor would be known; the people of ordinary skill at the time of filing the application, that the game processor would be known.  But yet, it would also be a special game processor that can avoid treatment under the 101 statute.

And I'll also point out here that, you know, when it comes time to talking about their program instructions, they are perfectly comfortable referring to the program instructions as conventional.

And so we have heard a lot of different things here. We have heard first the processor is unconventional.  Then we heard it is.  Then we hear that it's the program instructions that are important.  Now they are saying oh, those are conventional.  I think clarity to the jury would be important

there, Your Honor.

THE COURT:  Attorney Davis, I want to just direct your attention to two specific questions.  Again, as I said to Attorney Hill, assume for a moment that the Court determines that this is not a means-plus-function term, and so I now am in the process of examining the two competing proposed constructions.

You have just addressed why you believe the term conventional needs to be included, but you haven't yet had an opportunity to address why, I assume, you disagree with the inclusion of input/output circuitry.

ATTORNEY DAVIS:  I do for a variety of reasons.  First of all, it doesn't exist anywhere in the patent.  It's a construct after.  It's unclear what input/output circuitry they are referring to.  They point to Kelly somehow as evidence of that.  But the black box in Kelly is unclear.  So I think there is -- there's really no basis for adding the input/output circuitry.  It doesn't exist in any other claim.

It's not like -- it doesn't seem that the jury would need to understand why it has input/output circuitry.  It just seems to be a needless addition.  That's why I felt like it seems like they are trying to put the rabbit in the hat a bit on this term.

THE COURT:  Thank you, Attorney Davis.  We are going to turn now to term number seven.  I believe if my notes are

correct, the Defendants are going first on this term.  Am I right?

ATTORNEY DAVIS:  We are, Your Honor.

THE COURT:  Okay.

ATTORNEY DAVIS:  So the issues are the same here. Perhaps more stark.

So the question here is whether program instructions are means-plus-function terms.  Again, if you find that they are, then this claim is invalid because the Plaintiffs have taken the position or not taken the position that there is any structure in the specification that would support a means-plus-function reading of this.

These are also written in means-plus-function format. Program instructions that construct.  Program instructions that determine.  That test.  Again, these are very similar to the claims that were addressed in the *Williamson* case.  There is, again, nothing other than very high level input/outputs.

Program instructions are used as a placeholder for the thing that does the construct or the thing that does the determine.  In fact, when you look at claim 51 and you compare it to claim 44, the program instructions in claim 51 do the same thing that the game processor is supposed to do in claim 44.  They are just swapping out the terms.  It's just a place-hold.  It's a noth word in the terms of *Williamson*.  That is strong evidence that the applicant was availing themselves

of this means-plus-function statute.

Again, we can look at comparisons with *Williamson*. And looking at just the program instructions term, for example, program instructions that determine if the player has decided to play. There is nothing structural in there. There is no connection to any other element of the claim. There is no explanation of how the program instructions achieved that.

And you know, even if you read program instructions to be code, the case law is that code itself can be a means-plus-function term, if written in this format and absent the type of structure that's required to avail yourself of a different approach.

So we believe that, again, this is pretty clear that these are means-plus-function terms. And so -- and I would point out that the Plaintiffs have said in their proposed construction that these are nothing more than conventional commands that can be executed by a computer, nothing unusual about them or meriting a different construction.

And the same issues would apply as far as dictionary definitions and case law. The real question is not whether program instructions in and of themselves can be found in a dictionary to mean something. The question is, is there sufficient structure or is the applicant really using this as a placeholder really to just describe the thing that does the function.

That is the case here, Your Honor.

THE COURT:  Well, this is a magical moment, Attorney Davis, because I think there's actually an agreement reflected on the slide; an agreement only if you assume that I determine the term is not a means-plus-function term.  But an agreement, nonetheless.  So I am glad for that.

Let me turn to Attorney Hill.

ATTORNEY HILL:  Thank you, Your Honor.  Claim 51. That is the claim at issue that uses the program instructions language.  If you look at it in the broader context and you read the introductory paragraph of the claim, it refers to a computer program product.  And the specification contains language describing that there is an alternative embodiment where the invention -- the inventor's invention resides in a software program.  That is what is being described in claim 51.

The computer program product comprises a computer-readable storage medium.  It would be like a ROM, for example.  That's where a computer program is broken down into its code and the code is executed by the game processor as described in the claim.

The question is whether program instructions as used here, in part, again, some structure to a person of ordinary skill in the art.

Otherwise, the legal issues in question are very much the same.

The evidence here shows objectively that this is structural.  This is recognizable.  Program instructions are understood.  Instructions are defined terms in the computer arts.  And code and program instructions are looked at synonymously.

I might add they are treated synonymously in the case law, as well.  The response -- Judge Brinkema's decision out of the Eastern District of Virginia in the *AmDocs* case, I think, provide particularly a good contextualized explanation of how you get to the conclusion that code in a software program is structural as viewed from a person of ordinary skill in the art.

But the response brief that the Defendants filed states *AmDocs*, the claims were different because the program instructions here provide no information on how those instructions operate.

Actually, if you look at the claim in the *AmDocs*, it's very similar; a computer program product, computer-readable storage media, and it just describes three bits of computer code, each for performing -- each for accomplishing a particular objective.

There is no magic in the claim here in *AmDocs* that allows that case to be differentiated from the instant case.  And the argument was made in the *AmDocs* case that because computer code was being used for mark-able functions, it must

not be able to provide sufficient structure to a person of ordinary skill in the art. The court found that argument not convincing stating, quote, Simply because a claim term is capable of performing numerous functions, the term is not devoid of structure.

Now, I want to contrast that with a case that is cited in the Defendants' response brief, because they are extremely light on any authority in support of their position on the programming instructions issue. So they muster up Judge Stark's decision in the *Arendi* case. And the way they put it in the *Arendi* case, you would think that Judge Stark went through some lengthy analysis to reach the conclusion that program instructions are not structural. That is simply not the case.

On the left-hand side of this slide is the joint statement in the *Arendi* case that was submitted to Judge Stark. The second term down is determine question. In one claim that is not at issue here, it was means for, including a means for inserting the information located into, into the document.

In claim 98 that is at issue here, it was not means for but instead computer-readable medium, including programming instructions for inserting the information. And the Plaintiff, *Arendi*, said here are the structures. Here are the structures. Here are the algorithms.

Basically *Arendi* presented this to the court as a

means-plus-function claim as well as the Defendant.  And Judge Stark even saw fit to note in footnote 27 that *Arendi* identified claim 98 as including the means-plus-function limitation.

So it's not clear to me when *Arendi* decided they wanted to retreat from the means-plus-function issue.  But if you read this opinion, Judge Stark makes quick work of this issue in light of the fact that it's presented as a means-plus-function claim in the joint statement, which is definitely not the case here.

A couple of additional authorities came to our attention in preparing for the hearing today.  There is the *Kit Check* case out of the Southern District of Ohio last year holding that the phrase computer-readable medium and computer-executable instructions is not subject to means-plus-function or that it is generally accepted that instructions or code recite structure.

And the *Blitzsafe* case from Eastern District of Texas is another case that was not cited by the parties in the briefs.  But again, holding code portions not a means-plus-function term.  Thank you.

THE COURT:  All right.  So Counsel, that brings us to the end of our terms.  What I will do at this point is I will admit Plaintiffs' Exhibit 1, which is the complete set of slides.  I will also admit Defendants' Exhibit 1, Defendants'

complete set of slides.

I note yet currently on the screen is slide 54 and includes two cases that have been characterized by Plaintiffs as not cited in the briefs.

Earlier Attorney Davis requested the opportunity to submit a response to address the *Samsung* decision, which was addressed today but not argued in the briefs.

So what I propose to do is to give an opportunity to both sides to submit a short letter brief addressing the cases cited on Plaintiffs' slide 54 as well as the Federal Circuit's decision in the *Samsung* case, the citation is 948 F.3d 1342, Federal Circuit 2020.

Plaintiffs -- and please, let's just do letter briefs. We don't need to include any extraneous information.  This will be limited to legal argument on three cases.

Plaintiffs' letter brief will be due on Friday, September 18th.  Will that present any problem for you, Attorney Hill?

ATTORNEY HILL:  Not anything unusual that I'm uncustomed to dealing with.

THE COURT:  Okay.  Understood.

And then I'll make Defendants' letter brief due on Wednesday, September 23rd.  Is there any concern in that regard, Attorneys Gorman and Davis?

ATTORNEY DAVIS:  No, Your Honor.

ATTORNEY GORMAN:  That would be fine.

THE COURT:  So just to be clear, and I will confirm this in an Order to follow today's hearing, I'm limiting you to addressing three cases.

Yes, Attorney Hill?

ATTORNEY HILL:  Thank you, Your Honor.  My question is that -- and we didn't get a chance to reach this during argument.  But there were certain portions of their expert declaration that cited to pages of our expert's deposition transcript where the pages were not actually added into the record.  And we would like leave to do a notice of filing to put those pages into the record, in the interest of completeness.

THE COURT:  Is there any objection, Attorney Gorman?

ATTORNEY GORMAN:  I'm not sure that I understand the issue.  Is it that the -- is it that the expert declaration that we had cited to something that was not already of record?

ATTORNEY HILL:  Yes.  I will give you an example.  In paragraphs 80 through 82 of Mr. Friedman's report, he is citing to certain pages of the Crevelt deposition testimony.  It's those pages and a few other pages.  For example, I believe he cites to page 76 of the Crevelt deposition testimony, but he doesn't cite to page 37 and 38, where the same issue was also the subject of questioning.

We believe, in the interest of completeness, that we

should be able to provide those pages.  I think we're talking about less than ten pages in total, Your Honor.

THE COURT:  Counsel, we have been on the record for quite a while.  Let me suggest this to you.  I certainly am amenable to receiving a notice of supplemental authority, not legal authority, in this instance, factual authority to complete the record.  No concern about that from the Court's perspective.

But rather than trying to come to an agreement or to identify whether there's a disagreement, I would suggest that you discuss this amongst yourselves.  I'm hopeful that you can come to an agreement to submit any deposition excerpts that would be helpful to the Court to understand both of your experts' reports -- or rather declarations.

So I hope that's sufficient instruction.

Are there any questions about what I'm expecting you to do off the record after today's hearing, vis-à-vis the deposition excerpts?

ATTORNEY GORMAN:  No, Your Honor.  To make this easy, with respect to if there are -- the pages that Mr. Hill has said he wants to submit, so long as he's submitting those pages and we are not seeing new argument, I have no objections to those pages being submitted on the record.

THE COURT:  Let me just suggest, Attorney Hill, that sounds like a very amicable resolution proposed by Attorney

Gorman.  I would just request that you prepare your notice, your excerpts, send it to Attorneys Gorman and Davis to alleviate any concerns they may have and then feel free to docket that.

And I would just request if you can do that this week, the sooner we can complete the record, the better from the Court's perspective.  I am mindful that when we had our case management conference, I committed myself to deciding this matter on a certain timeframe.  I intend to stick to that, if humanly possible, within the parameters of you never know when I might have an emergency filing that has to take up the Court's time.

So I intend to work toward that goal.  The sooner we can complete the record, the better.

Are there any matters before we conclude today's proceeding?  I'll turn first to you, Mr. Hill.

ATTORNEY HILL:  No, Your Honor.  Thank you.

THE COURT:  Attorneys Gorman and Davis, any other final matters to address?

ATTORNEY GORMAN:  Nothing for the Defendants, Your Honor.

THE COURT:  All right.  Thank you.  This has been very helpful.  And I look forward to receiving your supplemental submissions.

Thank you, Counsel.  Have a good day.

ATTORNEY GORMAN:   Thank you, Your Honor.

ATTORNEY HILL:   Thank you, Your Honor.

(12:40 p.m., hearing via WebEx adjourned.)

REPORTER'S CERTIFICATE

I, Lori A. Fausnaught, RMR, CRR, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

```
                                s/Lori A. Fausnaught, RMR, CRR
                                ------------------------------
                                Lori A. Fausnaught, RMR, CRR
                                Official Court Reporter
```

REPORTED BY:

    LORI A. FAUSNAUGHT, RMR, CRR
    Official Court Reporter
    United States District Court
    Middle District of Pennsylvania
    Lori_Fausnaught@pamd.uscourts.gov

        (The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)

ATTORNEY DAVIS: [11] 68/11 68/13 68/16 73/19 75/7 92/8 92/10 98/12 99/3 99/5 105/25

ATTORNEY GORMAN: [29] 3/14 4/10 5/1 6/7 8/21 16/23 17/4 17/12 27/20 28/20 29/2 31/7 31/11 36/1 36/5 39/6 40/17 51/2 51/6 58/6 66/3 66/6 67/5 67/21 106/1 106/15 107/19 108/20 109/1

ATTORNEY HILL: [38] 3/9 4/7 7/13 8/1 9/3 9/5 14/15 16/6 16/11 17/7 30/10 42/1 42/5 42/8 45/15 47/24 50/7 52/11 52/13 67/18 68/4 75/9 75/19 78/22 81/24 83/19 84/6 84/8 84/10 89/17 90/21 91/1 101/8 105/19 106/6 106/18 108/17 109/2

THE COURT REPORTER: [2] 35/25 67/20

THE COURT: [74] 3/2 3/13 3/19 4/8 4/24 5/24 6/24 7/23 8/15 8/22 9/4 13/22 15/25 16/7 16/17 17/3 17/5 17/9 27/16 28/13 28/22 29/21 30/24 31/10 35/22 36/4 38/22 40/14 41/23 42/4 42/7 45/2 46/21 49/22 50/23 51/5 52/6 52/12 58/2 66/1 66/5 66/21 67/13 67/24 68/5 68/12 68/15 74/24 75/8 75/10 78/14 81/18 83/17 83/20 84/3 84/7 84/9 89/10 90/19 90/24 92/5 92/9 98/2 98/24 99/4 101/2 104/22 105/21 106/2 106/14 107/3 107/24 108/18 108/22

## $

$10 [1] 16/1

## '

'223 [7] 26/22 31/14 36/6 44/4 60/16 60/19 65/21
'258 [1] 88/15

## 1

1-A [5] 88/18 89/2 90/20 90/21 91/8
1-B [4] 10/14 14/15 14/19 52/24
101 [1] 97/16
104 [2] 2/4 2/8
10th [1] 3/20
11 [3] 25/23 76/15 77/1
11-year-old [3] 29/12 29/13 67/6
11:55 [1] 83/24
11th [1] 21/14
11th hour [1] 17/21
12:40 [1] 109/3
13 [2] 21/8 24/8
1342 [1] 105/11
14 [2] 25/23 35/15
1470 [1] 3/3
15 [4] 1/13 23/16 35/15 83/21
1701 [1] 1/23
18th [1] 105/17
19 [1] 65/14
19103 [1] 1/24
1996 [2] 57/22 57/24
1997 [1] 91/6
1999 [2] 91/6 91/6

## 2

200 [1] 57/23
2003 [1] 85/25
2004 [2] 59/20 86/1
2006 [1] 7/5
2014 [1] 42/25
2020 [2] 1/13 105/12
23 [1] 25/24
23rd [1] 105/23
25 [2] 39/22 44/22
27 [2] 44/22 104/2
28 [2] 36/20 110/6

## 3

30339 [1] 1/20
33 [2] 37/19 65/14
3350 [1] 1/19
358 [1] 59/20
36 [1] 41/11
37 [1] 106/23
38 [1] 106/23
3:19-CV-01470-JPW [1] 1/5
3:19-CV-1470 [1] 3/3

## 4

40 [2] 57/22 57/22
43 [1] 76/16
44 [16] 21/10 22/7 59/20 62/16 62/16 62/18 73/11 74/13 74/14 84/11 91/12 92/14 93/25 94/10 99/21 99/23
45 [2] 74/10 74/13
46 [1] 74/10
47 [2] 73/10 77/1
48 [2] 77/2 79/7

## 5

50 [1] 14/22
50-cent [3] 14/4 14/9 16/1
51 [7] 10/25 44/22 44/25 99/20 99/21 101/8 101/15
54 [2] 105/2 105/10

## 6

62 [1] 57/6
64 [1] 57/7

## 7

71-3 [1] 28/14
75 [2] 2/4 2/8
753 [1] 110/6
76 [1] 106/22

## 8

80 [1] 106/19
800 [1] 1/20
82 [1] 106/19
875 [1] 59/20

## 9

91 [1] 36/21
948 [1] 105/11
95 [1] 36/21
98 [2] 103/20 104/3
9:30 [1] 3/1

## A

a.m [1] 3/1
ability [1] 46/23
able [10] 17/5 48/20 48/22 54/5 69/9 82/11 85/11 102/25 103/1 107/1
Aboard [2] 76/22 79/11
about [92] 14/17 14/21 15/9 17/19 19/13 20/24 22/8 22/12 24/10 24/10 24/13 24/18 24/19 25/5 26/8 29/11 31/16 33/8 33/20 33/25 34/2 34/3 34/4 34/8 34/12 34/15 34/19 34/23 35/8 35/17 35/17 35/19 36/12 38/17 39/20 40/1 40/2 40/3 40/4 40/9 49/15 51/3 51/3 51/6 51/12 51/20 54/20 56/1 58/3 58/12 58/17 60/3 60/4 60/24 60/25 61/15 61/18 61/20 61/24 62/2 62/21 64/1 64/4 64/16 69/7 69/24 72/1 74/3 75/15 77/24 79/9 79/15 81/12 81/16 82/13 82/18 82/24 90/10 90/15 94/9 94/13 94/14 94/18 94/20 95/11 95/18 97/10 97/18 100/18 107/2 107/7 107/16
above [2] 71/21 110/8
above-mentioned [1] 110/8
absent [3] 46/18 78/12 100/10
absolutely [1] 26/15
abstract [2] 11/13 74/2
absurd [1] 24/19
accept [1] 24/4
acceptable [1] 4/21
accepted [3] 20/17 88/9 104/16
accessible [1] 14/12
accompanying [2] 30/15 74/6
accomplishes [1] 94/13
accomplishing [1] 102/20
accordance [3] 27/4 85/12 88/25
according [2] 23/18 77/10
accurate [1] 67/16
achievable [1] 32/12
achieved [3] 94/19 94/20 100/7
acknowledging [1] 10/13
across [1] 92/1
action [2] 70/25 81/6
activation [2] 71/18 71/24
acts [2] 30/14 85/8
actual [48] 5/15 6/18 6/20 10/8 12/10 26/18 56/4 56/9 56/13 56/15 56/18 62/9 64/19 64/21 68/17 68/21 69/3 69/22 72/4 72/8 72/22 73/4 73/13 74/13 74/15 74/16 74/17 75/18 75/21 76/7 76/12 77/13 77/19 78/20 78/25 79/2 79/6 79/16 80/1 81/8 81/12 81/14 82/18 82/25 83/8 83/10 85/23 91/15
actually [31] 11/11 11/16 18/24 19/1 19/2 21/18 22/6 28/13 32/11 32/13 34/7 35/11 35/14 36/17 37/17 38/15 40/24 41/1 41/9 46/19 57/5 58/22 63/13 65/18 66/14 67/18 77/4 89/17 101/3 102/17 106/10
add [5] 55/22 82/7 87/8 87/22 102/6
added [3] 71/17 83/4 106/10
adding [4] 18/24 19/15 22/11 98/17
addition [4] 12/13 57/16 80/17 98/21
additional [4] 27/17 55/21 74/10 104/11
address [17] 6/13 9/23 14/14 47/23 50/7 52/20 58/9 61/24 80/25 89/13 89/24 95/4 95/16 96/1 98/10 105/6 108/19
addressed [6] 67/15 89/19 94/1 98/8 99/16 105/7
addresses [1] 30/21
addressing [5] 6/12 84/10 86/13 105/9 106/4
ADE [1] 39/16
adequate [1] 82/3
adequately [2] 30/22 50/9
adjourned [1] 109/3
admission [1] 24/4
admit [3] 10/1 104/24 104/25
admitted [3] 2/3 2/7 38/12
admittedly [1] 46/6

A

adopt [9]  21/18 35/4 44/11 57/11 57/12 70/1 70/3 78/10 79/23
adopted [3]  7/21 66/17 86/24
adoption [1]  8/12
advance [2]  3/5 83/12
advanced [3]  8/6 8/17 8/18
advantage [1]  90/9
advocated [2]  55/20 57/11
advocating [1]  86/25
affirmative [1]  15/3
afoul [1]  58/1
afraid [1]  46/21
after [11]  35/20 36/11 40/20 41/5 41/14 53/17 54/1 61/21 64/10 98/14 107/17
again [33]  4/1 19/18 19/23 19/23 26/15 26/15 26/15 27/14 27/14 27/14 29/12 32/6 34/6 37/15 37/15 39/6 52/1 54/2 59/5 60/19 67/6 78/7 78/18 90/15 94/25 98/3 99/8 99/15 99/17 100/2 100/13 101/22 104/20
against [2]  29/19 48/5
agree [14]  7/12 8/16 8/21 10/7 12/4 21/22 23/9 30/11 30/20 31/18 45/18 51/2 59/11 67/5
agreed [8]  4/14 5/1 5/5 5/7 5/11 5/16 5/19 5/22
agreeing [2]  9/10 45/15
agreement [11]  30/6 45/9 45/13 68/19 68/20 75/4 101/3 101/4 101/5 107/9 107/12
agreements [1]  6/6
agrees [1]  89/12
ah [4]  33/11 40/7 64/9 66/6
ahead [1]  36/4
aided [1]  55/19
akin [1]  10/13
algorithm [4]  53/23 55/17 84/21 95/22
algorithms [1]  103/24
Alice [1]  90/1
all [50]  5/24 6/24 7/23 8/15 8/22 9/4 10/19 12/4 16/25 17/10 17/19 17/24 22/5 27/16 29/18 36/13 36/14 37/24 38/4 46/25 50/23 51/3 54/1 62/20 64/24 64/25 65/17 66/16 67/13 75/12 75/20 76/9 76/21 76/22 77/17 79/11 79/12 82/20 83/9 83/24 84/7 86/20 87/3 87/13 91/24 94/14 96/3 98/13 104/22 108/22
alleviate [1]  108/3
allow [1]  92/1
allowance [1]  83/6
allows [2]  77/25 102/23
alluded [2]  21/17 75/19
alone [1]  73/23
along [1]  83/12
already [14]  17/8 17/14 35/8 36/12 62/13 64/2 65/2 68/18 69/25 78/6 88/12 88/13 89/11 106/17
alright [1]  65/1
also [28]  3/17 4/4 10/16 10/21 11/22 12/17 17/5 18/1 19/5 22/25 25/15 40/18 50/17 56/23 63/1 63/24 64/14 70/13 73/23 74/8 77/21 79/5 80/19 97/15 97/17 99/13 104/25 106/23
alternate [1]  97/1
alternative [3]  8/7 89/15 101/13
although [1]  54/16
altogether [1]  50/2
always [6]  10/10 34/4 34/10 43/17

50/18 91/23
ah [11]  7/4 28/14 36/2 42/23 78/1 78/15 98/5 99/1 101/6 107/4 108/7
ambiguous [1]  67/12
AmDocs [5]  102/8 102/14 102/17 102/22 102/24
amenable [1]  107/5
amended [2]  15/18 71/22
amendment [3]  73/7 73/12 73/20
amendments [4]  71/6 71/11 71/13 71/15
America [1]  86/12
amicable [1]  107/25
amongst [1]  107/11
amounts [1]  14/1
Amy [2]  1/22 3/17
analogous [1]  15/25
analysis [6]  15/10 18/20 39/4 42/21 79/7 103/12
another [13]  20/19 25/13 38/2 47/21 49/19 54/7 54/20 58/20 61/25 62/8 67/7 90/9 104/19
answer [7]  6/8 7/24 23/14 30/11 35/6 51/15 58/10
answered [2]  6/1 15/2
answering [2]  16/8 40/14
answers [1]  92/4
antecedent [1]  61/7
anticipate [2]  6/10 13/8
anticipated [2]  54/14 55/3
anticipating [1]  3/21
any [44]  4/5 4/8 6/6 6/21 7/10 8/9 8/9 14/20 16/20 19/25 21/6 22/20 27/17 27/22 28/9 30/6 33/21 49/2 49/3 49/12 49/15 56/1 58/9 66/22 72/24 81/15 82/11 82/17 95/17 98/18 99/10 100/6 103/8 105/14 105/17 105/23 106/14 107/12 107/16 108/3 108/15 108/18 110/22 110/22
anything [6]  19/13 82/24 85/12 94/13 97/10 105/19
anywhere [6]  58/15 58/16 69/3 69/20 94/19 98/13
Apex [2]  86/1 87/17
Apologies [1]  17/7
apologize [5]  16/20 31/8 42/3 58/2 73/17
apparatus [1]  88/19
apparent [2]  25/9 25/9
appeal [1]  87/11
Appeals [1]  86/22
appear [5]  14/1 27/1 29/1 29/2 77/13
appearances [2]  1/17 3/7
appears [16]  21/1 21/5 21/7 21/8 21/10 22/6 31/13 31/19 32/6 32/10 33/4 41/6 51/10 60/16 62/4 96/21
applicant [17]  21/3 34/22 63/9 69/12 69/14 69/22 70/3 70/19 70/25 71/5 71/9 71/14 72/16 73/9 73/25 99/25 100/23
applicant's [1]  73/21
applicants [4]  64/22 93/5 93/12 93/13
application [7]  69/4 70/18 70/20 73/15 78/16 85/16 97/14
applied [4]  46/1 87/9 87/10 91/5
apply [6]  31/19 79/25 85/10 85/20 100/19 110/22
appointed [1]  110/5
appreciate [3]  4/24 16/8 69/7
approach [10]  18/9 18/13 19/6 19/24 24/1 36/15 59/5 59/7 80/21 100/12

approaches [1]  32/1
approaching [1]  19/20
appropriate [2]  55/14 65/8
approximately [1]  3/21
are [218]
Arendi [7]  103/10 103/11 103/16 103/23 103/25 104/2 104/5
argue [6]  5/10 5/12 18/22 19/9 40/18 81/10
argued [4]  5/14 28/1 71/20 105/7
arguing [3]  43/24 43/24 90/10
argument [41]  3/22 5/8 12/2 12/12 16/7 16/22 17/10 24/22 25/13 26/1 27/11 27/14 28/10 28/23 30/20 35/12 36/6 42/9 45/8 61/10 65/20 67/22 68/2 71/12 75/20 75/25 76/6 78/23 80/3 82/8 83/17 83/21 84/17 84/24 89/25 97/12 102/24 103/2 105/15 106/8 107/22
arguments [5]  15/9 19/24 69/14 69/15 73/21
Aristocrat [1]  84/23
around [1]  19/12
arranged [1]  54/7
array [8]  9/16 21/20 22/18 23/19 23/24 25/17 28/11 30/5
art [42]  7/3 7/15 8/3 8/13 8/13 20/10 20/18 32/4 33/10 33/22 34/11 37/8 40/7 62/19 62/23 64/8 64/25 70/21 70/25 71/2 71/7 72/11 81/11 82/21 82/22 83/2 85/1 85/24 87/15 88/8 88/11 88/12 88/13 89/1 90/5 91/3 91/5 91/7 91/17 101/23 102/12 103/2
art's [1]  8/11
articulate [1]  13/20
arts [1]  102/4
as [166]
ascertain [4]  46/20 47/9 50/6 59/10
ascertained [1]  42/14
ascertaining [5]  36/10 40/19 48/9 48/10 48/24
aside [1]  26/13
ask [6]  6/4 30/1 35/22 38/23 75/3 89/11
asked [3]  32/19 37/3 96/12
asking [6]  29/8 32/23 32/24 32/25 47/2 59/14
aspect [1]  78/4
aspects [3]  27/12 39/8 57/13
asserted [1]  29/19
assist [2]  3/25 55/7
associated [7]  11/25 53/5 53/10 54/24 55/16 82/15 91/20
assume [4]  89/12 98/4 98/10 101/4
Atlanta [1]  1/20
attempt [2]  50/16 54/17
attempting [3]  9/9 79/20 81/10
attention [2]  98/3 104/12
Attorney [60]  5/24 7/2 8/15 8/16 9/1 9/4 16/9 16/19 16/22 17/5 17/11 27/16 28/13 29/21 29/22 30/1 31/1 31/5 31/5 35/22 38/22 40/16 41/23 41/24 41/24 45/2 45/3 45/7 45/13 46/21 50/23 50/25 58/3 58/5 66/21 67/16 67/25 68/6 74/24 75/8 75/17 75/17 78/14 81/18 83/17 84/7 89/10 92/7 92/7 98/2 98/4 98/24 101/2 101/7 105/5 105/18 106/5 106/14 107/24 107/25
Attorneys [3]  105/24 108/2 108/18
attribute [5]  69/1 69/19 77/21 78/6 82/4
audio [3]  68/1 68/8 83/25
August [1]  3/20

## A

August 10th [1]  3/20
authorities [1]  104/11
authority [4]  103/8 107/5 107/6 107/6
automatic [1]  6/16
automatically [13]  5/15 6/23 33/14
 64/20 68/17 71/17 71/23 72/1 72/5
 73/13 74/12 74/15 91/14
avail [1]  100/11
available [2]  27/6 38/5
availing [1]  99/25
average [1]  4/16
avoid [5]  50/13 59/12 85/16 90/12
 97/16
avoiding [1]  72/10
award [27]  9/18 12/3 12/13 12/17 13/3
 13/6 14/22 15/7 18/5 19/16 22/25 27/24
 27/24 30/8 32/5 35/16 36/9 37/14 37/15
 37/18 37/23 38/13 38/15 38/20 38/21
 53/3 53/9
awarded [3]  13/4 13/15 15/23
awarding [1]  22/1
awards [2]  12/6 30/15
away [1]  16/3

## B

bachelor's [1]  7/5
back [18]  14/16 17/18 17/20 21/17
 23/15 23/25 29/22 30/19 54/2 55/14
 68/7 72/13 78/7 81/20 88/22 89/24
 94/21 95/20
backdoor [3]  22/14 28/7 60/20
backed [1]  20/18
background [2]  32/14 86/14
balance [1]  4/16
baseball [3]  25/1 25/4 25/4
based [6]  13/18 19/5 24/1 36/15 59/7
 95/18
baseline [1]  42/18
basically [5]  28/7 52/22 55/9 94/11
 103/25
basis [4]  61/7 73/23 82/14 98/17
battles [1]  58/8
be [255]
Bear [2]  16/25 92/10
became [1]  73/10
because [79]  6/11 6/13 7/19 9/12 9/25
 10/21 12/15 13/15 15/7 15/23 17/1
 17/23 19/1 19/18 19/25 20/8 20/16
 21/14 21/23 23/10 24/23 25/18 26/14
 28/24 29/14 29/18 30/11 30/21 32/19
 34/22 36/14 37/15 39/7 40/12 43/11
 43/18 45/6 48/7 48/14 50/14 51/17 53/5
 53/9 54/10 54/10 55/25 56/5 57/9 57/10
 58/11 58/24 60/22 61/1 61/15 63/20
 64/3 67/11 68/8 76/5 76/21 78/5 79/9
 79/25 80/20 80/25 81/6 84/17 84/19
 88/6 88/9 89/14 89/23 95/10 99/9 101/3
 102/14 102/24 103/3 103/7
become [1]  44/24
becomes [1]  53/11
been [21]  6/6 11/14 17/16 20/15 47/20
 52/7 57/21 60/21 62/13 62/22 71/22
 74/12 74/19 80/8 82/11 83/21 85/14
 105/3 107/3 108/22 110/10
before [22]  1/10 6/4 6/13 10/23 11/11
 11/15 12/6 12/11 16/13 17/13 18/4 18/5
 29/21 35/18 36/9 41/1 41/2 41/3 51/1
 57/5 72/24 108/15

beforehand [2]  25/6 25/7
beg [1]  76/2
begin [2]  52/22 85/5
beginning [2]  4/13 90/15
begins [3]  12/6 47/15 71/21
begs [2]  15/19 30/12
behalf [5]  3/11 3/15 4/6 4/8 8/18
being [26]  13/15 20/10 32/19 38/16
 38/18 38/19 38/19 45/23 45/24 46/11
 46/12 48/13 57/9 57/11 65/24 72/13
 74/3 77/18 79/3 85/11 90/3 95/1 97/10
 101/15 102/25 107/23
belabor [2]  61/1 61/9
belied [1]  41/5
believe [24]  6/18 6/19 8/5 9/1 12/15
 12/17 14/7 28/1 28/17 30/21 48/24
 49/12 49/20 55/15 56/1 58/1 67/16 82/3
 84/4 98/8 98/25 100/13 106/21 106/25
believes [1]  50/8
below [1]  88/16
benefit [3]  35/23 72/19 73/3
better [11]  36/3 53/20 55/5 60/2 60/13
 60/13 60/15 67/11 67/11 108/6 108/14
between [14]  7/16 8/17 10/4 21/12
 45/17 47/7 47/12 50/1 50/11 52/20
 81/22 81/24 89/4 89/6
beyond [2]  6/20 58/4
big [2]  9/12 68/19
bit [6]  4/15 35/23 58/4 78/15 97/6 98/22
bits [1]  102/19
black [3]  85/19 86/24 98/16
Blitzsafe [1]  104/18
block [3]  88/17 88/18 90/17
blue [3]  62/17 63/6 86/14
blush [1]  33/18
board [10]  54/6 63/20 79/9 79/11 86/22
 91/23 92/1 92/2 96/14 96/15
BOCKIUS [1]  1/23
boil [1]  85/22
both [8]  11/23 35/23 52/6 75/2 86/2
 86/9 105/9 107/13
bottom [2]  53/7 72/21
box [5]  85/19 86/24 96/17 96/18 98/16
boxes [1]  46/4
brain [1]  36/2
break [2]  83/22 83/23
brief [33]  6/14 8/19 9/24 10/8 14/8
 17/18 17/25 20/5 22/3 23/16 23/23
 25/16 35/13 35/15 36/5 36/16 38/12
 39/13 39/15 40/21 63/21 65/13 66/9
 77/12 80/17 84/2 88/20 95/19 102/13
 103/7 105/9 105/16 105/22
briefly [3]  27/20 38/24 93/24
briefs [16]  3/5 6/2 7/18 17/17 17/19
 17/20 23/13 23/15 32/20 35/12 61/10
 80/4 104/20 105/4 105/7 105/13
brings [1]  104/22
Brinkema's [1]  102/7
broad [5]  18/25 26/20 32/3 35/5 35/13
broaden [1]  35/9
broadening [2]  67/10 83/7
broader [10]  10/20 11/19 46/15 48/4
 48/6 48/7 52/1 60/14 80/22 101/10
broadly [4]  25/21 35/9 40/19 41/19
broken [1]  101/18
brought [3]  20/2 78/25 79/1
bunt [6]  25/3 25/3 25/4 25/5 25/6 25/7
burden [1]  87/22
burning [1]  25/12
button [2]  17/8 72/20

## C

called [4]  15/22 73/7 86/11 96/2
calls [1]  16/25
came [6]  21/16 69/7 83/5 86/3 95/22
 104/11
can [78]  8/24 13/3 15/2 17/10 21/16
 24/18 25/18 27/6 31/8 32/13 32/15 33/5
 33/19 34/10 34/19 35/22 42/5 45/19
 51/4 51/5 52/11 52/12 53/4 59/18 60/14
 62/17 63/18 64/5 67/4 68/5 68/11 68/12
 68/13 69/15 70/7 70/12 70/13 71/9
 71/13 71/15 72/8 72/22 73/22 74/9
 74/20 74/21 75/4 78/1 78/17 79/6 79/20
 80/3 81/7 82/7 83/10 83/14 84/8 84/9
 86/14 89/3 89/8 89/8 89/18 90/3 90/17
 92/21 93/5 93/7 94/8 97/16 100/2 100/9
 100/17 100/21 107/11 108/5 108/6
 108/14
can't [2]  30/20 68/4
cannot [2]  15/22 87/25
capable [1]  103/4
capture [5]  23/5 32/8 54/17 85/11 86/21
cardinal [2]  44/14 44/19
carefully [1]  72/23
carried [1]  83/14
case [81]  3/2 9/9 9/13 13/6 13/7 17/16
 18/12 18/21 19/20 20/8 26/14 26/24
 35/9 39/13 39/16 40/24 41/14 43/6
 43/10 43/21 44/25 50/14 50/17 50/18
 51/3 57/18 59/9 59/19 61/6 63/20 63/21
 71/5 73/11 78/7 78/13 78/16 81/5 82/8
 82/11 82/22 86/11 86/16 87/9 87/11
 87/12 87/16 87/17 87/24 87/24 88/2
 90/9 90/25 91/4 92/2 92/19 93/24 95/12
 95/13 95/13 95/21 96/3 99/16 100/9
 100/20 101/1 102/6 102/8 102/23
 102/23 102/24 103/6 103/10 103/11
 103/14 103/16 104/10 104/13 104/18
 104/19 105/11 108/7
cases [18]  20/4 57/23 57/23 74/21 80/8
 80/16 80/17 86/1 86/1 86/3 86/9 95/5
 95/7 96/4 105/3 105/9 105/15 106/4
cause [1]  110/9
cent [5]  14/4 14/8 14/9 15/21 16/1
cents [3]  14/6 14/23 14/23
certain [9]  6/3 12/16 13/25 18/14 57/13
 93/21 106/8 106/20 108/9
certainly [8]  3/22 8/3 22/13 56/8 56/11
 56/11 67/9 107/4
certificate [2]  110/1 110/22
certify [2]  110/6 110/10
certifying [1]  110/23
cetera [2]  52/10 68/18
challenger [1]  92/21
chance [5]  77/25 78/3 78/5 79/21 106/7
change [11]  13/9 18/14 19/6 19/17
 21/14 24/2 30/4 60/6 73/1 73/8 73/9
changed [5]  9/19 17/21 21/18 60/2
 60/18
changes [1]  6/9
changing [1]  19/17
characterized [1]  105/3
charge [1]  90/7
check [2]  63/9 104/13
checking [1]  53/17
cherries [2]  14/4 53/7
Chicago [1]  63/20
child [1]  16/3
chip [1]  91/24

C

chooses [1]  27/4
choosing [3]  11/2 11/5 53/12
chose [2]  21/3 59/22
chosen [4]  14/4 59/16 59/18 93/13
circled [2]  96/11 96/15
circuit [36]  18/11 20/15 20/24 26/24
 27/8 29/4 43/20 43/22 44/10 44/13
 45/22 50/17 57/22 59/20 70/9 80/8
 80/12 80/16 82/8 82/11 85/14 85/18
 86/2 86/5 86/11 86/13 87/5 87/16 87/24
 88/2 89/4 91/23 92/1 92/2 96/9 105/12
Circuit's [6]  42/24 57/17 84/22 85/25
 86/8 105/10
circuitry [9]  89/22 90/15 90/24 91/10
 91/20 98/11 98/14 98/18 98/20
circuits [1]  89/6
circumstances [1]  42/23
citation [2]  85/17 105/11
cite [7]  36/19 36/20 39/13 39/15 59/17
 63/21 106/23
cited [11]  20/4 57/24 59/20 80/17 95/12
 103/6 104/19 105/4 105/10 106/9
 106/17
cites [1]  106/22
citing [2]  10/9 106/19
claim [174]
claimed [3]  41/14 71/10 95/1
claiming [2]  85/3 85/10
claims [86]  6/4 8/20 18/18 18/19 18/25
 19/3 19/3 19/13 19/16 19/22 20/10 21/1
 21/7 22/6 24/6 24/18 25/9 27/2 27/10
 27/23 27/24 27/25 28/4 28/4 28/7 29/3
 29/4 29/5 29/6 29/8 29/18 29/18 29/20
 31/24 32/7 32/10 33/3 34/7 37/16 38/17
 39/8 40/25 41/6 41/7 41/10 43/21 44/16
 44/21 44/22 44/22 44/24 45/12 46/2
 46/2 46/23 50/4 51/11 59/8 59/9 59/23
 61/9 61/16 62/5 62/5 62/9 62/10 62/11
 70/19 70/21 70/22 70/23 71/6 71/11
 71/22 73/5 73/11 73/16 74/9 74/18 76/4
 79/1 79/2 93/6 94/10 99/16 102/14
clarified [1]  61/4
clarifies [1]  72/3
clarify [7]  14/10 16/18 23/8 49/9 50/16
 61/2 71/21
clarity [3]  70/22 81/3 97/25
classic [1]  95/2
clear [35]  7/24 21/23 22/17 26/15 26/24
 27/8 33/4 34/18 41/15 42/11 43/2 43/4
 45/22 46/10 48/23 50/2 50/3 51/8 51/9
 56/13 59/9 61/6 61/11 61/23 67/3 72/17
 80/8 82/10 85/9 85/14 87/25 89/7
 100/13 104/5 106/2
clearly [1]  28/25
click [1]  42/3
client [1]  8/19
clutching [1]  16/4
code [11]  100/9 100/9 101/19 101/19
 102/4 102/10 102/20 102/25 104/17
 104/20 110/6
COIN [5]  1/6 1/7 3/3 3/15 3/16
colleague [1]  67/22
column [17]  10/25 11/21 11/23 11/23
 25/23 28/15 28/17 30/16 34/1 34/1
 37/19 53/4 53/23 57/6 65/14 76/15 77/1
columns [1]  48/4
combination [161]
combinations [17]  9/21 10/14 11/25

12/5 12/11 14/1 14/20 30/17 30/18
 35/18 35/20 38/4 40/4 46/5 46/7 60/24
 79/17
come [9]  17/20 38/22 58/3 62/1 74/24
 81/18 96/9 107/9 107/12
comes [7]  18/9 20/7 42/21 53/16 59/7
 60/23 97/18
comfortable [2]  59/3 97/19
coming [1]  90/17
comma [1]  47/16
commands [1]  100/17
comments [1]  82/19
commitment [1]  72/24
committed [1]  108/8
committing [1]  44/19
common [1]  25/9
commonly [1]  49/7
compare [2]  54/22 99/20
comparisons [1]  100/2
competing [1]  98/6
complete [11]  53/24 54/12 57/3 57/9
 75/11 77/18 104/24 105/1 107/7 108/6
 108/14
completed [2]  10/24 57/9
completely [7]  13/16 27/21 59/4 69/11
 69/21 96/22 97/11
completeness [2]  106/13 106/25
completes [6]  56/22 56/23 57/1 57/16
 57/17 65/6
completing [12]  24/12 52/18 56/19 57/5
 58/14 59/2 61/24 62/3 63/17 63/18
 63/25 66/14
complex [1]  55/18
complexity [1]  55/16
compliance [2]  53/24 54/10
components [7]  41/16 71/16 71/16
 90/18 94/23 94/24 95/12
comprises [1]  101/16
computer [21]  7/6 8/3 38/19 87/2 87/2
 87/7 87/15 94/25 100/17 101/12 101/16
 101/17 101/18 102/3 102/18 102/18
 102/19 102/25 103/21 104/14 104/15
computer-executable [1]  104/15
computer-readable [4]  101/17 102/18
 103/21 104/14
concede [1]  10/10
conceded [2]  9/25 10/11
concept [9]  11/13 23/2 30/12 30/22
 35/6 41/7 60/22 70/9 71/17
concern [5]  15/5 75/15 90/6 105/23
 107/7
concerns [1]  108/3
concessions [1]  17/24
conclude [4]  76/5 92/14 92/18 108/15
concluded [1]  16/14
conclusion [3]  36/17 102/10 103/12
concordance [1]  30/14
concrete [1]  20/18
concurrence [1]  73/8
condensed [1]  71/20
condition [2]  83/6 85/16
conduit [1]  85/19
conference [2]  3/20 108/8
configuration [2]  84/14 84/21
configured [5]  90/2 90/2 90/11 93/18
 94/11
confirm [1]  106/2
conflate [1]  54/18
conflict [2]  57/2 57/13
confusing [2]  15/8 46/21

confusion [5]  14/9 16/20 22/11 32/20
 90/12
conjunction [2]  12/5 30/17
connect [1]  91/10
connection [2]  44/5 100/6
connections [3]  89/6 90/17 91/25
connoted [1]  87/7
connotes [2]  84/25 87/14
connoting [2]  85/15 86/4
considered [1]  54/21
consistent [15]  14/12 15/14 19/19
 43/15 43/17 44/3 69/11 73/25 74/4 74/8
 74/9 74/18 96/10 97/8 97/11
consistently [2]  43/9 43/19
constitutes [1]  23/6
constituting [4]  22/18 28/12 30/6 30/7
construct [12]  12/7 12/9 47/3 53/11
 56/12 69/21 77/14 77/15 94/13 98/14
 99/14 99/19
constructed [24]  33/12 46/24 47/21
 48/13 55/23 56/12 62/13 62/22 64/10
 64/23 65/2 68/23 72/4 72/11 75/23
 76/10 79/13 79/18 80/2 82/2 82/6 93/4
 93/18 94/16
constructing [17]  8/20 11/1 24/10 33/9
 34/6 34/13 34/24 40/1 45/10 45/13
 62/25 63/19 64/2 72/14 91/13 94/11
 94/24
construction [105]  1/12 3/4 6/20 6/22
 8/1 8/10 9/8 9/11 9/15 9/25 10/6 10/23
 13/8 13/9 15/12 15/16 15/18 17/18
 17/22 18/10 18/10 19/7 19/10 19/20
 21/17 21/18 21/24 22/12 22/16 22/19
 23/3 23/10 23/17 25/19 27/13 28/6 28/8
 28/15 29/6 29/8 29/25 30/2 30/21 31/19
 32/2 32/8 34/8 34/15 34/18 35/2 35/4
 39/1 39/2 39/24 40/4 40/13 40/23 42/6
 42/11 42/13 43/10 44/19 46/16 47/16
 47/17 48/3 49/11 49/24 50/13 50/20
 52/2 53/22 54/9 54/16 55/9 55/15 55/18
 55/20 56/21 56/25 57/11 57/12 57/19
 57/25 58/1 59/3 59/8 59/11 66/17 66/22
 66/24 67/4 67/9 68/23 69/24 70/2 74/5
 78/10 79/23 81/4 81/25 89/15 97/1
 100/16 100/18
constructions [18]  6/3 6/6 9/6 10/4
 17/15 18/2 18/24 20/22 45/17 47/8
 47/13 47/22 47/25 49/7 81/23 81/25
 89/14 98/7
constructive [1]  11/20
construe [11]  14/11 25/16 31/25 32/19
 32/24 35/10 45/4 47/9 47/10 51/10 65/9
construed [13]  9/12 25/21 25/25 28/11
 40/19 42/10 45/16 45/23 45/24 45/25
 47/16 49/6 50/21
construing [3]  22/14 29/4 35/9
consult [1]  42/18
contain [1]  7/14
contains [1]  101/12
context [44]  9/21 10/12 11/20 12/18
 12/24 13/1 15/4 15/15 15/20 18/19 19/3
 21/1 24/5 24/17 25/9 30/13 30/22 32/9
 33/3 34/6 39/19 40/25 41/5 43/7 46/10
 46/14 46/20 48/25 49/11 50/10 55/25
 58/21 61/8 61/11 62/7 62/11 65/8 69/11
 74/22 74/22 77/24 90/1 91/19 101/10
contexts [1]  83/15
contextualized [1]  102/9
contradict [1]  15/13
contradicted [2]  12/16 13/16

contradicts [2] 12/15 70/8
contrast [1] 103/6
control [4] 32/16 94/3 94/5 110/23
controlling [3] 18/11 64/6 95/14
convene [1] 3/1
conventional [10] 89/20 89/24 90/4 90/6 90/8 97/8 97/20 97/25 98/9 100/16
conversation [1] 73/6
convincing [1] 103/3
Corp [3] 39/16 59/16 59/19
correct [12] 6/19 9/2 9/3 16/6 26/21 34/5 57/20 78/10 84/5 91/1 99/1 110/7
correspond [2] 14/1 33/13
corresponding [7] 9/17 9/19 12/1 13/3 14/5 21/25 60/6
corresponds [1] 55/3
could [14] 14/14 24/20 25/1 26/10 54/8 54/11 54/13 56/12 73/16 74/12 76/2 77/4 79/5 81/20
couldn't [1] 42/2
Counsel [10] 3/7 3/19 49/22 50/1 75/4 75/11 75/19 104/22 107/3 108/25
counsels [1] 44/20
county [3] 16/1 37/24 37/24
couple [2] 62/20 104/11
coupled [1] 86/5
course [2] 14/10 49/19
court [44] 1/1 3/5 3/21 4/18 5/25 12/21 12/21 14/17 32/23 42/17 44/20 46/24 47/3 49/10 50/3 50/8 50/15 51/7 55/14 55/19 57/23 66/17 69/13 70/1 72/18 75/2 75/11 76/6 82/24 86/14 89/12 89/16 89/25 93/20 96/22 98/4 103/2 103/25 107/13 110/3 110/4 110/15 110/18 110/19
Court's [12] 3/3 3/23 7/11 8/23 12/20 35/23 50/19 52/23 76/2 107/7 108/7 108/12
courtroom [2] 3/25 67/25
courts [2] 70/6 71/9
cover [15] 25/19 25/21 26/20 26/23 27/1 27/2 36/13 37/14 38/20 40/19 48/8 56/22 56/23 61/2 61/10
covered [2] 37/12 41/10
covering [2] 41/13 76/22
covers [2] 35/14 61/22
CPU [2] 89/20 90/10
created [2] 53/19 54/12
creating [1] 77/24
credence [2] 65/20 65/21
Crevelt [6] 7/14 8/17 20/3 96/12 106/20 106/22
Crevelt's [4] 7/19 8/2 8/12 20/7
criterion [1] 44/10
critical [2] 78/4 79/14
criticism [1] 9/18
criticisms [1] 9/14
criticized [1] 88/5
CRR [4] 110/3 110/13 110/14 110/18
crucial [1] 74/25
crux [1] 43/12
cuts [1] 43/12
Cummings [1] 96/10
current [2] 30/2 92/1
currently [3] 13/25 47/6 105/2
cut [1] 4/1
cuts [1] 43/12
CV [2] 1/5 3/3

dangers [1] 59/12
data [1] 86/21
date [2] 1/13 110/9
dates [1] 110/9
Davis [18] 1/22 3/16 67/22 67/25 68/6 74/24 75/17 75/19 80/20 80/25 92/7 98/2 98/24 101/3 105/5 105/24 108/2 108/18
day [1] 108/25
dealing [1] 105/20
debate [3] 51/9 56/1 89/2
decide [1] 72/6
decided [5] 86/11 86/23 94/17 100/4 104/5
deciding [3] 25/6 85/18 108/8
decision [11] 12/20 42/24 42/24 44/11 44/14 84/22 85/25 102/7 103/10 105/6 105/11
deck [1] 13/8
Decker [1] 1/18
declaration [11] 7/14 20/2 20/7 20/8 36/21 36/22 88/21 88/22 96/10 106/9 106/16
declarations [1] 107/14
defendant [11] 6/5 14/7 16/15 30/5 31/4 43/23 47/10 57/12 87/25 89/14 104/1
Defendant's [2] 7/21 13/7
Defendants [34] 1/21 2/7 3/13 3/15 4/8 5/3 5/7 5/13 5/16 5/20 5/22 6/7 7/2 8/14 9/11 9/24 10/5 13/13 25/24 28/11 29/19 43/24 46/16 55/8 55/22 67/18 82/23 84/16 86/25 88/20 90/3 99/1 102/13 108/20
Defendants' [17] 17/6 20/22 30/2 32/8 47/17 48/3 56/25 58/1 66/17 68/23 75/6 78/16 81/25 103/7 104/25 104/25 105/22
deficiencies [1] 17/20
define [2] 23/1 70/19
defined [6] 14/24 59/24 64/22 69/12 69/22 102/3
defines [1] 70/3
definite [3] 92/23 93/1 96/23
definitely [2] 89/5 104/10
definiteness [1] 96/8
definition [14] 7/3 7/5 7/10 22/23 43/3 44/11 69/11 70/5 70/11 70/12 70/12 83/1 95/5 96/10
definitional [9] 44/7 44/17 48/23 70/7 70/7 74/20 74/21 80/10 80/14
definitionally [1] 23/2
definitions [2] 7/16 100/20
degree [2] 7/5 8/4
demands [1] 43/9
demonstrate [3] 19/22 90/3 92/22
demonstrates [2] 59/6 93/22
demonstrative [1] 28/18
dependent [2] 21/6 74/9
depending [5] 19/7 19/18 31/15 56/9 56/14
depends [1] 74/13
deposition [8] 37/3 38/10 96/12 106/9 106/20 106/22 107/12 107/18
deputy [2] 3/25 67/25
describe [9] 46/4 78/9 82/3 84/13 91/8 93/10 94/22 94/23 100/24
described [10] 10/17 13/2 26/22 54/18 55/17 73/25 74/7 76/3 101/15 101/20

describes [2] 91/12 102/19
describing [4] 76/23 90/22 94/13 101/13
description [20] 7/12 7/14 7/20 7/21 8/2 8/12 10/18 11/1 11/24 12/14 23/22 30/15 33/25 44/15 52/23 52/24 86/5 88/11 89/22 90/16
designed [2] 53/21 85/10
designer [1] 12/4
despite [1] 43/22
detailed [1] 33/25
detect [1] 8/9
determination [3] 7/22 24/15 41/8
determine [43] 15/10 31/23 32/23 39/2 39/4 39/7 39/7 39/10 39/13 39/18 42/12 43/8 43/12 43/13 44/8 44/11 44/23 44/23 45/1 45/5 45/8 45/12 45/14 45/20 46/4 46/11 46/12 47/3 47/8 47/9 48/2 49/25 50/2 50/3 50/6 50/9 51/10 72/23 99/15 99/20 100/4 101/4 103/17
determined [17] 11/10 24/11 31/18 33/14 46/2 46/25 52/17 55/1 55/11 55/23 56/2 60/5 61/5 61/12 61/15 63/5 92/16
determines [3] 12/5 31/17 98/4
determining [44] 5/6 16/12 21/11 26/17 31/2 31/12 31/18 32/21 32/24 32/25 33/8 35/19 36/7 36/24 36/25 37/2 37/4 37/13 37/21 38/3 38/4 38/7 38/18 40/8 40/18 41/1 41/4 41/13 41/19 42/12 43/8 44/18 46/6 46/8 48/24 50/20 52/3 53/13 58/25 61/17 61/18 61/20 93/19 94/17
development [1] 7/7
deviate [1] 70/10
device [1] 91/9
devices [2] 89/6 92/2
devoid [1] 103/5
diagonal [1] 11/6
diagram [3] 88/17 88/18 90/17
dictate [2] 74/22 74/23
dictionary [5] 42/18 95/5 95/25 100/19 100/22
did [10] 6/1 9/16 18/4 22/13 42/1 63/9 71/5 73/14 86/24 94/2
didn't [6] 7/9 25/14 49/20 69/4 94/7 106/7
difference [12] 7/25 18/7 45/17 47/7 47/12 47/14 47/20 47/22 68/22 74/21 81/22 81/24
differences [8] 8/9 8/17 10/4 18/1 21/12 47/14 49/6 75/20
different [33] 21/9 24/9 27/2 27/2 32/1 35/14 36/8 39/8 43/23 43/25 43/25 49/24 51/13 51/19 52/21 54/3 57/22 61/16 62/20 63/19 63/22 63/22 64/1 66/25 70/2 84/14 86/18 95/1 95/10 97/21 100/12 100/18 102/14
differentiate [1] 81/10
differentiated [1] 102/23
difficult [1] 76/21
digital [5] 86/17 86/18 86/23 87/1 87/5
diligence [1] 17/9
direct [3] 87/8 98/2 110/23
direction [1] 9/14
directions [1] 91/24
directly [1] 13/23
DirecTV [1] 59/19
disagree [6] 12/14 15/17 23/10 49/18 65/16 98/10
disagreeable [1] 75/22

D

disagreement [10]  6/21 7/10 7/16 14/21 30/3 49/12 49/19 50/1 75/22 107/10
disagreements [1]  6/14
disavowal [1]  70/11
disclaimer [4]  43/4 46/19 49/3 82/15
disclosed [5]  27/2 57/19 78/8 79/19 83/9
disconnection [1]  55/5
discuss [2]  28/5 107/11
discussed [5]  3/20 17/15 28/4 65/19 68/18
discusses [1]  37/18
discussing [2]  37/20 66/11
dismiss [1]  89/25
disparate [2]  37/8 40/21
display [13]  26/10 71/24 74/4 76/17 76/17 79/5 82/1 89/8 91/13 91/14 91/16 92/3 94/12
displayed [14]  11/16 22/9 47/6 64/17 64/19 64/22 72/5 72/22 74/12 77/4 77/10 77/13 79/8 94/18
displaying [29]  5/15 6/16 6/23 22/8 41/2 41/3 52/16 56/4 56/6 56/11 61/12 64/20 68/17 71/17 71/23 72/1 73/13 74/10 74/12 74/14 74/15 77/1 77/19 79/9 80/6 81/9 81/13 81/14 91/15
displays [2]  74/16 74/17
dispute [8]  6/17 9/13 50/11 50/15 51/7 51/8 52/20 56/17
disputed [5]  36/23 41/9 41/12 41/19 49/9
disputes [2]  8/10 9/10
distance [1]  71/7
distinct [1]  41/16
distinguish [1]  82/21
distributed [2]  94/3 94/5
district [10]  1/1 1/2 57/23 102/8 104/13 104/18 110/4 110/5 110/19 110/19
divergent [1]  56/20
divine [1]  80/3
divorced [1]  69/21
do [62]  7/11 8/16 8/24 9/9 10/7 13/13 15/2 17/4 17/5 18/4 18/16 20/20 20/20 25/3 25/6 26/15 26/16 26/16 26/17 26/18 27/17 28/2 28/2 28/13 33/1 36/3 37/25 39/3 39/21 41/18 42/7 53/11 59/14 64/11 66/6 66/21 68/20 70/12 78/1 80/4 83/18 83/20 83/23 85/21 88/6 89/8 93/6 93/6 94/15 94/22 96/1 98/12 99/21 99/22 104/23 105/8 105/13 106/11 107/17 108/5 110/6 110/10
docket [1]  108/4
docketed [2]  3/3 75/5
doctorate [1]  8/6
document [10]  12/19 14/18 15/13 28/14 43/9 46/1 76/8 80/12 88/2 103/19
does [32]  7/14 21/2 25/3 26/10 26/23 27/1 33/22 36/18 37/23 38/20 39/7 39/9 44/23 51/12 62/3 62/7 63/14 66/2 66/22 66/24 68/14 68/15 74/23 82/5 87/13 88/23 89/14 95/11 99/19 99/19 100/24 110/22
doesn't [27]  10/18 12/22 15/13 22/23 23/1 25/3 25/7 28/25 29/2 36/13 43/16 51/14 62/14 67/3 67/10 69/3 69/19 78/24 80/25 87/3 88/6 88/22 94/4 98/13 98/18 98/19 106/23
DOG [3]  1/3 3/2 3/11

doing [8]  16/25 20/12 25/5 56/6 56/7 59/21 88/23 93/15
don't [50]  6/21 8/2 8/9 9/12 13/21 14/20 15/6 15/17 19/9 19/23 19/25 24/4 28/5 28/23 29/9 30/19 30/21 35/9 37/3 38/11 40/15 43/6 47/19 48/24 49/11 49/14 51/8 51/23 55/24 56/1 56/15 58/9 65/17 67/9 68/2 69/18 70/25 75/14 75/15 77/11 77/12 78/16 78/18 78/18 78/19 82/17 83/22 88/9 94/24 105/14
done [18]  9/7 16/25 18/3 18/5 18/6 20/1 22/15 22/17 38/16 38/18 38/19 38/19 49/2 65/9 70/5 76/20 93/15 93/16
dot [6]  58/13 58/14 58/14 58/19 58/19 58/19
down [10]  30/19 35/23 43/11 44/10 51/23 60/22 71/16 85/22 101/18 103/17
drafted [1]  60/21
drafting [1]  88/10
dramatic [1]  73/17
drawing [1]  79/24
driven [2]  18/13 91/9
drop [1]  54/1
duck [3]  37/25 38/1 38/2
ducky [2]  16/2 16/4
Dudash [2]  1/22 3/17
due [2]  105/16 105/22
dugout [1]  25/2
during [6]  3/20 57/1 69/6 69/14 80/6 106/7

E

each [47]  3/23 5/6 9/9 11/8 16/13 18/16 29/25 31/3 31/12 31/17 31/20 31/23 32/12 32/13 32/21 32/22 33/5 33/9 33/15 36/7 37/1 37/5 37/21 38/3 38/8 39/10 40/9 43/14 43/16 46/7 46/9 46/10 47/4 47/16 47/18 48/9 48/10 49/13 49/14 49/16 50/21 57/8 61/19 74/20 75/13 102/20 102/20
earlier [2]  14/16 105/5
early [1]  91/6
easiest [1]  13/20
Eastern [2]  102/8 104/18
easy [2]  89/23 107/19
editing [1]  66/2
education [1]  8/6
effect [2]  59/15 73/17
effort [2]  28/6 60/20
efforts [1]  59/10
either [11]  9/9 18/18 43/1 43/4 43/6 48/22 68/4 70/3 78/1 80/9 82/14
electrical [2]  8/4 91/25
electromechanical [1]  76/18
electronic [7]  7/7 12/7 34/4 76/18 83/15 84/12 84/15
Electronics [1]  86/12
elegant [1]  54/17
element [8]  24/14 24/16 46/20 56/17 66/12 94/4 96/21 100/6
elements [12]  33/12 33/13 41/15 41/16 72/15 82/20 91/11 91/14 93/6 94/12 94/14 96/18
elevate [1]  78/1
eliminate [1]  9/10
eliminates [1]  78/10
elimination [1]  80/11
else [3]  26/12 62/5 84/21
elsewhere [1]  22/6
embedded [3]  89/3 91/9 94/25

embodiment [16]  26/3 26/3 26/24 27/2 35/10 44/6 76/14 76/16 76/23 78/8 78/18 78/21 79/19 79/24 80/1 101/13
embodiments [10]  26/23 27/3 35/5 57/15 57/16 57/19 74/1 76/7 80/11 83/9
emergency [1]  108/11
employ [1]  32/16
empty [2]  11/12 53/17
enabled [1]  68/8
encompass [4]  32/3 32/5 41/20 51/14
encompassed [1]  37/9
encompasses [2]  35/5 51/14
end [14]  8/23 46/7 49/22 53/8 56/19 58/3 59/1 68/2 74/24 77/4 81/18 83/5 87/6 104/23
ends [1]  43/15
engineering [3]  7/6 8/4 86/12
enough [3]  9/12 13/12 55/19
ensure [6]  52/16 62/14 63/4 63/14 63/15 63/25
ensuring [2]  34/24 63/8
enter [1]  3/7
Enterprise [1]  59/19
entire [14]  30/20 32/21 33/1 39/9 39/19 45/4 45/10 45/14 45/16 51/12 52/2 52/4 77/24 94/22
entitled [2]  48/1 49/4
equally [2]  83/6 85/14
equated [2]  18/3 60/10
equivalent [2]  7/6 8/7
especially [1]  20/7
Esquire [5]  1/18 1/18 1/21 1/22 1/22
essentially [1]  18/16
establish [4]  46/20 47/9 49/15 50/6
established [1]  42/14
establishing [12]  35/16 35/18 36/8 36/9 38/13 38/14 38/21 42/18 48/8 48/13 48/17 48/24
et [2]  52/10 68/18
evaluate [1]  13/17
evaluating [1]  76/6
even [24]  10/23 11/13 12/6 12/11 19/12 19/15 19/16 26/8 37/9 38/6 38/10 42/17 42/17 59/23 65/20 65/20 66/10 70/7 76/23 82/13 87/1 94/24 100/8 104/2
event [2]  89/15 92/15
events [1]  9/1
ever [4]  12/11 57/20 78/9 82/12
every [12]  6/14 13/2 21/6 26/3 26/23 26/23 31/13 35/10 45/19 58/10 61/10 84/20
everything [3]  25/21 36/2 97/9
evidence [26]  9/22 10/1 10/11 10/17 10/19 10/22 11/21 11/22 12/16 13/17 20/5 20/16 20/18 23/19 30/13 46/18 49/2 64/14 76/3 76/25 85/23 87/7 96/7 98/15 99/25 102/1
evidentiary [1]  78/12
ex [1]  87/9
exact [1]  25/8
exactly [8]  8/2 15/5 20/14 43/24 59/21 61/4 63/2 76/24
exactness [1]  96/6
examiner [10]  70/21 70/24 71/8 71/12 72/10 73/2 73/6 79/1 82/17 83/7
examiner's [3]  73/7 73/12 73/20
examines [2]  70/21 70/22
examining [1]  98/6
example [29]  10/25 13/6 14/3 18/2 20/19 21/8 21/11 22/7 24/8 26/5 29/12

**E**

example... [18]  33/7 37/24 42/23 44/25
 48/12 62/16 74/2 76/22 77/7 77/16
 83/16 86/5 88/15 95/12 100/3 101/18
 106/18 106/21
examples [2]  14/19 27/9
except [2]  45/20 75/20
excerpts [3]  107/12 107/18 108/2
Exchange [1]  63/21
excludes [1]  57/19
Excuse [1]  13/22
executable [1]  104/15
executed [2]  100/17 101/19
exhibit [8]  2/4 2/8 28/14 75/5 75/6
 75/12 104/24 104/25
Exhibit 1 [3]  75/5 75/6 104/24
exhibits [2]  2/2 75/5
exist [7]  10/15 45/23 69/3 69/4 69/20
 98/13 98/18
existed [1]  43/23
exists [9]  10/2 10/10 10/23 11/19 12/8
 50/4 50/10 85/1 94/21
expand [1]  27/7
expect [1]  4/19
expected [2]  44/2 54/5
expecting [2]  67/16 107/16
experience [3]  7/7 8/5 8/8
expert [13]  20/3 20/5 20/14 36/16 36/18
 36/21 37/10 38/10 38/12 88/21 88/22
 106/8 106/16
expert's [2]  36/22 106/9
experts' [1]  107/14
explain [9]  13/5 39/4 67/4 71/19 72/19
 79/20 80/5 88/7 88/11
explained [4]  71/12 72/10 73/1 73/3
explaining [2]  9/20 58/18
explanation [4]  6/1 81/13 100/7 102/9
explanatory [1]  80/13
explicit [1]  43/4
explicitly [1]  18/18
express [3]  70/11 70/11 70/12
expression [1]  76/13
expressions [1]  72/17
expressly [1]  41/20
extent [3]  4/2 49/18 75/13
extracting [1]  86/19
extraneous [1]  105/14
extremely [1]  103/7
extrinsic [1]  20/5

**F**

F.3d [2]  59/20 105/11
face [3]  38/6 48/7 63/10
fact [33]  4/13 6/8 9/20 12/13 13/21
 24/19 25/5 26/2 26/3 26/9 29/24 32/8
 34/8 37/3 37/23 39/13 41/6 42/16 43/7
 43/22 44/23 47/5 48/8 51/3 51/6 54/19
 59/1 60/15 64/16 85/3 94/19 99/20
 104/8
factor [1]  97/2
facts [1]  66/11
factual [2]  26/13 107/6
factually [1]  26/13
failed [1]  54/10
fails [1]  92/22
failure [1]  20/16
fair [8]  4/4 13/12 16/1 16/2 17/3 37/24
 37/24 86/8
fairly [1]  50/5

familiar [1]  78/15
far [2]  68/2 100/19
farther [2]  23/13 24/5
fashioning [1]  12/6
Fausnaught [6]  83/22 110/3 110/13
 110/14 110/18 110/20
Fausnaught's [1]  35/24
favor [1]  73/23
feature [1]  76/17
features [2]  10/19 10/19
Federal [35]  18/11 20/14 20/23 26/24
 27/8 29/4 42/24 43/19 43/21 44/10
 44/13 45/22 50/17 57/17 57/22 59/20
 70/9 80/8 80/12 80/16 82/8 82/11 84/22
 85/14 85/18 85/25 86/8 86/11 86/13
 87/5 87/24 88/2 96/9 105/10 105/12
feel [3]  27/18 73/22 108/3
feeling [1]  16/4
felt [1]  98/21
few [5]  4/20 4/20 55/21 83/11 106/21
field [132]
field's [1]  10/23
fields [1]  61/25
fifth [2]  5/14 5/18
fighting [1]  9/13
figure [12]  10/14 11/24 14/15 14/19
 52/24 74/6 88/18 88/19 89/2 90/19
 90/21 91/8
figures [2]  46/4 46/10
filed [5]  69/5 70/18 70/20 73/15 102/13
filing [3]  97/14 106/11 108/11
filled [1]  53/17
fills [1]  11/12
final [3]  56/17 81/2 108/19
finalized [1]  11/15
find [10]  25/18 26/19 31/22 39/14 42/3
 58/14 58/16 69/10 82/11 99/8
finder [2]  9/20 13/20
finds [1]  87/5
fine [2]  50/22 106/1
finish [3]  4/1 28/9 82/19
firm [1]  3/10
first [44]  4/20 5/2 5/3 5/8 5/12 5/17 5/20
 5/23 6/11 9/2 11/2 16/11 20/23 22/5
 23/11 26/2 31/4 33/18 33/18 36/14
 37/13 49/9 51/3 52/9 57/18 62/20 67/17
 67/19 69/2 69/5 70/1 72/5 72/11 72/13
 76/9 79/4 84/4 91/13 92/22 95/17 97/22
 98/12 99/1 108/16
fit [1]  104/2
fitted [1]  91/25
five [17]  6/25 11/1 11/15 11/23 11/23
 28/15 28/17 30/16 37/19 53/4 53/22
 53/22 55/17 67/14 72/21 76/24 83/23
five-minute [1]  83/23
five-step [2]  11/1 53/22
flexibility [1]  3/22
flexible [1]  3/23
flip [2]  53/7 54/8
flow [2]  76/2 92/1
follow [1]  106/3
following [2]  47/15 78/21
follows [1]  42/21
footnote [1]  104/2
foregoing [3]  110/7 110/10 110/22
foresee [1]  9/12
forest [1]  81/20
form [1]  75/3
format [8]  2/4 2/8 93/14 93/19 94/6
 95/3 99/13 100/10

formed [12]  24/15 33/5 33/20 34/9
 34/10 34/16 34/19 39/20 39/25 40/5
 47/17 49/13
forms [3]  39/2 39/3 47/1
forth [1]  110/9
forward [2]  67/14 108/23
found [9]  60/19 70/24 86/10 94/6 95/21
 95/23 96/4 100/21 103/2
four [13]  10/25 11/11 11/21 14/23
 15/21 34/1 52/8 53/23 57/6 57/7 58/5
 62/4 72/20
four-cent [1]  15/21
four-word [1]  62/4
fourth [1]  5/14
frame [1]  93/13
frankly [2]  17/24 97/11
free [1]  108/3
Friday [1]  105/16
Friedman [1]  88/23
Friedman's [1]  106/19
front [1]  89/20
fulfill [1]  44/9
full [2]  17/19 65/25
fully [7]  43/14 43/14 79/13 79/18 80/2
 82/2 82/6
fully-constructed [5]  79/13 79/18 80/2
 82/2 82/6
function [46]  84/18 84/19 84/20 85/4
 85/6 85/7 85/9 85/12 85/17 85/20 86/7
 87/21 87/23 89/13 92/13 92/16 92/18
 92/21 92/24 93/4 93/14 93/19 93/23
 94/6 94/8 95/1 95/2 95/7 95/9 95/24
 96/4 98/5 99/8 99/12 99/13 100/1
 100/10 100/14 100/25 101/5 104/1
 104/3 104/6 104/9 104/16 104/21
functional [3]  85/3 85/10 87/6
functionally [2]  93/7 93/10
functions [9]  86/3 86/18 87/3 87/20
 92/25 93/3 95/1 102/25 103/4
fundamental [1]  58/12
further [5]  9/19 23/25 66/19 71/21
 110/10
furthered [1]  79/7
furthering [1]  81/13
Furthermore [2]  44/13 44/20
future [3]  62/15 63/8 63/14

**G**

GA [1]  1/20
game [285]
game's [2]  34/8 39/24
games [2]  6/21 76/18
gaming [3]  7/8 77/24 91/11
gave [1]  43/22
generally [2]  20/17 104/16
generally-accepted [1]  20/17
generate [3]  14/9 65/4 84/15
generated [15]  14/25 24/12 52/18 55/1
 55/12 60/7 60/17 63/5 63/8 63/10 63/16
 63/25 69/1 69/19 77/21
generating [3]  34/2 84/12 93/18
generation [1]  55/16
generic [3]  87/2 87/2 90/4
get [30]  6/25 15/8 16/14 17/13 18/14
 18/15 18/20 19/8 19/19 19/24 20/20
 21/12 24/1 24/3 28/7 32/17 36/2 38/2
 38/2 39/21 51/18 51/22 58/7 68/2 71/3
 73/14 76/1 96/16 102/10 106/7
gets [3]  22/25 29/14 60/21
getting [3]  4/11 29/13 29/15

**G**

give [6]  4/18 59/15 65/20 65/21 105/8 106/18
given [6]  20/15 38/5 45/19 55/15 55/25 63/24
giving [3]  20/12 55/19 70/16
glad [1]  101/6
glitch [1]  68/1
go [18]  14/22 16/11 30/19 36/4 36/21 37/25 39/4 41/25 49/21 52/20 54/2 54/4 56/18 58/11 69/9 78/17 94/21 95/5
goal [3]  14/10 15/12 108/13
goals [1]  53/24
going [96]  6/10 6/12 7/21 11/6 11/7 11/8 12/2 13/9 14/16 15/18 16/11 17/17 18/19 18/23 19/5 20/8 20/22 23/11 24/11 24/13 24/14 24/15 24/25 25/3 25/6 26/5 27/12 29/19 31/22 31/24 32/10 32/11 33/10 33/12 33/13 33/14 34/15 36/22 37/14 37/20 40/7 40/15 48/16 51/16 51/16 51/17 51/17 51/18 51/19 58/8 58/14 58/15 58/20 58/21 59/3 60/23 60/24 60/25 61/2 62/12 62/19 62/19 62/21 62/23 63/1 63/11 63/12 64/1 64/6 64/8 64/11 64/11 64/16 64/17 64/19 64/21 64/25 65/4 67/19 67/22 68/6 69/9 70/15 70/20 73/21 76/1 79/16 79/25 83/23 84/10 90/18 91/19 91/23 95/17 98/24 99/1
gone [2]  20/2 35/13
good [6]  3/9 16/24 17/1 69/25 102/9 108/25
Gorman [31]  1/21 3/14 5/24 6/8 8/16 16/10 16/11 16/20 16/22 17/11 27/16 28/14 29/21 31/1 31/5 31/6 35/22 38/22 41/23 45/3 45/7 45/13 50/25 58/5 66/22 92/7 105/24 106/14 108/1 108/2 108/18
Gorman's [1]  9/1
got [5]  36/2 36/16 71/2 73/20 87/11
gotten [1]  73/16
granted [2]  43/10 91/6
graphic [1]  14/6
grasping [1]  96/23
great [2]  68/16 95/12
greater [1]  39/17
ground [1]  78/23
guarantee [12]  42/13 44/4 44/9 44/12 44/16 44/23 44/24 46/12 46/13 46/16 47/11 50/6
guaranteed [3]  39/3 39/5 39/19
guaranteeing [9]  34/25 39/20 42/13 48/3 48/8 48/19 48/21 48/25 52/4
guarantees [3]  34/9 39/24 40/5
guess [1]  81/19
guided [1]  18/10

**H**

had [23]  6/5 6/12 7/5 9/25 17/7 17/16 17/24 18/5 21/19 30/1 49/21 54/4 65/5 71/8 73/6 86/23 87/1 95/15 97/3 98/9 106/17 108/7 110/8
hand [6]  11/25 57/7 57/8 76/20 88/17 103/15
handling [1]  92/6
happen [11]  19/20 24/25 25/4 26/6 51/17 51/18 62/14 63/11 63/12 63/14 70/12
happened [3]  64/2 69/17 70/24
happening [5]  25/7 29/7 58/17 58/22

64/9
happens [6]  25/4 41/1 41/2 41/3 41/5 48/12
happy [2]  4/22 29/13
harken [2]  57/18 78/7
harkening [1]  89/24
harkens [1]  57/17
Harrisburg [1]  1/11
has [55]  3/5 3/6 5/25 6/4 11/15 15/10 20/15 22/20 26/19 27/8 28/9 35/10 36/11 37/14 40/18 40/20 40/22 43/1 43/3 44/10 44/13 47/20 50/17 54/10 54/12 55/4 57/9 57/21 62/13 64/2 68/20 69/13 70/9 72/16 72/18 73/24 73/25 74/21 80/8 82/8 85/14 86/11 88/3 89/5 92/19 93/20 94/15 94/17 94/25 98/20 100/4 107/20 108/11 108/22 110/10
hasn't [1]  11/14
hat [2]  97/6 98/22
hate [1]  13/23
have [172]
haven't [2]  96/9 98/9
having [9]  7/9 50/13 64/4 72/14 76/19 76/21 81/19 91/13 94/23
he [40]  12/6 20/9 22/23 22/24 22/25 24/22 27/4 27/23 28/1 28/1 29/14 29/14 36/18 36/23 36/23 37/1 37/5 44/24 45/8 45/9 58/24 58/25 59/1 65/3 67/7 72/24 73/7 73/8 73/13 73/14 73/16 73/20 79/20 82/18 88/23 96/14 106/19 106/21 106/22 107/21
he's [4]  20/12 29/15 72/21 107/21
heads [1]  4/18
hear [12]  17/10 24/22 25/14 37/14 51/4 56/16 64/21 67/16 68/4 68/5 68/11 97/23
heard [9]  19/8 23/21 27/23 35/17 40/3 58/23 97/21 97/22 97/23
hearing [13]  1/12 3/5 3/6 4/12 9/1 68/3 75/5 75/12 86/10 104/12 106/3 107/17 109/3
heck [1]  29/13
held [1]  82/8
help [2]  12/17 81/21
helpful [6]  7/23 13/5 52/7 55/25 107/13 108/23
helping [1]  46/22
her [3]  32/16 64/5 68/2
here [85]  9/5 9/16 10/21 11/23 12/12 13/17 14/10 15/12 16/24 18/2 21/13 23/8 23/18 24/4 24/8 26/5 28/6 29/7 35/3 38/14 38/17 38/24 39/16 41/11 43/24 44/7 45/3 49/2 55/20 58/8 58/13 58/22 59/21 61/9 62/13 64/15 65/23 66/8 66/11 68/22 69/17 70/1 70/5 70/15 70/24 71/13 72/8 72/14 74/9 74/23 75/1 76/15 76/25 79/12 80/18 81/20 81/22 83/4 86/25 89/19 90/6 90/16 92/11 93/1 93/13 93/16 93/25 93/25 96/1 97/7 97/17 97/21 99/5 99/7 101/1 101/22 102/1 102/15 102/22 103/18 103/20 103/23 103/23 103/24 104/10
hereby [1]  110/6
hereinbefore [1]  110/9
hey [1]  25/2
high [4]  90/7 93/22 97/4 99/17
higher [1]  60/3
highest [3]  53/6 55/6 66/13
highlighted [4]  55/21 63/6 64/15 66/11
highlighting [1]  62/17

highlights [1]  18/8
highly [1]  78/11
Hill [47]  1/18 1/19 3/10 3/10 6/18 7/2 8/15 9/4 17/5 21/17 23/14 23/21 25/14 27/23 29/23 30/1 32/6 35/17 40/3 40/16 41/24 41/24 42/24 44/10 45/2 46/21 50/24 51/2 58/3 58/23 65/19 67/17 75/8 75/18 78/14 81/18 83/17 84/7 89/10 90/19 98/4 101/7 105/18 106/5 107/20 107/24 108/16
Hill's [2]  24/22 28/18
Hill-Rom [2]  42/24 44/10
him [2]  67/7 68/4
himself [1]  73/8
his [9]  20/8 20/12 32/16 37/3 38/10 64/5 75/19 82/19 96/12
history [21]  19/4 64/23 69/13 69/15 69/20 69/23 70/4 70/5 70/13 71/19 72/9 75/25 76/5 76/6 80/5 80/10 80/15 80/22 81/1 82/9 82/12
hit [4]  11/11 17/8 38/1 38/2
hits [1]  72/20
hold [3]  45/7 95/7 99/24
holding [4]  83/21 87/8 104/14 104/20
holdings [3]  1/7 3/16 86/9
honestly [1]  49/20
Honor [126]
Honor's [3]  52/2 59/15 92/4
HONORABLE [1]  1/10
hope [1]  107/15
hopeful [1]  107/11
hopefully [2]  3/23 92/4
horizonal [1]  11/7
hour [2]  17/21 21/15
hours [1]  83/21
how [33]  19/20 20/13 21/2 31/25 33/1 39/3 44/21 52/23 52/24 53/11 61/3 69/7 69/10 71/14 79/3 79/20 81/10 86/14 86/15 87/19 90/22 91/18 94/13 94/15 94/18 94/20 94/22 95/11 96/19 97/11 100/7 102/9 102/15
however [6]  7/16 10/16 18/15 50/16 80/24 85/14
human [1]  38/16
humanly [1]  108/10

**I**

I'll [17]  16/8 16/15 19/21 25/11 38/24 39/14 41/22 69/2 76/3 85/22 89/23 92/11 95/4 97/2 97/17 105/22 108/16
I'm [43]  4/22 6/5 6/19 9/1 9/5 14/5 14/16 14/17 16/18 16/24 17/1 17/10 19/22 25/12 28/16 36/1 36/25 39/14 40/15 45/4 46/21 58/8 58/11 65/24 67/16 67/25 68/6 68/8 69/12 70/15 70/16 76/20 78/14 78/19 78/21 79/12 79/16 81/19 105/19 106/3 106/15 107/11 107/16
I've [1]  36/1
i.e [8]  70/7 72/4 74/20 74/21 80/5 80/9 80/13 81/6
icon [1]  42/3
idea [13]  4/15 21/19 22/10 24/20 27/20 28/1 35/8 37/7 51/25 60/11 64/4 65/21 67/12
identified [7]  2/3 2/7 47/2 47/21 51/21 71/8 104/3
identify [2]  46/23 107/10
identifying [1]  86/19
illustrate [1]  12/18

**I**

illustrated [1]  79/11
illustration [1]  55/6
image [2]  86/20 86/21
immaterial [3]  7/17 7/21 8/19
implement [1]  79/20
implemented [1]  79/5
implication [1]  41/16
implicit [1]  43/4
implied [1]  70/14
implies [1]  11/18
importance [3]  29/5 59/10 81/21
important [18]  19/14 21/13 25/15 31/25
 32/18 61/2 61/14 69/6 73/23 74/8 76/1
 76/5 77/23 80/24 96/1 97/2 97/24 97/25
imported [1]  10/20
importing [4]  19/10 44/17 48/6 59/12
inadvertently [9]  52/18 53/19 54/12
 55/2 55/12 60/8 60/18 63/16 65/4
Inc [1]  59/19
include [5]  9/19 10/5 29/6 83/10 105/14
included [2]  27/9 98/9
includes [3]  13/10 68/25 105/3
including [10]  12/13 15/7 30/8 63/20
 83/10 90/6 91/11 103/18 103/21 104/3
inclusion [2]  89/21 98/11
incomplete [1]  79/8
inconsistent [7]  11/20 11/22 35/11 38/9
 44/1 59/5 96/22
incorporated [2]  82/18 91/4
incorporates [1]  34/4
incorrect [1]  26/1
indefinite [1]  84/22
independent [3]  21/6 31/13 31/15
independently [1]  45/23
INDEX [1]  2/2
indicate [1]  10/16
indicated [4]  9/24 12/21 45/3 45/9
indicates [1]  53/9
individual [1]  39/17
individually [1]  46/14
indulgence [1]  76/2
industry [3]  7/8 8/5 8/7
infinitely [1]  88/8
inform [2]  21/3 33/23
information [8]  70/17 79/15 81/15 83/12
 102/15 103/19 103/22 105/14
informed [3]  19/3 19/4 50/9
informing [1]  58/22
informs [1]  40/12
infringement [5]  18/20 18/22 29/19
 51/18 60/23
ingrafted [1]  48/4
inherent [1]  76/12
inherently [1]  56/2
initiate [1]  72/6
initiating [3]  71/18 71/24 72/21
injecting [2]  22/10 27/21
input [14]  89/6 89/21 90/15 90/24 91/10
 91/20 94/2 94/9 96/25 98/11 98/14
 98/17 98/20 99/17
input/output [12]  89/6 89/21 90/15
 90/24 91/10 91/20 94/9 96/25 98/11
 98/14 98/17 98/20
input/outputs [1]  99/17
inputs [3]  93/21 97/3 97/6
inserting [2]  103/19 103/22
instance [10]  6/11 18/17 58/20 59/3
 61/10 61/25 62/8 72/16 96/20 107/6
instances [2]  36/15 45/11
instant [1]  102/23
instead [4]  13/9 81/9 93/16 103/21
instruction [2]  38/20 107/15
instructions [27]  5/21 45/1 97/18 97/19
 97/23 99/7 99/14 99/14 99/18 99/21
 100/3 100/4 100/7 100/8 100/21 101/9
 101/21 102/2 102/3 102/4 102/15
 102/16 103/9 103/13 103/22 104/15
 104/17
insufficient [3]  93/2 96/7 96/8
insufficiently [2]  50/3 93/1
insufficiently-definite [1]  93/1
Integrated [1]  43/21
intend [3]  22/13 108/9 108/13
intended [2]  54/4 65/5
intending [1]  49/21
interaction [2]  57/6 57/10
interactive [6]  72/15 84/12 84/15 91/12
 91/14 92/3
interacts [1]  95/11
interest [2]  106/12 106/25
interesting [2]  58/23 77/3
interpret [1]  27/12
interpretation [2]  20/13 80/13
interpretations [1]  56/20
interrupt [3]  13/24 45/2 89/10
interruption [1]  55/5
intrinsic [17]  9/21 10/1 10/11 10/17
 10/19 10/22 11/21 11/22 12/16 13/16
 19/25 20/6 23/18 30/13 60/9 76/3 76/25
introduce [1]  97/1
introduced [2]  69/5 72/9
introduction [1]  96/25
introductory [1]  101/11
invalid [5]  84/17 87/4 92/14 92/18 99/9
invented [1]  71/1
invention [16]  28/16 34/3 41/17 70/20
 71/1 71/7 71/10 72/17 74/1 76/17 77/24
 78/9 93/8 93/14 101/14 101/14
inventions [2]  93/5 93/6
inventor [7]  43/2 44/8 77/10 78/9 79/19
 80/11 85/11
inventor's [3]  57/19 83/9 101/14
investment [3]  14/9 15/10 16/5
invoke [1]  92/21
invoked [1]  95/24
involved [1]  86/2
involving [1]  66/12
is [656]
Isidore [3]  95/13 95/20 95/23
isn't [6]  39/7 43/7 51/9 62/3 64/11 96/2
issue [33]  4/11 7/17 9/2 14/14 26/13
 32/21 35/3 44/25 51/9 51/16 52/1 70/22
 73/11 73/18 77/12 85/22 86/16 88/3
 90/9 90/14 90/25 94/4 95/21 96/1 96/5
 101/9 103/9 103/18 103/20 104/6 104/8
 106/16 106/23
issued [1]  73/6
issues [7]  7/22 21/23 51/22 58/13 99/5
 100/19 101/24
it [240]
it's [106]  7/21 11/4 11/13 11/22 12/15
 13/5 13/11 13/14 16/2 16/4 19/1 19/13
 19/17 20/7 21/13 22/11 23/9 23/21 24/9
 24/10 24/18 24/19 25/8 25/15 26/6
 26/12 26/25 28/21 29/17 29/18 29/20
 29/20 31/3 32/18 33/4 35/15 35/17
 35/19 37/18 38/4 38/7 38/8 39/12 39/18
 39/21 40/2 41/9 44/5 44/22 45/18 46/2

46/10 50/2 50/8 52/1 52/2 55/18 56/13
 61/2 62/14 62/20 62/24 63/1 63/1 63/3
 63/9 64/6 65/3 65/8 65/10 65/23 66/10
 68/23 69/6 69/25 73/23 74/8 74/8 76/5
 78/8 78/9 79/25 81/14 83/6 89/23 90/11
 94/11 94/12 94/15 95/6 95/6 96/14
 96/15 96/21 97/10 97/11 97/23 98/13
 98/14 98/19 99/23 99/24 102/17 104/5
 104/8 106/20
its [22]  27/8 38/6 39/2 39/3 44/6 45/19
 46/11 46/25 48/2 48/7 49/4 49/11 59/23
 63/7 63/10 67/2 73/25 78/9 78/16 84/23
 86/6 101/19
itself [10]  14/18 15/13 48/13 57/14
 64/16 76/8 80/12 82/16 88/2 100/9

**J**

JENNIFER [1]  1/10
job [2]  36/3 59/15
John [3]  1/21 3/14 6/8
joint [4]  17/18 28/15 103/15 104/9
joyful [1]  16/3
JPW [1]  1/5
Judge [7]  37/25 102/7 103/9 103/11
 103/16 104/1 104/7
judgment [1]  95/18
jump [1]  70/16
jumping [1]  45/6
jumping-off [1]  45/6
June [2]  17/19 21/17
jury [13]  13/5 50/8 51/23 52/1 55/7
 55/19 56/16 61/3 61/7 67/3 90/12 97/25
 98/19
just [82]  4/16 4/18 6/4 7/11 13/22 16/5
 16/18 17/14 18/8 19/8 20/19 21/22
 23/21 24/17 26/8 26/20 27/12 28/10
 29/14 34/7 35/22 37/1 37/11 38/23
 39/12 40/2 40/6 40/11 42/14 43/6 45/2
 45/12 46/3 47/24 50/25 52/13 54/17
 55/9 55/10 58/23 62/2 65/7 65/19 66/6
 66/23 67/4 70/16 73/23 75/10 76/2 76/9
 82/7 86/14 87/2 87/11 88/21 89/18
 89/23 90/7 90/15 90/19 93/24 94/14
 95/4 96/14 96/15 96/18 97/2 97/4 98/2
 98/8 98/20 99/23 99/23 100/3 100/24
 102/19 105/13 106/2 107/24 108/1
 108/5

**K**

K2 [1]  59/16
keep [3]  4/2 4/4 4/16
keeping [1]  3/25
keeps [1]  27/23
Kelly [13]  88/15 88/16 88/17 88/20
 88/23 88/24 89/7 90/20 90/21 91/5
 96/16 98/15 98/16
Kelly's [1]  89/7
Ken [1]  67/22
Kenneth [2]  1/22 3/16
kept [1]  8/25
KERTSCHER [2]  1/19 3/10
key [4]  42/9 57/13 57/13 82/4
kind [1]  95/17
kinds [1]  9/20
Kit [1]  104/12
know [15]  12/10 21/16 32/14 42/16
 47/19 52/1 65/1 70/17 73/22 83/22
 95/16 96/13 97/17 100/8 108/10
known [2]  97/13 97/15
knows [6]  22/21 22/25 29/14 78/6

**K**

knows... [2]  88/13 88/13

**L**

lacks [3]  81/2 92/20 93/21
Lakkala [2]  87/9 87/12
language [85]  10/21 12/15 18/15 18/24
 20/23 21/1 21/3 21/19 26/25 27/4 31/15
 33/4 33/17 34/21 34/22 35/11 40/7
 40/11 44/6 44/18 44/18 46/15 48/1 48/5
 48/7 48/23 49/4 49/5 49/17 50/14 55/10
 55/14 55/22 56/4 56/16 56/18 56/19
 58/15 58/21 59/18 59/22 59/23 59/24
 60/18 60/19 60/21 62/10 63/2 63/3 63/6
 63/7 63/10 63/24 64/14 66/25 70/8
 73/14 73/20 75/22 76/10 76/11 78/24
 78/25 79/1 80/23 81/22 82/13 82/14
 82/16 82/18 83/7 84/19 85/5 85/7 85/13
 86/2 86/13 86/15 87/18 88/1 88/16
 96/25 97/8 101/10 101/13
largely [1]  68/19
larger [2]  55/17 83/11
last [8]  4/20 5/21 19/21 22/7 40/17
 43/21 85/18 104/13
later [4]  18/20 51/22 60/22 61/20
law [26]  18/12 26/14 26/14 26/24 35/9
 36/12 41/14 44/14 50/14 50/17 51/3
 51/24 57/24 59/9 61/6 63/20 82/8 85/9
 85/20 85/22 86/7 88/2 95/4 100/9
 100/20 102/7
learned [1]  4/11
learning [2]  94/3 94/5
least [37]  4/19 5/6 7/7 9/10 16/12 31/2
 31/12 31/16 31/23 32/22 33/8 33/15
 34/2 34/5 34/9 34/10 34/13 34/15 34/24
 36/24 36/25 37/12 37/21 38/7 38/18
 39/10 39/25 40/2 40/5 40/8 44/21 47/3
 50/20 57/22 61/19 82/4 91/6
leave [1]  106/11
leeway [1]  18/22
left [5]  11/25 52/25 57/7 93/25 103/15
left-hand [3]  11/25 57/7 103/15
legal [3]  101/24 105/15 107/6
lemons [3]  14/19 14/22 54/5
lengthy [1]  103/12
less [6]  4/20 14/1 20/6 60/14 81/3
 107/2
lessening [1]  78/5
let [23]  4/1 7/1 16/8 16/23 17/14 31/7
 38/14 38/24 47/24 49/21 50/23 50/25
 58/5 58/12 61/24 66/6 74/25 75/17
 89/11 92/6 101/7 107/4 107/24
let's [7]  30/25 41/24 52/8 62/2 67/14
 94/21 105/13
letter [4]  105/9 105/13 105/16 105/22
level [15]  8/3 8/7 8/12 8/13 14/2 14/4
 22/11 55/6 60/3 78/2 79/21 82/9 93/22
 97/4 99/17
leverage [1]  18/21
LEWIS [4]  1/23 3/15 3/17 3/18
lexicography [7]  43/2 44/7 46/18 48/22
 82/15 88/21 88/24
light [3]  29/24 103/8 104/8
like [34]  4/23 9/11 17/1 20/5 20/7 26/22
 29/22 32/5 37/23 41/7 47/22 49/23 54/8
 54/17 55/22 61/17 73/22 83/20 86/5
 87/15 87/16 89/13 91/3 92/2 94/15
 95/18 97/5 97/5 98/19 98/21 98/22
 101/17 106/11 107/25

likely [1]  83/6
Likewise [3]  18/5 18/23 60/17
limit [1]  27/6
limitation [19]  5/18 22/8 27/1 44/15
 52/14 52/15 53/16 65/13 65/15 65/22
 66/10 74/15 80/6 81/8 81/9 81/11 83/4
 95/23 104/4
limitations [7]  18/17 19/10 41/20 48/6
 59/12 61/17 65/18
limited [5]  56/25 69/15 91/12 93/11
 105/15
limiting [4]  57/14 72/18 83/1 106/3
line [21]  4/16 10/25 11/6 25/23 34/2
 34/9 34/10 34/16 34/25 39/25 40/2 40/5
 51/23 55/6 60/22 76/15 79/7 80/16
 82/19 83/11 90/7
Linear [3]  86/1 87/17 87/24
lines [26]  11/3 11/3 11/6 11/9 11/10
 14/18 25/23 37/19 40/3 48/15 48/15
 48/17 53/12 53/13 54/3 54/4 57/6 57/7
 65/14 72/21 76/23 76/24 77/1 79/10
 83/11 89/4
listed [1]  14/5
lists [1]  41/15
litany [1]  91/2
literally [2]  78/24 85/11
little [7]  4/15 20/15 35/23 58/4 78/15
 94/9 97/6
LLC [8]  1/3 1/4 1/6 1/7 3/2 3/12 3/15
 3/16
LLP [2]  1/19 1/23
lobbying [1]  9/15
located [1]  103/19
location [1]  72/24
log [2]  68/7 68/7
logic [1]  78/21
long [1]  107/21
longer [4]  4/12 4/15 6/11 60/3
look [46]  12/22 12/25 14/15 15/14
 21/16 22/7 23/13 24/5 26/2 26/3 29/3
 31/15 31/21 33/3 33/7 33/11 33/24
 34/12 34/14 35/11 36/18 36/19 37/17
 38/1 39/12 40/25 41/6 44/20 45/16 46/3
 57/4 60/17 62/9 62/16 65/11 71/20
 72/13 80/15 85/5 91/22 93/24 99/20
 100/2 101/10 102/17 108/23
looked [4]  62/1 70/6 82/12 102/4
looking [18]  19/18 20/25 21/2 28/14
 43/20 47/13 47/25 54/23 57/6 58/6 63/8
 80/21 86/22 87/13 91/17 95/20 95/22
 100/3
looks [6]  10/14 12/21 79/14 94/15 97/5
 97/5
Lori [5]  110/3 110/13 110/14 110/18
 110/20
lose [1]  13/24
lost [2]  42/2 78/14
lot [2]  22/4 97/21
loud [1]  90/7
low [1]  53/8
lower [1]  79/21
lowest [1]  53/10

**M**

machine [1]  76/19
made [20]  6/9 14/7 17/23 18/1 21/14
 27/6 27/8 30/5 36/6 45/8 71/5 71/11
 71/12 71/14 72/16 73/9 81/12 82/12
 85/18 102/24
magic [1]  102/22

magical [1]  101/2
maintaining [1]  97/12
major [1]  57/25
majority [1]  17/21
make [29]  5/8 17/24 18/17 18/25 19/24
 22/17 25/11 25/13 25/14 27/14 28/22
 36/17 38/23 53/18 58/10 58/10 58/10
 61/23 63/13 64/10 65/2 67/11 69/14
 83/2 89/18 90/16 95/17 105/22 107/19
makes [11]  14/11 34/18 42/11 45/25
 61/11 63/24 64/3 72/24 81/5 89/7 104/7
making [7]  13/23 22/3 34/19 43/2 48/23
 52/13 55/2
management [1]  108/8
manager [1]  25/2
many [2]  10/16 92/11
mark [1]  102/25
mark-able [1]  102/25
Market [1]  1/23
Markman [1]  12/20
Markman's [1]  15/14
Martha [1]  1/18
masquerading [1]  84/18
master's [1]  8/6
matching [1]  86/19
material [4]  7/25 47/19 49/19 85/8
matter [10]  4/4 9/23 26/2 27/9 36/12
 43/12 43/16 51/24 76/9 108/9
matters [6]  4/5 4/9 8/23 35/6 108/15
 108/19
may [27]  4/14 5/25 13/24 14/9 27/5
 34/9 34/16 38/5 38/5 39/20 39/25 40/5
 47/17 49/13 49/15 49/23 54/7 54/16
 55/13 56/8 56/8 56/14 56/14 66/1 77/5
 77/5 108/3
Maybe [2]  47/22 78/19
me [49]  3/16 3/25 6/19 7/1 7/23 13/22
 16/23 17/1 17/14 25/2 31/7 33/22 38/14
 39/4 45/11 46/22 46/22 47/5 47/7 47/24
 49/25 50/23 50/25 51/4 58/5 58/12
 61/24 66/2 66/6 68/5 68/11 70/16 74/25
 75/3 75/17 78/14 78/18 78/20 81/21
 89/11 89/24 92/6 92/8 92/10 101/7
 104/5 107/4 107/24 110/11
mean [19]  10/18 16/2 25/3 25/7 39/7
 39/9 44/8 44/23 44/24 47/9 51/13 62/4
 62/7 63/22 67/11 78/19 87/13 93/14
 100/22
mean-plus-function [1]  93/14
meaning [38]  12/22 12/23 12/24 15/15
 19/2 20/11 20/11 20/17 20/25 22/20
 23/4 28/3 29/11 38/9 39/16 40/12 42/15
 42/19 42/22 43/1 43/22 44/7 45/20
 46/11 48/2 48/20 49/3 50/9 50/16 62/10
 63/7 67/2 69/8 70/2 70/11 76/12 82/16
 85/23
meanings [1]  44/1
means [74]  6/20 19/6 24/24 32/24
 32/25 37/5 39/18 46/2 48/24 48/25
 49/10 49/11 51/20 52/3 52/4 52/4 57/3
 61/6 62/3 63/19 72/11 73/2 84/16 84/18
 84/19 84/20 85/2 85/2 85/4 85/6 85/9
 85/17 85/20 86/7 87/21 87/23 89/9
 89/13 92/13 92/16 92/18 92/20 92/21
 93/4 93/15 93/16 93/19 93/23 94/4 94/6
 94/8 95/2 95/7 95/9 95/24 96/4 98/5
 99/8 99/12 99/13 100/1 100/10 100/14
 101/5 103/18 103/18 103/20 104/1
 104/3 104/6 104/9 104/16 104/21
 110/22

## M

means-plus-function [39]  84/18 84/20 85/4 85/6 85/9 85/17 85/20 86/7 87/21 87/23 89/13 92/13 92/16 92/18 92/21 93/4 93/19 93/23 94/6 94/8 95/2 95/7 95/9 95/24 96/4 98/5 99/8 99/12 99/13 100/1 100/10 100/14 101/5 104/1 104/3 104/6 104/9 104/16 104/21
meant [6]  23/4 32/8 49/9 55/6 71/13 88/7
mechanism [1]  53/17
mechanisms [1]  12/3
media [1]  102/19
medium [3]  101/17 103/21 104/14
memory [1]  89/17
mention [2]  69/2 75/10
mentioned [3]  61/16 110/8 110/8
mentions [2]  30/16 30/16
merely [5]  15/22 45/5 50/13 55/14 88/1
meriting [1]  100/18
microprocessor [13]  89/3 89/4 89/5 89/21 90/10 90/18 91/3 91/9 91/21 91/22 96/17 96/20 96/20
MIDDLE [3]  1/2 110/4 110/19
might [6]  25/2 75/3 87/8 87/22 102/6 108/11
Mike [1]  7/14
mindful [3]  80/16 80/19 108/7
minute [2]  38/23 83/23
minutes [12]  3/21 4/3 27/17 36/2 49/23 58/4 58/4 58/8 74/25 81/19 83/22 89/11
missing [1]  78/19
modified [1]  22/15
module [2]  94/3 94/5
moment [10]  17/1 37/11 45/3 46/22 64/21 75/1 75/3 90/19 98/4 101/2
more [33]  4/19 9/10 14/12 23/20 46/22 52/17 53/20 54/13 54/20 54/25 55/11 60/1 60/11 60/15 63/4 63/15 64/12 65/4 66/23 67/2 67/5 67/7 67/11 67/12 67/12 75/14 77/1 79/10 80/11 88/3 88/6 99/6 100/16
MORGAN [4]  1/23 3/15 3/17 3/18
morning [1]  3/9
most [1]  53/5
motion [1]  89/25
move [7]  14/16 25/11 29/22 51/1 67/14 76/4 83/18
moving [5]  4/2 4/4 9/13 17/16 21/15
Mr [1]  88/22
Mr. [29]  6/18 7/19 8/2 8/12 8/17 16/11 20/3 20/7 21/17 23/14 23/21 24/22 25/14 27/23 28/18 32/6 35/17 40/3 51/2 58/23 65/19 80/20 80/25 88/23 90/19 96/12 106/19 107/20 108/16
Mr. Crevelt [3]  8/17 20/3 96/12
Mr. Crevelt's [4]  7/19 8/2 8/12 20/7
Mr. Davis [2]  80/20 80/25
Mr. Friedman's [1]  106/19
Mr. Gorman [1]  16/11
Mr. Hill [15]  6/18 21/17 23/14 23/21 25/14 27/23 32/6 35/17 40/3 51/2 58/23 65/19 90/19 107/20 108/16
Mr. Hill's [2]  24/22 28/18
Mr. Kelly [1]  88/23
Ms [1]  35/23
Ms. [1]  83/22
Ms. Fausnaught [1]  83/22
much [5]  18/21 18/22 60/14 67/11

101/24
multiple [4]  21/7 26/23 80/8 95/20
must [10]  25/20 25/21 25/25 54/21 59/11 74/16 84/21 87/4 91/10 102/25
muster [1]  103/9
mute [2]  17/8 83/25
muted [3]  31/5 41/25 58/2
muting [1]  17/9
my [34]  3/25 8/25 11/6 16/8 16/24 22/22 25/12 28/10 29/3 29/12 29/17 30/19 31/1 31/3 36/2 38/25 42/2 45/6 52/9 52/11 58/6 58/8 65/24 67/6 67/15 67/21 67/25 73/21 75/13 84/8 92/10 98/25 106/6 110/11
myself [2]  42/2 108/8

## N

namely [1]  47/14
narrow [3]  21/23 42/25 80/22
narrower [1]  76/11
narrowing [2]  6/16 80/1
nature [2]  12/18 77/20
nearing [1]  49/22
necessarily [12]  15/17 16/5 19/2 19/19 29/15 29/17 46/15 57/2 57/12 76/11 79/24 93/11
necessary [4]  50/8 56/15 83/1 85/16
necessitates [1]  82/25
need [19]  18/15 20/20 22/23 23/13 24/3 24/5 26/23 27/18 35/9 36/13 45/25 46/24 49/24 62/8 83/18 89/19 96/1 98/20 105/14
needed [1]  10/20
needless [1]  98/21
needs [9]  23/7 35/3 35/12 42/10 52/1 61/7 62/22 83/22 98/9
negotiation [2]  81/1 81/2
never [4]  6/12 27/6 96/3 108/10
nevertheless [1]  92/20
new [2]  53/19 107/22
newly [1]  13/8
newly-proposed [1]  13/8
next [8]  5/5 25/2 29/22 30/25 31/11 51/1 77/8 77/16
nine [1]  25/23
no [38]  2/4 2/8 4/7 6/8 20/15 23/13 23/21 24/5 25/4 26/4 26/11 30/10 30/11 35/7 41/4 44/1 44/7 44/9 55/8 58/7 60/3 74/14 75/9 87/11 88/24 89/2 90/21 96/14 98/17 100/5 100/6 102/15 102/22 105/25 107/7 107/19 107/22 108/17
Nod [1]  68/5
non [6]  15/22 26/10 42/17 42/20 77/9 84/19
non-means-plus-function [1]  84/19
non-technical [2]  42/17 42/20
non-winning [3]  15/22 26/10 77/9
nondescript [1]  94/23
none [2]  19/13 29/6
nonetheless [1]  101/6
nonsensical [1]  44/24
normal [2]  46/19 49/5
normally [2]  43/18 88/25
not [185]
note [5]  6/2 7/10 13/24 104/2 105/2
notes [4]  8/25 16/21 67/15 98/25
noth [1]  99/24
nothing [12]  23/20 38/6 60/9 94/15 94/18 94/19 97/9 99/17 100/5 100/16 100/17 108/20

notice [3]  106/11 107/5 108/1
motion [1]  54/2
notwithstanding [2]  58/24 58/25
now [53]  7/4 8/24 11/10 12/2 13/23 16/22 17/23 18/3 19/23 21/4 22/3 22/11 23/7 23/13 23/25 23/25 30/1 31/7 31/21 45/7 45/11 51/16 51/22 54/2 54/2 54/6 54/10 55/8 59/24 60/13 63/18 65/16 68/11 68/20 68/25 72/9 72/20 73/4 73/14 75/25 80/3 81/17 83/21 84/3 84/11 86/22 88/20 93/4 93/20 97/24 98/5 98/25 103/6
nowhere [7]  19/15 19/16 32/7 37/19 60/16 60/19 62/5
number [15]  3/3 8/24 11/2 16/9 16/12 16/12 16/18 18/23 21/9 48/14 52/8 54/3 54/3 58/5 98/25
numbered [2]  31/2 110/9
numbering [2]  16/19 52/8
numbers [1]  6/25
numerous [1]  103/4
nutshell [1]  30/20

## O

objection [2]  75/9 106/14
objections [1]  107/22
objective [1]  102/21
objectively [1]  102/1
objects [1]  89/5
obtain [1]  66/13
obtuse [1]  78/19
obvious [1]  10/13
obviously [2]  58/9 78/3
occur [1]  11/15
occurring [1]  62/12
odd [1]  49/23
odds [2]  35/6 57/13
off [6]  4/1 31/8 45/6 68/7 83/25 107/17
Office [3]  70/25 71/13 81/6
Official [3]  110/3 110/15 110/18
often [3]  39/17 70/22 81/2
oh [4]  33/19 95/6 96/11 97/24
Ohio [1]  104/13
okay [24]  9/5 13/12 15/25 16/7 16/17 21/22 28/22 30/24 33/19 41/23 42/4 42/8 67/20 67/24 68/5 68/6 68/16 78/22 83/19 84/3 84/10 92/9 99/4 105/21
old [3]  29/12 29/13 67/6
once [1]  83/4
one [85]  5/6 5/25 6/15 7/1 10/13 13/25 14/6 16/12 25/15 27/12 28/17 28/20 28/24 28/24 29/1 29/2 31/2 31/12 31/16 31/23 32/22 33/7 33/7 33/8 33/15 34/2 34/5 34/9 34/10 34/13 34/15 34/24 36/15 36/25 36/25 37/21 38/1 38/7 38/18 39/10 39/25 40/2 40/5 40/8 40/17 40/21 41/7 41/11 42/23 44/4 44/14 47/3 50/20 52/22 53/25 54/15 61/17 61/18 61/19 61/22 67/19 71/8 73/11 75/14 76/23 77/1 77/1 78/17 79/10 80/11 82/4 82/7 83/11 84/3 84/20 88/19 89/3 89/7 89/19 92/22 94/21 95/21 95/21 96/18 103/17
ongoing [2]  29/25 81/1
only [24]  8/22 11/13 11/19 23/7 23/16 35/12 35/21 36/14 37/19 44/4 47/7 47/12 54/22 62/5 62/9 65/10 70/10 73/16 74/11 76/23 78/1 80/1 80/3 101/4
opening [8]  7/2 14/8 23/15 23/16 23/23 35/13 35/15 36/5

**O**

operate [2]  87/19 102/16
operates [1]  91/19
operation [1]  86/6
opine [1]  36/18
opined [1]  37/6
opining [4]  20/9 36/23 36/24 37/1
opinion [3]  20/14 37/4 104/7
opportune [1]  75/3
opportunity [9]  6/5 6/12 30/2 75/14
 95/16 95/19 98/10 105/5 105/8
opposed [6]  8/13 8/18 45/14 49/14 83/3
 93/7
opposition [2]  6/13 25/16
opted [1]  7/17
optimum [1]  72/23
Options [1]  63/21
orange [1]  41/12
order [21]  4/3 4/14 4/22 4/25 6/1 14/17
 15/10 30/25 42/21 42/25 53/1 72/6 76/2
 83/8 84/14 85/10 87/19 88/3 89/7 91/10
 106/3
ordering [2]  9/1 16/19
ordinary [52]  7/3 7/15 8/10 12/22 12/23
 12/24 20/9 20/18 20/25 22/20 23/4 32/4
 33/10 33/21 34/11 37/7 38/9 40/6 42/14
 42/19 42/22 43/1 45/20 46/11 48/2
 48/19 49/3 50/5 62/10 62/18 62/23 63/7
 64/8 64/24 67/2 70/2 76/9 82/16 84/25
 87/15 88/8 88/11 88/12 88/13 89/1 90/5
 91/7 91/17 97/13 101/22 102/11 103/2
orientation [3]  11/5 48/15 53/13
original [4]  9/15 16/18 52/8 74/11
originally [5]  9/16 21/16 31/1 69/5
 73/15
Os [1]  22/24
other [38]  3/24 7/1 11/6 31/17 31/18
 32/15 35/3 41/20 44/17 45/12 45/19
 47/14 47/14 49/6 54/1 59/6 61/22 63/24
 64/14 66/13 70/6 74/9 74/14 74/14
 74/18 82/19 89/4 89/21 90/18 91/11
 92/2 93/21 95/11 98/18 99/17 100/6
 106/21 108/18
others [3]  4/12 6/11 9/8
otherwise [7]  15/7 15/8 68/25 69/19
 74/22 74/23 101/24
our [35]  3/20 4/19 9/8 9/15 10/8 15/5
 20/5 21/18 22/15 35/2 38/11 39/13
 40/12 42/13 48/1 54/16 55/18 59/17
 61/1 61/10 63/21 69/11 73/11 73/23
 78/23 80/17 83/3 84/24 89/21 89/24
 90/20 104/11 104/23 106/9 108/7
ours [1]  21/22
out [16]  17/25 18/11 20/4 50/14 60/12
 69/18 77/11 83/14 86/3 90/17 91/23
 97/17 99/23 100/15 102/7 104/13
outcome [28]  9/17 13/7 13/10 15/6 18/4
 21/21 21/25 22/1 22/5 22/8 22/10 22/12
 22/14 27/21 29/9 30/8 32/16 54/18 55/3
 55/5 56/10 60/2 60/4 60/6 60/11 64/7
 64/18 66/13
outcomes [4]  38/15 54/21 54/23 54/24
output [13]  89/6 89/21 90/15 90/24
 91/10 91/20 94/2 94/9 96/25 98/11
 98/14 98/17 98/20
outputs [4]  93/21 97/4 97/6 99/17
over [9]  9/13 12/2 49/12 51/9 57/23
 77/25 79/25 82/21 83/2
overcome [3]  71/6 87/22 87/25

overly [1]  57/14
own [3]  38/10 38/12 42/2
owner's [1]  75/23
owners [1]  50/22

**P**

p.m [1]  109/3
PA [4]  1/7 1/24 3/3 3/16
page [3]  23/16 106/22 106/23
pages [13]  35/15 75/15 106/9 106/10
 106/12 106/20 106/21 106/21 107/1
 107/2 107/20 107/21 107/23
pamd.uscourts.gov [1]  110/20
papers [5]  25/13 25/14 59/17 61/2
 65/11
paragraph [1]  101/11
paragraphs [1]  106/19
parameter [1]  4/3
parameters [1]  108/10
Parkway [1]  1/19
parlance [1]  77/10
parrot [1]  55/10
part [15]  3/23 10/6 28/19 28/20 28/21
 28/25 30/7 33/9 45/24 48/19 56/21
 68/19 75/16 79/17 101/22
parte [1]  87/9
particular [7]  4/14 19/7 21/5 43/15
 53/21 76/16 102/21
particularly [5]  26/25 47/19 55/24 61/14
 102/9
parties [30]  4/14 5/1 5/5 5/7 5/10 5/11
 5/16 5/19 5/22 17/16 21/13 23/8 23/9
 31/18 32/1 45/9 45/18 46/22 46/25
 50/12 51/7 51/13 51/17 51/19 51/21
 52/20 68/19 73/6 75/20 104/19
parties' [7]  9/6 10/4 29/25 47/7 47/25
 81/22 81/25
parts [1]  12/16
party [1]  3/21
passage [5]  44/16 46/17 48/21 77/7
 79/4
passages [1]  57/4
past [1]  27/17
patent [74]  9/21 11/4 12/4 12/19 12/24
 13/1 13/2 14/13 14/16 14/18 15/4 15/13
 15/15 15/20 20/12 26/4 26/4 26/22
 26/22 27/4 27/13 28/19 28/20 28/25
 29/20 30/13 30/23 31/14 32/14 34/1
 36/6 37/19 37/20 43/9 43/18 43/19 44/3
 44/5 44/14 46/1 46/4 48/21 50/22 52/24
 53/23 57/3 57/14 57/15 60/16 60/19
 64/4 64/4 65/14 65/22 69/4 69/6 70/21
 71/4 71/12 74/2 75/22 80/12 84/22
 86/22 88/1 88/15 88/15 90/20 90/20
 90/22 91/5 95/2 97/9 98/13
patentable [2]  71/1 83/2
patented [2]  59/11 76/8
patentee [2]  59/16 59/22
patents [1]  91/2
path [1]  30/19
pause [5]  31/5 41/24 68/10 73/18 74/25
PDF [3]  2/4 2/8 75/2
PENNSYLVANIA [8]  1/2 1/4 1/6 1/11
 3/12 3/15 110/5 110/19
people [2]  95/5 97/13
per [2]  3/21 3/21
perfectly [2]  54/16 97/19
perform [2]  87/3 87/20
performing [7]  86/2 86/18 86/20 92/24
 93/2 102/20 103/4

performs [1]  85/12
perhaps [4]  4/20 12/2 68/6 99/6
Period [1]  23/20
permissible [1]  42/17
person [32]  7/3 7/5 7/15 8/10 20/17
 22/21 32/4 32/9 33/1 33/10 33/19 33/21
 34/11 37/7 40/6 62/11 62/18 62/23 64/8
 64/24 84/25 85/24 87/14 88/8 88/11
 88/12 88/13 90/4 91/17 101/22 102/11
 103/1
persons [3]  20/9 89/1 91/7
perspective [5]  47/20 50/19 75/23
 107/8 108/7
persuasive [1]  78/11
phase [1]  51/18
Philadelphia [1]  1/24
Phillips [14]  30/13 42/16 43/18 44/2
 44/14 44/20 69/13 72/18 76/3 80/20
 80/20 80/21 80/24 81/5
phone [1]  55/6
phrase [60]  6/17 6/20 10/5 10/22 11/18
 19/9 21/5 31/13 31/22 31/23 32/9 32/19
 32/21 33/1 36/7 36/23 37/4 39/7 39/9
 39/16 39/19 41/9 41/12 41/12 41/13
 42/10 43/15 45/16 45/24 47/2 47/20
 51/12 52/2 52/4 52/21 54/25 56/2 56/18
 56/19 58/13 60/5 60/7 62/1 62/4 62/6
 62/7 66/23 66/25 68/21 69/3 70/7 72/8
 73/4 78/20 78/25 79/8 81/8 91/7 92/20
 104/14
phrased [1]  30/21
phraseology [1]  81/7
phrases [3]  43/23 43/25 61/3
physical [1]  85/15
pick [1]  58/8
pictures [1]  76/21
place [5]  1/11 3/4 73/16 74/11 99/24
place-hold [1]  99/24
placeholder [2]  99/18 100/24
places [4]  31/17 31/18 55/22 59/6
plain [31]  12/21 12/22 12/23 20/25
 22/20 23/4 26/25 29/11 33/17 38/9
 42/14 42/19 42/22 43/1 44/22 45/18
 45/19 46/11 48/2 48/19 49/3 50/5 62/9
 63/7 67/2 70/8 70/10 76/9 82/15 82/16
 82/25
Plainly [1]  47/13
Plaintiff [8]  3/8 6/3 9/2 29/8 52/9 84/4
 95/13 103/22
plaintiffs [34]  1/18 2/3 3/11 4/6 5/3 5/8
 5/12 5/19 5/23 6/9 10/7 18/9 20/20
 21/19 22/16 32/2 35/4 42/9 59/14 59/21
 62/1 65/11 67/10 68/24 74/19 92/14
 95/16 96/9 97/5 97/12 99/9 100/15
 105/3 105/13
Plaintiffs' [13]  17/15 17/20 28/6 30/6
 43/10 50/19 56/21 59/2 66/24 75/5
 104/24 105/10 105/16
planning [1]  24/23
platform [2]  77/25 79/20
play [51]  5/6 11/16 14/2 14/4 14/4
 15/21 16/13 22/9 22/22 25/3 31/3 31/12
 31/17 31/23 32/22 33/5 33/9 33/15
 35/20 36/8 37/1 37/5 37/21 37/25 38/3
 38/8 39/10 40/9 41/3 41/5 41/14 43/16
 46/7 46/9 47/4 57/1 61/19 61/21 64/5
 64/18 69/22 71/18 71/25 72/7 72/20
 72/21 72/25 79/16 79/22 94/17 100/5
played [61]  5/16 6/18 6/21 12/7 26/18
 36/11 40/20 47/17 47/18 48/9 48/11

played... [50] 48/18 49/14 49/14 49/16 50/21 56/4 56/9 56/13 56/15 64/20 68/18 68/21 68/24 68/25 69/3 72/4 72/8 72/15 73/5 73/14 74/17 75/18 75/21 75/24 76/8 76/10 76/12 77/13 77/17 77/19 78/4 78/20 78/25 79/2 79/6 79/16 80/1 81/8 81/12 81/15 81/16 82/1 82/5 82/18 83/1 83/8 83/8 83/10 83/13 91/15

player [46] 11/16 24/13 26/9 32/12 32/13 32/15 34/20 35/19 36/10 36/11 40/20 52/16 56/6 56/23 57/1 57/6 57/10 57/17 58/18 61/12 64/5 64/11 64/16 65/3 65/5 66/12 66/14 71/18 71/24 72/6 72/6 72/20 72/22 74/7 77/16 77/20 78/3 78/5 79/3 79/7 79/14 79/14 83/12 83/13 94/17 100/4

player's [1] 24/16

players [1] 64/6

playing [3] 10/20 25/1 64/17

plays [2] 22/21 65/3

please [7] 3/7 9/4 39/4 58/9 75/15 78/17 105/13

plenty [1] 95/7

plums [2] 14/19 54/5

plurality [4] 72/14 76/19 91/13 94/12

plus [41] 84/18 84/19 84/20 85/4 85/6 85/9 85/17 85/20 86/7 87/21 87/23 89/13 92/13 92/16 92/18 92/21 93/4 93/14 93/19 93/23 94/6 94/8 95/2 95/7 95/9 95/24 96/4 98/5 99/8 99/12 99/13 100/1 100/10 100/14 101/5 104/1 104/3 104/6 104/9 104/16 104/21

point [38] 10/21 11/13 11/14 13/23 14/7 16/8 16/14 17/14 23/7 25/19 25/23 26/4 29/3 29/17 38/23 40/15 40/17 41/18 45/6 55/8 56/7 61/9 61/24 65/11 73/4 73/12 73/21 74/25 76/14 77/11 81/7 83/20 90/16 95/25 97/17 98/15 100/15 104/23

pointed [2] 17/25 20/4

pointing [4] 45/11 51/19 88/1 88/2

points [5] 27/18 31/16 58/9 78/23 89/19

poker [1] 83/15

pole [1] 53/8

POM [2] 1/4 3/11

populate [1] 53/14

portion [24] 23/22 25/18 25/20 26/8 26/20 30/4 34/14 34/21 36/19 36/22 37/17 37/20 39/21 39/23 39/24 65/11 65/18 65/19 65/21 65/23 66/9 66/10 66/23 66/25

portions [6] 9/10 37/8 40/21 52/21 104/20 106/8

pose [1] 50/25

POSITA [4] 7/4 7/11 7/12 7/20

position [11] 13/16 20/1 21/15 24/2 67/1 67/1 83/3 88/9 99/10 99/10 103/8

possibility [2] 34/10 54/11

possible [4] 18/21 18/25 58/7 108/10

post [1] 41/8

post-game [1] 41/8

potential [1] 15/8

practices [1] 37/16

precedence [1] 27/8

precept [1] 48/5

precise [2] 60/14 85/15

precisely [1] 59/10

predominate [1] 77/25

preferable [1] 59/25

prefers [1] 80/12

preliminary [7] 4/5 4/8 5/25 7/1 8/23 9/23 92/11

prepare [1] 108/1

prepared [3] 17/10 30/11 110/11

preparing [2] 86/10 104/12

present [8] 5/3 5/17 5/19 5/22 20/16 34/3 52/9 105/17

presentation [4] 2/4 2/8 4/19 16/14

presentations [1] 52/6

presented [7] 5/2 26/9 51/7 74/3 74/7 103/25 104/8

presenting [3] 4/14 67/22 84/4

preserve [1] 83/9

press [1] 79/16

presumably [1] 67/1

presume [1] 63/18

presumed [1] 63/22

presumption [4] 85/1 87/23 88/1 88/4

pretty [2] 27/17 100/13

prevent [1] 85/11

preview [7] 26/9 71/15 74/4 74/7 76/16 76/17 79/5

previewed [2] 79/3 79/6

previous [2] 62/25 78/17

previously [6] 3/20 55/1 55/23 55/23 56/2 62/22

previously-determined [1] 55/1

primary [2] 29/5 59/10

principle [2] 57/25 86/3

principles [2] 18/11 69/25

printed [3] 91/23 92/1 92/1

prior [17] 10/3 52/16 56/6 70/21 70/24 71/2 71/7 71/18 71/24 72/10 79/9 81/11 82/21 82/22 83/2 91/3 91/5

Prisua [1] 86/12

prize [38] 9/18 12/13 12/17 13/1 13/4 13/6 13/15 13/19 14/1 14/5 14/9 14/23 14/25 15/7 15/23 16/3 16/4 18/5 19/13 19/15 21/25 22/1 22/11 27/21 27/22 28/4 28/5 28/7 28/23 28/25 29/2 29/6 29/9 29/10 29/13 30/9 60/3 60/22

prizes [4] 12/1 30/17 38/15 60/25

probably [1] 4/13

problem [5] 22/4 36/17 37/17 68/9 105/17

problematic [1] 56/5

proceed [5] 6/4 8/24 9/4 31/4 68/7

proceeding [1] 108/16

proceedings [2] 1/12 110/8

process [9] 11/1 29/8 34/23 40/10 54/9 55/16 55/18 56/10 98/6

processing [6] 86/17 86/18 86/23 87/1 87/6 91/3

processor [49] 5/18 21/9 38/19 84/11 84/11 84/17 84/24 85/24 87/14 88/7 88/14 88/18 88/25 89/8 89/22 90/2 90/22 90/23 90/25 91/4 91/8 91/18 91/19 92/13 92/15 93/17 93/17 93/18 94/21 94/25 95/6 95/8 95/11 95/23 95/24 96/3 96/4 96/11 96/13 96/14 96/17 96/19 96/21 97/13 97/14 97/15 97/22 99/22 101/19

product [4] 81/2 101/12 101/16 102/18

profitability [1] 14/24

progeny [1] 84/23

program [28] 5/21 38/20 45/1 97/18 97/19 97/23 99/7 99/14 99/14 99/18 99/21 100/3 100/4 100/7 100/8 100/21

101/9 101/12 101/15 101/16 101/18 101/21 102/2 102/4 102/10 102/14 102/18 103/13

programming [2] 103/9 103/21

progressed [1] 73/5

prominent [1] 8/4

prongs [1] 91/23

proof [1] 24/1

proper [1] 6/22

properly [3] 47/16 49/6 50/21

proposal [1] 30/7

propose [4] 28/11 52/3 84/16 105/8

proposed [28] 6/20 9/6 13/8 17/22 18/2 21/17 21/18 21/23 23/17 29/25 30/2 34/17 39/1 39/1 42/5 45/18 46/16 47/7 47/13 66/18 66/22 66/24 81/22 89/14 89/15 98/6 100/15 107/25

proposing [6] 32/2 35/2 47/8 47/10 50/12 90/24

proposition [1] 39/15

prosecution [29] 19/4 21/2 64/22 65/13 69/6 69/13 69/14 69/20 69/23 70/4 70/5 70/13 71/19 72/9 73/5 75/25 76/5 76/6 80/5 80/7 80/10 80/15 80/21 81/1 82/7 82/9 82/12 83/5 97/9

prove [1] 56/9

provide [10] 51/24 55/15 66/24 75/10 82/4 94/7 102/9 102/15 103/1 107/1

provided [4] 7/3 16/19 23/16 30/25

provides [2] 65/12 66/9

providing [1] 32/11

provisions [1] 110/5

PTAB [1] 87/10

purely [3] 85/3 85/10 87/6

purple [1] 41/13

purport [1] 20/3

purposes [4] 7/17 23/3 72/10 81/4

pursuant [1] 110/5

pushed [1] 40/22

put [13] 19/9 29/9 29/9 38/14 54/5 56/16 59/22 86/12 89/18 97/5 98/22 103/10 106/12

puts [1] 96/9

putting [1] 64/24

**Q**

qualifications [4] 7/15 7/20 8/17 8/18

qualify [1] 15/6

quality [1] 88/6

quarreled [1] 74/19

quarters [1] 16/1

query [1] 54/2

question [40] 5/25 7/1 7/24 13/22 15/2 15/19 15/20 16/8 23/11 28/2 28/2 28/3 28/13 30/12 33/18 33/21 38/24 38/25 39/6 39/9 40/14 49/23 50/25 51/15 51/24 53/11 54/24 58/11 62/3 62/6 66/21 90/12 96/2 99/7 100/20 100/22 101/21 101/24 103/17 106/6

questioning [2] 45/7 106/24

questions [5] 28/9 66/19 92/4 98/3 107/16

quick [2] 85/21 104/7

quickly [2] 66/6 95/4

quite [1] 107/4

quote [7] 10/9 77/4 77/4 78/15 87/6 87/6 103/3

quotes [1] 45/4

quoting [1] 76/15

**R**

raise [3]  25/15 27/18 79/21
raised [1]  95/16
random [7]  11/12 53/15 53/18 53/19 54/1 54/6 54/11
ranking [3]  53/1 53/1 53/8
rarely [2]  57/20 78/9
rather [6]  7/17 76/24 80/13 81/1 107/9 107/14
rationale [3]  19/6 19/17 24/2
reach [4]  6/24 19/1 103/12 106/7
reached [2]  6/6 68/19
read [15]  20/8 20/13 23/15 33/18 41/19 43/16 55/14 60/12 64/3 64/9 65/22 83/2 100/8 101/11 104/7
readable [4]  101/17 102/18 103/21 104/14
reader [2]  48/23 58/22
reading [13]  20/12 20/24 24/17 32/4 32/9 33/17 40/7 44/15 62/11 62/19 82/25 91/18 99/12
reads [1]  33/1
ready [2]  4/11 58/11
real [3]  23/7 62/6 100/20
realize [2]  75/25 78/24
realizing [1]  58/7
really [13]  12/8 18/8 23/4 43/12 49/20 53/16 56/1 85/22 86/24 89/19 98/17 100/23 100/24
reason [8]  13/5 22/19 34/17 35/1 63/2 63/3 65/7 77/23
reasoning [3]  86/25 87/10 87/10
reasons [8]  6/10 17/25 22/4 26/1 51/19 65/17 66/16 98/12
rebut [1]  88/3
rebuttable [1]  85/1
recall [3]  8/2 10/3 89/25
receipt [1]  75/2
received [1]  3/5
receiving [4]  21/10 86/19 107/5 108/23
recently [1]  85/17
recess [1]  84/2
recital [1]  85/7
recitation [1]  72/3
recite [4]  71/23 84/12 92/23 104/17
recited [4]  41/20 72/5 72/12 72/13
recites [2]  44/25 92/23
reciting [1]  92/24
recognizable [1]  102/2
recognized [1]  50/17
recognizes [1]  79/15
recollection [1]  52/23
record [13]  28/10 60/9 75/16 84/1 106/11 106/12 106/17 107/3 107/7 107/17 107/23 108/6 108/14
records [1]  20/6
red [5]  64/15 96/11 96/15 96/17 96/18
redefining [1]  45/8
reduce [3]  69/15 71/9 78/2
redundant [1]  56/3
reels [1]  76/19
refer [8]  14/8 48/20 52/14 53/3 57/5 57/8 74/10 75/14
reference [6]  55/2 79/6 79/8 81/11 82/23 82/24
referred [3]  7/4 27/6 62/24
referring [11]  12/20 16/18 28/24 32/6 42/23 56/12 61/4 61/8 77/14 97/19 98/15

refers [12]  11/23 14/18 23/19 42/16 52/15 56/21 61/17 76/18 79/4 80/20 85/6 101/11
reflected [1]  101/3
refresh [1]  52/22
regard [1]  105/24
regarded [1]  53/4
regarding [1]  82/7
regardless [4]  7/19 12/9 43/13 43/14
regressive [1]  88/8
regurgitate [1]  50/13
reinforce [2]  17/14 85/1
reiterated [1]  57/21
rejected [2]  27/15 70/10
rejection [2]  70/23 71/6
related [1]  13/23
relates [1]  8/1
relating [5]  57/3 85/23 86/2 86/20 87/19
relevant [1]  7/11
Reloading [1]  73/19
rely [1]  37/10
remaining [3]  11/12 55/25 68/20
remiss [1]  30/1
remove [1]  18/19
renumbered [1]  73/10
repeat [1]  54/9
repeating [1]  30/19
replace [4]  30/8 50/2 50/5 60/20
replacing [1]  42/12
replete [2]  27/9 95/4
report [1]  106/19
REPORTED [1]  110/17
reporter [4]  110/4 110/15 110/18 110/23
REPORTER'S [1]  109/4
reports [2]  20/5 107/14
represents [1]  81/1
reproduction [1]  110/22
reputation [1]  87/8
request [2]  108/1 108/5
requested [1]  105/5
require [4]  67/3 67/10 68/25 78/11
required [1]  100/11
requirement [1]  78/11
requires [3]  67/9 68/23 82/1
resides [1]  101/14
resolution [1]  107/25
resolve [3]  51/8 51/15 51/22
resolved [1]  75/20
respect [16]  4/10 6/17 6/22 8/19 19/8 21/4 27/18 29/17 30/4 30/7 36/5 50/1 59/2 90/14 90/25 107/20
respective [2]  9/6 47/25
respond [7]  5/4 5/9 5/13 5/20 5/23 16/16 95/19
response [7]  9/18 9/24 22/16 102/7 102/13 103/7 105/6
responsive [3]  6/2 22/2 38/12
rest [2]  6/19 53/14
restrictive [1]  82/25
result [11]  8/11 9/14 14/25 18/14 19/1 19/19 19/25 64/12 77/5 77/17 80/10
resulting [2]  22/8 64/18
results [10]  13/15 15/19 18/13 19/5 19/7 20/21 24/1 36/15 56/14 59/7
results-based [4]  19/5 24/1 36/15 59/7
results-driven [1]  18/13
resume [1]  83/24
retreat [1]  104/6
return [4]  14/8 15/9 15/21 16/5

reversed [2]  87/5 87/11
review [3]  6/5 30/2 75/12
reviewed [2]  3/6 7/9
reviewing [2]  28/18 44/6
revised [3]  6/3 6/6 9/8
revision [1]  29/24
reward [1]  29/15
rewrite [3]  59/4 59/15 59/18
right [32]  4/17 5/24 6/24 7/23 8/15 8/22 9/4 27/16 33/23 50/23 57/8 65/23 65/25 66/8 67/13 67/21 68/5 71/21 76/20 77/7 83/24 84/7 88/17 89/17 93/15 94/1 94/3 94/4 96/3 99/2 104/22 108/22
right-hand [3]  57/8 76/20 88/17
rises [1]  82/9
Riverwood [1]  1/19
RMR [4]  110/3 110/13 110/14 110/18
role [3]  78/2 78/5 79/21
Rom [3]  42/24 44/10 101/17
rooted [1]  46/17
row [1]  77/17
rubber [2]  16/2 16/4
rule [1]  73/22
rules [1]  89/16
run [1]  69/18
running [1]  58/1

**S**

s/Lori [1]  110/13
said [41]  4/17 7/24 9/25 10/8 10/9 16/17 20/15 21/22 23/22 28/1 35/5 35/14 35/16 36/16 36/18 38/13 40/6 40/22 42/25 44/13 46/19 55/8 58/24 58/25 59/1 62/2 63/13 69/14 71/9 71/22 72/3 72/18 72/20 92/15 92/19 93/20 94/2 98/3 100/15 103/23 107/21
sake [1]  61/9
same [17]  22/1 22/3 25/8 28/17 31/19 43/22 46/13 50/25 71/2 71/3 77/14 99/5 99/22 100/19 101/25 106/23 110/22
Samsung [6]  86/11 87/10 87/16 95/16 105/6 105/11
sanctions [1]  80/21
satisfy [1]  96/5
SAVVY [3]  1/3 3/2 3/11
saw [3]  22/2 34/7 104/2
say [54]  13/10 15/5 15/6 16/2 19/2 19/12 19/13 19/21 19/23 21/16 23/21 25/2 25/15 25/24 26/4 26/11 26/19 27/13 29/9 33/11 34/12 37/7 37/12 37/13 40/3 40/8 41/4 41/9 41/19 42/10 47/24 54/5 54/25 63/9 64/9 64/25 65/12 65/13 66/9 70/13 71/1 79/23 82/14 88/20 88/23 93/15 94/4 94/7 94/24 95/5 95/10 96/11 96/16 97/2
saying [15]  13/10 15/7 19/22 20/13 24/23 39/18 39/19 44/8 55/9 58/17 69/18 78/22 79/24 96/13 97/24
says [23]  20/24 26/12 27/11 29/5 30/13 33/22 37/5 38/1 49/10 51/23 53/23 56/5 60/1 63/2 63/21 76/25 77/3 77/3 80/20 85/6 94/5 96/14 97/10
schedule [7]  12/3 12/6 14/22 30/16 37/18 53/3 53/9
science [2]  7/6 8/4
scope [10]  27/5 46/19 55/7 69/16 71/9 75/21 76/11 80/22 82/10 82/15
screen [25]  13/25 16/24 17/4 17/6 17/10 23/18 26/9 31/8 31/9 39/22 39/23 42/2 42/6 47/13 52/11 52/12 65/25 66/1

screen... [7]  66/2 66/3 68/13 84/8 88/17
 92/11 105/2
screens [1]  66/4
searches [1]  70/21
second [4]  12/12 39/23 90/14 103/17
Section [1]  110/6
see [60]  9/11 11/1 13/3 17/4 17/6 17/10
 18/23 19/5 20/9 20/22 21/2 23/14 23/18
 24/6 24/18 28/23 31/9 34/3 36/6 36/20
 36/23 37/20 39/23 40/25 41/7 41/11
 42/5 52/11 52/12 52/25 52/25 53/4
 60/14 60/23 62/17 64/20 65/24 66/1
 66/2 66/8 68/13 69/10 71/13 71/15 72/8
 74/9 78/15 78/18 78/19 79/3 81/7 82/2
 83/14 84/8 86/14 89/4 90/17 91/23 94/8
 95/6
seeing [7]  66/3 66/4 76/21 78/3 79/17
 81/19 107/22
seek [2]  10/5 90/12
seem [3]  29/1 49/23 98/19
seems [4]  24/22 56/2 98/21 98/22
sees [1]  79/14
selected [2]  14/2 46/25
selecting [2]  48/14 66/12
selection [3]  24/14 24/16 54/11
send [1]  108/2
sense [5]  12/8 16/3 46/1 63/24 64/3
sensible [1]  16/5
sentence [4]  71/21 79/4 79/9 89/14
separate [1]  23/2
separately [3]  41/9 41/14 41/15
September [3]  1/13 105/17 105/23
September 18th [1]  105/17
September 23rd [1]  105/23
series [1]  84/13
serves [1]  89/18
set [9]  3/4 18/11 44/10 53/24 75/11
 95/2 104/24 105/1 110/9
sets [3]  58/18 75/2 77/8
seven [2]  21/8 98/25
several [1]  9/8
share [3]  16/23 31/7 92/10
shared [1]  17/6
she [2]  65/3 68/1
shifting [1]  21/15
short [2]  30/10 105/9
should [19]  19/20 20/13 20/15 20/24
 25/16 27/15 35/4 41/18 45/16 48/1
 50/15 60/10 61/3 61/23 66/17 70/1 70/3
 87/19 107/1
shouldn't [1]  31/8
show [6]  11/23 14/17 37/11 48/22
 53/21 82/5
showed [6]  6/13 46/3 76/23 77/8 77/16
 87/7
showing [11]  9/5 10/1 10/11 35/18
 66/14 78/18 79/12 79/12 79/13 81/15
 89/2
shown [14]  11/19 12/11 14/18 30/17
 36/10 53/23 76/15 77/18 82/22 82/23
 83/11 88/16 90/16 91/8
shows [8]  10/14 10/22 11/24 13/11
 13/17 53/1 80/2 102/1
side [8]  11/25 57/7 57/8 65/23 66/8
 76/20 88/17 103/15
sides [1]  105/9
sign [2]  38/1 38/2
significance [1]  20/6

significant [2]  6/15 68/22
similar [5]  18/6 86/15 87/9 99/13
 102/18
Similarly [2]  74/6 94/17
simpler [1]  42/19
simply [10]  22/17 26/8 26/14 26/20
 52/14 60/20 82/17 95/25 103/3 103/13
simultaneously [1]  67/15
sin [1]  44/19
since [4]  49/8 57/15 57/22 57/24
single [3]  46/17 66/3 84/20
sins [1]  44/14
sit [1]  67/6
sits [1]  22/21
sitting [1]  25/2
situation [1]  54/13
situations [3]  55/13 56/22 56/23
six [8]  6/25 57/8 65/14 67/14 74/6
 84/13 84/20 86/18
sixth [1]  76/14
skill [39]  7/3 7/15 8/3 8/10 8/12 8/13
 20/9 20/18 32/4 32/16 33/10 33/22
 34/11 37/7 40/6 62/19 62/23 64/5 64/6
 64/8 64/25 77/25 78/2 79/21 84/25
 85/24 87/15 88/8 88/11 88/12 88/13
 89/1 90/5 91/7 91/17 97/13 101/23
 102/11 103/2
skip [3]  43/11 70/15 92/11
slide [30]  10/3 13/8 14/17 21/8 24/8
 36/20 38/11 39/22 41/11 42/6 43/11
 47/6 53/7 57/7 57/8 59/20 63/6 65/23
 66/8 70/16 76/22 78/17 78/17 86/4
 86/14 88/16 101/4 103/15 105/2 105/10
slides [12]  2/4 2/8 58/7 70/15 75/2 75/4
 75/11 75/15 80/18 92/11 104/25 105/1
slight [1]  8/16
slightly [1]  22/16
slot [1]  76/18
slow [1]  35/23
small [1]  15/24
snapped [1]  91/22
so [159]
software [2]  101/15 102/10
sole [1]  68/20
solution [1]  34/5
some [38]  4/2 4/12 6/8 6/9 6/10 12/2
 14/9 15/9 17/23 18/1 20/11 24/20 24/23
 25/11 25/18 29/24 31/14 31/16 32/20
 41/6 46/18 50/14 55/13 61/16 62/17
 66/19 68/1 69/24 70/15 74/1 74/19
 74/21 77/17 84/25 87/1 87/14 101/22
 103/12
somehow [8]  15/23 35/12 37/15 40/22
 42/1 65/22 97/12 98/15
someone [1]  50/12
someplace [1]  26/19
something [26]  9/23 15/3 23/5 26/12
 27/22 32/4 38/16 49/7 51/16 58/17
 62/14 63/8 63/10 63/11 63/14 63/19
 64/1 64/11 67/6 67/7 77/3 88/3 90/3
 95/10 100/22 106/17
somewhat [1]  56/5
somewhere [1]  61/7
son [1]  22/22
soon [1]  39/14
sooner [2]  108/6 108/13
sorry [9]  28/16 36/1 36/25 65/24 66/6
 69/12 73/19 74/17 78/14
sort [13]  4/15 15/25 19/25 20/11 24/20
 24/23 37/23 58/12 58/12 59/5 59/6

71/16 81/21
sounds [1]  107/25
Southern [1]  104/13
spatially [1]  86/19
speaking [1]  3/17
special [9]  43/3 44/7 46/18 48/22 48/22
 88/21 88/24 90/10 97/15
specialized [1]  20/11
specific [1]  98/3
specifically [2]  52/15 59/23
specification [54]  10/18 10/20 19/4
 19/14 21/2 25/18 25/20 25/22 26/19
 27/5 27/10 28/21 30/14 31/22 33/22
 33/24 33/25 34/14 34/22 37/18 38/7
 39/22 40/12 40/22 46/17 48/4 48/6 57/4
 58/15 58/16 58/17 59/4 59/13 59/17
 65/12 67/8 69/4 69/10 69/12 69/20 70/4
 73/24 76/4 76/14 78/8 80/9 81/3 88/6
 92/17 93/11 94/20 94/22 99/11 101/12
specifications [3]  23/22 28/16 37/9
specifics [1]  17/13
specified [1]  85/7
spending [1]  16/1
spent [1]  17/19
spinning [1]  76/19
spots [2]  11/12 53/17
square [1]  91/24
squeal [1]  90/7
St [3]  95/13 95/20 95/23
stark [5]  99/6 103/11 103/16 104/2
 104/7
Stark's [1]  103/10
start [7]  3/7 19/14 20/22 20/24 22/10
 76/3 89/23
starting [4]  10/25 34/1 76/15 85/25
state [2]  28/10 30/5
stated [3]  86/4 88/16 88/18
statement [13]  15/14 17/18 28/15 80/24
 81/6 81/12 82/9 82/10 82/17 85/18 86/8
 103/16 104/9
statements [1]  82/12
states [5]  1/1 102/14 110/4 110/6
 110/19
stating [1]  103/3
statute [7]  85/6 85/9 85/17 92/21 93/4
 97/16 100/1
step [55]  5/11 5/15 6/16 6/17 11/1 11/2
 11/5 11/11 11/15 18/6 21/9 21/10 21/10
 21/11 21/11 24/11 24/13 26/16 26/17
 26/17 34/18 37/13 40/2 40/18 41/1 41/1
 41/2 41/2 41/3 41/4 41/19 53/22 53/22
 54/4 55/17 58/25 58/25 59/2 61/3 61/22
 62/12 62/17 62/18 62/25 64/9 64/20
 65/2 71/15 71/22 72/5 72/12 72/13
 74/13 81/20 90/1
steps [5]  21/9 53/25 54/15 84/14 84/21
Steve [1]  3/10
Steven [1]  1/18
stick [1]  108/9
still [12]  6/14 6/16 15/19 16/2 17/1
 23/10 26/6 30/3 45/25 46/8 77/19 95/8
stop [4]  39/14 41/22 66/20 70/16
storage [2]  101/17 102/19
storing [1]  86/19
Street [1]  1/23
strike [1]  71/14
strike-through [1]  71/14
strikes [1]  49/25
strong [1]  99/25
struck [1]  71/16

structural [4] 100/5 102/2 102/11 103/13

structure [30] 84/25 85/8 85/15 86/4 87/1 87/14 87/16 87/17 87/19 88/5 92/17 92/23 92/24 93/2 93/2 93/10 93/12 94/7 94/9 96/5 96/7 96/23 96/24 99/11 100/11 100/23 101/22 103/1 103/5 104/17

structured [2] 86/15 89/3

structures [3] 94/3 103/23 103/23

study [1] 72/23

subclass [1] 96/19

subject [6] 27/9 35/6 86/6 90/13 104/15 106/24

submission [1] 7/2

submissions [2] 7/9 108/24

submit [4] 105/6 105/9 107/12 107/21

submitted [7] 6/2 6/3 7/13 17/16 17/17 103/16 107/23

submitting [1] 107/21

substantive [2] 18/1 18/7

substitute [3] 59/17 60/8 66/22

substituted [1] 59/24

substituting [1] 51/25

substitution [1] 86/20

successful [10] 9/17 13/7 13/10 15/6 18/4 21/21 21/24 21/25 30/8 38/15

such [12] 8/6 33/14 41/15 43/17 46/2 49/3 54/7 55/5 60/2 76/18 85/19 92/17

sufficient [12] 82/21 83/12 92/17 92/24 94/2 94/7 95/22 96/5 97/3 100/23 103/1 107/15

sufficiently [3] 67/3 92/23 96/23

sufficiently-definite [2] 92/23 96/23

suggest [5] 49/21 68/6 107/4 107/10 107/24

suggested [3] 21/19 52/5 67/10

suggesting [2] 47/5 47/6

suggests [6] 13/1 38/7 50/15 60/10 63/10 71/3

suitable [2] 8/5 8/6

Suite [1] 1/20

suits [1] 24/2

sum [3] 39/17 87/15 87/16

summary [1] 28/16

sun [1] 85/12

SuperGuide [1] 59/19

superseded [3] 55/4 60/8 60/19

supervision [2] 110/11 110/23

supplanting [1] 42/12

supplemental [2] 107/5 108/23

support [14] 20/1 20/1 23/16 35/21 36/14 65/10 65/12 65/14 66/10 73/24 78/12 85/8 99/11 103/8

supported [2] 37/10 84/21

supports [3] 33/5 65/18 65/22

supposed [3] 22/14 88/10 99/22

Supreme [2] 12/20 12/21

sure [19] 6/5 18/17 18/25 25/12 28/22 34/19 36/1 38/23 39/14 52/13 53/18 55/2 58/10 58/10 63/13 64/10 65/2 89/18 106/15

Surely [1] 47/24

surrender [1] 46/19

surrounding [1] 87/18

swapping [1] 99/23

symbol [3] 44/5 54/7 72/24

symbols [35] 9/17 11/8 11/12 21/20

22/18 23/9 23/11 23/20 23/24 25/17 28/12 30/5 33/13 33/14 46/5 46/7 46/9 48/16 53/1 53/14 53/15 53/18 53/19 54/2 54/6 54/12 66/2 74/3 77/1 77/6 77/8 77/9 77/18 79/10 79/13

synonymous [1] 11/3

synonymously [2] 102/5 102/6

synopsis [1] 85/21

system [17] 11/8 11/10 11/11 38/19 48/10 48/13 53/21 54/14 56/22 57/5 57/9 57/16 65/1 65/5 69/1 69/19 77/21

system's [1] 55/3

system-generated [3] 69/1 69/19 77/21

SYSTEMS [3] 1/3 3/2 3/11

T

table [26] 11/24 13/3 13/25 14/6 19/16 27/24 27/24 28/17 28/17 28/20 28/23 28/24 29/1 29/2 29/18 32/6 35/16 36/9 37/14 37/15 37/23 38/13 38/14 38/15 38/21 38/21

Tac [4] 22/21 22/22 29/14 77/15

tacking [1] 27/11

take [19] 4/12 4/15 6/2 6/11 7/10 7/17 13/24 14/7 17/3 29/8 37/11 60/5 60/7 77/12 79/5 81/20 83/15 83/23 108/11

taken [9] 16/21 19/24 31/8 59/24 80/10 82/20 84/2 99/10 99/10

takes [2] 39/4 43/25

taking [6] 18/9 19/14 44/16 59/6 59/7 59/22

talk [9] 20/24 34/3 35/17 40/3 58/12 61/15 61/18 61/20 62/2

talked [7] 24/10 24/10 35/8 36/12 69/24 72/1 74/2

talking [34] 14/17 17/19 24/18 25/5 26/8 27/23 29/11 33/20 34/4 34/12 34/14 34/18 34/23 38/17 39/14 40/1 40/2 40/3 40/9 41/22 51/12 54/19 58/17 60/3 60/4 60/24 60/25 62/21 64/1 64/4 64/16 94/14 97/18 107/1

talks [11] 22/8 24/13 31/16 33/8 33/25 34/1 34/8 39/20 51/3 51/6 79/9

target [1] 17/16

targets [1] 21/15

teaches [4] 33/11 36/7 57/15 71/2

teaching [1] 43/14

teachings [3] 44/1 57/2 57/13

technical [4] 20/11 42/17 42/20 73/18

Technology [3] 86/1 87/17 87/24

tell [3] 33/22 55/9 67/7

telling [1] 78/20

ten [13] 3/21 4/3 27/17 36/2 38/23 49/22 58/3 58/4 58/8 74/25 81/19 89/11 107/2

ten-minute [1] 38/23

term [119]

terminal [3] 84/13 84/15 91/11

terminology [3] 14/13 45/25 88/7

terms [46] 4/12 4/13 4/20 4/21 5/14 6/10 12/22 12/23 12/24 14/5 14/11 14/11 14/24 14/24 15/15 16/19 17/17 20/17 29/5 42/17 42/20 42/25 43/18 44/2 44/21 45/22 46/23 46/24 59/16 60/21 66/23 67/14 67/17 75/13 88/5 91/3 93/5 93/14 94/7 95/20 99/8 99/23 99/24 100/14 102/3 104/23

test [6] 53/24 56/14 62/21 83/4 90/1 99/15

tested [1] 11/15

testimony [2] 106/20 106/22

testing [46] 5/11 18/6 21/10 21/11 24/11 26/17 41/1 41/2 52/9 52/14 52/15 53/16 55/17 56/7 56/7 56/8 56/10 58/13 59/1 61/3 61/11 61/22 62/12 62/13 62/14 62/17 62/18 62/21 62/24 63/1 63/3 63/9 63/11 63/11 63/13 63/14 63/15 64/9 64/10 65/1 65/2 65/15 65/18 65/22 66/10 83/4

Texas [1] 104/18

text [1] 74/6

textbook [1] 81/5

than [40] 4/12 6/11 14/2 20/6 23/13 24/5 39/17 46/15 46/15 46/22 48/7 52/17 53/20 54/3 54/14 54/20 54/25 55/11 60/2 60/15 63/4 63/19 64/2 64/12 65/5 66/23 67/2 67/12 74/15 76/11 76/24 80/13 81/2 82/19 93/21 95/1 99/17 100/16 107/2 107/9

thank [34] 3/9 3/13 3/19 4/24 5/24 8/15 16/17 16/23 17/9 17/12 29/21 30/10 31/7 35/25 40/14 41/23 42/1 50/23 51/5 52/12 67/13 67/20 67/24 84/8 92/5 98/24 101/8 104/21 106/6 108/17 108/22 108/25 109/1 109/2

thanking [1] 58/2

that [778]

that's [74] 4/21 10/21 11/20 13/15 13/16 13/25 15/5 15/14 15/16 15/23 16/6 17/3 19/10 24/21 26/12 26/20 26/24 28/2 29/17 29/25 33/20 33/23 34/22 35/1 39/22 40/20 40/21 42/4 42/14 43/19 44/1 44/17 45/4 47/12 47/19 49/2 49/10 49/16 49/20 50/18 51/16 51/21 51/24 55/6 59/16 59/19 59/21 62/24 64/9 64/11 67/8 67/21 69/17 69/21 70/2 70/4 70/24 71/8 74/4 76/12 77/23 79/3 79/11 79/23 85/17 93/15 94/18 94/20 95/13 95/13 98/21 100/11 101/18 107/15

their [78] 6/13 6/20 7/2 7/4 9/14 9/18 9/24 12/14 13/8 13/9 13/15 14/8 15/18 16/4 17/21 17/25 18/2 18/14 19/6 20/1 21/23 22/2 23/13 23/15 23/17 23/23 24/2 24/2 24/4 25/13 25/14 25/15 30/20 35/12 35/12 35/13 35/15 35/21 36/14 36/15 36/15 36/16 36/16 36/18 36/21 36/22 38/10 38/12 40/21 42/11 43/1 65/11 65/13 66/9 70/19 71/7 71/9 72/17 79/23 82/25 84/17 87/9 87/12 87/22 88/9 88/20 88/21 88/22 89/20 90/9 93/5 93/8 93/13 97/1 97/18 100/15 103/8 106/8

theirs [1] 89/23

them [13] 19/15 24/3 36/17 37/20 41/4 48/20 51/22 55/10 55/10 59/25 70/1 75/12 100/18

themselves [4] 24/6 62/9 99/25 100/21

then [51] 5/4 5/5 5/8 5/12 5/21 6/24 11/7 12/12 15/3 16/9 19/12 20/13 20/25 21/2 22/2 29/9 33/21 34/14 38/24 40/15 42/21 48/5 49/18 50/21 53/11 53/14 54/4 54/9 59/4 61/20 65/1 67/14 71/11 72/3 73/6 76/4 77/3 78/4 80/6 84/13 85/22 87/20 88/2 92/14 96/12 96/16 97/22 97/23 99/9 105/22 108/3

there [133]

there's [16] 12/12 24/11 24/13 26/9 33/11 43/2 46/18 49/25 63/15 74/19 80/24 93/9 93/12 98/17 101/3 107/10

**T**

therefore [7]  15/22 27/13 57/2 57/14 85/4 87/4 95/6

thereof [2]  7/6 85/8

these [34]  7/22 8/20 11/10 14/11 14/11 18/18 18/24 18/25 19/22 19/24 36/13 37/8 37/16 38/17 46/6 46/6 46/10 51/21 54/1 57/4 57/8 74/20 77/8 79/17 82/20 89/5 92/11 94/7 94/9 94/23 99/13 99/15 100/14 100/16

they [187]

they'll [1]  26/18

they're [8]  13/9 18/19 18/24 19/1 21/15 34/3 63/15 64/10

they've [2]  16/4 20/2

thing [20]  19/21 22/1 22/3 25/8 46/13 63/12 69/2 70/6 71/2 71/3 82/7 95/6 96/2 96/11 96/15 96/16 99/19 99/19 99/22 100/24

things [16]  6/12 9/20 10/16 18/6 19/14 22/3 32/3 35/15 37/12 62/20 63/23 71/5 88/12 89/8 92/22 97/21

think [34]  4/3 4/11 4/13 4/19 5/25 6/15 6/21 7/24 12/4 14/20 19/13 24/19 32/20 33/19 43/11 45/6 47/5 48/25 49/14 51/8 61/1 65/8 65/17 67/9 67/18 69/25 70/15 71/1 97/25 98/16 101/3 102/8 103/11 107/1

thinking [1]  68/3

third [2]  5/10 70/9

this [278]

those [38]  3/6 6/9 8/22 10/19 18/20 20/17 22/3 30/17 33/13 41/16 43/6 53/18 54/6 66/16 69/15 70/11 70/21 70/23 71/13 71/14 76/23 80/17 84/20 86/1 86/3 86/9 91/24 91/24 93/6 93/6 95/10 97/24 102/15 106/12 106/21 107/1 107/21 107/23

though [6]  6/2 7/24 19/12 19/15 19/16 59/23

thought [5]  13/24 16/24 45/9 70/19 96/23

three [28]  8/5 14/3 14/19 14/19 14/22 22/23 22/24 24/9 27/12 31/2 34/1 35/14 36/8 37/8 37/12 40/21 44/22 48/4 53/25 54/4 54/15 69/25 76/24 77/8 77/17 102/19 105/15 106/4

through [19]  4/22 25/11 25/12 25/24 28/7 36/21 54/15 57/6 57/7 58/6 58/7 65/14 65/17 71/14 75/13 76/2 76/4 103/12 106/19

throughout [9]  11/3 19/22 21/6 43/9 43/17 43/19 44/3 44/21 46/1

thus [2]  72/22 81/3

Tic [4]  22/21 22/22 29/14 77/15

Tic-Tac-Toe [4]  22/21 22/22 29/14 77/15

time [19]  3/4 4/1 4/19 4/20 17/3 21/24 25/12 44/4 62/5 65/16 69/6 69/18 81/7 82/13 94/22 95/17 97/14 97/18 108/12

timeframe [1]  108/9

times [5]  21/7 24/9 41/20 57/22 74/22

timing [1]  4/11

tiny [1]  91/25

titanium [3]  53/3 53/4 54/8

Title [1]  110/6

today [6]  3/17 4/12 25/14 95/17 104/12 105/7

today's [6]  3/5 75/5 75/12 106/3 107/17

108/15

Toe [4]  22/21 22/22 29/14 77/15

together [3]  5/14 54/6 64/24

told [4]  65/24 67/25 68/8 73/2

too [3]  15/23 68/2 90/7

took [1]  73/7

top [1]  86/4

total [1]  107/2

totem [1]  53/8

touch [1]  69/25

touched [1]  42/8

touchscreen [3]  71/24 91/15 92/3

toward [1]  108/13

track [2]  3/25 13/24

tradeoff [3]  93/9 93/9 93/12

transcript [4]  106/10 110/7 110/10 110/22

treated [1]  102/6

treatment [2]  94/8 97/16

trees [1]  81/20

tremendous [1]  49/25

Trial [1]  86/22

tried [1]  23/14

trouble [1]  81/19

true [2]  26/25 110/7

truly [1]  15/11

try [5]  4/2 60/20 90/8 92/10 97/1

trying [12]  18/16 18/17 19/1 19/2 24/1 32/16 36/2 54/18 71/3 97/5 98/22 107/9

Tuesday [1]  1/13

turn [15]  7/1 16/9 19/12 29/22 30/25 40/15 41/24 52/8 58/5 75/17 85/23 92/6 98/25 101/7 108/16

turning [1]  16/22

two [38]  7/7 7/9 7/16 8/24 10/4 11/5 14/6 14/8 16/9 16/12 16/12 16/18 17/19 24/9 26/1 32/1 37/12 42/23 43/23 47/22 56/20 61/16 66/4 66/5 71/5 71/16 71/16 78/1 78/23 78/23 83/21 89/19 90/1 92/22 92/23 98/3 98/6 105/3

two-cent [1]  14/8

type [4]  15/9 20/14 34/23 100/11

typically [3]  50/11 50/12 93/14

**U**

ultimate [1]  14/10

unavailing [1]  95/25

unclear [3]  97/11 98/14 98/16

unconventional [2]  97/10 97/22

uncustomed [1]  105/20

under [7]  26/24 35/8 84/22 85/12 97/16 110/11 110/23

underline [1]  71/14

underlined [1]  39/23

understand [39]  15/17 16/7 20/10 21/13 22/23 28/23 30/3 32/5 32/10 32/15 32/18 33/1 37/8 40/7 40/8 51/23 61/8 62/11 62/12 62/20 62/24 63/1 64/25 67/15 69/7 73/24 76/7 77/11 77/12 77/20 77/21 77/23 78/16 81/21 83/17 91/20 98/20 106/15 107/13

understandable [1]  14/12

understanding [11]  7/4 7/11 7/25 8/11 25/10 31/1 31/3 31/25 52/9 55/7 91/18

understands [2]  67/8 83/13

understood [7]  18/18 30/24 52/6 85/24 90/4 102/3 105/21

undertaken [1]  72/14

unit [6]  86/17 86/18 86/23 87/1 87/6 91/3

UNITED [4]  1/1 110/4 110/6 110/19

unknown [3]  69/1 69/19 77/21

unless [5]  15/6 28/9 66/19 74/25 110/22

unmistakable [2]  43/5 82/10

unmute [1]  42/3

unsupported [1]  27/22

until [1]  79/1

unusual [2]  100/17 105/19

up [25]  4/18 6/13 8/25 14/16 16/9 20/18 21/16 24/8 37/25 38/14 38/24 39/22 40/15 65/25 72/21 76/22 78/17 88/22 89/18 90/3 90/8 95/2 96/9 103/9 108/11

upcoming [2]  79/15 82/5

upon [3]  56/9 56/14 73/7

us [2]  56/5 104/22

use [17]  4/3 11/8 21/3 39/3 43/7 43/8 44/8 45/11 64/5 78/24 80/9 84/24 89/20 90/8 91/3 93/12 96/10

used [37]  11/4 12/3 15/10 20/10 24/9 34/21 34/23 34/25 37/24 39/8 40/11 43/18 44/2 44/4 44/21 45/20 46/11 46/12 48/16 48/22 49/7 59/18 62/6 62/10 67/8 71/15 80/5 81/7 82/14 84/14 85/2 88/19 88/25 93/17 99/18 101/21 102/25

useful [4]  4/3 12/17 51/16 81/3

user [3]  77/20 82/2 82/4

uses [6]  44/16 48/21 63/3 79/7 84/11 101/9

using [14]  14/5 29/12 32/14 59/4 78/9 80/22 85/6 88/21 88/24 88/24 90/8 91/7 93/16 100/23

utilized [1]  14/13

**V**

vacuum [4]  12/23 32/23 62/2 62/4

valuable [20]  52/17 53/5 53/20 54/13 54/20 54/25 55/11 60/2 60/12 60/15 63/4 63/16 64/12 65/4 66/23 67/2 67/5 67/7 67/11 67/12

value [6]  28/5 52/25 53/1 53/2 53/8 66/13

Vancura [4]  81/11 81/15 82/23 82/24

variation [1]  31/14

variety [2]  83/14 98/12

various [7]  39/2 39/3 39/8 46/3 47/1 61/3 86/3

vary [3]  8/11 42/22 42/25

vast [1]  17/21

verb [4]  39/2 39/3 45/8 47/8

verbal [1]  69/21

verbiage [1]  56/16

versa [1]  44/9

version [1]  71/20

versus [3]  3/3 77/13 86/12

vertical [1]  11/7

very [36]  3/19 8/22 16/24 22/7 22/20 27/20 31/24 31/24 32/1 32/3 32/3 37/10 41/5 49/7 51/13 52/7 57/20 59/3 71/2 71/3 76/1 77/3 83/5 87/9 87/25 93/22 94/9 95/4 96/1 97/4 99/15 99/17 101/24 102/18 107/25 108/22

via [2]  1/17 109/3

vice [1]  44/9

video [4]  83/15 83/25 86/20 86/21

view [7]  48/1 55/18 55/24 56/15 70/10 72/17 85/21

viewed [4]  15/23 46/13 46/14 102/11

views [2]  51/13 88/23

V

violating [1]  48/5
Virginia [1]  102/8
virtue [2]  6/1 29/7
vis [2]  107/17 107/17
vis-à-vis [1]  107/17
visual [1]  42/2
Vitronics [4]  57/18 78/7 78/12 78/15
vs [1]  1/5

W

walk [4]  4/22 16/3 23/14 65/17
walking [1]  23/25
want [20]  9/23 13/10 18/14 18/19 19/7
 20/21 24/4 28/22 30/19 37/15 37/25
 38/23 43/11 45/2 55/22 66/2 68/2 85/21
 98/2 103/6
wanted [5]  4/18 6/4 64/13 73/1 104/6
wanting [1]  60/24
wants [1]  107/21
warning [3]  57/18 57/21 80/19
was [89]  7/25 10/9 17/23 21/23 21/24
 22/1 22/3 22/13 23/17 23/21 23/23
 23/23 29/3 31/1 32/6 34/23 38/13 43/23
 45/7 48/1 49/9 58/2 58/2 58/6 59/23
 63/10 64/22 69/5 69/5 69/10 70/4 70/5
 70/13 70/20 70/20 71/7 71/20 71/22
 73/5 73/10 73/12 73/16 73/21 77/17
 78/12 78/25 80/6 81/8 81/9 81/15 82/14
 82/23 83/4 83/6 83/7 84/2 85/10 85/19
 86/13 86/17 86/18 86/23 87/6 87/11
 87/15 87/16 87/18 87/25 90/3 90/15
 91/4 91/5 93/25 94/4 94/6 95/22 96/3
 96/23 97/2 99/25 102/24 102/25 103/16
 103/18 103/20 104/19 105/6 106/17
 106/23
wasn't [2]  73/14 73/15
way [30]  9/11 9/19 13/20 14/11 19/19
 21/11 22/14 26/11 42/18 43/17 44/2
 44/9 45/25 54/7 54/22 58/7 63/13 69/11
 69/22 70/10 73/25 75/13 81/12 84/11
 88/25 90/10 93/15 95/15 96/8 103/10
ways [4]  17/23 36/8 71/8 78/1
we [201]
we'll [6]  3/7 4/2 6/24 16/9 25/19 77/11
we're [15]  16/22 22/11 25/3 27/12
 29/11 30/11 39/18 45/10 45/13 49/22
 51/17 68/3 83/23 84/10 107/1
we've [1]  71/2
WebEx [3]  1/11 1/17 109/3
Wednesday [1]  105/23
week [1]  108/5
weight [1]  20/15
well [38]  3/19 3/24 8/22 9/7 22/12 23/8
 24/23 25/16 26/1 26/19 27/12 27/17
 33/22 34/12 35/14 37/13 39/14 41/4
 43/25 45/7 49/11 51/23 53/4 62/2 74/11
 74/18 80/16 89/17 90/4 91/2 94/18 95/7
 96/13 96/16 101/2 102/7 104/1 105/10
went [3]  36/16 72/19 103/11
were [15]  17/17 22/3 25/1 27/16 28/17
 28/24 44/24 45/9 49/20 77/8 97/4 99/16
 102/14 106/8 106/10
WHARTON [2]  1/19 3/10
what [172]
what's [9]  13/13 15/20 28/3 29/7 29/19
 48/15 51/17 51/18 96/18
whatever [2]  20/20 49/10
when [70]  6/24 12/21 12/25 14/22

16/17 18/9 18/20 19/23 19/25 20/6
21/12 21/18 22/22 26/25 28/4 32/9 33/1
33/25 34/3 34/12 34/23 35/10 37/3
39/12 40/3 40/8 44/8 46/1 46/3 48/12
50/15 51/7 51/22 54/5 54/19 56/25 59/7
60/22 61/14 64/3 65/3 65/5 65/22 67/6
68/3 69/14 70/3 70/8 70/18 70/20 72/20
74/22 76/25 79/4 79/7 80/9 80/15 83/3
85/2 85/2 91/25 95/22 96/12 96/16
96/20 97/17 99/20 104/5 108/7 108/10
where [49]  8/10 11/11 18/4 24/3 26/4
 26/22 39/21 41/15 42/25 44/22 49/7
 50/11 50/12 50/13 50/17 53/12 54/13
 55/13 55/22 56/7 56/22 56/23 57/15
 57/16 58/16 58/21 60/1 61/8 61/25 62/8
 64/5 72/16 73/13 73/14 74/11 78/7 81/6
 82/8 83/10 86/17 87/7 90/9 92/19 95/5
 95/8 101/14 101/18 106/10 106/23
whereas [8]  10/6 47/10 47/17 66/24
 68/24 81/15 82/3 97/8
wherever [2]  31/19 51/10
whether [33]  7/19 12/9 13/17 13/18
 14/24 15/9 15/11 22/10 22/25 25/6
 33/23 43/13 43/14 45/23 45/24 46/2
 46/3 46/13 46/14 51/25 70/6 72/6 74/20
 75/4 87/14 87/18 90/1 97/3 97/4 99/7
 100/20 101/21 107/10
which [53]  7/4 7/14 8/25 10/14 10/22
 11/11 11/15 11/23 12/3 12/12 13/17
 17/15 18/5 20/23 21/1 21/24 24/8 28/14
 31/1 32/6 32/10 33/3 34/7 38/13 40/2
 41/6 41/8 43/15 43/24 44/25 46/15
 46/17 59/5 61/23 64/3 64/15 65/12
 67/14 71/16 76/20 77/5 78/12 83/3 83/5
 85/6 86/25 87/9 89/9 90/14 96/2 104/9
 104/24 105/6
while [5]  27/5 42/10 55/13 92/10 107/4
who [5]  3/17 7/5 20/3 62/19 92/6
whoever [1]  42/1
whole [12]  22/11 39/12 42/11 45/17
 48/1 48/2 49/4 82/20 82/20 96/14 96/15
 96/21
wholly [1]  78/12
whom [1]  37/10
why [32]  6/10 13/5 15/5 15/14 15/16
 34/17 35/1 37/11 40/15 44/11 49/23
 50/5 51/21 54/24 61/2 65/7 65/17 67/1
 67/4 77/12 77/23 79/23 80/4 81/5 82/18
 82/24 83/1 95/10 98/8 98/10 98/20
 98/21
wild [2]  44/5 72/24
will [80]  3/17 3/22 3/23 3/25 4/1 4/1 4/2
 5/2 5/3 5/4 5/8 5/10 5/12 5/13 5/14 5/17
 5/18 5/19 5/20 5/21 5/22 5/23 6/18 10/3
 15/8 15/8 16/3 18/14 19/6 19/12 19/17
 20/20 21/22 24/2 26/18 27/14 28/9 31/4
 36/3 36/6 37/11 50/7 50/12 52/9 52/20
 52/22 60/4 60/6 60/7 61/18 61/20 66/20
 67/15 68/7 70/22 74/22 75/11 75/12
 75/16 79/21 79/25 83/23 85/5 89/18
 89/25 92/6 92/6 92/8 92/20 93/7 93/11
 96/8 104/23 104/23 104/25 105/14
 105/16 105/17 106/2 106/18
Williamson [10]  92/19 93/20 93/24 94/1
 94/2 96/22 97/2 99/16 99/24 100/2
WILSON [1]  1/10
win [22]  13/10 13/11 13/11 13/13 15/2
 15/19 15/20 15/21 16/1 22/18 23/6 28/2
 28/12 30/6 30/7 30/12 30/12 30/22
 32/13 32/17 54/5 54/8

wind [1]  90/8
winds [1]  90/2
winning [181]
winnings [5]  13/19 30/16 53/5 53/9
 54/23
within [7]  6/17 9/21 49/8 61/3 85/15
 108/10 110/8
within-mentioned [1]  110/8
without [3]  68/7 85/7 92/24
withstanding [1]  59/1
won [2]  15/3 16/4
won't [3]  61/1 61/9 65/17
wonder [1]  14/14
word [38]  22/5 28/23 28/25 29/6 29/9
 29/10 34/25 39/13 39/18 42/12 44/4
 44/16 45/5 45/12 45/14 45/19 45/20
 47/15 49/24 50/1 50/3 52/3 60/13 60/15
 60/17 62/4 76/13 80/5 85/2 89/20 89/24
 90/8 92/20 93/16 93/17 94/21 95/8
 99/24
words [10]  11/6 20/10 32/15 39/17
 42/19 51/25 54/1 63/22 66/13 85/2
work [4]  68/14 75/13 104/7 108/13
working [1]  68/1
works [1]  52/24
worth [1]  9/13
would [74]  4/15 4/19 4/23 4/24 5/8 6/15
 7/23 8/11 9/11 14/6 16/24 17/1 18/18
 21/20 29/13 29/22 29/25 30/3 31/19
 32/3 32/5 33/18 33/23 34/12 37/8 37/24
 42/19 44/11 44/24 47/22 48/8 49/19
 50/1 50/5 52/3 55/19 56/22 56/23 57/14
 74/12 76/22 76/24 77/9 77/12 77/19
 77/20 77/21 78/11 80/4 80/10 83/20
 85/20 87/2 89/13 90/8 93/15 95/18 96/3
 97/13 97/14 97/15 97/25 98/19 99/11
 100/14 100/19 101/17 103/11 106/1
 106/11 107/10 107/13 108/1 108/5
wouldn't [2]  25/19 49/4
wrap [3]  16/9 38/24 40/15
wrestle [1]  35/3
written [10]  7/9 10/17 11/24 30/15
 44/15 52/23 69/10 88/10 99/13 100/10
wrong [7]  6/19 25/20 25/25 26/14 27/13
 36/13 63/13
wrote [2]  70/25 73/13

X

Xs [2]  22/23 77/17

Y

year [7]  29/12 29/13 43/21 67/6 85/18
 86/11 104/13
years [2]  7/7 8/5
yellow [1]  71/21
yes [12]  7/13 8/21 14/15 17/7 23/14
 28/21 31/10 68/12 81/24 84/6 106/5
 106/18
yet [8]  14/12 23/9 26/6 28/25 73/5
 97/15 98/9 105/2
yield [1]  16/15
yielding [4]  9/17 21/20 21/24 30/8
yields [3]  13/11 13/18 14/23
you [295]
you'll [8]  34/3 36/20 39/23 40/25 41/7
 41/11 65/24 66/8
you're [13]  13/23 19/5 32/19 46/21 47/5
 53/12 53/12 56/6 58/15 60/23 78/20
 79/24 90/24
you've [1]  15/3

**Y**

your [174]
yourself [1]  100/11
yourselves [1]  107/11

**Z**

Zoom [1]  16/25