# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAVVY DOG SYSTEMS, LLC, and
POM of PENNSYLVANIA, LLC,

        Plaintiffs,

        v.

PENNSYLVANIA COIN, LLC, and
PA COIN HOLDINGS, LLC

        Defendants.

CIVIL ACTION NO: 3:19-cv-01470-JPW

Honorable Jennifer P. Wilson

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT <u>AND DESIGNATION AS FINAL UNDER RULE 54(B)</u>

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren Hsu-Hoffman (admitted *pro hac vice*)
Morgan Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.843.4000
Fax: 650.843.4001
ahren.hsu-hoffman@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  February 11, 2021

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF FACTS .....................................................................4

    A. The Parties Have Litigated Invalidity Issues Since Inception of This Action. ...................................................................................4

    B. Plaintiffs Repeatedly Represent That This Court Must Resolve Invalidity Issues....................................................................5

    C. After an Unfavorable Claim Construction, Plaintiffs Seek to Avoid Prompt Resolution of Invalidity Issues in This Court. .............6

III. ARGUMENT.........................................................................................7

    A. Plaintiffs Bear a Heavy Burden to Demonstrate Rule 54(b) Certification is Appropriate....................................................................7

    B. Plaintiffs Have Not—and Cannot—Demonstrate That This is a Rare Case Warranting Immediate Appeal.............................................8

        1. Far from Endorsing the Practice, the Federal Circuit Has Cautioned Against Piecemeal Appeals. ....................................8

        2. Plaintiffs' Claims of Judicial Efficiency Fail to Support Granting Rule 54(b) Certification............................................11

        3. The Equities Weigh Strongly Against Permitting Immediate Appeal....................................................................15

    C. Dismissal of Defendants' Invalidity Declaratory Judgment Counterclaim Would Be Unjust. .........................................................19

IV. CONCLUSION....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. 3M*,
    265 F.3d 1349 (Fed. Cir. 2001) .........................................................................14

*Callaway Golf Co. v. Acushnet Co.*,
    576 F.3d 1331 (Fed. Cir. 2009) .........................................................................14

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
    387 F.3d 1352 (Fed. Cir. 2004) .........................................................................20

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993)..............................................................................8, 9, 18, 19

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
    446 U.S. 1 (1980)..................................................................................7, 10, 15

*Digital Envoy, Inc. v. Google, Inc.*,
    No. C 04-01497, 2006 WL 824412 (N.D. Cal. Mar. 28, 2006) .........................18

*Exigent Tech., Inc. v. Atrana Solutions*,
    442 F.3d 1301 (Fed. Cir. 2006) .........................................................................10

*iLOR, LLC v. Google, Inc.*,
    550 F.3d 1067 (Fed. Cir. 2008) ...........................................................................7

*Kickstarter, Inc. v. Fan Funded, LLC*,
    No. 11 Civ. 6909(PAC), 2013 WL 628521 (S.D.N.Y. 2013) ...........................10

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
    445 F.3d 1348 (Fed. Cir. 2006) ...........................................................................9

*In re Lawrence B. Lockwood*,
    50 F.3d 966 (Fed. Cir. 1995) ...............................................................................9

*Lockwood v. Am. Airlines, Inc.*,
    No. 91-1640-E(CM), 1993 WL 643369 (S.D. Cal. Sept. 21, 1993) ..................19

i

*Nystrom v. TREX Co.*,
   339 F.3d 1347 (Fed. Cir. 2003) ..............................................................8

*Ortho-McNeil Pharmas., Inc. v. Kali Labs., Inc.*,
   Civ. A. No. 02-5707, 2007 WL 1814080 (D.N.J. June 20, 2007)......................16

*PolyVision Corp. v. Smart Techs. Inc.*,
   No. 1:03-CV-476, 2007 WL 2683516 (W.D. Mich. Sept. 7, 2007)...................15

*Precision Energy Servs., Inc. v. Thrubit, LLC*,
   No. H-11-4492, 2013 WL 1966974 (S.D. Tex. May 13, 2013) ........................17

*SAB Tech., LLC v. Port Inc.*,
   No. 3:01CV00084, 2007 WL 1201831 (D. Conn. Apr. 21, 2007).....................19

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2005) ............................................................20

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................13

*Sinclair & Carroll Co. v. Interchemical Corp.*,
   325 U.S. 327 (1945)....................................................................9, 17

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
   497 F.3d 1271 (Fed. Cir. 2007) ...........................................................20

*Spraytex, Inc. v. DJS&T*,
   96 F.3d 1377 (Fed. Cir. 1996) ..............................................................7

*Sure-Safe Indus., Inc. v. C&R Pier Mfg.*,
   851 F. Supp. 1469 (S.D. Cal. 1993).......................................................11

## Statutes

35 U.S.C. § 101...............................................................................*passim*

35 U.S.C. § 102...................................................................................13

35 U.S.C. § 103...................................................................................13

35 U.S.C. § 112...................................................................................12

**Other Authorities**

Fed. R. Civ. P. 54(b) ........................................................................................*passim*

## I.    INTRODUCTION

After previously representing to this Court and the Patent Trial and Appeal Board ("PTAB") that it was appropriate for this Court to resolve invalidity issues given this Court's substantial investment of resources pertaining to the same, plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs") now assert there is no need for this Court to decide invalidity issues after all.  Unable to credibly argue that defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") infringe any claim of the U.S. Patent No. 7,736,223 (the "'223 Patent") and facing the real prospect that this Court may invalidate the '223 Patent, Plaintiffs are straining for a rationale to stop this proceeding.  The stated reason for Plaintiffs' sudden change of position is Plaintiffs' dissatisfaction with the Court's claim construction ruling with respect to the claim term "actual game to be played."  Such dissatisfaction, however, does not support the relief Plaintiffs now seek—certification of final judgment, immediate appeal therefrom, and dismissal of Defendants' invalidity counterclaim over Defendants' objections.  Nor does Plaintiffs' assertion that immediate appeal will serve "the interests of practical adjudication" demonstrate that Plaintiffs are entitled to this relief.

Instead, Plaintiffs must demonstrate that this is a rare case meriting departure from the firmly established rule against piecemeal litigation.  Plaintiffs have not—

and cannot—meet this burden. Disagreements with a court's claim construction of a single term are routine in patent litigation, but Rule 54(b) certifications in response are not. The reason for this is simple: Plaintiffs should not be permitted to take immediate appeals on issues as they lose them and burden the Federal Circuit with piecemeal appeals while an invalidity counterclaim remains unadjudicated.

To overcome Defendants' invalidity declaratory judgment counterclaim as an obstacle to immediate appeal, Plaintiffs incorrectly assert that the counterclaim is moot. Supreme Court precedent demonstrates otherwise, and the counterclaim is still live despite Plaintiffs' concession of non-infringement. Plaintiffs also incorrectly assert that invalidity largely depends on the Court's claim construction of a single term. But the '223 Patent is invalid on numerous grounds that do not depend on the Court's claim construction of "actual game to be played." Specifically, the '223 Patent is invalid for failure to claim patent-eligible subject matter under 35 U.S.C. § 101, lack of written description, and improper inventorship. And, because Plaintiffs have conceded that the Court's construction of "actual game to be played" is one embodiment of their own erroneous construction of that term, proving invalidity under the Court's narrow construction would necessarily apply to Plaintiffs' broader construction, even if Plaintiffs were to prevail on appeal. Thus, if prior art invalidates the '223 Patent under the Court's construction of "actual game

2

to be played," Federal Circuit reversal of that construction will not change the fact that the prior art invalidates the '223 Patent.

Plaintiffs want to continue to hold out to the marketplace that the '223 Patent is valid. These proceedings threaten that objective. The course Plaintiffs now urge—immediate appeal of this Court's construction of a single term—prejudices Defendants. If the Court permits immediate appeal, Plaintiffs can unfairly capitalize on their dissatisfaction with the Court's construction, walk away (at least temporarily) with what Plaintiffs purport to be a valid patent, and threaten Defendants and other competitors with that patent to chill competition in the marketplace. This injustice can be avoided by allowing this case to proceed to summary judgment and trial (if necessary) on Defendants' invalidity claims. Then, if warranted, the parties can appeal all issues and claims in this action at once consistent with the federal policy of ensuring there is only one appeal.

Because Plaintiffs have failed to demonstrate that this is a rare case mandating the extraordinary remedy of immediate appellate review merely because of Plaintiffs' disagreement with the construction of a single claim term, Plaintiffs' Motion should be denied.

## II.    STATEMENT OF FACTS[1]

### A.    The Parties Have Litigated Invalidity Issues Since Inception of This Action.

Invalidity issues—including those unaffected by the Court's claim construction of "actual game to be played"—have been central to this case from the beginning.  Defendants moved at the outset of this case to dismiss the Complaint because the '223 Patent was directed to patent-ineligible subject matter and was thus invalid.  *See* Motions to Dismiss, Dkts. 21 & 31.  In response, Plaintiffs amended their Complaint to add supposed "facts" regarding validity and then argued there were factual disputes bearing on validity that required further discovery in this Court.  *See* Response to First Mot. to Dismiss, Dkt. 27, at 1 (describing Plaintiffs' First Amended Complaint as "bolster[ing] Plaintiffs' 35 U.S.C. § 101 patentable subject matter allegations"); Opp'n to Mot. to Dismiss, Dkt. 37, at 13 (arguing Motion to Dismiss should be denied due to, *inter alia*, "factual issue[s]" bearing on validity).  The Court agreed that factual disputes remained regarding patent validity under § 101 and denied Defendants' Motion.  *See* Opinion, D.I. 61, at 19. Defendants then asserted a declaratory judgment counterclaim seeking a declaration that the '223 Patent was invalid.  *See* Answer & Counterclaims, Dkt. 63.  Plaintiffs

---

[1] Plaintiffs failed to include a statement of facts with their Opening Brief as is required by Local Rule 7.8, and, thus, Defendants request their statement of facts should be adopted.

never moved to dismiss or otherwise challenged the sufficiency of Defendants' invalidity counterclaim.

Throughout this case the parties have engaged in extensive discovery regarding validity. *See, e.g.*, Defs' First Set of Requests for Production (Ex. 1) at Request Nos. 44, 46 (requesting documents regarding invalidity issues); Defs' First Set of Interrogatories (Ex. 2) at Rogs. 2 & 4 (requesting information regarding invalidity issues); Defs' Second Set of Interrogatories (Ex. 3) at Rog. 8 (requesting information bearing on § 101 issues); Plaintiffs' Third Set of Interrogatories (Ex. 4); *see also* Dkts. 65-1, 65-2 (subpoenas directed to third parties regarding invalidity issues). Fact discovery is set to close shortly in May 2021, with trial to follow thereafter. *See* Case Mgmt. Order, Dkt. 50, ¶¶ 7(a), 19.

## B. Plaintiffs Repeatedly Represent That This Court Must Resolve Invalidity Issues.

When the third-party manufacturer of the accused products sought to have the PTAB assess invalidity issues (including patent eligibility under § 101 and lack of written description under § 112), Defendants sought to stay the instant action so the PTAB could immediately and more quickly than this Court decide these issues. In response, after abandoning and expressly disclaiming more than half of the 75 claims of the '223 Patent (*see* Ex. 5), Plaintiffs opposed proceeding in the PTAB and fought to litigate the remaining invalidity issues before this Court. Plaintiffs opposed a stay of the instant action in part due to what Plaintiffs claimed was the "advanced stage"

of the instant litigation with respect to invalidity issues.  *See* Opp'n to Mot. to Stay, Dkt. 70, at 17-18.  And, in the then-pending PTAB proceeding, Plaintiffs argued that the PTAB should not address invalidity issues because "the district court and the parties have already expended considerable resources in briefing and evaluating the Section 101 and Section 112 [invalidity] issues."  Patent Owner's Preliminary Response, Ex. 6, at 80.

### C.    After an Unfavorable Claim Construction, Plaintiffs Seek to Avoid Prompt Resolution of Invalidity Issues in This Court.

On December 21, 2021, this Court entered its claim construction order.  Dkt. 111.  Plaintiffs then acknowledged that based on the Court's construction of the term "actual game to be played" Plaintiffs cannot demonstrate infringement.  Opening Br., Dkt. 118, at 1.  Based on this concession, Plaintiffs ask this Court to dismiss Defendants' counterclaim for invalidity and permit Plaintiffs to rush to the Federal Circuit to appeal this Court's claim construction of "actual game to be played."  Plaintiffs' attempt to dodge a ruling from this Court regarding invalidity is in direct contravention to Plaintiffs' previous statements that this Court must decide patent eligibility and written description validity issues.  Plaintiffs' motivation for this about-face is plain—Plaintiffs want to assert the '223 Patent in the marketplace.  *See generally* Ex. 7 (screen shot of https://www.mielemfg.com/legalteam) (POM of Pennsylvania's sister corporation and manufacturer of Plaintiffs' products claiming this lawsuit involves enforcement of a "valid patent").  Importantly, if this Court

grants Plaintiffs' Motion, Plaintiffs achieve their goal *even if* they are unsuccessful in getting the appellate court to overturn this Court's claim construction because, with Defendants' counterclaim dismissed, Plaintiffs escape an adjudication regarding validity of the '223 Patent and are emboldened to assert this Patent against Defendants and other competitors in the gaming industry in the future.

## III.   ARGUMENT

### A.   Plaintiffs Bear a Heavy Burden to Demonstrate Rule 54(b) Certification is Appropriate.

For a Rule 54(b) certification to be appropriate, "it must be apparent . . . that there is a sound reason to justify departure from the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment." *iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008). The Court must apply Rule 54(b) to "prevent piecemeal appeals in cases which should be reviewed only as single units." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). In assessing a Rule 54(b) request, the primary point of consideration is whether "[t]he need for immediate appeal [outweighs] the policy against piecemeal litigation." *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1382 (Fed. Cir. 1996). The Court's analysis is governed by the "interest of sound judicial administration and on the equities." *Curtiss-Wright Corp.*, 446 U.S. at 8. It is sound policy that a litigant who has pursued a "valid counterclaim at great effort and expense," should

be permitted to "preserv[e] the value of" that effort by way of a declaratory judgment. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 99-100 (1993).

### B. Plaintiffs Have Not—and Cannot—Demonstrate That This is a Rare Case Warranting Immediate Appeal.

Plaintiffs' dissatisfaction with the Court's construction of the claim term "actual game to be played" does not give rise to an immediate right to appeal. Rule 54(b) certifications of judgments arising from claim construction orders are governed by the well-settled doctrine that "piecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case" because "the rules of finality that define the jurisdiction of [the Federal Circuit] do not contain special provisions for patent cases or admit to exceptions for strategic reasons or otherwise." *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003).

### 1. Far from Endorsing the Practice, the Federal Circuit Has Cautioned Against Piecemeal Appeals.

Contrary to Plaintiffs' assertion, the Federal Circuit has never "endorsed" Rule 54(b) certifications.[2] Instead, "where an infringement suit and a declaratory judgment action coexist, [Federal Circuit] cases encourage district courts to adjudicate questions of both infringement and validity when both are raised." *See*

---

[2] The Federal Circuit merely noted that a Rule 54(b) certification provides a basis for a district court to "consider[ ] whether there was a proper basis to make 'an express determination that there is no just reason for delay' and then to expressly direct the entry of final judgment on fewer than all of the claims." *Nystrom*, 339 F.3d at 1351.

*In re Lawrence B. Lockwood*, 50 F.3d 966, 968 n.2 (Fed. Cir. 1995), *vacated on other grounds by* 116 S. Ct. 29; *see also Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006) (noting that permitting claim construction issues to go up in piecemeal appeal through Rule 54(b) "presents problems" and puts Federal Circuit "in the awkward position of reviewing a claim construction that may implicate issues and claims beyond th[e] [Federal Circuit]'s current reach" such that better approach is to allow district court to "complete the picture") (citation omitted).

The U.S. Supreme Court has likewise instructed that although "[t]here ha[d] been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent[,] . . . of the two questions [of infringement and validity], validity has the greater public importance. . . . [and] what will usually be the better practice [is to] inquir[e] fully into the validity of th[e] patent." *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945).  Indeed, the Supreme Court has expressly criticized the practice of declining to decide the issue of validity as moot upon a finding of non-infringement because such a practice "denies the patentee such appellate review, prolongs the life of invalid patents, [and] encourages endless litigation (or at least uncertainty) over the validity of outstanding patents." *Cardinal*, 508 U.S. at 102.

9

Against this backdrop, numerous courts have cautioned that Rule 54(b) certifications should be granted only in rare instances. *See, e.g.*, *Curtis-Wright Corp.*, 446 U.S. at 10 ("Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely."); *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909(PAC), 2013 WL 628521, *1-*2 (S.D.N.Y. 2013) ("[W]here the patent's validity remains at issue, it is the better practice for the court to resolve that claim, even if it has found non-infringement.") (internal quotation marks omitted).

The cases Plaintiffs rely upon (Dkt. 118 at 5) do not hold otherwise. *In re Cyclobenzaprine* involved an appeal following a bench trial wherein the Federal Circuit stated that it could exercise jurisdiction despite pending antitrust counterclaims because the parties had jointly requested and received a Rule 54(b) certification. 676 F.3d 1063, 1088 (Fed. Cir. 2012). Likewise, in *Storage Tech. Corp. v. Cisco Sys., Inc.*, the parties "jointly submitted a Stipulation and Order to the district court requesting the court to enter a Rule 54(b) certificate." 329 F.3d 823, 830 (Fed. Cir. 2003). There is no joint request presented to the Court here. In *Exigent Tech., Inc. v. Atrana Solutions*, 442 F.3d 1301, 1305 & n.2 (Fed. Cir. 2006), the Federal Circuit requested the parties obtain a Rule 54(b) certification during appeal of issues pertaining to settlement agreement enforcement and attorneys' fees; this case provides no guidance regarding the propriety of granting a Rule 54(b) certification under the facts presented here.

### 2.    Plaintiffs' Claims of Judicial Efficiency Fail to Support Granting Rule 54(b) Certification.

To support their request for immediate appeal, Plaintiffs point to supposed efficiencies—conservation of party and judicial resources. But, even if present, efficiencies do not rise to the level of warranting immediate appeal. *See Sure-Safe Indus., Inc. v. C&R Pier Mfg.*, 851 F. Supp. 1469, 1475 (S.D. Cal. 1993) ("Plaintiffs have failed to demonstrate any immediate hardship or injustice to justify a Rule 54(b) certification; seek[ing] to advance the convenience of the plaintiffs and their counsel and to avoid the remote possibility of a second trial . . . is not sufficient urgency to justify a Rule 54(b) certification.").

In any event, Plaintiffs' argument regarding supposed efficiencies is incorrect. Plaintiffs ignore that (1) the parties have spent a year and a half conducting extensive invalidity discovery, with Defendants' Final Invalidity Contentions due in February 2021, and (2) this Court has already invested resources in assessing invalidity issues pertaining to § 101 at the motion to dismiss phase. Abruptly halting this case—which Plaintiffs have previously acknowledged is at an advanced stage with respect to invalidity issues (Dkt. 70, at 17-18)—will amount to a waste of previously-invested resources and result in additional costs for the parties if Defendants were forced to pursue anew the invalidity counterclaims that have already matured in this forum. This is especially true here where (1) Plaintiffs have repeatedly represented that the appropriate venue for resolution of invalidity issues is *this* Court and (2) an

11

immediate appeal would allow Plaintiffs to escape an invalidity finding at the eleventh hour merely because Plaintiffs cannot sustain their own infringement claim.

Plaintiffs also gloss over the fact that the Court's claim construction of "actual game to be played" (and any subsequent appeal of the same) is far from determinative of whether the '223 Patent is invalid. Plaintiffs cherry-pick portions of Defendants' *Initial* Invalidity Contentions to suggest that, if the construction of "actual game to be played" was reversed on appeal, the parties would need to wholescale retry validity issues. *See* Opening Br., Dkt. 118, at 8-11. Not so. Discovery in the instant action has confirmed that the '223 Patent is invalid for numerous reasons including, *inter alia*, the below bases which will be equally availing even if Plaintiffs' strained construction of "actual game to be played" was adopted by the Federal Circuit[3]:

- 35 U.S.C. § 101 – Failure to claim patent-eligible subject matter, an issue this Court already has familiarized itself with in deciding Defendants' motion to dismiss.

- 35 U.S.C. § 112, ¶ 1 – Lack of written description support for at least the claim limitation stating "[testing/test] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field."

---

[3] Plaintiffs selectively cite to various charts from Defendants' Initial Invalidity Contentions (Dkt. 118 at 8-9), which were provided before the Court's claim construction ruling. But these charts will be superseded by Defendants' Final Invalidity Contentions, due on February 19, 2021.

- 35 U.S.C. § 102(f) – Lack of correct inventorship.

- 35 U.S.C. §§ 102, 103 – Invalidity for anticipation and/or obviousness.

Thus, although in certain instances invalidity and infringement may be linked such that a court's claim construction of a single claim term may be dispositive of both invalidity and infringement, this is not one of those cases.[4]

Plaintiffs imply that invalidity centers only on disclosure of an "actual game to be played" in pieces of prior art. But, invalidity is not so limited. For instance, whether the '223 Patent is even eligible for patenting pursuant to 35 U.S.C. § 101 does not depend on the whether Plaintiffs' construction of "actual game to be played" is the correct one or whether that limitation, so construed, is disclosed in prior art. Even if the techniques claimed in the '223 Patent were "[g]roundbreaking, innovative, or even brilliant," (they are not), that would not save the subject matter from being ineligible for patenting. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

---

[4] Given this, the instant case is distinguishable from the *Superior Industries, LLC v. Masaba, Inc.* and *Amgen, Inc. v. Ariad Pharmas., Inc.* cases Plaintiffs rely upon (*see* D.I. 118 at 7, 10) wherein courts granted Rule 54(b) certifications and dismissal of invalidity counterclaims after finding that "should the Court's claim construction be reversed, the parties would have to retry both the infringement and invalidity claims." *Superior*, 2013 WL 461541, at *2 (D. Minn. Feb. 7, 2013); *see also Amgen*, 2008 WL 4487910, at *3 (D. Del. Oct. 3, 2008) (weighing heavily fact parties may need to retry case if Federal Circuit reversed).

13

Even for invalidity issues that involve comparison to prior art (*e.g.*, obviousness and anticipation), such issues do not depend on the Court's construction of "actual game to be played" or an appellate ruling regarding the same. Prior art that meets the Court's narrow construction of "actual game to be played" necessarily meets Plaintiffs' broader construction. Indeed, the Plaintiffs have argued that the construction adopted by the Court is one embodiment of the broader construction advocated for by Plaintiffs. *See* Plaintiffs' Responsive Claim Construction Br., Dkt. 86, at 22 ("The sole dispute is whether the term should be limited to the preview embodiment, where the game preview screen is 'the constructed field of the game to be played.'"). It is axiomatic that if the prior art renders invalid one embodiment of the claimed invention, the entire broader claimed invention is invalid. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) ("A broader independent patent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness."); *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) ("When a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art."). Thus, the prior art advanced by Defendants invalidates the '223 Patent no matter the result of an eventual appeal of the Court's construction of "actual game to be played." Put another way, whether "actual game to be played" means "the

14

constructed game field of the game to be played" as the Court found (Dkt. 112, ¶ 7) or "the game to be played, including an otherwise unknown system-generated attribute of it" as Plaintiffs argue (Dkt. 111 at 19) does not impact whether the pieces of prior art advanced by Defendants invalidate the '223 Patent.

At bottom, Plaintiffs' assertion that conducting further proceedings on the invalidity counterclaim would not clarify or settle legal issues between the parties (Dkt. 118 at 10) is incorrect. The parties have a dispute regarding the validity of the '223 Patent, which can and should be resolved by this Court without delay. Plaintiffs brought this lawsuit alleging that Defendants infringed a valid patent, and there is no reason why Plaintiffs should now be able to walk away from Defendants' ripe challenge to patent validity under the guise of judicial economy.

### 3. The Equities Weigh Strongly Against Permitting Immediate Appeal.

The U.S. Supreme Court has made clear that "in deciding whether there are no just reasons to delay the appeal of individual final judgments in setting[s] such as this, a district court must take into account . . . the equities involved." *Curtiss-Wright Corp.*, 446 U.S. at 8. Here, Plaintiffs fail to make any showing whatsoever with respect to hardship or injustice, which alone is a reason for the Court to deny Plaintiffs' Motion. *See PolyVision Corp. v. Smart Techs. Inc.*, No. 1:03-CV-476, 2007 WL 2683516, at *5 (W.D. Mich. Sept. 7, 2007) (reaffirming denial of plaintiff's 54(b) motion where court noted "the lack of any assertion by [plaintiff]

15

that it will be harmed absent a Rule 54(b) certification"); *Ortho-McNeil Pharmas., Inc. v. Kali Labs., Inc.*, Civ. A. No. 02-5707, 2007 WL 1814080, at \*5 (D.N.J. June 20, 2007) (denying plaintiff's 54(b) motion where plaintiff "failed to allege any sort of prejudice").

Weighing of the equities demonstrates that allowing immediate appeal would be unjust. Since inception of this litigation, Defendants have made patent invalidity issues a core focus, and Plaintiffs have repeatedly advocated for this Court to resolve them. Plaintiffs first argued that this Court would need to resolve factual issues before Defendants' § 101 challenge could be resolved. Then, when a third-party challenged the validity of the '223 Patent at the PTAB, Plaintiffs insisted that this Court, not the PTAB, should resolve invalidity issues given the advanced stage of these proceedings. Ex. 6 at 80. Since Plaintiffs made these statements, the factual issues surrounding the § 101 analysis have not gone away, and the case is even further advanced than before. The only material thing that has changed is that this Court construed the term "actual game to be played" in a way that forecloses infringement. Plaintiffs' dissatisfaction with the Court's construction of this term should not change what Plaintiffs have previously told the Court: that this Court should be the one to resolve '223 Patent validity issues. But if the Court grants Plaintiffs' Motion, resolution of validity issues will be unduly delayed *if* Plaintiffs prevail on appeal or wholly avoided if Plaintiffs do not. Denying Plaintiffs' Motion

16

simply means that Plaintiffs will litigate validity in the very forum they insisted they should do so. That is not prejudicial to Plaintiffs.

On the other hand, Plaintiffs' rush to the Federal Circuit on an issue of their choosing delays and potentially avoids a finding of patent invalidity. This is inequitable and prejudicial to Defendants as it disregards the diligent efforts of Defendants and the time and expense invested by Defendants (and the Court) in assessing invalidity issues. *See Precision Energy Servs., Inc. v. Thrubit, LLC*, Civil Action No. H-11-4492, 2013 WL 1966974, at *3-*4 (S.D. Tex. May 13, 2013) ("Although entry of a Rule 54(b) final judgment on the non-infringement issue may result in savings to Plaintiff, Defendant will be significantly prejudiced by the delay in resolving its counterclaims while a potentially unsuccessful appeal is pursued. It is unfair to preclude Defendant for a significant period of time from conducting discovery to obtain and preserve evidence in support of its counterclaims.").

Further, allowing immediate appeal at the expense of continuing to adjudicate Defendants' invalidity counterclaim contravenes the Supreme Court's guidance that patent validity is an issue of "greater public importance" than case-specific allegations of infringement. *Sinclair*, 325 U.S. at 330 (approving district court's decision to consider validity even though lower court had found that patent was not infringed). Granting certification will only embolden Plaintiffs to waive about an invalid patent to further chill competition in the marketplace whether the Federal

17

Circuit ultimately ruled in Plaintiffs' favor or not. This would be fundamentally unfair to Defendants.

Indeed, if the Court permits immediate appeal of a single claim construction issue and allows Defendants' invalidity claim to languish, Defendants are exposed— even if Plaintiffs' appeal is unsuccessful—to a significant threat that Plaintiffs will assert that Defendants' sale of new products or different versions of existing products infringe the '223 Patent. *See Cardinal*, 508 U.S. at 99-100 ("A company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future."); *see Digital Envoy, Inc. v. Google, Inc.*, No. C 04-01497, 2006 WL 824412, *2 (N.D. Cal. Mar. 28, 2006) ("[A] defendant in a patent case *does* have something to gain from a counterclaim declaration of invalidity. Such a declaration frees the defendant to continue modifying and developing its products in the art at issue without fear that any changes will convert that which previously did not infringe into something that does.") (emphasis in original). Such threat is not merely hypothetical. Plaintiffs' distributor touts the validity of the '223 Patent on its website (*see* Ex. 7), and Plaintiffs have sent a cease and desist letter regarding the '223 Patent to the manufacturer of the accused products (Ex. 8).

18

### C. Dismissal of Defendants' Invalidity Declaratory Judgment Counterclaim Would Be Unjust.

Plaintiffs relegate their discussion of why dismissal is appropriate to a few sentences. There, they argue only that the Court has the discretion to dismiss Defendants' counterclaim for declaratory judgment of invalidity because such counterclaim is purportedly moot. But having such discretion does not mean the Court *should* exercise it here. It should not.

Defendants' invalidity counterclaim is not moot. The U.S. Supreme Court has held that counterclaims for declaratory judgment of patent invalidity are not mooted by a finding of non-infringement. *See Cardinal*, 508 U.S. at 96 (emphasizing counterclaim challenging patent validity raises issues beyond initial claim for infringement that is not disposed of by non-infringement decision because "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement"). Based on this holding, numerous lower courts have declined to dismiss invalidity counterclaims after a determination of non-infringement. *See SAB Tech., LLC v. Port Inc.*, Civil No. 3:01CV00084 (AWT), 2007 WL 1201831, at *1 (D. Conn. Apr. 21, 2007) (denying motion to dismiss invalidity counterclaim based on a finding of non-infringement, emphasizing that "[w]hen presented with patent validity and infringement issues, trial courts should . . . decide both"); *Lockwood v. Am. Airlines, Inc.*, Civ. No. 91-1640-E(CM), 1993 WL 643369, at *1 (S.D. Cal. Sept. 21, 1993) (denying Rule 54(b) certification for

19

non-infringement judgment because "the Supreme Court has recently indicated its preference that district courts rule on both the invalidity and infringement issues, even when non-infringement is found"). The result should be the same here.

Given this live controversy, it would be an inappropriate exercise of this Court's discretion to dismiss the invalidity counterclaim. A district court's discretion is to be exercised "consistent with the purposes of the Declaratory Judgment Act and the considerations of wise judicial administration." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007). Where a declaratory judgment claim would serve the objectives for which the Declaratory Judgment Act was created, dismissal is "rarely proper." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). Accordingly, "[w]hen there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Id.* at 1357 (citation omitted); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2005) (emphasizing "there are boundaries to [the Court's] discretion").

Proceeding with an adjudication of Defendants' counterclaim for declaratory judgment of invalidity, at summary judgment or trial, serves the purposes of the Declaratory Judgment Act. Adjudication of Defendants' counterclaim would afford Defendants relief from the uncertainty, insecurity, and controversy regarding their

20

right to continue marketing and selling various gaming terminals and enable Defendants to explore potential development of additional games without fear of potentially running afoul of an invalid patent.  Like Plaintiffs, Defendants are entitled to have their day in Court and have a final ruling on invalidity prior to any appeal.  Accordingly, the Court should decline to dismiss Defendants' counterclaim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Certification and Dismissal without Prejudice of Defendants' Invalidity Counterclaim.

Dated:  February 11, 2021            Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren Hsu-Hoffman (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304

21

Telephone: 650.843.4000
Fax: 650.843.4001
ahren.hsu-hoffman@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC
and PA Coin Holdings, LLC*