**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

SAVVY DOG SYSTEMS, LLC, a
Wyoming limited liability company, and
POM OF PENNSYLVANIA, LLC a
Wyoming limited liability company,

   Plaintiff,

  v.

PENNSYLVANIA COIN, LLC, a
Pennsylvania limited liability company,
and PA COIN HOLDINGS, LLC, a
Pennsylvania limited liability company,

   Defendants.

Civil Action No. 3:19-cv-01470-JPW

Honorable Jennifer P. Wilson

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR ENTRY OF
JUDGMENT OF NON-INFRINGEMENT AND DESIGNATION AS FINAL
<u>UNDER RULE 54(B)</u>**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..............................................................................ii-iv

I.     *Nystrom* and Its Progeny Support Granting the Instant Motion. .....................3

II.    Issues of Infringement and Invalidity Reasonable Hinge on the Proper
       Construction of "Actual Game to be Played" ..................................................8

III.   Defendants Are Not Prejudiced by Rule 54(b) Certification .........................11

IV.    A Dismissal Without Prejudice of the Invalidity Counterclaim Need Not
       Deprive Defendants of a Trial on Patent Invalidity  .......................................13

V.     Statements by Plaintiffs in Opposition to the Continuing Business Method
       Review Petition Do Not Provide a Basis for Denying the Instant Motion ......15

i

# TABLE OF AUTHORITIES

*Cases*:                                                                                     **PAGE(S)**

*Adobe Sys. Inc. v. Christenson*,
No. 2:10-CV-00422-, 2012 WL 5473360 (D. Nev. Nov. 9, 2012)..............6

*Airgo IP, LLC v. ArvinMeritor, Inc.*,
No. CIV-05-1405-R, 2007 WL 9710922 (W.D.  Okla. July 30, 2007) .......8

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
841 F.3d 1334 (Fed. Cir. 2016)..............................................................2, 6

*Apple, Inc. v. Fintiv*, *Inc.*,
IPR2020-00019 (Paper 15), 2020 WL 2486683 (PTAB May 13, 2020).....15-16

*Cardinal Chemical Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993) ...............................................................................14

*Curtiss–Wright Corp. v. General Electric Co.*,
308 F. Supp. 2d 1229, 446 U.S. 1 (1980))..................................................6

*Digital Envoy, Inc. v. Google, Inc*.,
04-cv-01497, 2006 WL 824412 (N.D. Cal. Mar. 28, 2006) ......................11

*Digital Privacy, Inc. v. RSA Sec., Inc.*,
199 F.Supp. 2d 457 (E.D. Va. 2002)........................................................5

*E–Pass Techs., Inc. v. 3Com Corp.*,
343 F.3d 1364 (Fed. Cir. 2003) ............................................................3-4

*iLOR, LLC v. Google, Inc.*,
550 F.3d 1067 (Fed. Cir. 2008)...............................................................5

*Inline Plastics Corp. v. EasyPak, LLC*,
No. CIV.A. 11-11470-TSH, 2014 WL 297224 (D. Mass. Jan. 24, 2014),
*vacated in part on other grounds,* 799 F.3d 1364 (Fed. Cir. 2015).............4

*Cases*:                                                                    **PAGE(S)**

*Kickstarter, Inc. v. Fan Funded, LLC*,
   11-cv-6909, 2013 WL 628521 (S.D.N.Y. 2013) .......................................5

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
   445 F.3d 1348 (Fed. Cir. 2006)..................................................................8

*Liquid Dynamics Corp. v. Vaughan Co.*,
   355 F.3d 1361(Fed. Cir. 2004)..........................................................1, 4, 14

*Mangosoft, Inc. v. Oracle Corp.*,
   482 F. Supp. 2d 179 (D.N.H. 2007) ..........................................................4

*Massachusetts Institute of Technology v. Abacus Software*,
   462 F.3d 1344 (2006)...................................................................................8

*McKesson Info. Sols. LLC v. Epic Sys. Corp.*,
   No. 1:06-CV-2965-JTC, 2010 WL 11493291 (N.D. Ga. Feb. 11, 2010)....4

*Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*,
   308 F. Supp. 2d 1224 (W.D. Wash. 2003)..................................................6

*NHK Spring Co, Ltd.. v. Intri-Plex Tech., Inc.*,
   IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) .....................................16

*Nystrom v. TREX Co.*,
   339 F.3d 1347 (Fed. Cir. 2003)..............................................................3, 4

*Ortho-McNeil Pharmas., Inc. v. Kali Labs., Inc.*,
   Civ. A. No. 02-5707, 2007 WL 1814080 (D.N.J. June 20, 2007)...............6

*PolyVision Corp. v. Smart Techs. Inc.*,
   No. 1:03-CV-476, 2007 WL 2683516 (W.D. Mich. Sept. 7, 2007) ............5

*Precision Energy Servs., Inc. v. Thrubit, LLC*,
   11-cv-4492, 2013 WL 1966974 (S.D. Tex. May 13, 2013) .......................6, 7

*Cases*:                                                        **PAGE(S)**

*SAB Tech., LLC v. Port Inc.*,
   Civil No. 3:01-CV-00084, 2007 WL 1201831 (D. Conn. Apr. 21, 2007)...7, 8, 13

*Sport Dimension, Inc. v. Coleman Co., Inc.*,
   No. CV-14-438-BRO, 2015 WL 12732711 (C.D. Cal. Mar. 18, 2015) ......passim

*Sure-Safe Indus., Inc. v. C&R Pier Mfg.*,
   851 F. Supp. 1469 (S.D. Cal. 1993) ..........................................................6

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
   407 Fed. Appx. 481 (Fed. Cir. 2011) .......................................................3

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
   15-cv-379-LPS, 2019 WL 4344158 (D. Del. Sept. 12, 2019).....................4, 14

> A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, <u>subject to review only for abuse of discretion</u>.

*Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) (emphasis added and citation omitted).

This is a matter committed to the discretion of the Court. Distilled to its essence, the choice before the Court is whether to enter a final judgment so that Plaintiffs can appeal the claim construction, or deny the instant motion and set the stage for a trial of the Defendants' invalidity counterclaim. Granting the Plaintiffs' motion avoids the risk of two trials: one on patent invalidity and a second on infringement (with the risk of retrying the invalidity case using a new claim construction sanctioned by the Federal Circuit Court of Appeals). While Defendants' opposition brief chides against piecemeal appeals, two overriding factors outweigh this concern: (1) Plaintiffs have shown that they meet the established test for Rule 54(b) certification; and (2) Plaintiffs have shown the need to avoid <u>trying</u> the case in a piecemeal fashion by using a claim construction which is subject to potential reversal on appeal.

As shown herein, the preferred course of action in the case at bar – a case between competitors where the alleged infringement is irreparably injuring the

Plaintiffs[1] – is entry of final judgment of non-infringement and the dismissal of the invalidity counterclaim without prejudice. If the judgment is affirmed on appeal, Defendants can move to have the counterclaim reinstated at that time.  If the judgment is reversed as to claim construction, then the Court can hold one trial to address all issues of infringement and (in)validity at the same time.  Either way, the Court's order is maximizing the efficient use of its limited resources, without undue prejudice to either party.

Defendants cannot deny that invocation of Rule 54(b) to certify the judgment as final is appropriate to the extent that the Court finds: (1) multiple claims for relief or multiple parties are involved; (2) at least one claim is finally decided; and (3) there is no just reason or delaying an appeal. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016).  In this case, all three elements are present, such that the Court should grant the instant motion. Defendants baldly assert, without support, that the tripartite showing in cases such as *Alfred E. Mann Found.* imposes a "heavy burden" on Plaintiffs. [Dkt. 119, at 7]. However, as shown herein, the applicable case law does not refer to the requisite

---

[1]   The parties are undisputed competitors in the electronic gaming industry. [*See, e.g.,* Dkt. 45, at 8 (Defendants describing this action as "between competitors in the gaming products industry")]. As discussed in connection with briefing on Defendants' motion to stay pending CBM review, Plaintiffs are the market leader in Pennsylvania for electronic skill games, and Plaintiffs and Defendants directly competing in such market. [*See* Dkt. 70-7 (Wood Declaration), ¶¶ 8, 11-14].

showing in a case such as this as "heavy" at all.

## I.    *Nystrom* and Its Progeny Support Granting the Instant Motion.

*Nystrom v. TREX Co*., 339 F.3d 1347 (Fed. Cir. 2003), speaks to the approach advocated by Plaintiffs.  There, the Federal Circuit recognized that judges "often find one of the infringement and validity sides of the case resolved and the other either moot or unresolved," and opined:

> [T]he district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement. . . . [T]he district court could have considered whether there was a proper basis to make "an express determination that there is no just reason for delay" and then to expressly direct the entry of final judgment on fewer than all of the claims under Federal Rule of Civil Procedure 54(b).

339 F.3d at 1350-51 (footnote and citations omitted).

Defendants state that the Federal Circuit in *Nystrom* "merely noted that a Rule 54(b) certification provides a basis for a district court to 'consider[ ] whether there was a proper basis to make 'an express determination that there is no just reason for delay' and then to expressly direct the entry of final judgment on fewer than all of the claims." [Dkt. 119, at 8 n.2 (quoting *Nystrom*, 339 F.3d at 1351)].[2]  However,

---

[2]  Defendants' brief is silent as to other Federal Circuit decisions recited in the Plaintiffs' opening brief, including *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 407 Fed. Appx. 481 (Fed. Cir. 2011), *E–Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2003), and *Liquid Dynamics*, 355 F.3d 1361. [*See* Dkt. 118, at 7, 11].

this half-hearted attempt to distinguish *Nystrom* is undone by a bevy of judicial

pronouncements in contested Rule 54(b) motions:

- *Sport Dimension, Inc. v. Coleman Co., Inc.*, 14-cv-438, 2015 WL 12732711 (C.D. Cal. Mar. 18, 2015), *vacated and remanded on other grounds,* 820 F.3d 1316 (Fed. Cir. 2016) (certifying non-infringement order under Rule 54(b) in view of claim construction, and dismissing claim for invalidity without prejudice);

- *Inline Plastics Corp. v. EasyPak, LLC*, 11-cv-11470, 2014 WL 297224, at *1–2 (D. Mass. Jan. 24, 2014), *vacated in part on other grounds,* 799 F.3d 1364 (Fed. Cir. 2015) (entering judgment of on-infringement under Rule 54(b) and dismissing invalidity counterclaim over defendant's objection without prejudice);

- *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 15-cv-379, 2019 WL 4344158, at *3 (D. Del. Sept. 12, 2019) (granting Rule 54(b) certification and dismissing invalidity counterclaims without prejudice: "If the Federal Circuit reverses this Court on both of the disputed claim terms, then further proceedings with respect to infringement will be required, which the Court can take up more efficiently in conjunction with the invalidity defenses and counterclaims which would then also have to be litigated – all on what would then be the correct, rather than erroneous, constructions.");

- *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 1:06-CV-2965, 2010 WL 11493291, at *1–2 (N.D. Ga. Feb. 11, 2010) (same);

- *Mangosoft, Inc. v. Oracle Corp.*, 482 F. Supp. 2d 179, 182 (D.N.H. 2007) ("The court, then, is persuaded that allowing [Plaintiff] to appeal its patent construction and non-infringement rulings to the Court of Appeals for the Federal Circuit represents the most efficient use of judicial resources, as well as those of the parties. . . . By allowing [Plaintiff] to promptly obtain the definitive ruling it seeks, this court will avoid dedicating time and resources to resolve [Defendant's] invalidity counterclaim based on what might prove to be an erroneous construction of the patent.");

4

- *Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 460 (E.D. Va. 2002) (certifying non-infringement under Rule 54(b) and staying further proceedings, finding that claim construction and non-infringement are "not issues that an appellate court would have to revisit" and that resolution of appeal would aid resolution of remaining claims where outcome was "contingent in part on the construction of the patent claims at issue in the case").

The foregoing cases are more than adequate to disprove Defendants' contention that cases warranting immediate appeal of claim construction under Rule 54(b) are "rare" cases. [Dkt. 119, at 3, 8].

Defendants distinguish certain cases where the parties jointly sought certification of final judgment under Rule 54(b), while missing the larger point: regardless of whether certification is opposed, the Court should find that there is no just reason for delaying the entry of final judgment. *See iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008) (district court is to "set forth the justification for" the determination that there is "no just reason for delay") (quotation omitted). So long as this element is present in the Court's rationale, the Federal Circuit will not disturb the sound discretion of the Court.

Admittedly, not every court presented with a Rule 54(b) motion grants it. *See Kickstarter, Inc. v. Fan Funded, LLC*, 11-cv-6909, 2013 WL 628521, *1-2 (S.D.N.Y. Feb. 15, 2013). However, Defendants' reliance on *PolyVision Corp. v. Smart Techs. Inc.*, 1:03-CV-476, 2007 WL 2683516, at *5 (W.D. Mich. Sept. 7, 2007) and *Ortho-McNeil Pharmas., Inc. v. Kali Labs., Inc.*, 02-cv-5707, 2007 WL

5

1814080, at *5 (D.N.J. June 20, 2007) (*see* Dkt. 119, at 15-16) is misplaced, because both rulings placed undue weight on a finding of the lack of hardship a denial of the motion would cause the movant, rather than focusing on the three-part test articulated in cases such as *Alfred E. Mann Found.*, 841 F.3d at 1347.

In *Adobe Sys. Inc. v. Christenson*, No. 2:10-CV-00422, 2012 WL 5473360, at *3 n.10 (D. Nev. Nov. 9, 2012), the court refused to follow *Sure-Safe Indus., Inc. v. C&R Pier Mfg.*, 851 F. Supp. 1469 (S.D. Cal. 1993), another case Defendants rely upon for lack of hardship to the movant. [*See* Dkt. 119, at 11]. Yet the *Adobe* court disagreed with such an "overly restrictive" proposition that the movant must demonstrate immediate hardship to justify a Rule 54(b) judgment, stating that hardship is not required by Rule 54(b). *Adobe*, 2012 WL 5473360, at *3 n.10 (quotation omitted).[3]

Likewise, Defendants' citation to *Precision Energy Servs., Inc. v. Thrubit, LLC*, 11-cv-4492, 2013 WL 1966974, at *3-4 (S.D. Tex. May 13, 2013) misses the mark. There, the Court found that the defendant will be "significantly prejudiced"

---

[3]  *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1224, 1229 (W.D. Wash. 2003), further distinguished *Sure-Safe*, stating that the Supreme Court made clear in *Curtiss–Wright* that the moving party need not necessarily show that it is the "infrequent harsh case" to justify entering final judgment. "Instead, *Curtiss–Wright* made clear that there are no bright line rules or standards governing this determination; it is necessarily a fact specific determination." 308 F. Supp. 2d at 1229 (citing *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10–11 (1980)).

by the delay in resolving its counterclaims. *Id.* (emphasis added). However, as shown below, this is not a case where Defendants have made a showing that they will be significantly prejudiced; instead, this is a case where the alleged prejudice is merely speculative and without evidentiary support in the record. Far from prejudice, courts have emphasized that a requested final judgment of non-infringement, if granted, is of great <u>benefit</u> to the Defendants:

> If the Court were to grant certification pursuant to Rule 54(b), however, a final judgment on the issue of infringement would effectively refute any possible future claims of infringement. That is, [Defendant] would be free to sell its products and inform its customers that it received a judgment establishing its non-infringement. Should the Federal Circuit subsequently overturn the Court's order, [Defendant] would be in no worse position than it would be if the Court were to continue the instant action.

*Sport Dimension,* 2015 WL 12732711, at *4.

Moreover, *Precision Energy* held that "[i]t is unfair to preclude Defendant for a significant period of time from conducting discovery to obtain and preserve evidence in support of its counterclaims." 2013 WL 1966974, at *4. But by Defendants' admission, that is <u>not</u> the case here. [*See* Dkt. 119, at 5, 11 ("the parties have engaged in extensive discovery regarding validity")].

Defendants' reliance on *SAB Tech., LLC v. Port Inc.*, 3:01-CV-00084, 2007 WL 1201831, at *1 (D. Conn. Apr. 21, 2007) (*see* Dkt. 119, at 19), is similarly unavailing. *See Airgo IP, LLC v. ArvinMeritor, Inc.*, 05-cv-1405, 2007 WL

7

9710922, at \*1 (W.D. Okla. July 30, 2007) (refusing to follow *SAB Tech.*: "having concluded that [the accused] product does not directly or indirectly infringe any of Plaintiffs' patent claims-in-suit, the Court concludes that [the] counterclaim for invalidity of Plaintiffs' patents is moot").

Finally, Defendants' invocation of *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006), is unavailing in this case. Here, the issue on claim construction is a narrow one – "actual game to be played" – and a stipulation that the accused products do not preview the entire game field. Moreover, the Federal Circuit did not decline review in *Lava Trading*. *See Massachusetts Institute of Technology v. Abacus Software*, 462 F.3d 1344, 1350-1351 (2006) (noting that in *Lava Trading*, the Federal Circuit did not remand based on lack of information about the accused product).

## II. Issues of Infringement and Invalidity Reasonably Hinge on the Proper Construction of "Actual Game to be Played."

Defendants state that "in certain instances invalidity and infringement may be linked such that a court's claim construction of a single claim term may be dispositive of both invalidity and infringement." [Dkt. 119 at 13, n.4]. In this case, the proper construction of "actual game to be played" is necessary to both the determination of infringement and validity issues.

Defendants obfuscate the importance of the claim construction to their theories of patent invalidity, stating that "the '223 Patent is invalid grounds that do

8

not depend on the Court's claim construction of 'actual game to be played.'" [*Id.* at 2]. This is simply untrue.  There is only one ground of invalidity presented – the lack of written description – that does not depend on the proper construction of "actual game to be played."

The other theories[4] hinge on the proper construction of this term.  First, to show a lack of patentable subject matter, Defendants must show that the game processor configured to preview an actual game to be played was conventional, well-understood and routine technology by 2006, the filing date of the application leading to the 223 Patent.  The Court recognized this previously, stating at the pleadings stage that "<u>this</u> [game] processor is different from the prior art and that <u>this</u> type of gaming system was nonexistent prior to the 2006 patent application." [Dkt. 61 (Memorandum Opinion denying Defendants' Motion to dismiss) (citing First Amended Complaint ("FAC"), ¶¶ 20–24) (emphasis added)].  "Plaintiffs plead that the game processor was not conventional, well-understood or routine technology in the gaming field in 2006."  [*Id.* (citing FAC, ¶ 29)].  To understand "<u>this</u> game processor" and "<u>this</u> type of gaming system," the jury must be instructed as to the correct scope of "an actual game to be played."  Otherwise, the jury would not be able to answer whether a game processor specially configured to test and then

---

4    The other three theories are lack of patentable subject matter, lack of correct inventorship and anticipation/obviousness based on prior art.  [*Id.* at 12-13].

preview "an actual game to be played" was well understood and conventional *circa* 2006.

Likewise, regarding any argument about lack of inventorship, Defendants must show that someone other than the inventor first invented the claims of the 223 Patent. This determination cannot be made without the proper claim construction of an "actual game to be played." Phrased another way, if the invalidity trial proceeds and the jury finds that Michael Pace invented the claims of the 223 Patent, and then, on appeal, the Federal Circuit alters the claim construction, the Court would likely remand for retrial of the inventorship question using the revised claim construction.

As for prior art, Defendants do not deny that a portion of the prior art they are relying upon is prior art that was addressed to the Plaintiffs' proffered construction of "actual game to be played." [Dkt. 118, at 8-11]. Instead, they argue that focusing on this art is merely "cherry-picking." [Dkt. 119, at 12]. To put this argument into perspective, Defendants are saying that trial should move forward on invalidity now using the Court's claim construction. Defendants will be able to use some, but not all, of their proffered prior art at that trial. For example, they would not be able to rely on much less prevail using their "prizeviewer" prior art under the current construction. But if a first trial resulted in a verdict that the 223 Patent is not invalid, and the claim construction were to be reversed on appeal, they would retry invalidity, using all their prior art, including their prizeviewer art, against a broader

10

construction.[5]  One trial of all issues, with an appellate court-sanctioned claim construction, is preferable to the type of piecemeal approach to trial practice advocated by Defendants in this case.

Finally, Defendants are unwilling to jettison their theories of invalidity that are dependent on a proper claim construction (e.g., prior art-based theories of obviousness or patentable subject matter) and pursue invalidity based only on their theory of lack of written description, which is not dependent on the construction of "actual game to be played."  Again, the significance of this is that, if the case proceeded to trial on invalidity and then the claim construction were altered on appeal by the Federal Circuit, the change in claim construction would likely warrant a retrial of Defendants' invalidity counterclaim.

## III.    Defendants Are Not Prejudiced by Rule 54(b) Certification.

Defendants suggest that they have something to gain from a counterclaim declaration of invalidity, namely, the freedom to continue modifying and developing their products. *See Digital Envoy, Inc. v. Google, Inc.*, 04-cv-01497, 2006 WL 824412, *2 (N.D. Cal. Mar. 28, 2006).  However, Defendants do not make their products, and they certainly do not make game boards or game software. In fact,

---

[5]  Defendants have now provided Final Infringement Contentions directed to the Court's claim construction.  However, that does not alter the circumstances which, if the instant motion is denied, could lead to two jury trials of the patent invalidity question, each employing a different claim construction.

11

there is no evidence that Defendants even consult with third party game software and game terminal makers about the content of the gaming platforms or games. Thus, on this record, any alleged prejudice is utterly speculative. Moreover, the alleged prejudice is outweighed by the non-speculative benefits to Defendants of an immediate final judgment of non-infringement. *See Sport Dimension*, 2015 WL 12732711, at *4.

The evidence relied upon by Defendants about supposedly hindering competition is quite speculative; the prejudice is non-existent. [Dkt. 119, at 18]. Defendants aver that "Plaintiffs' distributor touts the validity of the '223 Patent on its website (see Ex. 7)" (Dkt. 119, at 18), but Exhibit 7 is nothing more than a statement by a non-party in 2019 acknowledging the existence of this suit. [Dkt. 119-7]. Likewise, Defendants' statement that "Plaintiffs have sent a cease and desist letter regarding the '223 Patent to the manufacturer of the accused products (Ex. 8)" (Dkt. 119, at 18) refers to a letter sent long before this lawsuit was ever filed, and that was directed to the very games that are at issue in this lawsuit. [Dkt. 119-8]. The paucity of evidence of genuine prejudice to Defendants is outweighed by the legitimate benefit conferred upon them (and the manufacturer of the games, for that matter) by granting the instant motion, for "a final judgment on the issue of infringement would effectively refute any possible future claims of infringement" and "[Defendants] would be free to sell its products and inform its customers that it

12

received a judgment establishing its non-infringement." *Sport Dimension*, 2015 WL 12732711, at *4.

In sum, Defendants posit that "[a]djudication of Defendants' counterclaim would afford Defendants relief from the uncertainty, insecurity, and controversy regarding their right to continue marketing and selling various gaming terminals and enable Defendants to explore potential development of additional games without fear of potentially running afoul of an invalid patent." [Dkt 119, at 20-21]. Yet any invalidity trial is not set until the summer of 2022; meanwhile, Defendants ignore that an <u>immediate</u> final judgment of non-infringement would relieve Defendants of any uncertainty, insecurity and controversy. And, as noted, Defendants are not in the business of developing games. Finally, because the counterclaim is being dismissed without prejudice, if a controversy were ever to arise in the future relating to any other games, Defendants would be able to present that to the Court as justification for reinstatement of the invalidity counterclaim.

## IV.    A Dismissal without Prejudice of the Invalidity Counterclaim Need Not Deprive Defendants of a Trial on Patent Invalidity.

Defendants rely on a line of cases holding that "[w]hen presented with patent validity and infringement issues, trial courts should . . . decide both." [Dkt. 119, at 19 (citing *SAB Tech., LLC v. Port Inc.*, 3:01-CV-00084, 2007 WL 1201831, at *1 (D. Conn. Apr. 21, 2007))]. Plaintiffs do not agree with Defendants' premise, which appears to be that if the Court grants the instant motion, Defendants will be deprived

13

of any opportunity to present invalidity arguments.  To the contrary, granting the relief requested would set the stage for presentation of infringement and validity issues in a single trial, albeit after the Federal Circuit's review of claim construction. *See Wi-LAN*, 2019 WL 4344158, at *3 (cited in Plaintiffs' opening brief, Dkt. 118, at 4, 7)]. And in the event the Federal Circuit affirms the claim construction, the invalidity counterclaim may be reinstated.  *See Liquid Dynamics Corp.*, 355 F.3d at 1370 (reversing summary judgment of non-infringement, and reinstating counterclaims which "are no longer moot and must be reinstated").  If Defendants seek reinstatement, the Court can take then take the matter up, considering the underlying goals of the Declaratory Judgment Act (*i.e.*, whether a final judgment of non-infringement has settled the legal relations in dispute and afforded Defendants relief from uncertainty or insecurity *vel non*).  At this time, it is simply inaccurate for Defendants to act as if the relief requested, if granted, would <u>forever</u> bar the presentation of the invalidity counterclaim. Because the dismissal sought is <u>without</u> prejudice, the Court may reinstate invalidity counterclaims.  *See id.* at 1370–71, n.10 (noting, *inter alia*, that the Supreme Court's holding in *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) merely prohibits the Federal Circuit from vacating a judgment of invalidity when it concludes that a patent has not been infringed, and "therefore has no bearing on the district court's actions in this case") (internal quotation omitted).

**V.    Statements by Plaintiffs in Opposition to the Continuing Business Method Review Petition Do Not Provide a Basis for Denying the Instant Motion.**

Defendants point out that "Plaintiffs argued that the PTAB should not address invalidity issues because 'the district court and the parties have already expended considerable resources in briefing and evaluating the Section 101 and Section 112 [invalidity] issues.'" [Dkt. 119, at 6]. While this statement is true, Defendants' reliance upon it in opposition to the instant motion is misplaced.

Defendants sought continuing business method ("CBM") review of the 223 Patent.  CBM review is limited to patents relating to financial products and services. [Dkt. 106-1 (PTAB Decision declining to institute CBM review of the 223 Patent)]. Out of an abundance of caution, before responding to the CBM petition, Plaintiff statutorily disclaimed any claims that could in theory be read as implicating financial products or services. [*See* **Exhibit A** (Statutory Disclaimer)].   Considering the remaining claims, the PTAB held that the 223 Patent was not eligible for CBM review. [Dkt. 106-1, at 7-12].

As an alternative ground for denial of the CBM petition, Plaintiffs raised the argument for "discretionary denial," citing the PTAB's precedent in *Apple, Inc. v. Fintiv, Inc.*, IPR2020-00019 (Paper 15), 2020 WL 2486683, at *3 (PTAB May 13, 2020) (setting forth factors for discretionary denial of IPR petition). [*See* Dkt. 119-6 (Patent Owner Preliminary Responses), at 80-95; *see also NHK Spring Co, Ltd..*

15

*v. Intri-Plex Tech., Inc.*, IPR2018-00752, Paper 8 at 19-20 (PTAB Sept. 12, 2018) (filed as Dkt. 70-8)]. "Discretionary denial" permits the PTAB to decline to institute a review where, in its discretion, a parallel district court proceeding is in a sufficiently advanced stage that the PTAB determines that institution is not consistent with the goals of the statutory scheme enabling post-grant patent review. 2020 WL 2486683, at *3. It was in the context of this argument, which was not ruled on by the PTAB, that Plaintiffs made statements to the effect that the District Court, not the PTAB, should decide any invalidity arguments. Such statements were made prior to the Court's claim construction order, at a time when a live controversy existed over whether the 223 Patent was infringed.

It remains the case that if and to the extent the invalidity arguments are to be heard, they should be heard by the Court, rather than the PTAB, because as the PTAB itself has ruled, the PTAB does not have statutory authority to hear invalidity arguments relating to the 223 Patent. However, that in no way prevents the Court from applying the tripartite test for whether to grant Rule 54(b) certification. And if the invalidity counterclaim is dismissed without prejudice pending appeal, and subsequently reinstated following the Federal Circuit opinion relating to claim construction, the District Court would be the forum in which the invalidity counterclaim is ultimately heard.

16

For these reasons, the Court should grant the instant motion.[6]

February 25, 2021                                   Respectfully submitted,

                                                   */s/ Steven G. Hill*
                                                   Steven G. Hill, GA Bar No. 354658
                                                   *Admitted pro hac vice*
                                                   John L. North, GA Bar No. 545580
                                                   *Admitted pro hac vice*
                                                   Martha L. Decker, GA Bar No. 420867
                                                   *Admitted pro hac vice*
                                                   Hill, Kertscher & Wharton, LLP
                                                   3350 Riverwood Parkway
                                                   Atlanta, Georgia 30339
                                                   Telephone: (770) 953-0995
                                                   Fax: (770) 953-1358
                                                   sgh@hkw-law.com
                                                   jln@hkw-law.com
                                                   md@hkw-law.com

                                                   -   and -

                                                   Matthew H. Haverstick (PA ID No. 85072)
                                                   Eric J. Schreiner (PA ID No. 76721)
                                                   Paul G. Gagne (PA ID No. 42009)
                                                   Shohin H. Vance (PA ID No. 323551)
                                                   KLEINBARD LLC
                                                   Three Logan Square, 5th Floor
                                                   1717 Arch Street
                                                   Philadelphia, PA 19103
                                                   Telephone: (215) 568-2000
                                                   Fax: (215) 568-0140
                                                   mhaverstick@kleinbard.com
                                                   eschreiner@kleinbard.com
                                                   pgagne@kleinbard.com
                                                   svance@kleinbard.com

---

[6] Finally, Plaintiffs dispute Defendants' suggestion that the opening brief failed to include a statement of facts (Dkt. 119, fn1). [*See* Dkt. 118, at 1-2].

17

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*