# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC <br><br> Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW <br><br> Honorable Jennifer P. Wilson <br><br>  <br> Unsealed Public Version Filed on February 8, 2022 |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  January 28, 2022

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................1

II.   PROCEDURAL HISTORY ..............................................................2

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS.........................3

IV.   STATEMENT OF QUESTIONS INVOLVED .............................5

V.    LEGAL STANDARD .......................................................................5

VI.   ARGUMENT.....................................................................................6

    A.    Claim 44 Is Representative Of All '223 Patent Claims. .....................6

    B.    *Alice* Step One:  As The Court Has Already Held, The '223
        Patent Is Directed To The Abstract Idea Of Rules For Playing A
        Game...................................................................................7

    C.    *Alice* Step Two: The '223 Patent Lacks A Transformative
        Inventive Concept...............................................................7

        1.    No genuine disputes of material fact preclude entry of
            summary judgment................................................................7

        2.    Generically claimed computer components do not
            constitute an inventive concept..............................................11

        3.    Supposedly new rules for game play do not constitute an
            inventive concept. ...............................................................15

        4.    There is no fact issue over whether an inventive concept
            may be found in something unconventional, not routine,
            or not well-understood. ........................................................17

        5.    There is no inventive concept because the '223 Patent
            claims do not provide a technological solution to a
            technological problem...........................................................19

VII.  CONCLUSION..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abel*,
  838 F. App'x. 558 (Fed. Cir. 2021) ....................................................................12

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .........................................................................5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................5

*Bot M8 LLC v. Sony Corp. of Am.*,
  465 F. Supp. 3d 1013 ....................................................................................5, 19

*BSG Tech, LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .............................................................10, 17, 18

*CareDx, Inc. v. Natera, Inc.*,
  19-0567-CFC-CJB, 2021 WL 4439600 (D. Del. Sept. 28, 2021).......................8

*Cave Consulting Grp. v. Truven Health Analytics Inc.*,
  15-cv-02177-SI, 2017 WL 6405621 ((N.D. Cal. Dec, 15, 2017) .......................8

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ........................................................................11

*Epic IP v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. Nov. 26, 2018)...................................................16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ........................................................................16

*Konami Gaming, Inc. v. High 5 Games, LLC*,
   No. 2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 22, 2018) ..................5, 19

*Mortgage Grader Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) .......................................................................8, 19

*Move, Inc. v. Real Estate All. Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) .......................................................................13

*Netflix, Inc. v. Rovi Corp.*,
   114 F. Supp. 3d 927 (N.D. Cal. 2015).................................................................17

*Planet Bingo, LLC v. VKGS, LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ...............................................................5, 13

*PlanetID, LLC v. Digify, Inc.*,
   No. 19-cv-04615-JST, 2021 WL 567371 (N.D. Cal. Jan. 12, 2021)..................20

*RaceTech, LLC v. Ky. Downs, LLC*,
   167 F. Supp. 3d 853 (W.D. Ky. 2016)............................................................11, 13

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) .............................................................................7

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ...........................................................................16

*In re Smith*.
   815 F.3d 816 (Fed. Cir. 2016) .............................................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .............................................................................16

**Statutes**

35 U.S.C. § 101 ...............................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56 ....................................................................................................5

U.S. Patent No. 7,736,223................................................................................*passim*

## I.    INTRODUCTION

Defendants move for summary judgment that the claims of U.S. Patent No. 7,736,223 ("the '223 Patent") (Dkt. 1-2) are invalid under 35 U.S.C. § 101 because they are directed to patent ineligible subject matter.   This Court previously determined the claims fail step one of the patent-eligibility standard established in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) because they are directed to abstract rules of game play.  Dkt. 61 at 15.  The Court has since construed claim terms of the '223 Patent, and, under those constructions, there is no genuine issue of fact that the claims also fail step two of the *Alice* standard because they do not contain an inventive concept.

To survive step two, an inventive concept must *be evident in the claims*; Plaintiffs cannot create factual issues by pointing to purported inventive concepts not recited in the claims.  As construed, the '223 Patent claims merely recite generic computer components—such as a "game processor" or "program instructions"—for carrying out abstract rules of game play.  The claims do not provide anything beyond the abstract ideas themselves, and do not specify how the computer components perform the abstract steps.   This is because the claims are not presenting a *technological* solution to a *technological* problem.   Rather, as the '223 Patent specification makes clear, the claims recite game rules meant to address a *legal* problem—*i.e.*, how to reduce the effect of chance so a game have a game qualifies

"skill-based" under gaming laws.  That is not patent eligible subject matter.  As such, this Court should grant summary judgment that the '223 Patent claims are invalid.

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this action in 2019 alleging that Defendants infringe the '223 Patent.  Dkt. 1.  Defendants moved to dismiss this action on the ground that the '223 Patent is invalid under 35 U.S.C. § 101.  Dkt. 31.  After briefing and oral argument on Defendants' motion, this Court ruled that claim 44 of the '223 Patent is representative and directed to "an abstract idea within the meaning of *Alice* step one."  Dkt. 61 at 8-9, 15.  For *Alice* step two, the Court relied on statements made by Plaintiffs for the first time at oral argument regarding the "the firmware in the game processor," concluded that whether the "technology embedded into the game processor is . . . an 'inventive concept' is a question of fact that the" Court could not "determine at this early stage of litigation," and denied Defendants' motion.  *Id.* at 18-19.  Defendants proceeded to answer the complaint and assert a counterclaim seeking a declaration that all claims of the '223 Patent are invalid.  Dkt. 63.

On August 31, 2020, Plaintiff Savvy Dog filed a statutory disclaimer with the Patent and Trademark Office disclaiming claims 2, 4, 8-10, 12, 14, 16, 17, 21, 23, 24, 26, 28, 32, 34-36, 43, 50 and 57-75 of the '223 Patent.  Dkt. 119-5.

On December 21, 2020, the Court issued a claim construction opinion and order.  Dkts. 111 & 112.  Plaintiffs thereafter conceded that they could not establish

that Defendants infringe the '223 Patent, and, on January 28, 2021, Plaintiffs moved the Court to dismiss Defendants' invalidity claim and enter final judgment. Dkt. 118 at 1. The Court denied Plaintiffs' motion and permitted Defendants to proceed on their invalidity counterclaim. Dkt. 136. The parties have now completed fact and expert discovery regarding Defendants' invalidity counterclaim.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The contents of the '223 Patent are undisputed. In the "Background of the Invention," the '223 Patent specification describes the *legal* problem addressed by the purported invention: certain jurisdictions require that an electronic game outcome be controlled by the player, not by predetermined odds or chance. '223 Patent at 1:18-32. The '223 Patent identifies no existing technological obstacle to be overcome by the purported invention, *e.g.*, no technical, scientific, engineering, or computer-based problem. What is the patentee's solution to the identified *legal* problem? Incorporating a particular rule into the game play—specifically, "providing a game preview display to players of an amusement or entertainment electronic game before playing the game." *Id.* at 1:64-68. The '223 Patent specification describes electronic games incorporating this "preview" rule, but neither describes a technical, scientific, engineering, or computer-based advancement that allows performance of the game rules, nor does it tout that the patentee has made such a *technological* advancement. In the limited portions of the

3

'223 Patent specification identifying how the electronic game is to carry out the rules, it identifies only that they are performed by generically described computer tools—"game processors" and "program instructions"—without explaining the makeup of or any detail about those tools. *Id.* at 2:28-64; 4:49.

The '223 Patent claims, like the specification, focus on electronic game rules incorporating a "preview" step.[1]  Each independent claim lays out the rules, and Plaintiffs have conceded that all of these game rules but the "preview" step existed in the prior art.[2]  The claims either identify no technological means of carrying out the rules (claims 1, 3, 5-7, 11 & 37-42), or specify only that they are carried out by a "game processor" of an electronic gaming system (claims 13, 15, 18-20, 22 & 44-49) or "program instructions" of a computer program product (claims 25, 27, 29-31, 33 & 51-56).  The claims do not specify that the game processor or program instructions are made up of any particular or special components or structure, nor did the Court construe those terms to have any. *See* Dkt. 112.

---

[1] In this litigation, Plaintiffs have referred to the claimed limitation of "automatically displaying an actual game to be played . . . prior to initiating activation of game play" as "preview."  Defendants will do the same for purposes of this brief.

[2] *See* Statement of Material Facts for Which There is No Issue to be Tried ("SOF") ¶ 1 (Plaintiffs admit that March 7, 2005 Nick Farley Letter is prior art); *id.* ¶ 3 (Plaintiffs' expert admits that claimed description of testing was present in prior art Tic-Tac-Fruit game); *id.* ¶ 12 (Plaintiffs admit that all limitations in '223 Patent independent claims were in prior art other than "testing . . ." and "automatically displaying . . ." limitations).

Defendants further incorporate by reference their SOF filed contemporaneously herewith.

## IV. STATEMENT OF QUESTIONS INVOLVED

Whether the Court should grant summary judgment in Defendants' favor because the '223 Patent does not claim patent-ineligible subject matter.

## V. LEGAL STANDARD

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A dispute of material fact is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). Patent-eligibility under 35 U.S.C. § 101 is a question of law suitable for summary judgment. *See, e.g.*, *Alice*, 573 U.S. at 214, 227 (affirming summary judgment of invalidity under § 101); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (same). Numerous district courts have invalidated patents directed to abstract gaming ideas that lacked a transformative inventive concept. *See, e.g.*, *Planet Bingo, LLC v. VKGS, LLC*, 576 F. App'x 1005, 1006-07 (Fed. Cir. 2014) (affirming summary judgment invalidating "methods and systems for 'managing a game of Bingo'" under § 101); *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1024, 1028 (invalidating patent directed to "updating game parameters"); *Konami Gaming, Inc.*

5

*v. High 5 Games, LLC*, Case No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120, at *1, *19 (D. Nev. Feb. 22, 2018) (invalidating patent directed to altering rules of slot machine game).

The legal standards for patent eligibility under *Alice* are set forth in detail in this Court's motion to dismiss memorandum opinion. *See* Dkt. 61 at 7-9.

## VI.   ARGUMENT

### A.   Claim 44 Is Representative Of All '223 Patent Claims.

"In determining section 101 eligibility, the Court need not 'parse each individual claim,' rather, analyzing a patent's representative claim is sufficient." Dkt. 61 at 8 (citation omitted). As it did at the motion to dismiss phase, the Court can here determine patentability of the entire '223 Patent based on analysis of a single representative claim—independent claim 44.

Claim 44—like all claims of the '223 Patent—is directed to abstract rules of game play. *See* Dkt 61 at 15 (Court finds that claim 44 "describes the rules for playing a game."). None of the other claims of the '223 Patent provide further meaningful complexity. Claim 44 recites game rules performed by a "game processor" of an electronic gaming system; claims 45-49 depend from claim 44, with added limitations that are but minor tweaks of the rules. Claims 37-42 take the same game rules as claims 44-49, recite the claims as a method, and remove the requirement they be performed by a game processor. Claims 51-56 take the same

6

game rules as claims 44-49 by require performance by "program instructions" of a computer program product instead of a game processor. The remaining claims of the '223 Patent take the same basic game rules of claims 44-49, and simply add an additional "wild symbol" rule, whether in the context of an "electronic gaming method" (claims 1, 3, 5-7, 11), an "electronic gaming system" with a "game processor" (claims 13, 15, 18-20, 22) or "program instructions" in a computer program product (claims 25, 27, 29-31, 33). Regardless of iteration, all of the claims are essentially rules for game play.

**B.** ***Alice* Step One:  As The Court Has Already Held, The '223 Patent Is Directed To The Abstract Idea Of Rules For Playing A Game.**

The Court has held as a matter of law that, at *Alice* step one, the '223 Patent is directed to the abstract idea of rules for playing a game. *See* Dkt. 61 at 15. Indeed, as Defendants discussed in their motion to dismiss, each of the game steps of the claims could as easily be played by human beings as they could electronically. *See* Dkt. 32 at 8-11.

**C.** ***Alice* Step Two: The '223 Patent Lacks A Transformative Inventive Concept.**

**1.     No genuine disputes of material fact preclude entry of <u>summary judgment.</u>**

Claim language begins and ends the Court's *Alice* step two inquiry. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident *in the claims*.")

(emphasis added).  Neither discovery, attorney argument, nor expert opinion can alter what is in the claims.  Indeed, various courts have entered or upheld summary judgment of patent ineligibility despite parties' experts offering competing opinions on patentability.  *See, e.g.*, *Mortgage Grader Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (affirming summary judgment of patent ineligibility; "dueling expert testimony does not necessarily raise a genuine issue of material fact"); *Cave Consulting Grp. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 WL 6405621, a *5 n.5 (N.D. Cal. Dec, 15, 2017) (finding "expert or other evidence" regarding purported inventiveness was "irrelevant" to § 101 inquiry at summary judgment); *CareDx, Inc. v. Natera, Inc.*, No. 19-0567-CFC-CJB, 2021 WL 4439600, at *14 (D. Del. Sept. 28, 2021) (rejecting plaintiff's effort to "alter by extrinsic evidence" what is disclosed in patent and granting summary judgment under § 101).

Here, no evidence can change what is in the '223 Patent claims themselves. A third of the claims specify game rules with no means of performing them.  *See supra* § III.  The remaining claims recite game rules carried out either by a "game processor" or by "program instructions," but there,  he claims do not specify *how* the "game processor" or "program instructions" perform the rules.  *Id.*  Neither do the claims state that the game processor or program instructions are made up of any

particular components or structure, nor did the Court construe those terms to have any. *See* Dkt. 112.

Plaintiffs cannot avoid summary judgment by asserting fact issues over purported inventive concepts not in the claims. At the motion to dismiss phase of the case, Plaintiffs escaped dismissal by telling the Court that there was something inventive and technologically advanced about the "firmware" of the '223 Patent, despite that no claim recites any such "firmware." *See* Dkt. 61. Since then, Plaintiffs have abandoned this argument and now assert that the '223 Patent's inventive concept is a "new" processor and "new type of computer programming product." *See* SOF ¶ 13; Ex. F at Resp. to Rog. 8 (providing Plaintiffs' contentions on patent eligibility). But like Plaintiffs' fleeting "firmware" argument, the actual claims do not support Plaintiffs' latest argument. There is no genuine dispute of material fact that the claims themselves recite only a "game processor" and "program instructions" as a means for carrying out the abstract game rules, where the claims recite any means at all. As discussed *infra* at § V.C.2, as claimed, these are generic computer components that cannot provide an inventive concept. There is nothing recited *in the claims* that identifies a technology "embedded into the game processor." Dkt. 61 at 18.

9

Nor can Plaintiffs avoid summary judgment by asserting there is a fact issue over whether the claim limitations—alone or as part of an ordered combination[3]— are not well-understood, not routine, or unconventional.  As discussed *infra* at § V.C.3, the novelty of abstract game rules is not the relevant inquiry; even an unconventional abstract idea is still an unpatentable abstract idea.  To be patent eligible, an inventive concept in a claim must be significantly more than the abstract idea itself.  *See, e.g.*, *BSG Tech, LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).  As discussed further in § V.C.4 *infra*, the claimed invention's use of the abstract ideas cannot supply the inventive concept.  Where, as in the '223 Patent claims, there is nothing in the claims beyond a generic computer implementation of an abstract idea, the Court need not consider whether such implementation was well-understood, routine, or conventional.  *Id.*

The Court can determine from the face of the '223 Patent itself that the claimed game rules simply represent abstract game rules in the context of an electronic game—an abstract, non-technological solution to a legal, non-

[3]Plaintiffs previously disavowed that the order of steps listed in claim 44 contains an eligible ordered combination.  *See* Dkt. 37 at 15 n.5 ("[T]he claim language . . . does not specifically state that the configuration of the processor must follow any sequential order.").  Plaintiffs have reversed position and now argue in contention interrogatory responses that the ordered combination of rules is an inventive concept because it was never done before.  *Compare* Ex. F at Response to Rog. 8, *with* MTD Tr., Dkt. 60, at 47:22-48:4.

technological problem.  *See infra* at § V.C.3.  No fact issue precludes summary judgment.

### 2.      Generically claimed computer components do not constitute an inventive concept.

All the '223 Patent claims recite abstract rules of game play, but only some identify what implements these rules.  These means of implementation, found only in some of the claims,[4] cannot be the inventive concept of the '223 Patent because they are but general computer tools for carrying out the abstract idea itself.  *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (to provide an "inventive concept," "it is not enough [] to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool."); *RaceTech, LLC v. Ky. Downs, LLC*, 167 F. Supp. 3d 853, 864 (W.D. Ky. 2016) ("Inventive concepts represent significantly more than just the abstract idea and cannot be merely the implementation of an abstract idea through a general computer process.").

Specifically, one third of the '223 Patent claims recite that the game rules are carried out by a "game processor."  *See* claims 13, 15, 18-20, 22 & 44-49.  This Court has construed "game processor" as "a CPU or microprocessor that executes

---

[4]That a third of the claims specify no means or device for carrying out the claimed rules reinforces that generic "game processor" or "program instructions" could not be the true inventive concept of the '223 Patent.  *See* claims 1, 3, 5-7, 11 & 37-42.

program instructions to generate a game." *See* Dkt. 112 ¶ 8; *e.g.*, '223 Patent, claims 13, 18-20, 22, 25, 27, 29-31, 33, 37-42 & 44-49.  Thus, nothing *in the claims*, as construed, requires the "game processor" to be anything other than a conventional and ordinary computer or processor.  Further, nothing *in the claims* (or anywhere else in the '223 Patent) suggests that the processor itself is improved from a technical perspective or that it would operate differently than it otherwise could, foreclosing a finding of inventive concept based on the generic processor. *Cf. In re Abel*, 838 F. App'x. 558, 562 (Fed. Cir. 2021) (finding patent invalid because "nothing in the claims at issue here recites a particular improvement in how computers carry out the basic functions relevant to implementing the abstract idea").  Indeed, Plaintiffs' expert conceded that the processor is only "specially configured" insofar as it is carrying out the steps of game.  SOF ¶ 4.

The remaining third of the '223 Patent claims recite that the abstract game rules are carried out by "program instructions" of a computer readable storage medium of a computer product.  The Court construed "program constructions to be "*conventional* commands that can be executed by a computer."  Dkt. 112 ¶ 9 (emphasis added).    Thus, these claims explicitly could not encompass unconventional instructions that could somehow constitute an inventive concept. As such, because the '223 Patent claims "do[ ] not provide any specific showing of what is inventive about the [limitation] or about the technology used to generate

and process it," "the claims do not satisfy *Alice*'s second step." *Move, Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (emphasizing that "instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible").

The claims of the '223 Patent are similar to those in patents found ineligible by other courts. In *Planet Bingo*, the Federal Circuit held claimed computer components (including, "a computer with a central processing unit" and "memory") to be "mere instruction to implement an abstract idea on a computer," which "cannot impact patent eligibility" of claims directed to the abstract idea of managing bingo. 576 F. App'x at 1008. The Federal Circuit also determined that carrying out abstract rules of game play using conventional means cannot supply the requisite inventive concept in *In re Smith*. 815 F.3d 816, 819 (Fed. Cir. 2016). Similarly, in *RaceTech*, a district court held that the asserted patents' use of "ordinary computer equipment," did not confer patent eligibility. 167 F. Supp. 3d at 865. Although the patents recited various computer components, including a "video server," "game server," "game terminal," and "administrative terminal," these components did not add up to "something more" needed to transform patent-ineligible ideas into eligible ones. *Id.* And, in *NEXRF Corp. v. Playtika Ltd.*, a

13

district court invalidated a patent directed to "incentivizing gambling tailored to a user's location" because the patent recited "only generic computer hardware performing routine functions—a wireless device, a verification system, a centralized gaming server, and a memory module—to allow a user to play an online slot machine game" and therefore lacked a transformative inventive concept. No. 3:20-cv-00603, 2021 WL 2874114, at *9-11 (D. Nev. July 7, 2021). So too here. Mere recitation of "gaming processor" or "program instructions" does not transform the abstract idea of rules of game play into the something more required for patentability.

The Court need but look at the patent claims, as construed, to satisfy itself that they recite only generic computer tools. However, discovery has also confirmed that the purported invention of the '223 Patent requires only conventional computer hardware. Michael Pace—the named inventor of the '223 Patent and the CEO of Plaintiffs' parent company—admitted at deposition that he implemented his purported '223 Patent invention by using pre-existing, commercially available computer technology, and that he did not have to modify any hardware to implement the desired functionality. SOF ¶¶ 9-10. Specifically, Mr. Pace testified that he first made the Tic-Tac-Fruit game of the type described in the '223 Patent using then commercially available game boards (Pot-of-Gold and Skidmore boards) with commercially-available memory devices (EPROMs

and CompactFlash cards) and conventional processors (the Texas Instruments 34010 and AMD Geode). *See id.* ¶ 9. Plaintiffs' expert agreed that Mr. Pace's invention of the Tic-Tac-Fruit game could be implemented using a "conventional, off-the-shelf CPU or microprocessor." *Id.* ¶ 5. Mr. Pace also admitted that an embodiment of his purported invention could have been implemented on a game board existing in the 1990s. *Id.* ¶ 10. Given these admissions, Plaintiffs cannot argue that the '223 Patent claims somehow require non-generic components.

### 3. Supposedly new rules for game play do not constitute an inventive concept.

In an interrogatory response, Plaintiffs suggest that the '223 Patent claims contain an inventive concept because they recite "new" electronic gaming systems, game processors, etc. because two of the claimed abstract game steps—the "testing . . ." and "automatically displaying . . ." steps—were not carried out in prior art games. *See* Ex. F at Resp. to Rog. 8. But, Michael Pace, the named inventor of the '223 Patent, admitted at deposition that the "testing . . ." of the '223 Patent was, in fact, performed by prior art Tic Tac Fruit electronic games. *See* SOF ¶ 11. Further, there is no genuine issue of fact that the prior art Tic-Tac-Fruit game "automatically display[ed] an actual game to be played on the touch screen game display to a player." *See* SOF ¶ 1 (Plaintiffs admit that March 2005 letter, which describes Tic-Tac-Fruit game, is prior art); Ex. B (describing prior art Tic-Tac-Fruit game as having "video screen [that] presents nine symbols in a 3x3 array to the player, similar

15

to a t[i]c-tac-toe arrangement").  As such, the only arguable difference between representative claim 44 and the prior art is very narrow, *i.e.*, claim 44 displays a game field to a player "prior to activation of a game," not after.  *See* Ex. C at 134:21-135:23 (Plaintiffs' expert admitting that only barrier to implementing the alleged invention in 2006 and prior was the "idea of an automatic preview feature").

Nonetheless, even this arguable difference does not suffice as an inventive concept for *Alice* purposes.  Each of the claimed game steps—when considered alone or in combination with each other—are simply the abstract rules.  They can be equally carried out manually by humans as they could electronically by a computer product.  That they may be "new" abstract rules does not matter.  Patent novelty and patent subject matter eligibility are two different inquiries.  *Epic IP v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 748 (D. Del. Nov. 26, 2018); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("'[N]ovelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (emphasis in original).  Thus, new abstract rules cannot be the inventive concept, even if they are purportedly unconventional.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (Court "may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility."); *Ultramercial, Inc. v. Hulu, LLC*,

16

772 F.3d 709, 716 (Fed. Cir. 2014) ("That some of [these] steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims. . . ."); *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 940 (N.D. Cal. 2015) ("The [ ] patent may well disclose an idea that was unconventional at the time of the patent's filing.   However, an unconventional abstract idea is still an unpatentable abstract idea.").

> **4.      There is no fact issue over whether an inventive concept may be found in something unconventional, not routine, or not well-understood.**

Plaintiffs will likely argue that summary judgment is inappropriate because there is a fact issue over whether the '223 Patent claim limitations—alone or as part of an ordered combination—recite conventional, routine, and well-understood applications in the art.  There is no merit to such a position.  Because there is nothing in the '223 Patent claims beyond generic computer implementation of abstract game rules, the Court need not consider whether such implementation was well-understood, routine, or conventional.

In *BSG Tech*, the Federal Circuit explained when a Court is to consider at *Alice* step two whether something is "well-understood, routine, and conventional." 899 F.3d at 1290:

> [T]he relevant inquiry is *not* whether the claimed invention as a whole is unconventional or non-routine.  At step two, we "search for an 'inventive concept'. . . that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"

. . . After identifying an ineligible concept at step one, we ask at step two "[w]hat else is there in the claims before us?". . .

In *Alice*, the Supreme Court held that claims directed to a computer-implemented scheme for mitigating settlement risks claimed a patent-ineligible abstract idea. Some of the claims at issue covered computer systems configured to mitigate risks through various financial transactions. . . . After determining that those claims were directed to the abstract idea of intermediated settlement, the Court considered whether the recitation of a generic computer added "significantly more" to the claims. . . . *Critically, the Court did not consider whether it was well-understood, routine, and conventional to execute the claimed intermediated settlement method on a generic computer.* Instead, the Court only assessed whether the claim limitations *other than* the invention's use of the ineligible concept to which it was directed were well-understood, routine, and conventional.

Our precedent has consistently employed this same approach.

*Id.* (citations omitted) (emphasis added). The Federal Circuit in *BSG* went on to conclude that the only alleged unconventional feature of the claims at issue were abstract, and affirmed summary judgment of patent ineligibility. *Id.* at 1291.

The case before this Court is like that in *BSG*. Any suggestion from Plaintiffs that the '223 Patent claim limitations—either alone or in combination—are unconventional because they encompass "new" electronic games in that they perform the "preview" step not performed by prior art games, even if true, is irrelevant. There is nothing in the '223 Patent claims other than execution of the abstract game rules by generic computer tools. Notably absent from the claims is anything that specifies *how* the game rules are performed by a processor or program instructions; the claims reveal only *that* the steps are performed. Thus, as *BSG*

18

makes clear, this Court need not consider whether it was "well-understood, routine, and conventional" to execute "preview" with a game processor or program instructions because that execution is simply the use of the ineligible abstract game rules.

Indeed, other Courts have found that, in the gaming context, using conventional computers to implement new rules or parameters is not an inventive concept. *Bot M8*, 465 F. Supp. 3d at 1024-25 (rejecting argument that using "game components" "in a manner unconventional in the gaming machine industry" provided inventive concept sufficient to transform abstract idea of "updating game parameters based on prior results to maintain user enjoyment" into patentable subject matter); *Konami*, 2018 WL 1020120, at *19 ("Changes to game rules of a generic slot machine using conventional technology are not patentable.").

### 5. There is no inventive concept because the '223 Patent claims do not provide a technological solution to a technological problem.

Nothing in the '223 Patent suggests that the abstract "preview" step or the game rules as a whole provide any sort of concrete, non-abstract technological advancement, *i.e.*, a technical solution to a technical problem. *See Mortgage Grader*, 811 F.3d at 1314, 1325 (finding claims invalid at *Alice* Step 2 because nothing in claims purported to improve functioning of computer itself or "effect an improvement in any other technology or technical field"). Nor could these abstract

19

game rules supply the requisite inventive concept. *See PlanetID, LLC v. Digify, Inc.*, Case No. 19-cv-04615-JST, 2021 WL 567371, at *8 (N.D. Cal. Jan. 12, 2021) ("[T]he abstract idea that renders the asserted claims ineligible at step one . . . cannot supply the inventive concept at step two.").

Instead, the '223 Patent describes the desirability of creating games of "skill" in order to avoid running afoul of certain state gambling laws. *See* '223 Patent at 1:21-32. But whether a game is one of "skill" is an abstract legal question that would apply to whether it is played manually by humans or electronically by a computer. Named inventor Pace confirmed that the "preview" concept was implemented to work around legal obstacles, not technological ones. *See* SOF ¶ 8; *id.* ¶ 15; Ex. G (August 14, 2013 "Paceomatic's Patent Portfolio" states "Preview feature used to remove chance from a skill game since a player may look at the next puzzle before committing to play of the game."). Plaintiffs' expert confirmed the same—that the '223 Patent merely elevated the level of skill and eliminated chance in electronic gaming (a legal issue). *See* SOF ¶ 7. This confirms that the use of the claimed "preview" feature was not an actual inventive concept, but just abstract use of generic computer tools to meet legal criteria.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants and declare the '223 Patent is invalid under 35 U.S.C. § 101.

Dated:  January 28, 2022

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice)*
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

21

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that although the instant Brief exceeds 15 pages, it complies with the word count limitation set forth in Local Rule 7.8(b)(2).   This Brief contains 4,994 total words.   This word count was performed using the word count feature of Microsoft Word 2016.

<u>/s/John V. Gorman</u>
John V. Gorman

22

## **CERTIFICATE OF SERVICE**

I hereby certify that Defendants' Brief in Support of Their Motion for Summary Judgment was filed on this 28th day of January, 2022 under seal. A courtesy copy was sent via electronic mail to all counsel of record.

*/s/John V. Gorman*
John V. Gorman
