# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of Pennsylvania, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC<br><br>Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson<br><br><br><br>Unsealed Public Version Filed on February 8, 2022 |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF KEVIN HARRIGAN, PH.D.

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and*
*PA Coin Holdings, LLC*

Dated:  January 28, 2022

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................1

II.   PROCEDURAL HISTORY ........................................................................2

III.  STATEMENT OF FACTS.........................................................................3

IV.   QUESTION PRESENTED..........................................................................5

V.    ARGUMENT...............................................................................................5

      A.    The Court Must Act as a Gatekeeper to Ensure that Unreliable
            and Irrelevant Testimony Is Excluded. ................................................5

      B.    The Court Should Preclude Dr. Harrigan From Offering
            Opinions and Factual Narrative Regarding Witness Credibility. ........6

      C.    Dr. Harrigan's Opinions and Factual Narrative Parroting
            Statements from Clinton Lowe and Regarding Source Code Dr.
            Harrigan Admits He Never Reviewed Should be Excluded..............10

VI.   CONCLUSION..........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. 60.14 Acres of Land*,
362 F.2d 660 (3d Cir. 1966) ...............................................................................8

*Baldonado v. Wyeth*,
No. 04 C 4312, 2012 WL 1802066 (N.D. Ill. May 17, 2012) ............................6

*United States v. Benson*,
941 F.2d 598 (7th Cir. 1992) ..............................................................................9

*Coney v. NPR, Inc.*,
No. 03-1324, 2007 WL 2571452 (E.D. Pa. Aug. 31, 2007)..............................10

*Daubert v. Merrell Dow Pharmas., Inc.*,
509 U.S. 579 (1993)............................................................................................6

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) ...............................................................................5

*Fabrizi v. Rexall Sundown, Inc.*,
No. CIV. A. 01-289, 2004 WL 1202984 (W.D. Pa. June 2, 2004) ....................14

*Griggs v. BIC Corp.*,
844 F. Supp. 190 (M.D. Pa. 1994)......................................................................9

*Iconics, Inc. v. Massaro*,
266 F. Supp. 3d 461 (D. Mass. 2017)...........................................................13, 14

*Kia v. Imaging Sci. Int'l, Inc.*,
No. 08-5611, 2010 WL 3431745 (E.D. Pa. Aug. 30, 2010)...............................7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)............................................................................................6

*United States v. Mitchell*,
365 F.3d 215 (3d Cir. 2004) ...............................................................................6

*Nimely v. City of New York*,
　　414 F.3d 381 (2d Cir. 2005) ...............................................................................9

*Oddi v. Ford Motor Co.*,
　　234 F.3d 136 (3d Cir. 2000) ...............................................................................6

*Orthoflex, Inc. v. ThermoTek, Inc.*,
　　986 F. Supp. 2d 776 (N.D. Tex. Nov. 20, 2013) ...............................................14

*In re Rezulin Prods. Liab. Litig.*,
　　309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................6

*SEC v. Tourre*,
　　950 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................6

*Van v. Ford Motor Co.*,
　　332 F.R.D. 249 (N.D. Ill. 2019)........................................................................10

**Other Authorities**

Fed. R. Evid. 702 .......................................................................................5, 9, 14

Fed. R. Civ. P. 26 ............................................................................................3, 13

## I.    INTRODUCTION

Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") respectfully request that the Court exclude certain opinions of Kevin Harrigan, Ph.d., an individual retained by plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs") as a rebuttal expert to offer opinions regarding the sole patent-in-suit in this action, U.S. Patent No. 7,736,223 (the "'223 Patent"). Under the guise of purported "expert" testimony, Dr. Harrigan intends to opine on the credibility of certain witnesses and, in essence, tell the jury who they should and should not believe in this case. This is improper—and should not be allowed—because it is the province of the jury to determine the credibility of witnesses.

Additionally, Dr. Harrigan—who did not himself review or analyze any source code in this case—intends to parrot summary and unsubstantiated conclusions about prior art source code contained in a declaration from an employee of an affiliate of Plaintiffs, Clinton Lowe. But Mr. Lowe is not and has not been disclosed as a source code expert in this case, and thus it would be highly improper for any opinions of his as to what source code does—or does not do—to be relayed to the jury through Dr. Harrigan. Moreover, the jury should hear nothing of Mr. Lowe's analysis and conclusions because he does not provide an adequate

explanation of the methodology he used to arrive at his conclusions, and Dr. Harrigan admitted he knew nothing about Mr. Lowe's methodology.

At bottom, these opinions are not "expert" at all and would only serve to confuse and mislead the jury.  Accordingly, the Court should preclude Dr. Harrigan from opining regarding any individual's credibility and should exclude Dr. Harrigan's factual narrative and opinions that are nothing more than repeating conclusory statements from Mr. Lowe's declaration cherry-picking of factual information from Mr. Lowe's declaration.

## II.    PROCEDURAL HISTORY

Defendants timely served an expert report on October 19, 2021 regarding invalidity of the '223 Patent.  In response, on November 18, 2021, Plaintiffs served the Responsive Expert Report of Kevin Harrigan, Ph.D. (the "Harrigan Report") (Ex. A, with exhibits to report omitted), which included as an attachment a declaration from Clinton Lowe, a senior software engineer at Dog Crew, LLC, an affiliate of Pace-o-Matic, Inc., an affiliate company of Defendants (the "Lowe Declaration") (Ex. B).

Defendants deposed Dr. Harrigan in January 2022.  *See* Excerpts of Deposition of K. Harrigan ("Harrigan Dep. Tr.") (Ex. C).  Based on statements in the Harrigan Report and confirmed at his deposition, Defendants seek to exclude certain of Dr. Harrigan's opinions and testimony that would invade the province of

the trier of fact.

## III.    STATEMENT OF FACTS

Dr. Harrigan is a rebuttal expert educated in computer science, hired by Plaintiffs to rebut opinions of Defendants' expert regarding invalidity of the '223 Patent.  *See* Ex. A, Harrigan Report, ¶¶ 1, 6.  Dr. Harrigan opines that, *inter alia*, NudgeMaster—an electronic game—does not constitute prior art to the '223 Patent, render the invention claimed in the '223 Patent obvious, or constitute a near simultaneous invention of any claims of the '223 Patent.  *See id.* ¶¶ 170-192.  To support his opinions regarding NudgeMaster, Dr. Harrigan relies heavily on facts and opinions set forth in the Lowe Declaration—a document never disclosed during fact discovery.[1]  In the Lowe Declaration, Mr. Lowe—who was hired by third-party World Touch Gaming, Inc. to work on source code for bill acceptors and to help maintain the source code repository for various games (Ex. B ¶¶ 3, 6)—offers various observations and conclusions regarding aspects of NudgeMaster source code that he never claims to have been involved with or worked on.  *See* Ex. B.

Despite relying heavily on and citing liberally to the Lowe Declaration to support his opinions regarding NudgeMaster, Dr. Harrigan admitted that he never

---

[1] In contravention of their Rule 26 obligations, Plaintiffs failed to disclose Mr. Lowe was as an individual likely to have discoverable information in this case during fact discovery.  Defendants reserve their rights to move to exclude Mr. Lowe as a witness and/or to strike Mr. Lowe's declaration at the motion *in limine* and pretrial phases.

spoke with Mr. Lowe regarding the NudgeMaster source code and that he never personally reviewed or analyzed any NudgeMaster (or other) source code in formulating his opinions. *See* Ex. C at 42:4-43:2; 43:13-17; 44:19-21. Instead, when Dr. Harrigan had questions regarding the content of the Lowe Declaration or regarding the NudgeMaster source code, he said he would have spoken with Plaintiffs' counsel regarding those questions, not Mr. Lowe. *Id.* at 50:1-15. Dr. Harrigan asserts that another World Touch Gaming employee's testimony regarding the NudgeMaster game was "not credible" because, *inter alia*, that employee "did not possess or review any source code" for World Touch Gaming before offering testimony regarding it. Ex. A ¶ 188. Yet, Dr. Harrigan seeks to have the Court and the jury find him qualified to testify regarding NudgeMaster source code despite his admitted failure to review any such source code.

In his report, Dr. Harrigan also offers various credibility judgements and determinations. *See, e.g.*, *id.* (opining that sworn testimony of Donald Fiechter, one of the founders of World Touch Gaming and a developer of NudgeMaster, "is not reliable or credible"); *id.* ¶ 176 (opining that testimony of alleged prior art inventors and those familiar with alleged prior art inventions was "not credible"); *id.* ¶ 212 (offering opinion regarding lack of credibility of a third-party alleged prior art inventor). And, Dr. Harrigan admitted he may opine on credibility issues at trial and point out whose testimony he thinks the jury should or should not believe. *See* Ex.

C at 39:19-40:4; 40:17-24; 41:7-14.

## IV.    QUESTION PRESENTED

1. Should the Court preclude Dr. Harrigan from offering credibility assessments and opinions at trial?

2. Should the Court exclude Dr. Harrigan's opinions based on the Lowe Declaration and preclude Dr. Harrigan from testifying regarding the same at trial?

## V.    ARGUMENT

### A.    The Court Must Act as a Gatekeeper to Ensure that Unreliable and Irrelevant Testimony Is Excluded.

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses at trial.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 imposes "three distinct substantive restrictions on the admission of expert testimony:  qualifications, reliability, and fit."  *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)).  The proponent of expert testimony has the burden

5

of establishing by the preponderance of evidence that the proposed expert meets each of these standards. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (affirming district court's exclusion of plaintiff's proposed expert testimony).

District courts must act as "gatekeep[ers]" for both scientific and nonscientific testimony to ensure that the proposed expert meet these standards. *See Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (stating that a district court should focus on methodology to "satisfy itself that *'good grounds'* exist for the expert's opinion" (citing *Daubert*, 509 U.S. at 590)).

### B.     The Court Should Preclude Dr. Harrigan From Offering Opinions and Factual Narrative Regarding Witness Credibility.

It is well-established that expert testimony should be excluded where an expert merely provides "a narrative of the case which a juror is equally capable of constructing" from documentary and lay witness testimony. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) (rejecting summary testimony of factual nature from expert and collecting cases regarding same); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (expert's testimony must not "become a vehicle for factual narrative"). Indeed, permitting expert gloss on a factual recitation vitiates the very purpose of *Daubert*—to ensure that testimony

6

will be reliable and helpful to the jurors—and violates Rule 702's requirement that the evidence presented assist the trier of fact. *See Kia v. Imaging Sci. Int'l, Inc.*, No. 08-5611, 2010 WL 3431745, at *5 (E.D. Pa. Aug. 30, 2010) (rejecting efforts to "filter fact evidence and testimony through [its] expert merely to lend credence to the same" or to use an expert to "repeat or summarize what the jury independently has the ability to understand").

Throughout his report, Dr. Harrigan purports to provide Plaintiffs' recitation of facts with a few stray conclusions he claims to have deduced from those facts. There is nothing "expert" about Dr. Harrigan's recitation of the facts, which consist of his spin on Michael Pace (the named inventor of the '223 Patent who purportedly created the Tic-Tac-Fruit game)'s product development, conversations between Mr. Pace and another Pace-o-Matic employee Ron Carrera, and credibility determinations regarding testimony certain third parties provided at or near the time of the supposed invention of Tic-Tac-Fruit—an embodiment of the invention supposedly claimed in the '223 Patent. For example, Dr. Harrigan includes the following in his claimed "expert" analysis underlying his opinion regarding lack of simultaneous invention and the fact that the NudgeMaster game is not prior art:

- An opinion regarding Mr. Pace's state of mind: "Mr. Pace alone appreciated the need and difficulty of developing this pre-fetch feature . . . ." Ex. A ¶ 57.

- An opinion regarding why Mr. Kowell did not include certain features in a specific patent application: "Had Mr. Kowell met with a patent attorney right away regarding the preview feature with instructions to patent the preview feature, as he testified, there is no good explanation why these passages were not in the original provisional application . . . ." *Id.* ¶ 99.

- Observations on the veracity of background evidence. *See, e.g.*, *id.* ¶ 140 (discussing what he deems to be an "obvious error" in draft patent application).

Sprinkled throughout his "opinions" are stray statements purporting to opine on the credibility of various third parties, including Grant Kowell and Kurt Gearhiser. *See id.* ¶ 188 (stating "the Fiechter testimony" regarding Fiechter's invention is "not reliable or credible"); *id.* ¶ 221 (criticizing reliability of Mr. Gearhiser's sworn deposition testimony). But Dr. Harrigan's alleged "scientific, technical, or other specialized knowledge" does not qualify him to speculate regarding witness credibility under the guise of factual narrative. *See United States v. 60.14 Acres of Land*, 362 F.2d 660, 667 (3d Cir. 1966) (holding that the "subject of the inference" by the expert "must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman"). The jurors can just as easily reach their own conclusions regarding witness

credibility based on testimony and documentary evidence presented at trial, and, therefore, Dr. Harrigan's supposed opinions regarding credibility and speculations regarding veracity based on underlying evidence are inadmissible. *See* Fed. R. Evid. 702(a); *United States v. Benson*, 941 F.2d 598, 603-04 (7th Cir. 1992) (finding trial court abused its discretion by permitting testimony of IRS agent acting as expert that consisted of nothing more than drawing inferences from the evidence that he was no more qualified than the jury to draw).

Far from merely providing background facts that he relied on in formulating his opinions, Dr. Harrigan confirmed at his deposition that he is ready and willing to offer opinions at trial as to whether a witness's testimony is credible. *See* Ex. C at 39:19-40:4; 40:17-24; 41:7-14. But it is well-established that an expert witness cannot offer opinions regarding the credibility of other witnesses. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702"); *Griggs v. BIC Corp.*, 844 F. Supp. 190, 201 (M.D. Pa. 1994) ("[I]t is generally inappropriate for a witness to judge the credibility of another witness."). Dr. Harrigan should not be permitted to testify concerning witness credibility because such testimony "encroaches upon the jury's vital and exclusive function to make credibility

9

determinations." *See Coney v. NPR, Inc.*, No. 03-1324, 2007 WL 2571452, at * 10 (E.D. Pa. Aug. 31, 2007).

> **C.     Dr. Harrigan's Opinions and Factual Narrative Parroting Statements from Clinton Lowe and Regarding Source Code Dr. Harrigan Admits He Never Reviewed Should be Excluded.**

Determining whether an expert has relied on sufficient facts or data to form his own opinion, as opposed to simply echoing the opinion of his client or another witness, is the "essence" of the gatekeeping inquiry of federal district judges. *See Van v. Ford Motor Co.*, 332 F.R.D. 249, 293 n.10 (N.D. Ill. 2019) ("The data . . . can be introduced through lay witnesses with first-hand observations, rather than by an expert who parrots what others have told her." "Rule 703 allows experts to rely on facts provided by others, even lawyers. But . . . the expert provides testimony of value to the trier of fact only if she then applies those facts, using a reliable methodology and supplying a logical chain of reasoning, to reach a conclusion that is relevant to an issue in the case."). Here, the Court should exercise its gate-keeping function to exclude Dr. Harrigan's factual narrative and opinions based on nothing more than parroting the Lowe Declaration's conclusory and unsubstantiated findings, which Dr. Harrigan never verified through his own analysis.

Dr. Harrigan acknowledged that he "believe[d] it's important to understand," indeed that it was "critical to understand," what was in the NudgeMaster code including "what versions [of NudgeMaster] existed and when they existed" and what

10

functionality existed in the NudgeMaster code and when. Ex. C at 45:2-8, 17-20. To gain this "critical" understanding regarding how prior art NudgeMaster source code operates, Dr. Harrigan—an individual who himself has not reviewed source code for electronic gambling games (*id.* at 20:12-24)—did not rely on any purported expertise he had, but rather on information from an employee of an affiliate of Plaintiff Savvy Dog as reflected in the Lowe Declaration. Dr. Harrigan's "opinions" regarding NudgeMaster are littered with factual narrative and supposed conclusions based on nothing more than naked citations to the Lowe Declaration. *See* Ex. A ¶¶ 120-23, 125, 129-132, 135-138, 142-144, 149, 151, 156-57, 161-64, 166-68, 188 (bullet point No. 5). In fact, Dr. Harrigan's report on NudgeMaster source code is essentially a verbatim recitation of statements from the Lowe Declaration regarding "build dates" and the purported functionality of certain NudgeMaster software versions. *See, e.g., id.* ¶¶ 125, 129, 149, 151. Dr. Harrigan also purports to provide factual background regarding supposed errors in a third-party (Nick Farley)'s review of the NudgeMaster code based purely on Mr. Lowe's recollection of information regarding the code that was provided to Mr. Farley. *See, e.g., id.* ¶¶ 142-44. And, Dr. Harrigan provides factual narrative regarding a 2011 video displaying the operation of the prior art NudgeMaster game again based on threadbare and conclusory statements about Mr. Lowe's recollection regarding the particular game

11

themes displayed in the video. *Id.* ¶¶ 156-57, 161.[2]

Instead of investigating the basis for Mr. Lowe's purported understanding of the source code or conducting his own review, Dr. Harrigan placed blind reliance on the Lowe Declaration neither asking to nor ever reviewing any source code (regarding NudgeMaster or otherwise) related to this case (Ex. C at 42:4-43:2; 44:19-21) or ever speaking with Mr. Lowe regarding his declaration and the facts therein. *See id.* at 50:1-5. As Dr. Harrigan summed it up: everything he knows about NudgeMaster code came from the Lowe Declaration and exhibits thereto:

> Q.  So you're relying entirely on what others have said about the code that's been produced in his case?
>
> A.  That's correct.
>
> ***
>
> Q.  Is there a reason you didn't undertake a review of the code yourself?
>
> A.  . . . .   And NudgeMaster, I didn't feel any need to look at that code.  I looked at the [Lowe] [D]eclaration and associated document.

Ex. C at 43:13-17, 21-22; 44:3-5.

And, when the Lowe Declaration left Dr. Harrigan with unanswered questions (*see id*. at 48:22-49:12), instead of discussing these questions with Mr. Lowe, Dr.

---

[2] Dr. Harrigan's statements based on parroting of the Lowe Declaration are wholly without foundation given Mr. Lowe does not even claim to have any personal knowledge or familiarity with the game themes displayed in the referenced 2011 YouTube video.

Harrigan thinks he "probably" would have spoken with Plaintiffs' counsel as he "spoke with him on everything in this case" although Dr. Harrigan did not recall any specific discussions regarding NudgeMaster. *See id.* at 49:9-50:12. When asked about basic details regarding Mr. Lowe's source code review, Dr. Harrigan was unable to identify (1) if Mr. Lowe was a source code expert (*id.* at 231:25-232:2), (2) how long Mr. Lowe reviewed code (*id.* at 232:7-9), (3) what functions of source code Mr. Lowe reviewed (*id.* at 232:10-15), (4) what methodology Mr. Lowe used to review and identify source code (*id.* at 233:16-25), and (5) what tools Mr. Lowe used in source code review (*id.* at 232:16-20). And, Mr. Lowe was neither disclosed as an expert—in source code review or otherwise—nor disclosed as a witness with relevant knowledge in Plaintiffs' Rule 26 disclosures served during fact discovery. Instead, he is simply and interested party whom Dr. Harrigan purports to pass off the observations, conclusions, and opinions of as his own.

Dr. Harrigan's failure to conduct even basic diligence regarding the Lowe Declaration, ever examine the NudgeMaster source code Mr. Lowe discusses and which Dr. Harrigan relies upon in forming his opinions, and mere parroting of Mr. Lowe's factual narrative warrants exclusion of the portions of Dr. Harrigan's opinions that rely solely on the Lowe Declaration. *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 469 (D. Mass. 2017) ("An expert is responsible for ensuring that his opinion is based on reliable data; he may not blindly rely on his client's

13

representations"); *see Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. Nov. 20, 2013) (collecting cases and emphasizing "expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him").

Here, the only methodology Dr. Harrigan used was to read the Lowe Declaration and pass off Mr. Lowe's findings as his own. This is not admissible expert opinion. *See Iconics*, 266 F. Supp. 3d at 469 (D. Mass. 2017) (an expert may not simply "'parrot' the conclusions of other witnesses"); *Fabrizi v. Rexall Sundown, Inc.*, No. CIV. A. 01-289, 2004 WL 1202984, at *10 (W.D. Pa. June 2, 2004) ("[E]xpert testimony that 'simply parrots the opinion of another does not assist the trier of fact, and thus, is inadmissible under Rule 702.'"). Allowing Dr. Harrigan to testify regarding Mr. Lowe's conclusions would be highly improper given neither Dr. Harrigan nor Mr. Lowe ever used any sound methodology to formulate opinions regarding the NudgeMaster source code.

## VI.  CONCLUSION

For the foregoing reasons, the Court should preclude Dr. Harrigan from testifying at trial regarding credibility determinations and preclude Dr. Harrigan from offering factual narrative and opinions regarding statements made in the Lowe Declaration, including those opinions and factual narrative set forth in paragraphs 120-27, 129-139, 142-144, 146, 149, 151-52, 155-58, 161-64, 166-68, 188 (bullet

point No. 5), and 190 of Dr. Harrigan's Report.

Dated:  January 28, 2022          Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted
*pro hac vice*)
Amy M. Dudash (PA 311898) (admitted
*pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin,
LLC and PA Coin Holdings, LLC*


15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that Defendants' Brief in Support of Their Motion to Exclude was filed under seal on this 28th day of January, 2022. A courtesy copy was served via email to all counsel of record.

*/s/John V. Gorman*
John V. Gorman