**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC a Wyoming limited liability company,<br><br>     Plaintiff,<br><br>     v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>     Defendants. | Civil Action No. 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101

Steven G. Hill (*phv*)
John L. North (*phv*)
Martha L. Decker (*phv*)
**HILL, KERTSCHER & WHARTON, LLP**
3625 Cumberland Blvd., SE, Suite 1050, Atlanta, Georgia 30339

*-and-*

Matthew H. Haverstick
Eric J. Schreiner
Paul G. Gagne
Shohin H. Vance
**KLEINBARD LLC**
Three Logan Square, 5th Floor
1717 Arch Street, Philadelphia, PA 19103

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..............................................................ii-iii

I.     Introduction .........................................................................1

II.    Procedural History .................................................................4

III.   Statement Of Disputed Material Facts.........................................5

       A. Material Facts Requiring Trial ............................................5

       B. Response To Defendants' "Statement of Undisputed Facts" ..................8

IV.    Statement Of Questions Involved................................................10

V.     Legal Standards and Principles .................................................10

VI.    Argument..............................................................................13

       A. *Alice* Step One: The "Testing" and "Automatically Displaying"
       Limitations Are Not Abstract Ideas and Are Not Simply "Rules for
       Playing a Game" ...................................................................14

       B. *Alice* Step Two: The "Testing" and "Automatically Displaying"
       Limitations Transform the 223 Patent into Patent Eligible Subject
       Matter ................................................................................17

           1.  The "Automatically Displaying" Limitation Was Not Well-Known,
           Routine and Conventional. .......................................................17

           2. The Game Processor of the Claims of the 223 Patent Is Specially
           Configured to Perform the Inventive Limitations of the Claims – It
           Does not Matter that the Processor, before Configuration, Could be
           Generic, Off-the-Shelf Hardware ...............................................18

           3. Defendant's Case Law Does Not Support the Grant of Summary
           Judgment Under the Facts of this Case. ........................................20

VII.   Conclusion...........................................................................21

i

# TABLE OF AUTHORITIES

## *Cases*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ...............................................................*passim*

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC.*,
  827 F.3d 1341 (Fed. Cir. 2016) ...................................................3, 15

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .............................................3, 10, 12

*BSG Tech. Inc. v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .............................................3, 12, 18

*CareDx, Inc. v. Natera, Inc.*,
  19-CV-0567, 2021 WL 4439600 (D. Del. Sept. 28, 2021) .............................21

*C.R. Bard, Inc. v. AngioDynamics Inc.*,
  1:15-CV-218, 2018 WL 3130622 (D. Del. June 26, 2018) ....................2, 12, 18

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
  635 F.3d 1373 (Fed. Cir. 2011) ...................................................13

*Diamond v. Diehr,*
  450 U.S. 175 (1981) ...............................................................11

*Geter v. Dauphin Cty. Prison Authorities*,
  3:18-CV-1579, 2021 WL 4502258 (M.D. Pa. Sept. 30, 2021) ........................ 10

*GREE, Inc. v. Supercell Oy*,
  2:19-CV-200, 2021 WL 1917131 (E.D. Tex. Apr. 16, 2021), *report and
  recommendation adopted*, 2021 WL 1702424 (E.D. Tex. Apr. 29, 2021)  ...... 11

*In re Smith*,
  815 F.3d 816 (Fed. Cir. 2016).............................................1,11, 20

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
  285 F.3d 1353 (Fed. Cir. 2002)...................................................13

*Maxell, Ltd. v. Apple Inc.*,
    5:19-CV-00036, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020)........................13

*Mortgage Grader Inc. v. First Choice Loan Servs. Inc.*
    811 F.3d 1314 (Fed. Cir. 2016) .......................................................................21

*Planet Bingo, LLC v. VKGS, LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ............................................................. 20

*United Servs. Auto Ass'n v. Wells Fargo Bank*, N.A.,
    414 F. Supp. 3d 947 (E.D. Tex. 2019)........................................................  12

*Vaporstream, Inc. v. Snap Inc.*,
    2:17-CV-00220, 2018 WL 1116530 (C.D. Cal. Feb. 27, 2018) ...........12-13, 21

## *Statutes*

35 U.S.C. § 101 ............................................................................................. 1

## I.    INTRODUCTION

Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "POM") submit this response in opposition to Defendants' Motion for Summary Judgment for Patent Invalidity Under 35 U.S.C. § 101 (Dkt. 155) and Defendants' supporting memorandum (Dkt. 162, "Brief").

The Federal Circuit Court of Appeals has held that gaming related patents may meet patent eligibility requirements, stating that "[a]bstract ideas, including a set of rules for a game, may be patent-eligible if they contain an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent eligible application." *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014)).

Here, the Court has held that the claims of the asserted 223 Patent encompass the abstract idea of "rules for playing a game" under *Alice* Step One, a conclusion with which POM disagrees. *See* Section VI.A., *infra.* However, even if the claims of the 223 Patent encompass an abstract idea under *Alice* Step One, specific, not-abstract elements of the claims, unrelated to "rules for playing a game," "transform" the claims into patent eligible subject matter under *Alice* Step Two. *See* Section VI.B, *infra*. These inventive concepts include the requirements that the processor be configured for "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning

1

combination is not generated inadvertently in completing the field"; and "automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play[.]" (*See* 223 Patent, Dkt. 1-2, at cl. 44, 16:59-65).

The evidence developed during discovery shows that these inventive elements were counter-intuitive, and <u>not</u> well-understood, routine or conventional. Defendants' expert even admitted at deposition that the "automatically displaying" limitation was not "conventional, well-known and routine." (*See* POM's Counterstatement of Material Facts ("POM's CSOF"), ¶ 1). This admission alone completely undercuts Defendants' Motion. At a minimum, the record developed during discovery establishes a genuine issue of material fact, requiring denial of Defendants' Motion. *See, e.g.*, *C.R. Bard, Inc. v. AngioDynamics Inc.*, 1:15-CV-218, 2018 WL 3130622, at *10 (D. Del. June 26, 2018) ("The Federal Circuit has held that the *Alice* Step 2 inquiry into whether claim limitations were well-known, routine, and conventional presents a question of fact[,]" and holding that a fact issue precluded summary judgment).

Defendants' Motion is built on a few propositions, each of which fails under scrutiny:

1.    Defendants repeatedly argue that the above claim elements are simply abstract ideas in themselves. (Brief, at 10). But apart from thrusting this label on these

elements, Defendants never address how these specific elements are in fact abstract. "Automatically displaying," as construed by Defendants, *see infra*, for instance, plainly is not a step that can be performed by humans and thus is not abstract. And these elements do not even pertain to "rules for playing a game." They relate to operations of the processor that take place prior to the initiation of the game play.

2.   Defendants argue that the Court need not address whether these elements (alone or in combination) are conventional and well-understood based on *BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018).  But *BSG Tech.* is inapplicable because it is based on the factual conclusion, not present here, that the inventive concept itself was nothing more than an abstract idea. 899 F.3d at 1290-91. The general rule, as stated in *BSG Tech* and applicable here, is that "whether a claim limitation or combination of limitations is well-understood, routine and conventional is a factual question. . . . [A] genuine dispute over that issue will preclude summary judgment[.]" *Id*. at 1290 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)); *see also Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*).

3.    Defendants argue that, because the invention of the 223 Patent arose out of consideration of a legal issue, it is not patent eligible. (Brief, at 1). But Defendants cite no law that supports this point. Further, numerous patents on their face show that they arose from regulatory/legal issues.

4.    Finally, Defendants assert that the invention of the 223 Patent is not patent eligible because the invention can be implemented on conventional, generic hardware. (*Id.* at 4). POM, however, consistently has maintained that it is <u>not</u> the hardware that is the inventive concept that makes the claims of the 223 Patent eligible for patentability. Instead, it is the specially configured game processor that it is neither conventional nor generic. (POM's CSOF, ¶ 6).

## II.    PROCEDURAL HISTORY

POM disputes and corrects Defendants' procedural history (Brief, at 2-3) in two respects:

First, Defendants incorrectly suggest that the Court denied the motion to dismiss solely based on POM's counsel's mention of the word "firmware." The Court, however, expressly referred to allegations in the amended complaint as part of its *Alice* Step Two analysis. (Dkt. 61). As discussed below in Section VI.B.2., whether the computer code used to configure the game processor in accordance with the elements of the claims is baked into the processor as microcode embedded within the processor or computer code accessed by the processor from an EPROM memory

4

device is of no moment. "Firmware" is broad enough to cover either embodiment, just as Claim 44 is broad enough to cover either embodiment. Regardless of embodiment, a person of ordinary skill, including POM's expert, would understand Claim 44 to be directed to a specially configured game processor, one that was not well understood prior to the 223 Patent. (POM's CSOF, ¶ 4).

Second, because of Defendants' lack of clarity on this point (*see* Brief, at 3), POM reiterates that it did not move to dismiss the invalidity claims on the merits, but instead moved to dismiss the invalidity claims as moot in connection with POM's motion for entry of a Rule 54 Judgment. (Dkt. 118, at 11).

## III.    STATEMENT OF DISPUTED MATERIAL FACTS

POM sets forth below the following material facts that undercut Defendants' Motion, and then responds to Defendants' "Statement of Undisputed Material Facts" (*see* Brief, at 3-5), as further set forth in POM's separately-filed Response to Defendants' Statement of Facts.

### A.    Material Facts Requiring Trial.

The following facts, some of which are disputed and some of which Defendants must concede, establish that, under the applicable legal standards set forth below in Section V, Defendants' Motion should be denied and the case should proceed to trial on the merits.

1.    Michael Pace, inventor of the 223 Patent, previously invented an

5

electronic game called Tic-Tac-Fruit ("TTF"). This game is described in the specification of the 223 Patent. (223 Patent, at 4:3-35). In short, TTF has a 3x3 field filled with apparently random symbols selected from a set of 9 possible symbols; no winning line of 3 in a row of one symbol is shown; but at least one winning line is possible if the player places a "wild symbol" on the proper location to replace an existing symbol; the player initiates the game through a wager or the like; the field is shown; and the player is given a short period of time to place the wild symbol; and any winning amounts are then calculated based on the placement of the "wild symbol." *Id.*

2.      POM distributed its TTF game in Ohio. In 2005, POM was informed of questions regarding whether TTF met Ohio requirements that TTF be a game of skill. (POM's CSOF, ¶ 9).

3.      Mr. Pace then began the process of reprogramming TTF such that it would meet the Ohio requirements. (*Id.*, ¶ 10).

4.      This work led to the filing of the application that led to the issuance of the 223 Patent. Claim 44 is representative (emphasis added):

[44P]      An electronic gaming system comprising:

[44.1]      an electronic game terminal including a touch screen display;

[44.2]      a **game processor** for generating an interactive electronic game on the game terminal, the **game processor configured for**:

6

**[44.3]**      constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

**[44.4]**      determining at least one winning combination for each play of the game;

**[44.5]**      **testing the game field prior to displaying the game to the player** to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

**[44.6]**      **automatically displaying an actual game to be played** on the touch screen game display to a player **prior to initiating activation of game play**;

**[44.7]**      determining if the player has decided to play the displayed game; and

**[44.8]**      displaying an outcome resulting from play of the displayed game.

5.      Before the invention, there were no electronic games in which the player could preview the outcome of the game before committing to playing that game. (POM's CSOF, ¶ 11).

6.      Claim 44 is not limited to TTF or any particular type of game. (*See* 223 Patent, cl. 44).

7.      As configured, the game processor of Claim 44 is specially configured to perform a number of steps that take place prior to the initiation of the game including the "testing" step **[44.5]**, which takes place immediately before the

7

"automatically displaying" step, which takes place before "initiation activation of game play" **[44.6]**. (*Id.*; *see* POM's CSOF, ¶ 12).

8.      The "testing" and "automatically displaying" steps do not relate to the rules of how the player may play the game once initiated (*e.g.*, the rules in the prior art TTF such as when and where the player can place the "wild symbol" in TTF). (POM's CSOF, ¶ 13).

9.      The "testing" step is performed by the game processor of Claim 44, and is not visible to the player. (*Id.*, ¶ 14).

10.      As articulated in Claim 44, the "automatically displaying" limitation was counter-intuitive (*e.g.*, showing a player the game to be played, and thus permitting the player to determine how much he or she could win, before placing a wager). (*Id.*, ¶ 15).

11.      As described in Claim 44, the Parties' experts agree that a game processor specially configured to perform the "testing" limitation and the "automatically displaying" limitation was not conventional, well-understood or routine at the time of the invention. (*Id.*, ¶¶ 1, 4).

**B.      Response to Defendants' "Statement of Undisputed Material Facts".**

POM responds to Defendants' "Statement of Undisputed Material Facts" (Brief, at 3-5) as follows:

1.      Defendants' argument that the 223 Patent arose in response to a legal

issue is true but immaterial. (*Id.*, at 3). Defendants have cited <u>no</u> cases to support the proposition that inventions stemming from the consideration of legal issues are not entitled to the same level of patent protection as inventions arising out of other problems such as technological problems. Common experience shows why this is the case. For example, numerous developments in auto safety, such as vehicle bumpers, have arisen from safety regulations. (POM's CSOF, ¶ 17).

2.      Defendants state that "Plaintiffs have conceded that all of these game rules but the 'preview' step existed in the prior art." (Brief, at 4). However, POM has never conceded that all of the elements of the claims are "game rules." POM also has been clear that the "testing" in the prior art TTF was not immediately before a "preview" function that was prior to initiation of game play. (POM's CSOF, ¶ 13).

3.      Finally, Defendants contend that "[t]he claims do not specify that the game processor or program instructions are made up of any particular or special components or structure, nor did the Court construe those terms to have any." (Brief, at 4). This is untrue because it utterly ignores the special configuration of the game processor described in Claim 44. The fact that a game processor <u>prior</u> to the specific configuration described in Claim 44 may be generic hardware misses the point. (*See* POM's CSOF, ¶¶ 6, 15). Claim 44, read in its entirety, is not describing a generic processor – it is describing a specially configured game processor that was not previously known, much less conventional. *Id.*

9

## IV.   STATEMENT OF QUESTIONS INVOLVED

Whether, under *Alice* Step One, Claim 44 is directed to a patent eligible game processor, and whether, under *Alice* Step Two, the specific limitations of the claims of the 223 Patent, including a game processor configured to perform the "testing" and "automatically displaying" limitations prior to the initiation of game play, transform the abstract idea of "rules for playing a game" into patentable subject matter.  This includes, at a minimum, whether there is a genuine issue of material fact whether a game processor specially configured to perform such "testing" and "automatically displaying" was not conventional or well-understood at the time of invention.

## V.   LEGAL STANDARDS AND PRINCIPLES

This Court has summarized the summary judgment standards in *Geter v. Dauphin Cty. Prison Authorities*, 3:18-CV-1579, 2021 WL 4502258, at \*2-3 (M.D. Pa. Sept. 30, 2021). POM incorporates that discussion herein by reference.

This Court summarized the standards relating to patent eligibility and the *Alice* two step test in its April 1, 2020 ruling on Defendants' Motion to Dismiss (Dkt. 61, at 7-9). POM incorporates that discussion herein by reference. Further, POM notes that Defendants have the burden to prove patent ineligibility by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368.

Particularly important in the context of Defendants' Motion is the cautionary

10

note in *Alice* that an invention is <u>not</u> rendered ineligible simply because it may involve an abstract idea:

> At the same time, we tread carefully in construing this exclusionary principle lest it swallow all of patent law. *Mayo,* 566 U.S., at ——, 132 S.Ct., at 1293–1294.  At some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.,* at ——, 132 S.Ct., at 1293. <u>Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept</u>. See *Diamond v. Diehr,* 450 U.S. 175, 187, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981).

573 U.S. at 217 (emphasis added).

Gaming related patents may meet the patent eligibility requirements. In *In re Smith*, a case cited by Defendants and credited by this Court in its ruling on the motion to dismiss (Dkt. 61, at 15), the Federal Circuit Court of Appeals stated that "[a]bstract ideas, including a set of rules for a game, may be patent-eligible if they contain an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent eligible application." 815 F.3d at 819 (quoting *Alice*, 573 U.S. at 221). Even "claims directed to conducting a game using a new or original deck of cards potentially" could survive step two of *Alice*. *Id*.[1]; *see also GREE, Inc. v. Supercell Oy*, 2:19-CV-200, 2021 WL 1917131, at *12 (E.D. Tex. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 1702424 (E.D. Tex. Apr. 29, 2021) (denying

---

[1] In *In re Smith*, the Court found the invention not patent eligible because the Court found that the shuffling and dealing of a conventional deck of cards were "purely conventional", facts different than those presented to the Court here. 815 F.3d at 819.

11

summary judgment regarding an electronic gaming patent where the claims taken as a whole went beyond protection of an abstract idea).

The cornerstone of the *Alice* Step Two inquiry is whether the allegedly transformative limitation(s) was well-understood, routine and conventional. This is a question of fact. *BSG Tech.*, 899 F.3d at 1290. In *BSG Tech*, the Federal Circuit stated the general rule that "whether a claim limitation or combination of limitations is well-understood, routine and conventional is a factual question. . . . [A] genuine dispute over that issue will preclude summary judgment[.]" *Id.*[2] (citing *Berkheimer*, 881 F.3d at 1368); *see also United Servs. Auto Ass'n v. Wells Fargo Bank*, N.A., 414 F. Supp. 3d 947, 960 (E.D. Tex. 2019) (denying a motion for summary judgment because there was an issue of fact regarding "whether the ordered combination of elements were well-understood, routine, and conventional at the time of patenting[]"); *AngioDynamics*, 2018 WL 3130622, at *10 (holding that a fact issue on Step Two precluded summary judgment).

Expert testimony may create an issue of fact regarding whether a transformative limitation is well-known, routine and conventional. *See, e.g., Vaporstream, Inc. v. Snap Inc.*, 2:17-CV-00220, 2018 WL 1116530, at *6-7 (C.D. Cal. Feb. 27, 2018) (citing Federal Circuit opinions). The *Vaporstream* Court denied

---

[2] The Federal Circuit in *BSG Tech.* ultimately affirmed the grant of summary judgment because the "inventive concept" itself was just an abstract idea, which is not the case here. 899 F.3d at 1290.

12

a summary judgment motion directed to Step Two in part based on expert testimony, stating in pertinent part:

> Accordingly, summary judgment on this issue is inappropriate. *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to **conflicting expert reports**, summary judgment is usually inappropriate."); *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1362 (Fed. Cir. 2002) (finding summary judgment inappropriate because "the **conflicting allegations of the experts** here leave unresolved factual disputes").

*Id*. (emphasis added); *see also Maxell, Ltd. v. Apple Inc.*, 5:19-CV-00036, 2020 WL 8269548, at *9 (E.D. Tex. Nov. 11, 2020) (denying summary judgment as to Step Two based on experts' dispute as to whether patents provided an inventive concept).[3]

## VI.    ARGUMENT

As described in Claim 44, a game processor configured to perform the "testing" and "automatically displaying" limitations is not merely the recitation of abstract "rules for playing a game" under *Alice* Step One.   Furthermore, these limitations transform the claims into patent eligible subject matter under *Alice* Step Two. As to *Alice* Step Two: (1) these limitations do not themselves constitute abstract ideas and are not simply "rules for playing a game"; (2) the game processor configured for "automatically displaying", by Defendants' own expert's admission,

_____

[3] Defendants' cases purporting to support a contrary rule are plainly distinguishable. *See infra*, Section VI.B.3.

13

was <u>not</u> well-known, routine and conventional; (3) it does not matter that the game processor in question could be generic, off-the-shelf hardware <u>prior</u> to the configuration described in Claim 44; and (4) Defendants' case law fails to support a contrary conclusion.

A.    *Alice* **Step One: The "Testing" and "Automatically Displaying" Limitations Are Not Abstract Ideas and Are Not Simply "Rules for Playing a Game".**

POM respectfully disagrees with the Court's prior conclusion on *Alice* Step One, reached at the motion to dismiss phase. (Dkt. 61). One of Defendants' key Step One arguments at the time was that the steps of Claim 44 of the 223 Patent could be completed by two people playing a card game. (*See* Dkt. 61, at 11).  For the reasons set forth in POM's opposition to Defendants' motion to dismiss [*see* Dkts. 37, 58], POM submits that Claim 44's specially configured game processor is not directed to a patent-ineligible concept.

POM's position is strengthened by claim construction. Specifically, as discussed below, Defendants' claim construction of "automatically" in the "automatically displaying" limitation, developed over a year after the Court's ruling on the Motion to Dismiss, disproves the *Alice* Step One analysis.

When determining whether the limitations in question themselves are simply abstract ideas relating to the rules of a game to be played, as Defendants contend, it is important to analyze the entirety of the limitations in the context of the claim as a

14

whole. *See Bascom*, 827 F.3d at 1349 ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*). While using the short form references to the "testing" and "automatically displaying" limitations sometimes is convenient, such use may inadvertently promote the sort of superficial analysis the Supreme Court cautioned against in *Alice* – most, if not all, claims can be viewed as abstract at some level. *See supra*.

The "testing" limitation specifically states in full the following: **[44.5]** "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field." The limitation thus tells us that the game processor's testing must occur prior to the display of the game to the player. And the limitation conveys that the goal is to make sure that the player cannot obtain a result more valuable than intended by the game operator. This is specific and in no way abstract. It also has nothing to do with "rules for playing a game" (*e.g.*, placement of wild symbol in prior art TTF) – indeed, the game has not even begun and the player has not even seen the actual game to be played at the time of the "testing."

The "automatically displaying" limitation, which appears immediately after the "testing" limitation and before initiation of game play, provides in full: **[44.6]**

15

"automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play." "Automatically displaying an actual game to be played" "prior to activation of game play" is specific. And, while Defendants contend that humans can perform claim 44 without the need of a computer processor (*i.e.*, it is abstract) (*see* Dkt. 61, at 11 (reciting Defendants' argument)), that plainly is not the case.

Indeed, over a year after the Court's ruling on the Motion to Dismiss, Defendants' expert Mr. Friedman offered a construction of "automatically" that negates any human involvement (*e.g.,* punching of a button) <u>during any stage</u> of the games encompassed by the claims of the 223 Patent. (*See* POM's CSOF, ¶ 16). Defendants' position on this point of construction may be wrong, but it is telling that Defendants would argue simultaneously that Claim 44 negates any human involvement while also arguing that any human can perform the steps of Claim 44. A plain reading of Claim 44 shows that "automatically" is in relationship to the immediately prior "testing" limitation. Put another way, after successful testing, the game processor "automatically" displays the game to be played. Thus, the "automatically displaying" limitation is not human activity – the claimed subject matter is not abstract.

The "automatically displaying" limitation also does not relate to "rules for playing a game." The limitation itself specifies that the "automatically display" step

16

takes place prior to the initiation of the game play. Actions taken by the processor before the initiation of game play are not and cannot be "rules for playing a game."

B.    **Alice Step Two: The "Testing" and "Automatically Displaying" Limitations Transform the 223 Patent into Patent Eligible Subject Matter.**

1.    *The "Automatically Displaying" Limitation Was Not Well-Known, Routine and Conventional.*

Both invalidity experts agree that in the context of configuring the game processor, the "automatically displaying" limitation was <u>not</u> well-known, routine and conventional at the time of the invention of the 223 Patent. POM's expert, Dr. Kevin Harrigan, a computer scientist with expertise in electronic gaming at the time of the invention, explained in his report how this limitation was counter-intuitive and <u>not</u> well-known, routine and conventional. (POM's CSOF, ¶¶ 5-6, 15; *see generally* Plaintiffs' Response in Opposition to Defendants' Motion to Exclude Opinions and Testimony of Kevin Harrigan, Ph.D., filed contemporaneously with this brief). Defendants' expert, Mr. Friedman, admitted this same point at his deposition:

Q.    Well, okay, the -- let's turn to Exhibit Number 1 and to Claim 44, which is Column 16. And it says one of the limitations is "automatically displaying an actual game to be played on the touchscreen game display to a player prior to initiating activation of gameplay."
**Was that limitation as a whole, in your view, conventional, well known, and routine in June of 2006?**

. . .

A.    **I think as a whole, the answer is probably no.**

17

(POM's CSOF, ¶ 1 (emphasis added)).  This evidence alone compels the denial of Defendants' Motion under the above governing authority. *See, e.g.*, *AngioDynamics*, 2018 WL 3130622, at \*10 (stating that the "Federal Circuit has held that the *Alice* Step 2 inquiry into whether claim limitations were well-known, routine, and conventional presents a question of fact[,]" and holding that a fact issue precluded summary judgment).

Defendants try to avoid these unhelpful facts by citing *BSG Tech* for the proposition that "even an unconventional abstract idea is still an unpatentable abstract idea." (Brief, at 10). However, this point fails because, as addressed above, the two limitations at issue here in the context of configuring a game processor, unlike the limitations in *BSG Tech*, simply are not abstract ideas.

2.    *The Game Processor of the Claims of the 223 Patent Is Specially Configured to Perform the Inventive Limitations of the Claims – It Does not Matter that the Processor, before Configuration, Could be Generic, Off-the-Shelf Hardware*

Defendants argue that "[g]enerically claimed computer components do not constitute an inventive concept." (Brief, at 11-15). POM has never argued such – this is a non-issue. As set forth in the Amended Complaint and quoted by this Court, POM's foundational point is that the electronic game processor technology at issue is "a game processor that is specifically configured for testing the game elements and automatically previewing the feature of a game to be played prior to initiating

18

activation of game play." (Dkt. 61, at 3-4 (quoting Amended Complaint)). Mr. Pace's processor, after configuration, is not generic or off-the-shelf. Elsewhere, Defendants assert that "[n]either discovery, attorney argument, nor expert opinion can alter what is in the claims." (Brief, at 8). Defendants ignore the language of Claim 44 clarifying that the claim is not directed to a generic processor, but to one specially configured in a way that was not well understood, routine or conventional at the time of invention.

Moreover, Defendants' expert Mr. Friedman made several telling admissions at deposition that are pertinent to this point. Mr. Friedman admitted that new programming on an existent system could constitute a technological improvement – the improvement need not be in the hardware *per se*. (POM's CSOF, ¶ 2). Mr. Friedman also admitted that a new algorithm applied to generic hardware could constitute non-abstract technological matter worthy of invention. (*Id.*, ¶ 3).

POM counsel stated at oral argument his understanding of an embodiment of Claim 44 where the computer code used to perform the steps of the claims of the 223 Patent is embedded firmware in the processor. In the actual TTF game that Michael Pace invented as the commercial embodiment of the 223 Patent, the computer code for configuring the processor resided as part of a program stored in an EPROM memory device. Either way, the instructions cannot configure the computer unless they are imported to the processor and then executed (and operated

19

upon) by the processor. Both embodiments are covered by Claim 44. In either case, the person of ordinary skill in the art would understand that the processor is "configured" to perform the recited steps set forth in the claims. POM's expert stated his understanding of POM's view in his report[4] and offered his opinions with this in mind. Defendants' expert Mr. Friedman had no response to this point in his Reply Report.

3.      *Defendant's Case Law Does Not Support the Grant of Summary Judgment Under the Facts of this Case.*

POM has addressed a number of Defendants' key cases above. Without trying to respond to each case or restating the above discussion, POM briefly points out the following:

Defendants argue that "[n]umerous district courts have invalidated patents directed to abstract gaming ideas that lacked a transformative inventive concept." (Brief, at 5). Each cited case is distinguishable. For instance, *Planet Bingo*, an unpublished decision, involved claims directed to managing the play of bingo – "rules for playing a game," unlike the limitations that POM addresses herein. In any event, these cases do not alter the holding of *In re Smith* that a set of rules for a game, even one involving abstract ideas, may be patent eligible. *See supra.*

---

[4] "In Paragraph 166, the Friedman Report disputes Savvy Dog's reference to firmware. There are different definitions of firmware. But I understand this reference by Savvy Dog is to computer code in binary form located in EPROM." (POM's CSOF, ¶ 7).

In *Mortgage Grader*, unlike here, the expert testimony did not even address the specific claim language at issue. And in *CareDx*, extrinsic evidence was intended to alter the claim language.  Here, in contrast, the expert testimony is based on and faithful to the specific limitations at issue.  Dr. Harrigan is not altering the claim language, but merely explaining that the specially configured game processor of Claim 44 was not well-understood, routine or conventional at the time of the invention.  (POM's CSOF, ¶¶ 4, 6).

Finally, Defendants cite cases for the proposition that "[t]hat they may be 'new' abstract rules does not matter." (Brief, at 16-17). As noted above in Section VI.A., the limitations at issue are not abstract.  Claim 44 does not claim a generic processor, nor does it claim abstract rules for playing a game.  Instead, it describes a specially configured game processor that was not routine, conventional or well-understood in the art at the time of invention.  *See, e.g.*, *Vaporstream,* 2018 WL 1116530, at *6-7 (denying summary judgment based on the analysis of Step Two).

## VII.  CONCLUSION

For the above reasons, POM respectfully requests that the Court deny Defendants' Motion and proceed to trial.

February 28, 2022               Respectfully submitted,

                                        */s/ Steven G. Hill*
                                        Steven G. Hill, GA Bar No. 354658
                                        *Admitted pro hac vice*
                                        John L. North, GA Bar No. 545580

*Admitted pro hac vice*
Martha L. Decker, GA Bar No. 420867
*Admitted pro hac vice*
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Fax: (770) 953-1358
Email:  sgh@hkw-law.com
Email:  jln@hkw-law.com
Email:  md@hkw-law.com

- and -

Matthew H. Haverstick (PA ID No. 85072)
Eric J. Schreiner (PA ID No. 76721)
Paul G. Gagne (PA ID No. 42009)
Shohin H. Vance (PA ID No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-2000
Fax: (215) 568-0140
Email:  mhaverstick@kleinbard.com
Email:  eschreiner@kleinbard.com
Email:  pgagne@kleinbard.com
Email:  svance@kleinbard.com

***Counsel for Plaintiffs Savvy Dog Systems, LLC
and POM of Pennsylvania, LLC***

22

## **CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Rule 7.8(b)(2), I hereby certify that although the instant Brief exceeds 15 pages, it complies with the word count limitation set forth in Local Rule 7.8(b)(2). This Brief contains 4,938 total words. This word count was performed using the word count feature of Microsoft Word 2016.

*/s/Steven G. Hill*
Steven G. Hill

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

23

## CERTIFICATE OF SERVICE

I hereby certify that the PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101 was filed on this 28th day of February, 2022 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

*/s/Steven G. Hill*
Steven G. Hill

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

24