IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC a Wyoming limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>    Defendants. | Civil Action No. 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson |

**PLAINTIFFS' RESPONSE AND COUNTERSTATEMENT TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "POM") submit this Statement of Material Facts in opposition to the Statement of Material Facts for Which There is No Issue to Be Tried (Dkt. 161) filed by Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") in support of their motion for summary judgment (Dkt. 155).

POM identifies those statements for which POM contends, at this time and solely in relation to opposing Defendants' arguments in their summary judgment motion, that "there is a genuine issue to be tried." L.R. 56.1.  POM's position is

based on the limited arguments and evidence advanced by Defendants in support of their motion for summary judgment. POM reserves the right to supplement this statement.

I. **Response to Defendants' Statement of Facts**

1. Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs") have admitted that a report by Nick Farley & Associates, dated March 7, 2005 and produced at POM000450-POM000469 is prior art to U.S. Patent No. 7,736,223 (the "'223 Patent"). *See* Ex. A, Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Admissions Directed to Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC at Response to RFA No. 1; *see also* Ex. B (POM000450-POM000469).

**Plaintiffs' Response:** No genuine issue of material fact.

2. The March 7, 2005 Nick Farley & Associates Report describes that the prior art Tic-Tac-Fruit game as having a "video screen [that] presents nine symbols in a 3x3 array to the player, similar to a t[i]c-tac-toe arrangement." Ex. B at POM000451.

**Plaintiffs' Response:** No genuine issue of material fact.

3. Plaintiffs' expert, Kevin Harrigan, Ph.D., testified that the prior art Tic-Tac-Fruit game disclosed the testing limitation of the '223 Patent ("testing the game field prior to displaying the game to the player to ensure that a winning combination

2

more valuable than the determined winning combination is not generated inadvertently in completing the field"). *See* Ex. C, Excerpts of Tr. of Jan. 12, 2022 Dep. of K. Harrigan, at 111:23-113:8.

**Plaintiffs' Response:** POM disputes this statement. Dr. Harrigan testified that the prior art Tic-Tac-Fruit game disclosed testing, but did <u>not</u> disclose the testing limitation (Element 44.5) in the order disclosed in the 223 Patent, or in conjunction with the "automatically displaying" element. (**Exhibit A**, Excerpts of Tr. of Jan. 12, 2022 Dep. of Kevin Harrigan, Ph.D. ("Harrigan Dep."), at 112:5-113:8). This is consistent with Dr. Harrigan's Amended Responsive Expert Report, opining that:

> Previous versions of TTF do <u>not</u> disclose this element when read in conjunction with the Automatic Display Element, because a POSITA would understand that prior art TTF did not disclose or perform testing, and automatically displaying the constructed game field *before* initiating activation of game play, which is required by element 44.5 and 44.6. The Friedman Report does not dispute this. (Friedman Report, ¶ 192 ("…testing, and displaying the game field <u>before</u> 'initiating activation of game play[.]'")). To the contrary, as shown in this report, a POSITA would understand that any testing in the prior art would only take place after initiation of game play, and therefore, that the prior art TTF computer code was incompatible with the ability to generate and test a game field <u>prior</u> to initiating activation of game play.

(**Exhibit B**, December 16, 2021 Harrigan Amended Responsive Expert Report ("Harrigan Report"), ¶ 334 (emphasis in original)).

4.     Dr. Harrigan testified that the "processor" claimed in the '223 Patent is only "specially configured" insofar as it is carrying out the steps of the named inventor of the '223 Patent Michael Pace's game. *Id.* at 130:11-21.

3

**Plaintiffs' Response:** POM disputes this statement. Dr. Harrigan testified that the processor claimed in the 223 Patent is specially configured to run the Tic-Tac-Fruit game. (Harrigan Dep., at 129:21-131:7). This is consistent with Dr. Harrigan's report opining that "elements [44.2], [44.5] and [44.6] [of Claim 44 of the 223 Patent] describe a specially configured electronic gaming processor – one that is configured to test a game field and automatically display a game field to be played to a player prior to the initiation of game play, before the player makes the decision to play the game." (Harrigan Report, ¶ 232; *see also id.*, ¶ 237(a) ("But the key point is that the game processor is specially configured to carry out the testing of the invention prior to the player deciding to play the game, making a wager and beginning the game play, not simply before the display of the game after the player has begun game play.")).

5. Dr. Harrigan testified that Mr. Pace's invention of the Tic-Tac-Fruit game could be implemented using a "conventional, off-the-shelf CPU or microprocessor." *Id.* at 132:7-17; *see id.* at 131:8-18.

**Plaintiffs' Response:** No genuine issue of material fact, but POM further refers the Court to POM's Response to SOF ¶ 4, *supra*.

6.   Dr. Harrigan testified that the only barrier to a person of ordinary skill in the art implementing the alleged invention supposedly claimed in the '223 Patent was the "idea of an automatic preview feature." *Id.* at 134:21-135:23.

**Plaintiffs' Response:** POM disputes this statement. During deposition, counsel asked Dr. Harrigan: "So the idea of an automatic preview feature would be, in your opinion, the only barrier to a POSITA creating and implementing the alleged invention in the early 2006 time frame?" (Harrigan Dep., at 135:10-13). In response, Dr. Harrigan testified that if a person of ordinary skill in the art "had all of the ideas of the '223 patent, then they could implement those ideas, yes." (*Id.* at 135:21-23). Thus, Dr. Harrigan explicitly stated that a person of ordinary skill in the art would need "all of the ideas of the '223 patent" before they could implement the ideas.

7. Dr. Harrigan testified that the '223 Patent elevated the level of skill and eliminated chance in electronic gaming. *Id.* at 149:12-15, 21-25; 150:1-3, 5-6, 13-25.

**Plaintiffs' Response:** POM disputes this statement. Dr. Harrigan testified that the claims of the 223 Patent accomplished the goals of elevating the level of skill and <u>reducing</u> the level of chance in electronic gaming. (Harrigan Dep., at 149:12-15, 21-25; 150:1-3, 5-6, 13-25). He did not testify that the claims of the 223 Patent "eliminated chance in electronic gaming."

8. Michael Pace—the named inventor of the '223 Patent—testified that the "preview" feature was created to work around legal obstacles. *See* Ex. D, Excerpts of Tr. of Aug. 4, 2021 Dep. of M. Pace at 25:9-26:17; 88:18-90:13.

**Plaintiffs' Response:** No genuine issue of material fact.

9. Mr. Pace testified that he first made the Tic-Tac-Fruit game of the type described in the '223 Patent using then commercially available game boards (Pot-of-Gold and Skidmore boards) with commercially-available memory devices (EPROMs and CompactFlash cards) and conventional processors (the Texas Instruments 34010 and AMD Geode). *See id.* at 47:22-48:21, 49:25-50:23, 55:7-56:19, 57:5-10, 156:18-20; Ex. E, Cummings Decl., at Ex. B.

**Plaintiffs' Response:** POM disputes that the cited record testimony and evidence supports this statement. Mr. Pace did not testify in the cited passages that any game board or memory device was "commercially-available". Further, Mr. Pace did not testify in the cited passages that any processor was "conventional", nor did the Cummings Declaration refer to either the Texas Instruments 34010 or AMD Geode processor as "conventional".

10. Mr. Pace testified that an embodiment of his purported invention could have been implemented on a game board existing in the 1990s. Ex. D at 200:5-202:15.

**Plaintiffs' Response:** No genuine issue of material fact.

11. Mr. Pace testified that the testing limitation of the '223 Patent was performed by prior art Tic-Tac-Fruit electronic games. *Id.* at 68:17-71:18.

**Plaintiffs' Response:** POM disputes this statement. *See* Pace Dep., Dkt. 161-4, at 68:17-71:18.

12. In response to Interrogatory No. 11 served in the instant action, Plaintiffs admitted that all limitations in the independent claims of the '223 Patent were contained in the prior art except for the testing limitation and the limitation of "automatically displaying an actual game to be played . . . prior to initiating activation of game play." *See* Ex. F, Plaintiffs' Sixth Supplemental Responses and Objections to Defendants' Second Set of Interrogatories, at Second Supplemental Response to Rog. No. 11.

**Plaintiffs' Response:** POM disputes this statement. In support of Statement of Fact No. 12, Defendants refer the Court to POM's Second Supplemental Response to Rog. No. 11. However, POM supplemented this response with POM's Third Supplemental Response to Rog. No. 11, on August 13, 2021. (*See* Dkt. 161-6 (Ex. F to Defendants' Statement of Material Facts, POM's Sixth Supplemental Responses and Objections to Defendants' Second Set of Interrogatories, at Third Supplemental Response to Rog. No. 11, at p. 64)). POM's Third Supplemental Response to Rog. No. 11 referred Defendants to POM's First Supplemental Response to Interrogatory No. 14, including Exhibit A to such response. *Id.*

Exhibit A to POM's First Supplemental Response to Interrogatory No. 14 identifies differences between the claims of the 223 Patent and any version of Tic-Tac-Fruit that existed prior to the filing date of the 223 Patent. (*See* **Exhibit C**, POM's First Supplemental Responses and Objections to Defendants' Fourth Set of

7

Interrogatories, August 13, 2021, at Exhibit A). These differences include, but are not limited to, the testing and automatically displaying elements. (*Id.* at Ex. A, at 5-6 (elements 44.5 and 44.6)).

Furthermore, Interrogatory No. 11 was directed solely to differences between each asserted claim of the 223 Patent and each version of Tic-Tac-Fruit that existed prior to the filing date of the 223 Patent – not, more generally, differences between the 223 Patent and "the prior art".

13. In response to Interrogatory No. 8 served in the instant action, Plaintiffs provided all facts supporting their contention that any claim, element, or combination of elements in the '223 Patent is directed to a non-abstract idea and/or is directed to an inventive concept(s) under 35 U.S.C. § 101 and *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). *See* Ex. F at Response to Rog. No. 8.

**Plaintiffs' Response:** POM disputes this fact. POM objected to Interrogatory No. 8: (a) on the grounds that it was unduly burdensome as unduly burdensome, to the extent it sought discovery of "all facts" supporting POM's contention that the 223 Patent is directed to a non-abstract idea and is direction to an inventive concept; and (b) subject to the third-party and expert discovery regarding what would have been well-understood, routine or conventional as of the priority date of the 223 Patent. (*See* Dkt. 161-6 (Ex. F to Defendants' Statement of Material Facts, POM's

Sixth Supplemental Responses and Objections to Defendants' Second Set of Interrogatories), at 35). Further, the report of POM's retained expert, Dr. Harrigan, consists of 356 paragraphs and contains additional facts supporting POM's contention that any claim, element, or combination of elements in the 223 Patent is directed to a non-abstract idea and/or is directed to an inventive concept(s) under 35 U.S.C. § 101 and *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). (*See generally* Ex. B).

14. In response to Interrogatory No. 8 served in the instant action, Plaintiffs stated that the '223 Patent claims contain an inventive concept because they recite "new" electronic gaming systems, game processors, etc. because two of the claimed abstract game steps—the "testing . . ." and "automatically displaying . . ." steps—were not carried out in prior art games. *See id.*

**Plaintiffs' Response:** POM disputes this statement. POM's Fourth Supplemental Response to Interrogatory No. 8 is set forth at pages 35-49 to POM's Sixth Supplemental Responses and Objections to Defendants' Second Set of Interrogatories. (*See* Dkt. 161-6 (Ex. F)). In the response, POM stated that the elements of "testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field, and automatically displaying an actual game to be played on the touch screen display to

9

a player prior to initiating activation of game play —individually and as an ordered combination— recite an inventive concept and were not generic, well-understood, conventional or routine in the field at the time of invention." (*Id.* at 46).

15. A document produced in discovery in the instant action dated August 14, 2013 and entitled "Paceomatic's Patent Portfolio" states "Preview feature used to remove chance from a skill game since a player may look at the next puzzle before committing to play of the game." Ex. G at POM_ESI_00464.

**Plaintiffs' Response:** No genuine issue of material fact.

## II. POM's Counterstatement of Material Facts

POM hereby submits the following counterstatement of materials facts ("CSOF") in support of their Response in Opposition to Defendants' Motion for Summary Judgment for Patent Invalidity Under 35 U.S.C. § 101.

1. Defendants' expert, Stacy Friedman, testified at deposition that the "automatically displaying" limitation set forth in Claim 44 of the 223 Patent was not "conventional, well known, and routine" in June 2006, testifying:

> Q.   Well, okay, the -- let's turn to Exhibit Number 1 and to Claim 44 [of the 223 Patent], which is Column 16. And it says one of the limitations is "automatically displaying an actual game to be played on the touchscreen game display to a player prior to initiating activation of gameplay."
> **Was that limitation as a whole, in your view, conventional, well known, and routine in June of 2006?**
>
>    . . .

    A.    **I think as a whole, the answer is probably no.**

(*See* **Exhibit D**, Excerpts of Tr. of January 7, 2022 deposition of Stacy Friedman ("Friedman Dep."), at 200:4-14).

    2.    During his deposition, Mr. Friedman also admitted that new programming on an existent system could constitute a technological improvement, such that the improvement need not be in the hardware *per se*:

> Q.    In your view, could new programming on an existent system constitute a technological improvement?
>
> . . .
>
> A.    In -- in certain cases it could.
>
> Q.    And so you are not saying that the '223 necessarily had to include a hardware improvement in order to have patentable subject matter?
>
> . . .
>
> A.    No, I'm not saying that.

(*Id.*, at 22:1-10).

    3.    Mr. Friedman also admitted at deposition that a new algorithm applied to generic hardware could constitute non-abstract technological matter worthy of invention. (*Id.*, at 33:6-35:5).

    4.    Consistent with Mr. Friedman's deposition admission, *see* CSOF ¶ 1, *supra*, POM's expert, Dr. Kevin Harrigan, Ph.D., opined in his report that as described in Claim 44, a game processor specially configured to perform the "testing" limitation and the "automatically displaying" limitation was not

conventional, well-understood or routine at the time of the invention. (Harrigan Report, ¶¶ 232-234, 237-238).

5.     Dr. Harrigan is a computer scientist with expertise in electronic gaming at the time of the 223 Patent invention. (*Id.*, ¶¶ 6-19). He is a person of ordinary skill in the art for purposes of analyzing the patentability of the 223 Patent. (*See id.*, ¶¶ 33-34).

6.     In his responsive expert report, Dr. Harrigan did not opine that hardware is the inventive concept that makes the claims of the 223 Patent eligible for patentability. Instead, Dr. Harrigan opined that it is the specially configured game processor that is neither conventional nor generic. (*See id.*, ¶¶ 223, 232-234, 236-238).

7.     Dr. Harrigan opined that there are different definitions of firmware, and his understanding is that POM's position is that the firmware referenced in the 223 Patent game processor is computer code in binary form located in EPROM:

> In Paragraph 166, the Friedman Report disputes Savvy Dog's reference to firmware. There are different definitions of firmware. But I understand this reference by Savvy Dog is to computer code in binary form located in EPROM.
> *See* https://courses.lumenlearning.com/zeliite115/chapter/reading-firmware/."

(*Id.*, ¶ 237(f)).

8.     Dr. Harrigan opined in his report that a person of ordinary skill in the art ("POSITA") would understand Claim 44 to be directed to a specially configured

12

game processor, one that was not well understood prior to the 223 Patent. (*Id.*, ¶¶ 232-234, 237-238).

9. In 2005, the State of Ohio challenged the legality of the version of Tic-Tac-Fruit ("TTF") then in operation, resulting in an October 2005 hearing before the Ohio Liquor Control Commission. (*See generally* **Exhibit E**, Transcript for proceedings before the Liquor Control Commission of the State of Ohio, *In re: FOE Aerie 2171*, Case No. 1342-05, October 19, 2005).

10. Mr. Pace subsequently began the process of reprogramming TTF to implement a preview feature and related pre-fetch feature, such that it would meet the Ohio requirements. (*See* **Exhibit F**, Excerpts of Tr. of August 4, 2021 Dep. of Michael Pace, at 40:25-41:3, 68:10-15; *see also* Harrigan Report, ¶ 42).

11. Dr. Harrigan opined in his report that, to his knowledge, prior to May 2, 2006, there were no electronic games in which the player could preview the outcome of the game before committing to playing that game. (Harrigan Report, ¶ 40).

12. Dr. Harrigan opined in his report that the game processor of Claim 44, as configured, performs a number of steps that take place prior to the initiation of the game including the "testing" step **[44.5]**, which takes place immediately before the "automatically displaying" step, which takes place before "initiation activation of game play" **[44.6]**. (Harrigan Report, ¶¶ 231-232).

13. Dr. Harrigan opined that the "testing" and "automatically displaying" steps, as set forth in Claim 44 of the 223 Patent, do not relate to the rules of how the player may play the game once initiated (*e.g.*, the rules in the prior art TTF such as where the player can place the "wild symbol" in TTF). (*Id.*, ¶¶ 232-233; *see also id.*, ¶ 334):

> Previous versions of TTF do <u>not</u> disclose this element when read in conjunction with the Automatic Display Element, because a POSITA would understand that prior art TTF did not disclose or perform testing, and automatically displaying the constructed game field <u>*before*</u> initiating activation of game play, which is required by element 44.5 and 44.6. The Friedman Report does not dispute this. (Friedman Report, ¶ 192 ("…testing, and displaying the game field <u>before</u> 'initiating activation of game play[.]'")). To the contrary, as shown in this report, a POSITA would understand that any testing in the prior art would only take place after initiation of game play, and therefore, that the prior art TTF computer code was incompatible with the ability to generate and test a game field <u>prior</u> to initiating activation of game play.

(Emphasis in original).

14. The "testing" step is performed by the game processor of Claim 44, and is not visible to the player. (*See* Dkt. 111, at 6-7 (Court adopting construction of "prior to displaying" portion of the testing step as "before making visible on the touch screen display")).

15. Dr. Harrigan opined that, as articulated in Claim 44, the "automatically displaying" limitation was counter-intuitive (*e.g.*, showing a player the game to be played, and thus permitting the player to determine how much he or she could win, before placing a wager):

> [F]ar from being conventional or well-understood at the time of invention, configuring an electronic game processor to include the combined Testing/Display Elements would have been counterintuitive to game designers. *See* Section VI(A), *supra*. This specially configured electronic game processor permits the player to see the game board itself before initiating play and allowing the player to decide whether he/she has the skill to win the actual game to be played before he/she commits funds to play the game. Logically, the player would not want to proceed to play a game that he/she lacked the skill to win.

(Harrigan Report, ¶ 234; *see also id.*, ¶ 43).

16. Mr. Friedman testified that a game that requires the press of a button to display a game cannot meet the automatically displaying limitation. (Friedman Dep., at 64:20-66:3).

17. Numerous developments in auto safety, such as vehicle bumper designs, have arisen from safety regulations. (*See, e.g.,* **Exhibit G**, U.S. Patent No. 7,625,022, at 1:25-2:14 (patent for vehicle bumpers citing existing vehicle regulations); **Exhibit H**, U.S. Patent No. 9,376,955, at 1:44-2:47 (patent for optimization of engine combustion, discussing "stringent emissions regulations" in the patent background); **Exhibit I**, U.S. Patent No. 10,287,943, at 1:14-3:20 (patent for duel-fuel and after treatment for heavy-heavy duty diesel, discussing regulations enacted to reduce smog)).

|  |  |
|---|---|
| February 28, 2022 | Respectfully submitted, |
|  | */s/ Steven G. Hill* <br> Steven G. Hill, GA Bar No. 354658 |

*Admitted pro hac vice*
John L. North, GA Bar No. 545580
*Admitted pro hac vice*
Martha L. Decker, GA Bar No. 420867
*Admitted pro hac vice*
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Fax: (770) 953-1358
Email: sgh@hkw-law.com
Email: jln@hkw-law.com
Email: md@hkw-law.com

- and -

Matthew H. Haverstick (PA ID No. 85072)
Eric J. Schreiner (PA ID No. 76721)
Paul G. Gagne (PA ID No. 42009)
Shohin H. Vance (PA ID No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-2000
Fax: (215) 568-0140
Email: mhaverstick@kleinbard.com
Email: eschreiner@kleinbard.com
Email: pgagne@kleinbard.com
Email: svance@kleinbard.com

***Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed on this 28th day of February, 2022 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

*/s/Steven G. Hill*
Steven G. Hill

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*