## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SAVVY DOG SYSTEMS, LLC, a
Wyoming limited liability company, and
POM OF PENNSYLVANIA, LLC a
Wyoming limited liability company,

       Plaintiff,

    v.

PENNSYLVANIA COIN, LLC, a
Pennsylvania limited liability company,
and PA COIN HOLDINGS, LLC, a
Pennsylvania limited liability company,

       Defendants.

Civil Action No. 3:19-cv-01470-JPW

Honorable Jennifer P. Wilson

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF KEVIN HARRIGAN, PH.D.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................ii-iii

I.     Introduction ................................................................................... 1

II.    Counter Statement of Facts ............................................................ 1

III.   Questions Involved ........................................................................ 5

IV.    Argument ....................................................................................... 6

    A. The Applicable Law ................................................................... 6

    B. Using Good Grounds, Dr. Harrigan Rebutted the Friedman Report's Opinion that NudgeMaster Possessed a "View Next Play" Feature in the Prior Art .................................................................................. 9

        1.     Dr. Harrigan's Factual Narrative and Opinions ............................ 9

        2.     Dr. Harrigan is Entitled to Rely on the Lowe Declaration ........... 13

        3.     Dr. Harrigan's Opinions are Not Based Solely on the Lowe Declaration ................................................................................. 14

        4.     Dr. Harrigan May Rebut the Friedman Report Based on Information About the NudgeMaster Source Code, Regardless of Whether He Personally Reviewed the Code ................................ 19

        5.     Dr. Harrigan May Present His Opinion Relating to the Lack of Reliability of the December 14, 2006 Draft Farley Letter .......... 19

    C. Dr. Harrigan Will Refrain from "Credibility Assessment" at Trial ........ 20

# TABLE OF AUTHORITIES

## *Cases*

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
   829 F. Supp. 2d 802 (D. Minn. 2011) ...........................................................7,19

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
   749 F. Supp. 2d 210 (D. Del. 2010) ............................................................... 6

*EMC Corp. v. Pure Storage, Inc.*,
   154 F. Supp. 3d 81 (D. Del. 2016) ...........................................................7, 8, 13

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999) ....................................................................11

*Funderburk v. S.C. Elec. & Gas Co.*,
   395 F. Supp. 3d 695 (D.S.C. 2019) ................................................................ 7

*Genband US LLC v. Metaswitch Networks Corp.*,
   2:14-CV-33, 2016 WL 3475688 (E.D. Tex. Jan. 7, 2016) ................................ 7

*Gonzalez v. Infostream Grp., Inc.*,
   2:14-CV-906, 2016 WL 475172 (E.D. Tex. Feb. 7, 2016) .............................14

*Gorton v. Air & Liquid Systems Corp.*,
   1:17-cv-1110, 2020 WL 4193649 (M.D. Pa. 2020)......................................6,13

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   2:16-CV-00052, 2017 WL 11638982 (E.D. Tex. Sept. 10, 2017) .............. 13-14

*Iconics, Inc. v. Massaro*,
   266 F. Supp. 3d 461 (D. Mass. 2017) .........................................................8, 13

*Kannankeril v. Terminix Intern., Inc.*,
   128 F.3d 802 (3d Cir. 1997), *as amended* (Dec. 12, 1997) .........................6, 14

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)....................................................................................... 6

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
   62 F. Supp. 3d 368 (D. Del. 2014). ................................................................ 7

*Microsoft Corp. v. i4i Limited Partnership*,
   564 U.S. 91 (2010) ........................................................................................11

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33, 47 (S.D.N.Y. 2016) ..............................................................15

*TQP Dev., LLC v. Merrill Lynch & Co.*,
   2:08-CV-471, 2012 WL 3283356 (E.D. Tex. Aug. 10, 2012) .......................... 7

*TransWeb, LLC v. 3M Innovative Properties Co.*,
   16 F. Supp. 3d 385 (D.N.J. 2014), *aff'd*, 812 F.3d 1295 (Fed. Cir. 2016) ........11

*United States v. Mitchell*,
   365 F.3d 215 (3d Cir. 2004) ......................................................................... 7

*Van v. Ford Motor Co.*,
   332 F.R.D. 249 (N.D. Ill. 2019) ....................................................................12

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019) ..............................................................18

## **<u>Statutes</u>**

Fed.R.Evid. 703 ....................................................................................7, 19

Fed.R.Civ.P. 26(a)(2)(B)(i) ................................................................................15

## I.    Introduction

Kevin Harrigan, Ph.D., an expert in computer science and electronic gaming, should be permitted to offer opinions rebutting the opinions of Defendants' expert Stacy Friedman.  Like all experts, Dr. Harrigan is entitled to rely upon declarations (*e.g.*, the November 4, 2021 Declaration of Clinton Lowe, Dkt. 163-2 ("Lowe Declaration")).  Additionally, Defendants' motion overstates the extent to which Dr. Harrigan's opinions are based exclusively upon the Lowe Declaration.  Finally, Defendants overstate the extent to which the facts of the Lowe Declaration exclusively derive from source code review.  Moreover, at trial, Dr. Harrigan will not testify as to any witness' credibility. For these reasons, Defendants' motion should be denied.

## II.    Counter Statement of Facts

The Lowe Declaration is based in part on Mr. Lowe's familiarity with the NudgeMaster source code. (Lowe Dec., ¶¶ 3-4, 6-8).  Mr. Lowe is not a surprise witness.  He was identified during the deposition of Donald Fiechter in August 2021. (*See* **Exhibit A**, Excerpts from Deposition of D. Fiechter, at 76:19-25, 77:17-87:5, 102:2-11, 135:16-21). Defendants identified Mr. Lowe in their September 1, 2021

amended Rule 26 disclosures.  (**Exhibit B**, at 2).[1]  However, Defendants did not ask to depose Mr. Lowe during fact discovery. Rather, Defendants requested that Plaintiffs' corporate representative (Greg Cline) meet with Mr. Lowe to prepare for a second 30(b)(6) deposition limited to questions relating to NudgeMaster, including source code. (*See* **Exhibit D**, August 31, 2021 email from Defendants' counsel requesting that Plaintiff's 30(b)(6) deponent meet with Mr. Lowe to prepare).  The parties extended discovery to permit this deposition and allow Mr. Friedman to inspect NudgeMaster source code.  (Dkts. 151-152).

Through the 30(b)(6) deposition, Defendants obtained information from Mr. Lowe, including information subsequently repeated in the Lowe Declaration.  (*See* **Exhibit E**, September 17, 2021 Excerpts from 30(b)(6) Deposition of Savvy Dog (Greg Cline), Vol. II, at 278:5-22, 286:8-293:15, 294:10-297:1, 297:16-299:21, 304:19-305:12, 306:25-308:4, 316:16-317:3).[2]

To enable the source code inspection, Greg Freemyer and Mr. Lowe created a source code computer for Mr. Friedman's inspection. (Lowe Dec., ¶ 7; **Exhibit F**, Declaration of Greg Freemyer, ¶ 4). Originally, the source code computer included

---

[1] Plaintiffs' initial disclosures incorporated by reference <u>all persons disclosed in Defendants' Rule 26 disclosures</u>. (*See* **Exhibit C**, Plaintiffs' Fifth Supplemental Rule 26 Disclosures, at 6).

[2] Undersigned counsel asked Defendants to identify any statements in the Lowe Declaration which they contend they did not have the opportunity to ask Mr. Cline about in the Rule 30(b)(6) deposition.  Defendants declined to do so.

NudgeMaster versions from NudgeMaster's inception through 2010. (**Exhibit G**, Harrigan Report, ¶ 126 (citing Lowe Dec., ¶¶ 12, 15)). At Defendants' request, the source code on the computer was "rolled back", so that Mr. Friedman would only have access to source code created on or before June 30, 2006. (Freemyer Dec., ¶¶ 5-9). Thus, when Mr. Friedman inspected source code, he could have reviewed, at most, files up through NudgeMaster version 4.2.2.9, the latest source code as of June 30, 2006. (Harrigan Report, ¶ 127 (citing Freemyer Dec., ¶¶ 9, 11)). Mr. Friedman reviewed this prior art source code on September 28, 2021.[3] Then, at Mr. Friedman's request, Plaintiffs produced printed copies of source code. (**Exhibit H**, October 4, 2021 cover letter producing files identified by Mr. Friedman at the September 28 inspection).

Although Mr. Friedman did not review any NudgeMaster code dated <u>after</u> June 30, 2006, he attests to the contents of post-June 30, 2006 version 4.3.2.3 (dated October 25, 2006). (*See* **Exhibit I**, Friedman Report, ¶ 282; Harrigan Report, ¶¶ 134, 184). Like Dr. Harrigan, Mr. Friedman relies upon "AGT Software Version Descriptions" as reliable documentation of the NudgeMaster software's history (the

---

[3] After serving the Harrigan Report and the Lowe Declaration, Plaintiffs offered Mr. Friedman a second opportunity to view <u>all</u> versions of the NudgeMaster source code. He declined.

"Version History" or "History"). (*See* Friedman Report, ¶ 282; Harrigan Report, ¶ 124; Lowe Dec., ¶ 13).[4]

Defendants served the Friedman Report, a 149-page report addressed to patent invalidity based upon allegations of an inadequate written description, lack of patentable subject matter, lack of inventorship, and obviousness. (Ex. I). In response, Plaintiffs served Dr. Harrigan's rebuttal report.

Dr. Harrigan holds Bachelor's and Master's degrees in Computer Science, and a doctorate in Computer Applications. (Harrigan Report, ¶ 6). His university teaching experience includes computer programming and algorithms courses. (*Id.*, ¶ 7). He also has taught approximately 30 post-secondary courses in multimedia and game design. (*Id.*, ¶ 8). Following research and development in computerized gaming applications, he co-founded the University of Waterloo Games Institute. (*Id.*, ¶ 25). He is a recognized expert in the design of electronic gaming machines. (*Id.*, ¶¶ 26-27).

Dr. Harrigan's rebuttal report utilized his knowledge of the field (*id.*, ¶¶ 6-27) to opine on the state of the art at the time of the invention (*id.*, ¶¶ 282-356), how one of skill would understand the 223 Patent specification (*id.*, ¶¶ 251-281), and whether the "automatically displaying" limitation was well-understood, routine and

---

[4] The Version History is filed as Exhibit A to the Lowe Declaration. (*See* Dkt. 168, at Ex. A).

conventional in the context of game processor configuration *circa* 2006. (*Id.*, ¶¶ 227-249).

Although Defendants criticize his commentary on witness credibility, Dr. Harrigan only used "credible" and "credibility" <u>three</u> times in his <u>171</u>-page report. (*See id.*, ¶¶ 46, 176, 188). Moreover, only once did Dr. Harrigan comment on a witness' credibility. (*Id.*, ¶ 188 (commenting that "the Fiechter testimony" is "not reliable or credible")). Undersigned counsel has no intention of eliciting trial testimony that <u>any</u> witness is or is not "credible." "I've taken what they've said at face value and tried to understand it and tried to see what other evidence there is." (Harrigan Dep., Dkt. 163-3, at 39:1-11). "I'm not saying anybody is not a credible witness." (*Id.*, 40:13-16). "I would express my -- definitely express my opinion of whether what somebody says at a deposition is in fact corroborated with other evidence." (*Id.*, 41:9-12).

## III. Questions Involved

In addition to the questions raised by the *Daubert* motion (Dkt. 163 ("Brief"), at 5), the following questions are involved:

1. Is Dr. Harrigan permitted to express his rebuttal opinion that the Friedman Report mistakenly concluded that there was a prior art version of NudgeMaster having a "View Next Play" feature? If so, are

there any facts or reasons in defense of the opinion that he may <u>not</u> testify to?

## IV.    Argument

### A.    The Applicable Law.

The District Court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Gorton v. Air & Liquid Systems Corp.*, 1:17-cv-1110, 2020 WL 4193649, at *2 (M.D. Pa. 2020) (quotation omitted) (denying motion to exclude expert); *see also* F.R.E. 702. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party proffering expert testimony should provide "an expert opinion that is relevant and reliable and that will assist the trier of fact." *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 809-810 (3d Cir. 1997), *as amended* (Dec. 12, 1997) (reversing district court order excluding expert testimony). "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010) (internal quotation omitted).

> As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

*United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (internal quotation omitted).

A *Daubert* motion should be denied where, as here, there is a logical basis for the expert's opinion rebuttal testimony.  *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016); *Masimo Corp. v. Philips Elec. N. Am. Corp.,* 62 F. Supp. 3d 368, 388 (D. Del. 2014).  Here, as shown below, the challenged portions of the Harrigan Report are offered in rebuttal to explain mistaken conclusions in the Friedman Report relating to NudgeMaster. "[Dr. Harrigan's] examination of the data would be helpful to a jury in critiquing Mr. [Friedman's] opinion."  *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 721 (D.S.C. 2019); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 835 (D. Minn. 2011) (denying motion to exclude, stating that "[i]t is the proper role of rebuttal experts to critique [the opposing side's] expert's methodologies and point out potential flaws in the [opposing side's] experts' reports").

"There is no *per se* rule that an expert must analyze source code to opine about patent [validity]."  *Genband US LLC v. Metaswitch Networks Corp*., 2:14-CV-33, 2016 WL 3475688, at *3 (E.D. Tex. Jan. 7, 2016); *see TQP Dev., LLC v. Merrill Lynch & Co.*, 2:08-CV-471, 2012 WL 3283356, at *2–3 (E.D. Tex. Aug. 10, 2012). "An expert may base an opinion on facts or data in the case that the expert has been made aware of <u>or</u> personally observed."  Fed.R.Evid. 703 (emphasis added).  "[A]n

expert may rely on other witness's testimony … to form an opinion." *Iconics, Inc.*

*v. Massaro*, 266 F. Supp. 3d 461, 469 (D. Mass. 2017); *EMC Corp.*, 154 F. Supp. 3d

at 115-17 (permitting expert's reliance on statements and lay opinions of a party's

chief software architect).

Defendants contend that Dr. Harrigan may not rely on the Lowe Declaration

to attest to contents of source code that he did not personally review. (Brief, at 10).

However, Rule 703 does not require first-hand review.   In fact, both experts have

relied upon the Version History in discussing versions of NudgeMaster software for

which they did not review source code.

As shown, Mr. Friedman only reviewed NudgeMaster source code dated

before June 30, 2006. (Harrigan Report, ¶¶ 126-129). Still, Mr. Friedman: (1) did

not corroborate the testimony of Mr. Fiechter regarding a 2011 YouTube video of a

NudgeMaster "Victory Lane" game theme by reviewing the source code to see if or

when "Victory Lane" was first added into NudgeMaster[5]; and (2) opined as to the

contents of source code version 4.3.2.3 (dated October 25, 2006), which he did not

review. (*See* Friedman Report, ¶ 282; Harrigan Report, ¶¶ 134, 184).   Mr.

Friedman's own approach shows that first-hand source code review is not necessary

given the other data.   Dr. Harrigan tracks the facts relating to NudgeMaster as

---

[5] Such game theme did not exist in any prior art version of NudgeMaster.

evidenced by reliable sources. (*See* Harrigan Report, ¶¶ 124, 134, 184, 188 (sixth bullet point)).

Defendants attack on the Lowe Declaration – a first-hand account of the evolution of NudgeMaster from a software developer – is merely a subterfuge as they hope to prevent Dr. Harrigan from explaining why the prior art version of NudgeMaster lacked any display of an actual game to be played prior to initiation of game play.[6] Under Rule 703, Dr. Harrigan is entitled to rely on the Lowe Declaration.  And even without the Lowe Declaration, good grounds support his opinion, his criticisms of the Friedman Report and the reasons therefore (*e.g.*, the Version History, the same evidence recited in the Friedman Report), and will assist the jury's understanding of whether prior art NudgeMaster automatically previewed an actual game to be played to a player before the initiation of game play.

    **B.**    **Using Good Grounds, Dr. Harrigan Rebutted the Friedman Report's Opinion that NudgeMaster Possessed a "View Next Play" Feature in the Prior Art.**

        1.    <u>*Dr. Harrigan's Factual Narrative and Opinions.*</u>

Mr. Friedman opines that NudgeMaster "was publicly disclosed, used and/or commercialized, or described in publications that describe the game, before the alleged date of invention (May 2, 2006) and more than one year before the

---

[6] Each independent claim of the 223 Patent recites the automatic display of an actual game to be played before the player commits to play the game. (*See, e.g*., 223 Patent, cl. 44, 16:63-65).

application filing date (June 30, 2006) of the '223 patent[.]" (Friedman Report, ¶ 222).  Mr. Friedman bases this suspect opinion exclusively on evidence which postdates the 223 Patent application filing date of June 30, 2006, to wit:

(a)     deposition testimony of Donald Fiechter offered in August 2021[7];

(b)     a YouTube video posted in 2011 by an unknown person, showing the "Victory Lane" NudgeMaster game theme (the "2011 Video");

(c)     a draft Farley letter dated December 14, 2006; and

(d)     a Farley letter dated January 30, 2007.

(Friedman Report, ¶¶ 223, 256-261).[8]  Mr. Friedman opines that the 223 Patent is obvious due to NudgeMaster's "press here to view next play" button, used to "display to a player aspects of a game outcome before play." (*Id.*, ¶¶ 232, 256-261). Distilled to its essence, Mr. Friedman's opinion that the "press here to view next play" was prior art is based on the uncorroborated testimony of Mr. Fiechter, combined with Mr. Fiechter's *post hoc* accounts of *post hoc* sources.  Yet Defendants now seek to preclude Dr. Harrigan from exposing the glaring flaws in the Friedman Report.

---

[7] Mr. Fiechter is, by his own admission, a disgruntled former employee of an affiliate of Plaintiffs. (*See* Harrigan Report, ¶ 188 (fourth bullet point)).  At trial, Plaintiffs expect to address this during Mr. Fiechter's cross-examination. Accordingly, Dr. Harrigan will not be asked about Mr. Fiechter's testimony that he continues to be "super upset" at Mr. Pace for his termination.

[8] Tellingly, the Friedman Report does not rely on or reference any of the NudgeMaster source code that he actually reviewed.

Patent invalidity must be shown by clear and convincing evidence. *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 95 (2010). Here, Dr. Harrigan was instructed relating to the definition of "prior art" and the need to prove prior art-based invalidity with clear and convincing evidence. (Harrigan Report, ¶¶ 28b, 28e, 28f). Where the expert opinion in question is patent invalidity, uncorroborated witness testimony is <u>not</u> clear and convincing evidence. *See TransWeb, LLC v. 3M Innovative Properties Co.*, 16 F. Supp. 3d 385, 393-94 (D.N.J. 2014), *aff'd,* 812 F.3d 1295 (Fed. Cir. 2016); *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1366-67 (Fed. Cir. 1999). To assess whether Mr. Fiechter's testimony about prior art is corroborated, Dr. Harrigan reviewed the evidence, including the 2011 Video and the Version History. (Harrigan Report, ¶¶ 120-169).

Dr. Harrigan concluded that the "press here to view next play" feature was not incorporated into NudgeMaster any earlier than <u>October 25</u>, 2006 – in contradiction to the Fiechter testimony – and thus assailed Mr. Friedman's opinion that this feature existed in the prior art. (*Id.*, ¶¶ 134, 136-137, 149, 184-185, 188 (sixth bullet point), 190).[9] Dr. Harrigan applied the evidence, provided a logical chain of reasoning, exposed the flaws in Mr. Friedman's attempt to "corroborate" Mr. Fiechter's testimony with the 2011 Video, and recited good grounds for his rebuttal opinion

---

[9] Dr. Harrigan opined, *inter alia*, that the <u>2011</u> Video relied upon by Mr. Friedman did not corroborate the testimony of Mr. Fiechter that NudgeMaster had a "press here to view next play" button before June 30, <u>2006</u>. (*Id.*, ¶¶ 177-182, 186-188).

that there is no prior art version of NudgeMaster having a "press here to view next play" feature. *See Van v. Ford Motor Co.*, 332 F.R.D. 249, 293 n.10 (N.D. Ill. 2019).

Based on the Version History, as of June 30, 2006, NudgeMaster lacked the ability to show a potential player the constructed game field for the next game to be played before the player had decided to play the game. (Harrigan Report, ¶ 135 (citing POM018331-18332)). Citing the Version History, Mr. Friedman asserted that "[s]howing the next game's <u>entertaining display</u>' is <u>equivalent</u> to showing 'an actual game to be played' as construed." (Friedman Report, ¶ 282 (emphasis added)). But Mr. Friedman failed to accurately quote the History, which states:

| | | | license smartchips. |
|---|---|---|---|
| 2006-10-25 | 4.3.2.3 | NudgeMaster Ohio | NFA Submission for Ohio. Expands "Peek Next Game" functionality to allow preview of next game win amount, entertaining-display result, neither, or both. For Ohio, the option is locked in to show only the result. Also added legal/printer text option for Michigan. |

(Harrigan Report, ¶ 190d (quoting POM018329)). Dr. Harrigan shows that "the Friedman Report never actually shows that an 'entertaining-display <u>result</u>,' which may be no more than a graphical display of the next game's win <u>amount</u>, is the equivalent of an 'actual game to be played,' as construed by the Court." *Id.* Harrigan Report paragraphs 135 and 190, among others, are not dependent upon the Lowe Declaration.

2.   _Dr. Harrigan is Entitled to Rely on the Lowe Declaration_.

Dr. Harrigan's report recites facts contained in the Lowe and Freemyer Declarations (_see, e.g._, Harrigan Report, ¶ 126), because an expert has a duty to explain the facts and reasons underlying the opinions they hold.  _See Gorton_, 2020 WL 4193649, at *2 (denying _Daubert_ motion where expert relied on witness testimony).  Having insisted that Mr. Lowe use his knowledge of NudgeMaster source code to prepare the Plaintiffs' representative for deposition questions on NudgeMaster, Defendants now ask how and for how long Mr. Lowe reviewed such code. (Brief, at 13).[10]  Given the foundation of personal knowledge and competence laid in the Lowe Declaration (_see, e.g._, Lowe Dec., ¶¶ 1, 3, 6-8, 13, 15-18, 22-23, 27, 29, 36-38, 40-46), as well as the Fiechter and Cline Depositions and any additional foundation evidence adduced at trial, a jury can evaluate the Lowe Declaration and reliance thereon.  _See Iconics,_ 266 F. Supp. 3d at 469-470; _EMC Corp._, 154 F. Supp. 3d at 115-17.  Even if "the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony— a question to be resolved by the jury." _Massaro_, 266 F. Supp. 3d at 470; _see also Huawei Techs. Co. v. T-Mobile US, Inc._, 2:16-CV-00052, 2017 WL 11638982, at

---

[10]  As shown herein, many of the facts recited in the Lowe Declaration are independent of source code contents or review.

*3 (E.D. Tex. Sept. 10, 2017) (denying *Daubert* motion where expert relied on third party assistance in reviewing source code).

Furthermore, Dr. Harrigan relies upon facts stated in the Lowe Declaration which are independent of any source code review, and are therefore outside the scope of Defendants' rationale for excluding reliance on the Lowe Declaration. (*See, e.g.*, Harrigan Report, ¶¶ 120-134, 138-141, 143, 145-148, 150, 153-161).

### 3. *Dr. Harrigan's Opinions Are Not Based Solely on the Lowe Declaration.*

An expert is entitled to weigh the evidence. *See Kannankeril*, 128 F.3d at 807-08 (expert weighing of evidence goes to credibility, not admissibility); *Gonzalez v. Infostream Grp., Inc.*, 2:14-CV-906, 2016 WL 475172, at *2-3 (E.D. Tex. Feb. 7, 2016) (expert who did not review source code permitted to testify about software based on other circumstantial evidence). Contrary to Defendants' position (Brief, at 13-14), Dr. Harrigan's analysis is based on the evidence as a whole, not just the Lowe Declaration. (*See* Harrigan Report, ¶¶ 123-124, 127-128, 134-135, 137, 139-140, 145-154, 157-160, 162, 164-165, 170-178, 181-192). Dr. Harrigan's refutation of the claim that the 2011 Video corroborates the Fiechter testimony builds to an opinion that prior art NudgeMaster lacks any preview of an actual game to be played (and thus cannot show patent obviousness, even if combined with other prior art references). Dr. Harrigan is not merely "parroting" the Lowe Declaration (*see* Brief, at 10), just as the Friedman Report does not merely parrot the contents of the Fiechter

Deposition and the 2011 Video. (*See* Friedman Report, ¶¶ 256-261). Experts are not reduced to parrots by complying with the duty to disclose the facts and reasons for their larger opinions under Rule 26. *Compare* Fed.R.Civ.P. 26(a)(2)(B)(i) (expert duty to disclose the entire basis of an opinion) *with Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 47 (S.D.N.Y. 2016) (expert should not repeat a witness's statement unless offering it as support for a larger opinion).

Dr. Harrigan's criticism and larger opinion is that "the 2011 Video is flawed and is <u>not evidence of the existence, sale, or public use of any version of NudgeMaster in the prior art</u>. Without the unreliable 2011 video, the Friedman Report is left to rely solely on the <u>uncorroborated</u> deposition testimony of Mr. Fiechter[.]" (Harrigan Report, ¶ 187 (emphasis added)). Defendants seek to exclude Dr. Harrigan's opinions about the flawed reliance on the 2011 Video (*id*., ¶¶ 154-157), by falsely suggesting that the flaws revealed by Dr. Harrigan are <u>entirely</u> based on the Lowe Declaration. (Brief, at 14). This ignores Dr. Harrigan's observations that the 2011 Video: (1) "appears to depict the operation of an AGT terminal and related game themes designed for use in the State of Michigan"; and (2) "shows … the version number as 'v: 4 4 (2) 172' followed by '© 2004 WORLD TOUCH GAMING, INC. ALL RIGHTS RESERVED" followed by "MICHIGAN REDEMPTION.'" (Harrigan Report, ¶¶ 154-157). The NudgeMaster version "4.4" series was not built until <u>2007</u>, showing that the 2011 Video is not depicting a prior

art version of NudgeMaster.    (*Id.*, ¶ 158).  These observations are based, at least in part, on first-hand observation and the testimony of Mr. Fiechter.

Next, Dr. Harrigan points to a screen from the 2011 Video showing the "Victory Lane" game theme and the words "Michigan Redemption:"



(*Id.*, ¶ 160).  Defendants seek to preclude Dr. Harrigan from stating that "Michigan Redemption" indicates that NudgeMaster operating on the AGT terminal in question was designed for use in Michigan.  (*See* Brief, at 14 (seeking to preclude Harrigan Report, ¶ 161)).  However, as Dr. Harrigan noted, the 2011 Video itself states "Universal Amusement is the Exclusive Distributor of the approved NudgeMaster Games by The State of Michigan[,]" and Defendants do <u>not</u> seek to exclude this statement. (*See id.* (not seeking to preclude Harrigan Report, ¶ 159)).

Next, Defendants seek to preclude Dr. Harrigan from testifying that the earliest software for Michigan was version 4.2.2.18, built <u>September 25</u>, 2006.[11] (*See id.* (seeking to preclude Harrigan Report, ¶ 162)). However, Dr. Harrigan relied on the Version History. (*See* Harrigan Report, ¶ 162 (citing POM018329)).

Defendants seek to preclude Dr. Harrigan from testifying that neither version 4.2.2.18 nor 4.2.2.14 contained the "Press Here to View Next Play" button addressed in software version 4.<u>3</u>.2.10. (Brief, at 14 (seeking to preclude Harrigan Report, ¶ 163)). Yet this factual statement is also supported by the Version History. (*See, e.g.,* Harrigan Report, ¶¶ 134, 137, 149).

Moreover, Defendants seek to preclude Dr. Harrigan from testifying that the earliest version of any software built for Michigan (relating to the "Press Here to View Next Play" button) was version 4.3.2.13, built on February 21, <u>2007</u>. (Brief, at 14 (seeking to preclude Harrigan Report, ¶ 164)). Again, this information is from the Version History, confirming that what is shown in the 2011 Video is <u>not</u> a prior art NudgeMaster version. (*See* Harrigan Report, ¶ 164 (citing POM018327)).

Defendants challenge Dr. Harrigan's opinion that Mr. Fiechter's testimony (that a prior art version of NudgeMaster practiced the automatic display of an actual game to be played prior to the initiation of the game) is contradicted by the Lowe

---

[11] This shows that the contents of the 2011 Video cannot have been a prior art version of NudgeMaster.

Declaration and objective information upon which Mr. Lowe's testimony is based, including the Version History. (Brief, at 14 (seeking to preclude Harrigan Report, ¶ 188 (fifth bullet point)); *see* Lowe Dec., at Ex. A). Again, Dr. Harrigan grounds his opinion in the Version History, not merely the Lowe Declaration.

Dr. Harrigan has exposed the flaws of the 2011 Video based on the totality of the evidence, not merely the Lowe Declaration. Dr. Harrigan reveals that the Friedman Report eschewed the prior art NudgeMaster source code that Mr. Friedman reviewed, opting instead to rely only on the Fiechter testimony, documents which are <u>not</u> prior art, and the <u>2011</u> Video. (*See* Friedman Report, ¶¶ 223, 256-261). Dr. Harrigan explains the flaws in the Fiechter testimony about NudgeMaster. (*See* Harrigan Report, ¶ 188).[12] Dr. Harrigan's testimony regarding the lack of corroboration of the Fiechter testimony is appropriate. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 502-03 (D. Del. 2019) (questioning expert opinion relating to contents of prior art based on unreliable evidence that is undated, post-dated, or possibly modified after the critical date). "It is the proper role of rebuttal experts to critique [the opposing side's] expert's methodologies and point out potential flaws in the [opposing side's] experts' reports. The Court finds that [Plaintiffs'] rebuttal expert[] sufficiently applied [his] expertise to the facts and

---

[12] As indicated, Dr. Harrigan will not offer trial testimony as to Mr. Fiechter's credibility.

methodologies used by [Mr. Friedman] in forming [his] conclusions." *Aviva Sports*, 829 F. Supp. 2d at 835 (denying motion to exclude).

4.    *Dr. Harrigan May Rebut the Friedman Report Based on Information About the NudgeMaster Source Code, Regardless of Whether He Personally Reviewed the Code.*

As shown, first-hand source code review is not necessary.  *See* Fed.R.Evid. 703.  Here, both experts rely upon the Version History when discussing source code versions that they have not reviewed.  (*Compare* Friedman Report, ¶ 282 *with* Harrigan Report, ¶¶ 124, 127, 134-135, 137, 139, 147, 149, 151-152, 162, 164, 171-175, 184-185, 188, 190-192).  Dr. Harrigan may also point out, based upon his review of the Lowe and Freemyer Declarations, that Mr. Friedman reviewed <u>some</u>, but not all of the NudgeMaster source code. (*See* Harrigan Report, ¶¶ 126-129, 135-137; Friedman Report, ¶ 282).

5.    *Dr. Harrigan May Present His Opinion Relating to the Lack of Reliability of the December 14, 2006 Draft Farley Letter.*

Dr. Harrigan criticizes Mr. Friedman's reliance on the December 14, 2006 Farley "draft" of a letter about NudgeMaster. (*See* Friedman Report, ¶ 223).  This criticism is based on the contents of the draft (which is not prior art), not merely the Lowe Declaration.  (Harrigan Report, ¶¶ 139-145, 173).  For example, the draft referred to Plaintiffs' "Tic-Tac-Fruit" game instead of NudgeMaster.  (*Id.*, ¶ 140).

### C.    Dr. Harrigan Will Refrain from "Credibility Assessment" at Trial.

As noted above, Dr. Harrigan will refrain from any "credibility assessment" at trial.  However, certain objections raised in Defendants' motion are not directed to credibility assessments.  Summarizing certain evidence, Dr. Harrigan noted, *inter alia*, that "Mr. Pace alone appreciated the need and difficulty involved in developing this pre-fetch feature that would permit Tic-Tac-Fruit to generate and test complete game fields before rather than after the player had committed funds and pressed play to initiate a game." (*Id.*, ¶ 57). Paragraph 57 is an observation regarding inventorship. (*Id.*, ¶ 198).  Defendants falsely call this "[a]n opinion regarding Mr. Pace's <u>state of mind</u>[.]" (Brief, at 7 (emphasis added)).  By its terms, Paragraph 57 is not directed to a "state of mind" but to the appreciation and overcoming of a technical challenge.

Regarding Grant Kowell, Plaintiffs expect to show that after Mr. Kowell saw a working prototype of Mr. Pace's invention in May/June 2006, Mr. Kowell secretly sought to add Mr. Pace's game preview feature into a patent application that Mr. Kowell was pursuing for himself.  Over fifteen years later, Mr. Kowell claims to have come up with the game preview feature following an October 19, 2005 Ohio hearing, stating that within "a week or two, a couple weeks maybe" of the hearing, that he went to his patent attorney Mr. Zollinger to make sure he patented it. (*Id.*, ¶¶ 90-94).  Contrary to Mr. Kowell's testimony relating to the genesis of the game preview feature, Mr. Kowell's earliest provisional patent applications (in the first

half of 2006) did <u>not</u> mention any game preview feature.  (*Id*., ¶¶ 96-97).  Only his third provisional patent application filed June 21, 2006 mentioned a game preview feature. (*Id*., ¶¶ 98-99).  Based on this evidence, Dr. Harrigan stated:

> [I]t is apparent that Mr. Kowell thought of adding a preview feature into his skill game between June 14, 2006, and June 21, 2006, because all of these 3 short "preview"-related passages were wholly absent from the first two provisional patent applications filed on April 5, 2006 and June 14, 2006. Had Mr. Kowell met with a patent attorney right away about the preview feature with instructions to patent, as he testified, there is no good explanation for why these passages were not in the original provisional application filed April 5, 2006.

(*Id.*, ¶ 99).  The jury would benefit from understanding the results of Dr. Harrigan's comparison of the testimony of Mr. Kowell <u>with</u> the contents of Mr. Kowell's three 2006 provisional patent applications, the third of which (dated June 21, 2006) recited a game preview feature <u>for the first time</u>.

Also, Dr. Harrigan did not attack the credibility of Kurt Gearhiser, a lawyer who participated in the October 2005 Ohio hearing about the legality of a prior art version of Tic-Tac-Fruit.  Defendants falsely state that Dr. Harrigan is "criticizing [the] reliability of [Kurt] Gearhiser's sworn deposition testimony[.]" (Brief, at 8). Defendants misunderstand Dr. Harrigan's point.  Dr. Harrigan explained that Mr. Gearhiser's testimony fails to support Mr. Friedman's opinion that Mr. Gearhiser is the inventor of the 223 Patent. (*Compare* Harrigan Report, ¶¶ 218-221 *with* Friedman Report, ¶ 291).

In summary, Dr. Harrigan will <u>not</u> testify to the credibility of any witness at trial.

For these reasons, the Court should deny the instant motion.

February 28, 2022                    Respectfully submitted,

                                     ***/s/ Steven G. Hill***
                                     Steven G. Hill, GA Bar No. 354658
                                     *Admitted pro hac vice*
                                     John L. North, GA Bar No. 545580
                                     *Admitted pro hac vice*
                                     Martha L. Decker, GA Bar No. 420867
                                     *Admitted pro hac vice*
                                     Hill, Kertscher & Wharton, LLP
                                     3625 Cumberland Blvd., SE, Suite 1050
                                     Atlanta, Georgia 30339
                                     Telephone: (770) 953-0995
                                     Fax: (770) 953-1358
                                     Email:  sgh@hkw-law.com
                                     Email:  jln@hkw-law.com
                                     Email:  md@hkw-law.com

                                     -   and -

                                     Matthew H. Haverstick (PA ID No. 85072)
                                     Eric J. Schreiner (PA ID No. 76721)
                                     Paul G. Gagne (PA ID No. 42009)
                                     Shohin H. Vance (PA ID No. 323551)
                                     KLEINBARD LLC
                                     Three Logan Square, 5th Floor
                                     1717 Arch Street
                                     Philadelphia, PA 19103
                                     Telephone: (215) 568-2000
                                     Fax: (215) 568-0140
                                     Email:  mhaverstick@kleinbard.com
                                     Email:  eschreiner@kleinbard.com
                                     Email:  pgagne@kleinbard.com
                                     Email:  svance@kleinbard.com

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that although the instant Brief exceeds 15 pages, it complies with the word count limitation set forth in Local Rule 7.8(b)(2).  This Brief contains 4,926 total words.  This word count was performed using the word count feature of Microsoft Word 2016.

<u>*/s/Steven G. Hill*</u>
Steven G. Hill

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF KEVIN HARRIGAN, PH.D. was filed on this 28th day of February, 2022 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

/s/*Steven G. Hill*
Steven G. Hill

*Counsel for Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC*