## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of PENNSYLVANIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC <br><br> Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW <br><br><br> Honorable Jennifer P. Wilson |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated:  March 15, 2022

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................1

II.   RESPONSE TO STATEMENT OF SUPPOSED UNDISPUTED
      FACTS ............................................................................................5

III.  ARGUMENT....................................................................................7

    A.   *Alice* Step One:  Representative Claim 44 Is Directed To The
           Abstract Idea Of Game Play...............................................................7

    B.   *Alice* Step Two: The '223 Patent Lacks An Inventive Concept. .......11

        1.   There is no fact issue over the "automatically displaying"
                step that precludes summary judgment...................................13

        2.   The generic game processor found in only select claims
                does not provide the requisite transformative inventive
                concept. ...............................................................................15

        3.   Plaintiffs' authorities do not support denial of summary
                judgment in this case.............................................................20

IV.   CONCLUSION................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bot M8 LLC v. Sony Corp. of Am.*,
   465 F. Supp. 3d 1013 (N.D. Cal. 2020)................................................................9

*BSG Tech., LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...............................................................*passim*

*CR Bard, Inc. v. AngioDynamics, Inc.*,
   1:15-CV-218, 2018 WL 3130622 (D. Del. June 26, 2018)...............................20

*Gree, Inc. v. Supercell Oy*,
   No. 2:19-cv-200, 2021 WL 1917131 (E.D. Tex. Apr. 16, 2021).......................21

*In re Marco Guldenaar Holding B.V.*,
   911 F.3d 1157 (Fed. Cir. 2018) ....................................................................9, 10

*Maxell, Ltd. v. Apple, Inc.*,
   5:19-CV-00036, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) .......................21

*Move, Inc. v. Real Estate All. Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ...................................................................16

*NEXRF Corp. v. Playtika Ltd.*,
   547 F. Supp. 3d 977 (D. Nev. 2021)............................................................16, 17

*People.ai, Inc. v. SetSail Tech., Inc.*,
   No. C 20-09148, 2021 WL 5882069 (N.D. Cal. Dec. 13, 2021).........................8

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ..................................................................8

*PlanetID, LLC v. Digify, Inc.*,
   No. 19-cv-04615-JST, 2021 WL 567371 (N.D. Cal. Jan. 12, 2021).................14

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*,
   599 F.3d 1308 (Fed. Cir. 2010) .......................................................................11

*RaceTech v. Ky Downs, LLC*,
    167 F. Supp. 3d 853 (W.D. Ky. 2016)...............................................................16

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) .......................................................................17

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) ..........................................................18, 19, 20

*Vaporstream, Inc. v. Snap Inc.*,
    No. 2:17-cv-00220, 2018 WL 1116530 (C.D. Cal. Feb. 27, 2018)....................21

**Statutes**

35 U.S.C. § 101 .......................................................................................1, 5, 7, 22

## I.    INTRODUCTION

The Court should grant summary judgment that the claims of U.S. Patent No. 7,736,223 (the "'223 Patent") are invalid under 35 U.S.C. § 101 because Plaintiffs have not raised any genuine issue of material fact precluding summary judgment. Plaintiffs' Opposition Brief (Dkt. 169) ("Opposition") fails to meaningfully address Defendants' arguments for why the '223 Patent is invalid.  Instead, Plaintiffs point to irrelevant facts and make circular arguments in the transparent hope that the Court will conclude there must be a fact issue somewhere.  But the Opposition's immaterial arguments do not change the few core, undisputable, and dispositive facts: the language of the claims themselves, as construed by the Court, recite no more than abstract game rules (*e.g.*, allowing a player to see a puzzle before deciding whether to solve the puzzle) carried out by generically recited computer components.  No amount of attorney argument or expert opinion can change this.

At *Alice* step one, Plaintiffs ask the Court to revisit its prior decision that the '223 Patent claims the abstract idea of rules for playing a game, but Plaintiffs offer no legitimate reason to undermine the Court's previous holding.  Plaintiffs' new assertion that certain claim steps are "specific" does not change that they are still part of abstract game rules.  Nor does Plaintiffs' new argument that the claims recite certain game steps occurring before the player plays the game.  Further, Plaintiffs cannot demonstrate that claim steps cannot be performed by humans based on a

mischaracterization of Defendants' expert's testimony. Since originally finding the claims abstract, the Court has issued a claim construction ruling that has only confirmed the claimed computer components, such as "game processor," are off-the-shelf components. Indeed, the game rules recited in every claim of the '223 Patent can be carried out by two people playing with a deck of cards. *See* Dkt. 32 at 9-12. This type of human behavior is an abstract idea that fails *Alice* step one, just as the Court previously held.

At *Alice* step two, Plaintiffs try to manufacture a fact dispute over whether a "game processor"—which is not even recited in most claims of the '223 Patent—is well-understood, routine, or conventional. This distraction misses the point. To even reach the question of whether claimed components are well-understood, routine, or conventional, the Court must first determine, as a matter of law, that the '223 Patent claims something beyond the implementation of abstract game rules on a generic game processor.[1] This the '223 Patent does not do, and, thus, there is no need to reach the inquiry on which Plaintiffs focus.

---

[1] Plaintiffs mischaracterize as a "factual conclusion" whether an inventive concept is more than the abstract idea itself. Opposition at 2, ¶ 2. Plaintiffs are incorrect. *See BSG Tech., LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed *is a question of law*") (emphasis added).

In their introduction, Plaintiffs contend that summary judgment is inappropriate for four main reasons. Opposition at 2-4. But once Plaintiffs' rhetoric is stripped away, each of these supposed reasons fails to preclude summary judgment:

1.  Plaintiffs argue that the "automatically displaying" limitation is not abstract because it cannot be performed by humans. But Plaintiffs' argument is based on a gross mischaracterization of Defendants' expert's testimony. In the cited testimony, the expert opined that if a game requires a player to take some action in order for a game field to be displayed to the player, that game *is not* "automatically displaying" the game field to the player. That opinion does not mean that a game that *does* carry out the "automatically displaying" step cannot be performed by a human (*e.g.*, by a human dealer). This testimony is no basis to reverse the Court's prior holding that the '223 Patent is directed to the abstract idea of rules for playing a game.

2.  Plaintiffs dismiss the Federal Circuit's holding in *BSG Tech., LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) as "inapplicable." But Plaintiffs cannot deny what *BSG* confirms: if a Court finds at *Alice* step one that claims are directed to an abstract idea, it needs to ask whether there are additional claim elements beyond the abstract idea itself, and, then, *if* such additional non-abstract components exist, examine whether these additional limitations are well-understood,

routine, or conventional.  Here, the supposed inventive concept is the abstract idea itself; there is nothing more.  As such, Plaintiffs cannot escape summary judgment by pointing to a fact dispute over whether these abstract claim limitations are well-understood, routine, or conventional.

3.    Plaintiffs argue that it is irrelevant that the '223 Patent does not claim a technical solution to a technical problem because "numerous patents on their face show they arose from regulatory/legal issues."  Plaintiffs are presumably referring to three patents referenced in their counter statement of facts regarding auto safety, but their reliance on them misses the point.  Unlike those patents (none of which have apparently undergone judicial scrutiny for patent eligibility and that purport to improve vehicle bumper assemblies or combustion engine technologies), the '223 Patent does not describe or claim any invention resulting in a *technical* advance. Instead, the '223 Patent describes a rule change as a purported legal work-around to a legal obstacle.  This is not an inventive concept; it is merely an abstract idea.

4.    Plaintiffs contend that the "specifically configured game processor" transforms the patent claims into patent-eligible subject matter.  But "game processor" is only mentioned in a third of the '223 Patent claims, and even those claims do not describe the processor as "specifically configured" or provide any detail about the processor at all.  As such, Plaintiffs cannot create a material dispute of fact by arguing about things that are not even in the '223 Patent claims.

## II.    RESPONSE TO STATEMENT OF SUPPOSED UNDISPUTED FACTS

Defendants incorporate by reference their separate response to Plaintiffs' Statement of Undisputed Facts.  Many of Plaintiffs' supposed "facts" are irrelevant rants that have no bearing on the sole issue on which Defendants have moved: whether the '223 Patent claims ineligible subject matter under 35 U.S.C. § 101. What is material for summary judgment is the language of the '223 Patent claims, and this is undisputed.

In response to Plaintiffs' supposed "material facts requiring trial," set forth in the Opposition Brief, Defendants respond as follows:

1-4.    The "facts" in paragraphs 1-4 pertain to Michael Pace's purported invention of an embodiment of the '223 Patent and distribution of the embodying Tic-Tac-Fruit game.  These historical facts are irrelevant to the content of the '223 Patent and to whether the claims recite patent-eligible subject matter (the only thing the Court need to focus on in order to grant summary judgment in favor of Defendants).  Defendants incorporate by reference their response to the cited paragraphs of Plaintiffs' Statement of Material Facts and expressly note that they deny these facts insofar as they are intended to imply that Michael Pace was the sole inventor of the '223 Patent.  *See* Dkt. 120 at 28-30 (discussing Defendants' inventorship invalidity contention).

5. Denied. Prior to the creation of Tic-Tac-Fruit, there were other electronic games where a player could preview the outcome of a game prior to committing to playing the game. *See* Opening Expert Report of S. Friedman (Dkt. 171-9), ¶ 157. This fact dispute, however, is not a reason for denying summary judgment. Even were the claimed "preview" step novel, that would not change that it is merely an abstract step and that the claims of the '223 Patent describe no inventive concept beyond the abstract idea.

6. Denied. Claim 44 is limited, on its face, to a type of game having the specific abstract rules set forth in the claim.

7. Denied. Nothing in claim 44—or any other aspect of the '223 Patent— describes a "specially configured game processor." *See* Dkt. 171-9, ¶ 162.

8. Denied. The rules of the game are not limited to rules that govern once a game play is initiated.

9. Denied. It is apparent on the face of the claims that the testing step can be carried out by a human and does not require a processor. *See* Dkt. 32 at 10; *see also* Dkt. 171-9, ¶ 155.

10. Denied. The admitted prior art of record shows that the prior art Tic-Tac-Fruit game "automatically display[ed] an actual game to be played on the touch screen game display to a player." *See* Defendants' Undisputed Material Facts ("SOF") (Dkt. 161) ¶ 1 (Plaintiffs admit that March 2005 letter, which describes Tic-

Tac-Fruit game, is prior art); Dkt. 161-2 (SOF, Ex. B) (describing prior art Tic-Tac-Fruit game as having "video screen [that] presents nine symbols in a 3x3 array to the player, similar to a t[i]c-tac-toe arrangement"). But again, any fact dispute over the novelty of the limitation is no reason to deny summary judgment. Even were the "automatically displaying" step novel, that would not change that it is merely an abstract concept, and that the claims of the '223 Patent describe no inventive concept beyond the abstract concept.

11. Denied. Defendants' expert has never offered such an opinion regarding a "specially configured" processor, and Defendants deny that such processor is claimed in claim 44 of the '223 Patent.

## III.    ARGUMENT

### A.    *Alice* Step One:  Representative Claim 44[2] Is Directed To The Abstract Idea Of Game Play.

This Court has already held that the claims of the '223 Patent are directed to the abstract idea of game play. *See* Dkt. 61 at 15. As Defendants previously

---

[2] Defendants submit that claim 44 is representative of all claims of the '223 Patent because, like all claims, it is directed to abstract rules of game play. *See* Opening Br. at 6-7. Plaintiffs do not challenge that claim 44 is representative; thus, the Court can determine the invalidity of the entire patent based on analysis of claim 44 alone. *See* Dkt. 61 at 8. That said, the specific portions of the representative claim that Plaintiffs rely on to provide a purported inventive concept—*i.e.*, the "game processor"—is not recited in most of the claims (*i.e.*, not in claims 1, 3, 5-7, 11, 13, 15, 18-20, 22, 25, 27, 29-31, 33) and therefore cannot rescue those claims from invalidity under § 101.

explained in detail in their motion to dismiss briefing, *see* Dkt. 32 at 8-11, claim 44 is just a way to play a game.  Each one of the claimed steps could be performed by two friends playing at a kitchen table with a standard deck of cards.  None of Plaintiffs' arguments justify this Court revisiting its prior holding.

Plaintiffs first argue that the claims are not abstract because the "testing" and "automatically displaying" steps are purportedly "specific" and have "nothing to do with" the rules for playing a game.  Opposition at 15-16.  But whether a limitation is "specific" is not the relevant question at step one.  *See People.ai, Inc. v. SetSail Tech., Inc.*, No. C 20-09148, 2021 WL 5882069, at *3, *5 (N.D. Cal. Dec. 13, 2021) (emphasizing party misread Federal Circuit case law when it "argue[d] that its patent claims are not directed to a patent-ineligible abstract idea because they recite specific limitations" and finding patent directed to abstract idea despite reciting processors that carried out data storage steps); *BSG*, 899 F.3d at 1287 ("[A] claim is not patent eligible merely because it applies an abstract idea in a narrow way.").  Indeed, many other gaming patents that have been held patent-ineligible recited "specific" steps, such as:

- "steps of selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers" in *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007-08 (Fed. Cir. 2014);

8

- providing specific set of dice with certain characteristics in *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1159 (Fed. Cir. 2018); and

- steps of connecting to a server, sending and receiving game results, and using results to determine a new specification value for modifying the game conditions in *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1024 (N.D. Cal. 2020).

Like these specific steps that were part of ineligible claims, the "testing" and "automatically displaying" steps of the '223 Patent are also directed to steps of game play. "Testing" is confirming the field and potential results to ensure there is not a more valuable winning combination than desired—this is just carrying out a rule of game play. "Automatically displaying" is simply showing the resulting game to the player without the player needing to take steps—again, complying with a rule of the game. There is nothing non-abstract about these rules of game play.

Further, that the "testing" or "automatically displaying" steps may occur before the player undertakes certain other steps of game play does not make these limitations non-abstract or unrelated to game play. In *In re Smith*, the Federal Circuit held a claim involving "shuffling the physical playing cards" was directed to the abstract idea of rules of a game even though such shuffling occurred before players made their wagers or began playing. *See* 815 F.3d 816, 817 (Fed. Cir. 2016). In *Marco*, the Federal Circuit held a patent was directed to the abstract idea of a set of

9

rules for a game despite a claim including a step of providing dice with specific set of characteristics—a necessary prelude to actual gameplay with those dice.  911 F.3d at 1161.  In these cases, the claims were directed to rules of a game despite reciting game steps occurring before the player played.  So too with the '223 Patent: simply testing and previewing a game field before the player plays the game field does not make claims less directed to the abstract idea of game play.

Plaintiffs then argue that the claims are not abstract because Defendants' expert supposedly advanced his own claim construction of "automatically" that "negates any human involvement . . . during any stage" of the claimed game play. Opposition at 16.  However, Plaintiffs' assertion—based solely on an out-of-context excerpt from Defendants' expert's deposition[3]—is both wrong and irrelevant. Indeed, what Defendants' expert said is immaterial, but Plaintiffs purport to make the center of their Opposition in an effort to distract the Court from the real issue: what is in the claims themselves.  Ultimately, no expert opinion can change what the Court can itself ascertain from its own review of the claims: the claimed rules of game play can be carried out by two people using a standard deck of cards.  *See* Dkt. 32 at 8-11.  Thus, Plaintiffs' mischaracterization of Defendants' expert opinion does

---

[3] Plaintiffs' sole support for its assertion is paragraph 16 of its counterstatement of facts (Opposition at 16), which states: "Mr. Friedman testified that a game that requires the press of a button to display a game cannot meet the automatically displaying limitation. (Friedman Dep., at 64:20-66:3)." *See* D.I. 170, ¶ 16.

not render the claims non-abstract.  Despite its immateriality, given Plaintiffs' focus on this issue, Defendants must correct the record:  Defendants' expert did not "offer[] a construction" of the "automatically displaying" limitation.  Nor could he; it is the role of a Court, not experts, to construe patent claims.  *Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) ("[C]laim construction is a matter of law for the court.").  He opined that the "automatically displaying" limitation could be performed by a human, such as a casino dealer "using a physical card game and standard casino gaming table."  *See* Dkt. 171-9, ¶ 155.

## B.    *Alice* Step Two: The '223 Patent Lacks An Inventive Concept.

*"After identifying an ineligible concept at step one, we ask at step two '[w]hat else is there in the claims before us?'"*  This is the question that the Federal Circuit directs this Court to ask.  *See BSG Tech.*, 899 F.3d at 1290.  For the '223 Patent, the answer to the question is: there is nothing *in the claims* beyond implementation of abstract game rules on generic components.  Some claims (1, 3, 5-7, 11 & 37-42) recite only a method for performing the abstract steps.  Other claims (claims 25, 27, 29-31, 33 & 51-56) recite that the game steps are carried out by "program instructions."  The rest of the claims (claims 13, 15, 18-20, 22 & 44) recite that the game steps are carried out by a "game processor" without specifying any components or structure for the processor.

11

None of the rhetoric in Plaintiffs' Opposition can alter the '223 Patent claim language itself, and it is this undisputed language that begins and ends the Court's *Alice* step two inquiry. *See* Opening Br. at 7-8. Plaintiffs seek to avoid summary judgment by manufacturing factual disputes regarding whether certain claim limitations were well-understood, routine, or conventional. But the Court need not reach this question. Once the Court concludes that the '223 Patent is directed to an abstract idea (as it already has), it need only determine that claims do not recite "something more" than the abstract idea itself to find them invalid. The only "something more" Plaintiffs point to is the novelty of the "automatically displaying" step[4] and the "game processor" that is mentioned in only some of the claims. But an abstract step like "automatically displaying" cannot provide the inventive concept under controlling caselaw, regardless of its novelty. *See* Opening Br. at 16-17 (collecting cases). And the claimed "game processor," under the Court's construction, is simply a CPU carrying out the abstract game rules, not something

---

[4] In their Opposition, Plaintiffs conclusorily state in their introduction and in heading VI.B that the "testing" step provides an inventive concept for *Alice* step 2, but do not explain anywhere in the brief how the "testing" step does so. This is hardly surprising given that Plaintiffs and their expert have conceded that prior art Tic-Tac-Fruit games performed a "testing" step before displaying a game field to a player. *See* Opening Br. at 4, n.2, & 15-16. This testing in the Tic-Tac-Fruit prior art also occurred prior to a player deciding to play the game. *See* Dkt. 162-2 at POM000451 (discussing software algorithm "assessing" game field prior to "present[ing] game to player").

12

"specially configured" so likewise cannot provide the inventive concept. Without "something more," there is no fact issue that precludes summary judgment of patent ineligibility.

> **1.    There is no fact issue over the "automatically displaying" step that precludes summary judgment.**

At section VI.B.1 of their Opposition, Plaintiffs contend the Court should deny summary judgment because, at *Alice* step two they argue, there is a fact issue over whether the "automatically displaying" limitation was "well understood, routine, or conventional." Opposition at 17-18.[5] But the Federal Circuit has made plain that a court need not consider whether any claim element is "well understood, routine, or conventional" at *Alice* step two if there is not "significantly more" in the claims beyond the abstract idea itself. *See BSG Tech.*, 899 F.3d at 1290. Like in *BSG*, the claims of the '223 Patent, as construed by this Court, lack the "significantly more." The claims say nothing about *how* the abstract "automatically displaying" step is performed, other than to recite in some of the claims that they are carried out by generically claimed computer components, such as "program instructions" and "game processor."

---

[5] Plaintiffs do not dispute that displaying the game field to the player was in prior art. What is purportedly novel about this display, according to Plaintiffs, is that the display occurred prior to the player deciding to play the game. *See* Dkt. 170-2, Plaintiffs' Expert Report, ¶ 56.

Faced with these issues, Plaintiffs ignore them. First, they point to expert testimony regarding the supposed novelty of the "automatically displaying" step. But the novelty of the step is not the issue. Even were the limitation unconventional at the time of the purported invention, that would *not* mean it is a transformative inventive concept. Novelty does not equate to patentability where claims do not recite more than generic implementation of an abstract idea using computers as tools. *See* Opening Br. at 16-17 (collecting cases on this point, which Plaintiffs fail to refute). This is as true for the "automatically displaying" step as it is for the "testing" step and all the other abstract rules of game play claimed in the '223 Patent.

Second, Plaintiffs' only direct response to *BSG* is to recycle their arguments about *Alice* step one—*i.e.*, that the automatically displaying and testing steps are not abstract. But where, as here, the Court has already found the steps to be directed to the abstract idea of rules of a game, *see* Dkt. 61 at 15, Plaintiffs' must point to more, because "the abstract idea that renders the asserted claims ineligible at step one . . . cannot supply the inventive concept at step two." *PlanetID, LLC v. Digify, Inc.*, No. 19-cv-04615-JST, 2021 WL 567371, at *8 (N.D. Cal. Jan. 12, 2021). Plaintiffs do not point to something more; they just argue that the "automatically displaying" step was new at the time of the patent. Thus, under *BSG*, the Court need not reach questions of routineness, conventionality, or whether this abstract game play step of "automatically displaying" was well-understood; the *Alice* step two inquiry begins

and ends by an examination of the claim language and the determination that nothing more is claimed than abstract rules of game play.  A fact dispute over the conventionality of abstract steps is not a basis for denying summary judgment.  *See* Opening Br. at § VI.C.3 & 4.

### 2.    The generic game processor found in only select claims does not provide the requisite transformative inventive concept.

Plaintiffs try to avoid summary judgment by pointing to the "game processor" of representative claim 44.  But no matter how many times Plaintiffs throw in the buzz words "specifically configured," they cannot change through attorney argument what the '223 Patent claims actually say.

First, two-thirds of the '223 Patent claims do not recite a "game processor" at all; they either recite no means for carrying out the claimed game rules or they claim that these rules are carried out by "program instructions."  *See* Opening Br. at 11-12; *see also supra* at n.3.  This is evidence that the "game processor" is *not* the inventive concept of the '223 Patent as a whole, and, at a minimum, cannot provide the inventive concept for the claims that do not recite the limitation.  *See id.* § VI.C.2.

Second, the '223 Patent claims that do recite a "game processor" do not require that the processor have any "special configuration" or any particular structure or composition at all—just that it carries out the abstract idea.  Indeed, under the Court's construction, a "game processor" is nothing more than "a CPU or microprocessor that executes program instructions to generate a game."  *See* Dkt.

15

112 ¶ 8.  Moreover, neither the "game processor" nor the remaining elements *in the claims* recite anything beyond a generic game processor carrying out abstract rules of game play.  This is fatal to Plaintiffs' effort to tout the processor as the purported inventive concept.  *See Move, Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018) (collecting cases and emphasizing "[w]here *the claim language* does not provide any specific showing of what is inventive about the limitation in question or about the technology used to generate and process it, we have concluded that the claims do not satisfy *Alice*'s second step") (internal quotation marks and alteration omitted) (emphasis added).

Plaintiffs repeatedly try to avoid the plain claim language and argue that it "does not matter" that the claimed processor is generic.  Opposition at 14, 18.  Plaintiffs are wrong.  The claim does not require anything more than the generic processor carrying out the abstract idea itself.  This does not provide an inventive concept as a matter of law.  *See RaceTech v. Ky Downs, LLC*, 167 F. Supp. 3d 853, 865 (W.D. Ky. 2016) ("ordinary computer equipment" does not provide "something more" necessary for patent eligibility); *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 988-91 (D. Nev. 2021) (generic hardware used to play online game not transformative, inventive concept).  If Plaintiffs are suggesting there is something else about the generically claimed processor that would be required to carry out the abstract steps, it is not in the claims, and so cannot provide the inventive concept.

16

*See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident *in the claims.*") (emphasis added); *see also* Opening Br. at § VI.C.1.

Unable to point to language in the claims, Plaintiffs cite to unsubstantiated allegations in the operative Complaint that purportedly demonstrate the details of the claimed processor and they restate their allegations from the motion to dismiss phase that there is inventive "firmware" in the game processor. *See* Opposition at 18-19. But Plaintiffs' unsupported allegations in a pleading cannot preclude summary judgment. Moreover, no factual allegation can change what the claims actually say. Claim 44 simply says a "game processor" carries out the game rules, and there is no detail in the claims that specifies what is supposedly "special" about the processor or how it carries out the rules. *Cf. NEXRF*, 547 F. Supp. 3d at 988 (finding patent ineligible after emphasizing that there was nothing in claim language itself that explained how "any of the purported technical improvements worked"). Tellingly, the '223 Patent never mentions "firmware"—a fatal defect in Plaintiffs' recycled argument that such firmware was supposedly transformative and inventive.

In a further attempt to distance themselves from the claim language, Plaintiffs assert that Defendants' expert made "telling" admissions that purportedly support Plaintiffs' argument that the "game processor" is transformative. Opposition at 19. Plaintiffs are wrong again and once again try to distract the Court by misconstruing

17

expert testimony which is immaterial to the summary judgment analysis. Defendants' expert did not testify that anything in the '223 Patent claims was inventive.[6]  He merely testified that, in theory, an algorithm could "potentially" constitute a technological improvement, and that a technological improvement need not necessarily need be in hardware.  *See* Dkt. 170-4 at 22:1-10, 33:6-35:5.  But a theoretical general possibility does not mean that the '223 Patent claims themselves *actually* recite a technological improvement, and there is no genuine factual dispute that they do.

To be clear, there is no such algorithm in representative claim 44, or in any other '223 Patent claim, that could constitute an inventive concept for *Alice* step two. The Federal Circuit's decision in *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019) illustrates why.  In *Solutran*, the Court examined claims directed to the abstract idea of using data from a check to credit a merchant's account before scanning the check.  *Id.* at 1169.  The Court noted that the claims took known steps and reordered them so that account crediting occurred before check scanning.  *Id.* at 1169.  The claims did not purport to "improve the functioning of the computer itself or effect an improvement in any other technology or technical field."  *Id.* at 1168-69

---

[6] The Court need not rely on expert testimony to conclude that the '223 Patent does not disclose an inventive concept at *Alice* step two.  But so the record is clear, Defendants' expert was explicit at his deposition that the '223 Patent did *not* disclose an algorithm that would constitute a technological improvement.  Dkt. 170-4 at 33:13-34:2.

(citations and quotations omitted).  The Court found any purported novelty of the reordered steps was immaterial to patent eligibility because such reordering was merely reciting the abstract idea.  *Id.*

The parallel of *Solutran* to this case is striking.  There is no genuine issue of fact that the only arguable difference between claim 44 of the '223 Patent and prior art games is that it reorders a step: claim 44 recites the display of a game field "prior to activation of a game" instead of after.  *See* Opening Br. at n.2, pp. 15-16.  Indeed, in response to contention interrogatories, Plaintiffs did not identify any limitation of representative claim 44 of the '223 Patent not met by the prior art Tic-Tac-Fruit game other than the "testing" and "preview" step insofar as they are purported to be performed in a new order (Dkt. 161-6 at Resp. to Rog. 11; *see* Dkt. 170-3 at Resp. to Rog. 14, Ex. A (not identifying any other differences with respect to claim 44)), and in their Opposition Brief, Plaintiffs identify no other differences.[7]  Further,

---

[7] Moreover, Plaintiffs cannot now deny that the prior art Tic-Tac-Fruit game disclosed the testing step before display of the game field to the player.  Plaintiffs' expert has opined that the claimed "testing" step of the '223 Patent has written description support at col. 6, lines 19-33 of the specification.  *See* SOF, Ex. A (Dkt. 161-1) ¶ 126.  This same language is recited, word for word, in an admitted prior art report discussing the prior art Tic-Tac-Fruit game.  *See* SOF, Ex. B (Dkt. 161-2) at p. 2, ¶ 5.  The very next sentence in that report specifies that the game field is displayed to the player *after* what Plaintiffs' expert points to as testing:  "[t]he player is *then* presented with the puzzle to solve for the highest value prize."  *Id.* (emphasis added).

Plaintiffs' counsel has told the Court that this reordering of when the game is displayed to the player is the thrust of the invention:

> [T]he entire context of this invention is about creating a gaming platform that allows for skill to predominate over chance. You either elevate the level of skill in the game, and/or you reduce the role of chance in the game. Obviously, if the player is seeing a critical aspect of the game to be played, then that is lessening the role of chance in the game because the player already knows that attribute.

See Dkt. 115 at 77:23-78:6. Plaintiffs have pointed to no evidence that the '223 Patent claims improve the functioning of computers or represent an improvement in technology. And like Solutran, the reordering of a when step occurs (i.e., the display of the game field), even if novel, would simply be the essence of the abstract game rules themselves—allowing a player to see a game before play. Simply put, merely reordering a sequence of a game field display is not an algorithm constituting a technological improvement, much less an inventive concept.

### 3.    Plaintiffs' authorities do not support denial of summary judgment in this case.

Throughout their Opposition, Plaintiffs cite to district court cases to suggest that a fact dispute precludes summary judgment at Alice step two. But those cases do not rescue the '223 Patent. There was no argument in those cases that, like in BSG and in the '223 Patent, the purported unconventional claimed features were no more than the abstract idea, so the courts necessarily reached the question of whether what was claimed was routine or conventional. See CR Bard, Inc. v.

20

*AngioDynamics, Inc.*, 1:15-CV-218, 2018 WL 3130622, at *10 (D. Del. June 26, 2018) (focusing solely on "the *Alice* Step 2 inquiry into whether claim limitations were well-known, routine, and conventional"); *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH (KSx), 2018 WL 1116530, at *6 (C.D. Cal. Feb. 27, 2018) (discussing that parties' step two arguments focused solely on whether claim elements were well-understood, routine, and conventional); *Maxell, Ltd. v. Apple, Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *9 (E.D. Tex. Nov. 11, 2020) (discussing competing expert opinions regarding whether patent subject matter was generic and conventional due to interplay between components).  Further, Plaintiffs cite various cases (*e.g.*, *In re Smith*; *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-200, 2021 WL 1917131 (E.D. Tex. Apr. 16, 2021)) for the uncontroversial position that gaming patents *may* be found patent-eligible at *Alice* step two *if* there is an inventive concept in the claims sufficient to transform the abstract idea into a patent eligible application.  But Plaintiffs miss the point: in the gaming patent at issue in *this* case, there is no inventive concept that transforms the abstract game rules into something more.  That has also been the case in many other gaming patents (and non-gaming patents) found to be invalid.  *See, e.g.*, Opening Br. at 5-6 (collecting cases invalidating gaming patents).

21

## IV.    CONCLUSION

For the foregoing reasons and those in Defendants' Opening Brief (Dkt. 162), the Court should grant summary judgment in favor of Defendants and declare that the '223 Patent is invalid under 35 U.S.C. § 101.

Dated:  March 15, 2022          Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

23