**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC, a Wyoming limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>Defendants. | Civil Action No. 3:19-cv-01470-JPW<br><br>Honorable Jennifer P. Wilson |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") hereby submit this Response to Plaintiffs' Counterstatement of Material Facts (Dkt. 170)

1.    Defendants' expert, Stacy Friedman, testified at deposition that the "automatically displaying" limitation set forth in Claim 44 of the 223 Patent was not "conventional, well known, and routine" in June 2006, testifying:

> Q.    Well, okay, the -- let's turn to Exhibit Number 1 and to Claim 44 [of the 223 Patent], which is Column 16.  And it says one of the limitations is "automatically displaying an actual game to be played on the touchscreen game display to a player prior to initiating activation of gameplay."

Was that limitation as a whole, in your view, conventional, well known, and

routine in June of 2006?

> A.    I think as a whole, the answer is probably no.  *(See* **Exhibit D,** Excerpts of Tr. of January 7, 2022 deposition of Stacy Friedman ("Friedman Dep."), at 200:4-14).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 1:**  Defendants do not dispute that Plaintiffs have accurately quoted from the deposition of Defendants' expert, Stacy Friedman. Defendants deny Plaintiffs' characterization of Mr. Friedman's testimony; notably, Mr. Friedman did not testify the "automatically displaying" limitation set forth in Claim 44 of the '223 Patent was not "conventional, well known, and routine"; instead, he said it was "probably no[t]."  *See* Friedman Dep. Tr., Dkt. 170-4, at 200:4-14.  Mr. Friedman's quoted testimony and Plaintiffs' characterization thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

2.    During his deposition, Mr. Friedman also admitted that new programming on an existent system could constitute a technological improvement, such that the improvement need not be in the hardware *per se:*

> Q.    In your view, could new programming on an existent system constitute a technological improvement?
>
> A.    In -- in certain cases it could.
>
> Q.    And so you are not saying that the '223 necessarily had to include a hardware improvement in order to have patentable subject matter?
>
> A.    No, I'm not saying that.

(*Id.,* at 22:1-10).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 2:** Defendants do not dispute that Plaintiffs have accurately quoted from the deposition of Defendants' expert, Stacy Friedman.  Mr. Friedman's quoted testimony and Plaintiffs' characterization thereof are immaterial and irrelevant to Defendants' pending Motion for Summary Judgment.  Mr. Friedman's general opinions regarding what may potentially constitute a technological improvement in the abstract says nothing regarding the content of the '223 Patent.

3.     Mr. Friedman also admitted at deposition that a new algorithm applied to generic hardware could constitute non-abstract technological matter worthy of invention. *(Id.,* at 33:6-35:5).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 3**: Defendants deny paragraph 3.  Mr. Friedman's deposition testimony speaks for itself, and Plaintiffs' characterization thereof is denied.  Mr. Friedman  merely testified that, in theory, an algorithm could "potentially" constitute a technological improvement, and that a technological improvement need not necessarily need be in hardware.  *See* Dkt. 170-4 at 22:1-10, 33:6-35:5.  Mr. Friedman's testimony and any characterization thereof is immaterial and irrelevant to Defendants' pending Motion for Summary Judgment. A theoretical general possibility does not mean that the '223 Patent claims themselves *actually* recite a technological improvement

4. Consistent with Mr. Friedman's deposition admission, *see* CSOF ¶ 1, *supra,* POM's expert, Dr. Kevin Harrigan, Ph.D., opined in his report that as described in Claim 44, a game processor specially configured to perform the "testing" limitation and the "automatically displaying" limitation was not conventional, well-understood or routine at the time of the invention. (Harrigan Report, ¶¶ 232-234, 237-238).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 4:** Defendants do not dispute that Plaintiffs have accurately summarized a portion of their expert's report. However, Plaintiffs' expert's opinion and Plaintiffs' characterization thereof is irrelevant and immaterial to Defendants' pending Motion for Summary Judgment. Defendants deny that Dr. Harrigan's expert opinion is "consistent" with Mr. Friedman's deposition testimony. *See* Defendants' Response to ¶ 1.

5. Dr. Harrigan is a computer scientist with expertise in electronic gaming at the time of the 223 Patent invention. *(Id.,* ¶¶ 6-19). He is a person of ordinary skill in the art for purposes of analyzing the patentability of the 223 Patent. *(See id.,* 33-34).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 5**: Defendants deny paragraph 5. The cited paragraphs from Dr. Harrigan's Report do not support the stated assertion. The statements in this paragraph are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment

6.     In his responsive expert report, Dr. Harrigan did not opine that hardware is the inventive concept that makes the claims of the 223 Patent eligible for patentability.  Instead, Dr. Harrigan opined that it is the specially configured game processor that is neither conventional nor generic. *(See id.,* ¶¶ 223, 232-234, 236, 238).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 6:**  Defendants deny this paragraph.    Dr. Harrigan's Report speaks for itself and Plaintiffs' characterizations thereof are denied.   Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

7.     Dr. Harrigan opined that there are different definitions of firmware, and his understanding is that POM's position is that the firmware referenced in the 223 Patent game processor is computer code in binary form located in EPROM:

> In Paragraph 166, the Friedman Report disputes Savvy Dog's reference to firmware.  There are different definitions of firmware.  But I understand this reference by Savvy Dog is to computer code in binary form located in EPROM.
> *See*
> https://courses.lumenlearning.com/zeliite115/chapter/reading-firmware/."

(*Id.*, ¶ 237(f)).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 7**:   Defendants admit only that Plaintiffs have accurately quoted from Dr. Harrigan's Report.  Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

8.      Dr. Harrigan opined in his report that a person of ordinary skill in the art ("POSITA") would understand Claim 44 to be directed to a specially configured game processor, one that was not well understood prior to the 223 Patent. *(Id.,* ¶¶ 232-234, 237-238).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 8:**  Defendants deny this paragraph.   Dr. Harrigan's Report speaks for itself and Plaintiffs' characterizations thereof are denied.   Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

9.      In 2005, the State of Ohio challenged the legality of the version of Tic-Tac-Fruit ("TTF") then in operation, resulting in an October 2005 hearing before the Ohio Liquor Control Commission. *(See generally* **Exhibit E,** Transcript for proceedings before the Liquor Control Commission of the State of Ohio, *In re: FOE Aerie 2171,* Case No. 1342-05, October 19, 2005).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 9**: Defendants deny this paragraph. The transcript of Proceedings before the Liquor Control Commission of the State of Ohio speaks for itself and Plaintiffs' characterizations thereof are denied. The allegations in this paragraph are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment

10.     Mr. Pace subsequently began the process of reprogramming TTF to implement a preview feature and related pre-fetch feature, such that it would meet the Ohio requirements. *(See* **Exhibit F,** Excerpts of Tr. of August 4, 2021 Dep. of Michael Pace, at 40:25-41:3, 68:10-15; *see also* Harrigan Report, ¶ 42).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 10:** Defendants deny this paragraph. Defendants lack knowledge regarding Mr. Pace's alleged reprogramming efforts, and Mr. Pace's deposition testimony speaks for itself. This alleged fact is irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

11.     Dr. Harrigan opined in his report that, to his knowledge, prior to May 2, 2006, there were no electronic games in which the player could preview the outcome of the game before committing to playing that game. (Harrigan Report, 40).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 11:**   Defendants admit that Plaintiffs have accurately summarized paragraph 40 of Dr. Harrigan's Report.   Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

12.    Dr. Harrigan opined in his report that the game processor of Claim 44, as configured, performs a number of steps that take place prior to the initiation of the game including the "testing" step **[44.5],** which takes place immediately before the "automatically displaying" step, which takes place before "initiation activation of game play" **[44.6].** (Harrigan Report, ¶¶ 231-232).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 12:**   Defendants deny this paragraph.   Dr. Harrigan's Report speaks for itself and Plaintiffs' characterizations thereof are denied.   Dr. Harrigan did not opine in paragraphs 231-232 of his Report that the claimed steps take place in the specific order set forth in paragraph 12 of Plaintiffs' Counterstatement of Material Facts.   Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

13.    Dr. Harrigan opined that the "testing" and "automatically displaying" steps, as set forth in Claim 44 of the 223 Patent, do not relate to the rules of how the player may play the game once initiated *(e.g.,* the rules in the prior art TTF such as

where the player can place the "wild symbol" in TTF). *(Id., ¶¶ 232-233; see also id.,*

¶ 334):

> Previous versions of TTF do not disclose this element when read in conjunction with the Automatic Display Element, because a POSITA would understand that prior art TTF did not disclose or perform testing, and automatically displaying the constructed game field *before* initiating activation of game play, which is required by element 44.5 and 44.6.  The Friedman Report does not dispute this. (Friedman Report, ¶ 192 ("...testing, and displaying the game field before `initiating activation of game play[T")).  To the contrary, as shown in this report, a POSITA would understand that any testing in the prior art would only take place after initiation of game play, and therefore, that the prior art TTF computer code was incompatible with the ability to generate and test a game field prior to initiating activation of game play.

(Emphasis in original).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 13:**   Defendants

admit only that Plaintiffs have accurately quoted from Dr. Harrigan's Report.

Defendants deny that Dr. Harrigan opined in cited paragraphs 232-233 and 334 of

his Report that the "testing" and "automatically displaying" steps, as set forth in

Claim 44 of the 223 Patent, do not relate to the rules of how the player may play the

game once initiated.   Dr. Harrigan's opinions and Plaintiffs' characterizations

thereof are irrelevant and immaterial to Defendants' pending Motion for Summary

Judgment.

14.    The "testing" step is performed by the game processor of Claim 44, and is not visible to the player. *(See* Dkt. 111, at 6-7 (Court adopting construction of "prior to displaying" portion of the testing step as "before making visible on the touch screen display")).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 14:**    Defendants deny this paragraph.  The testing step can be performed by humans with a deck of cards.  *See* Dkt. 32 at 9-12.

15.    Dr. Harrigan opined that, as articulated in Claim 44, the "automatically displaying" limitation was counter-intuitive *(e.g.,* showing a player the game to be played, and thus permitting the player to determine how much he or she could win, before placing a wager):

> [F]ar from being conventional or well-understood at the time of invention, configuring an electronic game processor to include the combined Testing/Display Elements would have been counterintuitive to game designers.  *See* Section VI(A), *supra.* This specially configured electronic game processor permits the player to see the game board itself before initiating play and allowing the player to decide whether he/she has the skill to win the actual game to be played before he/she commits funds to play the game.  Logically, the player would not want to proceed to play a game that he/she lacked the skill to win.

(Harrigan Report, ¶ 234; *see also id.,* ¶ 43).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 15:**    Defendants admit only that Plaintiffs have accurately quoted from Dr. Harrigan's Report.  Dr. Harrigan's opinions and Plaintiffs' characterizations thereof are irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

16.    Mr. Friedman testified that a game that requires the press of a button to display a game cannot meet the automatically displaying limitation. (Friedman Dep., at 64:20-66:3).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 16**:    Defendants deny this paragraph.  In the testimony cited by Plaintiffs, Defendants' expert opined that if a game requires a player to take some action in order for a game field to be displayed to the player, that game *is not* "automatically displaying" the game field to the player.  That opinion does not mean that a game that *does* carry out the "automatically displaying" step cannot be performed by a human (*e.g.*, by a human dealer).  Defendants' expert did *not* opine that a human could not carry out the "automatically displaying" step.  Rather, he testified about the opinion stated at paragraph 40 of his reply report: *i.e.*, if a game requires a player to take some action in order for a game field to be displayed to the player, that game *is not* "automatically displaying" the game field to the player.  See Dkt. 170-4, Friedman Dep. Tr., at 64:20-66:3.  That opinion does not mean that a game that *does* carry out the "automatically displaying" step cannot be performed by a human (*e.g.*, by a human

- 11 -

dealer).[1]  The testimony cited in this paragraph and Plaintiffs' characterization thereof is irrelevant and immaterial to Defendants' pending Motion for Summary Judgment.

17.    Numerous developments in auto safety, such as vehicle bumper designs, have arisen from safety regulations. *(See, e.g.,* **Exhibit G,** U.S. Patent No. 7,625,022, at 1:25-2:14 (patent for vehicle bumpers citing existing vehicle regulations); **Exhibit H,** U.S. Patent No. 9,376,955, at 1:44-2:47 (patent for optimization of engine combustion, discussing "stringent emissions regulations" in the patent background); **Exhibit I,** U.S. Patent No. 10,287,943, at 1:14-3:20 (patent for duel-fuel and after treatment for heavy-heavy duty diesel, discussing regulations enacted to reduce smog)).

**DEFENDANTS' RESPONSE TO PARAGRAPH NO. 17**:  Defendants deny this paragraph.  The cited patents speak for themselves.  These patents are irrelevant and immaterial to Defendants' Motion for Summary Judgment.  Unlike these patents (none of which have apparently undergone judicial scrutiny for patent eligibility and all of which purport to improve vehicle bumper assemblies and combustion engine technologies), the '223 Patent does not describe or claim any

---

[1] Indeed, as Plaintiffs' conveniently ignore, Defendants' expert expressly opined that the "automatically displaying" limitation could be performed by a human, such as a casino dealer "using a physical card game and standard casino gaming table." *See* Dkt. 171-9, S. Friedman Opening Rpt. ¶ 155.

- 12 -

invention resulting in *technical* advance.   Thus, what these patents say is both immaterial and irrelevant to what is in the '223 Patent and to Defendants' pending Motion for Summary Judgment.

Dated:  March 15, 2022          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed on this 15th day of March, 2022 via the Court's CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

*/s/John V. Gorman*
John V. Gorman