## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM of Pennsylvania, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC <br><br> Defendants. | CIVIL ACTION NO: 3:19-cv-01470-JPW <br><br><br> Honorable Jennifer P. Wilson |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF KEVIN HARRIGAN, PH.D.

John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and
PA Coin Holdings, LLC*

Dated:  March 15, 2022

## TABLE OF CONTENTS

**Page**

A.    Introduction ...................................................................................1

B.    Plaintiffs Fail to Justify Why Dr. Harrigan Should be Allowed
      to Rely on Mr. Lowe's Improper Testimony ......................................1

      1.    Plaintiffs do not dispute material aspects of Defendants'
           Motion. ...................................................................................2

      2.    Dr. Harrigan should not be allowed to rely on Mr.
           Lowe's declaration and Plaintiffs' arguments to the
           contrary do not show otherwise. .................................................3

      3.    Plaintiffs' case law is readily distinguishable from this
           case. ......................................................................................6

C.    Defendants Are Not Seeking to Preclude Dr. Harrigan From
      Offering Opinions Based on Documents That He Personally
      Reviewed and for Which He Properly Disclosed His Analysis
      and Conclusions. .............................................................................8

D.    Plaintiffs Agree That Experts Should Not Opine on Witness
      Credibility, But Wrongly Refuses to Withdraw Opinions of Dr.
      Harrigan Doing Just That. ...............................................................10

E.    Conclusion.....................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016).......................................................................7

*Fontem Ventures, B.V. v. NJOY, Inc.*,
  No. CV 14-1645, 2015 WL 12743861 (C.D. Cal. Oct. 22, 2015).......................10

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-cv-33-JRG, 2016 WL 3475688 (E.D. Tex. Jan. 7, 2016) ....................7

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004)................................................................11, 12

*TQP Dev., LLC v. Merrill Lynch & Co.*,
  No. 2:08-CV-471, 2012 WL 3283356 (E.D. Tex. Aug. 10, 2012).......................7

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A)(i) .................................................................................5

Fed. R. Evid. 801-803 .............................................................................................6

Fed. R. Civ. P. 30(b)(6)............................................................................................4

## A.    Introduction

Plaintiffs' Opposition concedes that their expert, Dr. Harrigan, should not be permitted to testify regarding an individual's credibility.  Dr. Harrigan's related opinions and testimony should thus be excluded.  Plaintiffs also do not dispute, among other things, that Mr. Lowe was not disclosed as an expert in this case, failed to identify what NudgeMaster code files and functions (if any) he reviewed, and did not disclose what (if any) methodology he followed in reviewing the code.  And Plaintiffs' explanation as to why Defendants had notice of Mr. Lowe's relevant testimony and claim that Dr. Harrigan should be allowed to rely on the late and improper testimony is based on a mischaracterization of the facts and law.  As shown in Defendants' Motion and this Reply, the Court should preclude Dr. Harrigan from parroting back conclusory and unsubstantiated statements from Mr. Lowe's declaration.

## B.    Plaintiffs Fail to Justify Why Dr. Harrigan Should be Allowed to Rely on Mr. Lowe's Improper Testimony

Plaintiffs' Opposition (Dkt. 171) ("Opp.") asserts that Dr. Harrigan should be allowed to rely on the entirety of Mr. Lowe's declaration, including Mr. Lowe's summary and unsubstantiated conclusions about NudgeMaster source code and Mr. Lowe's foundationless and conclusory statements regarding particular NudgeMaster game themes.  But Plaintiffs offer nothing that justifies why Dr. Harrigan should be

permitted to relay Mr. Lowe's purported conclusions to the jury and misleadingly pass them off as findings of his own.

### 1.    Plaintiffs do not dispute material aspects of Defendants' Motion.

Plaintiffs do not dispute that Mr. Lowe was not disclosed as an expert (source code or otherwise) in this case, with qualifications necessary to competently review, analyze, and render opinions on source code.  This alone warrants preclusion of Mr. Lowe's findings from being introduced through Dr. Harrigan (or any other means) at trial.

Plaintiffs also do not dispute that Mr. Lowe failed to identify what NudgeMaster code files and functions he purportedly reviewed (*see* Reply Brief, Ex. D (Harrigan Tr.) at 218:24-219:10); never described what, if any, methodology he followed in reviewing the code (*see id.* at 231:4-18, 232:7-20, 233:16-234:2); and never disclosed what, if any, source code review tools Mr. Lowe used and how he used them (*see id.*).  Dr. Harrigan did not know even these basic details about Mr. Lowe's purported source code review.  *See* Defendants' Mot. (Dkt. 163) at 13. Because there are serious unanswered questions that bear directly on the reliability of Mr. Lowe's finding, preclusion is warranted for this reason as well.

**2.    Dr. Harrigan should not be allowed to rely on Mr. Lowe's declaration and Plaintiffs' arguments to the contrary do not show otherwise.**

Plaintiffs assert that Dr. Harrigan can rely on Mr. Lowe's declaration "because an expert has a duty to explain the facts and reasons underlying the opinions they hold." Opp. at 13. But Dr. Harrigan's opinions cannot be formed based on late-disclosed declaration testimony consisting of conclusory statements lacking sufficient foundation and explanation.

Plaintiffs' Opposition mischaracterizes the circumstances under which Mr. Lowe's existence, and the possibility of Mr. Lowe possessing relevant testimony, was discovered by Defendants. Even though Mr. Lowe is employed by a Savvy Dog affiliate, Plaintiffs never disclosed Mr. Lowe during fact discovery and never identified him by name, along with subjects he was knowledgeable about, on Plaintiffs' initial disclosures. *See* Opp., Ex. C (Plaintiffs' Fifth Supplemental Disclosures) at 3-6. When Plaintiffs provided a 30(b)(6) designee on a topic related to NudgeMaster, they did not identify Mr. Lowe as that designee or as a person with relevant information. Plaintiffs' 30(b)(6) designee on the NudgeMaster topic (Mr. Cline) confirmed that "the only individuals he for sure spoke with regarding NudgeMaster were Mr. Pace and Mr. Cummings." Opp., Ex. D. (Aug. 31, 2021 correspondence from A. Dudash). Mr. Cline also admitted that he never spoke with anyone regarding NudgeMaster software versions. *Id.*

3

Defendants only learned of Mr. Lowe's existence and his purported possession of potentially relevant testimony on August 30, 2021—the *last day of fact discovery*—during the deposition of a third-party witness.[1]  *See id.*

After learning of Mr. Lowe's existence and potentially relevant knowledge on the last day of fact discovery, Defendants requested that Plaintiffs provide a 30(b)(6) witness who was adequately prepared to answer questions concerning NudgeMaster. *See, e.g.*, Opp., Ex. D.  Defendants also supplemented their initial disclosures to identify Mr. Lowe, for the first time, as a person "likely to have information regarding . . . the game Nudgemaster."  Opp., Ex. B (Defendants Sept. 1, 2021 Amended Initial Disclosures) at 2.  But Plaintiffs did not update their disclosures to include Mr. Lowe, indicating that they had no intention of relying on him in this case.  In a footnote, Plaintiffs suggest that they did disclose Mr. Lowe in their Fifth Supplemental Disclosures—served on August 27, 2021 (five days before Defendants' September 1, 2021 disclosures first identified Mr. Lowe)—because

---

[1] The initial fact discovery cut-off was August 30, 2021.  That deadline was extended twice—to September 2, 2021 (*see* Dkt. 148 at 2) and to September 30, 2021 (*See* Dkt. 152 at 2).  These deadlines were extended solely for the purposes of allowing inspection of gaming terminals and source code, and for completing depositions. *See* Dkt. 148 at 2 n. 2 ("[F]act discovery [deadline extended] solely for the purposes of 1) conducting the scheduled inspection of gaming terminals by PA Coin's expert, on August 31, 2021 and (2) completing the deposition of third-party witness Grant F. Kowell, on September 2, 2021.  No additional fact discovery shall be allowed during this extended period."); Dkt. 152 at 2 n.1 ("[F]act discovery [deadline extended] solely for the purposes of (1) completion of the Rule 30(b)(6) deposition of Savvy Dog Systems, LLC and (2) [inspection and production of] source code.").

those Fifth Supplemental disclosures included the boilerplate catchall: "Any individual or entity identified on Defendants' initial or supplemental disclosures." *See* Opp. at 2 n.1 (citing Opp., Ex. C at 6). But Plaintiffs did not identify the information required by Rule 26. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the subjects of [the discoverable] information – that the disclosing party may use to support its claims or defenses"). This cannot suffice.

Plaintiffs reference several times that the information from Mr. Lowe's declaration was purportedly provided during 30(b)(6) depositions. Opp. at 13, 2. Not so. As discussed above, Plaintiffs' 30(b)(6) witness (Mr. Cline) was not prepared to testify on the NudgeMaster topic. *See* Opp., Ex. D. To try to remedy this deficiency, Plaintiffs had Mr. Cline speak with Mr. Lowe and then made Mr. Cline available for a follow-up 30(b)(6) deposition. Thus, instead of providing Mr. Lowe for deposition and identifying him as a witness that Plaintiffs intended to rely on, Plaintiffs sandbagged Defendants with the voluminous declaration from Mr. Lowe well after the close of fact discovery and only in connection with Dr. Harrigan's rebuttal expert report.

The Court should not permit such gamesmanship. If Mr. Lowe's testimony was already presented through 30(b)(6) depositions during fact discovery—or was within the knowledge of the witness Plaintiffs presented (Mr. Cline) on the NudgeMaster topic—as Plaintiffs suggest (*see* Opp. at 2), they would not need Mr.

Lowe to prepare and submit a voluminous 10-page, 43-paragraph declaration with a myriad of exhibits.

Plaintiffs further assert that "a jury can evaluate the Lowe Declaration and reliance thereon." Opp. at 13. But the Lowe Declaration is hearsay and is not admissible evidence that should be presented to or considered by the jury. *See* Fed. R. Evid. 801-803. Also, this Court, not the jury, evaluates the legal questions regarding the admissibility and lack of foundation raised herein.

Plaintiffs finally state that Dr. Harrigan relies upon facts in Mr. Lowe's declaration that are independent of source code review, and therefore not within the purview of Defendants' motion. Opp. at 14. Not so. Defendants' motion seeks to exclude reliance on any of the facts in Mr. Lowe's declaration because the entirety of the testimony was not timely disclosed and the statements therein are conclusory and lack adequate foundation.

### 3. Plaintiffs' case law is readily distinguishable from this case.

Plaintiffs' Opposition makes no attempt to distinguish the cases cited by Defendants (*Van v. Ford Motor Co.*, *Iconics, Inc. v. Massaro*, and *Orthoflex, Inc. v. ThermoTek, Inc.*) recognizing that courts routinely find an expert cannot just blindly follow and parrot what an interested witness, such as Mr. Lowe, claims to have found without conducting an independent analysis confirming those findings.

Tellingly, Plaintiffs cite no case where a court has allowed an expert to rely on and relay to the jury summary findings about source code provided by a lay witness.  Rather, in *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 3475688, at \*3 (E.D. Tex. Jan. 7, 2016), a case cited by Plaintiffs, the expert who rendered source code opinions personally reviewed the source code (which Dr. Harrigan did not) and further provided an analysis of the code identifying the specific code considered (something not even provided by Mr. Lowe).  In *TQP Dev., LLC v. Merrill Lynch & Co.*, No. 2:08-CV-471-WCB, 2012 WL 3283356, at \*2-3 (E.D. Tex. Aug. 10, 2012), another case cited by Plaintiffs, the defendant's expert rendered an opinion based on how the plaintiff, not an interested party witness (like Mr. Lowe), asserted the software algorithm at issue operated.  In *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81 at 115-16 (D. Del. 2016), also cited by Plaintiffs, the expert relied on the testimony of the defendant company's software architect, but that testimony was provided at deposition (where cross-examination could occur) and did not concern a review into whether source code had or did not have particular functionality.

**C.    Defendants Are Not Seeking to Preclude Dr. Harrigan From Offering Opinions Based on Documents That He Personally Reviewed and for Which He Properly Disclosed His Analysis and Conclusions.**

Defendants' *Daubert* Motion does not seek to strike Dr. Harrigan's opinions attempting to rebut Mr. Friedman's opinions that were properly disclosed, reached on his own, and based on facts and evidence that Dr. Harrigan himself analyzed.[2] But Dr. Harrigan should not be permitted to relay a factual narrative, riddled with unsubstantiated conclusions, based entirely on statements from Mr. Lowe and, in particular, concerning matters of which Mr. Lowe has not been shown to have any personal knowledge.

For example, paragraphs 157-158 and 160-169 of the Harrigan Report are all reliant on, and copied virtually verbatim from, paragraphs of the Lowe Declaration regarding games purportedly designed for Michigan.  *See, e.g.*, Mot., Ex. A (Harrigan Rep.) ¶¶ 157-58, 160-169 (copying virtually verbatim the opinions and conclusions rendered in Mr. Lowe's declaration), 161, 162, 164 (citing Lowe Declaration as primary support, and then stating that the version history "confirm[s]" that assertion); *see also, e.g., id.* ¶¶ 163, 166-168 (citing only Lowe Declaration in support); *compare with* Mot., Ex. B (Lowe Declaration) ¶¶ 32-35, 37-45.  Even Dr. Harrigan's statement regarding the Version History, which Plaintiffs assert was

---

[2] Defendants reserve the right to object to Dr. Harrigan's opinions on other grounds at trial and/or to otherwise move to exclude and/or strike related testimony.

8

independently considered by Dr. Harrigan, was copied virtually verbatim from Mr. Lowe's declaration. *See, id.*; *compare*, *e.g.*, Harrigan Rep. ¶¶ 134, 137, 139, 147-49, *with* Lowe Decl. ¶¶ 13, 18, 20, 25-27. Given the rampant copying from Mr. Lowe's declaration, it is not credible that Dr. Harrigan carefully reviewed any of this information independently and used it to form opinions of his own. *See, e.g.*, Harrigan Tr. at 50:1-15 (Dr. Harrigan admitting that he never spoke with Mr. Lowe or anyone that worked at Pace-O-Matic, and that he only ever spoke with Mr. North (counsel for Plaintiffs) regarding NudgeMaster code to form his opinions).

Dr. Harrigan should also not be allowed to blindly relay statements from Mr. Lowe's declaration regarding the Michigan games because it has never been established that Mr. Lowe has any personal knowledge of the Michigan games. It would be highly inappropriate and prejudicial to allow Dr. Harrigan to parrot and relay to the jury purported facts about the Michigan games, much less conclusions based on those purported facts, when there is nothing that provides a foundation for or even a measure for assessing the reliability of those purported facts and conclusions.

Plaintiffs' Opposition attempts to justify Dr. Harrigan's reliance on Mr. Lowe's declaration on the basis that experts have a duty to disclose the "facts and reasons for their opinions." Opp. at 15. While true, an expert may not rely on such information if those "facts" are improperly disclosed or unreliable (*e.g.*, lacking

foundation)—such as Mr. Lowe's declaration. *Fontem Ventures, B.V. v. NJOY, Inc.*, No. CV 14-1645-GW(MRWx), 2015 WL 12743861, at *8 (C.D. Cal. Oct. 22, 2015) (finding that an expert's opinions "lack the proper factual foundation to be sufficiently reliable to be admissible as expert testimony under the *Daubert* standard"). To the extent Dr. Harrigan formed an opinion based on evidence he personally reviewed, Defendants do not move to preclude Dr. Harrigan's admissible testimony. However, Dr. Harrigan's reliance on the Lowe Declaration—whether as primary support or as confirmatory or supporting evidence—is improper and should not be presented to the jury.

Plaintiffs' argument in Section IV.B.4 is unclear. *See* Opp. at 19. As discussed above, Defendants are not moving to preclude Dr. Harrigan from offering opinions based on evidence that was timely and properly disclosed. However, Defendants do object to the admissibility of Mr. Lowe's declaration and therefore disagree that Dr. Harrigan may base any opinion "upon [Dr. Harrigan's] review of the Lowe. . .Declaration[]" (*id.* at 19).

### D. Plaintiffs Agree That Experts Should Not Opine on Witness Credibility, But Wrongly Refuses to Withdraw Opinions of Dr. Harrigan Doing Just That.

Plaintiffs do not dispute that it is improper for an expert witness such as Dr. Harrigan to testify as to the credibility of witnesses at trial. Nonetheless, Plaintiffs insist that Dr. Harrigan should be allowed to offer the entirety of the opinions

contained in paragraphs 57, 99, and 221 of his report,[3] which were objected to by Defendants as containing narrative and opinions regarding witness credibility.

With respect to paragraph 57, Plaintiffs assert that this is simply an "observation regarding inventorship." Opp. at 20. But, in this paragraph, Dr. Harrigan is clearly opining on what he thinks Mr. Pace was thinking nearly two decades ago: "Mr. Pace alone appreciated the need and difficulty of developing this pre-fetch feature . . . ." Mot., Ex. A ¶ 57. If the jurors are to hear about what Mr. Pace was thinking, they should not hear it from someone other than Mr. Pace. It is inappropriate for Dr. Harrigan to intrude in this decision-making and improperly influence the jurors by providing his own views as to what Mr. Pace purportedly believed.

With respect to paragraph 99, Defendants do not now move to preclude Dr. Harrigan from testifying about the contents of Mr. Kowell's provisional patent applications. But the Court should now preclude Dr. Harrigan from testifying about what he thinks Mr. Kowell was thinking at the time and, moreover, whether Mr. Kowell had a "good explanation" about the contents of his patent applications. Plaintiffs' opposition fails to offer any reason why it would be appropriate for Dr. Harrigan to put his spin on these matters when testifying before the jury. *See Oxford*

---

[3] Plaintiffs do not dispute that Dr. Harrigan should be precluded from offering the opinions in paragraphs 140 and 188, also objected to by Defendants.

*Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004) (excluding expert's opinions on "intent, motive, or state of mind, or evidence by which such state of mind may be inferred" because "such an opinion was 'equally within the competence of the jurors to understand and decide'") (quoting *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988)).

With respect to Paragraph 221, the sole purpose of these opinions is to cast doubt on the veracity of Mr. Gearhiser's testimony. Indeed, Dr. Harrigan begins by asserting that Mr. Gearhiser failed to "express[] confidence" in prior hearing testimony, and further insinuates that Mr. Gearhiser's deposition testimony should be regarded with skepticism "considering the amount of time (16 years) that passed between the time of the October 2005 hearing and the time of the deposition." Ex. A ¶ 221. Dr. Harrigan then goes on to render an ultimate opinion on credibility: "[n]o one knows or can know with any degree of certainty what Mr. Gearhiser is now saying he had confidence in 16 years ago . . . ." *Id.* These are exactly the type of opinions that Plaintiffs have agreed are inappropriate and should be precluded from trial.

### E.    Conclusion

For the above reasons, the Court should grant Defendants' motion to preclude Dr. Harrigan from presenting his spin and opinions on these matters.

Dated:  March 15, 2022          Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

*/s/John V. Gorman*
John V. Gorman (PA 80631)
Kenneth J. Davis (PA 87944) (admitted *pro hac vice*)
Amy M. Dudash (PA 311898) (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5000
Fax:  215.963.5001
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone:  650.843.4000
Fax:  650.843.4001
ahren.hsu-hoffman@morganlewis.com
austin.zuck@morganlewis.com

*Attorneys for Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that Defendants' Reply To Plaintiff's Response To Defendant's Motion To Exclude was filed via the Court's CM/ECF system on this 15th day of March, 2022, which will send notice of this filing to all counsel of record.

*/s/John V. Gorman*
John V. Gorman

14