# Morgan Lewis

August 2, 2022

**VIA CM/ECF**

The Honorable Jennifer P. Wilson
Ronald Reagan Federal Building & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

Re:    <u>*Savvy Dog Sys., LLC, et al. v. Pennsylvania Coin, LLC, et al.*, No. 3:19-cv-01470-JPW</u>

Dear Judge Wilson:

Pursuant to Your Honor's July 19 Order (Dkt. 184), Defendants submit this letter regarding cases that Plaintiffs first raised during the motion for summary judgment oral argument—*EcoServices, LLC v. Certified Aviation Services, LLC*, 830 F. App'x 634 (Fed. Cir. 2020); *Core Wireless S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017); and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).  None of these cases change that U.S. Patent No. 7,736,223 (the "'223 Patent") claims patent-ineligible subject matter.

Contrary to Plaintiffs' assertions (July 19, 2022 Hr'g Tr. at 64:25-65:5), none of these cases point to "configured for" language as being central to a determination of patent-eligibility.  Nor do these cases hold that a CPU or microprocessor claimed as "configured for [something]" transforms a claim from being abstract to non-abstract or provides an inventive concept as Plaintiffs argued (*id.* at 40:9-11, 51:14-16, 63:8-11).  Indeed, *Alice* and other cases have rejected the invocation of magic "configured" language to confer patent eligibility.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014) (rejecting idea that "applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept" as "eviscerating" patent-eligibility rules); *see also, e.g.*, *Accenture Global Servs., GmbH v. Guideware Software, Inc.*, 728 F.3d 1336, 1338, 1344-45 (Fed. Cir. 2013) (rejecting as patent-ineligible patent claiming database "configured for"); *Konami Gaming, Inc. v. High 5 Games, LLC*, No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120, at *2, *19 (D. Nev. Feb. 22, 2018) (rejecting as patent-ineligible patents claiming "processor configured").

### *EcoServices, Core Wireless, and Visual Memory Do Not Alter the Court's Alice Step 1 Analysis.*

Three of the supposedly dispositive cases Plaintiffs raised during oral argument—*EcoServices*, *Core Wireless*, and *Visual Memory*—solely address *Alice* Step 1.  None of these cases undermine (let alone provide a basis for reversal of) the Court's previous holding that the '223 Patent is directed to the abstract idea of rules for playing a game.

These cases all stand for the proposition that where a patent claims a **technical solution** to an existing problem, the patent may be directed to a non-abstract idea at *Alice* Step 1.  *See EcoServices*, 830 F. App'x at 643 (emphasizing technological improvements described in patent specification "are important to our determination that the claims provide a technical improvement to jet engine washing" and that claimed "specific combination of" identified components "create

technical improvements"); *Core Wireless*, 880 F.3d at 1363 (finding claims were not directed to abstract idea because they "recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices" and are thus "are directed to an improvement in the functioning of computers"); *Visual Memory*, 867 F.3d at 1257, 1258, 1260 (discussing that asserted patent claims "reflect . . . technological improvements" and recite "an allegedly new, improved, and more efficient memory system"—a contrast to patents directed to abstract ideas which were "not directed to an improvement in computer functionality"). Unlike in these cases, the '223 Patent does not claim any technical solution to an existing problem. Instead, the claimed invention merely purports to leverage an existing legal construct in the gaming field (previewing a game to a player to make the game one of skill, not chance) without reference to any technological improvement; that is the undisputed reason for the purported invention. *See* July 19, 2022 Hr'g Tr. at 61:25-63:7. All that is claimed in the '223 Patent is using generic computer components, such as "program instructions" and "game processor," to carry out the abstract rules of game play—rules which people can carry out with a deck of cards. *See* Dkt. 32 at 8-11.

Further, unlike in *EcoServices*, *Core Wireless*, and *Visual Memory*, nothing in the '223 Patent specification explains that the claimed invention is an improvement over any existing technology or process. *See EcoServices*, 830 F. App'x at 642-43 (emphasizing that specification's "described advantages" of claimed invention over human-operated washing machines was "important to [ ] determination that the claims provide a technical improvement," and did not merely recite abstract idea); *Core Wireless*, 880 F.3d at 1363-64 (noting "specification confirms that the[] claims disclose an improved user interface for electronic devices, particularly those with small screens"); *Visual Memory*, 867 F.3d at 1259 (discussing specification's disclosure of technical benefits over prior art). Nor do Plaintiffs point to any disclosure in the '223 Patent specification disclosing any technological problem in the gaming arts for which the claimed invention provides a solution.

The abstract rules of game play claimed in the '223 Patent bear no resemblance to the "specific combination" of units and a detector "configured in a certain way to create technical improvements to systems for washing jet engines" of the *EcoServices* patent, the "improved computer memory system" of the *Visual Memory* patent, or the "improved user interface for computing devices" of the *Core Wireless* patent. Thus, *EcoServices*, *Core Wireless*, and *Visual Memory* are inapposite. *Cf. Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363-65 (Fed. Cir. 2020) (determining *Visual Memory* and *Core Wireless* were irrelevant where claims of patent-at-issue were not directed to directed to particular improvement in computer functionality); *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 638-40 (D. Del. 2018) (same).

### *EcoServices Does Not Alter that Claimed Steps That Can Be Carried Out By Humans, Without More, Are Patent Ineligible.*

At the summary judgment oral argument, Plaintiffs argued that *EcoServices* altered the *Alice* Step 1 patentability landscape. *See* July 19, 2022 Hr'g Tr. at 42:24-43:16 (Plaintiffs' counsel arguing whether humans can carry out the claimed invention has less weight than previously accorded at *Alice* Step 1 based on a non-precedential Federal Circuit panel opinion). Plaintiffs are incorrect.

In *EcoServices*, the majority—quoting an earlier case—recognized that "processes that automate tasks that humans are capable of performing are patent eligible ***if properly claimed***." 830 F. App'x at 645 (quoting *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir.

2016) (emphasis added)).  But, acknowledging that a new automation technology may be properly claimed is a far cry from holding that merely invoking computers as a tool to perform tasks performed by humans renders a claim non-abstract.  *See Core Wireless*, 880 F.3d at 1361 (distinguishing improvements in computing capabilities from "'abstract idea[s]' for which computers are invoked merely as a tool").  Moreover, the '223 Patent does not "properly claim" a non-abstract automated process for carrying out the claimed game rules.  Indeed, the "game processor" that purportedly automates certain steps of game play is not even mentioned in most of the '223 Patent claims.  And, even in those limited claims that recite a game processor, the claim language demonstrates that the game processor is a tool that "provides a generic environment in which to carry out the abstract" rules of game play—precisely what the *EcoServices* Court (citing numerous other Federal Circuit cases) cautioned was insufficient to "save" an abstract idea "from its abstractness."  830 F. App'x at 643 n.5.

*EcoServices* is in line with *Alice* and its progeny and reaffirms what "[c]ourts have repeatedly held": "if a claim takes an abstract idea—something that humans have done for a long time—and does nothing more than make use of a generic computer to perform that task faster or more accurately than a human could, then the claim is ineligible."  *HLFIP Holding, Inc. v. York Cty.*, --- F.3d ----, 2022 WL 1213585, at *8 (M.D. Pa. Apr. 25, 2022) (Wilson, J.).  If a patent claim goes beyond recitation of a generic computer to automate a task humans could perform and instead recites "an improvement to the relevant technology" used to automate a human process, then the claim may recite a non-abstract idea.  *See EcoServices* 830 F. App'x at 638.  The majority in *EcoServices* found the patent-at-issue claimed a technological improvement based on disclosures in the specification which are absent from the '223 Patent.  *EcoServices* cannot alter what is absent from the '223 Patent:  a specifically claimed technological improvement.

### DDR Holdings Does Not Salvage the Validity of the '223 Patent at Either Alice Step 1 or 2.

*DDR Holdings* does not salvage the patentability of the '223 Patent at either step of the *Alice* analysis.  In *DDR*, the Federal Circuit held claims directed to new methods of creating a "hybrid web page" recited patent-eligible subject matter "because they [did] not broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity)."  773 F.3d at 1258.  Instead, the claims "specif[ied] *how* interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  *Id.* (emphasis added)

At *Alice* Step 1, the Court noted that the subject matter at issue involved a "challenge particular to the Internet" that impliedly is not abstract, but held that "under any [ ] characterization of the abstract idea, the [ ] patent's claims satisfy *Mayo/Alice* step two."  *Id.* at 1257.  Like the patent-eligible claims of *Visual Memory*, *Core Wireless*, *and EcoServices*, in *DDR* too, the claims were held to recite patent-eligible subject matter because the claimed invention was a solution to a technological problem.  773 F.3d at 1257 (emphasizing claimed invention was "necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks").  As discussed above, the same is not true in the '223 Patent.  Further, the '223 Patent does "not address problems unique to the Internet, so *DDR* has no applicability."  *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) (finding *DDR* inapposite where patent-at-issue did not involve internet-specific issues).

Respectfully submitted,

*/s/ John V. Gorman*
John V. Gorman