## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAVVY DOG SYSTEMS, LLC, and POM OF PENNSYLVANIA, LLC, | : | Civil No. 3:19-CV-01470 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion for summary judgment filed by Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC. (Doc. 155.) Defendants argue that the patent at issue claims patent-ineligible subject matter pursuant to 35 U.S.C. § 101. Applying the standard established by the Supreme Court in *Alice Corporation Pty. Ltd. v. CLS Bank International*, and incorporating this court's prior holding that the '223 Patent fails *Alice* step one, the court holds that the '223 Patent does not transform the abstract idea of rules for playing a game into an inventive concept as required by *Alice* step two. For the reasons that follow, the court will grant Defendants' motion. (Doc. 155.)

### PROCEDURAL HISTORY

Plaintiffs Savvy Dog Systems, LLC ("Savvy Dog") and POM of Pennsylvania, LLC ("POM") (collectively, "Plaintiffs") initiated this action via complaint on August 23, 2019, against Defendants Pennsylvania Coin, LLC and

PA Coin Holdings, LLC (collectively, "Defendants").  Defendants filed a motion

to dismiss, prompting Plaintiffs to file an amended complaint on November 1,

2019.  (Docs. 21, 25.)  The single count in the amended complaint sets forth a

claim for patent infringement under 35 U.S.C. § 271 of Savvy Dog's Patent

Number: US 7,736,233 ("'223 Patent").  (Doc. 25.)

On November 15, 2019, Defendants filed a motion to dismiss Plaintiffs'

amended complaint, arguing that the '223 Patent claims patent-ineligible subject

matter under 35 U.S.C. § 101 and, alternatively, that Plaintiffs failed to plead a

plausible direct infringement claim and willful infringement claim.[1]  (Doc. 31.)

Following briefing and oral argument, the court held that claim 44, which the

parties agreed was representative of the '223 Patent, describes the rules for playing

a game and was an abstract idea under step one of *Alice Corporation Pty. Ltd. v.

CLS Bank International*, 573 U.S. 208 (2014).  (Doc. 61, pp. 9–15.)[2]  Moving to

*Alice* step two, the court concluded that "[w]hether the technology embedded into

the game processor is an improvement and 'inventive concept' is a question of

fact" that could not be decided at the motion to dismiss stage.  (*Id.* at 15–19.)

Ultimately, the court denied the motion to dismiss in its entirety.  (Docs. 61, 62.)

---

[1] Plaintiffs agreed to withdraw the willful infringement claim without prejudice in their
opposition to the motion to dismiss.  (Doc. 37, p. 23.)

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

Defendants subsequently answered the complaint and filed counterclaims for non-infringement and invalidity of the '223 Patent.  (Doc. 63.)

On September 15, 2020, the court held a claim construction hearing and issued its ruling on December 21, 2020.  (Docs. 111, 112.)  Based on the court's claim construction ruling, Plaintiffs moved the court to enter judgment in favor of Defendants on Plaintiffs' infringement claim and to certify the judgment under Federal Rule of Civil Procedure 54(b) so that they could immediately appeal the court's claim construction ruling.  (Doc. 117.)  Therein, Plaintiffs disagreed with the court's ruling but conceded that, based on the court's claim construction ruling, they could not establish that Defendants infringed the '223 Patent.  (Doc. 118, p. 2.)  After the motion was fully briefed and argued, the court denied the motion and permitted this case to proceed to a final judgment.  (Doc. 136.)

On January 28, 2022, Defendants timely filed a motion for summary judgment on the ground that the '223 Patent is invalid under 35 U.S.C. § 101, as well as a statement of facts and brief in support.[3]  (Docs. 155, 161, 162.)  Plaintiffs timely opposed the motion, and Defendants filed a reply.  (Docs. 169, 170, 172, 173.)  On March 15, 2022, Defendants requested oral argument on their motion,

---

[3] Defendants also filed a motion to exclude opinions and testimony of Kevin Harrigan, Ph.D. on January 28, 2022.  (Doc. 156.)  The court need not resolve that motion as it relates to trial, which is foreclosed by the court's summary judgment ruling.

which the court granted.  (Docs. 175, 177, 182.)  The court held oral argument on July 19, 2022, and ordered supplemental letter briefs following oral argument to permit Defendants to respond to newly identified case law discussed by Plaintiffs and provide the parties' positions on whether the court should revisit its ruling on *Alice* step one.  (Doc. 184.)  Following submission of the letter briefs, the motion for summary judgment is ripe for disposition.  (Docs. 186, 187, 189.)

On March 31, 2022, the parties filed a joint motion for partial judgment and to realign the parties for trial, which the court granted the following day.  (Docs. 179, 180.)  Important to the resolution of this case, the parties agreed that Plaintiffs cannot prevail on their patent infringement claim based on the court's claim construction of "actual game to be played," and that judgment be entered in favor of Defendants on Count I of the amended complaint for patent infringement.  (Doc. 180, p. 1.)  They further agreed that Defendants be granted declaratory judgment in their favor on their counterclaim of noninfringement of the '223 Patent.[4]  (*Id.* at 2.)

---

[4] At the request of the parties, the court also ordered that the parties be realigned for trial since the only remaining claim is for patent invalidity.  (Doc. 180, p. 2.)  However, for purposes of this opinion, the court continues to refer to the parties as originally filed because this agreement was entered into following the submission of the summary judgment papers.

## FACTUAL BACKGROUND[5]

Savvy Dog is the record title owner of the '223 Patent, and POM has an exclusive license to the '223 Patent in Pennsylvania.  (Doc. 25, ¶ 13.)  The '223 Patent was filed on June 30, 2006, and issued on June 15, 2010, with the title of "Electronic Gaming Method and System Having Preview Screen." (*Id.* ¶ 14.)  The abstract of the '223 Patent describes it as follows:

> An electronic gaming method and system with a game preview display. A field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game.  If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol.  The player's selection of the field element for the wild symbol location is received by the game software which determines and displays each winning combination of symbols that is formed by such wild symbol location selection.  A new game field can then be constructed and previewed on the game display.

(Doc. 25-1, p. 2.)  Thus, the processor "test[s] the field for compliance with at least one of the preceding selections prior to presenting the field to the player.  The displayed game field cannot contain a winning combination before play." (*Id.* at 16.)

An expert report by Nick Farley and Associates dated March 7, 2005, is prior art to the '223 Patent.  (Doc. 161, ¶ 1.)  This report describes the prior art Tic-

---

[5] In considering the instant motion for summary judgment, the court relied on the uncontested facts, or where facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Plaintiffs, as the nonmoving party.  Further, the court considered the facts alleged in the amended complaint regarding the '223 Patent that neither party disputes for purposes of factual background.

Tac-Fruit game as having a "video screen [that] presents nine symbols in a 3x3 array to the player, similar to a t[i]c-tac-toe arrangement."  (*Id.* ¶ 2.)  Plaintiffs' expert, Kevin Harrigan, Ph.D. ("Dr. Harrigan"), testified that the prior art Tic-Tac-Fruit game disclosed testing and that the processor claimed in the '223 Patent is specially configured to run the Tic-Tac-Fruit game.  (Doc. 170, ¶¶ 3–4.)  Dr. Harrigan further testified that the invention created by Michael Pace ("Mr. Pace"), the inventor of the Tic-Tac-Fruit game and the '223 Patent, could be implemented using a "conventional, off-the-shelf CPU or microprocessor."  (Doc. 161, ¶ 5.)  Mr. Pace testified that the "preview" feature was created to work around legal obstacles and that the embodiment of his invention could have been implemented on a game board existing in the 1990s.  (*Id.* ¶¶ 8, 10.)

## JURISDICTION

Because this case raises a federal question of patent infringement under 35 U.S.C. § 271, the court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Further, venue is appropriate under 28 U.S.C. §§ 1391 and 1400(b).

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citation omitted); *see also* Fed. R.

Civ. P. 56(c)(4) (establishing requirements for affidavits or declarations filed in support of or opposition to a motion for summary judgment). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). Critically, the court is not required to go on a fishing expedition in search of relevant evidence. The court is only required to consider the evidence that the parties cite in their summary-judgment filings. Fed. R. Civ. P. 56(c)(3).

Summary judgment will generally be appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<div align="center">

**DISCUSSION**

</div>

In their motion for summary judgment, Defendants argue that judgment should be granted in their favor on their patent invalidity counterclaim. Specifically, they assert that the court need not revisit *Alice* step one as it already determined that the '223 Patent is directed to the abstract idea of rules for playing a game.  (Doc. 162, p. 12.)  As to *Alice* step 2, Defendants set forth five arguments: (1) no genuine disputes of material fact preclude entry of summary judgment; (2) generically claimed computer components do not constitute an inventive concept; (3) supposedly new rules for game play do not constitute an inventive concept; (4) there is no fact issue over whether an inventive concept may be found in something unconventional, not routine, or not well-understood; and (5) there is no inventive concept because the '223 Patent claims do not provide a technological solution to a technological problem.  (*Id.* at 12–25.)  In opposition, Plaintiffs submit that: (1) there are disputed material facts requiring trial; (2) the court should revisit its conclusion as to *Alice* step one; and (3) at *Alice* step two, the "testing" and "automatically displaying" limitations transform the '223 Patent into patent eligible subject matter.  The court will address each argument in turn.

### A. Patent Eligibility

Section 101 provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful

<div align="center">

9

</div>

improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  There are three subject matter categories that are patent ineligible: laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

In determining Section 101 eligibility, the court need not "parse each individual claim," rather, analyzing a patent's representative claim is sufficient. *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *10 n.3 (C.D. Cal. Oct. 28, 2014) (citations omitted).  Here, the parties agree that claim 44 is representative of the '223 Patent, as they have throughout this litigation.  (Doc. 162, p. 11; Doc. 169, p. 17.)

In *Alice*, the Supreme Court reaffirmed the framework set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217.  The court must first determine "whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id.*  If so, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79.)

### 1. *Alice* Step One[6]

In the opinion resolving Defendants' motion to dismiss, the court held that "reviewing claim 44 as a whole, the parties' competing characterizations, and comparing claim 44 to claims in previous cases, the court concludes that claim 44 describes the rules for playing a game, and is thus an abstract idea within the meaning of *Alice* step one." (Doc. 61, p. 15.) Defendants submit it is unnecessary and inappropriate to revisit the court's finding on *Alice* step one based on the law of the case doctrine. (Doc. 187.) Defendants argue that Plaintiffs are essentially asking the court to reconsider its ruling, and the time within which to file a motion for reconsideration expired long ago. (*Id.* at 1.) According to Defendants, the parties proceeded through fact and expert discovery relying on the court's ruling. (*Id.* at 1–2.) Thus, Defendants argue that there are no "extraordinary circumstances" as required by the Supreme Court for a court to revisit it's *Alice* step one holding. (*Id.* at 1–3.)

Plaintiffs submit that they disagree with the court's prior conclusion on *Alice* step one and can reargue their position at the summary judgment stage. (Doc. 169,

---

[6] Plaintiffs' counsel identified four new cases during oral argument that the court permitted Defendants to respond to via letter brief. Defendants aptly point out, *see* Doc. 186, that three of these cases only address *Alice* step one. *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634 (Fed. Cir. 2020); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). Because the court is not persuaded that it should revisit its *Alice* step one ruling, the court will not further consider these three decisions in its analysis.

pp. 18–21.) They assert that the court should reconsider its conclusion because "the avoidance of an unjust result outweighs the policy considerations underlying the law of the case doctrine." (Doc. 189, p. 1.) Based on the finite nature of a patent's property right, *i.e.* a twenty-year term, Plaintiffs argue that an erroneous and unjust result of finding that a patent abstract is the loss of the inventor's property right, which even if restored on appeal, cannot make the inventor whole again. (*Id.*)

Further, Plaintiffs rely on *EcoServices, LLC v. Certified Aviation Services, LLC*, 830 F. App'x 634 (Fed. Cir. 2020), which was decided on October 8, 2020, approximately six months after this court's ruling on *Alice* step one. Plaintiffs concede that *EcoServices* does not represent supervening new law. (Doc. 189, p. 3.) However, Plaintiffs assert that it "represents a further extension of the Federal Circuit's body of case law on *Alice* Step One." (*Id.*) Because *EcoServices* refuted "the analogy of the claimed process to prior human activity," Plaintiffs' submit that the court should reevaluate, in the interest of justice, its *Alice* step one determination since Defendants place such an emphasis on the human activity argument. (*Id.* at 2–3.)

The court agrees with Defendants that the law of the case doctrine applies here. This doctrine has been developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing

12

lawsuit." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (citations omitted). While a court has the power to revisit its prior decisions, "courts should be loathe to do so in the absence of extraordinary circumstances." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Extraordinary circumstances may include newly available evidence, "a supervening new law," when the court needs to clarify or correct an ambiguous ruling, and when the prior ruling may lead to an unjust result. *In re Pharmacy Benefit*, 582 F.3d at 439 (citations omitted).

Here, none of the identified extraordinary circumstances are present. The parties have not presented newly available evidence or new law that would require the court to disturb its *Alice* step one ruling. Further, the court's ruling was not ambiguous and standing by that finding will not lead to an unjust result simply because Plaintiffs disagree with that result. Accordingly, because the court is satisfied that it conducted a full analysis of *Alice* step one in ruling on the motion to dismiss and no extraordinary circumstance justifies revisiting that ruling, it is unnecessary to conduct the *Alice* step one analysis again here. (*See* Doc. 61, pp. 9–15.)

### 2. *Alice* Step Two

In evaluating *Alice* step two, courts must look for an "inventive concept" by analyzing "the elements of each claim both individually and 'as an ordered

combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). The additional features or elements must ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72, 79). Furthermore, the patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72).

Claim language is the key to evaluating whether a patent contains an inventive concept. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims.") A patent cannot append "purely conventional steps to an abstract idea [to] supply a sufficiently inventive concept." *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2357).

Although Defendants set forth numerous specific arguments to show that the '223 Patent fails to contain an inventive concept, Plaintiffs talk past many of Defendants arguments, instead relying on purported factual disputes that preclude summary judgment. But, because the court does not rely on any facts disputed by the parties in holding that the '223 Patent fails to contain an inventive concept, the court need not parse every asserted factual dispute presented by Plaintiffs. Stated

plainly, there are no material factual disputes that preclude a determination on summary judgment.

### i. Generically claimed computer components

Defendants submit that the '223 Patent claims detail abstract rules of game play, but only some claims identify how these rules are implemented.  (Doc. 162, p. 16.)  The "means of implementation," according to Defendants, cannot be the inventive concept because the means are just "general computer tools for carrying out the abstract idea." (*Id.*)  Specifically, one-third of the claims state that the game rules are performed by a "game processor." (*Id.* at 16–17.)  Because of the court's construction of "game processor," Defendants argue that the claims only require a conventional and ordinary computer or processor and there is nothing in the claims or '223 Patent that shows the processor is improved or operates differently.  (*Id.*)

Another third of the claims do not specify any means or device for implementing the rules of the game, thus, Defendants submit that this reinforces the genericness of the "game processor" and "program instructions." (Doc. 162, p. 16 n.4.)  As to the final third of the '223 Patent claims, Defendants' argue that the claims "recite that the abstract game rules are carried out by 'program instructions' of a computer readable storage medium of a computer product." (*Id.* at 17.)  Because of the court's construction of "program instructions," these claims

cannot include unconventional instructions to convert these claims into an inventive concept.  (*Id.* at 17–18.)

Plaintiffs respond by asserting that they have never claimed that generically claimed computer components are an inventive concept.  (Doc. 169, p. 22.) Rather, Plaintiffs' "foundational point is that the electronic game processor technology at issue is 'a game processor that is specifically configured for testing the game elements and automatically previewing the feature of a game to be played prior to initiating activation of game play.'"  (*Id.* at 22–23.)  In support of this argument, Plaintiffs rely on Defendants' expert's statements that new programming could be a technological improvement.  (*Id.* at 23.)  Further, Plaintiffs submit that whether the embodiment of claim 44 is embedded firmware in the processor or in the EPROM memory device, "the instructions cannot configure the computer unless they are imported to the processor and then executed (and operated upon) by the processor."[7]  (*Id.* at 23–24.)

In looking for "something more" to satisfy *Alice* step two, the court cannot rely on the basic use of computers to carry out an already well-known process. *RaceTech, LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 864 (W.D. Ky. 2016) (citing *Alice*, 134 S. Ct. at 2358).  Nor can generic hardware in combination with a computer system transform an abstract idea into an inventive concept.  *Id.*

---

[7] The court notes that Plaintiffs cite no case law in support of their arguments on this point.

These principles are often applied in "the context of computer systems and hardware utilized in conjunction with computer gambling." *Id.* at 864–65 (citing *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1006–07 (Fed. Cir. 2014)).

In *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1006–07 (Fed Cir. 2014), the court reviewed whether two patents reciting "computer aided methods and systems for managing the game of bingo" contained patentable subject matter. At step two of *Alice*, the court detailed certain computer components that enabled the steps of managing a game of bingo and found that the claims at issue did not contain an inventive concept sufficient to transform the abstract idea into patent-eligible subject matter. *Id.* at 1008–09. In doing so, the court found that "the claims recite a program that is used for the generic functions of storing, retrieving, and verifying a chosen set of bingo numbers against a winning set of bingo numbers." *Id.* at 1009.

Similarly, the court in *In re Smith*, 815 F.3d 816, 817 (Fed. Cir. 2016), found the patent at issue titled "Blackjack Variation" did not contain patent-eligible subject matter. The court held that shuffling and dealing a standard deck of playing cards was "purely conventional" and insufficient to transform the abstract idea into an inventive concept. *Id.* at 819. Further, in *NEXRF Corporation v. Playtika Ltd.*, the court found that the abstract idea of "incentivizing gambling tailored to a user's location" did not transform into an inventive concept because it

recited "only generic computer hardware performing routine functions—a wireless device, a verification system, a centralized gaming server, and a memory module—to allow a user to play an online slot machine game."  547 F. Supp. 3d 977, 991–92 (D. Nev. 2021).

The '223 Patent is akin to those in *Planet Bingo*, *In re Smith*, *NEXRF Corporation*, and *RaceTech* because it fails to transform computer hardware, tools, and components into the "something more" required for an inventive concept.  The court need not go further than the claims themselves and how this court construed those claims to reach this conclusion.  "Game processor" was construed as "a CPU or microprocessor that executes program instructions to generate a game," while "program instructions" was construed as "conventional commands that can be executed by a computer."  (Docs. 111, pp. 22–27; Doc. 112.)  Evidence outside the '223 Patent further strengthens this holding.  Dr. Harrigan agrees that the Tic-Tac-Fruit game could be implemented using a "conventional, off-the-shelf CPU or microprocessor."  (Doc. 161, ¶ 5.)  And Mr. Pace admits that an embodiment of the '223 Patent could have been implemented on a game board existing in the 1990s. (*Id.* ¶ 10.)  Thus, these generically claimed computer components cannot transform the abstract idea of rules for playing a game into an inventive concept.

## ii.  New rules for game play

Defendants argue that "the only arguable difference between representative claim 44 and the prior art is very narrow, *i.e.*, claim 44 displays the game field to a player 'prior to activation of a game,' not after."  (Doc. 162, pp. 20–21.)  According to Defendants, this difference is insufficient for an inventive concept under *Alice* step two because each game step, alone or in combination, is merely an abstract rule of the game.  (*Id.* at 21.)  Defendants submit that novelty of a patent's elements or steps cannot be the inventive concept even if those elements or steps are unconventional.  (*Id.* at 21–22.)

Plaintiffs did not respond to this argument.  Nevertheless, the court agrees with Defendants that regardless of the novelty of the '223 Patent's steps, those steps cannot be the inventive concept.  The "'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."  *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (quoting *Diamond v. Diehr*, 450 U.S. 175 (1981)) (emphasis in original).  Accordingly, new abstract rules that are "groundbreaking, innovative, or even brilliant," still cannot be the inventive concept.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (internal quotations omitted) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013)).

### iii. Unconventional, not routine, or not well-understood

Defendants contend that because the '223 Patent claims do not contain anything "beyond generic computer implementation of abstract game rules, the Court need not consider whether such implementation was well-understood, routine, or conventional." (Doc. 162, p. 22.) Relying on *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018), Defendants submit that "[a]ny suggestion from Plaintiffs that the '223 Patent claim limitations . . . are unconventional because they encompass 'new' electronic games in that they perform the 'preview' step not performed by prior art games, even if true, is irrelevant." (Doc. 162, p. 23.) The claims lack specifics regarding how the game rules are performed, just that the steps are performed. (*Id.*) Thus, Defendants argue that following *BSG Tech*, the court "need not consider whether it was 'well-understood, routine, and conventional' to execute 'preview' with a game processor or program instructions because that execution is simply the use of the ineligible abstract game rules." (*Id.* at 23–24.)

Conversely, Plaintiffs argue that the "automatically displaying" limitation was not well-known, routine and conventional when the '223 Patent was invented. (Doc. 169, p. 21.) Relying on expert reports and testimony, Plaintiffs submit that the "automatically displaying" limitation was "counter-intuitive and <u>not</u> well-known, routine and conventional." (*Id.* at 21–22.) This evidence alone, according

to Plaintiffs, requires denial of summary judgment.  (*Id*. at 22.)  Lastly, Plaintiffs argue that relying on *BSG Tech* is unhelpful because "the two limitations at issue here in the context of configuring a game processor, unlike the limitations in *BSG Tech*, simply are not abstract ideas."  (*Id.*)

In *BSG Tech*, following argument from the plaintiff that the claims recited unconventional features, the court held that "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine."  899 F.3d at 1290.  Rather, at step two, the court searches for an inventive concept "that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.* (quoting *Alice*, 134 S.Ct. at 2355).  The court recounted what the Supreme Court considered in *Alice*, stating:

> Critically, the Court did not consider whether it was well-understood, routine, and conventional to execute the claimed intermediated settlement method on a generic computer.  Instead, the Court only assessed whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional.

*Id.* (citing *Alice*, 134 S. Ct. at 2359–60).  The court ultimately held that the patent's alleged unconventional feature was simply a restatement of what the court already determined to be an abstract idea, thus, the patent lacked an inventive concept.  *Id.* at 1291.

In the context of gaming patents, other courts have found that generic computers using new rules to perform the game tasks is not an inventive concept.

*See, e.g.*, *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013 (N.D. Cal.

2020) (holding that while the patent "may very well be the first time someone put

all the recited computer parts into a slot machine," those parts only carry out

conventional computer tasks); *Konami Gaming, Inc. v. High 5 Games, LLC*, No.

2:14-cv-01483, 2018 WL 1020120 (D. Nev. Feb. 21, 2018) (finding that the "rules

of game play" in a slot machine were patent ineligible because even though the

claims disclosed "a different configuration of the displayed symbols in a slot

machine game, they [did] not disclose a new game or a new technology directed to

the slot game").

Here, even accepting that the "automatically displaying limitation" was

unconventional at the time the '223 Patent was issued, that is insufficient to

transform the rules of playing a game into an inventive concept.  Following the

Federal Circuit's guidance in *BSG Tech*, the "automatically displaying" limitation

is simply a restatement of the rules of game play, which is an abstract idea.  The

abstract idea "cannot supply the inventive concept that renders the invention

'significantly more' than the ineligible concept."  *ChargePoint, Inc. v.*

*SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (quoting *BSG Tech*, 899

F.3d at 1290.)  This is exactly what Plaintiffs would have this court do.  Further,

Plaintiffs' attempt to distinguish *BSG Tech* is unavailing as the court would have to

revisit its ruling on *Alice* step one, which it has already declined to do.

### iv. No technological solution to a technological problem

Lastly, Defendants submit that the '223 Patent lacks any suggestion that "the abstract 'preview' step or the game rules as a whole provide any sort of concrete, non-abstract technological advancement, *i.e.*, a technical solution to a technical problem." (Doc. 162, p. 24.)  The abstract game rules also cannot provide the required inventive concept to overcome *Alice* step two.  (*Id.* at 24–25.)  Rather, the '223 Patent desires to avoid certain gambling laws by creating games of "skill," not "chance."  (*Id.* at 25.)  Defendants assert that the inventor of the '223 Patent and Plaintiffs' expert confirmed that the "preview" step was created to work-around legal obstacles in the electronic gaming industry.  (*Id.*)  Thus, Defendants argue that this is further evidence that the "preview" feature is not an inventive concept.  (*Id.*)

Again, Plaintiffs failed to respond to this argument in their brief.[8] Regardless, the court finds Defendants' argument persuasive.  Finding a way to side-step gambling laws is not a technological advancement, which requires effecting "an improvement in any other technology or technical field."  *See Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359).

---

[8] During oral argument, Plaintiffs presented *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), which arguably is responsive.  However, the court found the patent at issue in *DDR Holdings* to be patent eligible because the invention provided a solution to a technological problem.  *Id.* at 1257.  That is not the case here.

Accordingly, the court does not find that claim 44 of the '223 Patent individually, or in an ordered combination, transforms the abstract rules for game play into an inventive concept as required by *Alice* step two.

## CONCLUSION

For the reasons stated herein, the court will grant Defendants' motion for summary judgment.  An appropriate order will issue.

<div style="margin-left: 40%;">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

</div>

Dated: September 19, 2022