NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAVVY DOG SYSTEMS, LLC, POM OF PENNSYLVANIA, LLC,**
*Plaintiffs-Appellants*

v.

**PENNSYLVANIA COIN, LLC, PA COIN HOLDINGS, LLC,**
*Defendants-Appellees*

---

2023-1073

---

Appeal from the United States District Court for the Middle District of Pennsylvania in No. 3:19-cv-01470-JPW, Judge Jennifer P. Wilson.

---

Decided: March 21, 2024

---

STEVEN G. HILL, Hill, Kertscher & Wharton LLP, Atlanta, GA, argued for plaintiffs-appellants. Also represented by DAVID KEELER LUDWIG.

JOHN V. GORMAN, Morgan, Lewis & Bockius LLP, Philadelphia, PA, argued for defendants-appellees. Also represented by JULIE S. GOLDEMBERG; AMY M. DUDASH, Wilmington, DE.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Savvy Dog") appeal from the United States District Court for the Middle District of Pennsylvania's summary judgment holding the asserted claims of U.S. Patent No. 7,736,223 ineligible for patenting under 35 U.S.C. § 101. Because we agree with the district court's conclusion, we affirm.

BACKGROUND

I

"Tic-Tac-Fruit" is an electronic game in the prior art where—like tic-tac-toe—a player wins by having three symbols of the same type in a row. A game processor sets up the game by populating a three-by-three grid filled with symbols, selecting the winning combination(s), testing the display to ensure that the player cannot obtain a more valuable winning outcome than the outcome determined by the game, and then displaying the grid to the player. The player then selects a "symbol to be replaced with a 'Wild Card' to obtain a winning game outcome." J.A. 1485. Figures 1A and 1B show the game display before and after a "Wild Card" is placed by a user.



FIG. 1A



FIG. 1B

'223 patent Figs. 1A, 1B. In the prior art version of Tic-Tac-Fruit ("prior art Tic-Tac-Fruit"), the grid generation and testing occur after the player committed to playing. Appellants' Br. 5 (citing J.A. 1510–11 (Harrigan Depo. at 112:5–113:8)).

To address the rise in electronic gambling games, Ohio prohibited gambling games but permitted "skill-based" games, i.e., where "the outcome of play during the game must be controlled by the person playing the game and not

by predetermined odds or random chance controlled by the machine." '223 patent col. 1 ll. 21–30.

The '223 patent, entitled "Electronic Gaming Method and System Having Preview Screen," purports to be a more skill-based and less chance-based implementation of the prior art Tic-Tac-Fruit. *See* '223 patent col. 3 ll. 59–63. The abstract describes displaying the game field "to the player as a preview for deciding whether or not to play the displayed game." '223 patent Abstract, col. 1 ll. 15–17. Unlike the prior art Tic-Tac-Fruit, the invention described in the '223 patent previews the game to the player before the player commits to playing the game. '223 patent col. 9 ll. 56–64; *see* Appellants' Br. 6; J.A. 1509–11 (Harrigan Depo. at 111:23–113:23). According to Savvy Dog, this preview reduces the role of chance in relation to the role of skill because "[t]he player would play the displayed game knowing the outcome." '223 patent col. 11 ll. 23–25; *see* Appellants' Br. 13.

Representative claim 44 of the '223 patent recites:

44. An electronic gaming system comprising:

> an electronic game terminal including a touch screen display;
>
> a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:
>
> constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
>
> determining at least one winning combination for each play of the game;
>
> testing the game field prior to displaying the game to the player to ensure that a

> winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;
>
> automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;
>
> determining if the player has decided to play the displayed game; and
>
> displaying an outcome resulting from play of the displayed game.

'223 patent col. 16 l. 46–col. 17 l. 2.

## II

Savvy Dog filed suit against Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Appellees") in the Middle District of Pennsylvania for allegedly infringing certain claims of the '223 patent.

Appellees moved to dismiss, arguing—among other things—that the asserted claims of the '223 patent were directed to ineligible subject matter under 35 U.S.C. § 101. After reviewing representative claim 44's language, the parties' arguments, and case law, the district court "conclude[d] that claim 44 describes the rules for playing a game, and is thus an abstract idea within the meaning of *Alice* step one." *Savvy Dog Sys., LLC v. Penn. Coin, LLC*, No. 3:19-cv-01470, 2020 WL 1550676, at *4–6 (M.D. Pa. Apr. 1, 2020) (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014)). The district court, however, denied the motion to dismiss because "[w]hether the technology embedded into the game processor is an improvement and 'inventive concept' is a question of fact that the court cannot determine at this early stage of litigation." *Id.* at *8.

During claim construction, the district court construed the claim limitation "an actual game to be played" to mean "the constructed game field of the game to be played." *Savvy Dog Sys., LLC v. Penn. Coin, LLC*, No. 3:19-cv-01470, 2020 WL 7488878, at *9 (M.D. Pa. Dec. 21, 2020) (*Claim Construction Op.*).

Appellees later filed a motion for summary judgment, again arguing that the asserted claims were patent ineligible under § 101. For *Alice* step one, the district court relied on its previous analysis from its motion to dismiss ruling. *Savvy Dog Sys., LLC v. Penn. Coin, LLC*, No. 3:19-cv-01470, 2022 WL 4349829, at *5 (M.D. Pa. Sept. 19, 2022) (*Summary Judgment Op.*). The district court then determined for *Alice* step two that none of the claimed elements of claim 44 individually, or in an ordered combination, transformed the abstract idea into an inventive concept. *Id.* at *9. The district court accordingly granted Appellees' motion for summary judgment.

Savvy Dog appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We apply regional circuit law when reviewing a district court's grant of summary judgment. *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1378 (Fed. Cir. 2020). Applying Third Circuit law, we review the district court's grant of summary judgment de novo. *Id.* (citing *Acumed v. Adv. Surgical Servs.*, 561 F.3d 199, 211 (3d Cir. 2009)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see C R Bard*, 979 F.3d at 1378.

Patent eligibility under § 101 is a question of law that may involve underlying questions of fact. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016). We review the district court's

SAVVY DOG SYSTEMS, LLC v. PENNSYLVANIA COIN, LLC  7

ultimate conclusion on patent eligibility de novo. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). The Supreme Court established a two-step test to determine whether a claim is eligible for patenting under § 101. *See Alice*, 573 U.S. at 217–18. For *Alice* step one, we must assess whether the claims at issue are directed to a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea. *Id.* at 217. If the answer is yes, we proceed to *Alice* step two to consider the claim elements, both individually and as an ordered combination, to determine whether these elements contain an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72–73, 78 (2012)). With *Alice* step two, we must determine whether the claims recite additional features that are more than "well-understood, routine, conventional activity" to render the claims eligible for patenting. *Mayo*, 566 U.S. at 79–80.

Addressing *Alice* step one, the district court characterized claim 44 of the '223 patent as being directed to "rules for playing a game." *Summary Judgment Op.*, 2022 WL 4349829, at *4. Savvy Dog contends that claim 44 is actually directed to "a novel gaming terminal architecture" that previews the game "before the player commits to play the game, thereby elevating skill and lessening the role of chance in the game." Appellants' Br. 23 (emphasis omitted); *see also* Appellants' Br. 17.

Whether viewed as being directed to a set of rules for playing a game or to a game previewed to the player before committing to playing, we agree with the district court that claim 44 is directed to an abstract idea. We have found similar game implementations to be patent ineligible. *See, e.g., In re Smith*, 815 F.3d 816, 818–19 (Fed. Cir. 2016) (concluding that the claimed "method of conducting a wagering game" was directed to an abstract idea); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160–61

(Fed. Cir. 2018) (concluding the claimed "method of playing a dice game" was directed to an abstract idea).

Even if claim 44 is viewed as being directed to displaying the game field before the player commits to play the game, claim 44 is not directed to a technological solution to a technological problem.  Notably, the specification does not describe "overcoming some sort of technical difficulty" in displaying the preview of the game before player commitment. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019); *see, e.g.*, '223 patent col. 11 l. 65–col. 12 l. 20.  For example, the disclosed processor is merely a means for setting up and playing the game. *See, e.g.*, '223 patent col. 2 ll. 28–45 ("A game processor generates an electronic game display on a game terminal . . . ."); *id.* at col. 4 ll. 40–43.  The specification "never suggests" that the processor "is improved from a technical perspective, or that it would operate differently than it otherwise could." *ChargePoint*, 920 F.3d at 768.

Indeed, the invention is directed to a concept for overcoming the legal obstacles discussed in the Background section of the patent rather than providing a technological solution to a technological problem.  *See* '223 patent col. 1 ll. 18–60.  Although Savvy Dog argues that the invention solves this legal or business problem by elevating skill and lessening chance, the purported solution is not a technological one.  Rather the purported elevation in the player's skill is due to when the game field is displayed, not how it is displayed.  Stated differently, nothing in the claim or the specification describes a new technological way of displaying.  The idea of displaying before a player starts the game—instead of after the player starts the game—is abstract.  Accordingly, even under Savvy Dog's characterization of what the claim is directed to, claim 44 is directed to an abstract idea.

Turning to *Alice* step two, we agree with the district court's determination that the additional claim elements of

claim 44 "fail[ed] to contain an inventive concept" to transform the claim into a patent-eligible application. *Summary Judgment Op.*, 2022 WL 4349829, at *5–6. Savvy Dog asserts that the testing of the game field and the automatic previewing of the actual game to be played, whether individually or as an ordered combination, are inventive concepts. Appellants' Br. 33–34.

We determine that these steps are abstract ideas themselves—whether viewed as part of a set of rules for playing a game or part of a game previewed to the player before committing to playing—and thus cannot be an inventive concept under *Alice* step two. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

After identifying the abstract idea at *Alice* step one, we are to consider what remains in the claims at *Alice* step two. *Id.* at 1290. Here, all that remain are generic and conventional computer components (e.g., a gaming terminal and touch screen display) that are used in a routine and conventional way. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Id.* at 1290–91.

For the above reasons, we conclude that representative claim 44 is directed to an abstract idea and that "the particular elements of the claim, considered both individually and as an ordered combination," fail to "transform the nature of the claim into a patent-eligible application." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quotations and citations omitted). We therefore affirm the

district court's summary judgment that the asserted claims of the '223 patent are ineligible for patenting.[1]

CONCLUSION

We have considered Savvy Dog's remaining arguments and find them unpersuasive. Because the district court correctly concluded that the '223 patent claims are directed to ineligible subject matter, we affirm.

**AFFIRMED**

---

[1] Savvy Dog also asserts on appeal that the district court erred in its construction of the term "an actual game to be played." *See Claim Construction Op.*, 2020 WL 7488878, at \*9. As acknowledged by Savvy Dog's counsel, we need not address this claim construction issue because we agree with the district court's § 101 analysis. *See* Oral Arg. at 1:00–1:10, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1073_03042024.mp3.